UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, **and
CARLOS DE OLIVEIRA,**

    Defendants.

_____/

## MOTION FOR *GARCIA* HEARING

The Government requests that the Court hold a hearing, pursuant to *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), to conduct an inquiry regarding potential conflicts of interests that may arise from attorney Stanley Woodward, Jr.'s prior and current representation of three individuals the Government may call to testify at the trial of his client Waltine Nauta.[1] A *Garcia* hearing is appropriate given that an attorney who cross-examines a former or present client inherently encounters divided loyalties. The Government apprises the Court of the issue consistent with its responsibility to promptly notify the Court of potential conflicts, so that it may conduct an appropriate inquiry under *Garcia*. A hearing would permit a colloquy with Mr. Woodward's clients to inform them of potential risks and inquire into possible waivers. The Court may also

---

[1] All published decisions of the former Fifth Circuit decided before the close of business on September 30, 1981, are binding precedent within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

1

wish to procure independent counsel to be present at the hearing and available to advise Mr. Woodward's clients regarding the potential conflicts, should they wish to receive such advice.

The Government has advised Mr. Woodward of its intent to file this motion requesting a *Garcia* hearing and its reasons for doing so. Mr. Woodward has indicated that as a general matter he does not oppose the Court informing his client of the client's rights or inquiring into potential waivers, but that he will not consent to this motion without seeing it in advance, and he requests the opportunity to respond. The Government has also advised counsel for Defendants Donald J. Trump and Carlos De Oliveira of its intent to file this motion, and they have indicated that they take no position on this motion.

## BACKGROUND

On June 8, 2023, a grand jury in this district returned a 38-count indictment that charged Defendant Donald J. Trump with unlawful retention of national defense information and charged Trump and Defendant Waltine Nauta with obstruction of justice. The grand jury in this district and a grand jury in the District of Columbia continued to investigate further obstructive activity, and a superseding indictment was returned on July 27, 2023.

Nauta is represented by Stanley Woodward, Jr., who has represented at least seven other individuals who have been questioned in connection with the investigation. Those individuals include the director of information technology for Mar-a-Lago (identified in the superseding indictment as Trump Employee 4) and two individuals who worked for Trump during his presidency and afterwards (hereafter Witness 1 and Witness 2).[2]

---

[2] In order to comply with grand jury secrecy requirements, the Government does not include the names of these individuals in this public filing, and instead provides additional information relevant to this motion in a sealed supplement.

2

In February and March 2023, the Government informed Mr. Woodward, orally and in writing, that his concurrent representation of Trump Employee 4 and Nauta raised a potential conflict of interest. The Government specifically informed Mr. Woodward that the Government believed Trump Employee 4 had information that would incriminate Nauta. Mr. Woodward informed the Government that he was unaware of any testimony that Trump Employee 4 would give that would incriminate Nauta and had advised Trump Employee 4 and Nauta of the Government's position about a possible conflict. According to Mr. Woodward, he did not have reason to believe his concurrent representation of Trump Employee 4 and Nauta raised a conflict of interest.

Trump Employee 4 retained new counsel on July 5, 2023, and on July 27, 2023, the grand jury returned a superseding indictment adding Carlos De Oliveira as a defendant and charging all three defendants with obstruction-of-justice offenses stemming from their attempt to have Trump Employee 4 delete security camera footage at Mar-a-Lago. The factual allegations underlying this additional obstruction of justice are set forth in paragraphs 74–87 and 91 of the superseding indictment. The Government has conferred with Trump Employee 4's new counsel, and Trump Employee 4 does not intend to waive his rights to confidentiality, loyalty, and conflict-free representation with respect to his earlier representation by Mr. Woodward.

Witness 1 worked in the White House during Trump's presidency and then subsequently worked for Trump's post-presidential office in Florida. Mr. Woodward has represented Witness 1 in connection with this case and, to the Government's knowledge, continues to do so.

Witness 2 worked for Trump's reelection campaign and worked for Trump's political action committee after Trump's presidency ended. Mr. Woodward has represented Witness 2 in connection with this case and, to the Government's knowledge, continues to do so.

## ARGUMENT

Potential conflicts of interest arise from Mr. Woodward's prior representation of Trump Employee 4 and his current representation of Witness 1 and Witness 2. All three of these witnesses may be witnesses for the Government at trial, raising the possibility that Mr. Woodward might be in the position of cross-examining past or current clients. These potential conflicts warrant a *Garcia* hearing.

### I.  Applicable Law

The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right includes the "right to counsel of choice." *United States v. Ross*, 33 F.3d 1507, 1522 (11th Cir. 1994). It also includes a "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). The right to conflict-free counsel is subject to knowing and voluntary waiver. *United States v. Garcia*, 517 F.2d 272, 276-77 (5th Cir. 1975). But the "essential aim" of the right to counsel "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). In addition, courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. Accordingly, "[t]he need for fair, efficient, and orderly administration of justice" may "overcome[] the right to counsel of choice," and a court may "refus[e] to accept" a defendant's "waiver of his right to conflict-free representation." *Ross*, 33 F.3d at 1523–24.

Courts have advised the Government to notify the district court of "potential conflicts at the earliest possible moment." *United States v. Malpiedi*, 62 F.3d 465, 470 (2d Cir. 1995). Some

4

courts describe this as an affirmative "duty" on the Government to bring the issue to the court's attention. *In re Gopman*, 531 F.2d 262, 265–66 (5th Cir. 1976); *see United States v. Tatum*, 943 F.3d 370, 379–80 (4th Cir. 1991) (same); *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012) (same). When a potential conflict is brought to a court's attention, it triggers an "independent duty" by the court to "investigate." *Wheat*, 486 U.S. at 160; *see, e.g.*, *United States v. Caldwell*, 7 F.4th 191, 203 (4th Cir. 2021); *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019).

Courts have discretion in conducting an inquiry but, as a general matter, should "inquire into the details" and "(1) advise the defendant about potential conflicts; (2) determine whether the defendant understands the risks of those conflicts; and (3) give the defendant time to digest and contemplate the risks, with the aid of independent counsel if desired." *United States v. Lussier*, 71 F.3d 456, 462 (2d Cir. 1995). If a defendant maintains that he wishes to waive his right to conflict-free counsel, the court must "scrupulously evaluate" the waiver and use procedures akin to a Rule 11 colloquy to ensure that the defendant "understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections." *Garcia*, 915 F.2d at 277–78. Even in the event of a knowing and voluntary waiver, the court retains "substantial latitude in refusing waivers of conflicts." *Wheat*, 486 U.S. at 162–63. Courts in this district and elsewhere within this circuit regularly follow procedures along these lines in cases where there is a possibility a prior or current client of the defendant's counsel may be called to testify at the defendant's trial.[3]

---

[3] *See, e.g.*, *United States v. Schneider*, 853 F. App'x 463, 466 (11th Cir. 2021) (unpublished); *United States v. Campbell*, 491 F.3d 1306, 1311 (11th Cir. 2007); *United States v.*

5

**II.     The Court Should Hold a *Garcia* Hearing to Address Potential Conflicts**

A potential conflict exists because Mr. Woodward previously represented one witness and currently represents two other witnesses who the Government may call to testify at the trial of his client Nauta. The Government provides information regarding those witnesses in a sealed supplement and will be prepared to provide any additional information that the Court requires at a *Garcia* hearing.

An attorney's cross-examination of a current or former client presents a conflict of interest. *See Ross*, 33 F.3d at 1523; *United States v. Williams*, 902 F.3d 1328, 1333–34 (11th Cir. 2018); *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991). "An attorney who cross-examines a former client inherently encounters divided loyalties." *Lightbourne v. Dugger*, 829 F.2d 1012, 1023-24 (11th Cir. 1987); *accord Porter v. Singletary*, 14 F.3d 554, 561 (11th Cir. 1994). The situation may be even "more problematic" when an attorney cross-examines a current client. *Williams*, 902 F.3d at 1333–34.

An attorney's cross-examination of a former or current client raises two principal dangers. *Ross*, 33 F.3d at 1523. First, the conflict may result in the attorney's improper use or disclosure of the client's confidences during the cross-examination. *Id.* Second, the conflict may cause the attorney to pull his punches during cross-examination, perhaps to protect the client's confidences or "to advance the attorney's own personal interest." *Id.*

---

*Vuteff*, No. 22-CR-20306, 2023 WL 4202644, at *7 (S.D. Fla. June 27, 2023); *United States v. Carver*, No. 22-CR-80022, 2023 WL 4352792, at *2–*3 (S.D. Fla. June 23, 2023); *United States v. Phillip Braun & Blackstone Labs, LLC*, No. 19-CR-80030, 2019 WL 1893113, at *6 (S.D. Fla. Apr. 29, 2019); *United States v. Cordoba*, No. 12-CR-20157, 2013 WL 5741834, at *10 (S.D. Fla. Oct. 17, 2013); *United States v. Alvarez*, No. 10-CR-20547, 2010 WL 4774649, at *4 (S.D. Fla. Nov. 16, 2010); *United States v. Delorme*, No. 07-CR-20534, 2009 WL 33836, at *5 (S.D. Fla. Jan. 5, 2009).

The Rules Regulating the Florida Bar reflect these concerns, providing that, absent informed consent, a lawyer "must not represent a client" if "there is a substantial risk" that the representation "will be materially limited by the lawyer's responsibilities to another client" or "a former client." Fla. Bar R. Prof'l Conduct 4-1.7(a).[4] Informed consent requires, among other things, that "each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing." Fla. Bar R. Prof'l Conduct 4-1.7(b)(4). The Rules further provide that "[a] lawyer who has formerly represented a client in a matter must not" either "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent" or "use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known." Fla. Bar R. Prof'l Conduct 4-1.9(a)-(b). The commentary to the Rule explains that "information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client without the former client's consent." Fla. Bar R. Prof'l Conduct 4-1.9 commentary.

Where, as here, a potential conflict arises from an attorney's simultaneous or successive representation of a defendant and a potential witness, a *Garcia* hearing is warranted. Nauta should be thoroughly advised of the potential conflicts and attendant risks. Witness 1 and Witness 2 should also be present at the hearing and apprised of the risk that Mr. Woodward may use or disclose confidences he obtained from them. *See, e.g.*, *United States v. Patel*, No. 19-CR-80181, 2022 WL

---

[4] This Court's local rules provide that "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar." S.D. Fla. Local Rule 11.1(c). The same standards apply to attorneys admitted *pro hac vice*. *See* S.D. Fla. Local Rule 14.

2191642, at *2 (S.D. Fla. June 17, 2022) (*Garcia* hearing to question defendant and witness about conflicts related to law firm's concurrent representation of witness and defendant); *United States v. Phillip Braun & Blackstone Labs, LLC*, No. 19-CR-80030, 2019 WL 1893113, at *2 (S.D. Fla. Apr. 29, 2019) (three witnesses questioned at *Garcia* hearing to evaluate potential conflicts arising from concurrent representation of witnesses and defendants); *United States v. Schneider*, 322 F. Supp. 3d 1294, 1296 (S.D. Fla. 2018) (witness questioned at *Garcia* hearings to evaluate potential conflicts arising from concurrent representation of witness and defendant), *aff'd*, 853 F. App'x 463 (11th Cir. 2021); *see also United States v. Oberoi*, 331 F.3d 44, 45–47 (2d Cir. 2003) (describing similar procedure). Both Nauta and Witnesses 1 and 2 should be given an adequate opportunity to digest and contemplate the risks, with the aid of independent counsel if so desired.[5]

If Nauta indicates he wishes to waive any conflicts, the Court should conduct an inquiry to determine whether the waiver is knowing and voluntary, and the Court should then determine whether to accept Nauta's waiver. Relevant considerations include "whether the subject matter" of Mr. Woodward's representation of the witnesses "is substantially related to" the subject matter of their representation of Nauta; whether Mr. Woodward obtained confidential information from the client-witnesses that he could use during cross-examination; and whether Mr. Woodward's representation of the client-witnesses could cause him to refrain "from intense probing of the witness[es] on cross-examination." *Ross*, 33 F.3d at 1534. The Court must balance Nauta's "rights to conflict-free representation of counsel," his right to counsel of choice, the rights of the witnesses to maintain the secrecy of confidences they imparted to Mr. Woodward, and Mr.

---

[5] Trump Employee 4's presence at the hearing is not required. As set forth above, Trump Employee 4 has informed the Government, through his new counsel, that he takes no position as to Mr. Woodward's continuing representation of Nauta (or anyone else) but does not consent to the use or disclosure of his client confidences and expects Mr. Woodward to comport with the ethical rules regarding maintenance of client confidences.

Woodward's duty "not to work against the interests" of his former or current clients and not to reveal information that those clients imparted to him in confidence. *Moscony*, 927 F.2d at 742. In conducting the balancing, some courts have considered whether the defendant is prepared to accept measures that could prevent the use or disclosure of client confidences while protecting the defendant's right to effective assistance of counsel, such as limiting cross-examination of the witnesses to co-counsel and prohibiting the attorney from sharing client confidences with co-counsel. *See, e.g.*, *United States v. Turner*, 117 F. Supp. 3d 988, 990 (N.D. Ohio 2015) ("Having another attorney cross-examine [the prior client], if he testifies (and [conflicted counsel] playing no role whatsoever in outside counsel's cross-examination or its preparation), will adequately screen [the conflicted lawyer] from injuring [the former client] (and, conversely, benefitting the defendant)."); *but see United States v. Campbell*, No. 04-CR-424, 2005 WL 6436177, at * 4 (N.D. Ga. Mar. 9, 2005) (concluding that a similar "proffered alternative will not do the trick"), *aff'd*, 491 F.3d 1306 (11th Cir. 2007). The information gathered at the *Garcia* hearing will enable the Court to address any conflicts and formulate an appropriate remedy, and the Government takes no position at this time as to what remedy may be appropriate.

Accordingly, in order to protect the integrity of the Court's proceedings and the rights and interests of all affected parties, the Government requests that the Court hold a *Garcia* hearing with Nauta and Witnesses 1 and 2 present to determine (1) whether and to what extent a conflict of interest arises from Mr. Woodward's representation of Nauta and his prior and current representations of Trump Employee 4, Witness 1, and Witness 2; (2) whether Nauta or Witnesses 1 and 2 wish to waive any conflicts and, if so, whether the waiver is knowing and voluntary; and (3) whether the Court will accept Nauta's waiver. The Court should procure independent counsel

9

to be present at the hearing and available to confer with Nauta, Witness 1, and Witness 2, should they so desire.

## CONCLUSION

For the reasons stated above, the Government requests that the Court hold a *Garcia* hearing with Defendant Nauta and Witnesses 1 and 2 present and separate independent counsel available to consult with Nauta and the witnesses.

                                                                 Respectfully submitted,

                                                                 JACK SMITH
                                                                 Special Counsel
                                                                 N.Y. Bar No. 2678084

By:    /s/ *Jay I. Bratt*
           Jay I. Bratt
           Counselor to the Special Counsel
           Special Bar ID #A5502946
           950 Pennsylvania Avenue, NW
           Washington, D.C. 20530

           Julie A. Edelstein
           Senior Assistant Special Counsel
           Special Bar ID #A5502949

           David V. Harbach, II
           Assistant Special Counsel
           Special Bar ID #A5503068

           Michael E. Thakur
           Assistant Special Counsel
           Florida Bar No. 1011456

August 2, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Michael E. Thakur*
Michael E. Thakur