UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

    Defendants.

Case No. 23-80101-CR-CANNON/REINHART

**RESPONSE IN OPPOSITION TO THE GOVERNMENT'S
RENEWED MOTION FOR PROTECTIVE ORDER PURSUANT TO
SECTION 3 OF THE CLASSIFIED INFORMATION PROCEDURES ACT**

Defendant, President Donald J. Trump, in the above captioned matter, hereby responds to and opposes certain portions of the government's proposed Protective Order Pertaining to Classified Information pursuant to Section 3 the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA" and the "Proposed CIPA Protective Order").[1] (*See* ECF No. 84, United States' Renewed Motion for Protective Order Pursuant to Section 3 of CIPA, hereinafter "Motion"). President Trump opposes any portion of the Proposed CIPA Protective Order that prohibits counsel from simply discussing the relevant purportedly classified material with President Trump inside an approved secure location other than the designated SCIFs in the Southern District of Florida where the classified discovery will be housed. President Trump respectfully requests that the

---

[1] Nothing contained in this Opposition shall be construed as a waiver of any right of the Defendants, including their right to challenge whether purportedly classified information is indeed classified or to move or object to the use or admissibility of purportedly classified information during trial or pretrial proceedings. Additionally, this Opposition and attached Affirmation have been reviewed by the assigned CISO.

Proposed CIPA Protective Order be modified to approve re-establishment of a secure facility in which President Trump was permitted previously to discuss (and review[2]) classified information during his term as President of the United States.[3]

The procedures required by the government and CIPA to allow for President Trump and his legal team to review allegedly classified materials at issue are in addition to the substantial and voluminous unclassified discovery that the government has provided in three productions to date.[4] The government's third production followed the July 27, 2023, superseding indictment that added additional charges against President Trump, Walt Nauta, and a now-third defendant, Carlos De Oliviera. As relevant here, the charges allege various obstruction-related conduct arising out of false claims of efforts to destroy certain video tapes. No videotapes were deleted or destroyed,

---

[2] To be clear, President Trump is not asking for the proposed CIPA Protective Order to be modified to permit any classified materials to be transported to or reviewed or stored in, this location.

[3] Counsel can provide additional information about President Trump's proposed secure location but respectfully request that such information be provided in camera because of security concerns.

[4] Since the government's initial production on June 21, 2023 (which was summarized in the Opposition to the Government's Motion for Continuance and Proposed Revised Scheduling Order, filed on July 10 (ECF No. 66)), the government has made two additional productions of discovery: July 17 and July 31, 2023. The government's second and third productions total approximately 124,700 records (in excess of nearly 289,990 pages). That means the government has now produced over 553,000 records (in excess of 1,123,400 pages) consisting of approximately 237,900 emails (including attachments) and 315,130 documents gathered from over ninety-seven (97) separate custodians.

Furthermore, the government has produced approximately 76 terabytes of compressed raw CCTV footage, which is itself an incredible volume of material. Last week defense counsel finally finished processing the intake of CCTV footage that the government produced on June 21—the 57 terabytes of CCTV footage produced on June 21 totals nearly eight years of video. On July 31, the government produced an additional 19 terabytes of CCTV footage, including, according to the government's production letter, "footage that was produced to the government in May that was not included in the government's first discovery production." Counsel recently received a hard drive with CCTV footage referenced in the government's July 31 letter, and we are still processing that discovery to assess the total length of additional video the government produced.

Although the government's July 31 discovery letter states that the "[g]overnment has now produced all CCTV footage acquired in its investigation," the government has not informed President Trump or the other Defendants when it anticipates fully complying with its discovery obligations, including the production of discovery currently in the government's possession.

and the government does not so allege; indeed, President Trump has produced to the Special Counsel's Office what amounts to more than eight years of CCTV footage.

So that President Trump and his legal team may discuss classified information in a substantive manner as regularly as necessary to prepare an adequate defense, we respectfully request that the Court approve re-establishment of a secure facility in which President Trump previously discussed (and reviewed[5]) classified information during his term as President of the United States.  This request is not based on "inconvenience" as the government falsely claims in its Motion.  (ECF No. 84 ¶ 13).  This request is based on the immense practical and logistical hurdles and costs that make it virtually impossible for President Trump to make regular trips to a public facility to discuss classified discovery material with counsel as necessary to conduct a defense consistent with the rights afforded by the Constitution.  Both the required security protocol surrounding President Trump's travel and the challenges surrounding the media's and public's intense focus on this prosecution pose an enormous obstacle to our ability to provide counsel to President Trump regarding classified matters, which are, no doubt, essential to this case.  Our proposed alternative is both reasonable and appropriate, given the extraordinary and unprecedented circumstances of this case.  President Trump makes this request for the following reasons:

   1. The government and counsel for the defendants had several communications about the Proposed CIPA Protective Order, and indeed the parties resolved many of the initial concerns and objections to the initial drafts of the CIPA Protective Order.  Notably, as the Court is aware from the government's initial motion for a CIPA protective order, the government initially took

---

[5] Again, President Trump is not requesting that any classified materials be transported to or reviewed or stored in this location.

the position, incredibly, that President Trump, who is charged with illegal retention of certain allegedly classified records, is *not entitled to even review* the classified materials at issue in this case. (ECF No. 79-1 ¶¶ 8, 26.j.). This position is notwithstanding the fact that he was the 45th President of the United States and, as such, had access to and knowledge of each and every one of our nation's most sensitive secrets, including, at least according to the government, all of the purportedly classified documents and information at issue in this case. Similarly, the government is well-aware of the fact that President Trump, while in office, had the power to declassify information – a power he exercised regularly, as the government also knows from its investigation in this matter. Ultimately, the government agreed to allow President Trump to personally review the relevant classified material at a location designated by the Court. During the meet and confer process, counsel for President Trump never raised objections to any of the provisions of the Proposed CIPA Protective Order regarding actual review of classified material, and only asked for the reasonable accommodation sought herein. Yet the government's Motion both misstates our position and requested relief and also misstates the facts as represented to us in prior communications between the government and defense counsel as well as in representations to the Court during the July 18, 2023, scheduling conference. The defense corrects the record here.

2. As it relates to our position regarding the contested portion of the Proposed CIPA Protective Order, we made it clear to the government that President Trump only seeks to discuss purported classified documents with counsel inside a previously approved facility at or near his residence, not "in his office at Mar-a-Lago" or "an unsecure area" as cavalierly, and falsely, suggested by the government. (ECF No. 84 ¶ 13). We similarly reminded the government of the uniqueness of President Trump's residence, including that it is in a highly protected location guarded by federal agents that previously housed a secure facility approved for not only the

discussion, but also the retention, of classified information. The government's Motion suggesting we anticipated discussing classified information in an unsecure area is wrong, and they are fully cognizant of that fact. Similarly, the government's statement to the court in its Motion that President Trump's personal residence should be compared to the residence of "any private citizen" is misleading. This is especially true given the necessary protections afforded to our nation's leaders after they leave office and the uniqueness of the location of President Trump's residence, coupled with the fact that a secure location already existed for the relief sought herein and can be re-established with appropriate safeguards.[6] (ECF No. 84 ¶¶ 13–14).

3.  Moreover, when the government informed defense counsel of its intention to seek a trial date more quickly than in any CIPA-related trial on record, it represented to counsel that the vast majority of the classified documents could be reviewed by counsel *prior* to receiving full classified clearance, and that only a small portion of the purported classified documents were SCI-level communications. This is significant because, as the Court is aware, counsel is permitted to review non-SCI-level communications after receiving interim security clearance, while SCI-level documents can only be viewed after full security clearance is secured. Further, during the July 18, 2023, scheduling conference before Your Honor, the government represented that "Counsel will be getting access . . . [with] their interim clearances . . . to about 80 percent of the documents." (July 18, 2023, Transcript at 14, attached as Exhibit 2 to this Opposition). Therefore, based on the representations made to the Court and to defense counsel, the defense would have had access to "80 percent" of the classified documents on or before September 7, 2023. Now, according to the

---

[6] The statement comparing President Trump's personal residence at Mar-a-Lago to that of "any private citizen" is all the more disingenuous considering a member of the prosecution's trial team has visited the Mar-a-Lago property during the course of the investigation and is therefore personally aware of the differences between President Trump's residence and that of "any private citizen."

government's most recent filing, and in contradiction to their previous statements, we will not have access to "a significant portion of the classified discovery . . . , including the majority of the charged documents," until a much-later date. (ECF No. 84 ¶ 13). This is a new fact and one that defense counsel (and, presumably, the Court) was not aware of prior to arguing and discussing an appropriate schedule for CIPA-related litigation.[7] (*See* ECF No. 84 ¶ 13).

4.  President Trump objects to the Proposed Protective Order insofar as it does not allow him and his counsel to discuss the relevant purportedly classified material inside an appropriate secure facility at or near his personal residence. Limiting any discussions with counsel to the government offered SCIFs is an inappropriate, unnecessary, and unworkable restriction, given the unique circumstances of President Trump's access to security—namely that he resides and works in a secure location that is protected at all times by members of the United States Secret Service, and that the proposed alternate location previously housed an area approved for not only the discussion, but also the storage and review, of classified information. To that end, President Trump requests that the Court approve the renewed use of the previously approved and appropriately secure location so that he is then able to discuss the relevant classified information with his counsel without the need to mobilize his security detail and state and local law enforcement every time he has a conversation regarding his defense as it relates to purportedly classified information.[8] Re-establishing the same secure area that existed during President

---

[7] Defense counsel does not have authorization to review SCI-level material at this time and does not know when such authorization will be granted. Therefore, defense counsel reserves all rights to seek additional time to review CIPA-related communications depending on the timing of our security clearances and the actual volume of SCI-level communications.

[8] Again, President Trump is not asking for the proposed CIPA Protective Order to be modified to permit any classified materials to be transported to, or stored in, this location.

Trump's term as President of the United States is a secure, efficient, and cost-effective way for these conversations to take place in a fully secure environment.

5. The alternative, and the one envisioned by the government's Proposed CIPA Protective Order, is untenable, would make effective communication between counsel and President Trump nearly impossible, and would make appropriate preparation for trial unattainable. As the Court is aware, the government is expected to produce thousands of pages of discovery the government has identified as classified. (*See* ECF No. 83 at 2). As it stands now, President Trump will already have to spend considerable time in a Court approved SCIF to review these documents with counsel. On top of that, however, there are significant amounts of work and discussion that will be necessary between counsel and President Trump about the classified documents to better allow counsel to, among other tasks, prepare motions, request additional discovery, and prepare for trial. Once again, requiring all discussions between President Trump and his legal team regarding information deemed by the government to be classified in this case to take place only in one of the SCIFs offered by the government is unreasonably burdensome and places unnecessary strain on President Trump, his counsel, as well as government resources and the public. This is especially true when there is a readily available alternative that alleviates these challenges.

6. When President Trump was in office, there was a designated, secure location where classified information was approved to be housed and discussed. We have had discussions with officials familiar with this arrangement. (*See generally* Affirmation of Todd Blanche, attached as Exhibit 1 to this Opposition). In early 2021, that location was decertified as a permitted area to store and discuss classified information. Counsel is well aware of the challenges in re-establishing such a secure location, and does not take this request lightly, but it is relevant and noteworthy that this location was previously approved by the relevant government authorities within the

intelligence community to allow President Trump to review and discuss classified information.[9] Further, given the amount of resources already spent on this investigation and the immense resources that would be spent on President Trump having to travel to and from a SCIF offered by the government every time there is a need to discuss any aspect of the allegedly classified information, but not review the underlying documents in person, re-establishment of the previously approved SCIF is by far the most appropriate and effective use of government resources.

7. Moreover, the previously approved location is extraordinarily secure and obviously suitable and acceptable as it was used for years during President Trump's term in office. The property remains under the United States Secret Service's constant surveillance and protection, and it will continue to be guarded by the United States Secret Service long after the conclusion of this matter. (*See* Exhibit 1). The government's Motion dismisses this fact and compares President Trump's request herein to any other defendant's request to discuss classified information in their "private" or "personal residences" or offices. (*See* ECF No. 84 ¶¶ 13–14). This characterization is misleading and misconstrues the facts of this case. Donald J. Trump served as President of the United States for four years, and he, along with other Presidents and senior government officials, have had access to remote facilities for the purposes of reviewing and discussing sensitive information while in office, and at times after leaving office. There is no dispute about that.[10]

8. Notwithstanding the false assumptions in the government's Motion that counsel or President Trump anticipate discussing purportedly classified information in an "unsecure area" or in his "personal residences and offices [that] are not lawful locations for the discussion of classified

---

[9] *See* Intelligence Community Directive 705 (May 26, 2010), *available at* https://www.dni.gov/files/documents/ICD/ICD_705_SCIFs.pdf.

[10] *See* Rajini Vaidyanathan, *Barack Obama's Top Secret Tent*, BBC (Mar. 22, 2011), https://www.bbc.com/news/world-us-canada-12810675.

information," we assure the Court that the above was never suggested by defense counsel and that we and President Trump take seriously the rules surrounding the handling and discussion of classified materials. (ECF No. 84 ¶¶ 13–14). The government knows full well from our request and related conversations that defense counsel and President Trump will not discuss information the government deems classified outside of approved facilities where such information is authorized to be discussed. Indeed, that responsibility is the very reason motivating the relief sought here: to allow us to comply with our obligations as attorneys with access to sensitive information, while also allowing us to effectively prepare for CIPA litigation and the defense of this matter at trial.

9. In addition, the government claims, without citing a single statute or case, that granting our request would give "exceptional treatment [which] would not be consistent with the law." (ECF No. 84 ¶ 13). This is not true and is not in any way consistent with our ask or with the facts of this case. This is a complex and exceptional case, and for the government to once again take the position that it is not, is troubling. We are not asking the Court to do anything "inconsistent" with the law. Indeed, the government has the authority to discuss the purported classified material in other approved facilities outside of a Court designated SCIF, and we anticipate it does so regularly. That is not inconsistent with the law so long as they are having those discussions in a secure, approved facility. Our request is to have the same opportunity. We are seeking the Court's permission to discuss classified information in a secure facility that was long approved for such use and met then, and could easily meet now, the standard required by our nation's intelligence community to ensure protection of information deemed classified.

10. Furthermore, the government's motion fails to address the logistical hurdles and incredible resources that will be required every time President Trump travels to one of the

government's contemplated SCIFs. As the Court is aware, on June 13, 2023, President Trump appeared at the Wilkie D. Ferguson, Jr. U.S. Courthouse in Miami. Despite that hearing lasting approximately one hour, the Courthouse was closed to the public for a significant portion of the day and many court proceedings were postponed to a later date. This necessarily inconvenienced the public and court staff. Moreover, local, state, and federal law enforcement were mobilized to block surrounding public areas and ensure the safety of President Trump and courthouse personnel against potential threats. If the government has its way, similarly complicated arrangements will be required every time President Trump visits one of the government offered SCIFs simply to talk with his lawyers about anything involving the CIPA-related discovery from today through the conclusion of this prosecution.

11. President Trump's request to discuss information deemed by the government to be classified with his lawyers in an alternate secure facility is a more efficient use of government resources. Efforts to safely transport and protect President Trump—all of which are required by the Secret Service—cost the United States government and state and local municipalities hundreds of thousands of dollars per visit, which is significantly more than the fixed amount necessary to re-establish the secure area at which President Trump (and his lawyers) were once permitted to discuss classified information.

12.     In conclusion, for the reasons stated herein, we respectfully submit that the Court modify the Proposed CIPA Protective Order to approve re-establishment of a secure facility in which President Trump and his counsel may discuss purported classified information.

Dated: August 9, 2023                                   Respectfully submitted,

                                                        */s/ Christopher M. Kise*
                                                        Christopher M. Kise
                                                        Florida Bar No. 855545
                                                        ckise@continentalpllc.com
                                                        CONTINENTAL PLLC
                                                        255 Alhambra Circle, Suite 640
                                                        Coral Gables, Florida 33134
                                                        (305) 677-2707

                                                        */s/ Todd Blanche*
                                                        Todd Blanche
                                                        Admitted Pro Hac Vice
                                                        toddblanche@blanchelaw.com
                                                        Blanche Law
                                                        99 Wall Street, Suite 4460
                                                        New York, New York 10005
                                                        (212) 716-1250

                                                        *Counsel for President Donald J. Trump*