# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 23-80101-CR-CANNON/REINHART

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| v. | ) |
|  | ) |
| WALTINE NAUTA, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Inscribed on the walls of the Department of Justice are the words: "The United States wins its point whenever justice is done its citizens in the courts." As Attorney General Merrick Garland said on the 60th anniversary of the Supreme Court's decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), "[this] message, of course, is that this is true *regardless of whether the outcome is the one that the government favors*." Attorney General Merrick B. Garland Delivers Remarks at the Office of Access to Justice's Gideon Celebration (March 17, 2023) (emphasis added).[1] *Gideon*, of course, recognized the significance of a defendant's right to a fair trial, so much so, the Court held, that, "any person haled into court, who is too poor to hire a lawyer, *cannot be assured a fair trial* unless counsel is provided for him." 372 U.S. at 344. The government's request to limit Defendant Waltine Nauta's access to discoverable information in his case amounts to nothing more than an attempt to abridge a multitude of statutory and constitutional rights of the criminally

---

[1] *Available at* https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-remarks-office-access-justices-gideon#:~:text=Like%20the%20Attorneys%20General%20who,whether%20the%20outcome%20is%20the

accused.

Although, [t]here is no general constitutional right to discovery in a criminal case, and [the Supreme Court in *United States v. Brady*, 373 U.S. 83 (1963),] did not create one," *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), *Brady* does hold that a defendant's right to due process is violated if the government, "withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment," *Smith v. Cain*, 565 U.S. 73 (2012) (citing *Brady*, 373 U.S. at 87), and, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .'" *Weatherford,* 429 U.S. at 559 (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)). That due process right intersects with another constitutional right of defendants, under the Sixth Amendment, to, "meaningfully assist in [a] defense." *See Castro v. United States*, 2022 U.S. App. LEXIS 29765, at *2 (11th Cir. Oct. 25, 2022) (quoting *Holmes*, 547 U.S. at 324). Mr. Nauta cannot meaningfully assist in his defense if he cannot be advised of the information to be presented at his trial in this matter.

To that end, the Supreme Court has long held that anything beyond narrow limitations on the communication between counsel and a criminal defendant infringes upon the Sixth Amended right to assistance of counsel. *See Geders v. United States*, 425 U.S. 80, 89-91 (1976) (holding that a defendant's Sixth Amendment rights were impugned by a protective order broadly limiting how the defendant could communicate with counsel). *See also United States v. Ahmed*, 2023 U.S. App. LEXIS 17850, at *8 (11th Cir. Jul. 13, 2023) ("A *Geders* violation assume[es] prejudice when an unconstitutional statute or court order hinders a defense attorney . . . [from] rendering assistance of counsel to his client." (internal quotation marks omitted) (quoting *United States v. Roy*, 855 F.3d 1133, 1148 (11th Cir. 2017) (en banc)).

Here, the government cites the Classified Information Procedures Act, [insert cite] which

creates a statutory framework for the protection of information sensitive to our national security. However, the Act does not serve as an absolute bar to the provision of discovery and was specifically adopted to allow the government to, "protect[] and restrict[] the discovery of classified information in a way *that does not impair the defendant's right to a fair trial*." *See generally United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2007) (emphasis added) (quoting *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002). While the government may have a legitimate interest in ensuring the special treatment of the discoverable information in this case, it seeks to apply CIPA in an overly broad manner without justification and, more importantly, in a manner that would needlessly infringe upon Mr. Nauta's constitutional guarantee of, "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Although the right of a meaningful opportunity to present a complete defense can be, "subject to reasonable restrictions[,]" *United States v. Scheffer*, 523 U.S. 303, 308 (1998), "[a]n evidentiary ruling may violate the right if it infringe[s] upon a weighty interest of the accused." *United States v. Nunez*, 1 F.4th 976, 991 (11th Cir. 2021) (internal quotation marks omitted) (quoting *Holmes*, 547 U.S. at 324)).

The government's request for a protective order rests exclusively on a conclusory, generic interest in nondisclosure that fails to overcome Mr. Nauta's specific pressing needs to counter the prosecution's case and support his defense. Here, the government makes no claim of any such risk and rests on formal arguments that do not overcome the due process, compulsory process, confrontation, effective assistance of counsel, and other trial rights of a defendant. Preeminent among the relevant concerns, particularly absent any genuine risk of harm to any other party, is protection of these fundamental constitutional rights. Of note, for years Mr. Nauta was permitted access to classified information and the government cites not one allegation – even in the instant

indictment – that he violated this privilege.  It does not, because it can not.

Indeed, both the Supreme Court and courts in other circuits recognize that the government's ability to withhold information based on state secrets or national security in criminal matters is not absolute, and specifically needs to strike a balance with a defendant's right to discovery and right to present a meaningful defense.  *See Aref*, 533 F.3d at 79 ("[T]he Court explained that in criminal cases [] the Government was not permitted to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." (internal quotation marks omitted) (quoting *Reynolds v. United States*, 345 U.S. 1, 12, 12 n.27 (1953), *superseded by statute on other grounds*)).

The key question in consideration of a restriction of access to relevant discovery is whether there is a sufficient basis to deny the defendant knowledge of the full parameters of the evidence to be offered by the government, how the evidence affects the prosecution theories of the case and the bases for those theories, and how the relevant evidence can be placed in context to address and defend against not only the specific elements of the charged offenses, but how the evidence pertains to the scope of the conspiracies charged.  This is particularly true where the conspiracy allegations that the government will use at trial to portray the defendant's actions as part of a partnership in criminal purposes compel an understanding of the totality of the evidence.

Apart from the use of the documents at trial and to guide defense preparation, the issue of the nature and particulars of the documents is highly relevant to the defendant's right to protect against undue and unfair prejudice, including that arising from a joint trial.  The defendant cannot reasonably determine whether to pursue a severance based on unfair prejudice absent an accurate understanding of the evidence and an ability to rationally consult with counsel concerning such issues.  Similarly, in order for the defendant to determine whether there are any special safeguards

that may be used at trial to diminish the prejudice that may arise from the government's use of individual documents or other potentially prejudicial material to prove its case at trial, the defendant has a right to participate in those aspects of his defense.  And the defendant cannot understand how evidence he may offer in his own behalf will be viewed by the jury absent an understanding of the case to be presented in its entirety by the government.

The defense concerns regarding prejudice at a jury trial apply as well as to aiding the defense in jury selection stage of the case, where, depending upon the topics addressed and the political or polemical points presented by the documents, issues of particular concern to given categories of jurors should be made known so that the defendant may personally participate in important jury selection decisions.  Regarding jury selection, if a document reveals some form of bias or touches on a political issue of great sensitivity to a group of jurors, depriving the defendant of that information even for the purpose of the exercise of cause or peremptory challenges would create unnecessary prejudice and disadvantage the defendant in comparison with the government's relevant knowledge.

Balanced against these core constitutional concerns is the government's assertion that there can, in some cases, be a risk arising from disclosure.  That risk, when viewed in the individual circumstances of Mr. Nauta, does not exist, nor has the government offered anything to show such a risk.  Notably, if Mr. Nauta has seen any of the relevant documents previously, not only is there is no harm at all from disclosure, but his ability to testify in his own behalf to explain his understanding of what he previously witnessed would be relevant to and aid the defense on questions of specific intent as well as to help prepare for whatever the testimony may show on that issue at trial.  And the contrary state of facts is also material to potential defenses, in the event the defendant has no knowledge of having seen or handled such documents.  Mr. Nauta's knowledge,

if any, about the content of documents that the government addresses in its motion can be determined and analyzed only upon his engaging with counsel regarding the evidence, including explanations and understandings derived from any knowledge about or prior knowledge of the documents.   And if Mr. Nauta has not seen the documents before, that also may be a factor supporting the defense with regard to the failure of proof of the conspiratorial mens rea element, the essential basis for the charges in question.

Above all, the key concern is a fair trial.  The trial of this defendant will focus on allegations of a conspiracy to obstruct justice regarding hiding or mishandling of classified documents.  For the government to say that Mr. Nauta has no interest in litigation over whether the documents were, or were reasonably believed by one of the conspirators to be, classified or to contain national defense information is to ignore the law of conspiracy.  For example, the government cannot hypothecate that the lead defendant told Mr. Nauta that classified documents were to be or had been concealed despite a subpoena for them where the documents that the government claims are classified can be shown, whether through Nauta's individual efforts or in coordination with his counsel or experts to be retained by Nauta, to be other than classified or where Mr. Nauta may, with access, aid counsel in showing that the documents would logically and contextually not have been deemed classified and thus not the subject of a willful conspiracy to conceal classified material.

The case law fully supports Mr. Nauta's opposition to the restrictions proposed.  Every case cited by the government deals with defendants accused of violent, terrorist crimes or the transmission of national defense information to foreign and enemy nations—circumstances wholly unlike those pertaining to Mr. Nauta.  As the cases relied on by the government make clear, in balancing the interests of national security with the rights of a criminal defendant, the specific

circumstances in each case, including the nature of the defendant and the crimes alleged, are critically important.  *See, e.g., United States v. Rezaq*, 156 F.R.D. 514, 524 (D.D.C. 1994) ("Mr. Rezaq is alleged to be a terrorist with connections to an international terrorist network," showing there is "no reason to believe he can be entrusted with national secrets."); *United States v. In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 123, 128 (2d Cir. 2008) (finding defendant's needs to discuss classified materials with counsel were outweighed as to defendant charged with conspiracy to bomb U.S. embassies, where disclosure could "place lives in danger"). As recognized in *In re Terrorist Bombings,* CIPA's "animating purpose is to harmonize a [criminal] defendant's right to obtain and present exculpatory material with the government's need to withhold information from discovery when disclosure would be inimical to national security." 552 F.3d at 115-16 (internal quotes and case citations omitted).  The government has made no showing at all that disclosure of the materials in the present case would be "inimical" to the interests of national security.

Mr. Nauta, a United States citizen, is a veteran of the United States Navy served in the Executive Branch as a respected aide before being honorably discharged from the Navy.  The offenses alleged against him, premised on a novel theory of retention of documents at a known location in Florida, where members of the U.S. Secret Service were present at all times, and related investigative interview responses, bear no resemblance to the crimes of violence, international terrorism, and foreign government espionage that gave rise to clear national security risks in all of the cases cited by the government.  Here, where there is a notable *lack* of risk to national security, the balance of interests weighs decisively in favor of the defendant, whose access to the documents at issue is essential to ensuring his fair trial rights.  *See* Motion, at. 4 ¶ 11 (July 27, 2023) (ECF No. 84) (citing *In re Terrorist Bombings*, 552 F.3d at 122 (providing that the defendant may not

be deprived of evidence "useful to counter the government's case or to bolster a defense")).  *See also United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) (providing that the government's request for nondisclosure "must give way" where the evidence sought "is relevant and helpful, or essential to a fair determination of a cause").

The remaining cases cited by the government are readily distinguishable:  *United States v. Hausa*, 232 F. Supp. 3d 257, 266-67 (E.D.N.Y. 2017) (the defendant, charged with conspiracy to bomb a U.S. government facility,[2] was disruptive in court hearings; the government was not offering the evidence at issue into evidence and hence the evidence at issue was not pertinent to the case; and the defendant had multiple experienced lawyers with CIPA clearance);  *Abu Ali*, 528 F.3d at 221, 253, 255-56 (the defendant, charged with violent, al Qaeda-affiliated terrorist plans, did not argue that disclosure of the redacted information was necessary for him to refute his involvement; admission of classified versions of documents without disclosing the same versions to the defendant clearly violated the Confrontation Clause, even where prior to trial, the defendant was provided with the unredacted substantive content of the materials);  *United States v. Daoud,* 755 F.3d 479, 480, 481-82, 485 (7th Cir. 2014) (the defendant, charged with violent, terrorist crimes, including attempted use of a weapon of mass destruction, attempted destruction of a building using an explosive, and murder for hire, sought FISA, not CIPA, material, as to which different statutory constraints on disclosure apply; by statute, a court may order such disclosure only where "necessary" for "an accurate determination of the legality of the surveillance"; in that discrete context, "no court has ever allowed disclosure of FISA materials to the defense"); *United States v. Truong Dinh Hung*, 667 F.2d 1105, 1107 (4th Cir. 1981) (the defendant, convicted of

---

[2]  *See United States v. Hausa*, 922 F.3d 129, 131 (2d Cir. 2019) (setting forth Al-Qaeda member Hausa's offenses, which involved violence and terrorism).

transmitting and altering classified documents to the government of North Vietnam, sought disclosure of *Jencks* material in connection with his post-conviction motion to vacate;[3] in this collateral context, nondisclosure was deemed harmless error where the material lacked impeachment value, the witness was impeached on "numerous" other grounds, and the material afforded no new information to the defendants); *Rezaq*, 156 F.R.D. at 515, 524, 525 (the defendant, charged with airplane hijacking, killing two passengers and attempting to kill three more, had connections to "an international terrorist network;" monitoring his mail and telephone calls, which were in the defendant's language of origin, was difficult; and his knowledge of classified information would not contribute to his effective defense); *United States v. Moussaoui*, 591 F.3d 263, 266, 290 (4th Cir. 2010) (the defendant, charged with six terrorism-related counts of conspiracy arising from the al Qaeda terrorist attacks on September 11, 2001, was not entitled to access to classified evidence in connection with his post-conviction motion to vacate, where he knew of the evidence yet chose to enter a guilty plea before completion of the classification review process, rendering the plea informed and strategic); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d at 102, 117, 125 (the defendants, charged with terrorist offenses stemming from their involvement in al Qaeda's conspiracy to bomb American embassies in Kenya and Tanzania, were part of a conspiracy whose members had forwarded to other coconspirators unfiled court documents to which they had gained access, and the government "stipulated to all of the facts the defendant was seeking to establish through use of the classified information").

The government further cites language in protective orders issued by district courts in other cases, all but one of which was consented to or unopposed.  Motion at. ¶ 8.  While none of the

---

[3] *See United States v. Hung*, 629 F.2d 908, 911-912 (4th Cir. 1980) (direct appeal setting forth defendant's underlying offenses).

orders contain any analysis of the reasons for their issuance beyond an asserted need to protect national security, the indictments in each of those cases set forth self-evident national security risks that are entirely absent from the instant case, including threatened use of explosives and transmission and sale of defense data to foreign governments. *See United States v. Brown* (M.D. Fla.), No. 8:21-cr-348, ECF No. 21—firearms and explosives violations; *United States v. Jonathan & Diana Toebbe* (N.D. W.Va.), No. 8:21-cr-00049, ECF No. 37[4]—sale of restricted data, consisting of U.S. military information, to an unspecified foreign nation, in violation of the Atomic Energy Act; *United States v. Fuentes* (S.D. Fla.), No. 1:20-cr-20129-DMM, ECF No. 10—acting as an agent of the government of Russia; *United States v. Thompson,* 1:20-cr-00067-JDB, ECF No. 9 (D. D.C.)—delivering defense information to assist the government of Lebanon; *United States v. Dalke* (D. Colo.), No. 1:22-cr-00313-RM, ECF No. 16—transmission of national defense information to the government of Russia.

In short, the examples cited by the government are inapplicable here.

## CONCLUSION

Based on the nature of the charges and their inextricable interconnection with the substance of the classified documents, Mr. Nauta's "need to know," *United States v. Daoud*, 755 F.3d at 484, as explained above, is unquestionable.  This need, viewed against the absence of any countervailing risk to national security, militates conclusively in favor of disclosure of the documents at issue.  The government's renewed motion for a protective order should be denied in relevant part and secure review and counsel consultation for Mr. Nauta should be preserved.

[SIGNATURE ON NEXT PAGE]

---

[4] As reflected in the PACER system, the government's citation to the Southern District of West Virginia appears to be a scrivener's error.

Dated: August 9, 2023                    Respectfully submitted,

        */s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr. (*pro hac vice*)
400 Fifth Street Northwest, Suite 350
Washington, District of Columbia  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
stanley@brandwoodwardlaw.com

        */s/ Sasha Dadan*

Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida  34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

<u>**Certificate of Electronic Service**</u>

I hereby certify that on August 9, 2023, I electronically submitted the foregoing, via electronic mail, to counsel of record.

Respectfully submitted,

_/s/ Sasha Dadan_

Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida  34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*