

**SEALED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION



CASE NO. 23-80101-CR-CANNON/REINHART

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) FILED UNDER SEAL |
| WALTINE NAUTA, | ) |
| Defendant. | ) |

## BRIEF FOR THE COURT

On August 7, 2023, this Court entered an Order requiring written submissions following, "news reports of allegations of potential misconduct related to the investigation of this case and related reports of a review by the United States District Court for the District of Columbia." Order at 1 (Aug. 7, 2023) (ECF No. 101). Specifically, the Court requested defense counsel to, "file under seal with this Court a complete and current account of the accuracy, substance, and status of the reported allegations," and to, "attach to the submission any pertinent written materials on the subject, including any materials submitted to the United States District Court for the District of Columbia." Order at 1-2 (Aug. 7, 2023) (ECF No. 101).

As detailed in the attached correspondence to Chief Judge Boasberg of the United States District Court for the District of Columbia, on August 24, 2022, undersigned defense counsel met with counsel for the government, Jay Bratt, concerning his representation of Defendant Waltine Nauta on August 24, 2022. See Letter to Chief Judge Boasberg from Stanley E. Woodward, Jr. (June 7, 2023) (attached hereto as Exhibit A). The nature and circumstances of that meeting were

shared with only a select few individuals – defense counsel's wife; defense counsel's law partner, Stan Brand; and former counsel to President Trump, Jim Trusty and John Rowley. At defense counsel's request the nature and circumstances of the meeting were kept confidential for the simple reason that we litigate our cases in Court and no litigation was then pending.[1]

To that end, the allegations in news reports are largely accurate. By way of background, on May 23, 2023, attorneys for former President Trump wrote Attorney General Merrick Garland requesting a meeting to discuss, "the ongoing injustice that is being perpetrated" by Special Counsel Jack Smith. *See Letter to The Honorable Merrick B. Garland from John P. Rowley, III* (May 23, 2023).[2] That meeting occurred, albeit without Attorney General Garland, on June 5, 2023, as reported by *The New York Times*. Specifically, *The Times* reported that lawyers for former President Trump met with Justice Department Officials, including Special Counsel Jack Smith, "to discuss their concerns about Mr. Smith's investigations into Mr. Trump." Alan Feuer, Maggie Haberman, Glenn Thrush, and Jonathan Swan, Trump Lawyers Visit Justice Dept. as Classified Documents Inquiry Nears End, *The New York Times* (June 5, 2023).[3] Relevant here, *The Times* also reported that, "[t]he letter to Mr. Garland was an abbreviated version of a longer one that contained a more detailed account of the concerns by Mr. Trump's lawyers." This was also true – the longer letter referenced by *The Times* included reference to defense counsel's interaction with Mr. Bratt on August 24 and was removed at defense counsel's request because, again, there was no active litigation pending in the District of Columbia or elsewhere and we litigate our cases in

---

[1] Indeed, with respect to Mr. Nauta, no substantive legal proceedings occurred before his indictment other than the Special Counsel's Office election to seize his phones by execution of a search warrant rather than by either contacting counsel or issuing a grand jury subpoena for records actually responsive to their investigation.

[2] *Available at* https://truthsocial.com/@realDonaldTrump/posts/110420928827917285.

[3] *Available at* https://www.nytimes.com/2023/06/05/us/politics/trump-justice-dept-classified-documents.html?searchResultPosition=89.

Court. In addition, although several media outlets, including *The Times*, sourced that the longer letter described defense counsel's interactions with Mr. Bratt, as well as the identity of defense counsel (the letter anonymized the interaction), they agreed not to disclose defense counsel's identity at defense counsel's request because, we litigate our cases in Court.

Also on or about June 5, 2023 – discussions occurred at length over the preceding weekend – defense counsel agreed that assuming the anticipated meeting with the Justice Department was not constructive, the nature and circumstances of defense counsel's August 24 meeting with Mr. Bratt could be disclosed to the Court in a motion for the release of grand jury materials. As this Court is well-aware, Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure permits disclosure of grand jury materials where: (i) preliminarily to or in connection with a judicial proceeding; [or] (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." The conjunctive of these rules supports the proposition that grand jury materials should be disclosed to the target of an investigation who believes an imminent indictment would thereafter be dismissed because of misconduct before that grand jury and, of course, the mere fact of an indictment has serious consequences.

Therefore, on June 5, 2023, counsel for former President Trump filed a motion requesting Chief Judge Boasberg order the disclosure of certain grand jury materials identified by counsel as likely to reflect misconduct by the government before the grand jury. Mot., *In re Grand Jury*, No. 23-gj-10 (D.D.C. June 5, 2023) (attached hereto as Exhibit B). Among other things, the motion described defense counsel's August 24 meeting with Mr. Bratt. With permission of the Chief Judge, on June 7, 2023, senior attorneys with the Special Counsel's Office contacted defense counsel to inquire as to the veracity of the allegations included in the motion filed by counsel for former President Trump. Defense counsel confirmed the general accuracy of the allegations, but

3

declined to be formally interviewed by the Special Counsel's Office out of fear of becoming a witness in one or more proceedings related to defense counsel's representation of Mr. Nauta and others. Instead, the government and defense counsel agreed that defense counsel would memorialize his recollection of the nature and circumstances of the August 24 meeting with Mr. Bratt in correspondence to the Chief Judge of the District Court for the District of Columbia.

To be sure, and as indicated in defense counsel's correspondence, defense counsel did not suggest that it was appropriate for Chief Judge Boasberg to definitely determine what occurred at the August 24 meeting and/or whether that interaction, standing alone, warranted any relief concerning the impending indictment as to former President Trump and/or Mr. Nauta. Rather, and again as articulated in defense counsel's correspondence, defense counsel intended to confirm that an incident occurred, in combination with other questionable conduct by attorneys with the Special Counsel's Office outlined in former President Trump's motion, there seemed to be a basis– in defense counsel's humble opinion – for the disclosure of additional grand jury materials for review by both the Court, counsel for former President Trump, and defense counsel.

On June 8, 2023, former President Trump posted several messages on his Truth Social media platform alleging prosecutors with the special counsel's office had attempted to "bribe & intimidate" a lawyer representing a witness in the case and claimed that the lawyer had been offered an, "'important judgeship' in the Biden administration" if the client "'flips' on President Trump."[4] These statements were widely reported, and although multiple media outlets had already sourced that the attorney referenced by former President Trump was defense counsel, they nevertheless continued not to report this at defense counsel's request. Nor did defense counsel correct former President Trump's narrative because, again, we litigate our cases in court and both

---

[4] *Available at* https://truthsocial.com/@realDonaldTrump/posts/110506672426765444.

the government and Chief Judge Boasberg were now aware of defense counsel's position on the August 24 meeting with Mr. Bratt. Later that day, however, defense counsel was first publicly identified in reporting by *The Guardian* on June 8, 2023. *See* Hugo Lowell, Lawyer for Trump Valet in Mar-a-Lago Documents Case Alleges Misconduct (June 8, 2023).[5]

Also on June 8, 2023, the government would file under seal two significant pleadings. First, as would become known late on the evening of January 8, 2023, earlier that day a grand jury sitting in the Southern District of Miami returned an indictment as against former President Trump and Mr. Nauta. That substance of that indictment would not become known to defense counsel until the next day, June 9, 2023, when it was unsealed. *See* Indictment (June 8, 2023) (ECF No. 3).

In addition, and also on June 8, 2023, the government filed its response to former President Trump's motion to disclose grand jury materials – *ex parte* and under seal. Opp., *In re Grand Jury Subpoenas*, No. 23-gj-38 (D.D.C. June 15, 2023) (attached hereto as Exhibit C).[6] In it, the government describes defense counsel as not credible. The first time defense counsel was privy to this allegation was August 8, 2023, meaning that proceedings that occurred before Chief Judge Boasberg between June 8, 2023, and August 8, 2023, occurred without the ability of defense counsel to defend, and rebut, the allegations lodged by the government in its filing.[7] On June 15, 2023, Chief Judge Boasberg ordered the parties to submit a joint status report, "in light of the recent indictment of former President Trump . . . indicating whether that development changes

---

[5] *Available at* https://www.theguardian.com/us-news/2023/jun/08/lawyer-trump-valet-nauta-mar-a-lago-classified-documents-misconduct-allegation.

[6] Defense counsel does not know why the docket number for this matter was switched, only that counsel for former President Trump was directed by the Chief Judge to re-file the motion in the new docket number.

[7] Such proceedings included the government's request for the appointment of conflicts counsel for defense counsel's former client Yuscil Taveras, which will be the subject of briefing the Court has ordered for next week.

5

either side's position." On June 15, 2023, the parties submitting a joint status report in which the government advised, "the government will produce in discovery the grand jury transcripts that the former President requested in the Disclosure Motion, if such transcripts exist," and, accordingly, the parties agreed the court should deny the motion as moot. Status Report, *In re Grand Jury Subpoenas*, No. 23-gj-38 (D.D.C. June 20, 2023) (attached hereto as Exhibit D). On June 27, 2023, Chief Judge Boasberg denied former President Trump's motion as moot, at the joint request of the parties. See Docket Sheet, *In re Grand Jury Subpoena*, No. 23-gj-38 (D.D.C.) (attached hereto as Exhibit E).[8]

The *ex parte* submission of the government to Chief Judge Boasberg unfairly questions the credibility of defense counsel and is incredulous in its *ipsit dixit* assertions. Specifically, the government claims that it is "nonsensical" that, "a 30-year veteran federal prosecutor would engage in such a ham-handed tactic in this sensitive investigation." Ironically, that *is exactly* what defense counsel advised Mr. Bratt at the meeting. In sum and substance, at the conclusion of their meeting defense counsel advised the prosecutors in the meeting that what they were asking – to demand that Mr. Nauta cooperate in their investigation at defense counsel's first meeting with Mr. Nauta – would guarantee only one result – Mr. Nauta would retain alternative counsel. Instead, defense counsel predicted, that as the government's investigation continued, they would benefit

---

[8] Not only did the government file its response to former President Trump's motion *ex parte* and under seal, but in response to this Court's August 7, 2023, Order directing the foregoing briefing it also sought the disclosure of the above-referenced pleadings *ex parte* and under seal. Mot., *In re Grand Jury Subpoena*, No. 23-gj-38 (D.D.C. Aug. 7, 2023) (attached hereto as Exhibit F). This request was submitted *ex parte* – as referenced in Chief Judge Boasberg's Order authorizing the disclosure of the materials, Order, *In re Grand Jury Subpoena*, No. 23-gj-38 (D.D.C. Aug. 7, 2023) (attached hereto as Exhibit G), despite the fact that earlier that day, counsel for former President Trump had inquired about the government's consent in seeking the disclosure of the records requested by the Court, to which the government advised it would respond promptly. Accordingly, defense counsel filed a motion with Chief Judge Boasberg to disclose both the docket for this matter as well as for the government's *ex parte* submission. Mot., *In re Grand Jury Subpoena*, No. 23-gj-38 (D.D.C. Aug. 11, 2023) (attached hereto as Exhibit H). The government ultimately did not oppose defense counsel's motion, without addressing the spurious fact that it had been filed *ex parte*. Opp., *In re Grand Jury Subpoena*, No. 23-gj-38 (D.D.C. Aug. 11, 2023) (attached hereto as Exhibit I).

from working with – not another Trump lawyer, as defense counsel was described by the government at the time – insofar as defense counsel has strived to meet or exceed every ethical cannon applicable to defense counsel's representation in this and related matters.[9]

Returning to the government's *ex parte* allegations, the government asserts as corroboration that defense counsel's recollection of the August 24 meeting is "nonsensical" the fact that Mr. Bratt did not understand defense counsel to be eligible for a nomination to the Superior Court for the District of Columbia by the President of the United States, but rather, that defense counsel served as a commissioner on the District of Columbia Judicial Nomination Commission for the District of Columbia.

By way of background, in 1970, Congress enacted the District of Columbia Court Reform and Criminal Procedure Act, creating as the District's trial court, the Superior Court of the District of Columbia, an Article I Court. Thereafter, in 1973, Congress enacted The District of Columbia Home Rule Act establishing the Judicial Nomination Commission and ascribing it the responsibility of recommending candidates for nomination to the Superior Court by the President of the United States for confirmation by the United States Senate. Of note, Presidential nominees are required to be recommended by the Judicial Nomination Commission – the District does not have its own Senators – and *only* attorneys recommended by the Commission to the President of the United States are statutorily eligible for nomination and appointment to this court. Also of relevance, an attorney recommended for a seat on a court is thereafter eligible for nomination to fill *any* seat on the court until the seat for which the attorney has been recommended has itself

---

[9] Despite defense counsel's belief, not long after the August 24 meeting, and following defense counsel's review of Mr. Nauta's grand jury transcript, defense counsel renewed his offer of an attorney proffer to the government. This offer was rejected, and instead government counsel advised that unless Mr. Nauta was willing to cooperate without limitation any proffer from defense counsel was unwanted. A copy of defense counsel's email correspondence with government counsel, to which no reply was received, is attached hereto as Exhibit J.

been filled. Thus, although defense counsel was recommended by the JNC for nomination to the Court in November of 2020, he remains eligible for nomination by President Biden to this day as the seat for which he was recommended has yet to be filled.

Returning to Mr. Bratt's purported misunderstanding, it strains credulity to suggest that a 30-year veteran of the Department of Justice in the District of Columbia is unaware of the process by which judges are appointed to the D.C. Superior Court. Of note, the U.S. Attorney's Office for the District of Columbia is responsible for handling the majority of prosecutions in the Superior Court (excepting domestic violence and traffic violations, among others). As one biography of Mr. Bratt confirms, Mr. Bratt, "has many years of experience as a line prosecutor in the U.S. Attorney's Office for the District of Columbia." Jay I. Bratt Biography, Practicing Law Institute, https://www.pli.edu/faculty/jay-i.-bratt-i1481099 (last visited August 11, 2023).

Nor does the fact that defense counsel has a biography on the JNC's website – as all attorneys recommended to the President for nomination do – credibly suggest that anyone, let alone Mr. Bratt, could have haphazardly assumed that defense counsel served (or serves – the website is still active) as a commissioner on the JNC. Nowhere does defense counsel's biography on that website suggest as much, simply clicking on "About JNC" would have allowed Mr. Bratt to learn the identities of the commissioners, and none of the numerous publicly available biographies of defense counsel – including defense counsel's own website – suggest that defense counsel serves as a commissioner on the JNC.[10] Although to suggest as much is flattering to defense counsel, it strains credulity to suggest that a 30-year veteran of the Department of Justice in the District of Columbia does not understand the function of the JNC to the District of

---

[10] Of note, the government describes Mr. Bratt's search as encompassing more than just a haphazard review of the JNC's website: "Bratt did a routine, public-source internet search regarding [defense counsel's] background before the meeting and found the Judicial Nomination Commission page that showed [defense counsel's] *connection* to the Commission." Opp. at 28, *In re Grand Jury*, No. 23-gj-38 (D.D.C. June 15, 2023) (Exhibit C).

Columbia's courts. Rather, as noted in defense counsel's correspondence, Mr. Bratt was aware that defense counsel was somehow eligible for a judgeship – indeed defense counsel believed Mr. Bratt wrongly believed defense counsel had already been nominated for the same.[11]

Also of note is the fact that the government acknowledges there were multiple prosecutors in the room for the exchange between defense counsel and Mr. Bratt. Yet, nowhere within the government's submission is there an express denial by any of the other prosecutors of defense counsel's recollection of events. Rather, the government dismisses the necessity of such a denial by describing the prosecutors as not concluding Mr. Bratt's inquiry to be threatening: *"Putting aside the details of this confusion*, the prosecutors who participated in the meeting are clear that Bratt's comments contained no threat or suggestion of any *quid pro quo*, and that the exchange was purely professional," Opp. at 26, *In re Grand Jury*, No. 23-gj-38 (D.D.C. June 15, 2023) (emphasis added) (Exhibit C); "Bratt and the other prosecutors . . . certainly did not perceive Bratt to have said or done anything threatening or intimidating." Opp. at 29.

Finally, the government's *ex parte* opposition does not refute the additional details of the meeting recalled by defense counsel,[12] as well as defense counsel's interaction with another prosecutor concerning another witness's appearance before the grand jury and the government's callous disregard for defense counsel's health fand family, but rather dismisses them as entirely

---

[11] Moreover, the *only* aspect of defense counsel's background that Mr. Bratt questioned defense counsel about was defense counsel's "connection" to the JNC. If the only purpose in raising the issue, "early in the meeting," was as, "a professional courtesy," to confirm Mr. Bratt's understanding that defense counsel, "must have a good reputation," defense counsel humbly suggests even a cursory review of defense counsel's background would have given Mr. Bratt a multitude of credentials on which to make that observation. By way of just one example, in 2018, defense counsel was awarded the D.C. Bar Pro Bono Attorney of the Year Award, for his leadership of his former law firm's housing law project in the District. *See* Press Release, Akin Gump, https://www.akingump.com/en/insights/press-releases/stanley-woodward-receives-pro-bono-award-from-d-c-bar (last visited Aug. 11, 2023). This prestigious award is well-known in the District of Columbia bar community, and something with which a 30-year veteran of the Department of Justice in the District of Columbia would be familiar.

[12] Mr. Bratt had a folder, at least the top page of which pertained to defense counsel's background. Defense counsel can not say for certain what was behind that first page.

9

appropriate given the circumstances. Maybe. The point in raising these occurrences with Chief Judge Boasberg was not to suggest that, standing alone, any one inconsiderate, "use of a phrase indicating [a] desire to move forward with the testimony that week" – the government does not deny its lawyer inquiring of defense counsel, "what will you come up with next," after defense counsel advised that he would be having his humerus reconstructed on the same day his wife was to be induced (she gave birth early the next morning) – provides a basis for the disclosure of all pertinent grand jury materials, but rather, the point is that taken as a whole there is clear evidence of the grand jury process in these proceedings. Indeed, most recently, government counsel sought to separate defense counsel from a client appearing before the grand jury being questioned about matters touching on executive privilege, for which government counsel was admonished by a Federal District Court Judge concerning the same. *See* Kyle Cheney, Judge Scolds Jack Smith's Team for Causing Delay in Unrelated Jan. 6 Verdict, *Politico* (July 20, 2023).[13] Defense counsel expects the same to be the subject of extensive briefing in the weeks and months to come, but in the meantime is happy to provide any additional information to the Court that it should request.

For now, and to answer the Court's inquiry directly, earlier this week defense counsel learned that on June 7, 2023, the Special Counsel's Office made a voluntarily referral of this matter to the Department of Justice's Office of Professional Responsibility for their review. Defense counsel did not know of this referral until receiving the government *ex parte* opposition to former President Trump's motion for the disclosure of grand jury materials earlier this week and has not otherwise been contacted by OPR concerning this matter.

[SIGNATURE ON NEXT PAGE]

---

[13] *Available at* https://www.politico.com/news/2023/07/20/trump-grand-jury-witness-executive-privilege-00107442.

Dated: August 11, 2023　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Stanley E. Woodward, Jr.*
　　　　　　　　　　　　　　　　　　Stanley E. Woodward, Jr. (*pro hac vice*)
　　　　　　　　　　　　　　　　　　400 Fifth Street Northwest, Suite 350
　　　　　　　　　　　　　　　　　　Washington, District of Columbia  20001
　　　　　　　　　　　　　　　　　　202-996-7447 (telephone)
　　　　　　　　　　　　　　　　　　202-996-0113 (facsimile)
　　　　　　　　　　　　　　　　　　stanley@brandwoodwardlaw.com

　　　　　　　　　　　　　　　　　　*Counsel for Defendant Waltine Nauta*

11

## Certificate of Electronic Service

I hereby certify that on August 11, 2023, I electronically submitted the foregoing, via electronic mail, to counsel of record.

Respectfully submitted,

/s/ Sasha Dadan
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*