# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : : : | No. 23-cr-257-TSC |
| v. | : : : |  |
| DONALD J. TRUMP, | : : |  |
| Defendant. | : : |  |

# RESPONSE IN OPPOSITION TO
# GOVERNMENT'S PROPOSED TRIAL CALENDAR

President Donald J. Trump, through counsel, submits this response in opposition to the government's proposed trial calendar, Doc. 23, and respectfully requests the Court place this case on the April 2026 trial calendar. In support, President Trump states as follows:

## INTRODUCTION

"The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob." *Powell v. State of Ala.*, 287 U.S. 45, 59 (1932).

This is an unprecedented case in American history. The incumbent administration has targeted its primary political opponent—and leading candidate in the upcoming presidential election—with criminal prosecution. The administration has devoted tens of millions of dollars to this effort, creating a special counsel's office with dozens of employees, many of whom are apparently assigned full-time to this case and this case alone.

1

Taking full advantage of the administration's blank check,[1] the government spent over two-and-a-half years investigating this matter. It, among other things, interviewed and subpoenaed hundreds of witnesses, executed over 40 search warrants, and compiled information from countless individual sources. The government included some, but not all, of these materials in a massive, 8.5-terabyte initial production, totaling over 11.5 million pages, together with native files, recordings, and other electronic data not amenable to pagination.

In this District, ordinary order when faced with such overwhelming discovery is to set a reasonable trial schedule, commensurate with the size and scope of discovery and complexity of the legal issues. The government rejects this sensible approach. Instead, it seeks a trial calendar more rapid than most no-document misdemeanors, requesting just four months from the beginning of discovery to jury selection. The government's objective is clear: to deny President Trump and his counsel a fair ability to prepare for trial. The Court should deny the government's request.

The public interest lies in justice and fair trial, not a rush to judgment. Moreover, if the rights to due process and counsel are to mean anything, a defendant must have adequate time to defend himself. The Speedy Trial Act embraces these considerations and so, too, should the Court.

Accordingly, President Trump respectfully requests the Court schedule this case to begin on the April 2026 trial calendar, with the following interim control dates:

- Week of December 4, 2023: Discovery Status Conference and Motions Hearing
- Week of April 15, 2024: Discovery Status Conference and Motions Hearing
- Week of August 5, 2024: Discovery Status Conference and Motions Hearing
- August 1, 2024: Rule 12 and Other Dispositive Motions Due
- August 22, 2024: Oppositions to Rule 12 and Other Dispositive Motions Due

---

[1] *See* U.S. Department of Justice, *Special Counsel's Office – Smith Statement of Expenditures November 18, 2022 through March 31, 2023*, (reporting approximately $5.4 million in direct expenditures and an additional $3.8 million "DOJ component expenses," through March 31, 2023 only, the majority of which relate to salaries and benefits).

2

- September 5, 2024: Replies in Support of Rule 12 and Other Dispositive Motions Due
- Week of December 2, 2024: Discovery Status Conference and Motions Hearing
- Week of April 7, 2025: Discovery Status Conference and Motions Hearing
- Week of August 4, 2025: Discovery Status Conference and Motions Hearing
- Week of December 1, 2025: Discovery Status Conference and Motions Hearing
- January 29, 2026: Motions *in Limine* Due
- February 12, 2026: Oppositions to Motions *in Limine* Due
- February 19, 2026: Replies in Support of Motions *in Limine* Due
- Week of March 2, 2026: Motions Hearing
- Week of March 23, 2026: Final Pretrial Conference
- April 2026: Jury Selection and Trial[2]

This more reasonable schedule—equal to the government's time spent investigating—will allow this case to proceed in an orderly fashion, with both parties having a fair opportunity to review all material information, advance appropriate motions, and apprise the Court of relevant legal issues. Additionally, President Trump's proposed schedule (the "Proposed Schedule") will: (1) avoid scheduling conflicts with other pending matters; (2) provide sufficient time to address the production of discovery under the Classified Information Procedures Act (CIPA); and (3) preserve President Trump's right to seek discovery from third parties, while also addressing significant gaps in the government's productions.

## APPLICABLE LAW

In setting a trial date, the Court must allow the defendant and defense counsel "reasonable time to prepare," as "stripping away the opportunity to prepare for trial is tantamount to denying

---

[2] At this early stage, without having reviewed discovery, President Trump cannot estimate the time he will require to present his case at trial; however, for the present, and without any waiver of rights or arguments, President Trump will adopt the same calculation as the government—4 to 6 weeks for the defense case.

3

altogether the assistance of counsel for the defense." *United States v. Young-Bey*, No. CR 21-661 (CKK), 2023 WL 4706122, at *2 (D.D.C. July 24, 2023) (citation omitted).³

For that reason, the Speedy Trial Act directs the Court to consider the unusual or complex nature of a case, 18 U.S.C. § 3161(h)(7)(B)(ii), and the need to provide "counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence," 18 U.S.C. § 3161(h)(7)(B)(iv).

Thus, "whether a delay is reasonable depends on all the surrounding facts and circumstances," including:

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; [and] the complexity of the case.

*Young-Bey*, 2023 WL 4706122, at *2.

---

³ *See also United States v. Verderame*, 51 F.3d 249, 252 (11th Cir. 1995) (quoting *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963)):

> While we appreciate the heavy case loads under which the district courts are presently operating and understand their interest in expediting trials, we feel compelled to caution against the potential dangers of haste, and to reiterate that an insistence upon expeditiousness in some cases renders the right to defend with counsel an empty formality. In our system of justice, the Sixth Amendment's guarantee to assistance of counsel is paramount, insuring the fundamental human rights of life and liberty. "The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done."

## ARGUMENT

A.  <u>The Enormity of Discovery Warrants the Proposed Schedule</u>

11.5 million pages is a difficult number to comprehend. Ordinarily, a complex, document-intensive criminal case might have a million pages at issue. *See, e.g.*, *United States v. Scarfo*, 41 F.4th 136, 176 (3d Cir. 2022) (open-ended continuance and complex case designation under 18 U.S.C. § 3161(h)(7)(B)(ii) appropriate where discovery included "approximately 1,000,000 pages of information."). To have over ten times that many pages at issue, against a single defendant, is largely unheard of. Such cases are, instead, almost always sprawling civil battles between large companies, which regularly take years to litigate. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (seven years to litigate a case involving approximately 5 million pages of discovery).

To put 11.5 million pages in some perspective, we began downloading the government's initial production on August 13, 2023. Two days later, it was still downloading. We then requested the government send hard drives containing its initial production, which we received on August 16, 2023. Our technology vendor is now preparing to ingest the files into a document review database, but estimates such a large dataset will take several days to process.

Nonetheless, even assuming we could begin reviewing the documents today, we would need to proceed at a pace of 99,762 pages per day to finish the government's initial production by its proposed date for jury selection. That is the entirety of Tolstoy's *War and Peace*, cover to cover, 78 times a day, every day, from now until jury selection.[4] (Keeping in mind this is just to read the government's initial production a single time, to say nothing of trial counsel's need to analyze, organize, and integrate those materials into a cohesive defense presentation.)

---

[4] LEO TOLSTOY, WAR AND PEACE (Vintage Classics Ed., Dec. 2008).

Stated differently, if we were to print and stack 11.5 million pages of documents, with no gap between pages, at 200 pages per inch, the result would be a tower of paper stretching nearly 5,000 feet into the sky. That is taller than the Washington Monument, stacked on top of itself eight times, with nearly a million pages to spare:



Yet even this analogy belies the true scope of discovery: it includes only printed text, without considering native files, audio recordings, phone and electronic device image files, and other materials that will require substantial, labor-intensive review. *See, e.g.,* Ex. A at 38:1–3 (August 11, 2023, Hr'g Tr.) (government counsel describing "hundreds of recordings of witness interviews"); *id*. at 69:16–19 (describing "a hard drive with 2703(d) returns and extractions from other certain electronic facilities [that are] impossible to paginate or to identify by that").

Likewise, it does not consider the large number of additional documents that:

- the government has not, but still intends to produce. *See, e.g.,* Ex. A at 70:5–7 ([Government Counsel]: "We anticipate additional productions in the coming weeks and our goal is to have discovery substantially complete by August 28.");

- the government will obtain going forward. Doc. 23 at 5 (Government Response) ("The Government would then continue to produce to the defense on a prompt rolling basis any additional materials that are obtained going forward.");[5]

- President Trump may request from the government in discovery. *See* Fed. R. Crim. P. 16(a)(1)(E)(i) (requiring production of materials "within the government's possession, custody, or control" that are "material to preparing the defense"); *United States v. Libby*, 429 F. Supp. 2d 1, 7–8 (D.D.C. 2006) (defendant may make requests for 16(a)(1)(E)(i) material and that "the materiality standard is not a heavy burden." (citation and quotation marks omitted)); and

---

[5] The government's grand jury investigation appears to continue, suggesting the volume of additional materials will only grow. *See* Dan Mangan, CNBC, *D.C. grand jury that indicted Trump meets Tuesday as election probe continues*, (Aug. 8, 2023), https://www.cnbc.com/2023/08/08/trump-grand-jury-meets-again-as-election-probe-continues.html

7

- President Trump may request from third parties. Fed. R. Crim. P. 17(c) (permitting pretrial subpoenas with leave of court).[6]

For its part, the government suggests that it has "prepare[d] and organize[d] discovery in a manner that will assist the defendant in his review of produced materials." Doc. 23 at 2. Setting aside the dubious accuracy of this statement, prosecutorial organization of information cannot solve the defense's largest burden—reviewing the documents and preparing to use them at trial. That takes time—a lot of time in this instance—regardless of how the documents are labeled.

Similarly, the government claims it will "provide a compilation of certain key" documents and "identif[y] certain material within the discovery that is arguably favorable to the defendant." Doc. 23 at 5. This, again, is no answer. The government's view of importance surely differs substantially from the defense, and it goes without saying that a criminal defendant should not build his case on the word of his accusers.

Rather, President Trump has a right to review all material information, regardless of the government's view of the significance of such information to the defense. This is a critically important process, as identifying and presenting *Brady* material will be central to demonstrating President Trump's innocence. *Cf. Newman v. Hopkins*, 247 F.3d 848, 852 (8th Cir. 2001) ("[T]he right to present favorable evidence to a jury is clearly established by the [Supreme] Court's precedent."). [7]

---

[6] We anticipate seeking leave to issue multiple Rule 17(c) subpoenas. By way of just one example, we would request a subpoena directed to the House of Representatives for documents related to the investigation by the January 6th Select Committee. We will also need to address the reported destruction of documents by that committee, which could be potentially exonerative to President Trump.

[7] Even by its own terms, the government states only that it will identify "certain," but not all, documents it views as significant to its case or favorable to the defense. Doc. 23 at 5. Thus, whatever limited usefulness the government's key document folder might provide, it will not alter President Trump's need to fully review all discovery. Additionally, in cases such as this with

8

Simply put, the discovery in this case is enormous and growing. Although defense counsel will, of course, work diligently to review this material, the process will take time. For example, even under our Proposed Schedule, we would need to review approximately 12,000 pages per day to complete a first pass of the initial production by our proposed trial date. This is an exceedingly rapid pace, by any measure, and one that will only be manageable with intense diligence. The government's proposal, by contrast, is flatly impossible. No defendant can reasonably review nearly 100,000 pages of discovery per day.

Thus, "even exercising 'due diligence,'" the government's proposal would deny President Trump "reasonable time necessary for effective preparation," and, in so doing, violate his rights to due process and counsel.[8] *United States v. Taylor*, No. CR 18-198 (JEB), 2020 WL 7264070, at \*7 (D.D.C. Dec. 10, 2020) (quoting 18 U.S.C. § 3161(h)(7)(B)(iv)); *see also United States v. Rice*, 746 F.3d 1074, 1079–80 (D.C. Cir. 2014) (affirming continuance based, in part, on complexity of the case and volume of discovery, and District Court's finding that "the defense itself is not going to be in a position to adequately provide the quality of representation the defendants are entitled to" without time to review pertinent discovery).[9]

---

substantial discovery, the Court may require the government to go beyond identifying "certain key" documents, and instead identify all "those items it intends to offer in its case-in-chief at trial." *United States v. Anderson*, 416 F. Supp. 2d 110, 116 (D.D.C. 2006).

[8] It stands as no small irony that the government seeks to deny President Trump his constitutional rights in a prosecution where the government wrongly alleges President Trump violated the rights of others.

[9] The government contends that President Trump has been "aware of . . . certain relevant information made public through hearings and the report written by the House Select Committee to Investigate the January 6th Attack on the United States Capitol" and therefore should not need to thoroughly review discovery. Doc. 23 at 6. However, the government simultaneously advises only "a relatively small percentage of discovery" is non-sensitive. Ex. A at 28:11–12. As only non-public material may be marked sensitive, Doc. 28 at 1, that means President Trump had no meaningful ability to review the government's discovery prior to production. (Nor would he have

9

Without doubt, the public has an interest in the prompt resolution of this case; however, as the Speedy Trial Act recognizes, that interest must yield to the public and the defendant's overriding interest in a just proceeding. The Proposed Schedule allows President Trump to defend himself fairly. The government's proposal does not. Accordingly, the Court should adopt the Proposed Schedule.[10]

B.  The Complexity of this Case Warrants the Proposed Schedule

The large volume of discovery in this matter is not happenstance, but reflects the reality that this is a complicated, unusual case. 18 U.S.C. § 3161(h)(7)(B)(ii) (permitting continuances for complex or unusual cases, or where the Court must address "novel questions of fact or law"). There are hundreds of potentially relevant witnesses spread across the country. Many are current or former government officials, including within the Department of Justice itself. Events alleged in the Indictment, and which are otherwise pertinent, likewise occurred throughout the country. Classified documents are at issue, as well as large quantities of search warrant materials that may be subject to suppression. As noted above, President Trump will seek Fed. R. Crim. P.

---

known what materials to review, as the government did give any pre-indictment explanation of its theory of the case, let alone identify any information it purports supports those charges.)

At the same time, the government has identified no good reason why it waited 31 months to seek an indictment. The notion that the government may, with all its vast resources, spend years investigating this case, only to turn and demand the defense be prepared for jury selection in just four months defies all notions of fairness.

[10] The government invokes the violence on January 6, 2021, as a reason to expedite the trial calendar, arguing it is "clearly a matter of public importance." Doc. 23 at 4. First, the Indictment does not charge President Trump with causing or participating in any violence. The fact that others have allegedly done so cannot factor into President Trump's trial date. Moreover, the widespread interest in these proceedings counsels a deliberate approach, protective of individual rights. The public's interest is in truth, fairness, and justice, not a rush to judgment.

16(a)(1)(E)(i) discovery from government departments and witnesses, as well as pretrial 17(c) subpoenas, which may raise a host of difficult issues for the Court to resolve.[11]

These factors alone suggest this case is complex under the meaning of the Speedy Trial Act and weigh in favor of a lengthier trial calendar. *See United States v. Raymond*, No. CR 21-380 (CKK), 2023 WL 2043147, at *4 (D.D.C. Feb. 16, 2023) (holding case as complex and granting government motion for continuance, over defendant's objection, based on, *inter alia*, dispersion of witnesses and classified information); *see also Barker v. Wingo*, 407 U.S. 514, 531 (1972) ("To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").

However, this case is not just complex or unusual. It is *terra incognita*. The protests at Capitol Hill aside, no person in the history of our country has ever been charged with conspiracies related to the Electoral Count Act. No president has ever been charged with a crime for conduct committed while in office. No major party presidential candidate has ever been charged while in the middle of a campaign—and certainly not by a Justice Department serving his opponent. These and numerous other issues will be questions of first impression, requiring significant time for the parties to consider and brief, and for the Court to resolve. The Proposed Schedule provides that time. The government's timeline does not. Consequently, the complexity and unusual nature of this case favors the Proposed Schedule.

---

[11] The government acknowledges that it considers materials obtained from a congressional committee and the United States Secret Service are material to this case. Doc. 23 at 5. Many other governmental agencies may have information favorable to the defense as well. The government cannot pick and choose what sources of information are important to the determination of this matter; justice requires that the defense be accorded the time to consider, request, and review all information material to the charges.

11

C.      The Proposed Schedule is Consistent with Ordinary Order

As the Court stated at our August 11 hearing, and as the government then agreed, this case should "proceed[] in the normal course that our criminal justice system prescribes." Ex. A at 71:3–5; Doc. 15 at 8 (Gov't Reply in Support of Motion for Protective Order) ("Normal order should prevail."). As explained above, the normal course for complex, document-intensive cases is not a rush to trial, but a measured schedule that preserves the defendant's rights to review discovery and raise appropriate motions with the Court.

Indeed, the median time from commencement to termination for a jury-tried § 371 charge is 29.4 months—many times longer than the government's proposal schedule.[12] (And this reflects only the median, meaning half of all such cases take more time based on individualized assessments of discovery volume, complexity, and similar concerns.)

Likewise, this Court regularly allows far more time than the government proposes, even in cases involving protests at the Capitol on January 6, 2021. *See, e.g.*, *United States v. Foy*, No. 21-cr-0108 (28 months from indictment to stipulated bench trial on 4-page indictment); *United States v. Nordean, et al*, No. 21-cr-0175 (TJK) (21 months); *United States v. Crowl, et al*, No. 21-cr-0028 (APM) (23 months); *United States v. Kuehne, et al*, Case No. 21-cr-160 (29 months); *United States v. Hostetter, et al*, Case No. 21-cr-0392 (RCL) (24 months).

---

[12] Administrative Office of the United States Courts, *Table D-10: U.S. District Courts–Median Time Intervals From Commencement to Termination for Criminal Defendants Disposed of, by Offense, During the 12-Month Period Ending September 30, 2022*, at 2, jb_d10_0930.2022.pdf (uscourts.gov).

12

Ordinary order, in other words, is adherence to the Constitution and the Speedy Trial Act, together with their assurances of fair and just criminal trials, regardless of the government's ill-placed desire to hurry this case to a conclusion.[13]

D.  The Government's Proposal is Unworkable Under CIPA

CIPA controls the disclosure of classified information in this matter. Doc. 23. As the government is aware, proceedings under CIPA are complicated, and "often lengthen the ordinary trajectory from indictment to trial." Ex. B at ¶ 7 (Decl. of Jay Bratt, June 23, 2023).

These delays can be extensive. As the Special Counsel's foremost expert on CIPA, Jay Bratt,[14] recently explained: the government is unaware of any case with classified discovery that went to trial in less than six months. Ex. C at 16:17–22 ([THE COURT]: "Can you point the Court to any other similar cases involving classified information that have gone to trial following production of discovery in less than six months?" [Mr. Bratt]: "So going to trial in less than six months, no.").

This case will be no different. The government acknowledges even uncomplicated CIPA cases involving "a very small number of documents with no substantive pretrial motions" take a minimum of eight months. *Id*. at 17:5–17. It is, therefore, puzzling that the government would propose a trial calendar the CIPA process cannot accommodate. Our Proposed Schedule, conversely, accounts for CIPA and will ensure any issues under that law are fully resolved by the time of trial.

---

[13] Another key factor in setting any trial date is the detention status of the defendant. That is not a factor here, and there is no reason that this Court should place the government's desire for a headline ahead of the interests of any detained defendant in this District who is awaiting trial.

[14] Mr. Bratt previously led the Department of Justice's Counterintelligence and Export Control Section and testified that he has "extensive experience with [CIPA]." Ex. B at ¶ 7.

13

E.  The Government's Proposal Conflicts with Other Cases

Finally, the government's proposal presents numerous conflicts with other pending matters, including:

- A civil case in New York state court, scheduled for a six-week trial beginning October 2, 2023. Ex. D (Scheduling Order);

- A civil case in the Southern District of New York, scheduled for a two-week trial beginning January 15, 2024. Ex. E (Scheduling Order);

- A criminal case in New York state court, scheduled for a 5-week trial beginning March 25, 2024 (trial date set by oral order);

- A criminal case in Georgia state court, for which the state has requested a March 4, 2024, trial. Ex. F (Proposed Pretrial Scheduling Order); and

- A criminal case in the Southern District of Florida, also prosecuted by the Special Counsel and scheduled for a 5-week trial beginning May 20, 2024. Ex. G (Order Resetting Deadlines).

President Trump must prepare for each of these trials in the coming months. All are independently complex and will require substantial work to defend. Several will likely require President Trump's presence at some or all trial proceedings. Moreover, beyond trial, these cases will include numerous pre-and-post trial hearings that will invariably conflict with the government's proposed trial calendar here. As one example, a pretrial hearing in the Special Counsel's Southern District of Florida prosecution of President Trump is scheduled for December 11, 2023—the same day the Special Counsel proposes jury selection begin in this matter. Ex. G.[15]

---

[15] Co-counsel in this matter, Todd Blanche, also represents President Trump in the Southern District of Florida and New York state court criminal matters.

14

Without question, President Trump's obligation to diligently prepare for this case does not end because of other pending matters. However, the Court may, and should, consider the practical effects these parallel prosecutions will have on President Trump's ability to meet the extraordinarily brief deadlines the government proposes. *See, e.g.*, *United States v. Schardar*, 850 F.2d 1457, 1459 (11th Cir. 1988) (noting "several continuances were granted because defense counsel was involved in other trials"); *United States v. Randall Everette Tennyson*, No. 2:21-CR-364-ECM, 2022 WL 686619, at *1 (M.D. Ala. Mar. 8, 2022) (granting continuance to provide additional preparation time in light of counsel's simultaneous preparation for state court trials).

Once again, the government's proposed schedule does nothing to address these significant concerns; our Proposed Schedule resolves them. Accordingly, the Court should adopt the Proposed Schedule.

## **CONCLUSION**

The Proposed Schedule appropriately balances President Trump's constitutional and statutory rights to counsel and a fair trial with the public's need for promptness. The Proposed Schedule is further consistent with ordinary order and resolves significant conflicts presented by CIPA and other pending prosecutions. Accordingly, the Court should determine that the ends of justice outweigh the interest of the public and the defendant in a speedy trial, adopt the Proposed Schedule, and exclude time through April 1, 2026.

Dated: August 17, 2023

Todd Blanche, Esq. (PHV)
toddblanche@blanchelaw.com
BLANCHE LAW
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

Respectfully submitted,

/s/Gregory M. Singer
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990

*Counsel for President Donald J. Trump*