UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON/REINHART

UNITED STATES OF AMERICA,   )
)
v.   )
)
)
WALTINE NAUTA,   )
)
Defendant.   )
)

## SUPPLEMENTAL BRIEFING RE CLASSIFIED INFORMATION PROTECTION ACT

As has already been extensive briefed, *see* Opp. (Aug. 9, 2023) (ECF No. 105), a defendant's right to a "fair trial" involves the intersection of the Constitutional prohibition against, "withhold[ing] [from a defendant] evidence that is favorable to the defense and material to the defendant's guilt or punishment," *Smith v. Cain*, 565 U.S. 73 (2012) (citing *United States v. Brady*, 373 U.S. 83 (1963)), and the right of a defendant to, "meaningfully assist in [a] defense." *Castro v. United States*, 2022 U.S. App. LEXIS 29765, at *2 (11th Cir. Oct. 25, 2022) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). The passage of the Classified Information Procedures Act, 18 U.S.C. App. 1, *et seq.*, did not limit these rights. Accordingly, any request by the Special Counsel's Office to limit a defendant's access to discovery in this case is improper.

Here, the Court has requested supplemental briefing on the question of, "the ordinary meaning and scope of Section 3 of CIPA"; including an evaluation of, "the text of the provision, the statutory context of CIPA as a whole"; "any decisional law interpreting Section 3"; and "any relevant historical, legislative, or secondary materials informing a proper understanding of Section

3."  Order at 2 (Sep. 13, 2023) (ECF No. 153).

At the outset, consideration of the purpose of the Act is prudent.  As the Act's legislative history makes clear:

> The heart of the bill is its requirement that a criminal defendant notify the court and the Government before trial of any intention to disclose or cause the disclosure of classified information during trial.  The Government may then obtain, prior to trial and in camera a ruling on the relevance or admissibility of the information and may take an interlocutory appeal from an adverse decision.  It is to be emphasized that the bill does not alter the existing standards for determining relevance or admissibility.

126 Cong. Rec. H10315-16 (daily ed. Oct. 2, 1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294.  The purpose of requiring such pretrial litigation was to alleviate the inherent conflict in the responsibility of the Executive Branch to protect our national security while fairly prosecuting those whose trials implicate national security.  As then Assistant Attorney General Philip Heymann summarized:

> The government's understandable reluctance to compromise national security information invites defendants and their counsel to press for the release of sensitive classified information the threatened disclosure of which might force the government to drop the prosecution.  "Graymail" is the label that has been applied to describe this tactic.  It would be a mistake, however, to view the "graymail" problem as limited to instances of unscrupulous or questionable conduct by defendants since wholly proper defense attempts to obtain or disclose classified information may present the government with the same "disclose or dismiss dilemma."

S 1482 [Report No. 96-823], 96th Cong., 2d Sess. (June 18 (legislative day, June 12), 1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294.  *See also* 126 Cong. Rec. H10315-16 (daily ed. Oct. 2, 1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294 ("Graymail may also mean nothing more than that a defendant is exercising his legitimate rights to defend himself through the use of relevant and admissible classified information.").

And as then-Senator Joseph R. Biden, Jr. (D-DE) explained when he introduced the

Classified Information Protections Act to the floor of the Senate:

> Under the procedures we have worked out, *the defendant* will no longer be able to threaten the Government with disclosure of classified information that will later prove inadmissible. With both the prosecution and defense present, the judge is to review in a closed proceeding the question of whether certain material could be used in a trial before the evidence is introduced rather than afterwards.

125 Cong. Rec. S 9184-87 (daily ed. July 11, 1979), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294 (emphasis added). Simply put, the Act alleviates this conflict by requiring, in advance of trial, a defendant to give notice of any intent to rely on classified information at the trial.

Turning then to Section 3, that section provides: "Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States." 18a U.S.C. § 3. The Special Counsel's Office would have this Court read the plain language of the statute to mean that a Section 3 protective order can completely bar *an actual defendant's* access to otherwise discoverable information in his prosecution and, as support for this proposition, submits that the term defendant is intended to refer to "defense counsel."[1] This interpretation is in direct contradiction with the plain language of the statute, which expressly references disclosure to *the actual defendant.*

However, in interpreting the meaning of a statute, courts in this Circuit "*always* begin[] with [a statute's] plain language." *United States v. Ngyugen*, 556 F.3d 1244, 1250 (2009) (emphasis added) (citing *Harris v. Garner*, 216 F.3d 970, 972–73 (11th Cir. 2000) (en banc); *In re Griffith*, 206 F.3d 1389, 1393 (11th Cir. 2000) (en banc); *United States v. Steele*, 147 F.3d 1316,

---

[1] Nor does Rule 16 limit a defendant's access to discovery. *See United States v. Hung*, 667 F.2d 1105, 1108 (4th Cir. 1981) ("Of course, in the usual case when production is ordered, a client has the right to see and now what has been produced.")

3

1318 (11th Cir.1998) (en banc)). *See also Connecticut Nat'l Bank v. Germain,* 503 U.S. 249 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others," which is "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Moreover, in determining the plain meaning of the statute, the Court considers, "both the particular statutory language at issue and the language and design of the statute as a whole." *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267–68 (11th Cir. 2006) (internal quotations and citations omitted).

In a recent en banc decision, the Eleventh Circuit reiterated the importance of the ordinary meaning of words used in a statute. *United States v. Garcon*, 54 F.4th 1274, 1277 (11th Cir. 2022) (explaining that "the ordinary-meaning canon" is "'the most fundamental semantic rule of interpretation'") (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6, at 69 (2012)). As the en banc Eleventh Circuit explained in *In re Griffith*, words used in a statute are to be given their "ordinary meaning." 206 F.3d at 1393. The Court in *In re Griffith* further explained that canons of construction—such as the principles that Congress is presumed to be aware of existing law, including judicial interpretations of a statute, and that interpretations of statutes that render language superfluous should be disfavored—may be used as interpretive tools. Where the purpose of a statute or statutory language is ambiguous, courts can look to legislative history for guidance. *Id.* at 1393.

Thus, the plain language of the statute makes clear that a Section 3 protective order was not intended to limit the provision of classified discovery to *the actual defendant.* And although the Court need not consider the legislative history of Section 3, that history only bolsters this conclusion. For example, when then-Senator Joseph R. Biden, Jr. (D-DE), the Chairman of the Committee with jurisdiction over the proposed legislation – giving him more stature and authority

in speaking about legislative intent – introduced the Classified Information Procedures Act to the Senate floor, he included a, "Section-By-Section Analysis," which provided the following analysis of Section 3:  "The court is given authority to issue protective orders over any classified information disclosed to the defendant *or his attorney*.  The punishment for disclosing such information would presumably be contempt of court."  125 Cong. Rec. S 9184-87 (daily ed. July 11, 1979), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294.  Clearly Congress knew how to distinguish between providing access to a defendant and his attorney.

Similarly, in introducing the Classified Information Procedures Act to the U.S. House of Representatives, Congressman Morgan Murphy (D-IL), explained that "Section 109(a)," which would become Section 3, was "intended to explicitly recognize the authority of the Federal courts to issue protective orders when the government provides *the defense* with classified information or grants access thereto."  125 Cong. Rec. H 5763-64 (daily ed. July 1979), *reprinted in* 1980 U.S.Code Cong. & Admin. News 4294 (emphasis added).  Yet the House bill, like that of the Senate, specifically provided that a federal district court could issue a protective order to, "protect against the disclosure of any classified information disclosed by the United States to any defendant."  Thus, the House, like the Senate, knew how to distinguish a defendant from "*the defense*," but rather chose to acknowledge a defendant's right to discovery as opposed to defense counsel's right to discovery.

Nor was Congress ignorant of the possibility that the Act would adversely affect a defendant's discovery rights.  Indeed, the only difference between the Senate and House versions of the Act pertained to Section 6 proceedings, or, "issues of special concern to the Intelligence Committee and the Judiciary Committee, concerned the standard for alternative disclosure of classified information ruled admissible and the proper time to permit the Government to explain

5

why the particular classified information at issue was so sensitive." 126 Cong. Rec. H10315-16 (daily ed. Oct. 2, 1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294.  Specifically, the Senate version of the bill provided that, prior to a Section 6 hearing, "the government shall provide the defendant with notice of the information that will be at issue, [which such] notice shall identify the specific classified information that will be at issue whenever that information has previously been made available to the defendant in connection with the pretrial proceedings." 125 Cong. Rec. S 9184-87 (daily ed. July 11, 1979), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294.  Ultimately, Section 6 did not provide a defendant with the same access to "information" as the Senate had contemplated.

Yet, of paramount importance to Congress was not limiting a defendant's access to discovery – let alone defense counsel's access.  For example, in the Report by the Committee on the Judiciary of the U.S. House of Representatives, the following concern was addressed: "The second concern, related to first, is that government-triggered proceeding under section 102(c)[, which would become Section 6,] could result in the admission of summaries or substitutions of materials the defense in fact never had complete access to."  The Judiciary Committee observed that, "[c]onsiderable attention was devoted to this provision" and "[n]o infringement on the defendant's ability to make his case is intended."  In conclusion, the Report notes: "Indeed, it is the Committee's intent that all hearings conducted under section 102 and 103[, what would become Section 6,] of the bill will be fully adversary and will be concerned only with information to which the defendant has had complete access." HR 4736 [Report No. 96-831, Parts I and II], 96th Cong., 2d Sess. (Sept. 17, 1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294.  As the U.S. House Report observed, the Act: "[I]s not intended to infringe on a defendant's right to a fair trial or to change the existing rules of evidence and criminal procedure.  Rather it is intended to provide

uniformity, rationality and consistency to the present system." *Id.*

Nor does the language of Section 4 contradict this reading of Section 3. Section 4 provides that: "The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure. . . ." 18a U.S.C. § 4. Most tellingly, Sections 3 and 4 were originally part of the same provision of the House bill: subsections 109(a) and (b). As the House Report clarified: "This subsection [subsection 109(b) – now Section 4] is intended to explicitly recognize the authority of the Federal courts in overseeing the discovery of the Federal courts in overseeing the discovery process. When classified information is involved, the court may authorize the government to delete specified items, or submit a statement admitting relevant facts that the specified information would tend to prove." 125 Cong. Rec. S 9184-87 (daily ed. July 11, 1979), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294. As Senator Biden's Report on the Act noted:

> In responding to the defendant's discovery request, the government is permitted to delete certain items of classified Information, to substitute a summary of the information, or to substitute a statement admitting the facts the classified information would tend to prove. *Although courts have this power under Rule 16 of the Federal Rules of Criminal Procedure now, some Judges have been reluctant to use It. In fact what often happens now is that the government Is permitted to withhold information entirely.*

*Id.*

## CONCLUSION

Based on the nature of the charges and their inextricable interconnection with the substance of the classified documents, Mr. Nauta's "need to know," *United States v. Daoud*, 755 F.3d 479, 484 (2014), is unquestionable. This need, viewed against the absence of any countervailing risk to national security, militates conclusively in favor of disclosure of the documents at issue.

Dated: September 25, 2023　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Stanley E. Woodward, Jr.*
　　　　　　　　　　　　　　　　　　Stanley E. Woodward, Jr. (*pro hac vice*)
　　　　　　　　　　　　　　　　　　400 Fifth Street Northwest, Suite 350
　　　　　　　　　　　　　　　　　　Washington, District of Columbia  20001
　　　　　　　　　　　　　　　　　　202-996-7447 (telephone)
　　　　　　　　　　　　　　　　　　202-996-0113 (facsimile)
　　　　　　　　　　　　　　　　　　stanley@brandwoodwardlaw.com

　　　　　　　　　　　　　　　　　　　　*/s/ Sasha Dadan*
　　　　　　　　　　　　　　　　　　Sasha Dadan, Esq. (Fl. Bar No. 109069)
　　　　　　　　　　　　　　　　　　DADAN LAW FIRM, PLLC
　　　　　　　　　　　　　　　　　　201 S. 2nd Street, Suite 202
　　　　　　　　　　　　　　　　　　Fort Pierce, Florida  34950
　　　　　　　　　　　　　　　　　　772-579-2771 (telephone)
　　　　　　　　　　　　　　　　　　772-264-5766 (facsimile)
　　　　　　　　　　　　　　　　　　sasha@dadanlawfirm.com

　　　　　　　　　　　　　　　　　　*Counsel for Defendant Waltine Nauta*

**Certificate of Electronic Service**

I hereby certify that on September 25, 2023, I electronically submitted the foregoing, via electronic mail, to counsel of record.

Respectfully submitted,

/s/ Sasha Dadan
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida  34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*