UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

    Defendants.
_____/

### SUPPLEMENT TO GOVERNMENT'S MOTION FOR *GARCIA* HEARING

Defendant Waltine Nauta's attorney Stanley Woodward Jr. cannot ethically cross-examine former client Trump Employee 4, who will be a significant witness at trial. As the Government stated in its initial motion for a *Garcia* hearing, filed more than two months ago, "[a]n attorney's cross-examination of a current or former client presents a conflict of interest." ECF No. 97, at 6. Nor can Mr. Woodward otherwise seek to discredit Trump Employee 4 at trial, including in closing arguments. The same ethical considerations similarly limit Mr. Woodward's ability to cross-examine or otherwise discredit Witness 1, a potential government witness whom Mr. Woodward continues to represent. After consistently denying the existence of conflicts and resisting these ethical limitations, *see* ECF No. 126, at 3-5, 8-9; ECF No. 144, at 1 n.2, 5 n.11; 10/12/2023 Hearing Tr. 17-18, Mr. Woodward today informed the Government for the first time that neither he nor any member of his law firm will cross-examine Trump Employee 4 or Witness 1 at trial on any subject, and that any cross-examination will instead be handled by co-counsel. Mr. Woodward also appears to recognize that he may face ethical limitations on his ability to discredit Trump Employee 4 or

1

Witness 1 outside of cross-examination, including during closing arguments. The Court should so inform Nauta and determine whether Nauta knowingly and voluntarily waives his right to conflict-free counsel despite these limitations on Mr. Woodward.

Under the Florida ethics rules, "attorneys generally owe duties of confidentiality and loyalty to former clients." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 990 (11th Cir. 2020); *see* Fla. Bar R. Prof'l Conduct 4-1.9. These duties both come into play when, as here, a former client testifies at trial against a current client in a substantially related matter. During cross-examination, the attorney might "improperly" use the prior client's confidential information or, alternatively, hold back from "intense probing" to avoid using those confidences. *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994). When the subject matters of the representations are substantially related, "the court will irrebutably presume that relevant confidential information was disclosed during the former period of representation." *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999). And given the duty of loyalty, a lawyer cross-examining a client, including a former client, faces "an impossible choice: [the attorney] can either vigorously cross-examine the client-turned-witness and thereby violate his duty of loyalty to the client on the witness stand, or he can temper his cross-examination and risk violating his duty of loyalty to the client on trial." *United States v. Almeida*, 341 F.3d 1318, 1323 & n.17 (11th Cir. 2003).

Thus, "[t]here can be no doubt that [Mr. Woodward's] prior representation of [Trump Employee 4] create[s] an ethical conflict that would disqualify him from cross-examining [Trump Employee 4]." *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996). Trump Employee 4 does not waive his rights to confidentiality or loyalty from Mr. Woodward, and accordingly, with respect to cross-examining Trump Employee 4, Mr. Woodward "suffer[s] insurmountable conflict of interest problems." *Ross*, 33 F.3d at 1523. The Government did not request a remedy

or disqualification of Mr. Woodward when it filed the *Garcia* motion, nor did it do so in its motion with respect to John Irving's representation of defendant Carlos De Oliveira, but the Government expressly identified Eleventh Circuit law and ethical rules providing that an attorney who cross-examines a former client inherently encounters divided loyalties. ECF No. 97, at 6-7. Similar rules apply in the District of Columbia, where Mr. Woodward is barred. *See* D.C. Bar. Ethics Op. 380 (Jan. 2021); *Pinkney v. United States*, 851 A.2d 479, 487-90 (D.C. 2004). The information available to the Government accordingly triggered the Government's duty to inform the Court of potential conflicts and the Court's obligation to investigate and consider appropriate remedies. The Government did not attempt to forecast every possible aspect of the possible conflicts, outline all of the potential remedies, or predict how Mr. Woodward (or Mr. Irving) would respond. Instead, the Government believed that "[t]he information gathered at the *Garcia* hearing [would] enable the Court to address any conflicts and formulate an appropriate remedy, and the Government [took] no position at [that] time as to what remedy may be appropriate." ECF No. 97, at 9.

Recognizing the obvious conflicts, Mr. Irving, in response, informed the Court and the Government that he would no longer represent the potential witnesses, and his co-counsel would be solely responsible for cross-examining the witnesses at trial. Mr. Woodward, in contrast, simply denied that any conflict existed, suggesting that he should be permitted to cross-examine Trump Employee 4. 10/12/2023 Hearing Tr. at 17-20. The Government conferred in detail with Mr. Woodward in connection with this filing on October 17, 2023, as ordered by the Court, and although he acknowledged the existence of a conflict, he indicated that he believed he should be permitted to cross-examine Trump Employee 4 on certain topics. This afternoon, Mr. Woodward informed the Government for the first time that neither he nor any member of his law firm would conduct any cross-examination of Trump Employee 4 or Witness 1 on any subject at Nauta's trial.

3

An attorney's ethical duties to a testifying former client apply beyond cross-examination. The attorney "cannot violate his duty of loyalty by seeking to discredit the witness," which includes "attempts to discredit the witness . . . in closing argument." *United States v. Delorme*, No. 07-CR-20534, 2009 WL 33836, at *7 (S.D. Fla. Jan. 5, 2009); *see United States v. Falcon*, No. 99-CR-00583, ECF No. 2647 (S.D. Fla. Dec. 26, 2002) (order denying disqualification on condition that, among other things, only co-counsel would cross-examine former client and refer to former client in closing argument). At the hearing on October 12, 2023, Mr. Woodward disputed that he had a duty of loyalty to his former clients, referring to "my hypothetical duty of loyalty to a former client, which again we dispute that duty even exists." 10/12/2023 Hearing Tr. at 19. Similarly, when the Government conferred with Mr. Woodward in connection with this filing on October 17, 2023, Mr. Woodward continued to question whether he owes an ongoing duty of loyalty to Trump Employee 4. There is no basis for dispute: "a duty of loyalty exists apart and distinct from the duty to maintain client confidences." *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996). Indeed, although Mr. Woodward and Mr. Irving have agreed to have another attorney conduct the cross-examination of their clients, courts frequently disqualify attorneys even where the attorneys propose that another attorney will conduct the cross-examination of a former client. *See, e.g.*, *United States v. Cordoba*, No. 12-CR-20157, 2013 WL 5741834, at *12 (S.D. Fla. Oct. 17, 2013); *Delorme*, 2009 WL 33836, at *7; *United States v. Miranda*, 936 F. Supp. 945, 952 (S.D. Fla. 1996); *United States v. Perez*, 694 F. Supp. 854, 858 (S.D. Fla. 1988). Consistent with these authorities, Mr. Woodward acknowledged today that his ethical obligations to Trump Employee 4 and Witness 1 may constrain his ability to discredit those clients at trial, including during closing arguments.

Given the above, Mr. Woodward would labor under the following constraints at Nauta's trial, and Nauta should be so advised. Because Mr. Woodward's prior representations of Trump

4

Employee 4 and Witness 1 are substantially related to his representation of Nauta, Mr. Woodward is presumed to have gained relevant confidential information, and it is difficult to imagine that Mr. Woodward did not do so. In addition, Trump Employee 4 will testify at trial, and he will provide important incriminating evidence against Nauta and the other defendants. Witness 1 will also likely testify and provide inculpatory evidence. It is all but certain that Trump Employee 4's testimony before the grand jury (while represented by Mr. Woodward) and his subsequent retraction and disavowal of that testimony will be subjects of cross-examination and redirect. The questioning may also encompass the fact that Trump Employee 4 was represented by Mr. Woodward at the time of his grand jury testimony, that Mr. Woodward's legal fees were paid by a PAC controlled by defendant Donald J. Trump, and that Trump Employee 4 procured new counsel and quickly retracted his prior grand jury testimony. All of these facts will be relevant to Trump Employee 4's testimony and may come out at trial.[1] It is the Government's position that Mr. Woodward cannot ethically cross-examine either Trump Employee 4 or Witness 1, nor can he ethically discredit them before the jury, including during closing arguments. Mr. Woodward has stated unequivocally to the Government that neither he nor any member of his law firm will cross-examine Trump Employee 4 or Witness 1 on any subject at trial, and any cross-examination will be conducted by co-counsel. Mr. Woodward has also acknowledged that his ethical obligations may constrain his ability to discredit Trump Employee 4 or Witness 1 in closing arguments. Nauta should therefore be fully apprised of that possibility, as well as the possibility that Mr. Woodward may hold back in discrediting Trump Employee 4 or Witness 1 to ensure he complies with his obligations as a member of the D.C. bar. *See* D.C. Bar. Ethics Op. 380 (Jan. 2021).

---

[1] When the Government conferred with Mr. Woodward in connection with this filing, he asserted that his name should not come up during examination of Trump Employee 4, but he agreed that the other information referenced above could be relevant.

                                      Respectfully submitted,

                                      JACK SMITH
                                      Special Counsel
                                      N.Y. Bar No. 2678084

By:    /s/ *David V. Harbach, II*
           David V. Harbach, II
           Assistant Special Counsel
           Special Bar ID #A5503068
           950 Pennsylvania Avenue, NW
           Washington, D.C. 20530

           Jay I. Bratt
           Counselor to the Special Counsel
           Special Bar ID #A5502946

           John M. Pellettieri
           Assistant Special Counsel
           Special Bar ID #A5503076

October 18, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *John M. Pellettieri*
John M. Pellettieri