```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                     FORT PIERCE DIVISION
                    CASE NO. 23-CR-80101-CANNON
 3

 4      UNITED STATES OF AMERICA,

 5                    Plaintiff,              October 12, 2023

 6           vs.                          Fort Pierce, Florida

 7      DONALD J. TRUMP,
        WALTINE NAUTA,
 8      CARLOS DE OLIVEIRA,

 9      Defendants.

10      _____/

11

12
                    GARCIA HEARING DEFENDANT DE OLIVEIRA
13               BEFORE THE HONORABLE AILEEN M. CANNON
                     UNITED STATES DISTRICT JUDGE
14

15

16      APPEARANCES:

17      FOR THE GOVERNMENT:        DAVID HARBACH
                                   JOHN M. PELLETTIERI
18                                 JAY I. BRATT
                                   U.S. Department of Justice
19                                 Office of Special Counsel
                                   950 Pennsylvania Avenue
20                                 Washington, D.C. 20530

21                                 MICHAEL THAKUR
                                   United States Attorney's Office
22                                 99 NE 4th Street
                                   Miami, FL 33132
23

24

25
```

**Pauline A. Stipes, Official Federal Reporter**

```
 1        FOR DEFENDANT              JOHN S. IRVING, ESQ.
          DE OLIVEIRA:              E & W Law
 2                                  1455 Pennsylvania Avenue
                                    Suite 400
 3                                  Washington, D.C. 20004
                                    301-807-5670
 4
                                    LARRY D. MURRELL, JR., ESQ.
 5                                  400 Executive Center Drive
                                    Suite 201
 6                                  West Palm Beach, FL 33401

 7        Official Court Reporter:  Pauline A. Stipes
                                    West Palm Beach/Ft. Pierce
 8                                  561-803-3434
                                    HON. ROBIN L. ROSENBERG
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Pauline A. Stipes, Official Federal Reporter

1           THE COURT:  Thank you, you may be seated.

2           All right.  This is criminal case number 23-80101,

3    United States of America, represented by the Office of the

4    Special Counsel, versus Donald J. Trump, Waltine Nauta,

5    and Carlos De Oliveira.  Let's have appearances of counsel,

6    starting with the Government.

7           MR. BRATT:  Good afternoon, your Honor, Jay Bratt,

8    David Harbach, John Pellettieri and Michael Thakur from the

9    Special Counsel's Office on behalf of the United States.

10          THE COURT:  Thank you.  Let's start with any attorneys

11   on behalf of Carlos De Oliveira.

12          MR. IRVING:  Good afternoon, your Honor, John Irving

13   on behalf of Mr. De Oliveira.

14          MR. MURRELL, JR.:  Good afternoon, Judge, Donnie

15   Murrell on behalf of Mr. De Oliveira.

16          MR. BLANCH:  Good afternoon, your Honor, Todd Blanch

17   on behalf of President Trump.

18          MS. DADAN:  Good afternoon, Sasha Dadan and Stanley

19   Woodward on behalf of Waltine Nauta, who is present.

20          THE COURT:  Thank you.  A few preliminary points

21   before we get started.  There shall be no recording of this

22   hearing in any way, and no use of electronic equipment.  As

23   usual, we have an overflow room on the second floor for any

24   folks who weren't able to get a seat in the courtroom.

25          Now, this is a public hearing and I intend to keep it

1    that way, but if in the course of the hearing a need arises to

2    consider closing the courtroom temporarily to protect

3    attorney/client communications, then I will give an attorney,

4    Ms. Fugatin (phon), on behalf of the press coalition an

5    opportunity to be heard on that discrete subject, as well as

6    the parties if they wish to comment.

7         Should such a closure become necessary, I will direct

8    the public to exit the courtroom and also direct the Clerk's

9    Office to turn off temporarily the Zoom link to the overflow

10   room.  Again, this is only if a temporary closure becomes

11   necessary.

12        As you all know, we are here to conduct two Garcia

13   hearings, the first with Mr. Carlos De Oliveira and then with

14   Mr. Nauta.  The term "Garcia" comes from that former Fifth

15   Circuit decision in 1975, United States Garcia.  That decision

16   teaches us that the purpose of today's hearing is to conduct a

17   fulsome colloquy with both Mr. De Oliveira and Mr. Nauta to

18   address potential dangers of representation by counsel with

19   possible conflicts of interest; to advise the Defendants of

20   their right to effective representation; to ensure that each

21   understands the details of the possible conflicts of interest

22   and the potential perils of such conflicts; and to determine

23   whether each has discussed the matter with their attorneys, or

24   if they wish, with independent counsel; and then ultimately to

25   determine whether, should either Mr. Nauta or De Oliveira wish

```
 1   to waive their right to conflict-free counsel, whether any such
 2   waiver is made knowingly, voluntarily and intelligently.
 3             With that background, let's begin.  We will get
 4   started with Mr. De Oliveira first.
 5             I permit you, sir, to remain seated so you are
 6   comfortable.  Just make sure the microphone is brought close to
 7   you so we can all hear you well.
 8             THE DEFENDANT:  Yes, your Honor, thank you.
 9             THE COURT:  Most of this hearing, Mr. De Oliveira, is
10   going to be a dialogue between me and you, so I want you to
11   feel comfortable and completely natural in asking me any
12   questions.  I will, of course, give each side an opportunity to
13   be heard as well, and if I have questions, I will ask them
14   accordingly as we go along.
15             With that, I will now swear you in, Mr. De Oliveira.
16        (Thereupon, the Defendant was duly sworn.)
17             THE COURT:  To make it a little easier, you are
18   welcome to move the base of that microphone.  There you go.
19   All right.
20   BY THE COURT:
21   Q.  Please tell me your full name and your birth year?
22   A.  Full name is Carlos De Oliveira, 10/15/66.
23   Q.  How far did you go in school, sir?
24   A.  I don't think I ever graduated.  I left Portugal when I was
25   17 years old, and I don't think I finished, and I start school
```

```
1    when I was 12.
2    Q.  Did you pursue any additional education following your high
3    school years?
4    A.  No, ma'am.  When I arrive, I arrive in Massachusetts, and I
5    did a few night school, but that was it.  I never finish
6    anything.
7    Q.  Do you read and write the English language?
8    A.  I read better than I write.
9    Q.  Can you write in English?
10   A.  I can write, but not good.
11   Q.  Have you fully understood everything I have said so far?
12   A.  Yes, ma'am.
13   Q.  As I said, if at any point during this hearing, sir, you
14   don't understand what I am saying, or you need further
15   clarification, or you wish to speak with your attorney, please
16   do not hesitate to let me know.  Understood?
17   A.  Yes, ma'am.
18   Q.  All right.  Now, I am going to ask you a series of
19   questions, sir, and these are designed to make sure that you
20   fully understand what is transpiring here today.
21       Are you currently under the influence of any medication,
22   drugs or alcohol?
23   A.  No, ma'am.
24   Q.  Do you feel completely alert, awake, and clear headed
25   today?
```

```
 1    A.  Yes.
 2    Q.  Do you believe you have any physical or mental condition
 3    that would impair or affect your ability to fully understand
 4    what is transpiring here today?
 5    A.  No, ma'am.
 6          THE COURT:  Mr. Irving, are you aware of any situation
 7    concerning your client that could affect his ability to
 8    understand what is going on during today's hearing?
 9          MR. IRVING:  No, your Honor.
10          THE COURT:  Is it your opinion, Mr. Irving, that Mr.
11    De Oliveira is competent to proceed with this hearing today?
12          MR. IRVING:  Yes.
13          THE COURT:  There is another preliminary matter I want
14    to address before we go further, and that is the manner in
15    which we will be referencing potential witnesses.
16          As I indicated in my order setting this hearing, I
17    want to remind the parties of what I indicated in that order,
18    which is that references during the hearing to identify
19    potential witnesses are to be made in accordance with the
20    witness designations as stated in the motions.  I'm referring
21    to Docket Entries 97 and 123.
22          For purposes of this hearing, Mr. De Oliveira, the
23    individuals that have been referenced in these papers have been
24    referred to as follows:  Trump Employee 3, Witness 1, and
25    Witness 2.
```

Pauline A. Stipes, Official Federal Reporter

1          So we are going to be using those designations

2   throughout this hearing, sir.  I don't know, perhaps you know

3   who these actual individuals are, but if you intend to refer to

4   them, I ask that you not use their real names and you use those

5   designations.

6          Do you understand, sir?

7          *THE DEFENDANT:*  Yes, I understand.  I don't know who

8   those people are by numbers.

9          *MR. IRVING:*  May I have one second?

10          *THE COURT:*  Yes.

11          *MR. IRVING:*  Thank you, your Honor.

12          *THE COURT:*  If at any point you need to speak with

13   your attorney because you want to make sure that you are not

14   referencing anybody's name, please feel free to do so.  Okay?

15          *THE DEFENDANT:*  Thank you.

16          *THE COURT:*  And the same directive applies to all

17   counsel, so please be mindful of that as we go along.

18   *BY THE COURT*:

19   *Q.*  Now, at points during this hearing, Mr. De Oliveira, I am

20   going to ask you in your own words to describe for me your

21   understanding of what we are talking about, so I need you to

22   pay very careful attention to my questions and to what

23   everybody says so you can follow along and speak to me candidly

24   and naturally about your understanding of what our conversation

25   consists of.  Understood?

```
 1   A.  Yes, ma'am.
 2   Q.  All right.  Now, there might be some duplication and
 3   repetition in my questions, so I ask for your patience.  It is
 4   very important that I conduct a fulsome comprehensive colloquy
 5   so I make sure you understand the full scope of this hearing.
 6   Understood?
 7   A.  Yes, your Honor.
 8   Q.  Now, as I mentioned, we are doing a Garcia hearing.  That
 9   case helps explain a very critical tenet of our Criminal
10   Justice System, which is that as a criminal defendant you have
11   a constitutional right to the effective assistance of counsel,
12   and that right encompasses both the right to be represented by
13   an attorney that is free from conflicts of interest, and also a
14   presumptive right to choose the attorney that you wish.
15        Do you understand, sir?
16   A.  Yes, your Honor.
17   Q.  Now, the Special Counsel's Office has brought to my
18   attention what they perceive to be potential conflicts of
19   interest that your current counsel, Mr. Irving, might face in
20   this case due to his former representation of three witnesses
21   the Government says it may call at trial.  And again, I am
22   referring to the folks I mentioned earlier, Trump Employee 3,
23   and Witnesses 1 and 2.
24        So, we are here today to understand those alleged conflicts
25   of interest, and to determine whether it is your decision to
```

1    continue with Mr. Irving despite those potential conflicts.

2        Are you with me thus far?

3    A.  Yes, I understand.

4    Q.  Okay.  Now, it is also important that you understand, sir,

5    that I am not required to accept any waiver that you might make

6    if that is what you choose to do.  In other words, if I

7    determine that there is in fact a potential or an actual

8    conflict of interest that is so serious it would likely

9    undermine the fairness, efficiency, or public confidence in

10   these proceedings, I may elect to disqualify your chosen

11   counsel.

12       Of course, that is a disfavored remedy.  As far as I can

13   tell, the Government is not moving for such disqualification.

14       Do you understand so far?

15   A.  Yes, your Honor.

16   Q.  Now, as I mentioned, you are not required to continue with

17   Mr. Irving as your lawyer.  You have the right to proceed to

18   trial with a different lawyer if you want a different lawyer.

19   Importantly, sir, you are not required to make this decision

20   today.

21       If at the conclusion of today's hearing you decide, you

22   know what, I need some more time to think about this, you are

23   welcome to have more time.  You just need to tell me that is

24   what you want.  I will then make that available to you, sir.

25   And, of course, you would also have time if you wanted to hire

11

```
 1    another attorney to help you make this decision.
 2         Do you understand, sir?
 3    A.   Yes, your Honor.
 4    Q.   Again, you are not required to make any decisions today.
 5    Understood?
 6    A.   Yes, your Honor.
 7    Q.   But regardless, whatever your decision is, it is my duty to
 8    ensure that you understand the potential ramifications of your
 9    decision, and if you do choose to waive your right to
10    conflict-free counsel, that your choice is a knowing, voluntary
11    and intelligent one.
12         Are you with me thus far?
13    A.   Yes, your Honor.
14    Q.   Do you have any questions at all thus far?
15    A.   No, your Honor.
16    Q.   In terms of the format for today's hearing, I am going to
17    start off with explaining my understanding of the alleged
18    conflicts as drawn from the parties' filings.  Then I will turn
19    to the Special Counsel's Office for the office to supplement or
20    add anything they wish, and then I will give your attorneys a
21    chance to weigh in as well.  And then, of course, I will come
22    back to you with some more dialogue on these issues.
23         All right.  Do you have any questions, sir, at all about
24    the format or organization of this hearing?
25    A.   No, I have no questions.
```

1    Q.  All right.  Okay.  Based upon the information provided in

2    the parties' filings the Court understands the situation as

3    follows -- I am drawing this from filings 123, 137 and 145.

4         The Special Counsel has identified three individuals, Trump

5    Employee 3, Witness 1 and Witness 2, who were previously

6    represented by Mr. Irving.  According to the Special Counsel,

7    these individuals may be called as witnesses at trial and could

8    provide testimony that inculpates you, Mr. De Oliveira.

9         Notably, these individuals have not been criminally

10   indicted in this case, and the Special Counsel has not

11   confirmed whether they will in fact be called as witnesses.

12   They might be called is how the situation is framed at the

13   moment.  And so, at this point, these are potential Government

14   witnesses.

15        Do you understand, sir?

16   A.  Yes, your Honor.

17   Q.  Now, I also understand that these three individuals are no

18   longer clients of Mr. Irving, but they were his clients when

19   the Government questioned them in connection with the

20   underlying criminal investigation.

21        Do you understand that, sir?

22   A.  Yes, your Honor.

23        THE COURT:  Mr. Irving, can you confirm what I have

24   just indicated, in other words, that you do not at this point

25   represent any of these three individuals?

Pauline A. Stipes, Official Federal Reporter

```
 1              MR. IRVING:  That is correct, your Honor.
 2              THE COURT:  All right.  Now, I am going to go in a
 3    little bit more detail about the nature of these individuals as
 4    described in the papers, and I want to be clear before I
 5    continue that a lot of what I am about to say is rooted in
 6    allegations only, and that it will be the Government's burden
 7    to prove much of what I am about to describe beyond a
 8    reasonable doubt.
 9              All right.  Starting with Trump Employee 3, as he or
10    she is described, Trump Employee 3 worked as a personal aide to
11    former President Trump.
12              The Government alleges that Trump Employee 3 has
13    information about an alleged telephone conversation on
14    June 24th of 2022, between former President Trump and his
15    lawyer regarding a Grand Jury subpoena for Mar-A-Lago security
16    camera footage.
17              Allegedly on the afternoon of this phone call between
18    former President Trump and his attorney Trump Employee 3
19    allegedly texted Mr. Nauta indicating that former President
20    Trump wanted had to see Nauta.  In response to Trump Employee
21    3's text message, Mr. Nauta, who was allegedly scheduled to
22    travel to Illinois with former President Trump the next day,
23    allegedly altered his plans and instead traveled to Mar-A-Lago.
24              In the day that followed, Mr. Nauta and Mr. De
25    Oliveira -- of course I am referring to you, sir -- allegedly
```

Pauline A. Stipes, Official Federal Reporter

14

1    made efforts to have Trump Employee 4, a separate individual,

2    delete Mar-A-Lago security footage.

3            That is the summary briefly regarding Trump Employee

4    3.

5            Witness 1, as far as the Court can discern, served as

6    head of maintenance at Mar-a-Lago before you took over the

7    position, sir, in January of 2022.  Special Counsel alleges

8    that Witness 1 has information showing the alleged falsity of

9    certain statements made by you to the Government; more

10   specifically, alleged statements made during an April 2023

11   interview with the Government during which you allegedly were

12   confronted with video footage showing you photographing

13   surveillance cameras in a tunnel near a storage room where the

14   FBI recovered certain records.

15           During this interview, it is alleged, sir, that you

16   explained the video footage and indicated that you were looking

17   for a shut off valve to a water pipe that had ruptured and

18   documenting a broken door below one of the surveillance

19   cameras.

20           The Government alleges that Witness 1 has information

21   that is allegedly inconsistent with your explanations.

22           Additionally, the Special Counsel alleges that Witness

23   1 has information about your alleged loyalty to the former

24   president.

25           And finally, the Special Counsel alleges that Witness

Pauline A. Stipes, Official Federal Reporter

1   has information about your replacement of a lock at the

2   supposed direction of the former president to a closet inside

3   the former president's residence in early June of 2022, the day

4   that Mr. Nauta and you allegedly moved boxes containing

5   classified material.  So that sums up the allegations with

6   respect to Witness 1.

7          And finally, Witness 2 allegedly worked as a

8   receptionist and assistant for the former president during and

9   after his presidency.  This individual allegedly has

10  information about the alleged movement of boxes from the White

11  House to Mar-a-Lago, and this Witness 2 also allegedly

12  identified you as moving boxes on June 2nd of 2022.

13  *BY THE COURT*:

14  *Q.*  Are you following so far, Mr. De Oliveira?

15  *A.*  Yes, your Honor.

16  *Q.*  All right.  Now, as I have mentioned, these three

17  individuals, they were formerly represented by your attorney

18  during the Government's investigation in this case.  You might

19  already know this, sir, but there is something called the

20  attorney/client privilege.

21      An attorney has certain obligations to former clients even

22  after the representation has ended, and that privilege prevents

23  an attorney from disclosing certain communications made between

24  that client and the attorney even after the attorney no longer

25  represents the client.

1        That means that the attorney cannot later use certain

2   statements acquired by the attorney during the course of that

3   representation.

4        Do you understand, sir?

5   A.   Yes, your Honor.

6   Q.   So, if any of these three individuals ultimately are called

7   as witnesses at trial, Mr. Irving will be given an opportunity

8   to do what is called cross-examination of those witnesses.

9        Again, you might be familiar with that term, but basically

10  it means that Mr. Irving would have an opportunity to ask

11  questions of that witness, and during that cross-examination

12  process, one of the purposes is occasionally to try to poke

13  holes in that witness' testimony or to undermine that witness'

14  credibility, in other words, whether they are telling the truth

15  or not.

16       Are you with me thus far, sir?

17  A.   Yes, your Honor.

18  Q.   And so, based on all of this, the Government suggests that

19  there could be a dynamic in which Mr. Irving is experiencing

20  divided loyalties between his former clients, those three

21  people that he doesn't represent anymore, and his current

22  client, meaning you.

23       I will describe this in a bit more detail.  In other words,

24  what I am trying to convey to you, sir, is that on the one hand

25  your client, Mr. Irving, has a duty to zealously advocate on

Pauline A. Stipes, Official Federal Reporter

```
 1    your behalf, and part of that duty includes vigorously
 2    cross-examining those Government witnesses.
 3         Do you understand thus far?
 4    A.   Yes, your Honor.
 5    Q.   But, Mr. Irving also has a duty as an attorney to maintain
 6    the privacy or confidentiality of any communications that he
 7    might have acquired in the course of his representation of
 8    those former clients.
 9         Understood?
10    A.   Yes, your Honor.
11    Q.   So, if in the course of that representation Mr. Irving
12    acquired any confidential information that is still privileged,
13    he would not be allowed to use that information that he knows
14    from his prior representation during cross-examination of those
15    witnesses at your trial, even if using that information would
16    be in your best interest.
17         Do you understand what I have been describing so far as
18    these divided loyalties as they are described?
19    A.   Yes, your Honor, I understand.
20    Q.   And so, to put a finer point on it, you might have a
21    situation, this is a suggestion, that if we're at trial and
22    this witness is called, Mr. Irving might take it easy on this
23    witness.  In other words, when he is cross-examining him or her
24    he might not ask tough questions or lay back and basically do a
25    less vigorous cross-examination than he otherwise would have
```

```
 1    done.
 2         Do you understand me so far?
 3    A.  Yes, your Honor.
 4    Q.  Having said all of what I described, do you see how this
 5    situation hypothetically could be problematic to your defense,
 6    sir?
 7    A.  Yes, your Honor, I understand.
 8    Q.  Now, it is important -- again, I don't know if these
 9    individuals are going to be called.  The Government says they
10    might be called.  I also don't know whether there is any
11    information that Mr. Irving, your attorney, has that hasn't
12    already been shared with the Government.  But again, I have to
13    advise you of these potential risks, hypothetically, if they
14    were to materialize.
15         Do you understand, sir?
16    A.  Yes, your Honor.
17    Q.  Do you have any questions thus far?
18    A.  No, your Honor, I don't.
19    Q.  Now, I also want to mention, and this is in the papers,
20    that your attorney has welcomed this hearing, has told me that
21    he welcomes this opportunity for me to ask you questions to
22    make sure that you do indeed want to proceed about Mr. Irving.
23         He has also stated in these papers that he is unaware of
24    any information that he learned during his prior representation
25    of those three witnesses that would prevent him from vigorously
```

Pauline A. Stipes, Official Federal Reporter

1    cross-examining these individuals if they were called.

2        Do you understand what I have said thus far?

3    A.  Yes, your Honor, I understand.

4    Q.  Again, my duty and my responsibility is to make sure that

5    you are fully aware of these potential conflicts, and how these

6    potential conflicts might materialize and have consequences on

7    your defense.  All right.

8        Now, there is another consequence that could arise beyond

9    what I have described, which is that cross-examination issue

10   and concerns any possible appeals, so I want to talk about that

11   as another potential consequence.

12       Imagine this scenario:  Let's say today you decide to waive

13   your right to conflict-free counsel, and you say I want to

14   continue with Mr. Irving, and you make that decision.

15       Let's say it turns out that Mr. Irving does, in fact,

16   possess some kind of information that he obtained during his

17   prior representation, and based on that information, he was

18   unable to conduct a thorough and vigorous cross-examination of

19   those witnesses.  Let's say all of that happens and you are

20   found guilty.

21       You would not be able to then on appeal say, wait a

22   minute, I had an attorney who had conflicts and I want to

23   appeal on the basis of those conflicts because my Sixth

24   Amendment right to conflict-free counsel was denied.

25       In other words, you wouldn't be able to come back and say,

1    you know what, I should win on appeal because I had an attorney

2    that had a conflict even though I waived it.

3        Do you understand what I am saying, sir?

4    A.  I understand.

5    Q.  In short, you would be waiving those arguments on appeal,

6    you would be foreclosed from raising those arguments on appeal.

7        Do you understand?

8    A.  Yes, your Honor.

9    Q.  Is there anything at all that I can clarify for you thus

10   far?  And we are still early on in our discussion, and I will

11   have an opportunity later to ask you in your own words what you

12   understand these issues to concern.

13       But at this point, is there anything that I can clarify for

14   you?

15   A.  Not at this point, your Honor, I am good.

16   Q.  Okay.

17           THE COURT:  Now I would like to hear from the Special

18   Counsel's Office.  I obviously have attempted to describe the

19   conflicts as they have been presented, but if I missed

20   something, overlooked something, or misstated something I want

21   the Special Counsel's Office to have an opportunity to explain

22   in more detail the nature and scope of these alleged conflicts.

23           Again, please don't refer to the actual identities of

24   these individuals.

25           As you are going through, Mr. Harbach, if you can

1    endeavor to explain in as much detail as you can these

2    potential conflicts as you presented them and how they could

3    manifest at trial.

4         MR. HARBACH:  Yes, your Honor.  I will start with,

5    excuse me, just one minor factual correction to the Court's

6    recitation, and it concerns Trump Employee 3.

7         It is possible that I misheard the Court, but just to

8    be careful, the Government does not expect Trump Employee 3's

9    testimony to include anything about the conversation that

10   former President Trump had with his lawyer on that day.  That

11   was merely provided in the pleading as a contextual marker for

12   the timing of the events that came later.  So, I want that to

13   be clear on the record.

14        That is the only factual correction we have to what

15   your Honor laid out.

16        THE COURT:  All right.  Thank you.

17        MR. HARBACH:  On the subject of the conflicts and how

18   they may manifest vis-a-vis Mr. Irving, we think that it would

19   also be worth the Court's advising Mr. De Oliveira that the

20   potential for a conflict here -- let me say that a different

21   way -- a potential result of a conflict here would not only

22   mean -- would not only be that Mr. Irving is presented with an

23   issue of divided loyalties that your Honor was talking about

24   when cross-examining any one of these three Government

25   witnesses, in the Government's view, another result of the

1    conflicts could be that Mr. Irving is faced with the same

2    predicament when it comes time to make argument to the jury,

3    for example.

4           Specifically it is our view that a lawyer who suffers

5    under a conflict, that -- in that situation the lawyer is

6    precluded from -- by his duty of loyalty to his form ear

7    client, from arguing to the jury that his former client lacks

8    credibility or attacking his former client's character.

9           And those obligations flow from the lawyer's duty of

10   loyalty to his or her former client, and do not turn on whether

11   specific confidential information was provided to the lawyer

12   that might or might not facilitate better or worse

13   cross-examination of the witness.

14          THE COURT:  All right.  So, did you make this argument

15   about sort of weaker arguments to juries in your papers?

16          MR. HARBACH:  Not in our papers suggesting that we

17   needed to have a hearing because that wasn't necessary for the

18   Court's obligation to conduct this hearing.

19          THE COURT:  It is important to understand how these

20   alleged conflicts could materialize and become concrete, and so

21   it does bear on the Court's understanding of these potential

22   conflicts, but it sounds like what you are telling me now isn't

23   a new concern about -- maybe more amorphous, more generalized,

24   that just in large this attorney would be inhibited from

25   presenting arguments to the jury.  It is unclear exactly how

Pauline A. Stipes, Official Federal Reporter

1    that is so.

2         MR. HARBACH:  Well, I am happy to try to elaborate on

3    that a little bit.  I want to be clear not to overstate what we

4    see is the issue here.

5         It is not -- obviously not that the lawyer would be

6    foreclosed from making any argument to the jury.  The specific

7    concern is that the lawyer would be in a position of having to

8    attack the credibility in argument of his or her former client

9    and face the same divided loyalty predicament that he or she

10   might face in cross-examining a former client.

11        THE COURT:  But having nothing to do with actual

12   possession of confidential information?

13        MR. HARBACH:  Well, that could manifest in a couple of

14   ways.

15        The point I am trying to make is that calling into

16   question the credibility or the truthfulness of one's former

17   client is an independent -- an independent disability on a

18   conflicted lawyer from the difficulties presented in

19   cross-examining a former client.

20        In other words, hypothetically speaking, this is a bit

21   of a silly hypothetical because it would be unlikely to happen

22   in the real world, but if a conflicted lawyer, let's say

23   forewent cross-examining a former client altogether, just

24   didn't cross-examine him or her, and then at time of jury

25   argument it was incumbent upon that lawyer in zealously

1    representing his former client to argue to the jury that his

2    former client was not credible, or was a lier, or had terrible

3    character, those are things that, in the Government's view,

4    implicate the duty of loyalty to the former client, and there

5    are some cases that make the same point.

6          In other words, when a lawyer is conflicted in a

7    way -- the way we are talking about here, the prohibition

8    extends not only to cross-examining the former client, but also

9    in making the types of arguments that I am talking about.

10         I want to be clear in the reason I am raising it with

11   the Court now is just with an eye toward whatever might happen

12   here or eventual down-the-road proceedings, a couple of which

13   your Honor has mentioned, we just think that the prudent course

14   would be to advise Mr. De Oliveira that there is a possibility

15   that situation might manifest --

16         *THE COURT:*  But by this situation, you just mean -- I

17   am not still understanding fully what you mean.

18         *MR. HARBACH:*  What I mean is that a lawyer's prior

19   representation of a witness who later testifies in a criminal

20   case against a current client --

21         *THE COURT:*  Independent of any information acquired,

22   would have a standalone disability in calling into question

23   that individual's credibility.  Is that essentially what you

24   are saying?

25         *MR. HARBACH:*  It may be a bit of a false hypothetical

                    Pauline A. Stipes, Official Federal Reporter

1    because there are cases, including I think one case from the

2    Eleventh Circuit, that concludes that in a situation where

3    there is a conflict and that the conflict is substantially

4    related, that there arises an irrebuttable presumption that

5    relevant confidential information has been disclosed to the

6    lawyer.

7              THE COURT:  All right.

8              MR. HARBACH:  So, the Government recognizes that, like

9    many areas of the law, the area of conflicts law, it is

10   sometimes the case that Courts are loose with terminology, like

11   actual and potential and substantial, and so forth, so I don't

12   mean to suggest that it is a completely logical interlocking

13   puzzle, but the notion that if a lawyer represents, as in this

14   case, represents a client against whom the Government is

15   calling a witness at a criminal trial, that under cases like

16   Ross, that is a conflict situation, period.

17             And that is not only what precipitates the Court's

18   inquiry, but that is an actual conflict.  And the next question

19   for the Court, then, is -- in assessing whether the conflict

20   merits disqualification, the next step would be whether the

21   subject matters are substantially related.

22             THE COURT:  All right.  Thank you.  I think I

23   understand.

24             Are there any other ways in which you believe these

25   conflicts could materialize beyond the cross-examination, this

1    sort of standalone disability to argue against the credibility

2    of former clients, and then the appellate issue I mentioned?

3         MR. HARBACH:  I don't think so, but I am checking with

4    one of my colleagues.  Am I forgetting something?

5         I don't think so, your Honor.

6         THE COURT:  All right.  Are there any additional

7    details you wish to provide to fill in any gaps that might

8    exist in the Court's summary of those three individuals and

9    their respective roles in the allegations?

10        MR. HARBACH:  I can -- this isn't by way of a

11   correction as much as a supplement.

12        One additional fact that wasn't specifically mentioned

13   in document 123 concerns Witness 1.  What it says in document

14   123 is that Witness 1 also has information about, among other

15   things, De Oliveira's involvement of the replacement of a lock.

16        I can add a little bit more color to that to say that

17   we expect Witness 1 to specifically say that Mr. De Oliveira

18   was, at a minimum, present at the time the lock was changed and

19   that involvement includes physical presence when the act took

20   place.

21        THE COURT:  All right.  Thank you.

22        Now let me ask a few more questions.

23        In the papers these conflicts have been described as

24   potential conflicts that haven't actually materialized, that

25   they would ripen into an actual conflict in the event these

1    individuals testified.

2           I want you to clarify that that is your understanding.

3           *MR. HARBACH:*  Again, I want to be careful about not

4    getting -- I'm speaking for myself now -- not getting too

5    wrapped around the axle about the nomenclature that is used to

6    describe the conflict because, whether it is potential or

7    actual, the Court has to do what it has undertaken today.

8           Your Honor has accurately stated from the standpoint

9    of whether we expect Trump Employee 3, Witness 1 or Witness 2

10   to be witnesses at trial, their status remains the same, which

11   is to say that we may well call them as witnesses at trial.

12          There is no change on that score.

13          *THE COURT:*  But --

14          *MR. HARBACH:*  Have I answered --

15          *THE COURT:*  Yes.  But if they don't testify, these

16   concerns about cross-examination and a sort of weaker jury

17   presentation would not be present?  That is at least how the

18   papers read.

19          *MR. HARBACH:*  Correct, and less there be any

20   misconception, even in our interpretation of how this would

21   play out, the witness would have to be an actual witness at

22   trial, yes.

23          *THE COURT:*  Okay.

24          *MR. HARBACH:*  In a world where the Government called

25   none of those three people, we agree that the conflicts would

1    not manifest themselves in a way that would be problematic.

2              THE COURT:  Okay.

3              MR. HARBACH:  Can I have one moment?  Maybe I can

4    clarify one more thing, please.

5              THE COURT:  Yes.

6              MR. HARBACH:  Thank you for your patience, your Honor.

7    I was advised about one other thing by a colleague that I

8    should mention to the Court.  I know the Court is aware of

9    this.

10             Mr. Irving and his colleague, Mr. Murrell, have made

11   certain representations to the Court about additional measures

12   that they have already volunteered to put in place in order to

13   alleviate some of these problems, including a proposal that, to

14   the extent the Government calls any of these witnesses, Mr.

15   Murrell would cross-examine them, and furthermore, that Mr.

16   Irving has not shared any information from these clients with

17   Mr. Murrell.  The Government doesn't have any reason to

18   question that.

19             So, we suggest that those potential arrangements also

20   be included in the Court's colloquy with Mr. De Oliveira.

21             THE COURT:  Yes, that makes sense.  A few more

22   questions for you.  Am I correct that the Government is not

23   seeking disqualification at this time of Mr. Irving?

24             MR. HARBACH:  Yes.

25             THE COURT:  Am I also correct that you have not

Pauline A. Stipes, Official Federal Reporter

1    alleged any sort of impropriety or misbehavior on the part of

2    Mr. Irving?

3            MR. HARBACH:  Also correct.

4            THE COURT:  Now, with respect to these individuals,

5    and what you anticipate them saying, has the substance of that

6    testimony been provided to the Defense in the form of reports,

7    et cetera?

8            MR. HARBACH:  Yes, your Honor.

9            THE COURT:  That encompasses all three of the

10   individuals we are talking about now?

11           MR. HARBACH:  Yes, your Honor.

12           THE COURT:  So, in more detail, hypothetically, let's

13   take Trump Employee 3, how would you see this potential

14   conflict coming to pass in the course of a hypothetical

15   cross-examination?

16           I am really trying to understand how this would become

17   an issue or present itself in more detailed terms.

18           MR. HARBACH:  By which your Honor means how the

19   witness' testimony might incline a lawyer to want to

20   cross-examine him or how --

21           THE COURT:  Less vigorously than you otherwise would

22   if you had some information that hasn't already been given to

23   the Government and shared with Defense counsel.

24           MR. HARBACH:  I understand your Honor's question and

25   the -- I can speak in a little bit more detail -- a little bit

Pauline A. Stipes, Official Federal Reporter

1   more detail about what we expect Trump Employee 3 to say from

2   the stand, but I don't know that it would really get at your

3   Honor's question.

4           If I understand correctly, the Court and we are in

5   receipt of a representation by Mr. Irving that, in his view, he

6   has not -- there has been no confidential information that has

7   been provided to him that has not been provided to the

8   Government, and I assume that he couches that in part as an

9   argument that it is exceedingly unlikely that I would be in a

10  position of having divided loyalty because I, Mr. Irving, don't

11  know anything that might enable me to cross-examine my former

12  client better.

13          THE COURT:  Are you aware of any information he would

14  have beyond what you already know from this individual?

15          MR. HARBACH:  No, but how could we?  That would all be

16  privileged.  This is not at all meant to call into question Mr.

17  Irving's -- the bona fides of Mr. Irving's representation to

18  the Court, but due respect to that, I think it would be

19  extremely difficult for a lawyer in his position to

20  categorically say right now, without knowing how his former

21  client is going to testify on direct, that he is in possession

22  of no information as a result of his attorney/client

23  relationship with this witness to be able to enhance his

24  cross-examination.

25          In other words, if your Honor is asking us to prove a

Pauline A. Stipes, Official Federal Reporter

1    negative here, we are not able to do it because we don't know

2    what we don't know.  We don't know what else Mr. Irving has

3    been provided in his attorney/client relationship with Trump

4    Employee 3, nor should we.

5            THE COURT:  All right.  Just to be clear, this is the

6    full scope of individuals, these three folks, there are not any

7    additional witnesses that have been represented in the past by

8    Mr. Irving that you have on your witness list; is that correct?

9            MR. HARBACH:  Correct, your Honor.  This is the total

10   universe.

11           THE COURT:  Okay.  All right.  Now, I know you

12   mentioned a moment ago that there could be measures taken to

13   alleviate these concerns and one such option would be to have

14   local counsel do the cross-examination of the three

15   individuals.

16           Am I correct that the Government acknowledges that if

17   that solution were used, it would remove the actual conflict in

18   a way that would require disqualification?

19           MR. HARBACH:  I think ultimately, I am really not

20   trying to be coy, ultimately, that would be up to the Court in

21   making -- your Honor's decision about whether to accept the

22   waiver from Mr. De Oliveira, obviously that should weigh into

23   the calculus, of course.

24           I would add that, just a reminder of where I started,

25   to the extent, and it may not, but to the extent that any of

Pauline A. Stipes, Official Federal Reporter

 1   these three witnesses' credibility becomes an issue at trial,

 2   in our view the ethical obligation would extend to Mr. Irving

 3   not impugning the credibility of his former clients to the

 4   jury.

 5           THE COURT:  All right.  Thank you.

 6           MR. HARBACH:  In an abundance of caution, we think the

 7   Court should advise Mr. De Oliveira of that also.

 8           THE COURT:  All right.  Thank you.  Anything further

 9   before I turn to Mr. Irving?

10           MR. HARBACH:  No, your Honor.

11           THE COURT:  All right.  Thank you.  Before I hear from

12   you, one moment, Mr. Irving, back to Mr. De Oliveira.

13   BY THE COURT:

14   Q.  Were you able to fully understand what Mr. Harbach was

15   saying in his comments to the Court?

16   A.  To the best of my knowledge, yes, your Honor.

17   Q.  What he indicated is, not only is there this potential risk

18   that your attorney would pull his punches, so to speak, or be

19   less than vigorous in his cross-examination, that separate from

20   that there is a risk that he might not be able, in speaking

21   with the jury, to attack the credibility of any of those people

22   simply by virtue of the fact that he previously represented

23   them.

24       Do you understand that?

25   A.  I do, your Honor, I understand.

Pauline A. Stipes, Official Federal Reporter

```
 1   Q.  That is a nuance to this potential conflict that we are
 2   describing.  Are you with me thus far?
 3   A.  Yes, your Honor.
 4           THE COURT:  Mr. Irving, I will hear from you now.
 5           MR. IRVING:  Thank you, your Honor.  Good afternoon.
 6           This -- we certainly, as I said in the pleadings,
 7   welcome the Court's inquiry.  I am happy to have the Court, you
 8   know, explain all this to Mr. De Oliveira.  We appreciate that.
 9   I am not hiding anything from the Court, from anybody else, or
10   from the Government.
11           Especially this new aspect of it involving arguments
12   to a jury all just seems to me, frankly, to be a solution in
13   search of a problem.
14           As I said in the pleadings, I am not aware of any, you
15   know, confidential information that the Government doesn't
16   already know.  I don't know what I would use to hypothetically
17   cross-examine the potential witness that we may or may not ever
18   hear from.
19           What they have to say isn't particularly harmful to
20   Mr. De Oliveira in the first place, so I don't -- I don't see
21   myself ever questioning their credibility.  They have been
22   forthcoming, as has Mr. De Oliveira, with the Government since
23   the beginning of this mess.  So, might they be mistaken about
24   something, might there be, you know, 15 pages of Grand Jury
25   transcript with, you know, almost incomprehensible questions
```

34

1    and answers that the Government thinks they said something, and

2    I would seek to elicit that, or Mr. Murrell would, or make

3    arguments to the jury, sure, but --

4            THE COURT:  Just so I understand, I assume from the

5    Government's representation that you received already any

6    summaries or statements by these witnesses in discovery.

7            MR. IRVING:  Yes, I have.

8            THE COURT:  Have you reviewed those?

9            MR. IRVING:  I have.

10           THE COURT:  Okay.

11           MR. IRVING:  So the things they have to say aren't

12   particularly harmful anyway.  For example, one of the witnesses

13   identifies Mr. De Oliveira as one of the people in the tunnel

14   moving the boxes.  We will stipulate to that.  There is no

15   secret about that at all, and that is certainly not Mr. De

16   Oliveira's defense, that wasn't me.  He said from the beginning

17   it was.

18           So, not particularly harmful, and in any event, to the

19   extent that any of this is a potential problem, Mr. De Oliveira

20   has Donnie Murrell, who is, frankly, far more capable than I am

21   to cross-examine any witnesses.  He has never spoken with them,

22   he has gotten no privileged information from them, confidential

23   information.  I no longer represent the witnesses.  They have

24   their own totally independent counsel.

25           THE COURT:  In terms of that, when did you stop

Pauline A. Stipes, Official Federal Reporter

```
 1   representing them?
 2           MR. IRVING:  Around the time I filed my opposition to
 3   this hearing -- well, not to the hearing itself, but to the
 4   Government's pleading.
 5           THE COURT:  Do you have a rough estimate of timing for
 6   when the representation ended?
 7           MR. IRVING:  I don't have that pleading in front of
 8   me.  It was whenever that was filed.
 9           MR. HARBACH:  It was August 30th, if it's helpful,
10   Judge.
11           MR. IRVING:  Thank you.
12           THE COURT:  That is August 30, 2023; is that correct?
13           MR. IRVING:  Give or take, yes.
14           THE COURT:  That would apply to all three?
15           MR. IRVING:  Yes.
16           THE COURT:  You have indicated, Mr. Irving, that you
17   are unaware of any confidential information that would preclude
18   you or impact or impair you from conducting a fulsome and
19   rigorous cross-examination of these witnesses.  Is that still
20   your firm view?
21           MR. IRVING:  Yes.
22           THE COURT:  To the best of your knowledge, do you have
23   any information that you acquired in the course of those
24   representations that, if revealed or used on cross-examination,
25   would harm the former clients, but would help Mr. De Oliveira?
```

1            MR. IRVING:  No.  I think that there are -- I started
2     going down the rabbit hole of some of the details in their
3     fairly lengthy testimony.  They have been forthcoming with the
4     Government all along.  Are there things that either they are
5     mistaken about or that the Government thinks they are saying
6     something that they are not really saying?  Yes, there are
7     examples of those kinds of things, but I have absolutely no
8     concern that any of those three witnesses would not be
9     completely honest and forthcoming and truthful before this
10    Court and a jury.
11            THE COURT:  Do you have any reservation or hesitation
12    at all about the vigor of your ability to cross-examine these
13    witnesses?
14            MR. IRVING:  I don't, but Mr. Murrell would be doing
15    that anyway.
16            THE COURT:  Okay.  Let me just clarify, is it your
17    position that Mr. Murrell would in fact conduct the
18    cross-examination of these three witnesses if they are called?
19            MR. IRVING:  Yes, that would be fine with me.
20            THE COURT:  So, is that a commitment on your part?  Is
21    that a definitive decision that for sure Mr. Murrell will be
22    doing the cross of these three witnesses, or is that something
23    that is sort of tentatively on the table as an option?
24            MR. IRVING:  No, I am happy to make that
25    representation right here.

```
 1            THE COURT:  Okay.  Anything further, Mr. Irving?
 2            MR. IRVING:  No, your Honor.
 3            THE COURT:  All right.  Thank you.
 4  BY THE COURT:
 5  Q.  Mr. De Oliveira, were you able to hear everything that I
 6  just discussed with Mr. Irving?
 7  A.  Yes, your Honor.
 8  Q.  Do you have any questions about our conversation?
 9  A.  No, your Honor.
10  Q.  That last bit that we were just talking about, to have Mr.
11  Murrell do the cross-examination of those three witnesses, have
12  you given that possibility some thought, sir?
13  A.  Yes.  We discussed that with my lawyers before.
14  Q.  Okay.  Would you be fully comfortable with Mr. Murrell
15  conducting the cross-examination of those witnesses?
16  A.  Yes, I will.
17  Q.  Do you have any reservations whatsoever about Mr. Murrell
18  conducting the cross-examination as opposed to Mr. Irving?
19  A.  I have no problem with that, your Honor.
20            THE COURT:  All right.
21            MR. IRVING:  Your Honor -- I apologize, I don't mean
22  to interrupt -- may I add one followup?
23            THE COURT:  You may.
24            MR. IRVING:  I just want to make it clear that I don't
25  concede that there is some ethical prohibition against me
```

Pauline A. Stipes, Official Federal Reporter

1    addressing the jury about these witnesses.  This is a new one

2    today.  I am happy to spend more time thinking about it, but

3    that doesn't ring true to me, and I just want to make it clear

4    that I am not conceding that.

5             THE COURT:  Do you, at this point, sense in any way

6    that you would be disabled or impaired or harmed, impeded in

7    your ability to interact with the jury or argue to the jury

8    about those witnesses and their credibility?

9             MR. IRVING:  I don't think that I should be precluded

10   from arguing to the jury about the credibility of any witness,

11   but as a practical matter, as I mentioned, I can't see a world

12   where they say something where I am attacking their credibility

13   saying they were lying.

14            THE COURT:  My question is:  Do you think you would be

15   fully able to make those arguments to the jury despite the fact

16   that you represented those three people?

17            MR. IRVING:  Yes.

18            THE COURT:  Okay.  Thank you, Mr. Irving.

19   BY THE COURT:

20   Q.  I will turn back to you now, Mr. De Oliveira.

21        As I stated at the beginning of this hearing, the purpose

22   here is to make sure that you understand the potential

23   conflicts that we have been discussing, that you understand the

24   potential consequences of these conflicts if you continue with

25   Mr. Irving, and also that you fully understand that you have

Pauline A. Stipes, Official Federal Reporter

1    the right to obtain separate independent counsel and go with

2    another attorney, not Mr. Irving.

3         That is the general idea here and I want to make sure you

4    understand those things, and that whatever decision you make,

5    and it is certainly not mine to make, that you have a full

6    opportunity to think about that, and that you have done so

7    knowingly.

8         With that backdrop, I am going to ask you, sir, in your own

9    words, as best you can in your own words, how would you

10   describe this potential conflict that the Government has

11   suggested?

12   *A.*   I discussed it with my lawyers yesterday, we had a

13   conversation about the Garcia thing.  I didn't know anything

14   about it, what did it mean, and they explained that to me.

15   *Q.*  One moment, before you proceed, I am not trying to ask you

16   to tell me anything that you discussed privately with your

17   attorneys.  I am asking you directly:  In your own words, how

18   would you describe this conflict that we discussed?

19        And what I am referring to is Mr. Irving being in a

20   position of cross-examining his former clients.

21   *A.*   Okay.

22   *Q.*  I want to see if you understand --

23   *A.*  I understood.  I don't have a problem of crossing or not

24   crossing them.

25   *Q.*  Do you understand, though, how this could materialize?

                    Pauline A. Stipes, Official Federal Reporter

40

```
1    What we are talking about is that maybe, and we don't know how
2    this could materialize, but there could be a scenario
3    hypothetically in which Mr. Irving doesn't cross-examine these
4    witnesses as strongly as he otherwise could because maybe he
5    has some information that hasn't been shared with the
6    Government.
7         Do you understand what I am saying, sir?
8    A.   Yes, your Honor.
9    Q.   In your own words, what is the conflict that we are trying
10   to make sure you understand?
11   A.   Um-m-m, I don't know, ma'am.  I don't understand, really.
12   I don't have -- if Mr. Murrell represents me, I am fine.  Is
13   that what they are trying to say?
14        I don't understand.
15   Q.   That is part of the discussion.
16   A.   Yes, I don't have a problem with Mr. John Irving or Mr.
17   Murrell cross-examining the witness, if it is Mr. John Irving
18   or Mr. Murrell.
19   Q.   If it is Mr. Irving, are you willing to accept, sir, that
20   there might be this confidential information --
21   A.   Yes, I am willing to accept that.
22   Q.   If that is true that Mr. Irving somehow possesses this
23   information that he acquired when he was representing those
24   individuals, if that is true and if that information hasn't
25   already been given to the Government, are you fully
```

1    comfortable, sir, with having him cross-examine those witnesses

2    even if that means he would be kind of a weak attorney in that

3    sense?

4    A.   Yes, your Honor.

5    Q.   So, do you understand, sir, that it could be that Mr.

6    Irving, in the course of his prior representation, acquired

7    some knowledge, some information that is confidential that he

8    would have, and having that information, it would make him

9    unable to fully cross-examine that witness?

10        Do you understand what I am saying, sir?

11   A.   Yes, your Honor.

12   Q.   Tell me in your own words how you understand that.

13   A.   Uh, you are saying to me if Mr. Irving is trying to

14   cross-examine the other people, if something they can ask

15   him -- I don't know how to say -- they can hurt me in my

16   testimony or something.

17   Q.   Okay.  But let me understand, are you fully comfortable --

18   A.   Yes, your Honor.

19   Q.   -- with having Mr. Murrell conducting the

20   cross-examination?

21   A.   Yes, I am.

22   Q.   Now, have you thought about, Mr. De Oliveira, your ability

23   to get a different lawyer than Mr. Irving?

24   A.   No.  I have no reason for it.

25   Q.   Do you want any additional time to think about whether you

```
 1    might want a different attorney to make this decision?
 2    A.  No, your Honor.
 3    Q.  Do you understand, sir, that you could if you wanted very
 4    easily get a different attorney and the Court could appoint you
 5    one if you were financially eligible for one?
 6        Do you understand that?
 7    A.  I understand that, your Honor.
 8    Q.  So, you are not required -- I want you to make sure you
 9    understand you are not required to proceed with Mr. Irving.
10        Do you understand?
11    A.  I understand that, your Honor.
12    Q.  Have you had an opportunity to talk with any other
13    attorneys about this issue, or do you want to talk to any other
14    attorneys about this issue?
15    A.  I didn't talk about it, and I don't want to.
16    Q.  Now, before today's hearing, did you have a full
17    opportunity to talk about these matters with Mr. Irving,
18    without telling me what it is that you talked about?
19    A.  We discussed about --
20    Q.  I don't want to know what you talked about.  I am just
21    asking:  Did you have a full opportunity to talk about these
22    issues with Mr. Irving?
23    A.  I did, your Honor.
24    Q.  Did you talk about these issues with Mr. Murrell?
25    A.  Yes.
```

1    *Q.*  Do you need any more time to talk with either of them about

2    this issue?

3    *A.*  No, your Honor.

4         *THE COURT:*  Mr. Irving -- and you can return to the

5    podium or stand at counsel table if you prefer.

6         In your view, sir, does Mr. De Oliveira have enough

7    information to make a decision about whether to move forward

8    with you as co-counsel in his case?

9         *MR. IRVING:*  Absolutely.

10         *THE COURT:*  And if you could briefly describe, not the

11    content of your conversations, but the acts of discussing these

12    issues with Mr. De Oliveira.

13         *MR. IRVING:*  Sure.  I will volunteer that Mr. Murrell

14    and I met with Mr. De Oliveira, we have had this conversation

15    more than once with the filings and the nature of the problem,

16    the potential problem.  We have discussed that, you know, on

17    more than one occasion, but as recently as yesterday.  We have

18    spent, I don't know how long, at least an hour talking about

19    it, the nature of the problem, the nature of the potential

20    problem, you know, the solutions that we are proposing, our

21    guess at least as to how this was going to proceed today.

22         *THE COURT:*  Thank you.

23         *MR. IRVING:*  Sure.

24         *THE COURT:*  All right.  You can return to counsel

25    table.

**Pauline A. Stipes, Official Federal Reporter**

*BY THE COURT:*

Q.  **Mr. De Oliveira, do you have any questions at all about what I have asked you or what I have discussed with the attorneys?**

A.  **No, your Honor.**

Q.  **Is there anything that has not been clear to you?**

A.  **No, your Honor.**

      *THE COURT:*  **All right.  Is there anything further from the Office of the Special Counsel in terms of these alleged conflicts?**

      *MR. HARBACH:*  **Yes, your Honor.  I will be brief.**

      **Two things, your Honor.  One is a factual matter that we thought would be worth putting on the record for your Honor to consider, and that is that the Special Counsel's Office has been advised by the new lawyer who is representing all three of the relevant witnesses, the lawyer is present in the courtroom, he advised us over the last couple of days that each of his clients has waived whatever rights to assert conflicts they might have vis-a-vis Mr. Irving.**

      **I wanted to make sure the Court was aware of that and put that on the record.**

      *THE COURT:*  **All right.  Thank you.**

      *MR. HARBACH:*  **The second thing is, in light of your Honor's questions and a comment made by Mr. Irving, I thought it might be worth pointing out to the Court some authority for**

1    the proposition that we advanced, that the duty of loyalty

2    encompasses not only cross-examination, but also argument to

3    the jury.  I will just mention a couple of cases.

4              THE COURT:  These would be cases that were not

5    included here in your papers?

6              MR. HARBACH:  Yes, your Honor.

7              THE COURT:  Why are you raising it for the first time

8    now?

9              MR. HARBACH:  Well, because the purpose of those

10   papers was only to suggest that a hearing was necessary.

11             THE COURT:  To be fair, they were quite voluminous,

12   they were lengthy, they were well done on both sides, so it

13   seems a bit odd that you have omitted this new theory which, as

14   you have explained, appears to be a valid concern on the part

15   of the Government.

16             MR. HARBACH:  To that extent, we apologize, but it is

17   in our view well grounded in the duty of loyalty to a former

18   client.

19             It presents the -- as I said earlier, I will keep it

20   brief.  It presents the same ethical dilemma that cross would.

21   If your Honor doesn't care to hear about the authority --

22             THE COURT:  It's not that I don't care to hear about

23   it, I just think it should be done in a procedurally proper

24   way.  So, raising new arguments and new authorities without

25   having done so in writing, of course, deprives the other side

1      of an opportunity to weigh in on those and that is the issue.

2            If you want to briefly tell me what the cases are just

3      for my own edification, I welcome that.  I think we will do

4      some more discussion about this sort of stand-alone possibility

5      that you described independent of any actual confidential

6      communications.

7            MR. HARBACH:  Yes, your Honor.  There are three cases.

8      One is from the Southern District of New York, United States

9      versus Yannotti, Y-A-N-N-O-T-T-I, it is from 2004, at 358

10     F.Supp. 2d. 289, and the PIN cite is 295.

11           There is an Eastern District of New York case that

12     cites Yannotti, United States versus Spataro, S-P-A-T-A-R-O,

13     this is an unreported opinion, and it is at 2005 WestLaw

14     3775954.  And finally, United States versus Rahman,

15     R-A-H-M-A-N, an opinion by Judge Mukasey in the Southern

16     District of New York, 861 F. Supp. 266, and the Pin cite there

17     is 277.

18           THE COURT:  All right.  Just before you turn back to

19     your table, is there any evidence in the form of witness

20     testimony or declarations, or anything along those lines, that

21     the Government wishes to introduce into the factual record for

22     purposes of this Garcia Hearing?

23           MR. HARBACH:  Assuming that your Honor is willing to

24     accept proffers of counsel about what Witnesses 1 and 2 and

25     Trump Employee 3 would say if called as witnesses at trial,

Pauline A. Stipes, Official Federal Reporter

```
 1    assuming proffers are sufficient for that purpose, then we have
 2    nothing else to add.
 3              THE COURT:  All right.  Thank you.  That will be
 4    sufficient then.
 5              One more question, Mr. Harbach.  Are there any
 6    additional topics you believe need to be covered with Mr. De
 7    Oliveira?  I will go through some questions with him in just a
 8    moment, but I want to make sure, if there are any areas I
 9    overlooked you let me know about that.
10              MR. HARBACH:  Understood, your Honor.  Not at this
11    point.
12              THE COURT:  All right.
13    BY THE COURT:
14    Q.  Mr. De Oliveira, I am going to turn back to you.  I will
15    ask a series of questions and they will flow from our
16    conversation that we have been having.  Again, the point here
17    is to make sure that you understand your rights and make
18    whatever decision you make knowingly and intelligently.
19         Understood?
20    A.  Yes, your Honor.
21    Q.  Do you understand that you have a constitutional right to
22    effective assistance of counsel?
23    A.  Yes, your Honor, I understand.
24    Q.  Do you understand that that right includes a right to have
25    an attorney that has no conflicts?
```

Pauline A. Stipes, Official Federal Reporter

48

```
 1        Do you understand that?
 2   A.   Yes, your Honor.
 3   Q.   Now, do you understand how these potential conflicts we
 4   have been describing, how they could materialize at trial?  We
 5   talked about them either in the form of cross-examination,
 6   weaker cross-examination if Mr. Irving were to do it, and also
 7   as the Government has described, Mr. Irving would be
 8   potentially unable to present to the jury any argument about
 9   the credibility, or lack thereof, of those witnesses simply by
10   virtue of his prior representation.
11        Do you understand how those conflicts could bear out if
12   those individuals were called as witnesses?
13   A.   I understand, your Honor.
14   Q.   Do you understand that another consequence of choosing to
15   continue to proceed with Mr. Irving would mean that you
16   wouldn't on appeal be able to say later, you know what, I had
17   an attorney with a conflict and therefore my conviction should
18   be reversed?
19        Do you understand that?
20   A.   Yes, I understand that, your Honor.
21   Q.   Do you have any questions about how these potential
22   conflicts could arise?
23   A.   No, your Honor, I don't.
24   Q.   Do you understand, sir, that you have the right to proceed
25   with a different attorney if you want?
```

Pauline A. Stipes, Official Federal Reporter

```
 1    A.  Yes, I understand that, your Honor.

 2    Q.  And that attorney would be someone who has never

 3    represented any of those three people.

 4        Do you understand that, sir?

 5    A.  Yes, your Honor, I understand.

 6    Q.  And that attorney would have none of these alleged issues

 7    associated with potential cross-examination and appeal to the

 8    jury.

 9        Do you understand that?

10    A.  Yes, your Honor.

11    Q.  And at the same time, sir, do you understand you have the

12    right to choose the attorney that you want to represent you in

13    this action?

14    A.  Yes, your Honor, I understand.

15    Q.  In other words, do you understand, sir, you are free to

16    waive any conflicts that your attorney might have and proceed

17    with Mr. Irving despite these alleged conflicts as we have been

18    discussing them?

19    A.  I understand, your Honor.

20    Q.  Do you understand, sir, also that you don't have to make

21    this decision right now, that you can take more time and ask

22    me, and I would be perfectly comfortable with you telling me,

23    you know, Judge, I need more time to think about this, this is

24    just too serious, I don't want to make a decision now?

25    A.  No, your Honor, I am okay.  I discussed it with my lawyers
```

1   on previous days.

2   Q.  Okay.  Are you confident, Mr. De Oliveira, that Mr. Irving

3   will be able to adequately represent your interests,

4   understanding the conflicts as the Government and the Court has

5   described them?

6   A.  Yes, I am confident.

7   Q.  Do you have any doubts whatsoever about that?

8   A.  No, your Honor.

9   Q.  All right.  So, at this point, having gone over with you

10  the alleged conflicts, the potential consequences of waiving

11  your right to conflict-free counsel under the Sixth Amendment,

12  and also having discussed your right to obtain an independent

13  attorney who never represented these three individuals, what

14  would you like to do, Mr. De Oliveira?

15      Do you want to continue to move forward with Mr. Irving?

16  A.  I would like to continue forward with Mr. Irving, your

17  Honor.

18  Q.  You want to do that despite all that we have discussed

19  today?

20  A.  Yes, your Honor.

21  Q.  Are you comfortable if Mr. Irving is the person who does

22  the cross-examination?

23  A.  Yes, your Honor.

24  Q.  Although remember, as we talked about, you can choose to

25  have Mr. Murrell do that as well.

1      Do you understand that?

2   A.  Yes, your Honor, I understand.

3   Q.  Now, I want to make sure that this is your decision and

4   nobody else's decision.

5      The decision you are making today that you want to continue

6   with Mr. Irving, is that your decision?

7   A.  Yes, your Honor.

8   Q.  Has anybody tried to force you into making this decision?

9   A.  No, your Honor.

10  Q.  Has anybody tried to coerce you into making this decision?

11  A.  No, your Honor.

12  Q.  Do you feel in any way any pressure, or influence, or

13  coercion at all in making this decision?

14  A.  No, your Honor, I don't feel it.

15          THE COURT:  Mr. Irving, do you believe there are any

16  additional questions I should ask of Mr. De Oliveira?

17          MR. IRVING:  No, your Honor.

18          THE COURT:  Mr. Harbach, any additional questions you

19  think should be asked of Mr. De Oliveira?

20          MR. HARBACH:  Nothing further, your Honor.  Thank you.

21          THE COURT:  Mr. De Oliveira, is it your wish today to

22  waive your right to conflict-free counsel under the Sixth

23  Amendment and proceed with Mr. Irving?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Based on this colloquy and the Court's

Pauline A. Stipes, Official Federal Reporter

```
 1    extensive questioning of Mr. De Oliveira and the discussion of
 2    both attorneys, I'm going to find, based on the record
 3    developed, that Mr. De Oliveira has in fact made a knowing,
 4    intelligent and voluntary waiver of any potential or actual
 5    conflict of interest arising from Mr. Irving's former
 6    representation of those three potential witnesses identified in
 7    the Government's motion.
 8            Anything further, Mr. Irving?
 9        MR. IRVING:  No, your Honor, thank you.
10        THE COURT:  Anything further from Mr. Harbach?
11        MR. HARBACH:  No, your Honor.
12        THE COURT:  We are going to take a brief break prior
13    to conducting the second Garcia hearing with Mr. Nauta.  It is
14    2:20.  We will commence at 3:00 o'clock.  Thank you.
15       (Thereupon, the hearing concluded.)
16                            * * *
17      I certify that the foregoing is a correct transcript
18    from the record of proceedings in the above matter.
19
20       Date: October 13, 2023
21            /s/ Pauline A. Stipes, Official Federal Reporter
22
23
24
25
```

**Pauline A. Stipes, Official Federal Reporter**

MR. BLANCH: [1]  3/15
MR. BRATT: [1]  3/6
MR. HARBACH: [38]  21/3
21/16 22/15 23/1 23/12 24/17
24/24 25/7 26/2 26/9 27/2
27/13 27/18 27/23 28/2 28/5
28/23 29/2 29/7 29/10 29/17
29/23 30/14 31/8 31/18 32/5
32/9 35/8 44/10 44/22 45/5
45/8 45/15 46/6 46/22 47/9
51/19 52/10
MR. IRVING: [30]  3/11 7/8
7/11 8/8 8/10 12/25 33/4
34/6 34/8 34/10 35/1 35/6
35/10 35/12 35/14 35/20
35/25 36/13 36/18 36/23 37/1
37/20 37/23 38/8 38/16 43/8
43/12 43/22 51/16 52/8
MR. MURRELL, JR.: [1]  3/13
MS. DADAN: [1]  3/17
THE COURT: [80]
THE DEFENDANT: [4]  5/7 8/6
8/14 51/23

/
/s [1]  52/21

1
10/15/66 [1]  5/22
12 [2]  1/5 6/1
123 [4]  7/21 12/3 26/13
26/14
13 [1]  52/20
137 [1]  12/3
145 [1]  12/3
1455 [1]  2/2
15 [1]  33/24
17 [1]  5/25
1975 [1]  4/15

2
20004 [1]  2/3
2004 [1]  46/9
2005 [1]  46/13
201 [1]  2/5
2022 [4]  13/14 14/7 15/3
15/12
2023 [4]  1/5 14/10 35/12
52/20
20530 [1]  1/20
23-80101 [1]  3/2
23-CR-80101-CANNON [1]  1/2
24th [1]  13/14
266 [1]  46/16
277 [1]  46/17
289 [1]  46/10
295 [1]  46/10
2:20 [1]  52/14
2d [1]  46/10
2nd [1]  15/12

3
3's [2]  13/21 21/8
30 [1]  35/12
301-807-5670 [1]  2/3
30th [1]  35/9

33132 [1]  1/22
33401 [1]  2/6
3434 [1]  2/8
358 [1]  46/9
3775954 [1]  46/14
3:00 o'clock [1]  52/14

4
400 [2]  2/2 2/5
4th [1]  1/22

5
561-803-3434 [1]  2/8
5670 [1]  2/3

6
66 [1]  5/22

8
80101 [1]  3/2
861 [1]  46/16

9
950 [1]  1/19
97 [1]  7/21
99 [1]  1/22

A
ability [5]  7/3 7/7 36/12
38/7 41/22
able [11]  3/24 19/21 19/25
30/23 31/1 32/14 32/20 37/5
38/15 48/16 50/3
about [69]
above [1]  52/18
absolutely [2]  36/7 43/9
abundance [1]  32/6
accept [5]  10/5 31/21 40/19
40/21 46/24
accordance [1]  7/19
According [1]  12/6
accordingly [1]  5/14
accurately [1]  27/8
acknowledges [1]  31/16
acquired [7]  16/2 17/7 17/12
24/21 35/23 40/23 41/6
act [1]  26/19
action [1]  49/13
acts [1]  43/11
actual [12]  8/3 10/7 20/23
23/11 25/11 25/18 26/25 27/7
27/21 31/17 46/5 52/4
actually [1]  26/24
add [5]  11/20 26/16 31/24
37/22 47/2
additional [9]  6/2 26/6
26/12 28/11 31/7 41/25 47/6
51/16 51/18
Additionally [1]  14/22
address [2]  4/18 7/14
addressing [1]  38/1
adequately [1]  50/3
advanced [1]  45/1
advise [4]  4/19 18/13 24/14
32/7
advised [3]  28/7 44/15 44/17
advising [1]  21/19
advocate [1]  16/25

affect [2]  7/3 7/7
after [3]  15/9 15/22 15/24
afternoon [7]  3/7 3/12 3/14
3/16 3/18 13/17 33/5
again [10]  4/10 9/21 11/4
16/9 18/8 18/12 19/4 20/23
27/3 47/16
against [4]  24/20 25/14 26/1
37/25
ago [1]  31/12
agree [1]  27/25
aide [1]  13/10
AILEEN [1]  1/13
alcohol [1]  6/22
alert [1]  6/24
all [52]  3/2 4/12 5/7 5/19
6/18 8/16 9/2 11/14 11/23
11/23 12/1 13/2 13/9 15/16
16/18 18/4 19/7 19/19 20/9
21/16 22/14 25/7 25/22 26/6
26/21 29/9 30/15 30/16 31/5
31/11 32/5 32/8 32/11 33/8
33/12 34/15 35/14 36/4 36/12
37/3 37/20 43/24 44/2 44/8
44/15 44/22 46/18 47/3 47/12
50/9 50/18 51/13
allegations [3]  13/6 15/5
26/9
alleged [15]  9/24 11/17
13/13 14/8 14/10 14/15 14/23
15/10 20/22 22/20 29/1 44/9
49/6 49/17 50/10
allegedly [11]  13/17 13/19
13/21 13/23 13/25 14/11
14/21 15/4 15/7 15/9 15/11
alleges [5]  13/12 14/7 14/20
14/22 14/25
alleviate [2]  28/13 31/13
allowed [1]  17/13
almost [1]  33/25
alone [1]  46/4
along [5]  5/14 8/17 8/23
36/4 46/20
already [8]  15/19 18/12
28/12 29/22 30/14 33/16 34/5
40/25
also [22]  4/8 9/13 10/4
10/25 12/17 15/11 17/5 18/10
18/19 18/23 21/19 24/8 26/14
28/19 28/25 29/3 32/7 38/25
45/2 48/6 49/20 50/12
altered [1]  13/23
Although [1]  50/24
altogether [1]  23/23
am [47]  6/14 6/18 8/19 9/21
10/5 11/16 12/3 13/2 13/5
13/7 13/25 16/24 20/3 20/15
23/2 23/15 24/9 24/10 24/17
26/3 26/4 28/22 28/25 29/16
31/16 31/19 33/7 33/9 33/14
34/20 36/24 38/2 38/4 38/12
39/8 39/15 39/17 39/19 40/7
40/12 40/21 41/10 41/21
42/20 47/14 49/25 50/6
Amendment [3]  19/24 50/11
51/23
AMERICA [2]  1/4 3/3
among [1]  26/14

**A**

amorphous [1]   22/23
and Carlos [1]   3/5
another [7]   7/13 11/1 19/8
 19/11 21/25 39/2 48/14
answered [1]   27/14
answers [1]   34/1
anticipate [1]   29/5
any [70]
anybody [3]   33/9 51/8 51/10
anybody's [1]   8/14
anymore [1]   16/21
anything [16]   6/6 11/20 20/9
 20/13 21/9 30/11 32/8 33/9
 37/1 39/13 39/16 44/6 44/8
 46/20 52/8 52/10
anyway [2]   34/12 36/15
apologize [2]   37/21 45/16
appeal [7]   19/21 19/23 20/1
 20/5 20/6 48/16 49/7
appeals [1]   19/10
appearances [2]   1/16 3/5
appears [1]   45/14
appellate [1]   26/2
applies [1]   8/16
apply [1]   35/14
appoint [1]   42/4
appreciate [1]   33/8
April [1]   14/10
April 2023 [1]   14/10
are [79]
area [1]   25/9
areas [2]   25/9 47/8
aren't [1]   34/11
argue [3]   24/1 26/1 38/7
arguing [2]   22/7 38/10
argument [8]   22/2 22/14 23/6
 23/8 23/25 30/9 45/2 48/8
arguments [9]   20/5 20/6
 22/15 22/25 24/9 33/11 34/3
 38/15 45/24
arise [2]   19/8 48/22
arises [2]   4/1 25/4
arising [1]   52/5
around [2]   27/5 35/2
arrangements [1]   28/19
arrive [2]   6/4 6/4
as [74]
ask [16]   5/13 6/18 8/4 8/20
 9/3 16/10 17/24 18/21 20/11
 26/22 39/8 39/15 41/14 47/15
 49/21 51/16
asked [2]   44/3 51/19
asking [4]   5/11 30/25 39/17
 42/21
aspect [1]   33/11
assert [1]   44/18
assessing [1]   25/19
assistance [2]   9/11 47/22
assistant [1]   15/8
associated [1]   49/7
assume [2]   30/8 34/4
assuming [2]   46/23 47/1
attack [2]   23/8 32/21
attacking [2]   22/8 38/12
attempted [1]   20/18
attention [2]   8/22 9/18

attorney [37]   4/3 4/3 6/15
 8/13 9/13 9/14 11/1 13/18
 15/17 15/20 15/21 15/23
 15/24 15/24 16/1 16/2 17/5
 18/11 18/20 19/22 20/1 22/24
 30/22 31/3 32/18 39/2 41/2
 42/1 42/4 47/25 48/17 48/25
 49/2 49/6 49/12 49/16 50/13
Attorney's [1]   1/21
attorney/client [4]   4/3
 15/20 30/22 31/3
attorneys [8]   3/10 4/23
 11/20 39/17 42/13 42/14 44/4
 52/2
August [2]   35/9 35/12
August 30 [1]   35/12
August 30th [1]   35/9
authorities [1]   45/24
authority [2]   44/25 45/21
available [1]   10/24
Avenue [2]   1/19 2/2
awake [1]   6/24
aware [6]   7/6 19/5 28/8
 30/13 33/14 44/20
axle [1]   27/5

**B**

back [7]   11/22 17/24 19/25
 32/12 38/20 46/18 47/14
backdrop [1]   39/8
background [1]   5/3
base [1]   5/18
based [5]   12/1 16/18 19/17
 51/25 52/2
basically [2]   16/9 17/24
basis [1]   19/23
be [92]
Beach [2]   2/6 2/7
Beach/Ft [1]   2/7
bear [2]   22/21 48/11
because [11]   8/13 19/23 20/1
 22/17 23/21 25/1 27/6 30/10
 31/1 40/4 45/9
become [3]   4/7 22/20 29/16
becomes [2]   4/10 32/1
been [25]   7/23 7/23 12/9
 17/17 18/12 20/19 25/5 26/23
 29/6 29/22 30/6 30/7 30/7
 31/3 31/7 33/21 36/3 38/23
 40/5 40/25 44/6 44/15 47/16
 48/4 49/17
before [12]   1/13 3/21 7/14
 13/4 14/6 32/9 32/11 36/9
 37/13 39/15 42/16 46/18
begin [1]   5/3
beginning [3]   33/23 34/16
 38/21
behalf [8]   3/9 3/11 3/13
 3/15 3/17 3/19 4/4 17/1
being [1]   39/19
believe [4]   7/2 25/24 47/6
 51/15
below [1]   14/18
best [4]   17/16 32/16 35/22
 39/9
better [3]   6/8 22/12 30/12
between [5]   5/10 13/14 13/17
 15/23 16/20

beyond [4]   13/7 19/25 25/25
 30/14
birth [1]   5/21
bit [10]   13/3 16/23 23/3
 23/20 24/25 26/16 29/25
 29/25 37/10 45/13
Blanch [1]   3/16
bona [1]   30/17
both [4]   4/17 9/12 45/12
 52/2
boxes [4]   15/4 15/10 15/12
 34/14
BRATT [2]   1/18 3/7
break [1]   52/12
brief [3]   44/11 45/20 52/12
briefly [3]   14/3 43/10 46/2
broken [1]   14/18
brought [2]   5/6 9/17
burden [1]   13/6

**C**

calculus [1]   31/23
call [4]   9/21 13/17 27/11
 30/16
called [14]   12/7 12/11 12/12
 15/19 16/6 16/8 17/22 18/9
 18/10 19/1 27/24 36/18 46/25
 48/12
calling [3]   23/15 24/22
 25/15
calls [1]   28/14
came [1]   21/12
camera [1]   13/16
cameras [2]   14/13 14/19
can [23]   5/7 6/9 6/10 8/23
 10/12 12/23 14/5 20/9 20/13
 20/25 21/1 26/10 26/16 28/3
 28/3 29/25 39/9 41/14 41/15
 43/4 43/24 49/21 50/24
can't [1]   38/11
candidly [1]   8/23
CANNON [2]   1/2 1/13
cannot [1]   16/1
capable [1]   34/20
care [2]   45/21 45/22
careful [3]   8/22 21/8 27/3
CARLOS [5]   1/8 3/5 3/11 4/13
 5/22
case [12]   1/2 3/2 9/9 9/20
 12/10 15/18 24/20 25/1 25/10
 25/14 43/8 46/11
cases [7]   24/5 25/1 25/15
 45/3 45/4 46/2 46/7
categorically [1]   30/20
caution [1]   32/6
Center [1]   2/5
certain [6]   14/9 14/14 15/21
 15/23 16/1 28/11
certainly [3]   33/6 34/15
 39/5
certify [1]   52/17
cetera [1]   39/7
chance [1]   11/21
change [1]   27/12
changed [1]   26/18
character [2]   22/8 24/3
checking [1]   26/3
choice [1]   11/10

**C**

**choose [5]**   9/14 10/6 11/9 49/12 50/24
**choosing [1]**   48/14
**chosen [1]**   10/10
**Circuit [2]**   4/15 25/2
**cite [2]**   46/10 46/16
**cites [1]**   46/12
**clarification [1]**   6/15
**clarify [5]**   20/9 20/13 27/2 28/4 36/16
**classified [1]**   15/5
**clear [9]**   6/24 13/4 21/13 23/3 24/10 31/5 37/24 38/3 44/6
**Clerk's [1]**   4/8
**client [26]**   4/3 7/7 15/20 15/24 15/25 16/22 16/25 22/7 22/7 22/10 23/8 23/10 23/17 23/19 23/23 24/1 24/2 24/4 24/8 24/20 25/14 30/12 30/21 30/22 31/3 45/18
**client's [1]**   22/8
**clients [11]**   12/18 12/18 15/21 16/20 17/8 26/2 28/16 32/3 35/25 39/20 44/18
**close [1]**   5/6
**closet [1]**   15/2
**closing [1]**   4/2
**closure [2]**   4/7 4/10
**co [1]**   43/8
**co-counsel [1]**   43/8
**coalition [1]**   4/4
**coerce [1]**   51/10
**coercion [1]**   51/13
**colleague [2]**   28/7 28/10
**colleagues [1]**   26/4
**colloquy [4]**   4/17 9/4 28/20 51/25
**color [1]**   26/16
**come [2]**   11/21 19/25
**comes [2]**   4/14 22/2
**comfortable [7]**   5/6 5/11 37/14 41/1 41/17 49/22 50/21
**coming [1]**   29/14
**commence [1]**   52/14
**comment [2]**   4/6 44/24
**comments [1]**   32/15
**commitment [1]**   36/20
**communications [4]**   4/3 15/23 17/6 46/6
**competent [1]**   7/11
**completely [4]**   5/11 6/24 25/12 36/9
**comprehensive [1]**   9/4
**concede [1]**   37/25
**conceding [1]**   38/4
**concern [5]**   20/12 22/23 23/7 36/8 45/14
**concerning [1]**   7/7
**concerns [5]**   19/10 21/6 26/13 27/16 31/13
**concluded [1]**   52/15
**concludes [1]**   25/2
**conclusion [1]**   10/21
**concrete [1]**   22/20
**condition [1]**   7/2

**conduct [6]**   4/12 4/16 9/4 19/18 22/18 36/17
**conducting [5]**   35/18 37/15 37/18 41/19 52/13
**confidence [1]**   10/9
**confident [2]**   50/2 50/6
**confidential [11]**   17/12 22/11 23/12 25/5 30/6 33/15 34/22 35/17 40/20 41/7 46/5
**confidentiality [1]**   17/6
**confirm [1]**   12/23
**confirmed [1]**   12/11
**conflict [26]**   5/1 10/8 11/10 19/13 19/24 20/2 21/20 21/21 22/5 25/3 25/3 25/16 25/18 25/19 26/25 27/6 29/14 31/17 33/1 39/10 39/18 40/9 48/17 50/11 51/22 52/5
**conflict-free [6]**   5/1 11/10 19/13 19/24 50/11 51/22
**conflicted [3]**   23/18 23/22 24/6
**conflicts [36]**   4/19 4/21 4/22 9/13 9/18 9/24 10/1 11/18 19/5 19/6 19/22 19/23 20/19 20/22 21/2 21/17 22/1 22/20 22/22 25/9 25/25 26/23 26/24 27/25 38/23 38/24 44/10 44/18 47/25 48/3 48/11 48/22 49/16 49/17 50/4 50/10
**confronted [1]**   14/12
**connection [1]**   12/19
**consequence [3]**   19/8 19/11 48/14
**consequences [3]**   19/6 38/24 50/10
**consider [2]**   4/2 44/14
**consists [1]**   8/25
**constitutional [2]**   9/11 47/21
**containing [1]**   15/4
**content [1]**   43/11
**contextual [1]**   21/11
**continue [9]**   10/1 10/16 13/5 19/14 38/24 48/15 50/15 50/16 51/5
**conversation [7]**   8/24 13/13 21/9 37/8 39/13 43/14 47/16
**conversations [1]**   43/11
**convey [1]**   16/24
**conviction [1]**   48/17
**correct [10]**   13/1 27/19 28/22 28/25 29/3 31/8 31/9 31/16 35/12 52/17
**correction [3]**   21/5 21/14 26/11
**correctly [1]**   30/4
**couches [1]**   30/8
**could [23]**   7/7 12/7 16/19 18/5 19/8 21/2 22/1 22/20 23/13 25/25 30/15 31/12 39/25 40/2 40/2 40/4 41/5 42/3 42/4 43/10 48/4 48/11 48/22
**counsel [31]**   1/19 3/4 3/5 4/18 4/24 5/1 8/17 9/11 9/19 10/11 11/10 12/4 12/6 12/10 14/7 14/22 14/25 19/13 19/24

29/23 31/14 34/24 39/1 43/5 43/8 43/24 44/9 46/24 47/22 50/11 51/22
**Counsel's [6]**   3/9 9/17 11/19 20/18 20/21 44/14
**couple [4]**   23/13 24/12 44/17 45/3
**course [15]**   4/1 5/12 10/12 10/25 11/21 13/25 16/2 17/7 17/11 24/13 29/14 31/23 35/23 41/6 45/25
**COURT [23]**   1/1 2/7 12/2 14/5 21/7 24/11 25/19 27/7 28/8 28/8 28/11 30/4 30/18 31/20 32/7 32/15 33/7 33/9 36/10 42/4 44/20 44/25 50/4
**Court's [9]**   21/5 21/19 22/18 22/21 25/17 26/8 28/20 33/7 51/25
**courtroom [4]**   3/24 4/2 4/8 44/16
**Courts [1]**   25/10
**covered [1]**   47/6
**coy [1]**   31/20
**CR [1]**   1/2
**credibility [14]**   16/14 22/8 23/8 23/16 24/23 26/1 32/1 32/3 32/21 33/21 38/8 38/10 38/12 48/9
**credible [1]**   24/2
**criminal [6]**   3/2 9/9 9/10 12/20 24/19 25/15
**criminally [1]**   12/9
**critical [1]**   9/9
**cross [48]**   16/8 16/11 17/2 17/14 17/23 17/25 19/1 19/9 19/18 21/24 22/13 23/10 23/19 23/23 23/24 24/8 25/25 27/16 28/15 29/15 29/20 30/11 30/24 31/14 32/19 33/17 34/21 35/19 35/24 36/12 36/18 36/22 37/11 37/15 37/18 39/20 40/3 40/17 41/1 41/9 41/14 41/20 45/2 45/20 48/5 48/6 49/7 50/22
**cross-examination [25]**   16/8 16/11 17/14 17/25 19/9 19/18 22/13 25/25 27/16 29/15 30/24 31/14 32/19 35/19 35/24 36/18 37/11 37/15 37/18 41/20 45/2 48/5 48/6 49/7 50/22
**cross-examine [11]**   23/24 28/15 29/20 30/11 33/17 34/21 36/12 40/3 41/1 41/9 41/14
**cross-examining [10]**   17/2 17/23 19/1 21/24 23/10 23/19 23/23 24/8 39/20 40/17
**crossing [2]**   39/23 39/24
**current [3]**   9/19 16/21 24/20
**currently [1]**   6/21

**D**

**D.C [2]**   1/20 2/3
**Dadan [1]**   3/18
**dangers [1]**   4/18
**Date [1]**   52/20

**D**

**DAVID [2]**   1/17 3/8
**day [4]**   13/22 13/24 15/3 21/10
**days [2]**   44/17 50/1
**DE [51]**   1/8 1/12 2/1 3/5 3/11 3/13 3/15 4/13 4/17 4/25 5/4 5/9 5/15 5/22 7/11 7/22 8/19 12/8 13/24 15/14 21/19 24/14 26/15 26/17 28/20 31/22 32/7 32/12 33/8 33/20 33/22 34/13 34/15 34/19 35/25 37/5 38/20 41/22 43/6 43/12 43/14 44/2 47/6 47/14 50/2 50/14 51/16 51/19 51/21 52/1 52/3
**decide [2]**   10/21 19/12
**decision [23]**   4/15 4/15 9/25 10/19 11/1 11/7 11/9 19/14 31/21 36/21 39/4 42/1 43/7 47/18 49/21 49/24 51/3 51/4 51/5 51/6 51/8 51/10 51/13
**decisions [1]**   11/4
**declarations [1]**   46/20
**defendant [4]**   1/12 2/1 5/16 9/10
**Defendants [2]**   1/9 4/19
**defense [5]**   18/5 19/7 29/6 29/23 34/16
**definitive [1]**   36/21
**delete [1]**   14/2
**denied [1]**   19/24
**Department [1]**   1/18
**deprives [1]**   45/25
**describe [8]**   8/20 13/7 16/23 20/18 27/6 39/10 39/18 43/10
**described [9]**   13/4 13/10 17/18 18/4 19/9 26/23 46/5 48/7 50/5
**describing [3]**   17/17 33/2 48/4
**designations [3]**   7/20 8/1 8/5
**designed [1]**   6/19
**despite [4]**   10/1 38/15 49/17 50/18
**detail [7]**   13/3 16/23 20/22 21/1 29/12 29/25 30/1
**detailed [1]**   29/17
**details [3]**   4/21 26/7 36/2
**determine [4]**   4/22 4/25 9/25 10/7
**developed [1]**   52/3
**dialogue [2]**   5/10 11/22
**did [10]**   5/23 6/2 6/5 22/14 34/25 39/14 42/16 42/21 42/23 42/24
**didn't [3]**   23/24 39/13 42/15
**different [7]**   10/18 10/18 21/20 41/23 42/1 42/4 48/25
**difficult [1]**   30/19
**difficulties [1]**   23/18
**dilemma [1]**   45/20
**direct [3]**   4/7 4/8 30/21
**direction [1]**   15/2
**directive [1]**   8/16
**directly [1]**   39/17

**disability [3]**   23/17 24/22 26/1
**disabled [1]**   38/6
**discern [1]**   14/5
**disclosed [1]**   25/5
**disclosing [1]**   15/23
**discovery [1]**   34/6
**discrete [1]**   4/5
**discussed [12]**   4/23 37/6 37/13 39/12 39/16 39/18 42/19 43/16 44/3 49/25 50/12 50/18
**discussing [3]**   38/23 43/11 49/18
**discussion [4]**   20/10 40/15 46/4 52/1
**disfavored [1]**   10/12
**disqualification [4]**   10/13 25/20 28/23 31/18
**disqualify [1]**   10/10
**DISTRICT [6]**   1/1 1/1 1/13 46/8 46/11 46/16
**divided [5]**   16/20 17/18 21/23 23/9 30/10
**DIVISION [1]**   1/2
**do [79]**
**Docket [1]**   7/21
**document [2]**   26/13 26/13
**documenting [1]**   14/18
**does [5]**   19/15 21/8 22/21 43/6 50/21
**doesn't [6]**   16/21 28/17 33/15 38/3 40/3 45/21
**doing [3]**   9/8 36/14 36/22
**don't [42]**   5/24 5/25 6/14 8/2 8/7 18/8 18/10 18/18 20/23 25/11 26/3 26/5 27/15 30/2 30/10 31/1 31/2 31/2 33/16 33/20 33/20 35/7 36/14 37/21 37/24 38/9 39/23 40/1 40/11 40/11 40/12 40/14 40/16 41/15 42/15 42/20 43/18 45/22 48/23 49/20 49/24 51/14
**DONALD [2]**   1/7 3/4
**done [5]**   18/1 39/6 45/12 45/23 45/25
**Donnie [2]**   3/14 34/20
**door [1]**   14/18
**doubt [1]**   13/8
**doubts [1]**   50/7
**down [2]**   24/12 36/2
**down-the-road [1]**   24/12
**drawing [1]**   12/3
**drawn [1]**   11/18
**Drive [1]**   2/5
**drugs [1]**   6/22
**due [2]**   9/20 30/18
**duly [1]**   5/16
**duplication [1]**   9/2
**during [14]**   6/13 7/8 7/18 8/19 14/10 14/11 14/15 15/8 15/18 16/2 16/11 17/14 18/24 19/16
**duty [10]**   11/7 16/25 17/1 17/5 19/4 22/6 22/9 24/4 45/1 45/17
**dynamic [1]**   16/19

**E**

**each [4]**   4/20 4/23 5/12 44/17
**ear [1]**   22/6
**earlier [2]**   9/22 45/19
**early [2]**   15/3 20/10
**easier [1]**   5/17
**easily [1]**   42/4
**Eastern [1]**   46/11
**easy [1]**   17/22
**edification [1]**   46/3
**education [1]**   6/2
**effective [3]**   4/20 9/11 47/22
**efficiency [1]**   10/9
**efforts [1]**   14/1
**either [4]**   4/25 36/4 43/1 48/5
**elaborate [1]**   23/2
**elect [1]**   10/10
**electronic [1]**   3/22
**Eleventh [1]**   25/2
**elicit [1]**   34/2
**eligible [1]**   42/5
**else [3]**   31/2 33/9 47/2
**else's [1]**   51/4
**Employee [17]**   7/24 9/22 12/5 13/9 13/10 13/12 13/18 13/20 14/1 14/3 21/6 21/8 27/9 29/13 30/1 31/4 46/25
**enable [1]**   30/11
**encompasses [3]**   9/12 29/9 45/2
**endeavor [1]**   21/1
**ended [2]**   15/22 35/6
**English [2]**   6/7 6/9
**enhance [1]**   30/23
**enough [1]**   43/6
**ensure [2]**   4/20 11/8
**Entries [1]**   7/21
**equipment [1]**   3/22
**Especially [1]**   33/11
**ESQ [2]**   2/1 2/4
**essentially [1]**   24/23
**estimate [1]**   35/5
**et [1]**   29/7
**ethical [3]**   32/2 37/25 45/20
**even [6]**   15/21 15/24 17/15 20/2 27/20 41/2
**event [2]**   26/25 34/18
**events [1]**   21/12
**eventual [1]**   24/12
**ever [5]**   5/24 33/17 33/21
**everybody [1]**   8/23
**everything [2]**   6/11 37/5
**evidence [1]**   46/19
**exactly [1]**   22/25
**examination [25]**   16/8 16/11 17/14 17/25 19/9 19/18 22/13 25/25 27/16 29/15 30/24 31/14 32/19 35/19 35/24 36/18 37/11 37/15 37/18 41/20 45/2 48/5 48/6 49/7 50/22
**examine [11]**   23/24 28/15 29/20 30/11 33/17 34/21 36/12 40/3 41/1 41/9 41/14

**E**

**examining [10]**  17/2 17/23
19/1 21/24 23/10 23/19 23/23
24/8 39/20 40/17
**example [2]**  22/3 34/12
**examples [1]**  36/7
**exceedingly [1]**  30/9
**excuse [1]**  21/5
**Executive [1]**  2/5
**exist [1]**  26/8
**exit [1]**  4/8
**expect [4]**  21/8 26/17 27/9
30/1
**experiencing [1]**  16/19
**explain [4]**  9/9 20/21 21/1
33/8
**explained [3]**  14/16 39/14
45/14
**explaining [1]**  11/17
**explanations [1]**  14/21
**extend [1]**  32/2
**extends [1]**  24/8
**extensive [1]**  52/1
**extent [5]**  28/14 31/25 31/25
34/19 45/16
**extremely [1]**  30/19
**eye [1]**  24/11

**F**

**F.Supp [1]**  46/10
**face [3]**  9/19 23/9 23/10
**faced [1]**  22/1
**facilitate [1]**  22/12
**fact [8]**  10/7 12/11 19/15
26/12 32/22 36/17 38/15 52/3
**factual [4]**  21/5 21/14 44/12
46/21
**fair [1]**  45/11
**fairly [1]**  36/3
**fairness [1]**  10/9
**false [1]**  24/25
**falsity [1]**  14/8
**familiar [1]**  16/9
**far [18]**  5/23 6/11 10/2
10/12 10/14 11/12 11/14 14/5
15/14 16/16 17/3 17/17 18/2
18/17 19/2 20/10 33/2 34/20
**FBI [1]**  14/14
**Federal [1]**  52/21
**feel [5]**  5/11 6/24 8/14
51/12 51/14
**few [4]**  3/20 6/5 26/22 28/21
**fides [1]**  30/17
**Fifth [1]**  4/14
**filed [2]**  35/2 35/8
**filings [4]**  11/18 12/2 12/3
43/15
**fill [1]**  26/7
**finally [3]**  14/25 15/7 46/14
**financially [1]**  42/5
**find [1]**  52/2
**fine [2]**  36/19 40/12
**finer [1]**  17/20
**finish [1]**  6/5
**finished [1]**  5/25
**firm [1]**  35/20
**first [4]**  4/13 5/4 33/20

**FL [2]**  1/22 2/6
**floor [1]**  3/23
**FLORIDA [2]**  1/1 1/6
**flow [2]**  22/9 47/15
**folks [3]**  3/24 9/22 31/6
**follow [1]**  8/23
**followed [1]**  13/24
**following [2]**  6/2 15/14
**follows [2]**  7/24 12/3
**followup [1]**  37/22
**footage [4]**  13/16 14/2 14/12
14/16
**force [1]**  51/8
**foreclosed [2]**  20/6 23/6
**foregoing [1]**  52/17
**forewent [1]**  23/23
**forgetting [1]**  26/4
**form [4]**  22/6 29/6 46/19
48/5
**format [2]**  11/16 11/24
**former [35]**  4/14 9/20 13/11
13/14 13/18 13/19 13/22
14/23 15/2 15/3 15/8 15/21
16/20 17/8 21/10 22/7 22/8
22/10 23/8 23/10 23/16 23/19
23/23 24/1 24/2 24/4 24/8
26/2 30/11 30/20 32/3 35/25
39/20 45/17 52/5
**formerly [1]**  15/17
**FORT [2]**  1/2 1/6
**forth [1]**  25/11
**forthcoming [3]**  33/22 36/3
36/9
**forward [3]**  43/7 50/15 50/16
**found [1]**  19/20
**framed [1]**  12/12
**frankly [2]**  33/12 34/20
**free [9]**  5/1 8/14 9/13 11/10
19/13 19/24 49/15 50/11
51/22
**front [1]**  35/7
**Ft [2]**  2/7 2/7
**Fugatin [1]**  4/4
**full [7]**  5/21 5/22 9/5 31/6
39/5 42/16 42/21
**fully [12]**  6/11 6/20 7/3
19/5 24/17 32/14 37/14 38/15
38/25 40/25 41/9 41/17
**fulsome [3]**  4/17 9/4 35/18
**further [8]**  6/14 7/14 32/8
37/1 44/8 51/20 52/8 52/10
**furthermore [1]**  28/15

**G**

**gaps [1]**  26/7
**GARCIA [8]**  1/12 4/12 4/14
4/15 9/8 39/13 46/22 52/13
**general [1]**  39/3
**generalized [1]**  22/23
**get [6]**  3/21 3/24 5/3 30/2
41/23 42/4
**getting [2]**  27/4 27/4
**give [4]**  4/3 5/12 11/20
35/13
**given [4]**  16/7 29/22 37/12
40/25
**go [8]**  5/14 5/18 5/23 7/14

8/17 13/2 39/1 47/7
**going [16]**  5/10 6/18 7/8 8/1
8/20 11/16 13/2 18/9 20/25
30/21 36/2 39/8 43/21 47/14
52/2 52/12
**gone [1]**  50/9
**good [8]**  3/7 3/12 3/14 3/16
3/18 6/10 20/15 33/5
**gotten [1]**  34/22
**GOVERNMENT [38]**  1/17 3/6
9/21 10/13 12/13 12/19 13/12
14/9 14/11 14/20 16/18 17/2
18/9 18/12 21/8 21/24 25/8
25/14 27/24 28/14 28/17
28/22 29/23 30/8 31/16 33/10
33/15 33/22 34/1 36/4 36/5
39/10 40/6 40/25 45/15 46/21
48/7 50/4
**Government's [7]**  13/6 15/18
21/25 24/3 34/5 35/4 52/7
**graduated [1]**  5/24
**Grand [2]**  13/15 33/24
**grounded [1]**  45/17
**guess [1]**  43/21
**guilty [1]**  19/20

**H**

**had [13]**  13/20 14/17 19/22
19/22 20/1 20/2 21/10 24/2
29/22 39/12 42/12 43/14
48/16
**hand [1]**  16/24
**happen [2]**  23/21 24/11
**happens [1]**  19/19
**happy [4]**  23/2 33/7 36/24
38/2
**HARBACH [7]**  1/17 3/8 20/25
32/14 47/5 51/18 52/10
**harm [1]**  35/25
**harmed [1]**  38/6
**harmful [3]**  33/19 34/12
34/18
**has [47]**  4/23 9/17 12/4
12/10 13/12 14/8 14/20 14/23
15/1 15/9 15/21 15/22 16/25
17/5 18/11 18/20 18/20 18/23
24/13 25/5 26/14 27/7 27/7
27/8 28/16 29/5 30/6 30/6
30/6 30/7 31/2 33/22 34/20
34/21 34/22 39/10 40/5 44/6
44/14 44/18 47/25 48/7 49/2
50/4 51/8 51/10 52/3
**hasn't [4]**  18/11 29/22 40/5
40/24
**have [107]**
**haven't [1]**  26/24
**having [8]**  18/4 23/7 23/11
30/10 41/1 41/8 41/19 45/25
47/16 50/9 50/12
**he [32]**  13/9 16/21 17/6
17/13 17/13 17/23 17/24
17/25 18/21 18/23 18/23
18/24 19/16 19/17 23/9 30/5
30/8 30/13 30/21 32/17 32/20
32/22 34/16 34/21 34/22 40/4
40/4 40/23 40/23 41/2 41/7
44/17
**head [1]**  14/6

## H

**headed [1]**  6/24
**hear [8]**  5/7 20/17 32/11 33/4 33/18 37/5 45/21 45/22
**heard [2]**  4/5 5/13
**hearing [30]**  1/12 3/22 3/25 4/1 4/16 5/9 6/13 7/8 7/11 7/16 7/18 7/22 8/2 8/19 9/5 9/8 10/21 11/16 11/24 18/20 22/17 22/18 35/3 35/3 38/21 42/16 45/10 46/22 52/13 52/15
**hearings [1]**  4/13
**help [2]**  11/1 35/25
**helpful [1]**  35/9
**helps [1]**  9/9
**her [4]**  17/23 22/10 23/8 23/24
**here [15]**  4/12 6/20 7/4 9/24 21/20 21/21 23/4 24/7 24/12 31/1 36/25 38/22 39/3 45/5 47/16
**hesitate [1]**  6/16
**hesitation [1]**  36/11
**hiding [1]**  33/9
**high [1]**  6/2
**him [9]**  17/23 18/25 23/24 29/20 30/7 41/1 41/8 41/15 47/7
**him or [1]**  29/20
**hire [1]**  10/25
**his [38]**  7/7 9/20 12/18 13/14 13/18 13/23 15/9 16/20 16/21 17/7 17/14 18/24 19/16 21/10 22/6 22/6 22/7 22/8 22/10 23/8 24/1 24/1 28/10 30/5 30/19 30/20 30/22 30/23 31/3 32/3 32/15 32/18 32/19 39/20 41/6 43/8 44/17 48/10
**hole [1]**  36/2
**holes [1]**  16/13
**HON [1]**  2/8
**honest [1]**  36/9
**Honor [96]**
**Honor's [4]**  29/24 30/3 31/21 44/24
**HONORABLE [1]**  1/13
**hour [1]**  43/18
**House [1]**  15/11
**how [28]**  5/23 12/12 18/4 19/5 21/2 21/17 22/19 22/25 27/17 27/20 29/13 29/16 29/18 29/20 30/15 30/20 39/9 39/17 39/25 40/1 41/12 41/15 43/18 43/21 48/3 48/4 48/11 48/21
**hurt [1]**  41/15
**hypothetical [3]**  23/21 24/25 29/14
**hypothetically [6]**  18/5 18/13 23/20 29/12 33/16 40/3

## I

**I am [1]**  38/4
**I'm [3]**  7/20 27/4 52/2
**idea [1]**  39/3
**identified [3]**  12/4 15/12

52/6
**identifies [1]**  34/13
**identify [1]**  7/18
**identities [1]**  20/23
**Illinois [1]**  13/22
**Imagine [1]**  19/12
**impact [1]**  35/18
**impair [2]**  7/3 35/18
**impaired [1]**  38/6
**impeded [1]**  38/6
**implicate [1]**  24/4
**important [4]**  9/4 10/4 18/8 22/19
**Importantly [1]**  10/19
**impropriety [1]**  29/1
**impugning [1]**  32/3
**incline [1]**  29/19
**include [1]**  21/9
**included [2]**  28/20 45/5
**includes [3]**  17/1 26/19 47/24
**including [2]**  25/1 28/13
**including I [1]**  25/1
**incomprehensible [1]**  33/25
**inconsistent [1]**  14/21
**inculpates [1]**  12/8
**incumbent [1]**  23/25
**indeed [1]**  18/22
**independent [8]**  4/24 23/17 23/17 24/21 34/24 39/1 46/5 50/12
**indicated [6]**  7/16 7/17 12/24 14/16 32/17 35/16
**indicating [1]**  13/19
**indicted [1]**  12/10
**individual [3]**  14/1 15/9 30/14
**individual's [1]**  24/23
**individuals [22]**  7/23 8/3 12/4 12/7 12/9 12/17 12/25 13/3 15/17 16/6 18/9 19/1 20/24 26/8 27/1 29/4 29/10 31/6 31/15 40/24 48/12 50/13
**influence [2]**  6/21 51/12
**information [36]**  12/1 13/13 14/8 14/20 14/23 15/1 15/10 17/12 17/13 17/15 18/11 18/24 19/16 19/17 22/11 23/12 24/21 25/5 26/14 28/16 29/22 30/6 30/13 30/22 33/15 34/22 34/23 35/17 35/23 40/5 40/20 40/23 40/24 41/7 41/8 43/7
**inhibited [1]**  22/24
**inquiry [2]**  25/18 33/7
**inside [1]**  15/2
**instead [1]**  13/23
**intelligent [2]**  11/11 52/4
**intelligently [2]**  5/2 47/18
**intend [2]**  3/25 8/3
**interact [1]**  38/7
**interest [8]**  4/19 4/21 9/13 9/19 9/25 10/8 17/16 52/5
**interests [1]**  50/3
**interlocking [1]**  25/12
**interpretation [1]**  27/20
**interrupt [1]**  37/22
**interview [2]**  14/11 14/15

**introduce [1]**  46/21
**investigation [2]**  12/20 15/18
**involvement [2]**  26/15 26/19
**involving [1]**  33/11
**irrebuttable [1]**  25/4
**IRVING [70]**
**Irving's [3]**  30/17 30/17 52/5
**is [163]**
**isn't [3]**  22/22 26/10 33/19
**issue [10]**  19/9 21/23 23/4 26/2 29/17 32/1 42/13 42/14 43/2 46/1
**issues [6]**  11/22 20/12 42/22 42/24 43/12 49/6
**it [79]**
**it's [2]**  35/9 45/22
**itself [2]**  29/17 35/3

## J

**January [1]**  14/7
**JAY [2]**  1/18 3/7
**JOHN [6]**  1/17 2/1 3/8 3/12 40/16 40/17
**John Irving [1]**  3/12
**JR [1]**  2/4
**JUDGE [5]**  1/13 3/14 35/10 46/15 49/23
**June [3]**  13/14 15/3 15/12
**June 24th [1]**  13/14
**juries [1]**  22/15
**jury [22]**  13/15 22/2 22/7 22/25 23/6 23/24 24/1 27/16 32/4 32/21 33/12 33/24 34/3 36/10 38/1 38/7 38/7 38/10 38/15 45/3 48/8 49/8
**just [26]**  5/6 10/23 12/24 21/5 21/7 22/24 23/23 24/11 24/13 24/16 31/5 31/24 33/12 34/4 36/16 37/6 37/10 37/24 38/3 42/20 45/3 45/23 46/2 46/18 47/7 49/24
**Justice [2]**  1/18 9/10

## K

**keep [2]**  3/25 45/19
**kind [2]**  19/16 41/2
**kinds [1]**  36/7
**know [35]**  4/12 6/16 8/2 8/2 8/7 10/22 15/19 18/8 18/10 20/1 28/8 30/2 30/11 30/14 31/1 31/2 31/2 31/11 33/8 33/15 33/16 33/16 33/24 33/25 39/13 40/1 40/11 41/15 42/20 43/16 43/18 43/20 47/9 48/16 49/23
**knowing [3]**  11/10 30/20 52/3
**knowingly [3]**  5/2 39/7 47/18
**knowledge [3]**  32/16 35/22 41/7
**knows [1]**  17/13

## L

**lack [1]**  48/9
**lacks [1]**  22/7
**Lago [5]**  13/15 13/23 14/2 14/6 15/11

## L

laid [1]   21/15
language [1]   6/7
large [1]   22/24
LARRY [1]   2/4
last [2]   37/10 44/17
later [5]   16/1 20/11 21/12
 24/19 48/16
law [3]   2/1 25/9 25/9
lawyer [21]   10/17 10/18
 10/18 13/15 21/10 22/4 22/5
 22/11 23/5 23/7 23/18 23/22
 23/25 24/6 25/6 25/13 29/19
 30/19 41/23 44/15 44/16
lawyer's [2]   22/9 24/18
lawyers [3]   37/13 39/12
 49/25
lay [1]   17/24
learned [1]   18/24
least [3]   27/17 43/18 43/21
left [1]   5/24
lengthy [2]   36/3 45/12
less [4]   17/25 27/19 29/21
 32/19
let [6]   6/16 21/20 26/22
 36/16 41/17 47/9
let's [8]   3/5 3/10 5/3 19/12
 19/15 19/19 23/22 29/12
lier [1]   24/2
light [1]   44/23
like [7]   20/17 22/22 25/8
 25/10 25/15 50/14 50/16
likely [1]   10/8
lines [1]   46/20
link [1]   4/9
list [1]   31/8
little [6]   5/17 13/3 23/3
 26/16 29/25 29/25
local [1]   31/14
lock [3]   15/1 26/15 26/18
logical [1]   25/12
long [1]   43/18
longer [3]   12/18 15/24 34/23
looking [1]   14/16
loose [1]   25/10
lot [1]   13/5
loyalties [3]   16/20 17/18
 21/23
loyalty [8]   14/23 22/6 22/10
 23/9 24/4 30/10 45/1 45/17
lying [1]   38/13

## M

ma'am [7]   6/4 6/12 6/17 6/23
 7/5 9/1 40/11
made [9]   5/2 7/19 14/1 14/9
 14/10 15/23 28/10 44/24 52/3
maintain [1]   17/5
maintenance [1]   14/6
make [39]   5/6 5/17 6/19 8/13
 9/5 10/5 10/19 10/24 11/1
 11/4 18/22 19/4 19/14 22/2
 22/14 23/15 24/5 34/2 36/24
 37/24 38/3 38/15 38/22 39/3
 39/4 39/5 40/10 41/8 42/1
 42/8 43/7 44/20 47/8 47/17
 47/17 47/18 49/20 49/24 51/3

makes [1]   28/21
making [7]   23/6 24/9 31/21
 51/5 51/8 51/10 51/13
manifest [5]   21/3 21/18
 23/13 24/15 28/1
manner [1]   7/14
many [1]   25/9
Mar [5]   13/15 13/23 14/2
 14/6 15/11
Mar-A-Lago [5]   13/15 13/23
 14/2 14/6 15/11
marker [1]   21/11
Massachusetts [1]   6/4
material [1]   15/5
materialize [7]   18/14 19/6
 22/20 25/25 39/25 40/2 48/4
materialized [1]   26/24
matter [5]   4/23 7/13 38/11
 44/12 52/18
matters [2]   25/21 42/17
may [13]   3/1 8/9 9/21 10/10
 12/7 21/18 24/25 27/11 31/25
 33/17 33/17 37/22 37/23
maybe [4]   22/23 28/3 40/1
 40/4
me [38]   5/10 5/11 5/21 6/16
 8/20 8/23 10/2 10/23 11/12
 16/16 18/2 18/20 18/21 21/5
 21/20 22/22 26/22 30/11 33/2
 33/12 34/16 35/8 36/16 36/19
 37/25 38/3 39/14 39/16 40/12
 41/12 41/13 41/15 41/17
 42/18 46/2 47/9 49/22 49/22
mean [8]   21/22 24/16 24/17
 24/18 25/12 37/21 39/14
 48/15
meaning [1]   16/22
means [4]   16/1 16/10 29/18
 41/2
meant [1]   30/16
measures [2]   28/11 31/12
medication [1]   6/21
mental [1]   7/2
mention [3]   18/19 28/8 45/3
mentioned [9]   9/8 9/22 10/16
 15/16 24/13 26/2 26/12 31/12
 38/11
merely [1]   21/11
merits [1]   25/20
mess [1]   33/23
message [1]   13/21
met [1]   43/14
Miami [1]   1/22
MICHAEL [2]   1/21 3/8
microphone [2]   5/6 5/18
might [28]   9/2 9/19 10/5
 12/12 15/18 16/9 17/7 17/20
 17/22 17/24 18/10 19/6 22/12
 22/12 23/10 24/11 24/15 26/7
 29/19 30/11 32/20 33/23
 33/24 40/20 42/1 44/19 44/25
 49/16
mindful [1]   8/17
mine [1]   39/5
minimum [1]   26/18
minor [1]   21/5
minute [1]   19/22
misbehavior [1]   29/1

misconception [1]   27/20
misheard [1]   21/7
missed [1]   20/19
misstated [1]   20/20
mistaken [2]   33/23 36/5
moment [6]   12/13 28/3 31/12
 32/12 39/15 47/8
more [26]   10/22 10/23 11/22
 13/3 14/9 16/23 20/22 22/23
 22/23 26/16 26/22 28/4 28/21
 29/12 29/17 29/25 30/1 34/20
 38/2 43/1 43/15 43/17 46/4
 47/5 49/21 49/23
more discussion [1]   46/4
Most [1]   5/9
motion [1]   52/7
motions [1]   7/20
move [3]   5/18 43/7 50/15
moved [1]   15/4
movement [1]   15/10
moving [3]   10/13 15/12 34/14
Mr [144]
Ms [1]   4/4
much [3]   13/7 21/1 26/11
Mukasey [1]   46/15
MURRELL [20]   2/4 3/15 28/10
 28/15 28/17 34/2 34/20 36/14
 36/17 36/21 37/11 37/14
 37/17 40/12 40/17 40/18
 41/19 42/24 43/13 50/25
my [20]   7/16 8/22 9/3 9/17
 11/7 11/17 19/4 19/4 19/23
 26/4 30/11 32/16 35/2 37/13
 38/14 39/12 41/15 46/3 48/17
 49/25
myself [2]   27/4 33/21

## N

name [3]   5/21 5/22 8/14
names [1]   8/4
natural [1]   5/11
naturally [1]   8/24
nature [5]   13/3 20/22 43/15
 43/19 43/19
NAUTA [12]   1/7 3/4 3/19 4/14
 4/17 4/25 13/19 13/20 13/21
 13/24 15/4 52/13
NE [1]   1/22
near [1]   14/13
necessary [4]   4/7 4/11 22/17
 45/10
need [9]   4/1 6/14 8/12 8/21
 10/22 10/23 43/1 47/6 49/23
needed [1]   22/17
negative [1]   31/1
never [4]   6/5 34/21 49/2
 50/13
new [10]   22/23 33/11 38/1
 44/15 45/13 45/24 45/24 46/8
 46/11 46/16
next [3]   13/22 25/18 25/20
night [1]   6/5
no [43]   1/2 3/21 3/22 6/4
 6/23 7/5 7/9 11/15 11/25
 11/25 12/17 15/24 18/18
 27/12 30/6 30/15 30/22 32/10
 34/14 34/22 34/23 36/1 36/7
 36/24 37/2 37/9 37/19 41/24

**N**

**no... [15]**   41/24 42/2 43/3
44/5 44/7 47/25 48/23 49/25
50/8 51/9 51/11 51/14 51/17
52/9 52/11
**nobody [1]**   51/4
**nomenclature [1]**   27/5
**none [2]**   27/25 49/6
**not [68]**
**not to [1]**   35/3
**Notably [1]**   12/9
**nothing [3]**   23/11 47/2 51/20
**notion [1]**   25/13
**now [33]**   3/25 5/15 6/18 8/19
9/2 9/8 9/17 10/4 10/16
12/17 13/2 15/16 18/8 18/19
19/8 20/17 22/22 24/11 26/22
27/4 29/4 29/10 30/20 31/11
33/4 38/20 41/22 42/16 45/8
48/3 49/21 49/24 51/3
**nuance [1]**   33/1
**number [1]**   3/2
**numbers [1]**   8/8

**O**

**o'clock [1]**   52/14
**obligation [2]**   22/18 32/2
**obligations [2]**   15/21 22/9
**obtain [2]**   39/1 50/12
**obtained [1]**   19/16
**obviously [3]**   20/18 23/5
31/22
**occasion [1]**   43/17
**occasionally [1]**   16/12
**October [2]**   1/5 52/20
**odd [1]**   45/13
**off [3]**   4/9 11/17 14/17
**office [12]**   1/19 1/21 3/3
3/9 4/9 9/17 11/19 11/19
20/18 20/21 44/9 44/14
**Official [2]**   2/7 52/21
**okay [16]**   8/14 10/4 12/1
20/16 27/23 28/2 31/11 34/10
36/16 37/1 37/14 38/18 39/21
41/17 49/25 50/2
**old [1]**   5/25
**OLIVEIRA [49]**   1/8 1/12 2/1
3/5 3/11 3/13 3/15 4/13 4/17
4/25 5/4 5/9 5/15 5/22 7/11
7/22 8/19 12/8 13/25 15/14
21/19 24/14 26/17 28/20
31/22 32/7 32/12 33/8 33/20
33/22 34/13 34/19 35/25 37/5
38/20 41/22 43/6 43/12 43/14
44/2 47/7 47/14 50/2 50/14
51/16 51/19 51/21 52/1 52/3
**Oliveira's [2]**   26/15 34/16
**omitted [1]**   45/13
**once [1]**   43/15
**one [26]**   8/9 11/11 14/18
16/12 16/24 21/5 21/24 25/1
26/4 26/12 28/3 28/4 28/7
31/13 32/12 34/12 34/13
37/22 38/1 39/15 42/5 42/5
43/17 44/12 46/8 47/5
**one's [1]**   23/16
**only [10]**   4/10 13/6 21/14

21/21 21/22 24/8 25/17 32/17
45/2 45/10
**opinion [3]**   7/10 46/13 46/15
**opportunity [12]**   4/5 5/12
16/7 16/10 18/21 20/11 20/21
39/6 42/12 42/17 42/21 46/1
**opposed [1]**   37/18
**opposition [1]**   35/2
**option [2]**   31/13 36/23
**order [3]**   7/16 7/17 28/12
**organization [1]**   11/24
**other [17]**   10/6 12/24 16/14
16/23 17/23 19/25 23/20 24/6
25/24 26/14 28/7 30/25 41/14
42/12 42/13 45/25 49/15
**otherwise [3]**   17/25 29/21
40/4
**our [11]**   8/24 9/9 20/10 22/4
22/16 27/20 32/2 37/8 43/20
45/17 47/15
**out [5]**   19/15 21/15 27/21
44/25 48/11
**over [3]**   14/6 44/17 50/9
**overflow [2]**   3/23 4/9
**overlooked [2]**   20/20 47/9
**overstate [1]**   23/3
**own [9]**   8/20 20/11 34/24
39/8 39/9 39/17 40/9 41/12
46/3

**P**

**pages [1]**   33/24
**Palm [2]**   2/6 2/7
**papers [10]**   7/23 13/4 18/19
18/23 22/15 22/16 26/23
27/18 45/5 45/10
**part [6]**   17/1 29/1 30/8
36/20 40/15 45/14
**particularly [3]**   33/19 34/12
34/18
**parties [2]**   4/6 7/17
**parties' [2]**   11/18 12/2
**pass [1]**   29/14
**past [1]**   31/7
**patience [2]**   9/3 28/6
**Pauline [2]**   2/7 52/21
**pay [1]**   8/22
**PELLETTIERI [2]**   1/17 3/8
**Pennsylvania [2]**   1/19 2/2
**people [8]**   8/8 16/21 27/25
32/21 34/13 38/16 41/14 49/3
**perceive [1]**   9/18
**perfectly [1]**   49/22
**perhaps [1]**   8/2
**perils [1]**   4/22
**period [1]**   25/16
**permit [1]**   5/5
**person [1]**   50/21
**personal [1]**   13/10
**phon [1]**   4/4
**phone [1]**   13/17
**photographing [1]**   14/12
**physical [2]**   7/2 26/19
**PIERCE [3]**   1/2 1/6 2/7
**PIN [2]**   46/10 46/16
**pipe [1]**   14/17
**place [3]**   26/20 28/12 33/20
**Plaintiff [1]**   1/5

**plans [1]**   13/23
**play [1]**   27/21
**pleading [3]**   21/11 35/4 35/7
**pleadings [2]**   33/6 33/14
**please [6]**   5/21 6/15 8/14
8/17 20/23 28/4
**podium [1]**   43/5
**point [13]**   6/13 8/12 12/13
12/24 17/20 20/13 20/15
23/15 24/5 38/5 47/11 47/16
50/9
**pointing [1]**   44/25
**points [2]**   3/20 8/19
**poke [1]**   16/12
**Portugal [1]**   5/24
**position [6]**   14/7 23/7 30/10
30/19 36/17 39/20
**possess [1]**   19/16
**possesses [1]**   40/22
**possession [2]**   23/12 30/21
**possibility [3]**   24/14 37/12
46/4
**possible [4]**   4/19 4/21 19/10
21/7
**potential [37]**   4/18 4/22
7/15 7/19 9/18 10/1 10/7
11/8 12/13 18/13 19/5 19/6
19/11 21/2 21/20 21/21 22/21
25/11 26/24 27/6 28/19 29/13
32/17 33/1 33/17 34/19 38/22
38/24 39/10 43/16 43/19 48/3
48/21 49/7 50/10 52/4 52/6
**potentially [1]**   48/8
**practical [1]**   38/11
**precipitates [1]**   25/17
**preclude [1]**   35/17
**precluded [2]**   22/6 38/9
**predicament [2]**   22/2 23/9
**prefer [1]**   43/5
**preliminary [2]**   3/20 7/13
**presence [1]**   26/19
**present [6]**   3/19 26/18 27/17
29/17 44/16 48/8
**presentation [1]**   27/17
**presented [4]**   20/19 21/2
21/22 23/18
**presenting [1]**   22/25
**presents [2]**   45/19 45/20
**presidency [1]**   15/9
**president [10]**   3/17 13/11
13/14 13/18 13/19 13/22
14/24 15/2 15/8 21/10
**president's [1]**   15/3
**press [1]**   4/4
**pressure [1]**   51/12
**presumption [1]**   25/4
**presumptive [1]**   9/14
**prevent [1]**   18/25
**prevents [1]**   15/22
**previous [1]**   50/1
**previously [2]**   12/5 32/22
**prior [7]**   17/14 18/24 19/17
24/18 41/6 48/10 52/12
**privacy [1]**   17/6
**privately [1]**   39/16
**privilege [2]**   15/20 15/22
**privileged [3]**   17/12 30/16
34/22

**P**

**problem [9]**  33/13 34/19
37/19 39/23 40/16 43/15
43/16 43/19 43/20
**problematic [2]**  18/5 28/1
**problems [1]**  28/13
**procedurally [1]**  45/23
**proceed [10]**  7/11 10/17
18/22 39/15 42/9 43/21 48/15
48/24 49/16 51/23
**proceedings [3]**  10/10 24/12
52/18
**process [1]**  16/12
**proffers [2]**  46/24 47/1
**prohibition [2]**  24/7 37/25
**proper [1]**  45/23
**proposal [1]**  28/13
**proposing [1]**  43/20
**proposition [1]**  45/1
**protect [1]**  4/2
**prove [2]**  13/7 30/25
**provide [2]**  12/8 26/7
**provided [7]**  12/1 21/11
22/11 29/6 30/7 30/7 31/3
**prudent [1]**  24/13
**public [3]**  3/25 4/8 10/9
**pull [1]**  32/18
**punches [1]**  32/18
**purpose [4]**  4/16 38/21 45/9
47/1
**purposes [3]**  7/22 16/12
46/22
**pursue [1]**  6/2
**put [3]**  17/20 28/12 44/21
**putting [1]**  44/13
**puzzle [1]**  25/13

**Q**

**question [9]**  23/16 24/22
25/18 28/18 29/24 30/3 30/16
38/14 47/5
**questioned [1]**  12/19
**questioning [2]**  33/21 52/1
**questions [23]**  5/12 5/13
6/19 8/22 9/3 11/14 11/23
11/25 16/11 17/24 18/17
18/21 26/22 28/22 33/25 37/8
44/2 44/24 47/7 47/15 48/21
51/16 51/18
**quite [1]**  45/11

**R**

**R-A-H-M-A-N [1]**  46/15
**rabbit [1]**  36/2
**Rahman [1]**  46/14
**raising [4]**  20/6 24/10 45/7
45/24
**ramifications [1]**  11/8
**read [3]**  6/7 6/8 27/18
**real [2]**  8/4 23/22
**really [5]**  29/16 30/2 31/19
36/6 40/11
**reason [3]**  24/10 28/17 41/24
**reasonable [1]**  13/8
**receipt [1]**  30/5
**received [1]**  34/5
**recently [1]**  43/17

**receptionist [1]**  15/8
**recitation [1]**  21/6
**recognizes [1]**  25/8
**record [6]**  21/13 44/13 44/21
46/21 52/2 52/18
**recording [1]**  3/21
**records [1]**  14/14
**recovered [1]**  14/14
**refer [2]**  8/3 20/23
**referenced [1]**  7/23
**references [1]**  7/18
**referencing [2]**  7/15 8/14
**referred [1]**  7/24
**referring [4]**  7/20 9/22
13/25 39/19
**regarding [2]**  13/15 14/3
**regardless [1]**  11/7
**related [2]**  25/4 25/21
**relationship [2]**  30/23 31/3
**relevant [2]**  25/5 44/16
**remain [1]**  5/5
**remains [1]**  27/10
**remedy [1]**  10/12
**remember [1]**  50/24
**remind [1]**  7/17
**reminder [1]**  31/24
**remove [1]**  31/17
**repetition [1]**  9/3
**replacement [2]**  15/1 26/15
**Reporter [2]**  2/7 52/21
**reports [1]**  29/6
**represent [5]**  12/25 16/21
34/23 49/12 50/3
**representation [19]**  4/18
4/20 9/20 15/22 16/3 17/7
17/11 17/14 18/24 19/17
24/19 30/5 30/17 34/5 35/6
36/25 41/6 48/10 52/6
**representations [2]**  28/11
35/24
**represented [9]**  3/3 9/12
12/6 15/17 31/7 32/22 38/16
49/3 50/13
**representing [4]**  24/1 35/1
40/23 44/15
**represents [4]**  15/25 25/13
25/14 40/12
**require [1]**  31/18
**required [6]**  10/5 10/16
10/19 11/4 42/8 42/9
**reservation [1]**  36/11
**reservations [1]**  37/17
**residence [1]**  15/3
**respect [3]**  15/6 29/4 30/18
**respective [1]**  26/9
**response [1]**  13/20
**responsibility [1]**  19/4
**result [3]**  21/21 21/25 30/22
**return [2]**  43/4 43/24
**revealed [1]**  35/24
**reversed [1]**  48/18
**reviewed [1]**  34/8
**right [52]**  3/2 4/20 5/1 5/19
6/18 9/2 9/11 9/12 9/12 9/14
10/17 11/9 11/23 12/1 13/2
13/9 15/16 19/7 19/13 19/24
21/16 22/14 25/7 25/22 26/6
26/21 30/20 31/5 31/11 32/5

32/8 32/11 36/25 37/3 37/20
39/1 43/24 44/8 44/22 46/18
47/3 47/12 47/21 47/24 47/24
48/24 49/12 49/21 50/9 50/11
50/12 51/22
**rights [2]**  44/18 47/17
**rigorous [1]**  35/19
**ring [1]**  38/3
**ripen [1]**  26/25
**risk [2]**  32/17 32/20
**risks [1]**  18/13
**road [1]**  24/12
**ROBIN [1]**  2/8
**roles [1]**  26/9
**room [3]**  3/23 4/10 14/13
**rooted [1]**  13/5
**ROSENBERG [1]**  2/8
**Ross [1]**  25/16
**rough [1]**  35/5
**ruptured [1]**  14/17

**S**

**S-P-A-T-A-R-O [1]**  46/12
**said [9]**  6/11 6/13 18/4 19/2
33/6 33/14 34/1 34/16 45/19
**same [7]**  8/16 22/1 23/9 24/5
27/10 45/20 49/11
**Sasha [1]**  3/18
**say [21]**  13/5 19/12 19/13
19/15 19/19 19/21 19/25
21/20 23/22 26/16 26/17
27/11 30/1 30/20 33/19 34/11
38/12 40/13 41/15 46/25
48/16
**saying [11]**  6/14 20/3 24/24
29/5 32/15 36/5 36/6 38/13
40/7 41/10 41/13
**says [4]**  8/23 9/21 18/9
26/13
**scenario [2]**  19/12 40/2
**scheduled [1]**  13/21
**school [4]**  5/23 5/25 6/3 6/5
**scope [3]**  9/5 20/22 31/6
**score [1]**  27/12
**search [1]**  33/13
**seat [1]**  3/24
**seated [2]**  3/1 5/5
**second [4]**  3/23 8/9 44/23
52/13
**secret [2]**  34/15
**security [2]**  13/15 14/2
**see [7]**  13/20 18/4 23/4
29/13 33/20 38/11 39/22
**seek [1]**  34/2
**seeking [1]**  28/23
**seems [2]**  33/12 45/13
**sense [3]**  28/21 38/5 41/3
**separate [3]**  14/1 32/19 39/1
**series [2]**  6/18 47/15
**serious [2]**  10/8 49/24
**served [1]**  14/5
**setting [1]**  7/16
**shall [1]**  3/21
**shared [4]**  18/12 28/16 29/23
40/5
**she [2]**  13/10 23/9
**short [1]**  20/5
**should [12]**  4/7 4/25 20/1

**S**

should... **[9]**   28/8 31/4
  31/22 32/7 38/9 45/23 48/17
  51/16 51/19
showing **[2]**   14/8 14/12
shut **[1]**   14/17
side **[2]**   5/12 45/25
sides **[1]**   45/12
silly **[1]**   23/21
simply **[2]**   32/22 48/9
since **[1]**   33/22
sir **[38]**   5/5 5/23 6/13 6/19
  8/2 8/6 9/15 10/4 10/19
  10/24 11/2 11/23 12/15 12/21
  13/25 14/7 14/15 15/19 16/4
  16/16 16/24 18/6 18/15 20/3
  37/12 39/8 40/7 40/19 41/1
  41/5 41/10 42/3 43/6 48/24
  49/4 49/11 49/15 49/20
situation **[10]**   7/6 12/2
  12/12 17/21 18/5 22/5 24/15
  24/16 25/2 25/16
Sixth **[3]**   19/23 50/11 51/22
so **[49]**   5/5 5/7 5/10 6/11
  8/1 8/14 8/17 8/21 8/23 9/3
  9/5 9/24 10/8 10/14 12/13
  15/5 15/14 16/6 16/18 17/11
  17/17 17/20 18/2 19/10 21/12
  22/14 22/20 23/1 25/8 25/11
  25/11 26/3 26/5 28/19 29/12
  32/18 33/20 33/23 34/4 34/11
  34/18 36/20 39/6 41/5 42/8
  45/12 45/24 45/25 50/9
solution **[2]**   31/17 33/12
solutions **[1]**   43/20
some **[16]**   9/2 10/22 11/22
  19/16 24/5 28/13 29/22 36/2
  37/12 37/25 40/5 41/7 41/7
  44/25 46/4 47/7
somehow **[1]**   40/22
someone **[1]**   49/2
something **[12]**   15/19 20/20
  20/20 20/20 26/4 33/24 34/1
  36/6 36/22 38/12 41/14 41/16
sometimes **[1]**   25/10
sort **[6]**   22/15 26/1 27/16
  29/1 36/23 46/4
sounds **[1]**   22/22
SOUTHERN **[3]**   1/1 46/8 46/15
Spataro **[1]**   46/12
speak **[5]**   6/15 8/12 8/23
  29/25 32/18
speaking **[3]**   23/20 27/4
  32/20
Special **[15]**   1/19 3/4 3/9
  9/17 11/19 12/4 12/6 12/10
  14/7 14/22 14/25 20/17 20/21
  44/9 44/14
specific **[2]**   22/11 23/6
specifically **[4]**   14/10 22/4
  26/12 26/17
spend **[1]**   38/2
spent **[1]**   43/18
spoken **[1]**   34/21
stand **[3]**   30/2 43/5 46/4
stand-alone **[1]**   46/4
standalone **[2]**   24/22 26/1

standpoint **[1]**   27/8
Stanley **[1]**   3/18
start **[4]**   3/10 5/25 11/17
  21/4
started **[4]**   3/21 5/4 31/24
  36/1
starting **[2]**   3/6 13/9
stated **[4]**   7/20 18/23 27/8
  38/21
statements **[4]**   14/9 14/10
  16/2 34/6
STATES **[10]**   1/1 1/4 1/13
  1/21 3/3 3/9 4/15 46/8 46/12
  46/14
status **[1]**   27/10
step **[1]**   25/20
still **[4]**   17/12 20/10 24/17
  35/19
Stipes **[2]**   2/7 52/21
stipulate **[1]**   34/14
stop **[1]**   34/25
storage **[1]**   14/13
Street **[1]**   1/22
strongly **[1]**   40/4
subject **[3]**   4/5 21/17 25/21
subpoena **[1]**   13/15
substance **[1]**   29/5
substantial **[1]**   25/11
substantially **[2]**   25/3 25/21
such **[5]**   4/7 4/22 5/1 10/13
  31/13
suffers **[1]**   22/4
sufficient **[2]**   47/1 47/4
suggest **[3]**   25/12 28/19
  45/10
suggested **[1]**   39/11
suggesting **[1]**   22/16
suggestion **[1]**   17/21
suggests **[1]**   16/18
Suite **[2]**   2/2 2/5
summaries **[1]**   34/6
summary **[2]**   14/3 26/8
sums **[1]**   15/5
Supp **[1]**   46/16
supplement **[2]**   11/19 26/11
supposed **[1]**   15/2
sure **[18]**   5/6 6/19 8/13 9/5
  18/22 19/4 34/3 36/21 38/22
  39/3 40/10 42/8 43/13 43/23
  44/20 47/8 47/17 51/3
surveillance **[2]**   14/13 14/18
swear **[1]**   5/15
sworn **[1]**   5/16
System **[1]**   9/10

**T**

table **[4]**   36/23 43/5 43/25
  46/19
take **[5]**   17/22 29/13 35/13
  49/21 52/12
taken **[1]**   31/12
talk **[8]**   19/10 42/12 42/13
  42/15 42/17 42/21 42/24 43/1
talked **[4]**   42/18 42/20 48/5
  50/24
talking **[8]**   8/21 21/23 24/7
  24/9 29/10 37/10 40/1 43/18
teaches **[1]**   4/16

telephone **[1]**   13/13
tell **[6]**   5/21 10/13 10/23
  39/16 41/12 46/2
telling **[4]**   16/14 22/22
  42/18 49/22
temporarily **[2]**   4/2 4/9
temporarily to **[1]**   4/2
temporary **[1]**   4/10
tenet **[1]**   9/9
tentatively **[1]**   36/23
term **[2]**   4/14 16/9
terminology **[1]**   25/10
terms **[4]**   11/16 29/17 34/25
  44/9
terrible **[1]**   24/2
testified **[1]**   27/1
testifies **[1]**   24/19
testify **[2]**   27/15 30/21
testimony **[8]**   12/8 16/13
  21/9 29/6 29/19 36/3 41/16
  46/20
text **[1]**   13/21
texted **[1]**   13/19
THAKUR **[2]**   1/21 3/8
than **[8]**   6/8 17/25 29/21
  32/19 34/20 41/23 43/15
  43/17
thank **[23]**   3/1 3/10 3/20 5/8
  8/11 8/15 21/16 25/22 26/21
  28/6 32/5 32/8 32/11 33/5
  35/11 37/3 38/18 43/22 44/22
  47/3 51/20 52/9 52/14
that **[366]**
the credibility **[1]**   32/3
the part **[1]**   29/1
their **[11]**   4/20 4/23 5/1 8/4
  26/9 27/10 33/21 34/24 36/2
  38/8 38/12
them **[16]**   5/13 8/4 12/19
  21/2 27/11 28/15 29/5 32/23
  34/21 34/22 35/1 39/24 43/1
  48/5 49/18 50/5
themselves **[1]**   28/1
then **[13]**   4/3 4/13 4/24
  10/24 11/18 11/20 11/21
  19/21 23/24 25/19 26/2 47/1
  47/4
theory **[1]**   45/13
there **[42]**   3/21 5/18 7/13
  9/2 10/7 15/19 16/19 18/10
  19/8 20/9 20/13 24/4 24/14
  25/1 25/3 25/4 25/24 26/6
  27/12 27/19 30/6 31/6 31/12
  32/17 32/20 33/24 34/14 36/1
  36/4 36/6 37/25 40/2 42/20
  44/6 44/8 46/7 46/11 46/16
  46/19 47/5 47/8 51/15
therefore **[1]**   48/17
thereof **[1]**   48/9
Thereupon **[2]**   5/16 52/15
these **[57]**
they **[42]**   4/6 4/24 9/18
  11/20 12/11 12/12 12/18
  15/17 16/14 17/18 18/9 18/13
  19/1 20/19 21/2 21/18 26/25
  27/15 28/12 33/19 33/21
  33/23 34/1 34/11 34/23 36/3
  36/4 36/5 36/6 36/18 38/12

**T**

they... **[11]**   38/13 39/14 40/13 41/14 41/15 44/18 45/11 45/12 45/12 47/15 48/4
**thing [4]**   28/4 28/7 39/13 44/23
**things [7]**   24/3 26/15 34/11 36/4 36/7 39/4 44/12
**think [21]**   5/24 5/25 10/22 21/18 24/13 25/1 25/22 26/3 26/5 30/18 31/19 32/6 36/1 38/9 38/14 39/6 41/25 45/23 46/3 49/23 51/19
**thinking [1]**   38/2
**thinks [2]**   34/1 36/5
**this [96]**
**thorough [1]**   19/18
**those [41]**   8/1 8/4 8/8 9/24 10/1 16/8 16/20 17/2 17/8 17/14 18/25 19/19 19/23 20/5 20/6 22/9 24/3 26/8 27/25 28/19 32/21 34/8 35/23 36/7 36/8 37/11 37/15 38/8 38/15 38/16 39/4 40/23 41/1 45/9 46/1 46/20 48/9 48/11 48/12 49/3 52/6
**those and [1]**   46/1
**though [2]**   20/2 39/25
**thought [4]**   37/12 41/22 44/13 44/24
**three [26]**   9/20 12/4 12/17 12/25 15/16 16/6 16/20 18/25 21/24 26/8 27/25 29/9 31/6 31/14 32/1 35/14 36/8 36/18 36/22 37/11 38/16 44/15 46/7 49/3 50/13 52/6
**through [2]**   20/25 47/7
**throughout [1]**   8/2
**thus [9]**   10/2 11/12 11/14 16/16 17/3 18/17 19/2 20/9 33/2
**time [15]**   10/22 10/23 10/25 22/2 23/24 26/18 28/23 35/2 38/2 41/25 43/1 45/7 49/11 49/21 49/23
**timing [2]**   21/12 35/5
**today [14]**   6/20 6/25 7/4 7/11 9/24 10/20 11/4 19/12 27/7 38/2 43/21 50/19 51/5 51/21
**today's [5]**   4/16 7/8 10/21 11/16 42/16
**Todd [1]**   3/16
**told [1]**   18/20
**too [2]**   27/4 49/24
**took [2]**   14/6 26/19
**topics [1]**   47/6
**total [1]**   31/9
**totally [1]**   34/24
**tough [1]**   17/24
**toward [1]**   24/11
**transcript [2]**   33/25 52/17
**transpiring [2]**   6/20 7/4
**travel [1]**   13/22
**traveled [1]**   13/23
**trial [14]**   9/21 10/18 12/7 16/7 17/15 17/21 21/3 25/15
27/10 27/11 27/22 32/1 46/25 48/4
**tried [2]**   51/8 51/10
**true [3]**   38/3 40/22 40/24
**TRUMP [26]**   1/7 3/4 3/17 7/24 9/22 12/4 13/9 13/10 13/11 13/12 13/14 13/18 13/18 13/20 13/20 13/22 14/1 14/3 21/6 21/8 21/10 27/9 29/13 30/1 31/3 46/25
**truth [1]**   16/14
**truthful [1]**   36/9
**truthfulness [1]**   23/16
**try [2]**   16/12 23/2
**trying [8]**   16/24 23/15 29/16 31/20 39/15 40/9 40/13 41/13
**tunnel [2]**   14/13 34/13
**turn [7]**   4/9 11/18 22/10 32/9 38/20 46/18 47/14
**turns [1]**   19/15
**two [2]**   4/12 44/12
**types [1]**   24/9

**U**

**U.S [1]**   1/18
**Uh [1]**   41/13
**ultimately [4]**   4/24 16/6 31/19 31/20
**Um [1]**   40/11
**Um-m-m [1]**   40/11
**unable [3]**   19/18 41/9 48/8
**unaware [2]**   18/23 35/17
**unclear [1]**   22/25
**under [5]**   6/21 22/5 25/15 50/11 51/22
**underlying [1]**   12/20
**undermine [2]**   10/9 16/13
**understand [82]**
**understanding [7]**   8/21 8/24 11/17 22/21 24/17 27/2 50/4
**understands [2]**   4/21 12/2
**understood [9]**   6/11 6/16 8/25 9/6 11/5 17/9 39/23 47/10 47/19
**undertaken [1]**   27/7
**UNITED [10]**   1/1 1/4 1/13 1/21 3/3 3/9 4/15 46/8 46/12 46/14
**universe [1]**   31/10
**unlikely [2]**   23/21 30/9
**unreported [1]**   46/13
**up [2]**   15/5 31/20
**upon [2]**   12/1 23/25
**us [3]**   4/16 30/25 44/17
**use [6]**   3/22 8/4 8/4 16/1 17/13 33/16
**used [3]**   27/5 31/17 35/24
**using [2]**   8/1 17/15
**usual [1]**   3/23

**V**

**valid [1]**   45/14
**valve [1]**   14/17
**versus [4]**   3/4 46/9 46/12 46/14
**very [4]**   8/22 9/4 9/9 42/3
**video [2]**   14/12 14/16
**view [8]**   21/25 22/4 24/3
**vigor [1]**   36/12
**vigorous [3]**   17/25 19/18 32/19
**vigorously [3]**   17/1 18/25 29/21
**virtue [2]**   32/22 48/10
**vis [4]**   21/18 21/18 44/19 44/19
**vis-a-vis [2]**   21/18 44/19
**voluminous [1]**   45/11
**voluntarily [1]**   5/2
**voluntary [2]**   11/10 52/4
**volunteer [1]**   43/13
**volunteered [1]**   28/12

**W**

**wait [1]**   19/21
**waive [5]**   5/1 11/9 19/12 49/16 51/22
**waived [2]**   20/2 44/18
**waiver [4]**   5/2 10/5 31/22 52/4
**waiving [2]**   20/5 50/10
**WALTINE [3]**   1/7 3/4 3/19
**want [38]**   5/10 7/13 7/17 8/13 10/18 10/24 13/4 18/19 18/22 19/10 19/13 19/22 20/20 21/12 23/3 24/10 27/2 27/3 29/19 37/24 38/3 39/3 39/22 41/25 42/1 42/8 42/13 42/15 42/20 46/2 47/8 48/25 49/12 49/24 50/15 50/18 51/3 51/5
**wanted [4]**   10/25 13/20 42/3 44/20
**was [26]**   5/16 5/24 6/1 6/5 13/21 19/17 19/24 21/11 21/23 22/11 23/25 24/2 24/2 26/18 26/18 28/7 32/14 34/17 35/8 35/8 35/9 40/23 43/21 44/20 45/10 45/10
**Washington [2]**   1/20 2/3
**wasn't [3]**   22/17 26/12 34/16
**water [1]**   14/17
**way [11]**   3/22 4/1 21/21 24/7 24/7 26/10 28/1 31/18 38/5 45/24 51/12
**ways [2]**   23/14 25/24
**we [66]**
**we're [1]**   17/21
**weak [1]**   41/2
**weaker [3]**   22/15 27/16 48/6
**weigh [3]**   11/21 31/22 46/1
**welcome [4]**   5/18 10/23 33/7 46/3
**welcomed [1]**   18/20
**welcomes [1]**   18/21
**well [12]**   4/5 5/7 5/13 11/21 23/2 23/13 27/11 35/3 45/9 45/12 45/17 50/25
**were [19]**   12/5 12/18 14/11 14/16 15/17 18/14 19/1 31/17 32/14 37/5 37/10 38/13 42/5 45/4 45/11 45/12 45/12 48/6 48/12
**weren't [1]**   3/24
**West [2]**   2/6 2/7

**W**

**WestLaw [1]** 46/13
**what [57]**
**whatever [5]** 11/7 24/11 39/4
44/18 47/18
**whatever rights [1]** 44/18
**whatsoever [2]** 37/17 50/7
**when [12]** 5/24 6/1 6/4 12/18
17/23 21/24 22/2 24/6 26/19
34/25 35/6 40/23
**whenever [1]** 35/8
**where [6]** 14/13 25/2 27/24
31/24 38/12 38/12
**whether [15]** 4/23 4/25 5/1
9/25 12/11 16/14 18/10 22/10
25/19 25/20 27/6 27/9 31/21
41/25 43/7
**which [12]** 7/15 7/18 9/10
14/11 16/19 19/9 24/12 25/24
27/10 29/18 40/3 45/13
**White [1]** 15/10
**who [14]** 3/19 3/24 8/3 8/7
12/5 13/21 19/22 22/4 24/19
34/20 44/15 49/2 50/13 50/21
**whom [1]** 25/14
**Why [1]** 45/7
**will [33]** 4/3 4/7 5/3 5/12
5/13 5/15 7/15 10/24 11/18
11/20 11/21 12/11 13/6 16/7
16/23 20/10 21/4 33/4 34/14
36/21 37/16 38/20 43/13
44/11 45/3 45/19 46/3 47/3
47/7 47/14 47/15 50/3 52/14
**willing [3]** 40/19 40/21
46/23
**win [1]** 20/1
**wish [8]** 4/6 4/24 4/25 6/15
9/14 11/20 26/7 51/21
**wishes [1]** 46/21
**without [3]** 30/20 42/18
45/24
**witness [33]** 7/20 7/24 7/25
12/5 12/5 14/5 14/8 14/20
14/22 14/25 15/6 15/7 15/11
16/11 17/22 17/23 22/13
24/19 25/15 26/13 26/14
26/17 27/9 27/9 27/21 27/21
30/23 31/8 33/17 38/10 40/17
41/9 46/19
**witness' [3]** 16/13 16/13
29/19
**witnesses [39]** 7/15 7/19
9/20 9/23 12/7 12/11 12/14
16/7 16/8 17/2 17/15 18/25
19/19 21/25 27/10 27/11
28/14 31/7 34/6 34/12 34/21
34/23 35/19 36/8 36/13 36/18
36/22 37/11 37/15 38/1 38/8
40/4 41/1 44/16 46/24 46/25
48/9 48/12 52/6
**witnesses' [1]** 32/1
**Woodward [1]** 3/19
**words [17]** 8/20 10/6 12/24
16/14 16/23 17/23 19/25
20/11 23/20 24/6 30/25 39/9
39/9 39/17 40/9 41/12 49/15
**worked [2]** 13/10 15/7

**world [3]** 23/22 27/24 38/11
**worse [1]** 22/12
**worth [3]** 21/19 44/13 44/25
**would [74]**
**wouldn't [2]** 19/25 48/16
**wrapped [1]** 27/5
**write [4]** 6/7 6/8 6/9 6/10
**writing [1]** 45/25

**Y**

**Y-A-N-N-O-T-T-I [1]** 46/9
**Yannotti [2]** 46/9 46/12
**year [1]** 5/21
**years [2]** 5/25 6/3
**yes [73]**
**yesterday [2]** 39/12 43/17
**York [3]** 46/8 46/11 46/16
**you [306]**
**your [166]**

**Z**

**zealously [2]** 16/25 23/25
**Zoom [1]** 4/9