UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

    Defendants.

Case No. 23-80101-CR
CANNON/REINHART

## PRESIDENT DONALD J. TRUMP'S MOTION FOR ACCESS TO CIPA § 4 FILINGS

President Donald J. Trump respectfully submits this motion for access to the December 6, 2023 filings relating to him, pursuant to CIPA § 4, by the Special Counsel's Office. *See* ECF No. 236.

A motion pursuant to CIPA § 4 is a critical juncture where the government asks the Court to endorse the withholding of discoverable material by determining, *inter alia*, whether the material is "relevant or helpful" to the defense. In effect, prosecutors filing a motion pursuant to this provision are seeking permission to withhold *Brady* material. These motions require the Court to stand in a defendant's shoes, predict defenses the defendant has not yet presented and is entitled to develop and modify until the case is submitted to the jury for deliberations, and protect important defense rights to exculpatory information and impeachment material.

Owing in part to these complexities, the Court has already noted that "special circumstances" may justify requiring that CIPA § 4 motions be litigated in an adversarial setting. ECF No. 215 at 7. This case presents such circumstances. For four years, President Trump acted on a public mandate to access the nation's most sensitive secrets for the benefit of the country. He was the central classification authority in the United States. Today, he is the leading candidate to

assume that role again in 2025, despite politically motivated efforts by the Biden Administration to remove him from the election—including this case.

The Special Counsel's Office has produced to President Trump and his counsel a large volume of documents and information that the Office regards as "highly sensitive." Although we dispute the Office's assessment of those materials, it is inconceivable that the concededly discoverable information the Office now seeks to withhold from President Trump and his counsel through *ex parte* proceedings is any more sensitive. Further, in light of the Office's record of misrepresentations and abuses of sealing and *ex parte* processes in this case, the Court cannot simply take the prosecutors' word for it.

"[N]ational-security concerns must not become a talisman used to ward off inconvenient claims." *Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017). Cleared counsel for President Trump seek attorneys'-eyes-only access to these filings so that we can challenge the Office's assertions in adversarial proceedings that will facilitate more reliable decision-making in the application of the "relevant and helpful" standard under CIPA § 4. In addition, the Court should require the Special Counsel's Office to file redacted versions of its CIPA § 4 submissions on the public docket so that the public and the press can access the unclassified portions of these materials.

## BACKGROUND

In a June 23, 2023 filing, the Special Counsel's Office agreed to "disclose promptly all witness statements and associated memorialization of those statements, even if they would not be deemed discoverable under 18 U.S.C. § 3500." ECF No. 30 at 2. On July 18, 2023, the Special Counsel's Office told the Court that "all" discovery would be available on "day one." 7/18/23 Tr. 62. It is now clear that these were misrepresentations, which the Office still has not addressed and

were intended to unfairly prejudice President Trump and his co-defendants by setting an unconstitutionally rushed trial date.

During a hearing on July 18, 2023, the Special Counsel's Office estimated that any CIPA § 4 litigation would be "fairly minimal." 7/18/23 Tr. 13. At the sealed hearing on September 12, the Office explained that some of the documents at issue in the anticipated CIPA § 4 motion were a subset of a larger category of documents that the Office produced to President Trump. 9/12/23 Tr. 9-10; *see also id.* at 11. The Office's acknowledgment that similar types of materials have already been produced undercuts its position regarding the need for *ex parte* proceedings and on the merits under CIPA § 4.

Following a scheduling hearing on November 1, 2023, the Court directed the Special Counsel's Office to file its CIPA § 4 motion by December 4. ECF No. 215 at 8. On November 22, the Office filed an *ex parte* submission, under seal, which it styled as an "*Ex Parte* Motion to Exceed Page Limits." ECF Nos. 222, 223 (the "*Ex Parte* Motion"). The Office claimed that neither President Trump nor the public were entitled to be "apprised of the contents of the filing" because, in the prosecution's view, the *Ex Parte* Motion "provide[d] sensitive information about the contents of the CIPA Section 4 motion." ECF No. 222 ¶ 1. The Office expressed baseless concern about "even disclosing the number of categories of classified information that the Government seeks to delete form discovery," and suggested that "the contours and extent of the Government's CIPA Section 4 motion" are somehow classified or sensitive. *Id.*

Those "contours," which are now public, are anything but sensitive. Rather, the Special Counsel's Office simply notified the Court that its "motion involves four categories of especially sensitive classified information," and that the Office planned to seek permission to "delete from or substitute in discovery certain specific portions of the classified information to protect

intelligence equities, particularly the sources and methods involved in collecting the subject intelligence." ECF No. 223 at 1-2.

On November 28, 2023, the Court denied the motion. ECF No. 224. The Court rejected the proffered reasons for proceeding *ex parte* in connection with such a basic application: (1) "the instant procedural motions seeking additional pages are not Section 4 motions; nor do they contain or otherwise reveal classified information," and (2) the "bare reference" to the "'contours'" of "'especially sensitive classified information,'" "without more, is not a basis to deviate from the presumption against *ex parte* filings in our adversarial system of justice." *Id.* at 2.

Following the Court's ruling, on November 28, 2023, the Special Counsel's Office conferred with defense counsel regarding the request to file an oversized brief. Defense counsel consented to the application, but we were then surprised when the Office submitted the motion under seal without any apparent basis. *See* ECF No. 225. The Court subsequently granted the defendants' motion to unseal these submissions. ECF Nos. 227, 228. On December 1, the Office asserted that it "sought to file its motion *ex parte* because it was ancillary to an *ex parte* proceeding," but consented to filing all of the materials publicly. ECF No. 230 at 2. "Ancillary" or otherwise, the Court had not authorized *ex parte* proceedings relating to the CIPA § 4 motion by the Special Counsel's Office, which is the very issue now being briefed.

## **DISCUSSION**

Under the circumstances of this case, the Court should permit President Trump's cleared counsel to have attorneys'-eyes-only access to the CIPA § 4 submissions by the Special Counsel's Office in order to facilitate adversarial proceedings regarding critical issues relating to whether the Office can withhold discoverable information from the defense. The Court should also require the

Office to file public, redacted versions of the CIPA § 4 submissions that reveal the unclassified portions of the documents.

Criminal matters include presumptions against *ex parte* proceedings and in favor of public access. Courts have applied these presumptions to reject *ex parte* proceedings under CIPA § 4. Given the security clearances that have been extended to President Trump and counsel, and the volume of classified discovery produced to date, there is no case-specific reason for *ex parte* proceedings. The Court should be skeptical of boilerplate invocations of vague national security concerns and citations to factually distinguishable cases by the Special Counsel's Office, particularly in light of the post-CIPA development of bodies of law under the Freedom of Information Act ("FOIA"), in habeas proceedings, and in motions to suppress Foreign Intelligence Surveillance Act ("FISA") evidence, where parties are granted greater access to filings that summarize sensitive and classified information. Finally, in light of the record of misrepresentations and procedural abuses by the Office, the Court should not trust the prosecution to be fair stewards of an *ex parte* process in this complicated case with a factually intricate record and a huge volume of discovery.

## I. The Presumption Against *Ex Parte* Proceedings Is Entitled to Great Weight

The Court has already observed that "'[e]x parte communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party and to meet them.'" ECF No. 224 at 1 (quoting *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986)); *accord United States v. Napue*, 834 F.2d 1311, 1318 (7th Cir. 1987) ("[T]he district court in exercising its discretion must bear in mind that *ex parte* communications are disfavored. They should be avoided whenever possible and, even when they are appropriate, their scope should be kept to a minimum.").

> Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate.

*Dennis v. United States*, 384 U.S. 855, 874-75 (1966). "Common sense tells us that secret decisions based on only one side of the story will prove inaccurate more often than those made after hearing from both sides." *Kaley v. United States*, 571 U.S. 320, 355 (2014) (Roberts, C.J., dissenting). Thus, *ex parte* communications "create an obvious potential for abuse," *In re Colony Square*, 819 F.2d 272, 276 (11th Cir. 1987), which arises from the "general concern that the Government's information will be less reliable than if it is disclosed to the Defendant," *United States v. Belfast*, 2007 WL 9705938, at *2 (S.D. Fla. 2007).

## II.  Courts Have Rejected Ex *Parte* Proceedings Under CIPA § 4

At least three courts have denied requests by prosecutors to proceed *ex parte* under CIPA § 4. The Court should proceed in a similar fashion here given the unique circumstances presented, including President Trump's prior clearances and access to sensitive information, defense counsel's clearances, the volume of classified discovery that counsel have already been entrusted to handle in an appropriate fashion, and the legal and fact-specific defenses arising from the unprecedented nature of this case—which must be brought to bear on all CIPA § 4 litigation in this matter.

In *United States v. Libby*, the court explained that it was "disquieted by the prospect of having to make such a determination [under CIPA § 4] through *ex parte* proceedings, and trust[ed] that because defense counsel in this case have security clearances the need for such proceedings will be rare . . . ." 429 F. Supp. 2d 46, 48 (D.D.C. 2006). The court subsequently ordered that redacted versions of sealed, *ex parte* CIPA submissions be filed on the docket because unclassified

aspects of those materials "can be made available to the public." *See* Order, *United States v. Libby*, No. 05 Cr. 394 (D.D.C. Nov. 15, 2006), ECF No. 189; *see also* Order, *United States v. Libby*, No. 05 Cr. 394 (D.D.C. Feb. 21, 2006), ECF No. 38 (directing filing of redacted version of *ex parte* affidavit).

The Special Counsel's Office has cited *United States v. Rezaq*, 156 F.R.D. 514 (D.D.C. 1994) in another context, but that case does not support its position regarding *ex parte* filings. *See* ECF No. 162 at 12, 17. In *Rezaq*, the court initially granted defense counsel access to a CIPA § 4 filing. 156 F.R.D. at 526. Whereas the defendant was not permitted to access the submission because he was "an accused terrorist who never knew the sensitive information here at issue and never had a security clearance and is unlikely to get one,"

> [t]he government asks too much, however, when it expects this court to exclude defendant's counsel from reviewing the CIPA statements. Defense counsel have received security clearances, and there is every reason to think that Mr. Rezaq's counsel can be trusted with this sensitive information. In light of this, the very strong presumption against *ex parte* proceedings, even when statutorily permitted, urges that defense counsel be allowed to review the CIPA material.

*Id.* at 527. In a motion for reconsideration, the prosecutors did not challenge defense counsel's access to that particular CIPA § 4 motion. 899 F. Supp. 697, 706 (D.D.C. 1995). The court agreed to revisit its "absolute prohibition on *ex parte* submissions," but only to the extent that the government was permitted "to file future motions for leave to file submissions *ex parte*, with the understanding that such motions must be served on the defendant and then litigated in an adversarial hearing before this court." *Id.* at 707. This evening, the Special Counsel's Office failed to do even that much—none of the defendants has been provided with the Office's justification for filing the CIPA § 4 motions *ex parte*.

In *United States v. Stillwell*, the DOJ's Narcotic and Dangerous Drug Section ("NDDS") convinced a district court that materials relating to its CIPA § 4 motion were too sensitive to be

disclosed to the defense (or the prosecutors). 986 F.3d 196, 199 (2d Cir. 2021). On appeal, the Second Circuit "vacated the District Court's protective order and ordered those documents disclosed to both parties." *United States v. Hunter*, 32 F.4th 22, 25 (2d Cir. 2022).

The salient point is that prosecutors often contend—inaccurately, and perhaps based on improper pressure from Intelligence Community components with no regard for criminal defendants' rights and the public's access rights—that materials subject to a CIPA § 4 motion are too sensitive to be disclosed to the defense. *Libby*, *Rezaq*, and *Stillwell* are examples of courts rejecting that position without the resulting parade of horribles that the Special Counsel's Office has suggested would follow disclosure of its CIPA § 4 motion.

**III. The Court Need Not Permit *Ex Parte* Proceedings Under CIPA § 4**

CIPA § 4 states that the Court "may" allow the Office to "make a request for such authorization in the form of a written statement to be inspected by the court alone." The Office has conceded, as it must, that this language is "permissive." 11/01/23 Tr. 57. In contrast, when Congress intended to require *ex parte* procedures in the national security setting, it did so explicitly by using the term "shall." 50 U.S.C. § 1806(f); *see also* ECF No. 202 at 4 (court rejecting "atextual interpretation" of CIPA).

The Special Counsel's Office has also conceded that, under *United States v. Campa*, "a Court has discretion," which includes discretion to reject *ex parte* proceedings. 11/01/23 Tr. 57. In *Campa*, the 11th Circuit held that a district court "did not err by holding the [CIPA § 4] hearing ex parte." 529 F.3d 980, 995 (11th Cir. 2008). *Campa* involved "[f]ive agents of the Cuban Directorate of Intelligence" who, unlike President Trump, never had a security clearance. *Id.* at 987. *Campa* is distinguishable for the additional reason that the panel believed, in that case, that "[a]ny information that the government withholds under section four must be replaced with

redacted documents or substitutes." *Id.* In this case, the Special Counsel's Office has stated that at least part of its CIPA § 4 motion will seek to "delete," entirely, otherwise-discoverable information. ECF No. 223 at 1; ECF No. 222 at 2; ECF No. 225 at 1.

*Campa* relied on *United States v. Mejia*, which is similar. 448 F.3d 436, 459 (D.C. Cir. 2006). The defendants in *Mejia* were Colombian drug traffickers who had spent a lot of time around cocaine labs, but no time in an American SCIF. *See id.* at 438. The CIPA § 4 motion in *Mejia* was strikingly similar to the CIPA § 4 motion filed in *Stillwell*; both were filed by NDDS lawyers without notice to the defense or the line prosecutors. *See id.* at 453 (noting that the "motion represented that none of the investigators or attorneys involved in the prosecution (or defense) of the case knew of the existence or content of the classified material, nor had they been made aware of the filing of the motion by the [NDDS]"). Whereas the Second Circuit in *Stillwell* was not satisfied that the classified information was properly withheld, the *Mejia* court only expressed comfort with the trial judge's *ex parte* proceedings after it "examined the documents *de novo*" and concluded that "they are not helpful to the defense." 448 F.3d at 457. Tellingly, and unlike in this case, the *Mejia* court was able to conduct that review with the benefit of a developed trial record that included the merits arguments the defendant had presented to the district court and the jury.

Both *Campa* and *Mejia* relied on a Report from the House Permanent Select Committee on Intelligence. *See* H.R. Rep. No. 96-831, pt. 1 (Mar. 18, 1980). The Report was authorized by just one of the several committees involved in drafting CIPA, it related to a predecessor bill, and it is not persuasive with respect to the position of the Special Counsel's Office in this case. *See Blanchard v. Bergeron*, 489 U.S. 87, 99 (1989) (Scalia, J., concurring) ("[I]t is neither compatible with our judicial responsibility of assuring reasoned, consistent, and effective application of the statutes of the United States, nor conducive to a genuine effectuation of congressional intent, to

give legislative force to each snippet of analysis, and even every case citation, in committee reports that are increasingly unreliable evidence of what the voting Members of Congress actually had in mind.").

In the footnote of the Report that is cited in *Campa* and *Mejia*, the Committee distinguished between an earlier version of what became CIPA § 6, which was section 103 in the House bill, and an earlier version of CIPA § 4, which was section 109(b) in the House bill. *See* H.R. Rep. No. 96-831, pt. 1, at 27 n.22 (Mar. 18, 1980). The footnote's discussion is problematic because it declared that discovery was "not constitutionally required" and could be "completely denied upon a sufficient *ex parte* showing." *Id.* This assertion ignored the due process rationale of *Brady* and its progeny and is therefore not a basis to grant the relief sought by the Office. It would not "defeat the very purpose of the discovery rules" to grant President Trump's cleared counsel attorneys'-eyes-only access to the Office's CIPA § 4 submission.

On September 12, 2023, in response to a question from the Court regarding risks associated with allowing Mr. Nauta to access classified discovery, the Office failed to identify any case-specific issue and instead contended that the risks were not greater than those presented in *United States v. Asgari*. 9/12/23 Tr. 64. In *Asgari*, the Sixth Circuit reversed a district court's decision to grant defense counsel access to a CIPA § 4 filing. 940 F.3d 188, 192 (6th Cir. 2019). Similar to *Mejia*, and unlike here, the trial court in *Asgari* had already determined that the classified information was not discoverable. The Court of Appeals in *Asgari* referred to a "clear rule established by § 4," which, as noted above, the Office has conceded does not exist. *Id.* The court suggested that defense counsel might "make mistakes" with the classified information. *Id.* But that concern would justify withholding all classified information from the defense, which is another position that the Office does not defend. *See In re Washington Post Co.*, 807 F.2d 383,

391 (4th Cir. 1986) ("[T]roubled as we are by the risk that disclosure of classified information could endanger the lives of both Americans and their foreign informants, we are equally troubled by the notion that the judiciary should abdicate its decisionmaking responsibility to the executive branch whenever national security concerns are present."). Unlike in this case, *Asgari* involved no classified discovery at all, and the Office has not suggested—nor could it—that cleared counsel have been anything but extremely careful about handling restrictions on the classified discovery.

The *Asgari* court also claimed that the "text" of CIPA § 4 "vests the district court alone with responsibility to make the decision" regarding whether information is relevant. 940 F.3d at 391. However, while courts make the ultimate decision, as in any motion, they routinely consult defense counsel in *ex parte* settings regarding the relevant-and-helpful standard. Thus, the Court's role as the arbiter of the CIPA § 4 motion is not dispositive on the issue of whether the Office should be permitted to file the motion *ex parte*.

For all of these reasons, *Asgari* does not serve as a persuasive basis to deny President Trump's cleared counsel access to the CIPA § 4 motion. Rather, the Office must present a case-specific consideration that warrants that measure, and it has not done so.

### IV. The Government Litigates Classified Issues In Other Settings Without *Ex Parte* Proceedings

There are several other settings in which the government litigates issues relating to classified information without *ex parte* proceedings. The unnecessary insistence on *ex parte* proceedings by the Special Counsel's Office must be evaluated in this context.

First, in FOIA cases, the government often files public declarations from agencies in the Intelligence Community seeking to invoke statutory FOIA exceptions relating to national security, *see* 5 U.S.C. §§ 552(b)(1), (3), or *Glomar*, *see Taylor v. NSA*, 618 F. App'x 478, 482 (11th Cir. 2015) ("When a government agency issues a Glomar response, it must provide a public affidavit

explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor deny the existence of the requested records." (cleaned up)).  *See* Ex. 1.[1]

Second, in cases involving habeas petitions and/or the same state secrets privilege at issue in a CIPA § 4 motion, the government commonly permits the defendant, and sometimes permits the public, to review agency declarations. *See United States v. Zubaydah*, 595 U.S. 195, 207-08 (2022) (describing CIA declaration); *Al-Hela v. Biden*, 66 F.4th 217, 239 (D.C. Cir. 2023) ("[P]rocedures whereby neither the person affected by the government's proposed action, nor his counsel, are permitted to view all the government's evidence during the merits determination are rare, and any such procedures raise more serious due process concerns regarding notice and opportunity to rebut.").

Third, although FISA authorizes *ex parte* proceedings relating to suppression motions, *see* 50 U.S.C. § 1806(f), prosecutors sometimes file public, redacted versions of their briefs and the accompanying declarations. *See, e.g.*, Exs. 2, 3.[2]  Defense counsel are not aware of any reason why CIPA § 4 motions should, categorically, be considered more sensitive than the government's opposition to FISA suppression motions.

---

[1] *Accord* Hardy Decl. at 7-12 ¶¶ 17-27, *Judicial Watch, Inc. v. DOJ*, No. 18-cv-2107 (D.D.C. Oct. 18, 2019), ECF No. 20-3 (publicly filed declaration explaining FBI's application of National Security Act in FOIA case); Laster Decl. at 7-8, *Smith v. NARA*, No. 18-cv-2048 (D.D.C. Dec. 20, 2018), ECF No. 10-2 (publicly filed declaration explaining NARA's *Glomar* response in FOIA case); Redacted Decl., *Doe v. Mattis*, No. 17-cv-2069 (D.D.C. Jun. 1, 2018), ECF No. 93-2 (publicly filed redacted declaration by Defense Department official); Lutz Decl. at 10-15, *ACLU v. DOJ*, No. 10-cv-436 (D.D.C. Nov. 25, 2014), ECF No. 67-2 (publicly filed declaration explaining CIA's application of National Security Act in FOIA case).

[2] *Accord* Mem. & Notice of Classified Filing, *Al-Baluchi v. Gates*, No. 08-cv-2083 (D.D.C. Apr. 29, 2022), ECF Nos. 228, 229; Mem. & Notice of Classified Filing, *United States v. Liu*, No. 19-cr-804 (S.D.N.Y. Dec. 21, 2020), ECF Nos. 90, 91; Mem. & Decl., *United States v. Alimehmeti*, No. 16-cr-398 (S.D.N.Y. Jul. 24, 2017), ECF Nos. 62, 63; Response & Decl., *United States v. Hasbajrami*, No. 11-cr-623 (E.D.N.Y. Dec. 23, 2014), ECF Nos. 97, 97-1.

### V. *Ex Parte* Proceedings Are Particularly Problematic In Light Of The Prosecution's Track Record

*Ex parte* proceedings in this case present more than "an obvious potential for abuse." *In re Colony Square*, 819 F.2d at 276; *see also Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985) (reasoning that "the label of 'national security' may cover a multitude of sins," and "[t]he danger that high federal officials will disregard constitutional rights in their zeal to protect the national security is sufficiently real to counsel against affording such officials an absolute immunity"). The Special Counsel's Office has already abused the *ex parte* process and made other misrepresentations that militate against resolving the CIPA § 4 motions on an *ex parte* basis.

At the outset of this case, the Special Counsel's Office misled the Court—unapologetically—regarding the status of discovery and its production of witness statements. Based on discussion at the sealed hearing, it now appears that writings of one or more witnesses, which the Office previously said it would produce "promptly," may be at issue in the Office's CIPA § 4 motion. *See* 9/12/23 Tr. 9-11.

Additionally, more than once, the Office has sought to proceed on the basis of secret filings rather than complying with firmly established authorities and Local Rules regarding sealing. *See* ECF No. 41 ("The Government's Motion does not explain why filing the list with the Court is necessary; it does not offer a particularized basis to justify sealing the list from public view; it does not explain why partial sealing, redaction, or means other than sealing are unavailable or unsatisfactory; and it does not specify the duration of any proposed seal. *See* S.D. Fla. L.R. 5.4(a), (c)(1)."); ECF No. 100 at 1 ("The Special Counsel states in conclusory terms that the supplement should be sealed from public view "to comport with grand jury secrecy," but the motion for leave and the supplement plainly fail to satisfy the burden of establishing a sufficient legal or factual basis to warrant sealing the motion and supplement."); ECF No. 228 (reminding the Office that it

must submit a motion "to justifying and specifying its request for any limited redactions of docket entries 223 and 224 in light of the strong presumption in favor of public access to judicial documents").

In September 2023, the Special Counsel's Office submitted a brief making clear that the Office takes an impermissibly dim view of all defense arguments. *See* ECF No. 165. The Office claimed, remarkably, that the defendants were "arguably adequately equipped to outline a defense theory before receiving any discovery at all" and summarized its view of potential defenses in an exceedingly narrow manner that demonstrated that its politically motivated priorities do not include fundamental fairness. ECF No. 165 at 4. The Office's suggestion that discovery is not necessary has not aged well in light of the prosecution's mishandling of that process, and the Office's condescending summary of available defenses overlooked key issues in a manner that should concern that Court about its handling of the CIPA § 4 process and other discovery obligations.

For example, we have not been provided with any information regarding the procedures the Office has employed in connection with CIPA § 4. Some authority requires prosecutors to "invoke the [state secrets] privilege through the 'head of the department which has control over the matter, after actual personal consideration by that officer.'" *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (quoting *United States v. Reynolds*, 345 U.S. 1, 8 (1953)).[3] While the Attorney General sometimes plays that role in connection with a CIPA § 4 motion filed by a local U.S. Attorney's Office, it is not clear that the Attorney General is the appropriate department head in this case brought by the Special Counsel. CIPA also places restrictions on who may use its

---

[3] *Reynolds* itself serves as a cautionary tale. There, the government refused to produce a report relating to a military crash to victims' widows on the basis that it could not do so without "seriously hampering national security." 345 U.S. at 5.

procedures that could present additional issues, including under the Appointments Clause, depending on how the Office proceeds. *See* CIPA § 14 ("The functions and duties of the Attorney General under this Act may be exercised by the Deputy Attorney General, the Associate Attorney General, or by an Assistant Attorney General designated by the Attorney General for such purpose and may not be delegated to any other official."). Denying President Trump's attorneys access to the CIPA § 4 filings improperly limits his ability to engage in motion practice on these issues, much less present legal and factual defenses on the merits to explain why the CIPA § 4 standard is not met here.

Finally, the recent *Ex Parte* Motion by the Special Counsel's Office made plain that the Office's view regarding when and whether materials are "especially sensitive," ECF No. 223 at 1, and therefore may warrant *ex parte* proceedings, is detached from reality. Just last week, the Office contended that a now-public filing with information regarding the "contours" of its CIPA § 4 motion should be filed *ex parte*. Now, under CIPA § 4, the Office seeks to persuade the Court, for example, that: (1) boilerplate discussion regarding national security equities with no direct connection to this case must be shielded from the defense's view, (2) arguments regarding what is helpful to President Trump's defense require no input from those responsible for presenting that defense, and (3) unspecified materials—potentially including witness statements that the Office agreed in June to produce "promptly" from witnesses whose other writings have been produced—can fairly be withheld from the defendants (or summarized) in connection with a case involving over one million pages of discovery.

"History teaches us how easily the spectre of a threat to 'national security' may be used to justify a wide variety of repressive government actions." *In re Washington Post Co.*, 807 F.2d at 391. Given the history in this case, which also includes the clearances of defense counsel and the

sensitivities associated with the classified discovery that has been produced, the Court should not allow the Office to proceed in that fashion.

## VI. Redacted Versions of the CIPA § 4 Submissions Should Be Filed Publicly

Redacted filings relating to FISA suppression motions illustrate that classified litigation does not have to be shielded from the public. *See* Exs. 2, 3. The Court should therefore review any request to seal the entirety of the CIPA § 4 submissions with skepticism, and the Special Counsel's Office should not be permitted to seal unclassified portions of the filing such as introductory language, unclassified arguments, background of affiants, or citations to legal authority.

"[T]he value of openness in criminal proceedings extends far beyond just the interests of any particular defendant." *United States v. Ignasiak*, 667 F.3d 1217, 1238 (11th Cir. 2012). Under the First Amendment and at common law, the media and the public have a presumptive right to access criminal proceedings. *See, e.g.*, *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001). "In addition, 'the courts of this country recognize a general right to inspect and copy public records and documents, including judicial documents and records.'" *United States v. Sajous*, 749 F. App'x 943, 944 (11th Cir. 2018) (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978)). "A party may overcome that presumption if it can show an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005) (cleaned up).

Sealing is not an all-or-nothing proposition, and filing redacted versions of sensitive materials is often an appropriate way to balance the presumptions of access and the interests of one or more parties to a case. *See United States v. Vives*, 2006 WL 3792096, at *1 (S.D. Fla. 2006)

(reasoning that government made a sufficient showing as to "portions" of the document at issue and directing the unsealing of a "redacted form" of the document). Accordingly, absent a particularized showing, the Special Counsel's Office should be required to file publicly redacted versions of its CIPA § 4 filings that reveal unclassified arguments, paragraphs, and citations to authority.

## CONCLUSION

For the foregoing reasons, President Trump respectfully submits that the Court should order the Special Counsel's Office to provide his cleared counsel with attorneys'-eyes-only access to all CIPA § 4 submissions, and to file redacted versions of those submissions on the public docket so that the public and the press can access the unclassified portions of the documents.

Dated: December 6, 2023

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

**CERTIFICATE OF SERVICE**

I, Christopher M. Kise, certify that on December 6, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise
