UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

        Defendants.

Case No. 23-80101-CR
CANNON/REINHART

**PRESIDENT DONALD J. TRUMP'S REPLY IN FURTHER SUPPORT OF
MOTION FOR ACCESS TO CIPA § 4 FILINGS**

President Donald J. Trump respectfully submits this reply in further support of his motion for access to the December 6, 2023 CIPA § 4 filings by the Special Counsel's Office.

Any classification of the CIPA § 4 motion papers arises from information that was originally classified pursuant to President Trump's authority as Commander In Chief. This information was available to President Trump while he led this Nation. Under those circumstances, it is extraordinary, unprecedented, and improper for the Special Counsel's Office to try to withhold such information from the defense as the Office seeks to use this prosecution to target the leading candidate in the 2024 presidential election. However, this motion presents a narrower issue. In light of the Court's Protective Orders, the volume of similarly sensitive classified discovery, and defense counsel's track record of compliance in this case, there is no merit to the Office's contention that President Trump's cleared counsel should not be granted attorneys'-eyes-only access to the CIPA § 4 materials so that the Court has the benefit of adversarial proceedings while evaluating these complex issues.

The Special Counsel's Office does not address its prior misrepresentations and misleading arguments to the Court, and instead presents new ones that mischaracterize the relevance of a claimed "need to know" determination and rely on vague derivative-classification arguments regarding an unspecified number of paragraphs in its CIPA § 4 filing. *See* ECF No. 241 at 9, 14. Once stripped of those meritless contentions, it is clear that the Office's opposition is not justified by any case-specific reason. For example, in light of the presumption of innocence, the prosecution is wrong to suggest that the filing of criminal charges is a basis for withholding CIPA § 4 submissions from the defense. *See* ECF No. 241 at 15 n.2. Any *ex parte* claim to that effect based on the allegations in the Indictment cannot withstand scrutiny for the additional reason that defense counsel are not charged with any crime and have not mishandled any of the classified discovery.

The Special Counsel's Office has also made important concessions, which reveal that the Office's broader position is based on an inappropriate preference for one-sided proceedings that are hidden from the public in order to serve political motivations and Intelligence Community bias. The Office has conceded that "some" paragraphs of its CIPA § 4 "argument sections" are marked unclassified, but offers no compelling justification for withholding those parts of the filing. ECF No. 241 at 9. The Office "would not object" to the public filing of a redacted version of its brief disclosing unclassified legal authorities, but the claimed non-objection illustrates the Office's misapprehension of its ongoing burden to demonstrate the need for sealing and *in camera* review. *Id.* at 9 n.1. The Office also acknowledges that it will produce classified materials to President Trump's co-defendants "[c]loser to trial," without addressing why the delay is necessary to accommodate any valid interest. *Id.* at 15 n.3. Collectively, these positions help to demonstrate that the prosecution's insistence on *ex parte* proceedings cannot stand to reason under the unique circumstances of this case. Accordingly, the Court should grant President Trump's motion.

1. **The Prosecution Continues To Rely On Flawed Derivative Classification Arguments**

The Special Counsel's Office concedes that portions of its CIPA § 4 motion papers are marked unclassified, including "some paragraphs" of the Office's "argument sections" and citations to legal authority. *See* ECF No. 241 at 9 & n.1.[1] CIPA does not apply to unclassified information. Thus, there is no basis for withholding these aspects of the Office's filing from cleared counsel.

In a misguided effort to maintain secrecy over these unclassified portions of the motion, the Special Counsel's Office resorts to the same type of derivative classification argument that it relied on unsuccessfully to claim that its "motion to exceed page limits" should be filed *ex parte*. ECF Nos. 222-23. There, the Office presented the frivolous claim that the "contours" and "extent" of the motion were too sensitive to be disclosed to counsel. ECF No. 222 at 2. Now, the Office contends that "some paragraphs" that are "marked as unclassified" in its CIPA § 4 motion papers "risk revealing classified information if linked to the Government's Section 4 motion by identifying topics at issue in the motion." ECF No. 241 at 9. This argument is equally meritless.

The Special Counsel's Office cannot avoid disclosure of an entire filing based on the vague claim that "some"—but apparently not all—of the unclassified paragraphs in its submission would "risk revealing classified information." ECF No. 241 at 9. The Office makes no effort to identify which paragraphs they are referencing, or to explain the purported "risks" that would arise from the attorneys'-eyes-only disclosures that President Trump seeks. Like the earlier motion, this is another example of a casual argument made by prosecutors who have grown too comfortable

---

[1] This concession demonstrates the erroneous and unpersuasive nature of the reasoning relied upon to deny a CIPA-related motion by President Trump in the District of Columbia. *See* ECF No. 241 at 10 (citing *United States v. Trump*, 2023 WL 6538491, at *1 (D.D.C. Oct. 6, 2023)). The Court should reject that flawed analysis, and President Trump will seek relief in that case based on the prosecution's recent admissions, if necessary and if the stay in that case is lifted.

operating in the shadows and away from defense scrutiny, and overly solicitous of Intelligence Community preferences for clandestine filings. *See In re Terrorist Attacks On Sept. 11, 2001*, 523 F. Supp. 3d 478, 498 (S.D.N.Y. 2021) ("Simply saying 'military secret,' 'national security' or 'terrorist threat' or invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege." (cleaned up)).

The prosecution's position is also inconsistent with governing regulations, which require that portion marks "reflect the classification level of that individual portion and not any other portions." 32 C.F.R. § 2001.21(c)(3) (emphasis added); *see also id.* § 2001.21(c)(2) ("Portions which do not meet the standards of [Executive Order 13526] for classification shall be marked with '(U)' for Unclassified."); *id.* § 2001.22(g). Unless the Special Counsel's Office is acknowledging an error, which would serve as yet another reason to doubt the Office's ability to act as a reliable *ex parte* steward of this process, there is no basis for claiming that a paragraph portion-marked as unclassified is in fact classified. The Court should reject the Office's attempt to hide unclassified arguments from President Trump's cleared counsel. The Office's continued reliance on vague and unsupported claims regarding the need for secrecy only underscores the importance of permitting counsel to participate in this process so that similar untenable positions are fully tested.

**2. The Prosecution's Circular "Need To Know" Argument Is Meritless Under The Unique Circumstances Presented**

The Special Counsel's Office has also mischaracterized the "need to know" requirement, and the Court should reject the Office's conclusory assertion that "no counsel or defendant has a need-to-know the information the Government seeks to withhold from Trump and his counsel." ECF No. 241 at 14.

The need-to-know position of the Special Counsel's Office depends on the merits of its CIPA § 4 motion.  In essence, the Office argues that the defense does not have a "need to know" allegedly classified information in its CIPA § 4 submissions *because* that information is not discoverable and/or not "relevant and helpful" to the defense.  Thus, the prosecution seeks to withhold classified submissions from President Trump's cleared counsel by assuring the Court that the Office is correct about the very position we are contesting.  The logic is circular and therefore unpersuasive under the unique circumstances of this case.

The Special Counsel's Office is not the sole arbiter of President Trump's "need to know." Distribution controls on classified information, including evaluation of a need to know, are administered pursuant to Executive Order 13526 and procedures established by the "head of each agency" that originated the classified information under President Trump's leadership.  Executive Order 13526 § 4.2; *see also id.* § 4.1(a)(3).  The term "need to know" is defined as follows:

> a determination within the executive branch in accordance with directives issued pursuant to this order that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.

*Id.* § 6.1(dd); *see also id.* § 6.1(gg) (defining "Original classification authority").

Under the Sixth Amendment and other authorities, cleared counsel's role in defending President Trump in this discovery litigation is a constitutionally required part of this case, which the Special Counsel's Office undoubtedly believes is a "lawful and authorized governmental function."  *Id.* § 6.1(dd).  Cleared counsel are "assist[ing]" in that function as part of a constitutional mandate, and therefore possess the requisite "need to know."  *Id.*  Furthermore, the need-to-know requirement "may be waived" for individuals who "served as President."  *Id.* § 4.4(a)(3); *see also id.* § 3.1(d) ("In some exceptional cases . . . the need to protect such information may be outweighed by the public interest in disclosure of the information, and in these

cases the information should be declassified."). This is another way in which President Trump's status as a previous holder of the office sets this case apart. He is entitled to a waiver because he had access to the information at issue, even if not the particular documents. Because these waivers may also be granted to those who previously "occupied senior policy-making positions," and even people "engaged in historical research projects," Executive Order 13526 §§ 4.4(a)(1), (2), there is no reasonable basis for withholding such a waiver from the defense in connection with President Trump's efforts to prevent the prosecution from withholding evidence.

The original classification authorities responsible for the classified information described in the CIPA § 4 filings must address these issues. Having apparently concluded that President Trump and cleared counsel have a "need to know" similarly sensitive *discoverable* classified information, the agencies' conclusions regarding the need to know classified information disclosed in the CIPA § 4 submissions could only be based on legal guidance from the Special Counsel's Office that the information is not discoverable. Similar to the prosecution's flawed derivative classification position, this is biased guidance from the Office, an interested party, which assumes away the very issue President Trump is contesting. Therefore, the Court should reject the Office's "need to know" contentions and view with skepticism any similar assertions by an original classification authority that have been submitted *ex parte* and do not address § 4.4(a) waivers.

### 3. Courts Are Appropriately Skeptical of *Ex Parte* Proceedings

The prosecution's self-serving descriptions of *Libby*, *Stillwell*, and *Rezaq* ignore the aspects of those cases that support the attorneys'-eyes-only access sought by President Trump. *See* ECF No. 241 at 6-8.

In *Libby*, the court considered *ex parte* filings suspect because "materiality challenges hav[e] been fully litigated in earlier [adversarial] pleadings." 429 F. Supp. 2d 46, 47 (D.D.C.

2006). Unlike in *Libby*, the prosecution cannot seriously contend "'that simply disclosing the nature or mere existence of certain classified information would alone pose significant harm to national security.'" ECF No. 241 at 6 (quoting *Libby*, 429 F. Supp. 2d at 48). To the contrary, the Special Counsel's Office described some of the information at issue during a court conference, and now admits that at least part of the CIPA § 4 motion involves "seeking to withhold certain documents of a *larger subset already produced*" through redactions. ECF No. 241 at 13 (emphasis added); *see also* 9/12/23 Tr. 9-11.

Also unlike in *Libby*, where defense counsel was permitted to participate in litigation over the materiality component of a discoverability dispute, the Office is seeking to hide from President Trump its arguments regarding, *inter alia*, discoverability, the classified information privilege, and the implausible claim that "disclosure even to cleared counsel would damage national security." ECF No. 241 at 4. Those positions are not grounded in the facts of this case and would unravel upon adversarial testing. *See Dennis v. United States*, 384 U.S. 855, 874-75 (1966) ("The determination of what may be useful to the defense can properly and effectively be made only by an advocate.").

Consistent with the *Libby* court's doubt about the justification for *ex parte* submissions, the Second Circuit in *Stillwell* "vacated . . . the [*ex parte*] sealed protective order entered pursuant to CIPA Section 4," and instructed other "district courts . . . to consider whether such orders should be maintained in light of this decision." 986 F.3d 196, 198 n.3, 201 (2d Cir. 2021). *Stillwell* is the most recent appellate authority that has been cited on this issue, and it strongly suggests that there are limits to the discretion to conduct *ex parte* proceedings under CIPA § 4 where such proceedings are not required by a case-specific reason.

Finally, in *Rezaq*, the district court directed the prosecution to file separate "motions for leave to file submissions *ex parte*, with the understanding that such motions must be served on the defendant and then litigated in an adversarial hearing before this court." 899 F. Supp. 697, 707 (D.D.C. 1995). Thus, contrary to the prosecution's assertion, the fact that the prosecutors in *Rezaq* ultimately convinced the court to accept *ex parte* CIPA filings does not dilute the significance of the opinion as another example of a judge requiring adversarial testing of efforts to proceed *ex parte*. President Trump is entitled to at least that much. At minimum, cleared counsel should be permitted to review and contest the prosecution's proffered justifications and claimed evidentiary basis, if any, for *ex parte* proceedings.

Nearly all of the cases relied upon by the Special Counsel's Office stand for the uncontroversial proposition that courts have discretion to conduct *ex parte* proceedings under CIPA § 4.[2] Courts reaching that conclusion have typically relied on a footnote from a committee report that is not binding, authoritative, or even persuasive, as it reflected a non-majority position regarding an unpassed version of the bill and included the incorrect assertion that discovery is "not constitutionally required." *See* ECF No. 237 at 10. The Office did not address any of these issues or the markedly different congressional directives arising from the difference between the text of CIPA § 4 and 50 U.S.C. § 1806(f). *See id.* at 8-9.

Most of the appellate courts affirming a district court's discretion under CIPA § 4 also did so with the benefit of circumstances not present here: a developed trial record that reflected the

---

[2] *United States v. Sedaghaty*, 728 F.3d 885, 908-09 (9th Cir. 2013); *United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008); *United States v. Mejia*, 448 F.3d 436, 458-59 (D.C. Cir. 2006); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261-62 (9th Cir. 1998); *United States v. Pringle*, 751 F.2d 419, 427-28 (1st Cir. 1984). The Special Counsel's Office also cited *United States v. O'Hara*, 301 F.3d 563, 568-69 (7th Cir. 2002). ECF No. 241 at 7. However, the defendant in that case did not challenge the *ex parte* nature of proceedings under CIPA § 4.

defendant's actual trial defenses and facilitated a finding of no substantive error in the issuance of a CIPA § 4 protective order. The lone exception identified by the Office is the Sixth Circuit's decision in *Asgari*, but the Office does not defend that court's flawed reasoning, either. *Compare* ECF No. 237 at 10-11, *with* ECF No. 241 at 5. *Asgari* is unpersuasive because CIPA § 4 does not establish a "clear rule" requiring *ex parte* proceedings, and relying on the possibility of "mistakes" would swallow the presumption against *ex parte* submissions. *See* ECF No. 237 at 10.[3] The Special Counsel's Office does not meaningfully dispute these points and instead mischaracterizes President Trump's position regarding *Asgari* as a "waiver" argument. ECF No. 241 at 5. That is wrong. The nature and amount of classified discovery here, as distinct from the lack of any classified discovery in *Asgari*, is relevant because it contributes to the unique factual record that warrants President Trump's requested relief. So too does cleared counsel's track record of compliance with the CIPA § 3 protective order while handling a host of materials the Office believes are sensitive. *Asgari* is based largely on speculation about the possibility of mistakes; the record of this case refutes such speculation.

### 4. There Is No Basis For Sealing Citations To Legal Authorities

The Special Counsel's Office has not identified any basis for sealing from public view its unclassified citations to legal authorities. "[S]tereotyped and conclusory statements . . . do not establish good cause" for sealing. *Romero v. Drummond Co.*, 480 F.3d 1234, 1247 (11th Cir. 2007) (cleaned up). The Office concedes that it "would not object" to filing a "stand-alone brief setting

---

[3] For example, given cleared counsel's record of compliance, any concerns about "mistakes" apply similarly—*i.e.*, they are similarly *de minimis*, if they exist at all—to the Court's staff, personnel associated with the Classified Information Security Officer, and agency employees currently transporting sensitive materials to and around the District. The Office assumed these purported risks by bringing this case and subjecting its false allegations regarding the alleged sensitivities at issue to the criminal justice process. Speculation about those risks cannot be used to restrict President Trump's ability to defend himself.

forth the legal standards relied upon in its CIPA Section 4 motions." ECF No. 241 at 9 n.1. It is not enough, however, for the Office to create a new court record for that purpose. Rather, the Office must file redacted versions of its CIPA § 4 submissions that reveal—at minimum—these citations.

"[O]pen proceedings may be imperative if the public is to learn about the crucial legal issues that help shape modern society. Informed public opinion is critical to effective self-governance." *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983). There is a history of public access to pretrial motions. *See, e.g.*, *In re New York Times*, 828 F.2d 110, 114 (2d Cir. 1987). Moreover, the "historical tradition of access," ECF No. 241 at 10, which is an element of the First Amendment test, is not dispositive of the need for sealing. *See, e.g.*, *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1266 (11th Cir. 2014). The public's independent common-law right of access to the Office's motion papers, while not absolute, does not require historical analysis. *See, e.g.*, *Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224, 1235-36 (11th Cir. 2013). Accordingly, the Special Counsel's Office bears the burden of demonstrating that sealing is necessary and, yet again, it has not carried that burden here.

## CONCLUSION

For the foregoing reasons, as well as the reasons in the opening brief, ECF No. 237, President Trump respectfully submits that the Court should order the Special Counsel's Office to provide his cleared counsel with attorneys'-eyes-only access to all CIPA § 4 submissions, and to file redacted versions of those submissions on the public docket.

Dated: December 27, 2023                    Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on December 27, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

/s/ *Christopher M. Kise*
Christopher M. Kise