## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,   Case No. 23-80101-CR
                            **CANNON/REINHART**

vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

      Defendants.

**PRESIDENT TRUMP'S MOTION TO DISMISS COUNTS 1-32 BASED ON UNCONSTITUTIONAL VAGUENESS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................2

DISCUSSION ......................................................................................................................................3

    I.    Applicable Law .................................................................................................................. 3

        A.    Vagueness Doctrine ................................................................................................. 3

        B.    Section 793(e) ......................................................................................................... 4

    II.    Discussion ........................................................................................................................... 5

        A.    The Authorization Clause: "Unauthorized Possession" ..................................... 7

        B.    The NDI Clause: "Relating To The National Defense"...................................... 8

        C.    The Entitlement Clause: "Entitled To Receive" ............................................... 11

        D.    The "Willfully" *Mens Rea* Element Cannot Save Counts 1 – 32 .................... 15

        E.    Count 19 Must Be Dismissed Because President Trump Maintained The Required Security Clearance ...................................................................................................... 16

CONCLUSION..................................................................................................................................18

i

## INTRODUCTION

President Donald J. Trump respectfully submits this motion to dismiss Counts 1 through 32 pursuant to the void-for-vagueness doctrine.[1]

Section 793(e) is unconstitutionally vague as applied to President Trump—a former President operating within the framework of the Presidential Records Act ("PRA"), who (1) acted as the ultimate Original Classification Authority based on Article II of the Constitution and under Executive Order 13526, (2) has recourse to the executive privilege, and (3) is entitled to immunity for his official acts. Since at least 1941, courts in cases with less vexing features than this one have acknowledged grave infirmities in the language of § 793(e) and endeavored to "save" the statute. That approach is inconsistent with the due process principles and separation-of-powers concerns that animate the vagueness doctrine.

It is not for Article III judges to address deficiencies in language chosen by elected officials, particularly where, as here, the legislative record strongly suggests that there was no consensus meaning attributed to the problematic language. Judicial efforts to "save" § 793(e) by attaching broad interpretations to a criminal statute in order to reach the conduct of defendants hauled into court by overzealous and politically motivated prosecutors is contrary to the Rule of Lenity. The Supreme Court recently applied this logic in three cases striking so-called "residual clauses" in the Armed Career Criminal Act, Immigration and Nationality Act, and 18 U.S.C. § 924(c). *E.g.*, *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). The Court should do so here as well.

Finally, whatever the term "unauthorized" means in § 793(e), it does not encompass the document charged in Count 19. For that document, President Trump possessed a valid security

---

[1] President Trump reserves the right to supplement this motion and file any other motions based on discovery provided as a result of the motions to compel. *See* ECF No. 314.

clearance during the time period alleged in the Superseding Indictment. Therefore, following the discovery on this issue sought in the Defendants' motions to compel, the Court should resolve any factual disputes and dismiss the charge.

## **DISCUSSION**

I. **Applicable Law**

   A. **Vagueness Doctrine**

"In our constitutional order, a vague law is no law at all." *Davis*, 139 S. Ct. at 2323. The vagueness doctrine "rests on the twin constitutional pillars of due process and separation of powers." *Id.* at 2325. First, "[v]ague laws contravene the first essential of due process of law that statutes must give people of common intelligence fair notice of what the law demands of them." *Id.* (cleaned up). Second, "[v]ague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect." *Id.*; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) ("[T]he [vagueness] doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not.").

"To satisfy due process concerns, Congress must ensure that a criminal law not only provides the kind of notice that will enable ordinary people to understand what conduct it prohibits but also that it does not authorize or "even encourage arbitrary and discriminatory enforcement." *United States v. Di Pietro*, 615 F.3d 1369, 1371 (11th Cir. 2010). "[P]reventing discriminatory law enforcement is the more important aspect of the vagueness doctrine." *United States v. Biro*, 143 F.3d 1421, 1426 (11th Cir. 1998).

### B. Section 793(e)

As relevant to Counts 1 through 32, § 793(e) provides:

> Whoever having **unauthorized possession** of . . . any document . . . **relating to the national defense**, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation . . . willfully retains the same and fails to deliver it to the officer or employee of the United States **entitled to receive it** [shall be guilty of a crime].

18 U.S.C. § 793(e) (emphasis added). This motion focuses on the three bolded statutory phrases: the Authorization Clause ("Unauthorized Possession"), the NDI Clause ("relating to the national defense"), and the Entitlement Clause ("entitled to receive").

Section 793(e) and its neighbor, § 793(d), "are undoubtedly the most confusing and complex of all the federal espionage statutes." Harold Edgar and Benno C. Schmidt, Jr., *The Espionage Statutes and Publication of Defense Information*, 73 Colum. L. Rev. 929, 998 (1973) (hereinafter *Espionage Statutes*); *see also United States v. Rosen*, 445 F. Supp. 2d 602, 613 (E.D. Va. 2006) (noting that "[o]ver the years, numerous commentators have criticized [Section 793] as excessively complex, confusing, indeed impenetrable"). Section 793(e) is a "singularly opaque statute." *New York Times Co. v. United States*, 403 U.S. 713, 754 (1971) (Harlan, J., dissenting). "The legislative drafting is at its scattergun worst precisely where greatest caution should have been exercised." *Espionage Statutes*, 73 Colum. L. Rev. at 998.

Section 793's "progenitor" was "the Defense Secrets Act of 1911." *Rosen*, 445 F. Supp. 2d at 611. The 1911 Act "prohibited the willful communication of knowledge concerning 'anything connected with the national defense' to one 'not entitled to receive it.'" *Id.* at 612. The statute "did not make mere retention criminal." *Espionage Statutes*, 73 Colum. L. Rev. at 1002.

In the Espionage Act of 1917, Congress enacted "predecessor provisions of 793(d) and (e) . . . as a single section, 1(d)." *Espionage Statutes*, 73 Colum. L. Rev. at 1005. Section 1(d) prohibited

> [W]hoever, lawfully or unlawfully having possession of . . . any document . . . relating to the national defense, . . . willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it [shall be guilty of a crime] . . . .

40 Stat. 217, 218 (1917). "The legislative history raises serious doubts as to whether Congress had even a vague understanding of subsection 1(d) by the time the final votes were cast." *Espionage Statutes*, 73 Colum. L. Rev. at 1006.

In the Espionage Act of 1950, Congress split § 1(d) into two sections, added attempt and aiding and abetting language, and supplemented the list of document types with "information . . . the possessor has reason to believe could be used to the injury of the United States or to the advantage of a foreign nation." *Espionage Statutes*, 73 Colum. L. Rev. at 1021 (quoting 64 Stat. 1003 (1950)). "[R]eview of the 1950 legislative record shows that for the third time in as many attempts, Congress had virtually no understanding of the language and effect of 793(d) and (e)." *Id.* at 1022.

## II. Discussion

Section 793(e) is unconstitutionally vague as applied to President Trump. *See United States v. Marte*, 356 F.3d 1336, 1342 (11th Cir. 2004) ("[V]agueness challenges must be evaluated in the light of the facts of the case at hand." (cleaned up)); *Espionage Statutes*, 73 Colum. L. Rev. at 1000 ("[T]he broad literal meaning of the subsections is almost certainly unconstitutionally vague and overbroad, [and] the statutory language does not point toward any one confined reading as a means of saving them."). In this case, the statute's vagueness is subject to exacting scrutiny because the Special Counsel's Office is seeking to prosecute President Trump based in part on

-5-

protected speech relating to the documents at issue.[2] *See Di Pietro*, 615 F.3d at 1371 n.2 ("[W]hen the statute infringes on constitutionally protected rights, such as the right to free speech or of association, the Supreme Court has said that a more stringent vagueness standard should apply."); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.").

Section 793(e) is one of the vague statutes that "threaten[s] to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Davis*, 139 S. Ct. at 2325. As discussed in more detail below, some courts have tried to save § 793(e) and its predecessors from its unconstitutional vagueness through "judge-made" rules and "judicial glosses." However, "the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Id.* at 2323. "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *United States v. Reese*, 92 U.S. 214, 221 (1875). Because that is what Congress has done with § 793(e)—three times—and because the judicial efforts to keep the statute on the books are inconsistent with the Supreme Court's vagueness reasoning in *Davis*, *Dimaya*, and *Johnson*, the Court should reject these authorities and find the statute void for vagueness under the circumstances of this case.

---

[2] *See* Superseding Indictment ¶¶ 23-24, 37 ("TRUMP's Public Statements on Classified Information"); *id.* ¶¶ 34-35 (describing alleged statements during interview); *id.* ¶ 36 (describing alleged statements during meeting).

### A. The Authorization Clause: "Unauthorized Possession"

The Authorization Clause is unconstitutionally vague as applied to President Trump because the pertinent language fails to provide guidance regarding its scope and permits arbitrary enforcement. *See United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32-33 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.")

There is far too much indeterminacy around the meaning of "unauthorized possession" with respect to President Trump and the types of documents at issue. *See United States v. Williams*, 553 U.S. 285, 306 (2008) (reasoning that the relevant issue is not "that it will sometimes be difficult to determine whether the incriminating fact [the statute] establishes has been proved; but rather the indeterminacy of precisely what that fact is"). The documents that are the focus of Counts 1 through 32 are only allegedly classified because of President Trump's Original Classification Authority, which is a power derived from Article II of the Constitution, wielded pursuant to the people's mandate in 2016, and delegated as President Trump saw fit for use pursuant to Executive Order 13526. *See New York Times*, 403 U.S. 713, 728-29 (1971) (Stewart, J., concurring) ("If the Constitution gives the Executive a large degree of unshared power in the conduct of foreign affairs and the maintenance of our national defense, then under the Constitution the Executive must have the largely unshared duty to determine and preserve the degree of internal security necessary to exercise that power successfully."). "[P]ast presidents routinely took national security files," Hur Report at 192 (cleaned up), and no one suggested that their possession and retention was "unauthorized," as discussed in President Trump's motion relating to selective and vindictive prosecution.

In addition to President Trump's constitutional authority and DOJ's established practices prior to this case, presidential discretion to designate records as personal under the PRA adds additional ambiguity for the reasons set forth in President Trump's motion to dismiss based on the PRA. *See United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) ("[C]riminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."). The non-criminal nature of the PRA's exclusive remedy for collecting Presidential Records added yet another layer of ambiguity for the application of a criminal statute's use of the term "unauthorized" to President Trump.

Even if the Authorization Clause provided adequate guidance to President Trump—and it did not—the vagueness of the phrase "unauthorized possession" under these circumstances also gives rise to an impermissible risk of arbitrary enforcement, which is reflected by the numerous examples of cases involving similar situations where prosecutors brought no charges, as discussed in President Trump's selective and vindictive prosecution motion. *See United States v. Matchett*, 837 F.3d 1118, 1122 (11th Cir. 2016) ("Arbitrary enforcement means that a law leaves government actors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." (cleaned up)).

### B. The NDI Clause: "Relating To The National Defense"

The NDI Clause "unfortunately provide[s] no guidance on the question of what kind of information may be considered related to or connected with the national defense." *United States v. Squillacote*, 221 F.3d 542, 576 (4th Cir. 2000); *see also Rosen*, 445 F. Supp. 2d at 618 (reasoning that the NDI Clause is "quite broad and potentially too broad since, especially in time of war, any information could conceivably relate to the national defense"). Congress has made no effort to provide such guidance in connection with its amendments to the statute. *See Holder v.*

*Humanitarian L. Project*, 561 U.S. 1, 21 (2010) (rejecting vagueness challenge where "Congress also took care to add narrowing definitions to the material-support statute over time"). Elected officials have failed to agree on language that provides the notice required by the Constitution, and it is not for the Court to "save" this prosecution from that defect.

There is no binding authority to address the defective NDI Clause under the circumstances presented. Whereas § 793(e) derives from § 1(d) of the Espionage Act of 1917, the Supreme Court interpreted different provisions of that Act, § 1(b) and § 2(a), in *Gorin v. United States*, 312 U.S. 19 (1941). The *Gorin* Court's vagueness analysis turned on distinct language from those provisions:

> [W]e find no uncertainty in this statute which deprives a person of the ability to predetermine whether a contemplated action is criminal under the provisions of this law. The obvious delimiting words in the statute are those requiring '*intent or reason to believe that the information to be obtained is to be used to the injury of the United States, or to the advantage of any foreign nation*.'

312 U.S. at 27 (emphasis added). Section 793(e) contains similar language: "reason to believe could be used to the injury of the United States or to the advantage of any foreign nation . . ." However, prosecutors typically argue that this "injury" language does not apply to charges based on "documents" rather than "information." *See, e.g.*, *United States v. Drake*, 818 F. Supp. 2d 909, 917 (D. Md. 2011); *but see United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988); *United States v. Kiriakou*, 898 F. Supp. 2d 921, 923 (E.D. Va. 2012).[3] Assuming the Special

---

[3] In *Kiriakou*, which involved a § 793(e) charge relating to information rather than documents, the court observed in *dicta* that "in prosecutions under both the documents and the information clauses, the government must show that the disclosed NDI 'relate[s] to the national defense,' meaning that it is 'closely held' and that its disclosure 'would be potentially damaging to the United States or might be useful to an enemy of the United States.'" 898 F. Supp. 2d at 923 (quoting *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988)). President Trump does not concede that Counts 1 through 32 relate to documents, alone, and reserves the right to seek appropriate jury instructions on any counts that survive pretrial motions at the appropriate time.

Counsel's Office adheres to that position, *Gorin* does not address the vagueness defect in the NDI Clause.

Four years after the Supreme Court's decision in *Gorin*, the Second Circuit explained that the NDI Clause could not be taken literally: "It seems plain that the section cannot cover information about all those activities which became tributary to 'the national defense' in time of war; for in modern war there are none which do not." *United States v. Heine*, 151 F.2d 813, 815 (2d Cir. 1945).[4] Congress failed to address these vagueness concerns in connection with the Espionage Act of 1950, which included § 793(e). *See New York Times*, 403 U.S. at 747 (Marshall, J., concurring) ("It is not for this Court to fling itself into every breach perceived by some Government official nor is it for this Court to take on itself the burden of enacting law, especially a law that Congress has refused to pass.").

Nevertheless, based on *Gorin*'s reasoning regarding different statutes, reported decisions outside the Eleventh Circuit have applied a "judge-made" requirement in a strained effort to save § 793(e) from the fatal vagueness problems that it presents. *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 386 (D. Conn. 2009); *see also Rosen*, 445 F. Supp. 2d at 620 ("[C]ourts have carefully cabined the phrase's scope in two ways."). These rulings are in significant tension with the Supreme Court's more recent guidance that:

> Applying constitutional avoidance to narrow a criminal statute, as this Court has historically done, accords with the rule of lenity. By contrast, using the avoidance canon instead to adopt a more expansive reading of a criminal statute would place these traditionally sympathetic doctrines at war with one another.

---

[4] *Heine* involved a separate statute, codified at the time at 50 U.S.C. § 32, which prohibited transmission of certain types of documents "or information relating to the national defense," "with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation." *See* 151 F.2d at 814 n.1. Thus, like *Gorin*, *Heine* is inapposite because it involved language relating to "injury" to the United States that the Special Counsel's Office will likely argue does not apply to the documents charges under § 793(e) in this case.

*Davis*, 139 S. Ct. at 2333; *see also Johnson v. United States*, 576 U.S. 591, 604 (2015) (rejecting dissent invitation to "save the residual clause from vagueness by interpreting it"); *United States v. Caldwell*, 655 F. App'x 730, 732 (11th Cir. 2016) (reasoning that the rule of lenity "creates a related but distinct limitation" that serves as a "junior version of the vagueness doctrine" (cleaned up)).

Thus, "it might have been a good idea for Congress" to limit § 793(e) in the manner *Gorin* discussed, but that "doesn't tell us whether Congress actually wrote such a clause." *Davis*, 139 S. Ct. at 2327. The NDI Clause that Congress wrote is unconstitutionally vague because we live "in an era when every facet of civilian life may have an important bearing on the nation's military capabilities." *Espionage Statutes*, 73 Colum. L. Rev. at 969; *see also Heine*, 151 F.2d at 969 ("[E]very part in short of the national economy and everything tending to disclose the national mind are important in time of war, and . . . 'relate to the national defense'"). Accordingly, the NDI Clause is fatally vague in its own right, cannot be saved through judicial gloss, and contributes substantially to the overall impermissible vagueness of § 793(e).

### C. The Entitlement Clause: "Entitled To Receive"

The Entitlement Clause is also unconstitutionally vague as applied to President Trump. The phrase offers inadequate guidance, and no enforcement standards, with respect to who would be "entitled" to "receive" records that a former president designated as personal under the PRA in connection with an official act during his presidency that involved virtually unreviewable decisions backed by Article II authority.

Section 793(e) "provides no definition of the phrase 'entitled to receive,' nor does it expressly delegate to the executive branch the authority to determine who is entitled to receive national defense information." *Rosen*, 445 F. Supp. 2d at 622. *Rosen* involved a transmission

-11-

charge under § 793(e), as opposed to the retention charges here, and thus focused on a separate phrase from the statute that prohibits transmission of national defense information "to any person not entitled to receive it."[5] Despite the *Rosen* court's observation about the lack of a definition or express rulemaking delegation, the court improperly assumed legislative authority by extending a "gloss" from what that court seems to have considered binding appellate precedent in *United States v. Morison*, 844 F.2d 1057, 1071 (4th Cir. 1988).

In *Morison*, the Fourth Circuit rejected an argument, not made by President Trump, "that sections 793(d) and (e) were not intended to be restricted in application to 'classic spying.'" 844 F.2d at 1066. The *Morison* court asserted that "the classification system provided under 18 U.S.C. App. 1"—*i.e.*, CIPA—had "clarified" the "omission in the statute" relating to the phrase "not entitled to receive it." 844 F.2d at 1074. Because CIPA is simply a "procedural mechanism," the statute does no such thing. *See, e.g.*, *United States v. Trump*, 2023 WL 7172026, at *4 (S.D. Fla. Nov. 1, 2023). Perhaps recognizing this flaw, *Rosen* denied a vagueness motion on the basis that "the rule regulating who is 'entitled to receive' is the Executive Order setting forth a uniform classification system for national security information." 445 F. Supp. 2d at 622.

The Court should reject the reasoning in *Morison* and *Rosen*, however, because those cases involved much more than a "gloss." For the "gloss" proposition, *Rosen* cited dicta from *United States v. Lanier*: "[A]lthough clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly

---

[5] *Rosen* involved two defendants who were not former government officials and lacked security clearances; the defendants were alleged to have obtained sensitive information from U.S. officials and "transmitted the information" to "members of the media, foreign policy analysts, and officials of a foreign government." 445 F. Supp. 2d at 608.

disclosed to be within its scope." 520 U.S. 259, 266 (1997) (cleaned up). The Supreme Court has relied on the *Lanier* dicta to require a restrictive interpretation of a statute, which is consistent with the Rule of Lenity. *See Skilling v. United States*, 561 U.S. 358, 412 (2010) ("Today's decision clarifies that no other misconduct falls within § 1346's province." (citing *Lanier*)). Whereas that type of interpretive "gloss" is within a court's constitutional competencies, *Morison* exceeded those bounds and violated the separation of powers by reading into the statute an implied rulemaking delegation to the Executive Branch. *See* 844 F.2d at 1074. Such a delegation is only valid where "Congress lays down *by legislative act* an intelligible principle" in the statute itself. *Consumers' Rsch., Cause Based Com., Inc. v. FCC*, 88 F.4th 917, 923 (11th Cir. 2023); *see also Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) ("The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion. So the answer requires construing the challenged statute to figure out what task it delegates and what instructions it provides.").

Congress plainly knows how to make such a delegation. In *Duran*, the Eleventh Circuit rejected a vagueness challenge to 18 U.S.C. § 951 because the statute defines pertinent terms and authorized rulemaking by the Attorney General, *see id.* § 951(b), (d), and the Attorney General had promulgated regulations pursuant to that authority in order to provide further clarification, *see* 28 C.F.R. Part 73. *Duran*, 596 F.3d at 1291.[6] On the other hand, Congress has not included such a delegation in § 793 and, in fact, rejected the "gloss" discussed in *Morison* and *Rosen*. In connection with the Espionage Act of 1917, President Wilson proposed a bill that included rulemaking authority. *See Espionage Statutes*, 73 Colum. L. Rev. at 1008-09. Congress excised

---

[6] *See also, e.g.*, 18 U.S.C. § 847; 18 U.S.C. § 926(a); 18 U.S.C. § 2346(a); 34 U.S.C. § 20913(d); 40 U.S.C. § 1315(c).

the provision when competing Senate and House bills were reconciled in conference. *See id.* "In view of this deletion, it is questionable whether the term can be given meaning by reference to Executive Orders." *Id.* at 1001.[7]

Even if the Court wished to do what Congress has not by looking to the Executive Branch for guidance that it was not authorized to provide, Executive Order 13526 is insufficient. *See Goguen*, 415 U.S. at 575 ("Legislatures may not . . . abdicate their responsibilities for setting the standards of the criminal law."). For individuals seeking to comply with § 793(e), the Executive Order provides no relevant guidance concerning who is "entitled" to "receive" documents subject to the statute. As relevant here, § 6.1(hh) of Executive Order 13526 excludes from the definition of "records" materials that are designated as Presidential Records under the PRA. Therefore, the Executive Order raises the same unreviewable question relating to President Trump's designation of the challenged documents as personal.

Defining the Entitlement Clause by reference to the Executive Order would also require application of the term "need to know" as defined in § 6.1(dd). A person would not be "entitled to receive" challenged documents without the "need-to-know the information" under § 4.1(a)(3). As we have explained in connection with the motions to compel, that phrase is every bit as vague, if not more so, than the problematic terms of § 793(e). Relying on the standardless "need to know" requirement to govern the Entitlement Clause—or the Authorization Clause—"furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against

---

[7] Legislators engaged in a "lengthy, and ultimately unedifying debate on section 1(a), and the meaning of 'lawfully entitled' as there used" in the Espionage Act of 1917. *Espionage Statutes*, 73 Colum. L. Rev. at 1010. With respect to § 1(d), the predecessor to § 793(e), "[w]hether the [']not entitled['] language in 1(d) also had meaning independent of Presidential action under section 6 [the excised rulemaking delegation] was never considered." *Espionage Statutes*, 73 Colum. L. Rev. at 1010.

particular groups deemed to merit their displeasure.'" *Kolender v. Lawson*, 461 U.S. 352, 360 (1983) (cleaned up); *see also City of Chicago v. Morales*, 527 U.S. 41, 63 (1999) ("That the police have adopted internal rules limiting their enforcement to certain designated areas in the city would not provide a defense to a loiterer who might be arrested elsewhere.").

Therefore, interpreting § 793(e) by reference to Executive Order 13526 is just another way of conferring unfettered and wholly subjective enforcement discretion to the Executive Branch. That is one of the principal evils that the vagueness doctrine was established to avoid. *See Williams*, 553 U.S. at 306 ("[W]e have struck down statutes that tied criminal culpability to . . . wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."). Accordingly, Executive Order 13526 cannot save § 793(e).

### D. The "Willfully" *Mens Rea* Element Cannot Save Counts 1 – 32

The use of the term "willfully" in § 793(e) does not remedy the statute's vagueness problems. *See United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) (finding statute impermissibly vague, despite use of term "willfully," because the language "leave[s] open . . . the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against"). Willfully "is a word of many meanings, its construction often being influenced by its context." *Spies v. United States*, 317 U.S. 492, 497 (1943). Thus, "the presence of a bad purpose or evil intent alone may not be sufficient." *Screws v. United States*, 325 U.S. 91, 103 (1945).

Here, even if the term "willfully" could be said to address the vagueness doctrine's fair-pillar—and it cannot—the intent requirement does not mitigate the arbitrary enforcement problem. It is not enough to argue, as prosecutors have in other cases, that President Trump will only be convicted if criminal intent is established at trial. *See League of Women Voters of Fla. Inc. v. Fla.*

-15-

*Sec'y of State*, 66 F.4th 905, 947-48 (11th Cir. 2023) ("Although *close cases* should be addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt, the promise of due process later on does not obliterate the vagueness doctrine altogether." (emphasis in original) (cleaned up)). This is so because "[a]ll of the so-called court-created conditions and standards still leave to the jury such broad and unlimited power . . . that the jurors must make determinations of the crucial issue upon their own notions of what the law should be instead of what it is." *Giaccio v. Pennsylvania*, 382 U.S. 399, 403 (1966).

In *Goguen*, the statute left too much room for enforcement decisions based on protestors' politics, and the Supreme Court held that "[w]here inherently vague statutory language permits such selective law enforcement, there is a denial of due process." 415 U.S. at 576. The record demonstrates that § 793(e), as applied in this case, poses the same problems. Accordingly, Counts 1 through 32 must be dismissed.

### E. Count 19 Must Be Dismissed Because President Trump Maintained The Required Security Clearance

As explained in the Defendants' motions to compel discovery, after the Superseding Indictment was filed, the Special Counsel's Office disclosed Energy Department records indicating that President Trump maintained the "Q" clearance that is relevant to the document charged in Count 19 during the time period alleged in that Count. *See* Compel Mot. at 38-42; *id.* Ex. 59.[8] Whatever § 793(e) means—and that much is unconstitutionally unclear—the Authorization Clause does not prohibit possession of a document by the holder of a valid security clearance, and someone who is cleared to the appropriate level cannot willfully violate the statute.

---

[8] "Compel Mot." refers to the Defendants' motions to compel discovery. ECF No. 262. "Compel Reply" denotes references to Defendants' reply brief for their motion to compel (ECF No. 300).

"Where the statutory definition contains generic terms, . . . the indictment may not simply recite the generic terms but 'must state the species, it must descend to particulars.'" *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979) (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)). In addition to the ambiguities that require dismissal of all the § 793(e) charges, the "particulars" around Count 19 provide an alternative basis for dismissal. For the reasons stated in connection with the motions to compel, further disclosures (including a privilege log) and a hearing are necessary to resolve factual disputes to the extent the Special Counsel's Office opposes this motion. *See* Compel Mot. at 40-42; Compel Reply at 25-28.

## **CONCLUSION**

For the foregoing reasons, President Trump respectfully submits that § 793(e) is unconstitutionally vague as applied to President Trump and Count 19 must be dismissed for the additional reason that President Trump maintained the appropriate security clearance at the time in question. Accordingly, the Court should resolve disputed issues of fact relating to Count 19 through discovery and a hearing, and dismiss Counts 1 – 32.

Dated: February 22, 2024

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

      I, Christopher M. Kise, certify that on February 22, 2024, I filed the foregoing document and served it on the Special Counsel's Office via email, or CM/ECF to the extent possible, as required by the Court's February 20, 2024 Order.  ECF No. 320.

                                           */s/ Christopher M. Kise*
                                           Christopher M. Kise