**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,  **Case No. 23-80101-CR**
                          **CANNON/REINHART**
vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

       Defendants.

**PRESIDENT TRUMP'S MOTION TO DISMISS THE INDICTMENT BASED ON THE UNLAWFUL APPOINTMENT AND FUNDING OF SPECIAL COUNSEL JACK SMITH**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................................1

DISCUSSION .........................................................................................................................................1

    I.    The Creation Of The Special Counsel Office Violated The Appointments Clause ........... 1

        A.    Relevant Facts.................................................................................................... 1

        B.    The Smith Appointment Violates The Appointments Clause......................... 2

        C.    The DOJ Statutes Do Not Vest The Attorney General With Appointment Authority ... 3

        D.    *Nixon* Does Not Resolve The Legality Of Smith's Appointment................................... 6

    II.    The Funding Of Smith's Investigation Violates The Appropriations Clause..................... 7

        A.    Background ........................................................................................................ 8

            1.    The Independent Counsel Act........................................................ 8

            2.    Congress Let The Independent Counsel Act Expire................................. 8

            3.    The Reno Regulations................................................................... 10

        B.    The Permanent Appropriation Is Not Available To The Special Counsel's Office ..... 10

CONCLUSION.................................................................................................................................13

# INTRODUCTION

President Donald J. Trump respectfully submits this motion to dismiss the Superseding Indictment based on the unlawful appointment of Special Counsel Jack Smith, in violation of the Appointments Clause and the Appropriations Clause.[1]

# DISCUSSION

## I. The Creation Of The Special Counsel Office Violated The Appointments Clause

The Appointments Clause does not permit the Attorney General to appoint, without Senate confirmation, a private citizen and like-minded political ally to wield the prosecutorial power of the United States.  As such, Jack Smith lacks the authority to prosecute this action.  "[T]hat is a serious problem for the rule of law—whatever one may think of former President Trump or the conduct Smith challenges in the underlying case."[2]  This is an issue of first impression in the Eleventh Circuit, and it requires that the Superseding Indictment be dismissed.

### A. Relevant Facts

On November 18, 2022, Attorney General Garland appointed Smith as a "Special Counsel" with purported authority to "prosecute federal crimes arising from the investigation" into President Trump.  DOJ Order No. 5559-2022 at 2.  Soon after his appointment, the DOJ launched a webpage

---

[1] President Trump reserves the right to supplement this motion and file any other motions based on discovery provided as a result of the motions to compel.  *See* ECF No. 314.

[2] Brief of Former Attorney General Edwin Meese III, Law Professors Steven Calabresi and Gary Lawson, and Citizens United as *Amici Curiae* in Support of Applicant at 1, *Trump v. United States*, Supreme Court of the United States, No. 23A745 (Feb. 20, 2024); *see also* Brief of Former Attorney General Edwin Meese III and Law Professors Steven G. Calabresi and Gary S. Lawson as *Amici Curiae* Supporting Neither Party at 2, *United States v. Trump*, No. 23-3228 (D.C. Cir. 2023) (ECF No. 2033813) ("Jack Smith does not have authority to conduct the underlying prosecution.  Those actions can be taken only by persons properly appointed as federal officers to properly created federal offices.  Neither Smith nor the position of Special Counsel under which he purportedly acts meets those criteria.").

for Smith, similar to webpages DOJ maintains for different components of the Department, that links to statements of the expenditures by Smith's "office."[3] The statements of expenditures summarize the financial activity of the "Special Counsel's Office (SCO) of John L. Smith," further providing that, "[a]s an organization within the Department of Justice, the SCO is required to comply with the rules, regulations, procedures, practices, and policies of the Department of Justice."[4]

### B. The Smith Appointment Violates The Appointments Clause

The Constitution vests all "executive Power" in a president, who must "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 1, cl. 1, § 3. The Appointments Clause requires that all federal offices "not . . . otherwise provided for" in the Constitution—every office other than the president—must be "established by Law," *i.e.*, by Congress. U.S. CONST. art. II, § 2, cl. 2. The Appointments Clause requires that any appointment be with the "Advice and Consent of the Senate." *Id*. It follows, then, that to properly establish a federal office, Congress must enact it.

The Necessary and Proper Clause authorizes Congress to create federal offices to exercise such power. *See* U.S. CONST. art. I, § 8, cl. 18 ("The Congress shall have Power . . . To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."). There is, however, no statute establishing the Office of Special

---

[3] *See* DOJ, About: Special Counsel Jack Smith, https://www.justice.gov/sco-smith.

[4] U.S. Dep't of Justice, Special Counsel's Office – Smith Statement of Expenditures, *available at* https://www.justice.gov/d9/2023-07/Special%20Counsel%27s%20Office%20of%20John%20L.%20Smith%20-%20Statement%20of%20Expenditures%20-%20November%2018%202022%20to%20March%2031%202023_FINAL_7.5.23%20v1.pdf

2

Counsel. As a result, because neither the Constitution nor Congress have created the office of the "Special Counsel," Smith's appointment is invalid and any prosecutorial power he seeks to wield is *ultra vires*.

### C. The DOJ Statutes Do Not Vest The Attorney General With Appointment Authority

Jack Smith is not an "Officer" under the statutes cited by Attorney General Garland. At best, he is an employee. *See* 5 U.S.C. § 3101 ("Each Executive agency, military department, and the government of the District of Columbia may employ such number of *employees* of the various classes recognized by chapter 51 of this title as Congress may appropriate for from year to year." (emphasis added)).

In appointing Smith, Attorney General Garland relied on regulations promulgated by Janet Reno pursuant to the Ethics in Government Act of 1978, Pub. L. No. 95-521. *See Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. §§ 600.1-600.10) (the "Reno Regulations"). Under the Reno Regulations, the Attorney General may "appoint an outside Special Counsel to assume responsibility for [a] matter." 28 C.F.R. § 600.1. However, the Reno Regulations are not the type of "law" that can "establish[]" a federal office because the Appointments Clause dictates that only Congress can create a federal office. *See* U.S. CONST. art. II, § 2, cl. 2.

The Reno Regulations cite as authority 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, 515-19. The order appointing Smith cites each of these statutes except § 301. However, none of these statutes do not provide authority for a "Special Counsel." Section 301 is a general provision for the issuance of regulations by the head of any Executive department, and the provision does not create an office or authorize the creation of an office. Reading § 301 as general authorization for appointment of officers renders superfluous the entirety of the numerous more specific provisions

3

for appointment of officers throughout the United States Code, which are not cited in the Reno Regulations. *See, e.g.*, 28 U.S.C. §§ 503-507A, 532, 541-42, 561, 581-82, 599A. Sections 509 and 510 of Title 28 relate to the authority among DOJ officers or employees and the numerous agencies that fall under DOJ's ambit, but these provisions do not authorize the appointment of new officers or permit the Attorney General to create new offices.

Sections 515 through 519 of Title 28 do not authorize the creation of a Special Counsel. Section 515(a) concerns the powers of an "officer" or "any attorney specially appointed by the Attorney General *under law*," meaning lawfully appointed pursuant to other statutory provisions. Thus, § 515(a) is not a grant of power to appoint a private citizen as Special Counsel, but a mere jurisdictional allocation for duly appointed officers and specially appointed attorneys previously authorized by Congress *in some other provision*. For example, pursuant to § 515(a), in 2003, the Attorney General appointed Patrick Fitzgerald, the Senate-confirmed U.S. Attorney for the Northern District of Illinois pursuant to 28 U.S.C. § 541, to serve as a Special Counsel in the investigation of the Valerie Plame affair.

Relatedly, 28 U.S.C. § 515(b) is not a grant of authority to retain or to hire new officers. The statute is limited to attorneys "retained under authority" of DOJ. *Id.* Such an attorney must be commissioned as a "special assistant to the Attorney General or special attorney," not a "Special Counsel." Thus, §§ 515(a) and 515(b) assume that attorneys will be "specially appointed by the Attorney General under law" and "specially retained under the authority of the Department of Justice." But these provisions do not confer authority to create an office or appoint officers.

Likewise, 28 U.S.C. §§ 516-19 concern the internal allocation of authority among *existing* DOJ personnel, and these sections do not confer authority to create an office or appoint officers. Section 516 reserves the "conduct of litigation" involving the United States to the DOJ. Section

4

517 relates to the powers of the Solicitor General in cases involving the "interests of the United States." Section 518 addresses the Attorney General's power to argue cases in court. Finally, § 519 merely confers power on the Attorney General to supervise litigation involving the government and direct government attorneys, such as "special attorneys appointed under section 543."[5] Section 543 does not allow the Special Counsel appointments that the Reno Regulations sought to authorize because the provision is limited to the appointment of attorneys to "assist United States attorneys," such as "qualified tribal prosecutors." 28 U.S.C. § 543. Attorney General Garland did not cite § 543 in Order No. 5559-2022, and Smith was not appointed to "assist [a] United States attorney" under § 543. Rather, Smith claims to have the authority to exercise DOJ's plenary investigative and prosecutorial power without the direction or supervision of a superior officer as required by law.

Attorney General Garland also cited 28 U.S.C. § 533, which is part of Chapter 33, titled "Federal Bureau of Investigation." Because the introductory language of § 533 relates to the appointment of "officials," rather than Article II "Officers of the United States," § 533(1) is not a general authorization to the Attorney General to create an office or appoint an Officer. "Officers" is a constitutional term of art under the Appointments Clause; Article II, Section 1; and Article II, Section 4, which allows for the impeachment and removal of "all civil Officers of the United States . . . ." Congress could impeach the Deputy Attorney General or the FBI Director, but no one

---

[5] Section 519 refers to the Attorney General's supervisory authority over "special attorneys appointed under section 543." Section 543, in turn, provides the Attorney General authority to "appoint attorneys to *assist* United States attorneys when the public interest so requires." 28 U.S.C. § 543 (emphasis added). Section 543 does not authorize the appointment of a Special Counsel, and has instead been relied upon to appoint "Special Assistant United States Attorneys." *See United States v. Navarro*, 160 F.3d 1254, 1257 (9th Cir. 1998).

5

contemplates Congress impeaching FBI "officials." Rather, § 533 "officials" must be subject to the supervision and direction of a constitutional "Officer."

Finally, reading § 533 to instill virtually limitless inferior Officer appointment power in the Attorney General would render Title 28's appointment structure a nullity. *See, e.g.*, § 504 (creating Deputy Attorney General); § 505 (creating Solicitor General); § 506 (creating Assistant Attorneys General); § 541 (creating United States Attorneys). Title 28 is divided into chapters relating to the Attorney General; the FBI (which includes § 533); U.S. Attorneys; the Marshals Service; U.S. Trustees; the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the now defunct independent counsel. In that context, it does not stand to reason that Congress authorized the Attorney General to appoint a Special Counsel in the chapter relating to the FBI.

### D.  *Nixon* Does Not Resolve The Legality Of Smith's Appointment

The Supreme Court's dicta in *United States v. Nixon*, does not save Jack Smith. In reasoning relating to the distinct issue of justiciability, the *Nixon* Court noted:

> Under the authority of Art. II, s 2, Congress has vested in the Attorney General the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533. Acting pursuant to those statutes, the Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure

418 U.S. 683, 694 (1974). Neither *Nixon* nor the case that purported to follow it, *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019), engaged in a textual analysis of §§ 509, 510, 515, and 533 to determine if those sections do, in fact, authorize the appointment of a "Special Prosecutor."

The *Nixon* Court was focused on whether the president's assertion of executive immunity could be challenged in *any* judicial process. 418 U.S. at 706. *Nixon* was also decided prior to "the rebirth of the Appointments Clause in 1976" pursuant to *Buckley v. Valeo*, 424 U.S. 1 (1976). Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was*

6

*Unlawful*, 95 Notre Dame L. Rev. 87, 124 (2019) (citing, as other examples, *Morrison v. Olson*, 487 U.S. 654 (1988) and *Lucia v. SEC*, 138 S. Ct. 2044 (2018)). Thus, the *Nixon* Court's barebones analysis of this statutory authority—prior to the development of its Appointment Clause jurisprudence—does not settle this inquiry into Smith's authority.

Further, *Nixon* characterized the "Special Prosecutor" as a "subordinate officer." *Nixon*, 418 U.S. at 694; *see also In re Grand Jury Investigation*, 916 F.3d at 1052 (characterizing Special Counsel Mueller as an "inferior officer"). However, Attorney General Garland declared that Smith's appointment was intended to promote independence, and the Special Counsel's Office has insisted that "coordination with the Biden Administration" is "non-existent." ECF No. 191 at 6, *United States v. Trump*, No. 23 Cr. 257 (D.D.C. Dec. 27, 2023). If Smith is a subordinate officer as *Nixon* suggests, then these public assertions are false because Smith serves at the pleasure of the Attorney General and President Biden, who is exercising Article II authority to oversee the prosecution of his political rival and leading candidate in the 2024 presidential election.

For all of these reasons, Smith's position was not "established by Law" under the Appointments Clause. The authority he attempts to employ as Special Counsel far exceeds the power exercisable by a non-superior officer, authority that Congress has not cloaked him with. *See Lucia*, 138 S. Ct. at 2051-52. Therefore, any actions taken by Smith are *ultra vires* and the Superseding Indictment must be dismissed.

## II. The Funding Of Smith's Investigation Violates The Appropriations Clause

President Biden's DOJ is paying for this politically motivated prosecution of Biden's chief political rival "off the books," without accountability or authorization. Rather than funding the Special Counsel's Office through the ordinary budget process, Jack Smith is drawing on a permanent indefinite appropriation that, by its terms and under the Reno Regulations, is not available to Special Counsel. Thus, Smith's funding violates the Appropriations Clause. Like the

Appointments Clause defect, the Appropriations Clause violation is an issue of first impression in the Eleventh Circuit and serves as another basis for dismissal.

### A. Background

#### 1. The Independent Counsel Act

The Ethics in Government Act of 1978 established a procedure whereby, at the Attorney General's request, a special panel of three federal judges would both appoint a prosecutor and define the scope of the investigation.  The law was repeatedly reauthorized and later renamed the Independent Counsel Act.  In 1983, Congress renamed the "Special Prosecutor" as "Independent Counsel." Ethics in Government Act Amendments of 1982, Pub. L. No. 97-409, 96 Stat. 2039.

In 1987, Congress created a "permanent indefinite appropriation" to "pay all necessary expenses of investigations and prosecutions by independent counsel . . . ."  Dep't of Justice Appropriations Act of 1988, Pub. L. No. 100-202, § 101(a), 101 Stat. 1329, 1329-9.  A "permanent indefinite appropriation" is one that "both (1) remains available for specified purposes, with no fiscal-year limitations and with no need for additional congressional action to authorize its use; and (2) is for an unspecified amount of money." U.S. GOV'T ACCOUNTABILITY OFF., *Office of Congressional Workplace Rights—Availability of a Permanent Indefinite Appropriation for Agency Expenses Incident to Back Pay Awards*, B-332003.1 n.1 (Oct. 5, 2022).  A Committee report relating to the 1987 reauthorization underscored that the intent of Congress "has always been that the independent counsel would be completely independent of the Department of Justice." H.R. REP. NO. 100-316, at 32; *see also* 28 U.S.C. § 594(i).

#### 2. Congress Let The Independent Counsel Act Expire

In 1999, Congress let the Independent Counsel Act expire due in large part to bipartisan concern that unlimited budgets were leading to political witch hunts.  At a House Judiciary

Committee hearing, then Deputy Attorney General Eric Holder explained that resource constraints are a needed check on prosecutorial overreach:

> The Act…vests this immense prosecutorial power in … someone … who, as former Attorney General Barr stated, is not subject to the same sort of oversight or budgetary constraints that the publicly accountable Department of Justice faces day in and day out….
>
> Independent counsel are largely insulated from any meaningful budget process, competing public duties, time limits, accountability to superiors and identification with the traditional long-term interests of the Department of Justice. This insulation contributes greatly to the independence of these prosecutors, but it also *eliminates the incentive to show restraint in the exercise of prosecutorial power*. Such restraint, usually referred to as prosecutorial discretion, is essential to our system of justice, and is a prosecutorial hallmark . . . . All of these provide an *impetus to investigate the most trivial matter to an unwarranted extreme, and to resolve all doubt against the subjects of an investigation*.

Independent Counsel Hearing at 70-71 (emphasis added).[6]  The point was echoed by Senators Mitch McConnell and Chris Dodd, party leaders on opposite sides of the aisle.[7]

To address this concern, the DOJ recommended letting the Independent Counsel Act expire and instead using lawyers appointed within DOJ's statutory framework.  U.S. Senator Tammy Baldwin, then a House Judiciary Committee member, pressed Holder on what "safeguards" the American people would then have that "expenditures will be appropriately limited."  Independent Counsel Hearing at 101-02.  Holder's answer is at the crux of this case:

> [I]f you had special prosecutors who operated within the framework … of the Justice Department, you would not have the kinds of concerns that some people have expressed about expenditures.  They would be a part of the Department, part of the Department's budget.

---

[6] *Reauthorization of the Independent Counsel Statute, Pt. I, Hearings Before the Subcomm. on Commercial and Admin. Law of the H. Comm. on the Judiciary*, 106th Cong. 102 (1999) (the "Independent Counsel Hearing").

[7] Such agreement was documented in the op-ed pages of the *Wall Street Journal*: "The current independent counsel law is opposed by nearly every former living attorney general . . . . The law gives virtually unchecked power, virtually unlimited budgets and completely distorted incentives--all to one man or woman whose sole job is to investigate a public official." Mitch McConnell & Christopher Dodd, *No More Independent Counsels*, WALL ST. J. (Feb. 23, 1999), https://www.wsj.com/articles/SB919720839100844500.

*Id.* at 102. Congress allowed the statute to lapse, and DOJ issued the Reno Regulations soon thereafter. But DOJ never delivered on Mr. Holder's assurance. Special Counsel expenditures have not become part of the Department's budget and, as here, continue to be funded through the permanent indefinite appropriation reserved for "independent counsels."

### 3.  The Reno Regulations

The day after the Independent Counsel Act expired, the Reno Regulations took effect. 64 Fed. Reg. 37038 (July 9, 1999). The most significant change, according to the Congressional Research Service, is the "overall degree of ultimate control and authority that the Attorney General is to exercise over a Special Counsel investigation/prosecution, in comparison with the statutory Independent Counsel procedures, and former regulations such as those authorizing the Watergate Special Prosecutors." CRS Report at 5.[8] For example, under the Independent Counsel Act, the prosecutor was selected by a three-judge panel from a specially created division within the U.S. Court of Appeals for the D.C. Circuit. 28 U.S.C. § 593. Pursuant to the Reno Regulations, Special Counsels are selected by and owe their jobs to the Attorney General and the Attorney General's boss, the president. *See* 28 C.F.R. § 600.1.

### B.  The Permanent Appropriation Is Not Available To The Special Counsel's Office

Jack Smith's expenditures have not become part of DOJ's budget. Instead, the Biden Administration is funding the Special Counsel's Office via the permanent indefinite appropriation that is only available to "*independent* counsel" appointed pursuant to the Independent Counsel Act or "other law." *The Hon. Ted Stevens Chairman Comm. on Appropriations*, 2004 WL 2213560,

---

[8] CRS, RL31246, Independent Counsel Law Expiration and the Appointment of "Special Counsels" (Jan. 15, 2002) (the "CRS Report").

at *3 (Sept. 30, 2004) (emphasis added).[9]  Smith is not an independent counsel, but the nearly $13 million that Smith spent in Fiscal Year 2023—with no accountability—is more than 10% of the annual budgets of DOJ's Tax and Environment and Natural Resources Divisions.

The Reno Regulations stripped prosecutorial independence that had previously been conferred by the Independent Counsel Act.  *See, e.g.*, 28 C.F.R. § 600.7 (presuming that Special Counsel are subject to "review and approval procedures by the designated Departmental component").  The court in *United States v. Stone* ignored the significance of the Reno Regulations and relied on an atextual interpretation of 28 U.S.C. § 515 to reason that the provision served as an independent basis for Mueller's appointment and "other law" for purposes of his access to the indefinite appropriation.  394 F. Supp. 3d 1, 19-20 (D.D.C. 2019).  For the reasons stated above in Part I, § 515 cannot sustain the weight the *Stone* court placed upon it.  Specifically, § 515(a) refers to attorneys "appointed by the Attorney General under law," which requires an independent statutory basis for the appointment.  There was no such basis supporting Mueller's activities, and there is none supporting Jack Smith.  Therefore, the Court should reject the analysis in *Stone*.

The significance of the Reno Regulations is illustrated by the GAO analysis relating to Patrick Fitzgerald.  In 2004, DOJ justified Fitzgerald's access to the indefinite appropriation in connection with his appointment as Special Counsel by arguing that Fitzgerald was "express[ly] exclu[ded]" from the Reno Regulations.  *See The Hon. Ted Stevens Chairman Comm. on Appropriations*, 2004 WL 2213560, at *3 (Sept. 30, 2004).  The GAO focused on the "indicia of independence" surrounding Fitzgerald, and concluded that the "independence conferred by the

---

[9] *See* DOJ Appropriations Act, 1988, Pub. L. No. 100-202 § 108, 101 Stat. 1329 (Dec. 22, 1987) ("That a permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or *other law* . . . ." (emphasis added)).

11

delegation of authority to Special Counsel Fitzgerald from the Department of Justice is consistent with a fair reading of the independence required of an 'independent counsel' appointed under 'other law.'" *Id* at \*3, \*5. Unlike Fitzgerald (a Senate-confirmed U.S. Attorney), the terms of Attorney General Garland's Order make Jack Smith (an outside attorney who used to work at DOJ) subject to the Reno Regulations. Thus, pursuant to the Order, Smith is not "independent."

> [A]s in cases involving Appointments Clause defects or other separation of powers problems with a government actor's authority to act, the proper remedy here is to disregard the government action. Because the CFPB has prosecuted this enforcement action using funds derived without a constitutionally footed appropriation or oversight, the court should dismiss the enforcement action against the appellants.

*CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring); *see also United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) ("[I]f DOJ were spending money in violation of § 542, it would be drawing funds from the Treasury without authorization by statute and thus violating the Appropriations Clause. That Clause constitutes a separation-of-powers limitation that Appellants can invoke to challenge their prosecutions."). Because Smith lacks sufficient independence, he should not be permitted to access the permanent indefinite appropriation. This defect serves as another basis for dismissal.

## CONCLUSION

For the foregoing reasons, President Trump respectfully submits that the Court should dismiss the Superseding Indictment pursuant to the Appointments Clause and the Appropriations Clause.

Dated: February 22, 2024

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## **CERTIFICATE OF SERVICE**

I, Christopher M. Kise, certify that on February 22, 2024, I filed the foregoing document and served it on the Special Counsel's Office via email, or CM/ECF to the extent possible, as required by the Court's February 20, 2024 Order.  ECF No. 320.

                                                */s/ Christopher M. Kise*
                                                Christopher M. Kise