UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, **and
CARLOS DE OLIVEIRA,**

    Defendants.
_____/

**GOVERNMENT'S OPPOSED MOTION FOR LEAVE
TO FILE JOINT PROPOSED JURY QUESTIONNAIRE UNDER SEAL**

Today, February 28, 2024, the Government and defense intend to jointly file a proposed jury questionnaire, denoting areas of agreement and disagreement. *See* Min. Order, ECF No. 244. The parties finished a conferral today that began on the evening of February 26, but disagree as to whether the proposed questionnaire should be filed under seal: the Government advocates sealing, and the defense opposes. Because effective voir dire involves soliciting unprejudiced and unvarnished information and opinions from potential jurors so that parties and courts can make prospective assessments of their impartiality, the proposed questionnaire and the process by which the questionnaire is finalized should be sealed until after jury selection. The Government therefore moves for leave to file the joint proposed questionnaire under seal today or, in the alternative, to submit it to the Court by email, pending resolution of this sealing request. The defense requests the opportunity to oppose the Government's sealing request in writing.[1]

---

[1] The Government is mindful that permission of the Court must be obtained before filing any documents under seal, and that a motion for leave like this one should be made "sufficiently

## Applicable Legal Principles

Under the First Amendment, jury selection is a presumptively "public process," which "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Super. Ct. of Cal.,* 464 U.S. 501, 505, 510 (1984). Under the Sixth Amendment, jury selection is vital to a fair trial—and "the district court's duty is to conduct a thorough jury-selection process that allows the judge to evaluate whether each prospective juror is 'to be believed when he says he has not formed an opinion about the case.'" *United States v. Tsarnaev*, 595 U.S. 302, 313 (2022) (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 425 (1991)).

Because that thorough inquiry is aided greatly by ensuring that prospective jurors do not access the substance of voir dire until the time it is conducted, particularly in cases involving pretrial publicity like this—*see United States v. Stewart*, No. 03-cr-717, ECF Nos. 74 & 87, 2004 WL 6519, *1-2 (S.D.N.Y. Dec. 2, 2003; Jan. 15, 2004; Jan. 15, 2004), overruled on other grounds (sealing voir dire itself) by *ABC, Inc. v. Stewart*, 360 F.3d 90, 101 (2d Cir. 2004) (utilizing sealed jury questionnaire in the highly publicized Martha Stewart case)—courts often seal proposed and final questionnaires until after jury selection. *See, e.g.*, *United States v. Menendez*, No. 2:15-cr-155, ECF Nos. 37, 182, 198, 202, & 203 (D.N.J. July 1, 2015; June 21, 2017, Aug. 24, 2017; Aug. 25, 2017) (docket entries reflecting court's instruction on July 1, 2015, to submit to it a joint proposed jury questionnaire by August 18, and subsequent public docketing of blank questionnaire after jury selection was complete—reflecting that neither proposed nor final questionnaire was publicly docketed until after jury selection); *United States v. McDonnell*, No. 3:14-cr-12, ECF

---

in advance of the related filing deadline to permit adequate Court consideration." ECF No. 283 at 9-10. The conferral on the questionnaire was delayed due to busy calendars of all involved, and the Government respectfully requests that the Court consider that an extenuating circumstance.

Nos. 64 & 180 (E.D. Va. Feb. 21 & July 1, 2014) (directing parties to exchange proposed jury questionnaires and submit them directly to the court, rather than file them on the docket). Such a procedure protects the integrity of a fair jury selection process with the narrow tailoring necessary to ensure public access.

## Discussion

Pre-publication of the proposed jury questionnaire risks impeding this Court's ability to conduct a thorough and fair selection process for several reasons. First, it risks providing potential jurors, and those who may wish to influence potential jurors, the equivalent of the questions and answers to a test before it is administered. As a matter of common sense, assessing unrehearsed responses to questions is an ineffective manner to evaluate each potential juror's impartiality, and providing the questionnaire in advance will hinder the Court's ability to effectively do so. *See United States v. Taveras*, 436 F. Supp. 2d 493, 504 (E.D.N.Y. 2006) (sealing jury questionnaire from the press until the first day of jury selection: "Neither the venire nor the press will receive the questionnaire before the first day of jury selection. In some respects the questionnaire is like a Rorschach test; the answers tend to reflect real, rather than feigned, opinions only when immediate and unrehearsed."); *United States v. Rodriguez*, No. 2:04-cr-55, 2006 WL 8438023, *2 (D.N.D. June 29, 2006) (approving sealing of proposed introductory statement to jury questionnaire "to ensure that prospective jurors did not get a preview of the questionnaire"); *cf. Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981) ("Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire.").

Second, the publicity surrounding this case creates a substantial risk that the draft questionnaire will be widely publicized in this district, along with advice or instructions as to how the questions should be answered. *See*, e.g., *United States v. Tsarnaev*, No. 13-cv-10200, 2015 WL 631330, *3 (D. Mass. Feb. 13, 2015) (partially sealing voir dire, including the identities of potential jurors, to protect against "potential jury contamination").

Third, potential jurors may have strong views about Trump, his co-defendants, or the Government in this case, and providing advance information about the contents of the questionnaire increases the risk that potential jurors may craft their answers to increase their odds of serving or avoiding service on the jury. *See United States v. Nacchio*, No. 05-cr-545, 2007 WL 9723305, *3 (D. Colo. Jan. 25, 2007) ("The significant publicity surrounding the instant case gives this court reason to suspect that some members of the jury pool may have a preference to serve or avoid service on this jury. . . . By sealing the questionnaire until the first day of voir dire, this court seeks to avoid having the media alert potential jurors that they are being considered for service on the Qwest case; thus subverting a degree of potential juror self-selection.").

Finally, giving the public a window into the process through which certain questions are selected for the final questionnaire by publishing the parties' proposals and back-and-forth reasoning with the Court risks all the same prejudice outlined above. The media's attention to and scrutiny of that process risks amplifying the harms addressed above and improperly influencing potential jurors' questionnaire responses, thereby hindering the Court's assessment of impartiality.

Sealing the proposed jury questionnaire will protect the Court's jury selection process from these risks—and continuing that sealing just until jury selection is finished will restrict public access only as far as necessary to do so. *See Tsarnaev*, 2015 WL 631330 at *3 (finding partially sealed jury procedures to ensure candor, prevent juror contamination, and promote efficiency

"accommodate the right of media access while protecting the integrity of the jury selection process and the defendant's right to an impartial jury"); *Nacchio*, 2007 WL 9723305 at *3 ("Because the questionnaires will be released on the day of voir dire, this restriction is narrowly tailored, minutely affecting media access."). Sealing the joint proposed questionnaire until the jury has been selected is a modest step that properly balances First and Sixth Amendment interests and ensures the overall integrity of the judicial process. For the reasons explained herein, there are effectively no means short of sealing—for that limited time period—that will accomplish the same objectives.

## Conclusion

For these reasons, there is an overriding interest to seal the joint proposed jury questionnaire until after jury selection. The Government therefore seeks leave to file the joint proposed jury questionnaire under seal today or, in the alternative, requests permission to provide it to the Court via email pending final resolution of this sealing request.

                                      Respectfully submitted,
                                      JACK SMITH
                                      Special Counsel
                                      N.Y. Bar No. 2678084

By:    /s/ *Jay I. Bratt*
           Jay I. Bratt
           Counselor to the Special Counsel
           Special Bar ID #A5502946
           950 Pennsylvania Avenue, NW
           Washington, D.C. 20530

           David V. Harbach, II
           Assistant Special Counsel
           Special Bar ID #A5503068

February 28, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt