**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON(s)**

**UNITED STATES OF AMERICA**,

       Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

       Defendants.

_____/

**GOVERNMENT'S OPPOSITION TO DONALD J. TRUMP'S**
**MOTION TO DISMISS BASED ON**
**THE APPOINTMENT AND FUNDING OF THE SPECIAL COUNSEL**

**TABLE OF CONTENTS**

I.      Background ................................................................................................................. 1

II.     Argument .................................................................................................................... 4

    A.     The Attorney General Has Statutory Authority to Appoint the Special Counsel .......... 5

        1.     Precedent establishes the Attorney General's appointment authority .................... 6

        2.     Multiple statutes establish the Attorney General's authority .................................. 9

            a.     Statutory text grants the Attorney General power to appoint a special counsel ........................................................................................................ 9

            b.     Section 515's history confirms that it provides appointment power .............. 12

    B.     The Department of Justice Funded the Special Counsel's Office from the Correct Appropriation ................................................................................................ 15

III.    The text of the permanent appropriation applies here ...................................... 15

        1.     The permanent appropriation's history alongside longstanding practice confirms its applicability ................................................................................... 17

        2.     Trump's claim would not support dismissal ........................................................ 20

IV.     Conclusion ............................................................................................................... 23

Defendant Donald Trump argues (ECF No. 326) that the Special Counsel lacks the legal authority to prosecute this case and the lawful funding to carry out any prosecution. Each argument is incorrect, and neither supports dismissal of the charges that were properly returned by a grand jury in this District. The Supreme Court recognized in closely analogous circumstances nearly 50 years ago, in *United States v. Nixon*, 418 U.S. 683, 694 (1974), that the Attorney General has the statutory authority to appoint a Special Prosecutor. And Trump's funding argument is equally unsound. The Special Counsel's investigation is lawfully funded through an appropriation that has been used repeatedly to pay similar special and independent counsels, and the lawfulness of this practice is confirmed by statutory text, history, and longstanding practice (including funding for a special counsel appointed during Trump's administration). Trump's attack on the source of funding would, in any event, provide no basis to dismiss the Superseding Indictment. The Court should deny Trump's motion.

## I.     Background

The Constitution's Appointments Clause permits Congress "by Law" to vest the appointment of "inferior Officers" in the "Head[] of [a] Department." U.S. Const. art. II, § 2, cl. 2. The Attorney General is the head of the Department of Justice and has exclusive authority (except as otherwise provided by law) to direct "the conduct of litigation" on behalf of the United States. 28 U.S.C. §§ 503, 516. Congress has "vested" in the Attorney General virtually "[a]ll functions of other officers of the Department of Justice," *id.* § 509, and empowered him to authorize other Departmental officials to perform his functions, *id.* § 510. Congress has also authorized the Attorney General to commission attorneys "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General or special attorney[s]" and provided that "any attorney specially appointed by the Attorney General under law, may, when specifically

1

directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal . . . which United States attorneys are authorized by law to conduct." *Id.* § 515(a) & (b). Congress has also provided for the Attorney General to "appoint officials . . . to detect and prosecute crimes against the United States." *Id.* § 533(1). These statutes authorize Attorneys General to appoint special counsels and define their duties. *See, e.g.*, *United States v. Nixon,* 418 U.S. 683, 694 (1974).

The Attorney General has issued a regulation providing an internal framework for certain special-counsel appointments. 28 C.F.R. §§ 600.1-600.10 (1999); *see also* 5 U.S.C. § 301 (authorizing the head of a department to issue regulations "for the government of his department" and "the distribution and performance of its business"); Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999). The Special Counsel regulation "replace[d]," *id.*, the Independent Counsel regime formerly provided for in Title IV of the Ethics in Government Act, 28 U.S.C. §§ 591-599 (expired); *see Morrison v. Olson*, 487 U.S. 654 (1988). The Ethics in Government Act had required the Attorney General in certain cases to ask a court to appoint an independent counsel, who then operated with significant statutory freedom from Department of Justice supervision. The Special Counsel regulation, by contrast, provides for a wholly Executive Branch procedure for appointing a special counsel, who exercises discretion "within the context of established procedures of the Department," with "ultimate responsibility for the matter and how it is handled . . . continu[ing] to rest with the Attorney General." Office of Special Counsel, 64 Fed. Reg. at 37,038. The regulation seeks "to strike a balance between independence and accountability in certain sensitive investigations." *Id.*

On November 18, 2022, the Attorney General issued an order appointing John L. Smith as Special Counsel "to conduct the ongoing investigation referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J. Trump v.*

*United States*, No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022)."  Office of the Att'y Gen., Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel*, ¶ (c) Nov. 18, 2022 ("Appointment Order").  The Appointment Order also authorized the Special Counsel "to conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021."  *Id.* ¶ (b).  Relying on "the authority vested in the Attorney General, including 28 U.S.C. §§ 509, 510, 515, and 533," the Attorney General ordered the appointment of a Special Counsel "in order to discharge [the Attorney General's] responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of" the matters for which he appointed the Special Counsel.  *Id.* (introduction).  The Attorney General made applicable to the Special Counsel "Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations."  *Id.* ¶ (e).

Consistent with prior practice, the Department of Justice has funded the Special Counsel through a "permanent indefinite appropriation" that Congress enacted in 1987 to "pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law."  Pub. L. No. 100-202, § 101(a) (Title II), 101 Stat. 1329, 1329-9 (1987) (28 U.S.C. § 591 note); *see* U.S. Dep't of Justice, *Special Counsel's Office-Smith, Statement of Expenditures: April 1, 2023 through September 30, 2023*, at 4 (noting that funding for the Special Counsel Office came from this appropriation).  The permanent appropriation ensured that outside, independent counsel could continue to carry out sensitive investigations even as the statutory Independent Counsel under the Ethics in Government Act faced "legal challenges."  Government Accountability Office ("GAO"), *Special Counsel and Permanent Indefinite Appropriation*, B-302582, 2004 WL 2213560, at *3 (Comp. Gen. Sept. 30, 2004).

3

## II.      Argument

The Special Counsel has the legal authority to prosecute this case.  First, his appointment is consistent with the Appointments Clause, which provides that Congress may by law provide for the Head of a Department to appoint an "inferior Officer."  U.S. Const. art. II, § 2, cl. 2.  Congress has provided "by law" for the Special Counsel's appointment.  Precedent establishes that the Attorney General has statutory authority to appoint the Special Counsel.  *See United States v. Nixon,* 418 U.S. 683, 694 (1974) (holding that 28 U.S.C. §§ 515 and 533 authorized the appointment of a special prosecutor comparable to the Special Counsel); *see also In re Sealed Case*, 829 F.2d 50, 55 (D.C. Cir. 1987) (finding appointment authority for Independent Counsel); *In re Grand Jury Investigation*, 916 F.3d 1047, 1053-54 (D.C. Cir. 2019) (finding that *Nixon* and *In re Sealed Case* supported Special Counsel Robert Mueller's appointment).  Specifically, the text and history of Sections 515 and 533 confirm that they confer appointment authority.  Section 515(b) empowers the Attorney General to commission attorneys who are "specially retained under authority of the Department of Justice" as "special assistant to the Attorney General or special attorney."  28 U.S.C. § 515(b).  Section 533 confirms that "[t]he Attorney General may appoint officials . . . to detect and prosecute crimes against the United States."  28 U.S.C. § 533.  Attorneys General have long used these powers to appoint special attorneys with responsibilities like the Special Counsel's, with consistent support from Congress, the Executive Branch, and the courts.

Second, the Special Counsel receives funding from the correct appropriation.  The plain text of the permanent appropriation covers the Special Counsel's appointment.  That appropriation's history and the longstanding practice of funding similar independent and special counsels under it confirm its applicability here.  But even if Trump were correct that the funding

should come from some other source—and he is not—he would not be entitled to a dismissal of the Superseding Indictment.

### A.      The Attorney General Has Statutory Authority to Appoint the Special Counsel

The Appointments Clause specifies how federal officers are appointed:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, *Judges of the supreme Court*, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.  The Clause thus distinguishes between principal officers and "inferior Officers."  By default, all officers must be nominated by the President and confirmed by the Senate. But Congress may "vest" the power to appoint "inferior Officers" in the President alone, courts, or a "Head[] of Department[]."  The Government does not dispute that the Special Counsel is an officer and the Appointments Clause applies.[1]  *See Lucia v. SEC*, 585 U.S. 237, 245 (2018) (officers

---

[1] In contradictory claims, Trump asserts on the one hand (ECF No. 326 at 2-3) that the Senate was required to provide its "Advice and Consent" before the Special Counsel could be appointed, and yet on the other hand (*id.* at 3) that the Special Counsel is "not an 'Officer'" but rather "at best . . . an employee."  But if the Special Counsel were not an officer, then the Appointments Clause—which, in relevant part, addresses the appointment of officers—would have no application at all.  The Appointments Clause does apply because the Special Counsel is an "inferior Officer[]," whose appointment Congress may "by Law" vest in a principal officer such as the Attorney General.  U.S. Const. art. II, § 2.  Trump nowhere argues—and therefore has not preserved any claim—that the Special Counsel is a principal officer.  In any event, such a claim would fail because Supreme Court precedent establishes that an "officer"—one who exercises significant authority under the laws of the United States—is "inferior" if he is subject to direction and supervision at some level by presidentially-appointed and Senate-confirmed officers.  *Edmond v. United States,* 520 U.S. 651, 662-63 (1997).  As courts have recognized, the factors distilled from *Edmond* to assess whether an officer is "inferior"—degree of oversight, removability, and decision-making authority—support the conclusion that the Special Counsel is an inferior officer. *See In re Grand Jury Investigation*, 916 F.3d at 1052-53; *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1338-40 (D.C. Cir. 2012).

are those who "exercise[] significant authority pursuant to the laws of the United States") (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)).

Trump contends (ECF No. 326 at 3-7) that the Attorney General lacks statutory power to appoint the Special Counsel, as the Appointments Clause requires.  But the Supreme Court in *Nixon*, 418 U.S. 683, and the D.C. Circuit in *In re Sealed Case*, 829 F.2d 50, each held that the Attorney General has statutory authority to appoint a special counsel and delegate prosecutorial authority to him.  The D.C Circuit recognized precisely that conclusion when holding that the Acting Attorney General had the statutory authority to appoint Special Counsel Mueller.  *In re Grand Jury Investigation*, 916 F.3d at 1053-54.  Those decisions foreclose Trump's challenge to the statutory authority for the appointment here, and for good reason: 28 U.S.C. §§ 515(b) and 533 provide the relevant appointment authority, as text, history, and practice confirm.

### 1.     Precedent establishes the Attorney General's appointment authority

In *Nixon*, the Attorney General appointed a special prosecutor to investigate and prosecute offenses arising from the 1972 presidential election, empowering the prosecutor through an expansive regulation.  418 U.S. at 694 & n.8.  Acting under that regulation, the special prosecutor issued a subpoena to the President for the production of evidence, and the district court denied a motion to quash.  *Id.* at 687-88.  In the Supreme Court, President Nixon contended that the case was not justiciable because it constituted only an "intra-branch dispute" over evidence to be used in a prosecution, in which the President's decision was "final."  *Id.* at 692-93.  The Supreme Court rejected that contention, explaining that the special prosecutor acted pursuant to a proper delegation of the Attorney General's authority:

> Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government.  28 U.S.C. § 516.  It has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties.  28 U.S.C. §§ 509, 510, 515, 533.  *Acting pursuant to those statutes*, the

Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure.

*Id.* at 694 (emphasis added).  The Court held that, as long as the regulation delegating power to the special prosecutor remained in place, it bound the entire Executive Branch and required rejection of the President's argument that he could override the special prosecutor's determination to seek evidence through the subpoena.  *Id.* at 695-96.

In an effort to escape the force of this holding, Trump asserts (ECF No. 326 at 6-7) that *Nixon*'s discussion of the statutory provisions authorizing the delegation of power to the special prosecutor was dicta.  That is incorrect.  *Nixon* focused on the Attorney General's appointment power because the special prosecutor could not assert the Attorney General's authority "to conduct the criminal litigation of the United States Government" unless the prosecutor had been properly appointed.  418 U.S. at 694.  If the Attorney General lacked authority to appoint a special prosecutor, the regulation empowering that prosecutor to represent the sovereign interests of the United States in litigation would have lacked force.  Finding statutory authority for the appointment was thus central to the Court's conclusion that "[s]o long as this regulation [conferring authority on the special prosecutor] is extant it has the force of law."  *Id.* at 695.

Trump relatedly suggests that *Nixon* is not binding because it merely assumed that the relevant appointment authority existed.  But *Nixon* did not rest on an unstated assumption: it "expressly address[ed]" the statutory authority for the special prosecutor's appointment.  *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990).  Although President Nixon did not contest that statutory analysis, the Court's recognition of the Attorney General's appointment authority reflected its independent judgment and formed a necessary element of its holding.

In *In re Sealed Case*, the D.C. Circuit reached the same conclusion about the Attorney General's statutory authority.  829 F.2d at 55; *see id.* at 55 n.30 (relying on *Nixon*, 418 U.S. at 694-

96).  There, the Attorney General appointed independent counsel Lawrence Walsh to investigate Iran/Contra under 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515.  *See* 829 F.2d at 52-53.  Oliver North challenged a subpoena issued by the independent counsel's grand jury, arguing that the Attorney General's delegation was not "lawful."  *Id.* at 55.  The D.C. Circuit disagreed, finding clear authority to create an independent counsel:

> We have no difficulty concluding that the Attorney General possessed the statutory authority to create the Office of Independent Counsel: Iran/Contra and to convey to it the "investigative and prosecutorial functions and powers" described in 28 C.F.R. § 600.1(a) of the regulation.  The statutory provisions relied upon by the Attorney General in promulgating the regulation are 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515.

*Id*.  While noting that the provisions do not "explicitly authorize the Attorney General to create an Office of Independent Counsel virtually free of ongoing supervision," the Court "read them as accommodating the delegation at issue here."  *Id.*  In finding the power to "create" the independent counsel's office, *In re Sealed Case* necessarily found authority to "appoint" an independent counsel.  *See id.* at 56 ("The Attorney General's power of appointment extends only to the Department of Justice; hence the Office of Independent Counsel: Iran/Contra is 'within' the Department, though free of ongoing supervision by the Attorney General.").

As the D.C. Circuit more recently concluded, *see In re Grand Jury Investigation*, 916 F.3d at 1052-53, *Nixon* and the reasoning in *In re Sealed Case* determine the outcome here.  Those cases hold that 28 U.S.C. §§ 509, 510, 515, and 533 give the Attorney General the authority to appoint and delegate criminal law enforcement functions in particular matters to a special counsel.  Here, the Attorney General exercised that statutory authority to appoint the Special Counsel, whose mandate is, for these purposes, indistinguishable from those approved in *Nixon*, *In re Sealed Case*, and *In re Grand Jury Investigation*.

###### 2.     Multiple statutes establish the Attorney General's authority

###### a.     Statutory text grants the Attorney General power to appoint a special counsel

The plain text of two statutes, 18 U.S.C. §§ 515 and 533, empowers the Attorney General to appoint special counsels.  And the Attorney General relied on both statutes when appointing the Special Counsel here.  Appointment Order ¶ (introduction).

Section 515 gives the Attorney General authority to appoint "special attorneys" like the Special Counsel.  Section 515(b) empowers the Attorney General to "commission[]" attorneys who are "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General" or "special attorney[s]."  28 U.S.C. § 515(b).  "[S]pecially retained *under authority of the Department of Justice*" necessarily means specially retained by the Attorney General, who is head of the Department of Justice and vested with all of its functions and powers. *See* 28 U.S.C. §§ 503, 509.  Further, a commission is the "warrant or authority . . . issuing from the government . . . empowering a person or persons named to do certain acts, or to exercise jurisdiction, or to perform the duties and exercise the authority of an office."  H. Campbell Black, *A Dictionary of Law* 226 (1st ed. 1891); *see also Black's Law Dictionary* 327 (10th ed. 2014) (similar); *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 58 (2015) (Alito, J., concurring) ("to be an officer, the person should have sworn an oath and possess a commission").  As *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 157 (1803), recognized, "the constitutional power of appointment has been exercised . . . when the last act, required from the person possessing the power, has been performed.  This last act is the signature of the commission."  Section 515(b) thus allows the Attorney General to appoint special attorneys by retaining them and commissioning them to vest them with authority.

Section 515(a) further recognizes that the Attorney General can "specially appoint[]" attorneys "under law" and empower them to exercise, "when specifically directed by the Attorney General," all criminal (and civil) powers possessed by United States Attorneys.  28 U.S.C. § 515(a).  Congress thus specified not only that the Attorney General could appoint special attorneys under law, but also that he could give special attorneys extensive powers.  Trump provides no authority for his assertion (ECF No. 326 at 4) that the phrase "under law" requires that the attorney in question must have been appointed "pursuant to other statutory provisions."

Authority for the Attorney General's appointment power also comes from Section 533.  Section 533 specifically confirms that "[t]he Attorney General may appoint officials—(1) to detect and prosecute crimes against the United States."  28 U.S.C. § 533.  This description aligns perfectly with a Special Counsel, who combines the typical roles of law enforcement and prosecutors by both investigating and prosecuting crimes.  *See* 28 C.F.R. § 600.1.  In *Edmond*, the Supreme Court located the power to appoint Coast Guard judges—who were "inferior Officers"—in a "default statute" that allowed the Secretary of Transportation to "appoint and fix the pay of officers and employees of the Department of Transportation."  520 U.S. at 656-58, 666 (quoting 49 U.S.C. § 323(a)).  Section 533 is far more specific.

Trump offers two counterarguments.  First, he objects (ECF No. 326 at 5-6) that Section 533 refers to appointing "officials"—not "officers"—which can refer to a "mere employee, functionary, or agent."  *See United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 619 (D.D.C. 2018).  As noted, *see supra* n.1, Trump's argument on this point is inconsistent with his claim that the Special Counsel is an employee, not an officer.  But, in any event, "official" is a term that naturally encompasses officers.  The Supreme Court's *Lucia* opinion illustrates that point by stating that "[t]he Appointments Clause of the Constitution lays out the permissible

methods of appointing 'Officers of the United States,' a class of government *officials* distinct from mere employees." 585 U.S. at 241 (emphasis added). Many other cases employ the same usage of "official." *See, e.g., Ortiz v. United States*, 585 U.S. 427, 452-53 (2018); *Morrison*, 487 U.S. at 672; *Buckley*, 424 U.S. at 131; *United States v Eaton*, 169 U.S. 331, 343-44 (1898). And interpreting "officials" in Section 533 to include officers does not contradict Congress's use of the term "officer" in other statutes. *Cf. Concord*, 317 F. Supp. 3d at 619. Rather, as *Lucia* suggests, "official" is a generic term that covers both officers and employees. *See In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 644 (D.D.C. 2018); *see also, e.g.*, 18 U.S.C. § 201(a)(1) ("public official" includes "an officer or employee or person acting for or on behalf of the United States").

Second, Trump emphasizes (ECF No. 326 at 5-6) Section 533's placement in a chapter titled "Federal Bureau of Investigation." But "the title of a statute cannot limit the plain meaning of the text" and matters "[f]or interpretive purposes" "only when it sheds light on some ambiguous word or phrase." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (brackets, ellipsis, and alterations omitted). And there is no textual hint that Section 533(1) is limited to FBI officials. To the contrary, Section 533(1) allows the appointment of officials "to detect *and prosecute* crimes"; and "only attorneys prosecute crime." *In re Grand Jury Investigation*, 315 F. Supp. 3d at 652-53; *see also, e.g.*, 28 U.S.C. § 547(1) (U.S. Attorney shall "prosecute for all offenses against the United States" in his or her district).

Trump further argues (ECF No. 326 at 6) that subsections (2) through (4) of Section 533 suggest that Section 533(1) covers only FBI officials. Those subsections allow the appointment of officials to (2) protect the President, (3) protect the Attorney General, and (4) conduct other investigations on official matters. But like subsection (1), the other subsections give no indication

that they are limited to the FBI.  Indeed, district courts have read Section 533 to allow appointment of Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") officials.  *See United States v. Hasan*, 846 F. Supp. 2d 541, 546 n.7 (E.D. Va. 2012); *United States v. Fortuna*, No. 12-cr-636, 2013 WL 1737215, at *2 n.8 (D.N.J. Apr. 22, 2013).  But if Section 533 allows the appointment of ATF officials, it clearly is not limited to FBI officials, and Trump's efforts to cabin the unambiguous text of Section 533(1) fail.

> **b.** **Section 515's history confirms that it provides appointment power**

The history of Section 515 removes any question that it authorizes the Attorney General to appoint special attorneys such as the Special Counsel.  Another court has described the statutory history in detail.  *See In re Grand Jury Investigation*, 315 F. Supp. 3d at 612-17, 654-58.  For present purposes, that history establishes four significant propositions that undermine Trump's arguments.

First, although Title 28 of the U.S. Code now groups Section 515(a) and (b) together, Congress originally enacted their predecessors decades apart, in separate laws.  The precursor to Section 515(b) came first, enacted in 1870 in the statute that created the Department of Justice.  *See* An Act to establish the Department of Justice, ch. 150, § 17, 16 Stat. 162, 164-165 (1870).  The 1870 Act centralized the federal government's legal work in the Department of Justice and— in response to abuses in the hiring of outside counsel as special attorneys—limited the circumstances in which the Attorney General could pay them.  *Id.* §§ 3, 17, 16 Stat. at 162, 164-165; *see In re Persico*, 522 F.2d 41, 57-58 (2d Cir. 1975).  As the Supreme Court later explained, however, the 1870 Act limited the Attorney General's discretion to retain special attorneys by restricting their compensation, while leaving it to the Attorney General "to determine whether the public interests required the employment of special counsel."  *United States v. Crosthwaite,* 168

U.S. 375, 379-80 (1897); *see also United States v. Winston,* 170 U.S. 522, 524-25 (1898) (the Attorney General may, "if he deems it essential, employ special counsel").

Second, the statute now codified as Section 515(a) was enacted in 1906, in order to validate a special counsel's authority to conduct grand jury proceedings, after the district court in *United States v. Rosenthal,* 121 F. 862 (C.C.S.D.N.Y. 1903), ruled that a special assistant to the Attorney General could not do so. Congress responded with a law whose "express purpose . . . was to overrule the broad holding in *Rosenthal*," explicitly giving "specially-retained outside counsel" all of the powers of a U.S. Attorney. *In re Persico*, 522 F.2d at 59. The House Report accompanying the 1906 Act explained that "[t]here can be no doubt of the advisability of permitting the Attorney-General to employ special counsel in special cases." H.R. Rep. No. 2901, 59th Cong., 1st. Sess. 2 (1906). The purpose of the new law was to overrule *Rosenthal* and restore a special counsel's power to appear before the grand jury: "It seems eminently proper that such powers and authority be given by law. It has been the practice to do so in the past and it will be necessary that the practice shall continue in the future." *Id.* The law would have had no effect if the Attorney General could not already retain special counsel—which would contradict the presumption that Congress intends an amendment "to have real and substantial effect." *Ross v. Blake,* 578 U.S. 632, 641-42 (2016) (internal quotation marks omitted).

Third, subsequent enactments confirm the Attorney General's appointment authority. In 1930, Congress amended the precursor to Section 515(b) (then codified at 5 U.S.C. § 315) to allow the Attorney General to designate "special attorneys" in addition to "special assistants to the Attorney General." *See* Act of Apr. 17, 1930, ch. 174, Pub. L. No. 71-133, 46 Stat. 170. Congress returned to the statute again in 1948, simplifying its wording. *See* Act of June 25, 1948, Pub. L. No. 80-773, § 3, 62 Stat. 869, 985-986. Despite the widespread use of special counsels before

these enactments (as described in the next paragraph), Congress never questioned the Attorney General's power of appointment.  To the contrary, the House Report accompanying the 1930 amendment acknowledged that power.  H.R. Rep. No. 229, 71st Cong., 2d. Sess. 1 (1930).

Fourth, drawing on the authority to retain counsel originally conferred in 1870, past Attorneys General have "made extensive use of special attorneys."  *In re Persico*, 522 F.2d at 54. These instances—involving appointments by Attorneys General under Presidents Garfield, Theodore Roosevelt, Truman, Kennedy, Nixon, Carter, George H.W. Bush, Clinton, and Trump— span nearly 140 years and include some of the most notorious scandals in the Nation's history, including Watergate.  *See, e.g.*, Brett M. Kavanaugh*, The President and the Independent Counsel*, 86 Geo. L.J. 2133, 2142-44 (1998) (noting the "deeply rooted tradition of appointing an outside prosecutor to run particular federal investigations of executive branch officials").  Congress has also long demonstrated its understanding that the Attorney General has authority to appoint special counsels by repeatedly appropriating funds for the Attorney General to compensate them.  *See, e.g.*, Act of Aug. 30, 1890, ch. 837, 26 Stat. 371, 409-410; Act of Mar. 3, 1891, ch. 542, 26 Stat. 948, 986; Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181-1182; Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 903-904; Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367, 1412; Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305, 317.  And published opinions of the Attorney General, for more than a century, have recognized that authority.  *See Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 n.3 (1986); *Application of Conflict of Interest Rules to the Conduct of Government Litigation by Private Attorneys*, 4B Op. O.L.C. 434, 442-443 & n.5 (1980) (Appendix); *Naval Court-Martial*, 18 Op. Att'y Gen. 135, 136 (1885).  That history amply confirms the Attorney General's authority to appoint the Special Counsel here.

**B.     The Department of Justice Funded the Special Counsel's Office from the Correct Appropriation**

Trump next contends (ECF No. 326 at 7-12) that the Special Counsel is not lawfully funded.  That contention lacks merit.

## III.     The text of the permanent appropriation applies here

When paying the Special Counsel's expenses, the Department of Justice has relied on a "permanent, indefinite appropriation . . . within the Department of Justice to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law."  101 Stat. 1329-9.  The Special Counsel is an "independent counsel" as that term was used in the permanent appropriation, and he was "appointed pursuant to . . . other law."  *Id.*

An "independent counsel" is "[a]n attorney hired to provide an unbiased opinion about a case or to conduct an impartial investigation."  *Black's Law Dictionary* (11th ed. 2019).  That is the role served by the Special Counsel here.  The Special Counsel was retained from outside of the Department to "ensure a full and thorough investigation" of certain sensitive matters.  Appointment Order ¶ (introduction); *see* 28 C.F.R. § 600.4.  While he remains subject to Attorney General direction and supervision, he also retains "a substantial degree of independent decisionmaking," Office of Special Counsel, 64 Fed. Reg. 37,038, 37,039-37,040 (July 9, 1999), and is not part of the regular Department chain of command or "subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b).

The Special Counsel was also "appointed pursuant to the provisions of 28 U.S.C. 591 et seq. *or other law.*" 101 Stat. 1329-9 (emphasis added).  While he was not appointed pursuant to 28 U.S.C. 591 *et seq.* (Title VI of the Ethics in Government Act), the Special Counsel was appointed pursuant to statutory authorities that permit the Attorney General to retain special

attorneys to conduct investigations and prosecutions.  *See supra* at 9-12 (discussing 28 U.S.C. §§ 515 and 533).  By any definition, those statutes are "other law."  *See In re Grand Jury Investigation*, 916 F.3d at 1053-54 (holding that "Congress has 'by law' vested appointment" in the Attorney General through the statutes used to appoint Special Counsel Mueller).  The Attorney General also applied the Special Counsel regulation (28 C.F.R. § 600), which, while in effect, has "the force of law."  *Concord*, 317 F. Supp. 3d at 608 (quoting *Nixon*, 418 U.S. at 695 (discussing Watergate Special Prosecutor regulation)).

To the extent Trump's recitation of the Ethics in Government Act's history (ECF No. 326 at 8) and his argument that the 1999 Special Counsel regulations "stripped prosecutorial independence" available under that Act (*id.* at 11) are meant to imply that the permanent appropriation is limited to an Independent Counsel appointed under the Ethics in Government Act or someone in the exact same role, he is wrong.  The statutory text is not so limited.  In fact, in the very same section, the statute refers both to a (capitalized) "Independent Counsel," under the Ethics in Government Act and, in the permanent appropriation, to a (lowercase) "independent counsel." 101 Stat. 1329-9.  This contemplates that the term "independent counsel" in the permanent appropriation refers to the generic category of independent investigators rather than the particular statutory Independent Counsel. *See United States v. Stone*, 394 F. Supp. 3d 1, 19-20 (D.D.C. 2019). It would also be anomalous to identify separately some "other law," that is essentially "the same" as the law that appears right before it (*i.e.*, the Ethics in Government Act) in the same sentence. An attorney can be independent in different ways.  While the Special Counsel does not have the same level of independence as the statutory Independent Counsel, he was brought in from outside the Department, functions independently of many Department structures and chains of command,

is not subject to "day-to-day supervision," 28 C.F.R. § 600.7(b), and is to be given deference by the Attorney General in supervising his work, *see id.*

> 1. **The permanent appropriation's history alongside longstanding practice confirms its applicability**

The history of the permanent appropriation removes any doubt that the Department correctly relies on it to fund the Special Counsel's Office. That history shows that when passing the permanent appropriation, Congress contemplated a broader category of "independent counsel" than that created in the Ethics in Government Act, including attorneys whose formal independence was established only by regulation. The history also shows that Congress would have understood the phrase "other law" as including the same statutes that the Attorney General cited when appointing the Special Counsel here. And complementing that history is longstanding Department practice using the same appropriation for special counsels appointed under the same statutory authority relied on here—a practice to which Congress has acceded for years.

For nearly 140 years, Attorneys General have used many of the same statutory authorities used to appoint the Special Counsel (and those statutes' predecessors) to retain special attorneys for sensitive investigations. *See, e.g.*, *In re Persico*, 522 F.2d at 54. These instances include some of the most infamous scandals in the Nation's history. *See supra* at 14. For example, in 1973, President Nixon's Attorneys General famously appointed Archibald Cox, and then Leon Jaworski, as special prosecutors for Watergate. U.S. Dep't of Justice Order No. 518-73 (May 31, 1973) (appointing Cox); *First Session on Special Prosecutor: Hearings before the S. Comm. on the Judiciary* Pt. 2, 93rd Cong., 1st Sess., at 449-452 (1973) (testimony of Robert Bork). Many specially appointed attorneys derived independence from operating outside of the chain of command and from assurances made by Presidents and Attorneys General. The Watergate Special Prosecutors were also protected by Department of Justice regulations with certain removal

protections.  *See* 38 Fed. Reg. 14,668 (June 4, 1973) (Cox); *Nixon*, 418 U.S. at 694-96, n.8-10

(Jaworksi).  Although the Attorney General could "amend or revoke [a] regulation defining the

Special prosecutor's authority," "so long" as the regulation was "extant," it had "the force of law"

and the Department was "bound by it."  *Nixon*, 418 U.S. at 695-96.

In 1978, in the wake of Watergate, Congress passed the Ethics in Government Act, Pub. L.

No. 95-521, 92 Stat. 1867, establishing what was initially called the "Special Prosecutor" and later

relabeled the "Independent Counsel."  Questions arose about the constitutionality of that statutory

framework.  By 1987, there was active litigation about these constitutional issues.  *See, e.g.*,

*Morrison*, 487 U.S. at 668 (describing the history of one such case).  In response to challenges

arising from the Iran-Contra investigation, the Attorney General executed a parallel appointment

of statutory Independent Counsel Lawrence Walsh under 5 U.S.C. § 301 and 28 U.S.C. §§ 509,

510, and 515, created a regulatory scheme, and described that parallel appointment as also

establishing an "independent counsel."  Offices of Independent Counsel; General Powers and

Establishment of Independent Counsel—Iran/Contra, 52 Fed. Reg. 7270 (Mar. 10, 1987) (codified

at 28 C.F.R. pt. 600 (1988) ("General Powers Of Independent Counsel") & pt. 601 (1988)

("Jurisdiction of the Independent Counsel: Iran/Contra")); *see also In re Sealed Case*, 829 F.2d at

51-52, 55-56.  The Attorney General effected a similar appointment in 1987 of James McKay to

investigate certain allegations of illicit lobbying and conflicts of interest.  28 C.F.R. § 602.1

("Jurisdiction of the Independent Counsel: In re Franklyn C. Nofziger"); *see* 52 Fed. Reg. 22,439

(June 12, 1987); 52 Fed. Reg. 35,543-01 (Sept. 22, 1987); *see also Implementation of the U.S.*

*Dep't of Justice's Special Counsel Regulation, Hearing Before Subcomm. on Commercial &*

*Admin. Law, of the H. Comm. on the Judic.*, 110th Cong., 2d Sess 9 (Feb. 26, 2008) (statement of

Carol Elder Bruce) (noting that "the Department of Justice was urging existing Independent

Counsel" to have "'parallel appointments'" under the same "'other law' provision[s]" such as 28 U.S.C. § 515 to "ensure the continuity of their investigations, when the Independent Counsel statute was under constitutional attack").

It was against this background that on December 22, 1987, Congress enacted the permanent appropriation "within the Department of Justice to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." 101 Stat. 1329-9. At that time, the statutory Independent Counsel framework was under attack, and Congress could not assume either that the statute itself or the degree of independence it afforded would survive. But the Department of Justice was making parallel appointments under the same statutory authority used here, with independence protected by Department regulations. Against that background, Congress would have understood the terms "independent counsel" and "other law" as the Government understands them here, and would have intended that special attorneys appointed by the Attorney General and provided with certain independence could be funded from the permanent appropriation.

The propriety of the use of the permanent appropriation to fund the Special Counsel is confirmed by longstanding Department practice. *See Stone*, 394 F. Supp. 3d at 22. The Department has relied on the permanent appropriation to fund several special and independent counsels. *See, e.g.*, Independent Counsel: In re Madison Guaranty Savings & Loan Association, 59 Fed. Reg. 5321 (Feb. 4, 1994) (codified at 28 C.F.R. pts. 600 & 603) (appointing Robert Fiske to conduct initial investigation of Whitewater real estate transactions); GAO, *Independent Counsel Expenditures for the Six Months Ended September 30, 1995* at 5 and n.2 (March 1996) (B-271128); Budget of the U.S. Government Fiscal Year 1996, Appx. at 637 (funding Fiske); Attorney General Order No. 2256-99 (Sept. 9, 1999) (appointing Jack Danforth to investigate a raid of the Branch

Davidian compound in Waco, Texas); GAO, *Independent Counsel Expenditures for the Six Months Ended September 30, 1999*, at 6 (March 2000) (funding Danforth); *United States v. Libby*, 429 F. Supp. 2d 27, 28-29, 41 (D.D.C. 2006) (describing appointment of Patrick Fitzgerald to investigate the leak of Valerie Plame's identity as a covert CIA officer); GAO, *Special Counsel and Permanent Indefinite Appropriation,* B-302582 (Sept. 30, 2004) (funding Fitzgerald); Attorney General Order No. 4878-2020 (appointing John Durham to investigate intelligence or counter-intelligence activities directed at the 2016 presidential campaigns and the Trump administration); U.S. Dep't of Justice, *Special Counsel's Office-Durham, Statement of Expenditures: April 1, 2022 through September 30, 2022*, at 4 (noting that funding for Durham came from the permanent appropriation). Analyzing the funding for Fitzgerald's appointment, the GAO, "an independent agency within the legislative branch" that serves Congress, *Bowsher v. Merck & Co.*, 460 U.S. 824, 844 (1983), stated that it "agree[d] with the Department that the same statutory authorities that authorize the Attorney General (or Acting Attorney General) to delegate authority to a U.S. Attorney to investigate and prosecute high ranking government officials are 'other law' for the purposes of authorizing the Department to finance the investigation and prosecution from the permanent indefinite appropriation."  GAO, *Special Counsel and Permanent Indefinite Appropriation*, B-302582, 2004 WL 2213560, at *4 (Comp. Gen. Sept. 30, 2004).  That history likewise demonstrates that "Congress was aware of, and not troubled by, the fact that the Department used the permanent appropriation to fund special counsel investigations."  *Stone*, 394 F.3d at 22 n.16.

### 2.      Trump's claim would not support dismissal

Trump's funding arguments not only lack merit, but also would not justify dismissal of the Superseding Indictment that was properly returned by the grand jury.  Although he suggests (ECF No. 326 at 10) that the permanent appropriation is "[n]ot [a]vailable" to fund the Special Counsel's Office, he does not dispute that the Department of Justice was able to pay for the Special Counsel's

expenses and could have drawn on other appropriations to do so.  *See generally* 28 C.F.R. § 600.8(a)(1) ("A Special Counsel shall be provided all appropriate resources by the Department of Justice.").  Trump's argument therefore concerns only whether the Department relied on the correct appropriation or should have paid certain expenses and salaries for the Special Counsel's Office using a different appropriation.  But he cites no case where a defendant was permitted to raise that kind of argument in a motion to dismiss an indictment, much less a case where such relief was granted.  Courts generally adjudicate claims of legal error only when the asserted error caused the litigant's injury, and parties normally cannot invoke legal provisions that are not intended to protect their rights and interests.  *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013) ("injuries are not fairly traceable" to a statute where parties likely would have engaged in the same activity absent that statute).  But the indictment here was not caused by the particular identity of the appropriation that the Department relied on when funding the Special Counsel's Office.  Thus, in criminal cases, under a rule that is often called "standing" as "a useful shorthand," "a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search."  *Byrd v. United States*, 584 U.S. 395, 410 (2018); *see Wong Sun v. United States*, 371 U.S. 471, 492 (1963) (seizure "invaded no right of privacy of person or premises which would entitle [defendant] to object").  And, as arises more commonly in civil cases under what used to be called "prudential standing," a claimant's alleged injury must fall within the "zone of interests protected by the law invoked."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-32 (2014).  But the rules governing where funds come from—as opposed to whether funds may be used at all—do not exist for the benefit of individuals who may be affected, downstream, by the expenditure of those funds.  *Cf. Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 925 (D.C. Cir. 1989) (suggesting that a defense contractor cannot assert

a claim based on "an appropriations law in order to challenge the Defense Department's decision to purchase one type of weapon rather than another" because the "defense appropriation is not passed in order to benefit defense contractors, benefit them though it may"); *Moore v. Navy Pub. Works Ctr.*, 139 F. Supp. 2d 1349, 1355 (N.D. Fla. 2001) (limit on use of appropriated funds intended to limit costs, not to protect employees).[2]

Trump's reliance (ECF No. 326 at 12) on *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), is misplaced. *McIntosh* concerned a statute that "expressly prohibit[ed] DOJ from spending funds" on certain marijuana-related enforcement actions. *Id.* at 1173-75; *see id.* at 1177-79. Before that statute was passed, the government initiated several prosecutions that arguably fell within that category. *Id.* at 1168-70, 1179. With that bar on government spending in place, several defendants moved to dismiss the indictments or to enjoin the ongoing expenditure of funds in violation of that spending restriction. *Id.* at 1168-72. Contrary to Trump's suggestion, the Ninth Circuit took "no view on the precise relief required and le[ft] that issue to the district courts in the first instance." *Id.* at 1172 n.2; *see id.* at 1179. No indictments were dismissed based on the funding source for the prosecutors. The only issue was whether courts should permit the ongoing expenditure of funds in violation of the express prohibition. *See id.* at 1172-73, 1174-75. Here, by contrast, there is no prohibition similar to the one at issue in *McIntosh*, so the case "does not advance" Trump's claim. *See Stone*, 394 F. Supp. 3d at 19 n.13.

---

[2] Trump seeks to constitutionalize his argument by alleging that the Department violated the "Appropriations Clause," which states that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. The label placed on his theory has little effect on the available remedy. But his allegation likely could not amount to a constitutional violation because he does not dispute that the Department had authority to spend funds on the Special Counsel's investigation, and only disputes whether the Department properly relied on the correct appropriation when doing so. *See, e.g.*, *OPM v. Richmond*, 496 U.S. 414, 424 (1990) ("the payment of money from the Treasury must be authorized by *a statute*") (emphasis added).

In any event, even if there were any technical error here regarding the funding source, Trump suffered no prejudice.  *See* Fed. R. Crim. P. 52(a).  As a general matter, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  This requirement ensures that the substantial "societal costs" that result from dismissing a grand jury's indictment will not be imposed unjustifiably.  *Id.* at 255.  The identity of the particular appropriation from which the government drew funds does not affect Trump's "substantial rights," Fed. R. Crim. P. 52(a), or otherwise prejudice him.  Thus, even if the Department of Justice should have for the first time in 40 years funded the Special Counsel from a different appropriation, Trump suffered no prejudice and is entitled to no relief because the Department could readily have funded the Special Counsel from other appropriations that were available.  *See* 28 C.F.R. § 600.8(a)(1) ("A Special Counsel shall be provided all appropriate resources by the Department of Justice.").

## IV.    Conclusion

For the foregoing reasons, the Court should deny Trump's motion to dismiss the Superseding Indictment on the ground that the Special Counsel lacks authority or lawful funding to prosecute this case.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:      /s/ *Jay I. Bratt*
     Jay I. Bratt
     Counselor to the Special Counsel
     Special Bar ID #A5502946
     950 Pennsylvania Avenue, N.W.
     Washington, D.C. 20530

     David V. Harbach, II
     Assistant Special Counsel
     Special Bar ID #A5503068

     James I. Pearce
     Assistant Special Counsel
     Special Bar ID #A5503077

March 7, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt