**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON(s)**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA, and**
**CARLOS DE OLIVEIRA,**

      Defendants.

_____/

**GOVERNMENT'S OPPOSITION TO DONALD J. TRUMP'S**
**MOTION TO DISMISS COUNTS 1-32 BASED ON**
**PRESIDENTIAL IMMUNITY**

**TABLE OF CONTENTS**

I.    Background ................................................................................................... 2

II.   Discussion ..................................................................................................... 4

    A.    The Indictment Does Not Base Criminal Liability on Any Official Act ...................... 5

    B.    A Former President Has No Immunity from Federal Criminal Prosecution ............... 6

        1.    Separation-of-powers principles do not support absolute criminal immunity
            for a former President ........................................................................ 7

        2.    The Impeachment Judgment Clause does not make Senate conviction a
            prerequisite to criminal prosecution ..................................................... 12

        3.    Neither constitutional history, practice, or related doctrines support absolute
            criminal immunity ............................................................................ 15

        4.    *Marbury v. Madison* and its progeny do not support absolute criminal
            immunity ......................................................................................... 18

    C.    Trump's Absolute-Immunity-Based Motion to Dismiss Is Frivolous ....................... 20

III.  Conclusion ................................................................................................... 23

Defendant Donald J. Trump moves to dismiss Counts 1-32 in the Superseding Indictment on the basis that a former President enjoys immunity from criminal prosecution for official acts undertaken while President and that his purported immunity extends so far as to shield him from prosecution for acts that he undertook after he left office.  ECF No. 324.  That frivolous claim is offered for one transparent purpose—to delay the trial—and it fails for two independent reasons.

First, the Superseding Indictment does not charge Trump for *any* acts that he undertook as President, let alone an official presidential act.  The Superseding Indictment alleges that even though Trump lost the authority to possess documents containing national defense information after his term as President ended, he nonetheless willfully retained such documents *after* his Presidency, including by conspiring with others to conceal his ongoing, unlawful possession from his own attorneys, federal investigators, and the grand jury.  Every criminal charge in the Superseding Indictment is based upon conduct in which Trump engaged after he left office.  Even if a former President could claim some immunity from criminal prosecution for official acts—and he cannot—Trump could not benefit from any such immunity in this case.

Second, although the Court need not reach this issue since it has no connection to the Superseding Indictment, Trump's novel immunity argument fails on the merits.  Trump asserts that he possesses absolute immunity from criminal prosecution for what he contends was official presidential conduct.  That categorical claim of absolute immunity for a former President conflicts with constitutional text, separation-of-powers principles, history, and Supreme Court precedent.  *See generally United States v. Trump*, 91 F.4th 1173 (D.C. Cir. 2024).  It would also contravene the fundamental principle that "[n]o man in this country is so high that he is above the law." *United States v. Lee*, 106 U.S. 196, 220 (1882).

Trump's immunity claim here is so wholly without merit that it is difficult to understand it except as part of a strategic effort for delay.  Non-frivolous immunity claims are typically subject to interlocutory review, and district court proceedings are stayed pending the resolution of the appeal.  Trump knows all this.  But his claim is so lacking in merit that a groundless appeal should not be permitted to have that effect.  Rather than countenance such dilatory tactics, the Court should deny the dismissal motion and certify Trump's immunity claim as frivolous so that he cannot use this meritless argument—disconnected from the actual charges—as the basis for an interlocutory appeal aimed at delaying trial.

## I.     Background

Following an extensive investigation, the Government presented evidence to the grand jury, which returned a 38-count Indictment against Trump and codefendant Waltine Nauta on June 8, 2023, ECF No. 3, followed by a 42-count Superseding Indictment against Trump, Nauta, and codefendant Carlos De Oliveira on July 27, 2023, ECF No. 85.  The Superseding Indictment alleges that Trump knew in the summer of 2021—more than six months after the end of his Presidency—that he possessed classified information.  *See* ECF No. 85 ¶¶ 33-37.  Despite multiple requests from the National Archives and Records Administration ("NARA"), Trump took nearly a year to provide just 15 boxes of his missing records, falsely suggesting that there were no others.  *Id.* ¶¶ 38-49.  Those 15 boxes of materials that NARA received from Trump on January 17, 2022, contained almost 200 documents with classification markings.  *Id.*

After the FBI initiated a criminal investigation and a grand jury issued a subpoena in May 2022 seeking the production of all documents with classification markings, attorneys working on Trump's behalf provided on June 3, 2022, an additional 38 documents bearing classification markings as well as a certification that all boxes moved from the White House to Mar-a-Lago had

been subjected to a "diligent search" and that "[a]ny and all responsive documents accompan[ied]" the certification. *Id.* ¶¶ 65-71. That was not true because Trump had concealed boxes of documents from his attorney's review: Trump's attorney searched for responsive documents in a storage room at Mar-a-Lago, but in the weeks before June 3, Nauta—at Trump's direction—took out approximately 64 boxes from that room and later, with De Oliveira's assistance, put in only approximately 30 boxes. *Id.* ¶¶ 56-63. Later in June 2022, a grand jury subpoena requested surveillance camera footage from locations including the area at Mar-a-Lago adjacent to the storage room; after De Oliveira spoke with Trump by phone, both he and Nauta contacted the Director of Information Technology at Mar-a-Lago (identified in the Superseding Indictment as Trump Employee 4), with De Oliveira telling Trump Employee 4 that "the boss" wanted the server containing security camera footage to be deleted. *See id.* ¶¶ 74-85. On August 8, 2022, the FBI executed a court-authorized search warrant at Mar-a-Lago and recovered an additional 102 documents with classification markings. *Id.* ¶¶ 88-90.

In the Superseding Indictment, counts 1-32 charge Trump with the unauthorized possession and willful retention of documents relating to the national defense, in violation of 18 U.S.C. § 793(e). ECF No. 85 ¶¶ 92-93. As the Superseding Indictment makes clear, those counts begin at the termination of his presidency, when he was no longer authorized to possess the classified documents. *See id.* ¶ 93 (charging violations that began on January 20, 2021, and continued until either January 17, 2022 (the date NARA received 15 boxes from Trump), June 3, 2022 (the date that Trump attorneys provided a certification and 38 documents with classified markings), or August 8, 2022 (the date of the search of Mar-a-Lago)). The additional counts charging Trump likewise apply only to conduct undertaken after his Presidency. *See id.* ¶¶ 94-97 (conspiracy to obstruct justice by hiding and concealing classified documents taken from the White House, in

violation of 18 U.S.C. § 1512(k), between May and August 2022); *id.* ¶¶ 98-99 (knowingly engaging in misleading conduct or corrupt persuasion toward Trump's attorney with intent to conceal records and documents from the grand jury, in violation of 18 U.S.C. § 1512(b)(2)(A), between May and August 2022); *id.* ¶¶ 100-01 (corruptly concealing boxes of documents from Trump's attorney, in violation of 18 U.S.C. § 1512(c)(1), between May and August 2022); *id.* ¶¶ 102-03 (knowingly concealing documents from an FBI investigation and causing a false certification to be submitted to the FBI, in violation of 18 U.S.C. § 1519, between May and August 2022); *id.* ¶¶ 104-05 (scheme to conceal Trump's continued possession of documents with classification marking, in violation of 18 U.S.C. § 1001(a)(1), between May and August 2022); *id.* ¶¶ 106-08 (causing a false certification to be made by a Trump attorney concerning compliance with the May 2022 grand jury subpoena, in violation of 18 U.S.C. § 1001(a)(2), on June 3, 2022); *id.* ¶¶ 113-14 (knowing corrupt persuasion of Trump Employee 4 to delete security camera footage at Mar-a-Lago, in violation of 18 U.S.C. § 1512(b)(2)(B), between June and August 2022); *id.* ¶¶ 115-16 (corrupt attempt to alter or destroy security camera footage, in violation of 18 U.S.C. § 1512(c)(1), between June and August 2022).

## II.    Discussion

Trump claims absolute immunity from federal criminal prosecution based on any conduct that falls within the outer perimeter of his official duties as President unless Congress has previously impeached and convicted him for the same conduct.  That claim is unfounded, as the D.C. Circuit recently held.  *See United States v. Trump*, 91 F.4th 1173 (D.C. Cir. 2024).  But wholly apart from that claim's lack of merit, it has no relevance where, as here, a former President is not charged with crimes for any acts, official or otherwise, undertaken while in office.  That circumstance makes it unnecessary for the Court to address Trump's novel legal argument.  If the

Court reaches the merits, it should conclude that Trump's immunity claim finds no support in constitutional text, separation-of-powers principles, history, or logic. Because Trump advances an entirely meritless claim that could not provide him any relief even if correct, the Court should deny his immunity claim and certify it as frivolous so that Trump may not seek further delay through an interlocutory appeal.

### A.    The Indictment Does Not Base Criminal Liability on Any Official Act

Trump's central claim is that a former President is immune from criminal prosecution for any official act carried out during his Presidency. That claim is deeply flawed. *See infra* at 6-20. It is also entirely inapplicable in this case because the charged criminal conduct covers only Trump's post-presidential acts. The Superseding Indictment acknowledges that Trump "had lawful access to the most sensitive classified documents and national defense information" while he was President. ECF No. 85 ¶ 1. Counts 1-32 therefore charge that Trump willfully retained such documents containing only *after* he served as President. *See id.* ¶ 93.[1]

Despite this fundamental flaw in his immunity claim, Trump contends (ECF No. 324 at 16) that his "alleged decision to designate records as personal under the [Presidential Records Act ("PRA")] and cause them to be removed from the White House" constitutes an official presidential act that "underlies Counts 1 through 32." That contention is wrong. For one, the Superseding Indictment nowhere alleges that Trump decided to designate records as "personal" under the PRA, and his dismissal claim is limited only to the allegations charged in the Superseding Indictment, which must be taken as true for purposes of his pretrial dismissal motion. *See United States v.*

---

[1] Trump does not argue that the remaining counts, which allege crimes based on obstruction of justice and concealment beginning in May 2022, more than a year after the end of his Presidency, are precluded by his immunity claim.

*Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).  The Superseding Indictment thus does not charge Trump with a crime for any acts, let alone official acts, that he took as President.

Moreover, whether Trump designated records that he removed from the White House as "presidential" or "personal" or gave them no designation at all is irrelevant to the charged criminal violations under Section 793(e).  As the Government has explained in more detail elsewhere, *see* ECF No. 373 at 5-12, the designation of records under the PRA as "presidential" or "personal" in fact bears no relevance to the distinct question of whether the Superseding Indictment adequately alleges violations of Section 793(e).  To prove a violation of that statute, the Government must establish that between the end of his Presidency and, depending on the count, January 17, 2022, June 3, 2022, or August 8, 2022, Trump had unauthorized possession of documents containing national defense information; that he willfully retained those documents; and that he failed to deliver them to a person entitled to receive them. 18 U.S.C. § 793(e).  However he designated or did not designate the records, he is not charged with a crime for that act and it provides no basis for an immunity claim.  Because Trump cannot identify any official presidential act charged as criminal conduct in the Superseding Indictment, the Court need not reach the merits of his presidential immunity claim.

**B.      A Former President Has No Immunity from Federal Criminal Prosecution**

Trump's immunity claim fails not only because it has no conceivable bearing on the charges in the Superseding Indictment, but also because a former President cannot claim categorical and absolute immunity from criminal prosecution for any and all official acts.

The President "occupies a unique position in the constitutional scheme."  *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982).  The Constitution vests the "executive Power" in the President, *id.* (quoting U.S. Const. art. II, § 1), and entrusts him with supervisory and policy duties

"of utmost discretion and sensitivity," *id.* at 750.  The President is "the only person who alone composes a branch of government." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2034 (2020). The President's duties, however, do not operate in a realm without law.  They exist within a framework of separated powers in which Congress makes laws, U.S. Const. art. I; the President "shall take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3; and the Article III courts exercise the judicial power to "say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

While a sitting President has temporary immunity from prosecution, an individual who has served as President of the United States, but is no longer in office, may face investigation, indictment, trial, and, if convicted, punishment for conduct committed during the Presidency.  No court has ever alluded to the existence of absolute criminal immunity for former Presidents, and legal principles, historical evidence, and policy rationales demonstrate that once out of office, a former President is subject to federal criminal prosecution like other citizens.  A contrary rule would violate the fundamental principle that no one in this country, not even the President, is above the law.

1.    **Separation-of-powers principles do not support absolute criminal immunity for a former President**

When constitutional text does not directly resolve a separation-of-powers issue implicating Executive Branch functions, judicial analysis requires assessing (1) whether a congressionally imposed limitation on Presidential action "prevents the Executive Branch from accomplishing its constitutionally assigned functions," and (2) if the law has that effect, "whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977); *see also Fitzgerald*, 457 U.S. at 754 ("balanc[ing] the constitutional weight of the interest to be served [by an exercise of

jurisdiction over the President] against the dangers of intrusion on the authority and functions of the Executive Branch"); *United States v. Nixon*, 418 U.S. 683, 707 (1974) (weighing Executive Branch interests in confidential communications against "the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions").

The Framers did not provide any explicit textual source of immunity to the President. "The text of the Constitution explicitly addresses the privileges of some federal officials, but it does not afford the President absolute immunity." *Trump*, 91 F. 4th at 1201 (quoting *Trump v. Vance*, 140 S. Ct. 2412, 2434 (2020) (Thomas, J., dissenting)). In *Fitzgerald*, the Supreme Court held that Presidential immunity from civil damages actions is a "functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers." 457 U.S. at 749. In the present context, a weighing of the same considerations examined in *Fitzgerald* results in the opposite conclusion: Trump's claim of absolute immunity from federal criminal prosecution would harm, rather than promote, the separation of powers.

*Fitzgerald*'s concern that potential exposure to private civil damages actions would chill a President's decision-making, to the detriment of the vigorous exercise of executive authority, does not apply to the context of federal criminal prosecution. In contrast to the unchecked potential for myriad suits from private citizens, federal criminal prosecutions are conducted by the Executive Branch itself, under the supervision of the Attorney General acting through professional prosecutors appointed "to assist him in the discharge of his duties." *Nixon*, 418 U.S. at 694. "The decision to prosecute a criminal case . . . is made by a publicly accountable prosecutor . . . under an ethical obligation, not only to win and zealously to advocate for his client but also to serve the cause of justice." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386 (2004). The government's actions are therefore afforded a presumption of regularity "in the absence of clear evidence to the

contrary." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted).  No evidence of abusive federal prosecutions of former Presidents exists, and inherent checks in the Executive Branch itself guard against any such breakdown in our criminal justice system.

Several additional structural constraints further limit the potential for abusive prosecutions of former Presidents.  Federal felony prosecutions must be initiated by a grand jury, *see* U.S. Const. amend. V, which is "a constitutional fixture in its own right" and "serv[es] as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992) (citation omitted).  Grand juries are "prohibited from engaging in arbitrary fishing expeditions and initiating investigations out of malice or an intent to harass." *Vance*, 140 S. Ct. at 2428 (citation and internal quotation marks omitted).  Article III courts stand ready to weed out improper prosecutions, *id.*, and can be expected to review any claims by a former President "meticulous[ly]." *Id.* at 2430 (quoting *Nixon*, 418 U.S. at 702); *see Armstrong*, 517 U.S. at 464 ("a prosecutor's discretion is subject to constitutional constraints") (citation and internal quotation marks omitted).  And prosecutions are conducted under judicial supervision, with the government bearing the burden to prove its allegations beyond a reasonable doubt to a unanimous jury. *United States v. Gaudin*, 515 U.S. 506, 510 (1995).  These established safeguards against unfounded federal prosecution sharply contrast with the potential multiplicity of private damages actions that concerned the *Fitzgerald* Court.  *Cf. Cheney*, 542 U.S. at 386 (contrasting the criminal justice system's protections "to filter out insubstantial legal claims" with the absence of "analogous checks" in civil litigation).

Although Trump speculates that "[w]ithout immunity from criminal prosecution for official acts, the presidency will cease to function," ECF No. 324 at 16, history refutes that suggestion.  Even under Trump's view, from the inception of the Nation, all Presidents have

understood that the commission of criminal acts in their use of official powers could potentially result in post-Presidency prosecution.  *Id.* at 7 (conceding the possibility of prosecution after impeachment and conviction).  Consequently, "past Presidents have understood themselves to be subject to impeachment and criminal liability, at least under certain circumstances, so the possibility of chilling executive action" that Trump fears "is already in effect."  *Trump*, 91 F.4th at 1196.  For instance, former President Reagan was subject to criminal investigation for Iran/Contra, with the responsible federal prosecutor determining that the evidence did not warrant prosecution.[2]  Such an investigation (and potential prosecution) was consistent with the longstanding position of the Department of Justice that a President may be prosecuted "once [his] term is over or he is otherwise removed from office by resignation or impeachment."  *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222, 255 (2000).  Yet no evidence of abusive or overreaching federal criminal investigations of former Presidents has emerged, let alone evidence of chill in the Oval Office arising from fear of unwarranted prosecution.  Trump's efforts to compare the present charges to alleged acts by past Presidents that (he asserts) *could* have been prosecuted is deeply flawed.  *See* ECF No. 324 at 10-12 (citing secondary sources).  Those accusations were leveled by political opponents and do not constitute evidence.  Trump makes no effort to examine the specifics of any criminal statutes, consider unique legal defenses, or address the threshold requirement that "the admissible evidence will probably be sufficient to obtain and sustain a conviction" as is necessary for prosecutors to bring federal

---

[2] "But because a President, and certainly a past President, is subject to prosecution in appropriate cases, the conduct of President Reagan in the Iran/contra matter was reviewed by Independent Counsel against the applicable statutes.  It was concluded that President Reagan's conduct fell well short of criminality which could be successfully prosecuted."  1 Lawrence E. Walsh, Final Report Of The Independent Counsel For Iran/Contra Matters: Investigations and Prosecutions, Chap. 27 (1993), available at https://irp.fas.org/offdocs/walsh/chap_27.htm.

criminal charges.  *See* Justice Manual § 9-27.220 (Principles of Federal Prosecution).

A powerful interest on the other side of the scales is the need to "vindicate the public interest in an ongoing criminal prosecution." *Fitzgerald*, 457 U.S. at 754.  The Supreme Court has frequently recognized the compelling public interest in enforcing the criminal law, explaining that "the primary constitutional duty of the Judicial Branch [is] to do justice in criminal prosecutions." *Nixon*, 418 U.S. at 707; *see also Cheney*, 542 U.S. at 384 (recognizing that the "commitment to the rule of law is nowhere more profoundly manifest" than in criminal justice) (citation and ellipsis omitted).  And here, the Executive Branch's decision to enforce laws enacted by Congress places those branches' constitutional roles at odds with Trump's immunity claim.  Separation-of-powers considerations thus cut against recognizing an absolute immunity for former Presidents.  From early in our Nation's history, it has been recognized that "the president is elected from the mass of the people, and, on the expiration of the time for which he is elected, returns to the mass of the people again." *United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807) (Marshall, C.J.).  To immunize him against crimes he committed while in office, and through the use of that office, would contradict our constitutional heritage by placing the President "above the law." *Lee*, 106 U.S. at 220; *see also Vance*, 140 S. Ct. at 2432 (Kavanaugh, J., concurring) (observing that the principle that no one is above the law "applies, of course, to a President").  The Constitution therefore cannot be interpreted to confer the immunity that Trump asserts.

The consequences of adopting Trump's capacious immunity theory are sobering.  Under his view, a President could direct the Special Forces to murder his principal political opponent; he could accept a bribe in exchange for steering a lucrative government contract to the bribe-payer; and he could sell classified information to an adversary—and as long as he was not impeached by the House and convicted by the Senate, he could act with impunity.  And the enlargement of

immunity that he offers in this case—protecting not only acts during the presidency but telescoping outward to shield post-Presidency conduct—would be particularly dangerous, setting the stage for all manner of reckless and forward-looking criminal acts during the final days of a President's term.  On Trump's view, criminal immunity would shield not only a President who sold documents that contained classified information to an adversary while President; but also one who designated classified documents "personal," took them with him after his Presidency, and then arranged for their sale and delivery after leaving office so long as he initially took the documents while he was President.  Such a result would obviously and severely undermine the compelling public interest in the rule of law and criminal accountability, and the Court should resist Trump's effort to manufacture such an immunity for his conduct.

### 2. The Impeachment Judgment Clause does not make Senate conviction a prerequisite to criminal prosecution

Trump's reliance (ECF No. 324 at 7-8) on the Impeachment Judgment Clause, U.S. Const. art. I, § 3, cl. 7, is misplaced.[3]  In his view, that Clause immunizes a former President from prosecution unless he has first been impeached by the House and convicted by the Senate for the same or closely related official conduct that forms the basis for a federal indictment.  That argument lacks merit.

The text of the Impeachment Judgment Clause affords no support to a rule of immunity for Presidents who have not been impeached and convicted for the same official acts.  The first part of the Clause clarifies and limits the scope of Congress's authority to remove federal officers:

---

[3] The Impeachment Judgment Clause states: "Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law."  U.S. Const. art. I, § 3, cl. 7.

Congress's remedies are restricted to removal from office and disqualification from holding office in the future.  Punishment authority is reserved for the ordinary process of the law.  The second part of the Clause underscores that dichotomy: despite conviction after an impeachment trial, a party convicted "shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law."  But "[t]he text says nothing about nonconvicted officials." *Trump*, 91 F.4th at 1201.

Trump's contention (ECF No. 324 at 7) that impeachment by the House and conviction by the Senate must precede prosecution fundamentally misunderstands the distinct roles that impeachment and criminal prosecution play.  The Framers separated the legislative remedy of impeachment from the judicial remedy of imposing criminal judgments for sound reasons.  The impeachment process is, by design, a political remedy for the dangers to governance posed by an office holder who has committed "Treason, Bribery, or other high Crimes and Misdemeanors." U.S. Const. art. II, § 4.  Congress is well suited to weigh the need for and costs of removal of an official from office by evaluating his fitness for continued or future exercise of governmental power.  That process does not depend on rigorously adjudicating facts and applying law; it is inherently political.  The courts, in contrast, operate according to law and due process, with the proceedings subject to appellate review.

The untenable implications of an impeachment-first rule further undermine its plausibility. If correct, all federal officers, not just the President, would have to be impeached and convicted before prosecution.  But history reflects a clear separation between the two constitutionally distinct procedures.  Although scores of federal officers have been criminally prosecuted throughout our history, fewer than two dozen officers have ever been impeached by the House, with only eight— all federal judges—convicted in the Senate.  *See* Cong. Research Serv., R45769, *The Impeachment*

13

*Process in the House of Representatives* (2024).  And in the few cases in which both procedures have been invoked, prosecution has regularly preceded impeachment.  *See, e.g., Nixon v. United States*, 506 U.S. 224 (1993) (impeachment following prosecution of Article III judge).  Multiple courts have rejected the claim that criminal prosecution may occur only after impeachment and conviction.[4]

This case illustrates another critical flaw in Trump's proposed impeachment-first rule: it would unjustifiably shield a former official from criminal accountability if his criminal conduct came to light only after the official left office.  The Senate has never convicted a *former* official, with Senators often expressing doubt about their power to do so, *see e.g.* 167 Cong. Rec. S736 (daily ed. Feb. 13, 2021), casting further doubt on the feasibility of Trump's novel impeachment-first theory of criminal liability.  And applied here, Trump's theory would require that, before any criminal prosecution could commence, Congress would have to impeach and convict a former President whose alleged criminal conduct all occurred after the end of his time in office.  Trump offers no plausible explanation for such an absurd result, and there is none.[5]

---

[4] *See United States v. Hastings*, 681 F.2d 706, 710 (11th Cir. 1982) (rejecting the claim that the Impeachment Judgment Clause "creates a constitutionally mandated sequence for the prosecution of a federal judge" in which "first, Congress must act to remove him from office, and only then can the article III courts subject him to 'trial, judgment and punishment, according to law'"); *accord United States v. Claiborne*, 727 F.2d 842, 845 (9th Cir. 1984); *United States v. Isaacs*, 493 F.2d 1124, 1142 (7th Cir. 1974); *Trump*, 91 F.4th at 1201 (noting that the negative-implication reading of the Clause to impose a mandatory sequence of impeachment first, prosecution after, is a "'tortured' interpretation.'" (quoting *Claiborne*, 727 F.2d at 846).

[5] To the extent Trump suggests that a different rule should apply for former Presidents, the Constitution itself refutes the claim: the Framers provided a separate rule for presidential impeachments in the immediately preceding clause (requiring the Chief Justice to preside, *see* U.S. Const. art. I, § 3, cl. 6), but wrote no similar presidential exception into the Impeachment Judgment Clause.

### 3. Neither constitutional history, practice, or related doctrines support absolute criminal immunity

Other sources of constitutional interpretation likewise afford no support to Trump's argument. *See Fitzgerald*, 457 U.S. at 740 n.19, 747-748 (considering framing era statements, history, and the common law in the separation-of-powers analysis).

The Framers devoted significant attention to ensuring that the President would be accountable for any misconduct, and the most relevant writings provide no support for immunity of the type that Trump claims. "James Wilson, a signer of the Constitution and future Justice of this Court, explained to his fellow Pennsylvanians that 'far from being above the laws, [the President] is amenable to them in his private character as a citizen, and in his public character by *impeachment*.'" *Vance,* 140 S. Ct. at 2434-35 (Thomas, J., dissenting) (quoting 2 Debates on the Constitution 480 (J. Elliot ed. 1891)). "James Iredell, another future Justice, observed in the North Carolina ratifying convention that '[i]f [the President] commits any crime, he is punishable by the laws of his country.'" *Id.* at 2435 (Thomas, J., dissenting) (quoting 2 Debates on the Constitution 109 (J. Elliot ed. 1891)).

Likewise, Hamilton's essays in *The Federalist* treated impeachment as a safeguard against the abuse of power by an incumbent President—who would also be liable to criminal punishment after removal or departure from office. Trump relies (ECF No. 324 at 8) on three of Hamilton's essays—*The Federalist* Nos. 65, 69 and 77 (C. Rossiter ed. 1961)—but none addresses what he seeks to establish: that conviction by the Senate would be a necessary prerequisite to a former President's criminal prosecution. Hamilton's essays instead explained why the Supreme Court was not the proper body to serve as an impeachment court, *The Federalist* No. 65, how a President differed from the British monarch, *The Federalist* No. 69, and that, despite the President's formidable powers, strong constitutional safeguards existed to protect the Nation, *The Federalist*

No. 77.  Hamilton's inventory of constitutional protections did not suggest that a former President could not be prosecuted if he was impeached but not convicted.[6]  Rather, the strong current that runs through all three of Hamilton's essays is that a former President, unlike a king, is amenable to "the common course of law."  *The Federalist* No. 77, at 432; *see also Trump*, 91 F.4th at 1203 (refuting Trump's reliance on *The Federalist* No. 69).

Historical experience also refutes Trump's claim.  Never in American history before Trump has any President asserted that former Presidents enjoy immunity from federal criminal prosecution for official acts.  During Watergate, President Nixon was an unindicted co-conspirator in a prosecution charging White House officials with conspiracy to defraud the United States and to obstruct justice.  *Nixon*, 418 U.S. at 687 n.2; *see Vance*, 140 S. Ct. at 2427 (recognizing that President Nixon was "under investigation" in Watergate).  Those charges rested on a range of official acts involving the misuse of official presidential power.  *See United States v. Haldeman*, 559 F.2d 31, 121-22 (D.C. Cir. 1976).  President Nixon resigned before impeachment proceedings began, yet no one suggested that he was immune from federal prosecution.  To the contrary, President Ford's extension of a pardon, and President Nixon's acceptance of it, implied recognition that he faced potential criminal liability.  *See* Gerald Ford, Presidential Statement at 7-8 (Sept. 8, 1974) (granting former President Nixon a "full, free, and absolute pardon . . . for all offenses against the United States which he . . . has committed or may have committed or taken part in during" his Presidency);[7] Richard Nixon, Statement by Former President Richard Nixon at 1 (Sept. 8, 1974) (accepting "full and absolute pardon for any charges which might be brought against me

---

[6] Trump's related reliance (ECF No. 324 at 8) on Justice Alito's dissenting opinion in *Vance*, which cited Hamilton's *The Federalist* Nos. 69 and 77, is similarly inapposite because it simply made the undisputed point that a President must leave office before any prosecution may commence.  *See Vance*, 140 S. Ct. at 2444-45 (Alito, J., dissenting).

[7] https://www.fordlibrarymuseum.gov/library/document/0067/1563096.pdf.

for actions taken during the time I was President of the United States");[8] *see also Burdick v. United States*, 236 U.S. 79, 90-91 (1915) (stating that acceptance of a pardon represents a "confession of guilt").

Despite the Watergate experience and a succession of Independent Counsels and Special Counsels, the suggestion that a former President has absolute immunity from federal criminal prosecution finds little mention in any source. The absence of any such absolute immunity claim throughout our history weighs heavily against its novel recognition now. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2201 (2020).

The Supreme Court has previously looked to common-law judicial and prosecutorial immunity in analyzing parallel claims of presidential immunity. *See Fitzgerald*, 457 U.S. at 746-48; *see also Vance*, 140 S. Ct. at 2426. For judges and prosecutors, absolute *civil* immunity has never implied *criminal* immunity. *Trump*, 91 F.4th at 1192-94. To the contrary, the Supreme Court has reasoned that despite absolute immunity from civil damages claims, judges and prosecutors are "subject to criminal prosecutions as are other citizens." *Dennis v. Sparks*, 449 U.S. 24, 31 (1980) (judges); *Imbler v. Pachtman*, 424 U.S. 409, 429 (1976) (prosecutors). The recognition that civil immunity does not imply criminal immunity for these officials has deep roots in the law. *E.g., Ex parte Virginia*, 100 U.S. 339, 348 (1879). And exposure to criminal liability is one of the justifications for civil immunity; despite immunity from private civil damages actions, criminal prosecutions exist to deter and provide accountability for crimes. The Supreme Court has thus "never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivation of constitutional rights." *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974). "On the contrary, the judicially fashioned

---

[8] https://www.fordlibrarymuseum.gov/library/document/0019/4520706.pdf.

doctrine of official immunity does not reach 'so far as to immunize criminal conduct proscribed by an Act of Congress.'"  *Id.* (quoting *Gravel v. United States*, 408 U.S. 606, 627 (1972)).[9]

The same principle applies here.  If anything, the principle has its greatest force with respect to the President: an official whose vast constitutional powers invite the greatest potential to inflict harm on society if he abuses his office to commit crimes—and whose violation of his constitutional oath reflects the greatest betrayal of the Nation's trust.  "It would be a striking paradox if the President, who alone is vested with the constitutional duty to 'take Care that the Laws be faithfully executed,' were the sole officer capable of defying those laws with impunity."  *Trump*, 91 F.4th at 1198.

### 4. *Marbury v. Madison* and its progeny do not support absolute criminal immunity

Relying on the Vesting Clause, U.S. Const. art. II, § 1, cl. 1 ("The executive Power shall be vested in a President of the United States of America"), and *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), Trump argues that the discretionary acts of the President "can never be examinable by the courts."  ECF No. 324 at 4, 19 (quoting *Marbury*, 5 U.S. (1 Cranch) at 166).  Drawing from *Marbury* and other sources the proposition that a President's official acts are not subject to the injunctive power of Article III courts, Trump makes the leap to claiming that trying a former President for criminal violations committed through official acts "constitutes a core violation of the separation of powers," *id.* at 3, 7.  That is a non sequitur.  It is true that courts cannot enter an injunction against a *sitting* President directing his performance of official acts, *see*

---

[9] Trump suggests (ECF No. 324 at 12) that common-law principles of legislative immunity embodied in the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1, inform the immunity analysis here, but that suggestion lacks support in constitutional text, history, or purpose.  The Framers omitted any comparable text protecting executive officials, *see Vance*, 140 S. Ct. at 2434 (Thomas, J., dissenting), and no reason exists to look to the Speech or Debate Clause as a model for his immunity claim.  *See Trump*, 91 F.4th at 1192.

*id.* at 4-6 (citing authorities and Department of Justice filings), but that protection against judicial direction of the President's ongoing conduct of office does not suggest that courts are disabled from holding a *former* President accountable when his actions violate federal criminal law.

Trump's interpretation of *Marbury* cannot be squared with the long record of the Supreme Court's review of the lawfulness of presidential acts.  *See Trump*, 91 F.4th at 1189-92.  The exercise of judicial power to review presidential acts dates from the early years of the Republic and continues to this day through suits against his subordinates.  *See, e.g., Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804) (Marshall, C.J.); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *see also Medellin v. Texas*, 552 U.S. 491 (2008).  Trump concedes this point but suggests that the review of official presidential acts through the actions against the President's subordinates reflects judicial incapacity to exercise *any* authority "directly over the president's official acts." ECF No. 324 at 6.  That is incorrect.  Although courts properly refrain from entering injunctions or declaratory judgments against a sitting President to control his official acts, *see Franklin v. Massachusetts*, 505 U.S. 788, 826-828 (1992) (Scalia, J., concurring), that restraint does not reflect the view that Presidents are immune from all judicial process.  For example, the Supreme Court entertained a direct challenge to a presidential order in a suit against the President in *Trump v. Hawaii*, 585 U.S. 667 (2018).  Upon appropriate showings, Presidents, like other citizens, must produce official papers in response to a subpoena in a pending prosecution.  *See Nixon*, 418 U.S. at 707.  And Presidents, like other citizens, must comply with federal criminal law.  Nothing in the respect appropriately shown to a *sitting* President's discretionary official acts implies that a *former* President has immunity from all personal accountability for crimes committed through the exercise of official power.

Even Trump does not claim that Presidential discretion is a general license to violate

19

applicable federal criminal law.  Nor could he.  Criminal conduct violates the President's duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.  The separation of powers involves checks and balances—not a blank check for crimes a President might commit through official acts so long as he resigns from office, avoids impeachment and conviction, or conceals his criminal conduct until after the expiration of his term.  *See, e.g.*, *Application of 28 U.S.C. § 458 to Presidential Appointments of Federal Judges*, 19 Op. O.L.C. 350, 357 n.11 (1995) (the Constitution "confers no power in the President to receive bribes").  And contrary to Trump's suggestion, prohibiting a President from committing crimes does not restrict his vast range of discretion in carrying out his official responsibilities—any more than prohibiting him from accepting bribes in his conduct of office intrudes on his legitimate discretion.  While Trump does not claim that he had the right to violate the charged statutes, his position seeks the same result: absolute immunity from federal prosecution for those alleged criminal acts.  That claim is not rooted in any precedent or any valid separation-of-powers principle.

Finally, Trump's own position is fundamentally inconsistent with his reading of *Marbury*. He admits that courts can examine official presidential acts if the former President has been impeached and convicted.  ECF No. 324 at 7.  If the judiciary can directly examine a former President's official acts in that context, Article III courts plainly have the constitutional authority and capacity to preside over such prosecutions.

### C.    Trump's Absolute-Immunity-Based Motion to Dismiss Is Frivolous

This Court should deny Trump's absolute immunity claim and certify that it is frivolous. Like the denial of a motion to dismiss on double-jeopardy grounds, the denial of a motion to dismiss on immunity grounds is typically subject to interlocutory appeal because when immunity applies, it protects against both trial and the burdens of pretrial litigation.  *Trump*, 91 F.4th 1183-

88; *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985); *see Abney v. United States*, 431 U.S. 651, 662 (1977) (double jeopardy).  At the same time, the Supreme Court has recognized in the double-jeopardy context that because such an approach "may encourage some defendants to engage in dilatory appeals," courts of appeals could "establish summary procedures and calendars to weed out frivolous claims of former jeopardy."  *Abney*, 431 U.S. at 662 n.8; *see Richardson v. United States*, 468 U.S. 317, 322 (1984) (indicating that "the appealability of a double jeopardy claim depends upon its being at least 'colorable,' . . . and that 'frivolous claims of former jeopardy' may be weeded out by summary procedures"); *id.* at 326 n.6 (noting that a "colorable claim . . . presupposes that there is some possible validity").  Following *Abney*, the Fifth Circuit developed procedures for identifying and disposing of frivolous double-jeopardy claims without divesting the trial court of jurisdiction and delaying proceedings.  *See United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (en banc)[10] ("Henceforth, the district courts, in any denial of a double jeopardy motion, should make written findings determining whether the motion is frivolous or nonfrivolous. If the claim is found to be frivolous, the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case.  If nonfrivolous, of course, the trial cannot proceed until a determination is made of the merits of an appeal."); *see also United States v. Farmer*, 923 F.2d 1557, 1565 (11th Cir. 1991) (describing the *Dunbar* procedures).

*Dunbar*'s rationale that district courts may certify certain double-jeopardy claims as frivolous and "get on with the trial" is "freely transferrable" to immunity claims.  *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989).  Every circuit to have confronted the question in the civil immunity context has recognized that "district courts may retain jurisdiction despite the filing

---

[10] *Dunbar* was decided before the close of business on September 30, 1981, and is therefore binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

of an interlocutory appeal" where the district court "certif[ies] that the appeal is frivolous or dilatory," *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 399 (5th Cir. 2017) (collecting cases), and the Supreme Court has observed in an immunity case that "several" courts of appeals have "embraced" a practice that "enables the district court to retain jurisdiction pending summary disposition of the appeal, and thereby minimizes disruption of the ongoing proceedings," *Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996).  District courts in the Eleventh Circuit have thus certified immunity claims as frivolous where the claim was "a sham and asserted for the purpose of delay," *Summit Med. Assocs., P.C. v. James*, 998 F. Supp. 1339, 1342 (M.D. Ala. 1998), and where "the only plausible motivation behind" a subsequent notice of appeal was "delay," *Andre v. Castor*, 963 F. Supp. 1169, 1171 (M.D. Fla. 1997).

Consistent with that application of *Dunbar* procedures in the immunity context, this Court should certify in written findings that Trump's claim *in this case* that he is absolutely immune from criminal prosecution unless impeached by the House and convicted by the Senate is frivolous.  In doing so, the Court need not address whether it is frivolous for a former President to assert as a general matter that he may be entitled to immunity from criminal prosecution for official acts taken during the Presidency.  *Cf. Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1195 (11th Cir. 2002) (acknowledging that not every argument that is "ultimately rejected" is necessarily "frivolous").  As novel and unprecedented as that claim is, the claim that he makes here is even more outlandish:  that he is immune from crimes which, as set forth in the Superseding Indictment, entirely post-date his term of office.  Such a claim is not only unprecedented; it is entirely without basis in law.  As a result, the Court need only conclude that it is frivolous to assert such an immunity claim in a case like this one, where *none* of the charges are based on such acts.  In other words, even if Trump were correct that a former President is immune for official acts—and he

decidedly is not—that immunity claim would not entitle him to any relief in this case, rendering his claim in this case frivolous.

A finding of frivolousness here is also strongly supported by Trump's transparent and persistent purpose to delay the proceedings.  Indeed, although issues involving immunity should be raised promptly, *see Clinton v. Jones*, 520 U.S. 681, 686 (1997) (observing that "immunity questions should be decided at the earliest possible stage of the litigation"), Trump has waited more than eight months since being indicted to assert his purported immunity, and the first time he alluded to a presidential immunity claim occurred only recently in a motion seeking more time to file pretrial motions.  *Compare* ECF No. 242 at 3-4 (filed Dec. 20, 2023) (listing likely pretrial motions but not mentioning an immunity claim), *with* ECF No. 285 at 1 (filed Feb. 6, 2024) (listing likely pretrial motions and mentioning, for the first time, a "presidential immunity" claim).[11]  The record here clearly demonstrates that Trump has raised his immunity claim solely for the purpose of delay, and the Court should reject his effort to divest this Court of jurisdiction in a manner that risks delaying the trial.[12]

### III.    Conclusion

The Court should deny Trump's motion to dismiss on presidential immunity grounds and certify that his immunity claim is frivolous.

---

[11] By contrast, in *United States v. Trump*, No. 23-cr-257 (D.D.C.), Trump informed the district court at a status conference within a month of the Indictment that he intended to file an "executive immunity" claim, *id.* at ECF No. 38 at 33-34, 52 (Aug. 28, 2023), and then filed such claim just over two months later, *see id.* at ECF No. 74 (Oct. 5, 2023).

[12] The Court should also reject Trump's request (ECF No. 328 at 1) for "factfinding" and "witness testimony" in support of his immunity claim because unlike such a claim in the civil context on which he relies, *see id.* at 2 (citing *Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023)), "[t]here is no summary judgment procedure in criminal cases," and the rules do not "provide for a pre-trial determination of sufficiency of the evidence."  *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:    /s/ *Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

James I. Pearce
Assistant Special Counsel
Special Bar ID #A5503077

March 7, 2024

24

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt