**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON(s)**

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA, and**
**CARLOS DE OLIVEIRA,**

       Defendants.

_____/

**GOVERNMENT'S OPPOSITION TO DONALD J. TRUMP'S**
**MOTION TO DISMISS COUNTS 1-32 BASED ON**
**UNCONSTITUTIONAL VAGUENESS**

# TABLE OF CONTENTS

I.     Background .................................................................................................... 2

II.    Argument ...................................................................................................... 4

    A.    A Statute Is Not Vague as Applied when It Gives The Defendant Fair Notice
       and Provides Standards for the Exercise of Prosecutorial Discretion ......................... 4

    B.    Trump Had Fair Notice that His Conduct Violated Section 793(e) ............................ 7

       1.    Courts Have Consistently Upheld Section 793 Against Vagueness
          Challenges ......................................................................................... 7

          a.    Unauthorized Possession ................................................................ 8

          b.    Relating to the National Defense .................................................. 10

          c.    Entitled to Receive ....................................................................... 14

       2.    Trump Was Personally on Notice that Classified National Defense
          Information Must Be Handled Appropriately ......................................... 19

       3.    Section 793(e)'s Willful Scienter Requirement Alleviates Any Possible
          Vagueness as to the Meaning of the Statute's Other Terms ................................. 21

    C.    Section 793 Is Neither Standardless Nor Encourages Discriminatory
       Enforcement ....................................................................................... 23

    D.    Trump's Challenge to Count 19 Lacks Merit ........................................................ 24

III.   Conclusion .................................................................................................. 25

i

Defendant Donald J. Trump moves to dismiss Counts 1-32 of the Superseding Indictment on the theory that the statute underlying those counts, 18 U.S.C. § 793(e), is unconstitutionally vague as applied to him.   ECF No. 325.   Trump's vagueness argument is meritless.   Trump is charged with the unauthorized possession and willful retention of national defense information. The statute's prohibitions are clear.   And as a former President, Trump could not have failed to understand the paramount importance of protecting the Nation's national-security and military secrets, including the obligations not to take unauthorized possession of, or willfully retain, national defense information.   *See* ECF No. 85 ¶ 24 (Trump stating during his Presidency that, "[a]s the head of the executive branch and Commander in Chief, I have a unique, Constitutional responsibility to protect the Nation's classified information, including by controlling access to it.").   The Superseding Indictment charges that Trump defied those demands by delay, deception, and obstruction.   Trump's actions are paradigmatic violations of Section 793(e), and there is nothing vague about the application of the statute to him.   Trump's claim that he lacked fair notice of Section 793(e)'s requirements rings hollow.

In claiming that Section 793 is vague as applied to him, Trump relies on three factors: (1) his former service as a President who acted as the "ultimate Original Classification Authority"; (2) his "recourse to executive privilege"; and (3) his asserted immunity for official acts.   ECF No. 325 at 2.   These assertions stem from Trump's pervasive claim that his former service as President somehow exempts him from the laws and principles of accountability that govern every other citizen.   But none of the factors he identifies makes Section 793 vague as applied in this case.   Trump's legal argument relies on dated law journal articles, newspapers, and inapposite vagueness cases that do not address Section 793.   The decisions that have actually interpreted Section 793 have rejected similar vagueness claims in case after case, and for good reason.

Trump's challenge is likewise unfounded.

For at least three reasons, Trump had fair notice that the conduct alleged violated Section 793: (1) Section 793(e)'s text, as explicated through decades of decisions by the federal courts, gives it a well-established meaning; (2) Trump was personally put on notice that classified national defense information may be possessed only by authorized persons and must be handled with appropriate safeguards; and (3) Section 793(e)'s willfulness requirement—demanding proof beyond a reasonable doubt that he knew his conduct was unlawful—alleviates any vagueness concerns.   And with respect to Count 19, Trump's claim that he possessed the requisite security clearance to view the document charged in that count does not assist him: he cannot make a factual challenge to the legal sufficiency of a count.   Moreover, as the Government's trial evidence will show, he did not possess such a clearance, but in any event, no clearance would have authorized him to possess the document at a social club, frequented by thousands of employees, members, and visitors, with none of the safeguards required for the handling of that sensitive material.   For these reasons, the Court should deny Trump's motion to dismiss on vagueness grounds.

## I.      Background

On July 27, 2023, a grand jury in this District returned a Superseding Indictment charging Trump with, *inter alia*, 32 counts of willful retention of national defense information, in violation of 18 U.S.C. § 793(e).   ECF No. 85.   The Superseding Indictment alleges that as part of his official duties as President, Trump received intelligence briefings from senior members of the United States Intelligence Community ("USIC") and regularly received classified intelligence as part of the "President's Daily Brief."   *Id.* ¶ 20.   On January 20, 2021, Trump ceased to be President, and as he departed the White House, he took with him scores of boxes, including many containing classified documents, to the Mar-a-Lago Club in Palm Beach, Florida, where he had a

residence.   *Id.* ¶ 4.   "Trump was not authorized to possess or retain those classified documents."

*Id.*   These documents were created by and implicated the interests of multiple components of the

USIC.   *Id.* ¶ 22.

The classified documents that Trump put in boxes, took from the White House, and moved

to and stored at Mar-a-Lago included classified information about defense and weapons

capabilities of both the United States and foreign countries; United States nuclear programs;

potential vulnerabilities of the United States and its allies to military attack; and plans for possible

retaliation in response to a foreign attack.   *Id.* ¶ 3.   Trump did not create any of the charged

classified documents; rather, the USIC, the National Security Council, and the Department of

Defense authored the documents and provided them to Trump—31 of which displayed

classification markings indicating that they had to be protected and maintained in appropriate

secure settings.[1]   Yet, following his Presidency, Trump possessed these highly sensitive

documents at the Mar-a-Lago Club and deceptively sought to retain them even after a grand jury

sought their return, *see id.* ¶¶ 53-63.

The Superseding Indictment charges Trump with 32 counts of the unauthorized possession

and willful retention of documents relating to the national defense, in violation of 18 U.S.C.

§793(e).   *Id.* ¶ 93.[2]   Section 793(e) provides in relevant part that "[w]hoever having

unauthorized possession of, access to, or control over any document, writing, code book, signal

book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument,

appliance, or note relating to the national defense . . . [and] willfully retains the same and fails to

---

[1]   The document charged in Count 11 is the only charged document that does not bear
classification markings.   However, it is plain from the face of the document that its subject
matter—which falls under the categories listed in this paragraph—relates to the national defense.

[2]   Trump is also charged with several false statement and obstruction-related offenses
(Counts 33-38, 40, 41), which he does not challenge on vagueness grounds.   *See* ECF No. 85.

deliver it to the officer or employee of the United States entitled to receive it," is guilty of an offense.   18 U.S.C. § 793(e).

## II.    Argument

Trump's vagueness challenge to Section 793 lacks merit.   Section 793, "based on the original Espionage Act of 1917, has never been successfully challenged in its 100-year history." *United States v. Schulte*, 436 F. Supp. 3d 747, 750 n.7 (S.D.N.Y. 2020).   "Every court that has considered the constitutionality of Section 793's various provisions has rejected the same claim[] of . . . vagueness that the defendant raises."   *Id.* at 753.   For the reasons below, Trump's as-applied challenge fails under the well-established legal standards because Trump had fair notice that his conduct violated the law and because Section 793 is neither standardless nor encourages discriminatory enforcement.

### A.    A Statute Is Not Vague as Applied when It Gives The Defendant Fair Notice and Provides Standards for the Exercise of Prosecutorial Discretion

The void-for-vagueness doctrine is a component of the Fifth Amendment right to due process.   *United States v. Williams*, 553 U.S. 285, 304 (2008).   The Due Process Clause requires "that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal."   *Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (per curiam).   A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."   *Id.*   Accordingly, "[i]n evaluating a vagueness challenge," courts "apply [a] two-part standard . . . which 'requires that [1] a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'"   *United States v. Awan*, 966 F.2d 1415, 1424 (11th Cir. 1992) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)).

"Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *Awan*, 966 F.2d at 1424. Accordingly, Trump's vagueness claim must be resolved based on the allegations of the Superseding Indictment as applied to him, not on general attacks on the statutory terms or on any extraneous facts that he might hope to develop at trial.[3] "Where the language alone sets forth plainly perceived boundaries, no further inquiry is necessary." *United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010) (citing *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008)). In addition, "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

Trump contends that Section 793 should be subject to "exacting scrutiny" in this case simply because the Superseding Indictment includes allegations about his prior statements and admissions. ECF No. 325 at 5-6 (quoting *United States v. Di Pietro*, 615 F.3d 1369, 1371 n.2 (11th Cir. 2010). That is wrong. The Superseding Indictment does not allege that Trump's public statements about the need to protect classified information violated Section 793. *See* ECF No. 85 ¶¶ 23-24, 37. Those statements do, however, provide powerful evidence of his knowledge of the laws regarding the protection of national defense information, and they highlight his willfulness in retaining a trove of classified documents at his residence and social club after he left office. Imagine a defendant charged with being a felon-in-possession of firearms who had publicly touted the importance of laws restricting the possession of firearms by convicted

---

[3] Trump may not rely on extrinsic facts outside of the indictment. Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, "an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987); *see also United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam) ("The sufficiency of a criminal indictment is determined from its face.").

criminals—it is inconceivable that a court would apply the law differently in that case simply because the government intended to use such statements as evidence of knowledge and intent. When defendants are charged with crimes, their statements may be used as evidence of their knowledge and intent in committing those crimes, and they may not cloak themselves with First Amendment protection simply because the government uses their words as evidence. *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) ("The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.").

The same applies to Trump's words in his meetings with a publicist, a writer, and a representative of his political action committee. *See* ECF No. 85 ¶¶ 34-36. Trump is not charged with the transmission of national defense information based upon his statements in those meetings. Rather, those statements provide strong evidence that he knew after his Presidency that he possessed classified documents—and knew that he was no longer, as he puts it in his motion, the "ultimate Original Classification Authority," ECF No. 325 at 2. *See, e.g.*, ECF No. 85 ¶ 35 ("Look what I found, this was [the Senior Military Official's] plan of attack, read it and just show . . . it's interesting."); *id.* ("This is secret information."); *id.* ("See as president I could have declassified it. . . . Now I can't, you know, but this is still a secret."); *id.* ("this is off the record"); *id.* ¶ 36 (Trump telling an individual that he "should not be showing" a classified map to the individual, so the individual should "not get too close"). The Superseding Indictment does not infringe Trump's protected speech, and he provides no basis to conclude that his words are entitled to greater protection than those of other defendants. The same standards of vagueness law apply to Trump as to any other citizen.

**B.      Trump Had Fair Notice that His Conduct Violated Section 793(e)**

A Section 793(e) violation requires proof of three elements: (1) unauthorized possession of a document, (2) that related to the national defense, (3) by a defendant who willfully retained the document and failed to deliver it to the employee or officer entitled to receive it.   18 U.S.C. § 793(e).

The Superseding Indictment charges Trump with Section 793(e) violations based on allegations that he possessed classified documents at Mar-a-Lago, a residence and social club frequented by hundreds of employees and thousands of members and guests and without the secure facilities necessary for safeguarding classified information.   ECF No. 85 ¶¶ 5, 11-13, 18-19. According to the Superseding Indictment, Trump was aware of the laws protecting classified information and the need to safeguard documents containing it.   *Id.* ¶¶ 23-24.   Trump's claim that he did not have fair warning that his conduct would violate Section 793 is fundamentally wrong for three independent reasons: (1) the meaning of the text of 793(e) is well established, as reflected in the many judicial decisions upholding the statute against vagueness challenges; (2) Trump was personally put on notice of the need to appropriately handle national defense information; and (3) Section 793(e)'s willfulness requirement alleviates any possible concerns with respect to the statute's other terms.

**1.      Courts Have Consistently Upheld Section 793 Against Vagueness Challenges**

First, the statutory terms of Section 793(e) have well-established meaning, and the Supreme Court, as well as other courts to consider the issue, have consistently rejected arguments that language in Section 793 or its predecessors is impermissibly vague.   Trump claims that three phrases in 793(e) are vague: (a) "unauthorized possession"; (b) "relating to the national defense; and (c) "entitled to receive it."   ECF No. 325 at 4.   Those claims are unfounded.

### a. Unauthorized Possession

"It is difficult to conceive of any language more definite and clear than § 793(e)'s prohibition against retention of classified information pursuant to unauthorized possession." *United States v. Ford*, 288 F. App'x 54, 56 (4th Cir. 2008). Trump does not argue that there is any ambiguity in the ordinary meaning of "unauthorized possession." Nor could he. Because Section 793 does not define the term "unauthorized," the term bears its "ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013); *Campbell v. Universal City Development Partners, Ltd.*, 72 F.4th 1245, 1254-55 (11th Cir. 2023). Dictionary definitions establish that "unauthorized" means without official approval or permission. *See, e.g.,* Black's Law Dictionary (11th ed. 2019); Random House Unabridged Dictionary 139 (2001) (defining "authorization" as "permission or power granted by an authority"); Webster's Third International Dictionary 146 (2002) (defining authorization as "the state of being authorized" and defining "authorize" as "to endorse, empower, justify, permit by or as if by some recognized or proper authority"). That definition is consistent with the interpretation of similar terms in other criminal statutes. *See, e.g.*, *United States v. Nosal*, 844 F.3d 1024, 1028, 1034-35 (9th Cir. 2016) ("'[W]ithout authorization' [in 18 U.S.C. § 1030(a)(4)] is an unambiguous, non-technical term that, given its plain and ordinary meaning, means accessing a protected computer without permission").

Instead, Trump claims "[t]here is far too much indeterminacy" about the phrase "unauthorized possession" with respect to him personally and "the types of documents at issue." ECF No. 325 at 7. Trump argues that this indeterminacy exists because the charged documents were "allegedly classified" only because of Trump's "Original Classification Authority." *Id.* That is false, and Trump fails to explain how his prior status as an original classification authority has any bearing on whether he could retain classified documents post-presidency, whether or not

8

he had a role in classifying them.   Trump also asserts (ECF No. 325 at 8) that "presidential discretion to designate records as personal under the [Presidential Records Act ("PRA")] adds additional ambiguity" for the reasons set forth in his motion to dismiss based on the PRA, ECF No. 327.   The Government responds more fully to these arguments in its response to that motion, but here, a few key points demonstrate that these arguments do not support his as-applied vagueness challenge.

Congress has long provided that "the President shall, by Executive order or regulation, establish procedures to govern access to classified information, which shall be binding upon all departments, agencies, and offices of the executive branch of Government."   50 U.S.C. § 3161(a); *see* National Security Act of 1947, Pub. L. No. 118-31, § 801 61 Stat. 496 (1947), as amended. And Presidents have issued a series of Executive Orders to govern access to classified information. The current Executive order—and the one in force throughout Trump's Presidency and through the allegations in the Superseding Indictment—is Executive Order ("E.O.") 13526, issued on December 29, 2009.   See ECF No. 85 ¶ 14.   Under that Order, classified information can be accessed only by a person who an appropriate United States official determines is eligible for such access; who has signed an approved non-disclosure order; and who has a "need to know" the classified information.   E.O. 13526 § 4.1(a).   As the Eleventh Circuit has made clear, the requirements of E.O. 13526 apply "equally to former Presidents, unless the current administration, in its discretion, chooses to waive [them]."   *Trump v. United States*, No 22-13005, 2022 WL 4366684, at *8 (11th Cir. Sept. 21, 2022).   Under the provisions of E.O. 13526, the Superseding Indictment alleges, once Trump left office, he no longer had authorization to possess classified information, he never received a waiver entitling him, as a former President, to possess it, and he stored documents at a location that was not an authorized location for the storage, possession,

review, display, or discussion of classified documents.    ECF No. 85 ¶¶ 4-6, 18-19.    Moreover,

the PRA does not authorize the possession of classified information by a former President; indeed,

it does not address that subject at all.    For these reasons, the unambiguous phrase "unauthorized

possession" is not vague as applied to him.[4]

### b.        Relating to the National Defense

The Supreme Court has held that the phrase "information related to the national

defense," as used in a predecessor statute to 18 U.S.C. § 793, satisfies the requirements of the Due

Process Clause.    *Gorin v. United States*, 312 U.S. 19, 27-29 (1941).    The Court rejected the

vagueness challenge because it found "no uncertainty in this statute which deprives a person of

the ability to predetermine whether a contemplated action is criminal under the provisions of this

law."    *Id.* at 27.    The term "national defense" has "a well understood connotation"; it is "a

generic concept of broad connotations, referring to the military and naval establishments and the

related activities of national preparedness."    *Id.* at 28.    The Court concluded that "[t]he language

employed appears sufficiently definite to apprise the public of prohibited activities and is

consonant with due process."    *Id.*

Many courts have recognized the continued vitality of *Gorin*'s holding, including in cases

involving charges brought under Section 793.    *See, e.g.*, *United States v. Morison*, 844 F.2d 1057,

1073 (4th Cir. 1988) (rejecting vagueness and First Amendment challenges to 18 U.S.C. § 793 by

a naval intelligence officer who transmitted classified satellite photographs of Soviet naval

preparations to a British periodical); *United States v. Boyce*, 594 F.2d 1246, 1252 n.2 (9th Cir.

---

[4] Trump also claims that the alleged "vagueness of the phrase 'unauthorized possession'
. . . gives rise to an impermissible risk of arbitrary enforcement."    ECF No. 325 at 8.    His
argument, which is not specific to the "unauthorized possession" language, is addressed under the
second prong of the vagueness test.    *See infra* at 23-24.

1979) (upholding the language of Sections 793 and 794 against a vagueness challenge); *United States v. Hitselberger*, 991 F. Supp. 2d 101, 106 (D.D.C. 2013) (noting that "every court to consider this issue has consistently rejected a constitutional vagueness challenge to this phrase" and collecting cases in several circuits); *United States v. Kim*, 808 F. Supp. 2d 44, 53 (D.D.C. 2011). Moreover, since *Gorin*, the phrase "has consistently been construed broadly to include information dealing with military matters and more generally with matters relating to United States foreign policy and intelligence capabilities." *United States v. Rosen*, 445 F. Supp. 2d 602, 620 (E.D. Va. 2006); *see also United States v. Drake*, 818 F. Supp. 2d 909, 918 (D. Md. 2011). ("Defendant's argument has been rejected, as this phrase has a consistently adopted and applied meaning.").

Trump attempts to distinguish *Gorin* on the grounds that the Supreme Court addressed a different provision of the predecessor statute to the Espionage Act and that the Court noted what it referred to as "delimiting words" in the statute—"intent or reason to believe that the information to be obtained is to be used to the injury of the United States, or to the advantage of any foreign nation"—in finding that the predecessor statute was not vague. *Gorin*, 312 U.S. at 27-28. *See* ECF No. 325 at 9-10. Trump claims that *Gorin* is inapplicable because the Government need not prove that intent to prove a violation of Section 793(e). But this purported distinction fails for three reasons. First, the relevance of the intent standard in *Gorin* is that it "requires those prosecuted to have acted in bad faith"; "[t]he sanctions apply only when scienter is established." *Id.* at 28. Section 793 also has a stringent scienter requirement—that the defendant must have acted "willfully"—and thus the Supreme Court's vagueness analysis in *Gorin* also applies to Section 793(e). *See infra* at 22-23. Second, *Gorin* separately addressed the phrase "relating to the national defense," holding that "the use of the words 'national defense' [in prior statutes] has

given them, as here employed, a well understood connotation." *Id.* The Court explained that the phrase "refer[s] to the military and naval establishments and the related activities of national preparedness." *Id.* The phrase "relating to the national defense" is the same in both the statutes at issue in *Gorin*, *id.* at 22 n.1 (quoting pertinent provisions), and Section 793(e), so *Gorin*'s definitive interpretation equally governs here. Third, the cases interpreting Section 793(e) discussed above relied on *Gorin*, with none suggesting that *Gorin*'s analysis of the relevant language did not apply to 793(e). Trump's effort to disregard *Gorin*'s holding should be rejected.

Trump argues that "relating to the national defense" is vague because of judicial glosses on the statutory text. *See* ECF No. 325 at 10-11. But those well-settled judicial interpretations narrow and clarify the text; they do not create unconstitutional vagueness. Courts have held that information must be "closely held" to constitute national defense information. *Gorin* initially explained that when "there is no occasion for secrecy, as with reports relating to national defense, published by authority of Congress or the military departments," the intent standard of the statute at issue "in all likelihood" would not be satisfied. 312 U.S. at 28. Courts have since explicitly "limited the term [document or other material 'relating to the national defense'] by requiring that the information be closely held by the government." *Rosen*, 445 F. Supp. 2d at 620 (citing *United States v. Heine*, 151 F.2d 813 (2d Cir. 1945)); *see also United States v. Campa*, 529 F.3d 980, 1005 (11th Cir. 2008) (national defense information "is limited to information that the government has endeavored to keep from the public").[5] This objective limitation on the scope of the statute clarifies and narrows it.

Trump objects that courts have no license to read words into a statute. ECF No. 325 at

---

[5] The Fourth Circuit has also imposed another limitation on the phrase "information relating to the national defense," requiring that its "disclosure would be potentially damaging to the United States or useful to an enemy of the United States." *Morison,* 844 F.2d at 1071-72.

10-11.    But giving a statute a narrowing construction is a well-established practice that has special force when necessary to avoid questions of constitutional vagueness.    *See Skilling v. United States*, 561 U.S. 358, 405 (2010) ("It has long been our practice, however, before striking a federal statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction.").    And while the Due Process Clause "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior decision has fairly disclosed to be within its scope," the Supreme Court has left no doubt that "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute."    *United States v. Lanier*, 520 U.S. 259, 266 (1997).    Even if there were uncertainty in Section 793(e), the longstanding gloss provides fair notice.

Trump would turn this rationale on its head, arguing that the statutory language cannot be "saved through judicial gloss."    ECF No. 325 at 11 (citing *United States v. Davis*, 139 S. Ct. 2319 (2019); *Johnson v. United States*, 576 U.S. 591 (2015)); *see also id.* at 3, 6 (citing *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)).    The cases that Trump cites, however, are inapposite and prohibit no such thing.    *Johnson*, *Dimaya*, and *Davis* addressed the residual clauses in the Armed Career Criminal Act (18 U.S.C. § 924(e)), the generic crime-of-violence definition in the Criminal Code (18 U.S.C. § 16(b)), and the offense of using, carrying, or possessing a firearm in connection with a crime of violence (18 U.S.C. § 924(c)), and found all three provisions unconstitutionally vague.    *See Jones v. United States*, 82 F.4th 1039, 1048 (11th Cir. 2023).    As the Supreme Court explained in *Davis*, the most recent of the decisions, the provisions at issue in *Johnson* and *Dimaya* were struck down because they required courts to "imagine the idealized 'ordinary case," rather than how "the defendant actually committed his crime."    139 S. Ct. at 2326.    The teaching of those cases is that "the imposition of criminal punishment can't be made to depend on a judge's

estimation of the degree of risk posed by a crime's imagined 'ordinary case.'"  *Id.*   In *Davis*, the government urged the Court to adopt a new meaning for the same text, this time as found in Section 924(c), by interpreting the relevant phrase to turn on the defendant's actual conduct, rather than a judicially imagined hypothetical ordinary case.   *Id.*   The Supreme Court rejected that novel approach as inconsistent with the phrase's text, context, and history, *id.* at 2328, and it held the provision at issue unconstitutionally vague, *id.* at 2336.   The Court also expressed concern that the Government was asking the court to "*expand* the reach of a criminal statute in order to save it."   *Id.* at 2332.

This judicial gloss on Section 793(e)—limiting national defense information to information that is closely held—does not expand but instead restricts the statute's reach.   And in limiting the definition of national defense information, courts have not adopted a meaning of "relating to the national defense" that is inconsistent with the statute itself or inconsistent with how that phrase is used elsewhere.   In short, none of the concerns that animated *Johnson*, *Dimaya*, and *Davis* is present here, and courts have uniformly held—notably, both before after these Supreme Court decisions—that "relating to the national defense" is not unconstitutionally vague.

### c.   Entitled to Receive

Trump's final challenge is to the "entitled to receive" language in Section 793(e).   Challenges to this element have uniformly failed because "the rule regulating who is 'entitled to receive' is the Executive Order setting forth a uniform classification system for national security information."   *Rosen*, 445 F. Supp. 2d at 622; *see Morison*, 844 F.2d at 1074 ("[C]ourts have recognized the legitimacy of looking to the classification system for fleshing out the phrases such as that in question here."); *Schulte*, 436 F. Supp. 3d at 753 (rejecting vagueness challenge on same basis); *Kim*, 808 F. Supp. 2d at 54 (same); *United States v. Morison*, 604 F. Supp. 655, 662 (D.

Md. 1985) ("The phrase 'not entitled to receive;' is not at all vague when discussed in reference with the classification system, which clearly sets out who is entitled to receive (those with proper security clearances and the 'need to know'")).

Trump's as-applied challenge is particularly infirm in light of his former status as a President.   Before, during, and after his time as President, an Executive Order clearly set forth who is entitled to receive classified information.   And, as Trump stated on July 26, 2018, "[a]s the head of the executive branch and Commander in Chief, I have a unique, Constitutional responsibility to protect the Nation's classified information, including by controlling access to it." ECF No. 85 ¶ 24.   Given that backdrop, he can hardly feign ignorance and a lack of clear notice. *Cf. Morison*, 844 F.2d at 1074 ("Certainly the phrase 'not authorized to receive it' was well understood by the defendant.   As to him, the statute was not vague in its reference to 'one not entitled to receive it.'").   As set forth above, E.O. 13526 restricts access to classified information to individuals who have a favorable determination of eligibility, have signed an approved nondisclosure agreement, and have a need-to-know the information.   E.O. 13526 § 4.1(a). Accordingly, the "executive branch's classification regulations . . . provide the requisite constitutional clarity."   *Rosen*, 44 F. Supp. 2d at 623.[6]

Trump's attempt to distinguish these cases is unavailing.   Trump first claims that the "entitled to receive" clause is vague as applied to him because it is unclear who would be "entitled" to "receive" records that a former President designated as personal.   ECF No. 325 at 11.   There is no evidence that Trump designated such records as "personal," and the nature of the classified

---

[6] Moreover, Trump has offered no theory (nor could he offer a plausible theory) that alleged vagueness regarding who was entitled to receive the documents is responsible for his conduct; he certainly cannot claim that he attempted to return the documents but is being charged because he returned them to the wrong individual.

documents at issue in this case would make any such claim factually incredible and legally impossible.[7]  And Trump provides no authority for the proposition that a supposed designation of highly classified records created by members of the USIC as "personal" would have any bearing on who would be entitled to receive them.   *See* ECF No. 373 at 5-12.

Trump claims (ECF No. 325 at 11-12) that *Rosen* is inapposite because that case involved a transmission-of-information, rather than retention-of-documents, prosecution under Section 793(e).   *See* 18 U.S.C. § 793(e) (penalizing a person in unauthorized possession of information relating to the national defense who "willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same *to any person not entitled to receive it*," or "willfully retains the same and fails to deliver it to *the officer or employee of the United States entitled to receive it*") (emphasis added).   The "entitled to receive it" wording is identical in both clauses, and it is illogical that it would have two different meanings within the same subsection of a single statute.   "In all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning."   *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1512, (2019); *see also Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (relying on "the basic canon of statutory construction that identical terms within an Act bear the same meaning").

Trump then urges this Court to reject the reasoning of *Morison* and *Rosen* (and presumably

---

[7]  The PRA defines "Presidential records" and personal records.   *See* 44 U.S.C. §§ 2201(2), 2202(3)).   By no stretch can classified records created by the USIC for the President's review be deemed documents "of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or official or ceremonial duties of the President."   They obviously do "relate to or have an effect on" such duties, and Trump provides no evidence to the contrary, nor could he.

the multiple cases outside the Fourth Circuit, such as *Schulte* and *Kim, supra*) for three unpersuasive reasons.   First, he claims that *Morison* was based on a misconstruction of the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA").   ECF No. 325 at 12.   But *Morison* did not rely on CIPA; instead, the court of appeals simply affirmed the district court decision, which explained that the classification system sets forth who is entitled to access classified information.   *See* 844 F.2d at 1074; 604 F. Supp. 662.   CIPA was not at issue.

Second, he asserts (ECF No. 325 at 12) that *Morison*'s reliance on the classification system was "much more than a 'gloss,'" and instead "violated separation of powers by reading into the statute an implied rulemaking delegation to the Executive Branch," whereas Congress did not authorize the Executive Branch in Section 793 to engage in rulemaking, *id.* at 13.   But a court's reliance on the Executive Branch's existing classification system setting forth who can receive classified information and in what circumstances—as the Constitution authorizes the President to do—does not amount to an implied rulemaking delegation.   The cases Trump cites arose in a completely different context.   Those cases involved congressional delegations of authority to administrative agencies, which found the delegations are valid so long as Congress establishes an "intelligible principle" for the agency's action.   *See Consumers' Research, Cause Based Com., Inc. v. FCC*, 88 F.4th 917, 923 (11th Cir. 2023); *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion).   In Section 793(e), by contrast, Congress prohibited certain acts depending on whether a person is "entitled to receive national-security-related information," without providing itself a definition of who is so entitled.   As Trump himself has acknowledged, *see* ECF No. 85 ¶ 24, the President as Commander in Chief has the constitutional authority to make those determinations.   U.S. Const. Art. II, § 2.   The President has the constitutional authority and responsibility "to classify and control access to information bearing on national security," to

determine "whether an individual is sufficiently trustworthy" to have "access to such information," and to determine an individual's need-to-know such information, all "flow[ing] primarily from this constitutional investment of power in the President" that "exists quite apart from any explicit congressional grant." *Department of Navy v. Egan,* 484 U.S. 518, 527 (1988).   And E.O. 13526 reflects those presidential determinations, which the National Security Act contemplates the President will make.   Accordingly, no congressional delegation of authority to the President is needed, and judicial use of the Executive Order to provide content for terms under Section 793 does not constitute an implied delegation.[8]

Trump's reliance on *Duran*, in which the Eleventh Circuit *rejected* a vagueness challenge to 18 U.S.C. § 951, is also misplaced.[9]   ECF No. 325 at 13 (citing *Duran*, 596 F.3d at 1291). Although the Eleventh Circuit noted that the statute and associated regulations defined some of the terms in Section 951 (*e.g.*, "agent" and "agent of a foreign government"), it never suggested that, had the terms not been explicitly defined, it would have found the statute to be unconstitutionally vague.   To the contrary, the Eleventh Circuit stressed the "strong presumption supporting the constitutionality of legislation," and applied the principle that "[w]here the language alone sets forth plainly perceived boundaries, no further inquiry is necessary." *Duran*, 596 F.3d

---

[8] Even if this were understood as a delegation, which it is not, "when a congressional statute confers wide discretion to the executive, no separation-of-powers problem may arise if the discretion is to be exercised over matters already within the scope of executive power." *Gundy*, 139 S. Ct. at 2137 (Gorsuch, J., dissenting) (quotation marks omitted).   That would be the case here.

[9] Pursuant to 18 U.S.C. § 951(a), "[w]hoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required in subsection (b), shall be fined under this title or imprisoned not more than ten years."   Subsection (b) specifies that "[t]he Attorney General shall promulgate rules and regulations establishing requirements for notification."

at 1290-91.   And, while the statute at issue in *Duran* was a "general intent crime, as there is no *mens rea* element on the face of the statute," *id.* at 1292, Section 793(e) requires the government to prove that the defendant acted "willfully."   As discussed below, "scienter requirements alleviate vagueness concerns."   *Gonzalez v. Carhart*, 550 U.S. 124, 149 (2007).

Finally, Trump wrongly claims that E.O. 13526 § 6.1(hh) "excludes from the definition of 'records' materials that are designated as Presidential Records under the PRA."   ECF No. 325 at 14.   To the contrary, the cited provision defines "records" as encompassing "the records of an agency *and Presidential papers or Presidential records*, as those terms are defined in title 44, United States Code."   E.O. 13526 § 6.1(hh) (emphasis added).   He also claims that the E.O.'s use of the term "need-to-know" is ambiguous.   ECF No. 325 at 14.   But "need-to-know" is a principle applied with respect to all dissemination of classified information, *see* E.O. 13526 § 4.1(a), and it is defined in the EO as "a determination within the executive branch in accordance with directives issued pursuant to this order that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function," *id.* § 6.1(dd).   In short, the phrase "entitled to receive" is well defined through the executive order, and Trump's vagueness challenge fails.

**2.     Trump Was Personally on Notice that Classified National Defense Information Must Be Handled Appropriately**

Not only do Section 793(e)'s text and judicial interpretations provide fair notice, but Trump's fair-notice claim is particularly weak and implausible because Trump was personally on notice concerning the importance of proper handling of classified national defense information. He acknowledged as much both before and during his presidency.   *See* ECF No. 85 ¶¶ 23-24, 37. Moreover, Trump obtained the charged documents during his term as Commander in Chief through intelligence briefings he received from high-level United States government officials.

*Id.* ¶ 20.   The allegations in the indictment alone show that he appreciated the legal imperative to appropriately handle such highly sensitive documents.

Two other contextual factors eliminate any doubt.   First, the classification markings on the documents put Trump on notice of the sensitivity of the documents, just as they would any other person.   The documents underlying 31 of the 32 charged counts were marked either SECRET, a classification level that applies to information the unauthorized disclosure of which reasonably could be expected to cause serious damage to the security of the United States, or TOP SECRET, a classification level that applies to information the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security.   *See* E.O. 13526; ECF No. 85 ¶ 93.   Many of the charged documents also are alleged to contain additional controlled Sensitive Compartmented Information markings.   ECF No. 85 ¶ 93.

Second, the contents of the documents themselves reinforce the obvious fact that these documents—which were presented to the sitting Commander in Chief—contained national-security information that the Government keeps closely held.   *See Hitselberger*, 991 F. Supp. 2d 101, 106 ("Mr. Hitselberger's vagueness challenge is particularly unpersuasive in light of the alleged content of the documents he retained.   The documents contained highly sensitive information. . . . These documents were marked as SECRET."); *see also Schulte*, 436 F. Supp. 3d at 753; *Kim*, 808 F. Supp. 2d at 53.   The documents included information "regarding defense and weapons capabilities of both the United States and foreign countries; United States nuclear programs; potential vulnerabilities of the United States and its allies to military attack; and plans for possible retaliation in response to a foreign attack."   ECF No. 85 ¶ 3.   Their unauthorized disclosure "could put at risk the national security of the United States, foreign relations, the safety of the United States military, and human sources and the continued viability of sensitive

intelligence collection methods." *Id.*

As illustrated above, Trump's own statements show that he was on notice about the consequences of mishandling classified information. Even before taking office, Trump made statements such as, "In my administration I'm going to enforce all laws concerning the protection of classified information. No one will be above the law," indicating that he knew laws governing classified information apply to everyone. ECF No. 85 ¶ 23. While in office, Trump specifically highlighted his knowledge that the appropriateness of accessing classified information changes after one's term in office ends, stating, "More broadly, the issue of [a former executive branch official's] security clearance raises larger questions about the practice of former officials maintaining access to our Nation's most sensitive secrets long after their time in Government has ended," and that any ongoing access must be to advance "national, not personal, interests." *Id.* ¶ 24. When displaying classified information post-presidency, he acknowledged that he could no longer declassify it and that an individual present should not get "too close." *Id.* ¶¶ 34-36. There is no basis for Trump to claim that he did not understand the sensitivity of the information or that it was unlawful to retain the charged documents outside spaces authorized for the storage of classified information, and while he may choose to make that argument to a jury, it provides no basis to dismiss the charges at this stage of the proceedings.

### 3.    Section 793(e)'s Willful Scienter Requirement Alleviates Any Possible Vagueness as to the Meaning of the Statute's Other Terms

Even if any questions remained about the scope of Section 793(e) as applied to Trump, and even if Trump had not personally been put on notice of its requirements, Trump's vagueness challenge would still fail. That is because "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 499 (1982). That is the case

21

here.    To prove a violation of § 793(e), the government must establish that Trump acted willfully. Although Trump points to the variable meanings that willfulness may have in other contexts, ECF No. 325 at 15, the meaning of willfulness is clear in this context—the Government must show that Trump knew his conduct was unlawful.    *See Bryan v. United States*, 524 U.S. 184, 195 (1998); *United States v. Brown*, No. 21-cr-348, ECF No. 304, at 22 (M.D. Fla. Dec. 12, 2022) (defining "willfully"); *Drake*, 818 F. Supp. 2d at 916 ("To prove Mr. Drake unlawfully retained documents under Section 793(e), the Government need prove only that he acted with simple willfulness.").

As the Supreme Court has repeatedly said, such "scienter requirements alleviate vagueness concerns."    *Gonzalez*, 550 U.S. at 149; *see also United States v. Ragen*, 314 U.S. 513, 524 (1942) ("A mind intent upon willful evasion is inconsistent with surprised innocence.").    And courts have applied that principle specifically in the context of Section 793.    *See, e.g.*, *Hitselberger*, 991 F. Supp. 2d at 107 ("[E]ven a simple scienter requirement may mitigate a statute's vagueness . . . .); *Kim*, 808 F. Supp. 2d at 53 ("[A]ny vagueness concerns about the meaning of 'information relating to national defense' are eliminated by the other limitations in the statute, most importantly the willfulness requirement."); *Rosen*, 445 F. Supp. 2d at 625 (defendant's unconstitutional vagueness argument "must ultimately fail" because Section 793 "requires the government to prove the defendants '*willfully*' committed the prohibited conduct") (quotation marks and citations omitted).

The same analysis applies here.    If Trump wishes to testify at trial that he was truly unaware during the relevant time period that he was not allowed to retain the charged documents, then he can present that defense and ask the jury to find that he did not act willfully.    Such factual issues are for the jury to resolve.    *See Gorin*, 312 U.S. at 32; *Morison*, 844 F.2d at 1073-74. They neither render Section 793(e) unconstitutionally vague nor provide a basis for the pretrial dismissal of an indictment.

**C.      Section 793 Is Neither Standardless Nor Encourages Discriminatory Enforcement**

Finally, Trump contends that § 793(e) is unconstitutionally vague because it is not enforced uniformly.[10]   *See* ECF No. 325 at 8, 15-16.   That claim, too, fails.   Due process requires legislatures to "establish minimal guidelines to govern law enforcement," *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quotation marks omitted), and such guidelines exist here in the form of the elements of Section 793(e) and the text of E.O. 13526.   In a criminal prosecution, the government must prove each of the elements of Section 793 beyond a reasonable doubt, and none of the terms of Section 793(e) affords prosecutors leeway to take arbitrary action.   Moreover, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."   *United States v. Williams*, 553 U.S. 285, 306, (2008).   Thus, the Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."   *Id.*   "There is no such indeterminacy here."   *Id.* And the need to satisfy the scienter requirement in Section 793 eliminates any concern that Trump's prosecution reflects an arbitrary exercise of prosecutorial authority.   *See Gonzalez*, 550 U.S. at 150 ("The scienter requirements narrow the scope of [an] [a]ct's prohibition and limit prosecutorial discretion."); *see also United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("The intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement.") (citing *United States v. Carlson,* 87 F.3d 440, 444 (11th Cir. 1996)); *Kim*,

---

[10]   Trump's argument that there are "numerous examples of cases involving similar circumstances where prosecutors brought no charges," ECF No. 325 at 8, is wrong.   *See generally* ECF No. 375.

808 F. Supp. 2d at 55 ("[T]he willfulness requirement in the statute effectively eliminates any concerns that Defendant may have been subject to arbitrary enforcement.").   For that reason as well, Trump's due process vagueness claim fails.

### D.    Trump's Challenge to Count 19 Lacks Merit

Trump's final argument is that Count 19 must be dismissed because Trump maintained the required security clearance for the document underlying that count.   ECF No. 325 at 16-17.   His argument provides no legal basis to dismiss the charge, for several reasons.   First, the Superseding Indictment properly tracks the statutory language and charges that Trump possessed the document charged in Count 19 without authorization and willfully retained it.   ECF No. 85 ¶ 93.   Nothing more is required at this stage of the proceedings, and the Court should reject Trump's invitation to peer behind the indictment to evaluate the underlying evidence.   *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (in considering a motion to dismiss, the court "is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes").

Second, at trial the Government will show that the evidence identified by Trump shows that he did *not* possess a security clearance after the end of his term in office.   As reflected in records produced in discovery and cited by Trump, "as a matter of law, the Q clearance granted to Donald J. Trump on February 9, 2017, terminated, by the conditions of its original grant, upon the completion of Mr. Trump's term as President of the United States at 12:00 PM on January 20, 2021."   ECF No. 262, Ex. 59 at USA-01116848.   Whether or not the Department of Energy's ("DOE") records were up to date or continued to reflect an active Q clearance after Trump's term had ended, it has no bearing on Trump's actual entitlement to access documents requiring a Q clearance.

Third, even if Trump possessed a Q clearance at any time after his Presidency (which he

did not), that would still not entitle him to possess the document charged in Count 19 at Mar-a-Lago, an active social club that was not an authorized location for the storage, possession, review, display, or discussion of classified documents.   ECF No. 85 ¶ 5.   Thus, Trump's retention of the document was unauthorized and willful, as charged in the Superseding Indictment.

Finally, Trump offers no evidence that he was aware at any time of what DOE's internal records reflected regarding his Q clearance, and thus those records could not bear on his state of mind.

Count 19 of the Superseding Indictment properly charges Trump with unauthorized and willful retention of a document containing national defense information, and there is no legal basis to dismiss the charge.

## III.   Conclusion

For the foregoing reasons, the Court should deny Trump's motion to dismiss the Section 793 counts under the vagueness doctrine.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:  /s/ *Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

Julie A. Edelstein
Senior Assistant Special Counsel
Special Bar ID #A5502949

March 7, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt