**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,   **Case No. 23-80101-CR**
   **CANNON/REINHART**
vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

      Defendants.

**PRESIDENT TRUMP'S REPLY BRIEF IN FURTHER SUPPORT OF
MOTION TO DISMISS THE INDICTMENT
BASED ON THE PRESIDENTIAL RECORDS ACT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1
DISCUSSION ......................................................................................................................... 2
    I.     President Trump's PRA Designations Occurred While He Was President .................... 2
    II.    There Can Be No "Unauthorized" Possession Of Records That A President Designates As "Personal" Under The PRA ....................................................................................... 2
    III.   The Separation Of Powers Doctrine Cannot Save The Superseding Indictment............ 5
    IV.   The Special Counsel's Office Cannot Escape *Judicial Watch* And History .................. 6
    V.    NARA's Unlawful Agency Action Supports Dismissal .................................................. 9
    VI.   NARA's Exclusive Remedy For Records Collection Is Civil Rather Than Criminal.... 9
CONCLUSION...................................................................................................................... 10

## **INTRODUCTION**

President Donald J. Trump respectfully submits this reply in support of his motion to dismiss the Superseding Indictment pursuant to the Presidential Records Act ("PRA") (the "Motion"), and in response to the amicus brief filed by America First Legal Foundation, ECF No. 360-1 (the "Amicus Brief") and the opposition brief by the Special Counsel's Office, ECF No. 373 (the "Opposition").

The Superseding Indictment must be dismissed.  First, because President Trump designated the documents at issue in Counts 1–32 as "personal records" pursuant to the PRA, the Special Counsel's Office is foreclosed as a matter of law from establishing that President Trump's retention of the records was "unauthorized" under 18 U.S.C. § 793(e).  DOJ, NARA, and even the Biden Administration's White House Counsel have taken similar positions by arguing that PRA designations by former Presidents and Vice Presidents are not reviewable in criminal proceedings. The Office's contrary position in these proceedings is meritless and precluded by estoppel principles.  Second, because NARA's actions were politically motivated and driven by the Biden Administration as a political weapon against President Trump, NARA's February 2022 sham referral and its May 2022 rejection of President Trump's executive privilege claim violated the Administrative Procedure Act.  As to the referral, in light of the unbroken chain of custom and history of NARA inaction with respect to PRA records designations, there were not "reasonable grounds to believe there ha[d] been a violation of Federal criminal law" for purposes of a referral under the Inspector General Act, 5 U.S.C. § 404(d).  Therefore, the non-Espionage Act charges must be dismissed as well.

**DISCUSSION**

I. **President Trump's PRA Designations Occurred While He Was President**

President Trump's designation of records as "personal" under the PRA by allegedly removing them from the White House while acting as President is not the product of "alchemy." Oppn. at 5. Rather, this is the only fair inference from the Office's allegation in the Superseding Indictment that President Trump "caused" boxes "to be transported" to Mar-a-Lago at a time when he was still President. ECF No. 85 ¶ 4.[1] The Office has acknowledged as much. ECF No. 277 at 3 (arguing that the "genesis" of this case dates back to "the tail end of the Trump Administration itself"); *see also* Oppn. at 19 (referring to "[President] Trump's eleventh-hour actions at the end of his presidency"). This is also the same inference DOJ, NARA, and a district court granted President Clinton in *Judicial Watch*. Similarly in January 2023, a NARA official wrote to former Presidents and Vice Presidents to inquire about "materials previously assumed to be personal in nature."[2] The Office makes no effort to address the judicial-estoppel implications of DOJ's representations to the court in *Judicial Watch* and *CREW v. Trump*. *See* Mot. at 10.

II. **There Can Be No "Unauthorized" Possession Of Records That A President Designates As "Personal" Under The PRA**

The Superseding Indictment "fail[s] to state an offense" with respect to Counts 1–32, *see* Fed. R. Crim. P. 12(b)(3)(B)(v), because the PRA authorized President Trump to maintain possession of records that he used Article II authority, as President, to designate as "personal."

---

[1] President Trump's subsequent decision to "return" records in the 15 Boxes or in response to a grand jury subpoena did not invalidate his earlier designation. Oppn. at 13. "By giving each President complete control over his personal papers, Congress hoped that it would encourage Presidents to create and preserve such papers, and that Presidents would later voluntarily donate those papers to the National Archives." ECF No. 327-1 at 63 (DOJ brief in *Judicial Watch*).

[2] Michael D. Shear, *As Archives Leans on Ex-Presidents, Its Only Weapon Is 'Please'*, N.Y. TIMES (Jan. 27, 2023), https://www.nytimes.com/2023/01/27/us/politics/national-archives-bush-classified-documents.html.

2

*See United States v. Berdeal*, 595 F. Supp. 2d 1326, 1328 (S.D. Fla. 2009) ("[A]n indictment fails as a matter of law if the defendants' charged conduct, even if true, does not violate the statute or provision cited in the indictment."); *United States v. Madera*, 528 F.3d 852, 859 (11th Cir. 2008); *United States v. Bobo*, 344 F.3d 1076, 1086 (11th Cir. 2003); *United States v. Matassini*, 565 F.2d 1297, 1313-14 (5th Cir. 1978).  Moreover, because of the ambiguous nature of the term "unauthorized" in 18 U.S.C. § 793(e), *see* ECF No. 325 at 7-8, the rule of lenity further supports dismissal.  *E.g.*, *United States v. Watts*, 896 F.3d 1245, 1255 (11th Cir. 2018).

The argument to the contrary by the Special Counsel's Office proceeds by characterizing the National Security Act, 50 U.S.C. § 3161(a), as a delegation of authority to the Executive Branch that led to the promulgation of Executive Order 13526.  *See* Oppn. at 7-8.  The National Security Act was signed in 1947, prior to the enactment of the PRA.  Pursuant to § 3161(a), in 1951, President Truman signed Executive Order 10290, which was one of a series of successive Executive Orders similar to Executive Order 13526.  *See* Executive Order No. 10290, 16 Fed. Reg. 9795 (Sept. 24, 1951).  Thus, by the time Congress enacted the PRA in 1978, it was well aware of the authorities the Office is attempting to rely on—and Congress did not draw the distinction pressed by the Office between classified and unclassified records in the PRA.  *See Hall v. United States*, 566 U.S. 506, 516 (2012) ("We assume that Congress is aware of existing law when it passes legislation.") (cleaned up).  To the contrary, as the Office acknowledges, the PRA "does not address the subject of classified information at all." Oppn. at 9.

The text of the National Security Act does not support the position of the Special Counsel's Office.  The Office admits that Congress "exempted the President" from the scope of the regulations authorized by 50 U.S.C. § 3161(a), but the Office contends that the "exemption" is irrelevant because it does not apply to a "former President."  Oppn. at 7.  The assertion

3

misapprehends the relevant timeframe. President Trump designated the records as personal under the PRA while he was still in Office, not as a "former President." At the time of the designation, he was expressly exempted from the provisions of Title 50, Subchapter VI, and regulations promulgated thereunder. *See* 50 U.S.C. § 3163. For that reason, the Eleventh Circuit's assertion in a different setting that Executive Order 13526 "pertains equally to former Presidents" is of no consequence for purposes of this motion. *Trump v. United States*, 2022 WL 4366684, at *8 (11th Cir. 2022).

Furthermore, Executive Order 13526 does not—and cannot—override the PRA. *See Marks v. CIA*, 590 F.2d 997, 1003 (D.C. Cir. 1978) ("Of course, an executive order cannot supersede a statute."). Under § 6.1(hh) of Executive Order 13526, the term "[r]ecords" means, in pertinent part, "Presidential papers or Presidential records, as those terms are defined in title 44, United States Code." Executive Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). Thus, the Executive Order addresses "classified [*presidential*] records." *See, e.g.*, *id.* § 3.2; *see also id.* § 3.4(b) ("The Archivist shall conduct a systematic declassification review program for classified records . . . ."). But the Executive Order makes no provision for records that a President designates as personal under the PRA, rather than "Presidential," *id.* § 6.1(hh)—whether or not they are allegedly classified. So Executive Order No. 13526 does not address, much less refute, President Trump's argument regarding his PRA designations.

The suggestion by the Special Counsel's Office that President Trump's designations of the records is implausible does not stand to reason. *See* Oppn. at 9-10. For example, in addition to excluding "personal records," the PRA's definition of "Presidential records" does not include "official records of an agency" or "extra copies of documents . . . ." 44 U.S.C. § 2201(2)(B). Surely no one from, for example, the National Security Council or the Intelligence Community

4

left individual original documents in the Oval Office following briefing to President Trump and failed to retrieve the documents before the end of President Trump's first term. The PRA conferred discretion on the President to designate those records as personal while he was in Office, 44 U.S.C. § 2203(b), NARA's "responsibility" under the PRA is expressly limited to records deemed "Presidential," *id.* § 2203(g)(1), and NARA did not "assume responsibility" for those records designated "Presidential" until after President Trump's first term, *id.* None of these provisions distinguish between classified and unclassified records.

The Special Counsel's Office cannot escape the import of the PRA's textual commitments of discretion and authority to President Trump during his first term. President Trump also made his PRA designations with the full force of the "Article II authority" referenced by the Office. Oppn. at 8; *see also* ECF No. 346 at 7 (reasoning that President Trump was "once the country's chief classification authority"). As a result of President Trump's designation of the records as personal under the PRA, Counts 1–32 fail to state an offense because his alleged retention of the documents was not "unauthorized." Therefore, these charges must be dismissed.

### III. The Separation Of Powers Doctrine Cannot Save The Superseding Indictment

There is no "constitutional question" for the Court to "avoid." Oppn. at 10. DOJ and NARA invoked the possibility of "stark separation of powers" problems in *Judicial Watch*, but in a manner that is at odds with the Special Counsel's Office. Mot. at 11. In *Judicial Watch*, the concern was that judicial review of President Clinton's individual document designations under the PRA would lead to impermissible interbranch conflict. The argument was well-founded. *See Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282, 290 (D.C. Cir. 1991) ("The Archivist also lacks the authority under the PRA to inspect the President's records or survey the President's records management practices."); *CREW v. Cheney*, 593 F. Supp. 2d 194, 225 (D.D.C. 2009) ("[T]he Court

5

is left with the undeniable conclusion that Congress vested almost no authority in the Archivist and NARA over Vice-Presidential records during a Vice President's term in office.").

As was DOJ's contention to another federal judge in 2023, which the Special Counsel's Office does not address, that "D.C. Circuit precedent provides that the Court lacks jurisdiction to review such day-to-day White House records management decisions under the Presidential Records Act." ECF No. 327-1 at 14. Indeed, Congress was "keenly aware of the separation of powers concerns that were implicated by legislation regulating the conduct of the President's daily operations," and sought "assiduously to minimize outside interference with the day-to-day operations of the President." *Armstrong I*, 924 F.2d at 290; *see also CREW v. Trump*, 924 F.3d 602, 609 (D.C. Cir. 2019) ("[C]ourts have no jurisdiction to review the President's 'day-to-day operations.'").

The unreviewable "day-to-day" operations of the White House include PRA designations by President Trump towards the end of his first term in Office. President Obama did not suggest otherwise when he promulgated Executive Order No. 13526 in 2009, decades after Congress enacted the PRA in 1978. Because the definition of "records" in Executive Order No. 13526 expressly does not reach personal records under the PRA, the Court would not disrespect the Executive Order or the Executive Branch by interpreting the PRA according to its plain terms. Thus, the constitutional avoidance cannon has no relevance here.

## IV. The Special Counsel's Office Cannot Escape *Judicial Watch* And History

President Clinton's classified tapes, President Reagan's classified diaries, and the recent position taken by President Biden's White Counsel all support President Trump's motion.

The Special Counsel's Office does not dispute that President Clinton's tapes contained classified information. That much is clear. In *Judicial Watch*, a DOJ attorney represented to a

6

federal judge that President Clinton "presumably classified the tapes as personal records by not transferring them" to NARA. Oppn. at 15. That contention, alone, should be extremely persuasive in this proceeding involving attorneys representing the same government. But President Trump's reliance on *Judicial Watch* is not limited to that part of the transcript. DOJ also contended in *Judicial Watch* that the PRA's "administrative enforcement scheme is exclusive," and argued that Congress would have to "pass a [new] law" to address any problems with Presidents not properly designating records under the PRA. Mot. at 13. There is a bill pending in the U.S. House of Representatives that may accomplish some of these things, but the absence of such an enactment in January 2021 further supports President Trump's position that the PRA applies without limitation to the records at issue in this case. *See id.* at 6 n.6. The Special Counsel's Office failed to address the significance of H.R. 1791.

The court in *Judicial Watch* agreed with DOJ based on reasoning that is persuasive here. The PRA only authorizes NARA to take possession of "records that were designated as Presidential" by the President. *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288, 300 (D.D.C. 2012). The designation decision is "to be made by the executive." *Id.* NARA lacks "mandatory or even discretionary authority" to challenge those designations, and the PRA provides NARA with "no role with respect to personal records." *Id.* at 291, 301. *Judicial Watch* is the only case cited by either side involving document-specific PRA *designations*, as opposed to Presidential "agreement[s]" with NARA in tension with the PRA and Presidents' PRA policies and "guidelines," which may be subject to limited review in civil and administrative proceedings. *See* Oppn. at 17-18. DOJ and NARA did not question President Clinton's possession of tapes containing classified information, and it was inconceivable to all involved in *Judicial Watch* that

7

there was *any* mechanism, much less a *criminal* mechanism, to recover them directly from a former President.

DOJ, NARA, and other agencies took the same approach with respect to President Regan's diaries, which "contained classified information." Oppn. at 11. The Special Counsel's Office tries to seize on the reference to "diaries" in the PRA's definition of "personal records," 44 U.S.C. § 2201(3)(A), but that argument is inconsistent with the Office's attempt to "harmonize[]" the PRA and Executive Order 13526. Oppn. at 10. If Executive Order No. 13526 and its predecessors apply to classified information in "personal" records under the PRA—which would be inconsistent with the Order's definition of "records," as noted above—then the Order's predecessors applied to President Reagan's diaries and President Clinton's tapes to the same extent as President Trump's personal records. These are indeed "real-world facts." *Id*. at 13. No one interpreted these authorities in that fashion until President Trump announced he was running for reelection.

Not even the Biden Administration. Specifically, "[t]he White House Counsel's Office and Mr. Biden's personal attorneys have argued . . . that . . . the [PRA] authorizes a former president or vice president to keep classified materials in locations that are not approved for storage of classified information at home, as long as those materials are not defined as presidential records under the [PRA]." Hur Report at 180. This Special Counsel's Office should not be permitted to prevail on the contrary position here in connection with efforts to incapacitate President Biden's chief political rival and the Republican nominee for President.

## V. NARA's Unlawful Agency Action Supports Dismissal

The non-Espionage Act counts in the Superseding Indictment cannot stand because they are based on unlawful agency action, in violation of the PRA and the Administrative Procedure Act. *See* Mot. at 10-13; *see also* Amicus Br. at 8-10.

Beginning in September 2021, NARA worked with the Biden Administration on a politically motivated mission to investigate President Trump by abusing the PRA. NARA's response to this political pressure renders unlawful the agency's actions, including the February 2022 sham referral, ECF No. 262 at 8-10, and the May 2022 purported waiver of President Trump's executive privilege, *id.* at 11. *See* Amicus Br. at 8-10 (citing, *inter alia*, *Aera Energy LLC v. Salazar*, 642 F.3d 212, 221 (D.C. Cir. 2011) (reasoning that "political pressure invalidates agency action . . . when it shapes, in whole or in part, the judgment of the ultimate agency decisionmaker")). The Special Counsel's Office cites the Inspector General Act, 5 U.S.C. § 404(d), but fails to respond to President Trump's additional argument that the sham referral was unlawful. In light of NARA's customs and practices, there were not "reasonable grounds to believe there ha[d] been a violation of Federal criminal law," under § 404(d), because President Trump's retention of "personal" PRA records was not "unauthorized" under § 793(e). *Compare* Oppn. at 21, *with* Mot. at 10-11. Therefore, the referral was an improper agency action, in violation of the APA. Courts have dismissed charges that are based on unlawful agency action. *See* Amicus Br. at 17-19 (citing cases).

## VI. NARA's Exclusive Remedy For Records Collection Is Civil Rather Than Criminal

Finally, it is straightforward to "reconcile[]" President Trump's position that a President's PRA designations of individual documents as "personal" cannot lead to "unauthorized" possession of those documents—which is supported by prior positions of DOJ, NARA, and the Biden

9

Administration's White House Counsel—with the exclusive nature of the civil recovery mechanism that has been incorporated into the PRA. Oppn. at 19; *see also* Prosecutorial Misconduct Oppn. at 5 (conceding that "NARA . . . has no enforcement authority"). "Agreements," "policies," and "guidelines" relating to the PRA may be reviewable, but that must occur in civil proceedings rather than criminal prosecutions. *Am. Historical Ass'n v. Peterson*, 876 F. Supp. 1300, 1313 (D.D.C. 1995); *Cheney*, 593 F. Supp. 2d at 217.

In addition, to our knowledge, there has never been an effort to use a civil replevin action to collect allegedly Presidential records from a former President. Rather, all replevin actions for this purpose have been brought against third parties and Presidential successors who never wielded Article II authority and the discretion to designate records as personal conferred by Congress in the PRA. The absence of a criminal penalty in the PRA, and the existence of an exclusive civil recovery mechanism that has not been applied to former Presidents, are both consistent with this motion. And "[s]uch a lack of historical precedent is generally a telling indication of a severe constitutional problem with the asserted power." *Trump v. Anderson*, 2024 WL 899207, at *5 (Mar. 4, 2024) (cleaned up); *see also* Mot. at 10 (citing additional cases). The Special Counsel's Office expresses concern that a former President might try to "sell" personal documents to the "highest bidder." Oppn. at 20. That is what President Clinton did by permitting Taylor Branch to write about tapes containing classified information. In response, DOJ and NARA hardly lifted a finger, and no one raided President Clinton's home. The Special Counsel's Office should not be permitted to predicate an unlawful prosecution on a contrary interpretation of the PRA.

## CONCLUSION

For the foregoing reasons, the Superseding Indictment must be dismissed.

Dated: March 13, 2024

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## **CERTIFICATE OF SERVICE**

I, Christopher Kise, certify that on March 13, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher Kise*
Christopher Kise