UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101(s)-CR-CANNON

UNITED STATES OF AMERICA

v.

DONALD J. TRUMP,
WALTINE NAUTA, and,
CARLOS DE OLIVEIRA,

     Defendants.

_____/

**BRIEF OF PROFESSOR SETH BARRETT TILLMAN AND LANDMARK LEGAL
FOUNDATION AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT TRUMP'S
MOTION TO DISMISS THE INDICTMENT [ECF NO. 326]**

Michael J. O'Neill*
Landmark Legal Foundation
19415 Deerfield Ave.
Suite 312
Leesburg, VA 20176
(703) 554-6100
mike@landmarklegal.org

Josh Blackman*
Josh Blackman LLC
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003
josh@joshblackman.com

Michael A. Sasso
Florida Bar No. 93814
Sasso & Sasso, P.A.
1031 West Morse Boulevard, Ste. 120
Winter Park, Florida 32789
(407) 644-7161
masasso@sasso-law.com
notice@sasso-law.com
Counsel for Amici, Professor Seth Barrett
Tillman and the Landmark Legal Foundation

*Pro Hac vice forthcoming*

## Table of Contents

Corporate Disclosure Statement ........................................................................................... 3

Interest of *Amici Curiae* .................................................................................................... 4

Introduction ......................................................................................................................... 5

I. A position that is not "continuous" cannot be an "Officer of the United States" ...................... 6

    A. *United States v. Hartwell* found that an "office ... embraces the ideas of tenure, duration, emolument, and duties" ........................................................................................................ 6

    B. *United States v. Germaine* found that the duties of an "Officer of the United States" must be "continuing and permanent, not occasional or temporary" ...................................................... 7

    C. *Buckley v. Valeo* applied *Germaine* to the Appointments Clause .......................................... 7

    D. *Morrison v. Olson* invoked *Germaine* to determine whether the Independent Counsel was an Inferior "Officer" ............................................................................................................ 8

    E. *Lucia v. SEC* recognized that a person who holds a non-continuous position is not an "Officer of the United States," but rather is an "Employee of the United States .................... 11

II. The Special Counsel, who holds a non-continuous position, is not an "Officer of the United States," but is, at most, an "employee of the United States," who cannot exercise the "significant authority" of a United States Attorney ............................................................................ 14

    A. *Morrison* recognized that the now-defunct Independent Counsel position was "temporary," and not continuous ...................................................................................................... 15

    B. The Office of Legal Counsel, contra *Morrison*, concluded that the Independent Counsel is a continuous position ................................................................................................ 15

    C. The Special Counsel Regulations authorize the Attorney General to establish an ad hoc, temporary position for a limited purpose and that position lacks duration ............................ 17

    D. Under *Lucia*, the temporary Special Counsel is not an "Officer of the United States," but is an "Employee of the United States" ....................................................................... 20

    E. The Special Counsel, a mere "employee of the United States," cannot be vested with the "significant authority" of a United States Attorney ................................................ 21

III. The Special Counsel's past actions may be salvageable by operation of the De Facto Officer Doctrine, but going forward his work can continue only if supervised in the normal course by the U.S. Attorney for the Southern District of Florida ...................................................... 23

Conclusion ........................................................................................................................ 24

**Corporate Disclosure Statement**

Landmark Legal Foundation is a nonpartisan, 501(c)(3) not-for-profit public interest legal organization headquartered in Kansas City, Missouri with an office in Leesburg, Virginia. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

### Interest of *Amici Curiae*[1]

Professor Seth Barrett Tillman, an American national, is a member of the regular full-time faculty in the Maynooth University School of Law and Criminology, Ireland/Scoil an Dlí agus na Coireolaíochta Ollscoil Mhá Nuad. Professor Tillman is one of the few academics who has written extensively on the Constitution's "office"- and "officer"-language. Moreover, Tillman's publications have extensively discussed the original public meaning of the Appointments Clause and the caselaw expounding on that clause. And his publications have discussed the application of that caselaw to prosecutions involving special counsels.

Landmark Legal Foundation is a national public interest legal organization dedicated to preserving the principles of limited government, separation of powers, federalism, advancing an originalist approach to the Constitution, and defending individual rights. Landmark has filed numerous briefs advocating for the separation of powers in courts at all levels. These cases include, *Loper Bright Enterprises v. Raimondo* (U.S. Supreme Court), *Trump v. Anderson* (U.S. Supreme Court), *Moore v. United States* (U.S. Supreme Court), *West Virginia v. EPA* (U.S. Supreme Court) and *Louisiana v. Biden* (5th Circuit).

---

[1] No counsel for a party authored this brief in whole or in part; and no person or entity, other than *amici* and their counsel, made a monetary contribution intended to fund the preparation and submission of this brief.

**Introduction**

      Disputes about offices and officers generally result from two types of questions. First, there are procedural questions: how is the office created, how is a person appointed to that office, and how can the officer's tenure be terminated? Second, there are substantive questions: what is the scope of the officer's powers and what level of supervision or direction is the officer subject to? *United States v. Trump*[2] implicates both aspects of Special Counsel Smith's role.

      Procedurally, Special Counsel Smith's position was (purportedly) created by the Attorney General to resolve a particular controversy. *See* 28 C.F.R. § 600.1. And this Special Counsel position will cease to exist when that investigation is completed. 28 C.F.R. § 600.8(c). This ephemeral position's duties were and are only "temporary" rather than "continuing and permanent." *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (citing *United States v. Germaine*, 99 U.S. 508, 511–12 (1879)). Furthermore, under longstanding and controlling precedent, a position that is not "continuous" is not an "office" at all. *Id.* At most, Smith's temporary position is properly characterized as a mere "employee." *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976). Special Counsel Smith does not hold an "office," and he is not an "Officer of the United States." To paraphrase Justice Scalia's *Morrison* dissent, this employee came as an employee.

      Substantively, the regulations vest the Special Counsel with "the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney." 28 C.F.R. § 600.6. A United States attorney is considered an *inferior* "Officer of the United States." *United States v. Hilario*, 218 F.3d 19, 25 (1st Cir. 2000). However, a mere "employee" cannot exercise the broad prosecutorial powers of a United States attorney.

      Both procedurally and substantively, the prosecutorial actions taken by Special Counsel Smith are *ultra vires* with respect to the Special Counsel Regulation. Likewise, Smith's exercising the powers of an "Officer of the United States" in his capacity as an employee of the United States violates the Supreme Court's Appointments Clause jurisprudence. While Smith's and his subordinate's past actions may be salvageable by the De Facto Officer Doctrine, his future actions can continue under the current regulations, if at all, only under the normal supervision of the politically accountable United States attorney for the Southern District of Florida.

---

[2] Case No. 23-80101(s)-CR-CANNON (S.D. Fla. filed June 8, 2023).

**I. A position that is not "continuous" cannot be an "Officer of the United States"**

Under longstanding Supreme Court precedent, an "Officer of the United States" position's duties must be "continuing and permanent, not occasional or temporary." *United States v. Hartwell*, 73 U.S. 385, 393 (1868); *United States v. Germaine*, 99 U.S. 508, 511–12 (1879). And the Supreme Court has cited this doctrine in seminal Appointments Clause cases like *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976), and *Morrison v. Olson*, 487 U.S. 654, 672 (1988). Furthermore, *Lucia v. SEC* recognized that a person who holds a non-continuous position is not an "Officer of the United States," but rather is at most an "employee" of the United States. 585 U.S. 237, 245 (2018). These precedents are long-established and controlling.[3] But Special Counsel Smith's opposition to the motion to dismiss has not cited any of these cases concerning the continuity requirement of an "Officer of the United States."

**A. *United States v. Hartwell* found that an "office ... embraces the ideas of tenure, duration, emolument, and duties"**

In *United States v. Hartwell*, a clerk in the Treasury Department was charged with embezzlement. 73 U.S. 385, 387 (1868). The relevant federal statute applied to an "officer" who was "charged with the safe-keeping of the public money." *Id.* at 390. The defendant argued that because he was not an "officer," the indictment was defective. The Supreme Court disagreed and found that he was an "officer." Justice Swayne, writing for the majority, offered the following definition of an office: "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties." *Id.* at 393.

The Court distinguished a "government office" from a "government contract." *Id.* A "government contract" is, "from its nature ... necessarily limited in its duration and specific in its objects." *Id.* With such a specific and short-term arrangement, "[t]he terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other." *Id.* In *Hartwell*, the clerk "was appointed by the head of a department within the meaning of the constitutional provision upon the subject of the appointing power." *Id.* at 393–94. The Court

---

[3] The Articles of Confederation included ad hoc trial courts to settle disputes between States. These judicial posts would not be considered offices. *See* Seth Barrett Tillman & Josh Blackman, *Offices and Officers of the Constitution, Part IV: The Appointments, Impeachment, Commissions, and Oath or Affirmation Clauses*, 62 S. Tex. L. Rev. 455, 472–73 (2023), https://ssrn.com/abstract=4432246.

did not expressly connect the term "officer" in the embezzlement statute with the phrase "Officer of the United States" in the Appointments Clause. However, the Court's discussion of the appointment being made by the head of the department suggests the two concepts were closely related—rightly so, in *Amici*'s view.

**B. *United States v. Germaine* found that the duties of an "Officer of the United States" must be "continuing and permanent, not occasional or temporary"**

The Supreme Court would apply the *Hartwell* four-factor test a decade later in *United States v. Germaine*, 99 U.S. 508 (1879). In this case, a government surgeon was charged with extortion. *Id.* at 509. Similar to the law at issue in *Hartwell*, the relevant federal statute here applied to "[e]very officer of the United States." *Id.* This language tracks much more closely with the "Officer of the United States"-language in the Appointments Clause. In contrast to *Hartwell*, which turned on the meaning of "officer," *Germaine* turned on whether the surgeon was, in fact, an "officer of the United States." The surgeon offered a defense: because he was not appointed pursuant the Appointments Clause, he could not be an "officer of the United States." *Id.* Rather, the argument went, he was merely "an agent or employé working for the government and paid by it." *Id.*

The Supreme Court agreed with the defendant. In *Germaine*, Justice Miller's opinion for a unanimous Court applied *Hartwell*'s four-factor test. Because the position and its duties were not "continuing and permanent," but rather were "occasional and intermittent," the surgeon was "not an officer of the United States." *Id.* at 511–12. Therefore, the indictment was dismissed.

The Court would apply the *Germaine-Hartwell* framework in *Aufformordt v. Hedden*, 137 U.S. 310 (1890). The Court found that a merchant appraiser was not an "'officer' within the meaning of the [Appointments] clause of the constitution ...." *Id.* at 327. In reaching this conclusion, the *Aufformordt* Court applied the *Hartwell* four-factor test.

**C. *Buckley v. Valeo* applied *Germaine* to the Appointments Clause**

*Germaine*, and *Hartwell* before it, were not direct interpretations of Article II's definition of "Officer of the United States." Rather, those cases interpreted the phrase "officer" and "Officer of the United States" in federal statutes. However, *Buckley v. Valeo* was a direct interpretation of Article II's definition of "Officer of the United States." 424 U.S. 1, 125–26 (1976). And, *Buckley* cited the interpretations from *Germaine*. Members of the Federal Election Commission, the Court found, were "officers of the United States," and thus those positions must be filled in conformity

with Appointments Clause. *Id.* at 126 n.162. The *Buckley* Court's analysis, however, did not focus on the four factors identified in *Germaine* and *Hartwell*: "tenure, duration, emolument, and duties." Instead, *Buckley* focused on whether the "appointee exercis[es] significant authority pursuant to the laws of the United States." *Id.* at 126.

*Buckley* cited *Germaine* to distinguish between "officers of the United States" and "employees of the United States." 424 U.S. at 126 n.162. Employees of the United States "are lesser functionaries subordinate to officers of the United States," whereas "officers of the United States"—such as Federal Election Commission members—are "appointed for a statutory term, [and] are not subject to the control or direction of any other executive, judicial, or legislative authority." *Id.* This footnote does not expressly refer to *Germaine*'s four factors, though the phrase "statutory term" suggests some degree of continuity from one office-holder to the next. For this reason, a temporary position, which terminates when a specific task is completed, would not fit in *Buckley*'s rubric as to what constitutes an "Officer of the United States" per the Appointments Clause. Accordingly, the Office of Legal Counsel (OLC) considers the "element of continuance [as] incorporated in the Court's references to 'significant authority.'" *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 109 (2007) (hereinafter "2007 OLC Memorandum") (citing *Buckley*, 424 U.S. at 126 & n.162). Along similar lines, in *Lucia*, Justice Sotomayor recognized continuity and "significant authority" as the "two *prerequisites* to officer status." *Lucia*, 585 U.S. at 269 (Sotomayor, J., dissenting) (emphasis added).

**D. *Morrison v. Olson* invoked *Germaine* to determine whether the Independent Counsel was an Inferior "Officer"**

Fast-forward another decade to *Morrison v. Olson*, 487 U.S. 654 (1988). Chief Justice William Rehnquist's majority opinion once again cited *Germaine* for the proposition that "[t]he Constitution for purposes of appointment ... divides all its officers [of the United States] into two classes." *Id.* at 671 (quoting *Germaine*, 99 U.S. at 509). In the very same paragraph, the Supreme Court stated, "[t]he initial question is, accordingly, whether appellant is an 'inferior' or a 'principal' officer." *Id.* at 670–71. However, in a footnote, Chief Justice Rehnquist added, "[i]t is clear that appellant is an 'officer' of the United States, not an 'employee.'" *Id.* at 671 n.12 (citing *Buckley*, 424 U.S. at 126 & n.162).

The incongruity between *Morrison* and *Buckley* becomes apparent when the *Morrison* Court expressly relied on three of the four *Germaine* factors—"tenure, duration ... and duties"—

8

to help draw the line "between 'inferior' and 'principal' officers." *Id.* at 671. But *Germaine*'s four-factor test had nothing to do with whether a position was held by an "inferior" or "principal" officer. *Germaine*, technically, wasn't even an Appointments Clause case. Rather, *Germaine* concerned the requirements for a position to be an "Officer." Chief Justice Rehnquist appears not to have been troubled by this incongruity: He simply applied *Germaine*'s factors to find that Morrison was an inferior officer.[4]

First, with respect to tenure, *Morrison* observed that "the fact that [the Independent Counsel] can be removed by the Attorney General indicates that she is to some degree 'inferior' in rank and authority." *Morrison*, 487 U.S. at 671. Second, with respect to duration, the Court noted that "the office of independent counsel is 'temporary' in the sense that an independent counsel is appointed essentially to accomplish a single task, and when that task is over the office is terminated, either by the counsel herself or by action of the Special Division." *Id.* at 672. The Chief Justice added that "[u]nlike other prosecutors, appellant has no ongoing responsibilities that extend beyond the accomplishment of the mission that she was appointed for and authorized by the Special Division to undertake." *Id.* Third, with respect to duties, the Court explained that the Independent Counsel "is empowered by the Act to perform only certain, limited duties." *Id.* at 671. Specifically, she "can only act within the scope of the jurisdiction that has been granted by the Special Division pursuant to a request by the Attorney General." *Id.* at 672. The Court concluded, "these factors relating to the 'ideas of tenure, duration ... and duties' of the independent counsel ... are sufficient to establish that [Morrison] is an 'inferior' officer in the constitutional sense." *Id.* (citing *Germaine*, 99 U.S. at 511).

Chief Justice Rehnquist's analysis got the analysis completely backwards. Under *Germaine*, the second and third factors in particular—the temporary nature of the position and the narrowly-circumscribed duties—show that the Independent Counsel is *not* an "Officer," and by implication, not an "Officer of the United States," at all. *Germaine* had nothing at all to do with whether an officer was *inferior*. Justice Scalia's dissent heavily criticized how the majority opinion applied the *Germaine* test. Justice Scalia questioned why these factors, "even if applied correctly to the facts of *Morrison*, are determinative of the question of inferior officer status." *Id.* at 719

---

[4] Here, *Amici* take no position on whether the *Morrison* Court majority was correct that the Independent Counsel was an *inferior* "Officer of the United States," rather than, as Justice Scalia concluded, a *principal* "Officer of the United States."

(Scalia, J., dissenting). Justice Scalia dismissed the statements from *Germaine* (and, by extension, *Hartwell*) as "dictum in a case where the distinguishing characteristics of inferior officers versus superior officers were in no way relevant, but rather only the distinguishing characteristics of an 'officer of the United States' (to which the criminal statute at issue applied) as opposed to a mere employee." *Id.*

Justice Scalia was absolutely correct that these cases had nothing to do with resolving the debate "of inferior officers versus superior officers." *Id.* Yet, he was perhaps too hasty in labeling the *Germaine* and *Hartwell* tests as dicta: the Supreme Court discussed those four factors to determine whether the surgeon and clerk were in fact "officers," rather than "employees." Albeit, those cases were not interpretations of Article II's "Officer of the United States"-language.

Justice Scalia's more potent argument was his first one: He questioned whether the majority "applied correctly [*Germaine*] to the facts of" *Morrison. Id.* The Court did not. (Justice Scalia did not think *Germaine* was relevant, at all, to adjudicating the *Morrison* case.) Justice Scalia's dissent suggested that only a principal "Officer of the United States," i.e. an appointee subject to the President's removal power, could exercise the sweeping power the Independent Counsel exercised. *Id.* at 717–18 & n.2 (noting that "the independent counsel exercises within her sphere the 'full power' of 'the Attorney General'" and "it seems to me impossible to maintain that [the Independent Counsel's] authority is so 'limited' as to render her an inferior officer" (emphasis omitted)). By contrast, the *Morrison* majority concluded that an "inferior officer" could exercise such power, even though Morrison herself was insulated from at-will removal by the President. Neither opinion resolved where a mere "employee" falls on that hierarchy. Specifically, the case did not address whether a "lesser functionar[y]," *Buckley*, 424 U.S. 126, n.162, who is entirely shielded from at-will removal by the President, can wield such broad prosecutorial power.

In *Morrison*, "none of the parties disputed" that the Independent Counsel was an "Officer of the United States," rather than an "employee." 2007 OLC Memorandum at 114. *Amici* deem that issue to have been waived in *Morrison*—but that issue is squarely presented in this case.[5]

---

[5] This issue also seems to have been waived in *United States v. Arthrex*. 594 U.S. 1, 13 (2021).

If Morrison was an "employee of the United States," then she was not an "Officer of the United States"—principal or inferior.[6]

**E. *Lucia v. SEC* recognized that a person who holds a non-continuous position is not an "Officer of the United States," but rather is an "Employee" of the United States**

The Supreme Court returned to the continuity requirement of an office in *Lucia v. SEC*. 585 U.S. 237 (2018). *Lucia*, unlike *Germaine* and *Hartwell*, concerned an Appointments Clause challenge expressly relating to the clause's "Officer of the United States"-language. Specifically, *Lucia* presented the question of whether administrative law judges (ALJs) within the Securities and Exchange Commission are "Officers of the United States" who are subject to the Appointments Clause or are "instead non-officer employees." *Id.* at 245. Justice Kagan's majority opinion neatly summarized the issue:

> So if the Commission's ALJs are constitutional officers, Lucia raises a valid Appointments Clause claim [because the ALJs were not appointed under the aegis of the Appointments Clause]. The only way to defeat his position is to show that those ALJs are not officers at all, but instead non-officer employees—part of the broad swath of "lesser functionaries" in the Government's workforce. *Buckley v. Valeo*, 424 U.S. 1, 126, n.162 (1976) (*per curiam*). For if that is true, the Appointments Clause cares not a whit about who named them. See *United States v. Germaine*, 99 U.S. 508, 510 (1879).

*Lucia*, 585 U.S. at 245. Next, *Lucia* cited "two decisions" that "set out this Court's basic framework for distinguishing between officers and employees": *Germaine* and *Buckley*. *Id.*

Justice Kagan observed that "*Germaine* held that 'civil surgeons' (doctors hired to perform various physical exams) were mere employees because their duties were 'occasional or temporary' rather than 'continuing and permanent.'" *Id.* (quoting *Germaine*, 99 U.S. at 511–12). Justice Kagan continued, "[s]tressing 'ideas of tenure [and] duration,' the [*Germaine*] Court there made clear that an individual *must* occupy a 'continuing' position established by law to qualify as an officer." *Id.* (quoting *Germaine*, 99 U.S. at 511) (emphasis added). *Must*, not *may*. To be sure, the *Lucia* Court declared that the "position"—that is, the office—"must" be "continuing," and not merely that the "duties" must be "continuing." *Id.*

---

[6] *Amici* take no position on whether Morrison's appointment satisfied the specific requirements of non-Article II hiring under federal law. These grounds may have rendered Morrison's appointment invalid on different, statutory, or other subconstitutional, grounds altogether.

Justice Kagan then turned to *Buckley*, which "set out another requirement [that was] central to" *Lucia*. *Id. Buckley* "determined that members of a federal commission were officers only after finding that they 'exercis[ed] significant authority pursuant to the laws of the United States.'" *Id.* (quoting *Buckley*, 424 U.S. at 126). This "inquiry ... focused on the extent of power an individual wields in carrying out his assigned functions." *Id.* at 245. Indeed, Chief Justice Rehnquist found that Alexia Morrison was an "inferior officer" who "lack[ed] policymaking or significant administrative authority." *Morrison*, 487 U.S. at 692. *Morrison*'s reference to "significant administrative authority" reflects *Buckley*'s "significant authority" test. *Lucia* built on *Morrison*, which had built on *Buckley*, which had built on *Germaine*.

However, the *Morrison* Court did not follow the "continuity" rationale from *Germaine*. To the contrary, Chief Justice Rehnquist concluded that Morrison was an "inferior officer," in part, because her position was "temporary." *Id.* at 672. Thus, *Morrison* turned *Germaine* on its head. Under *Germaine*, as applied by *Lucia*, a "temporary" position is neither a principal nor an inferior "Officer of the United States" at all. Rather, one who holds a mere temporary position is, at most, a mere "employee of the United States." *Lucia*, and not *Morrison*, is the Supreme Court's most recent statement of the law in regard to the continuity-of-office requirement.

In contrast to Chief Justice Rehnquist's *Morrison* opinion, Justice Kagan's opinion in *Lucia* correctly explains that the *Germaine* Court "made clear that an individual *must* occupy a 'continuing' position established by law to qualify as an officer." *Lucia*, 585 U.S. at 245 (emphasis added). Again, *must*, not *may*. Justice Kagan and the *Lucia* Court (along with Justice Scalia's *Morrison* dissent) correctly applied the four-factor test from *Germaine*; by contrast, Chief Justice Rehnquist and the *Morrison* Court had applied that test incorrectly. Indeed, Justice Kagan elaborated on the temporal requirement of "Officers of the United States." Citing *Germaine*, Kagan noted that Tax Court special trial judges—whose appointments were challenged in *Freytag v. Commissioner*, 501 U.S. 868 (1991)—held an "ongoing" and "continuing office established by law." *Lucia*, 585 U.S. at 246. In other words, the office was not a "'temporary'" one, and the duties were not executed on an "'episodic ... basis.'" *Id.* (quoting *Freytag*, 501 U.S. at 881).

Again, in *Lucia*, Justice Kagan correctly read *Germaine* in the way Chief Justice Rehnquist had not. The only open question from her opinion is whether a "temporary" position can ever be an "Officer of the United States." *See, e.g., Metcalf & Eddy v. Mitchell*, 269 U.S. 514, 520 (1926) (explaining that among the "*essential* elements of a public station" is that it is "*permanent* in

12

character" (emphases added)). Is permanence a necessary factor, or might a temporary position still be an "Officer of the United States" if other indicia compensate for the lack of permanent duration? In other words, under *Lucia*, can a "temporary" position ever be an "Officer of the United States"?

The majority opinion was less than clear on this point. However, Justice Sotomayor's dissent answered this question unequivocally: "[T]his Court's decisions," she wrote, "currently set forth at least two *prerequisites* to officer status." *Lucia*, 585 U.S. at 269 (Sotomayor, J., dissenting) (emphasis added). Justice Sotomayor explained that the first of these "prerequisites" is that the "individual *must* hold a 'continuing' office established by law." *Id.* (emphasis added). *Must*, not *may*. The second prerequisite is *Buckley*'s "significant authority" test. *Amici* agree with Justice Sotomayor's reading of the majority opinion and long-standing precedent. Both the majority's opinion and Sotomayor's dissent illustrate why the *Morrison* Court flubbed its application of *Germaine*'s continuity-of-office prong.[7]

Justice Kagan's *Lucia* opinion establishes that a "temporary" position is not an "Officer of the United States." Kagan's opinion is not new law: it relies on *Germaine*. As a result, *Lucia* casts some doubt on the line drawn by *Morrison v. Olson*.[8] But in any event, *Morrison*'s conclusion

---

[7] *Amici* take no position on whether the varying definitions of "Officer of the United States" advanced in *Hartwell, Germaine, Buckley, Morrison*, and *Lucia* are consistent with the original public meaning of the Constitution. *See generally* Seth Barrett Tillman & Josh Blackman, *Part III, The Appointments, Impeachment, Commissions, and Oath or Affirmation Clauses*, 62 S. Tex. L. Rev. 349 (2023). Were the Supreme Court to revisit *Morrison*, the constitutionality of today's quasi-independent special counsels may be in doubt due to the separation of powers reasons identified in Justice Scalia's *Morrison* dissent. As a general matter, one President cannot limit the removal powers of a subsequent President. *See* Free Enter. Fund v. PCAOB, 561 U.S. 477, 497 (2010) ("Perhaps an individual President might find advantages in tying his own hands. But the separation of powers does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.' The President can always choose to restrain himself in his dealings with subordinates. He cannot, however, choose to bind his successors by diminishing their powers, nor can he escape responsibility for his choices by pretending that they are not his own." (quoting New York v. United States, 505 U.S. 144, 182 (1992))).

[8] One district court attempted to reconcile this tension by concluding that "'Temporary' has a somewhat different meaning in the context of *Morrison*'s principal-inferior officer test than in the context of *Lucia*'s officer-employee test." In re Grand Jury Investigation, 315 F. Supp. 3d 602, 644 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019). Attempting to give the same word different meanings is difficult to square with the fact that both *Morrison* and *Lucia* relied on the same precedent: *Germaine*.

about the now-defunct Independent Counsel Statute is not binding authority with regard to the extant Special Counsel Regulations.

## II. The Special Counsel, who holds a non-continuous position, is not an "Officer of the United States," but is, at most, an "employee of the United States," who cannot exercise the "significant authority" of a United States Attorney

*Germaine* and *Hartwell* established that continuity is an element to determine whether a position is an "office." And *Lucia*, which applied *Germaine* in the Appointments Clause context, observed that a person who holds a non-continuous position would not be an "Officer of the United States," but would be a mere employee of the United States. *Buckley v. Valeo*, however, offers a further test to determine whether a position is an "Officer of the United States": Does the position "exercis[e] significant authority pursuant to the laws of the United States"? *Buckley*, 424 U.S. at 126. *Buckley* explained that members of the Federal Election Commission undertake "the performance of a significant governmental duty exercised pursuant to a public law." 424 U.S. at 141. A position that exercises such "significant authority" or "significant governmental duty" must be structured as an "Officer of the United States" that is appointed pursuant to the Appointments Clause.

These tests are closely related. In *Lucia*, Justice Sotomayor recognized continuity and "significant authority" as the "two *prerequisites* to officer status." *Lucia*, 585 U.S. at 269 (Sotomayor, J., dissenting) (emphasis added). Indeed, the Office of Legal Counsel considers *Germaine*'s "element of continuance incorporated in the Court's references to 'significant authority.'" 2007 OLC Memorandum at 109 (citing *Buckley*, 424 U.S. at 126 & n.162). These two lines of precedent can be tied together. *First*, "significant authority" can only be exercised by a continuous "Officer of the United States." *Second*, a person who holds a non-continuous position is not an "Officer of the United States," but is, at most, an "employee of the United States," and therefore cannot exercise "significant authority."

These two lines of precedent are sufficient to resolve the motion to dismiss based on the Appointments Clause. The Special Counsel does not hold a "continuous" position, so he is not an "officer" of any kind, and therefore he cannot be an "Officer of the United States." At most, the Special Counsel is an employee of the United States. Yet the Special Counsel is still vested with the sweeping powers of a United States attorney, who is (and must be) an Officer of the United

States. But a mere employee of the United States cannot exercise this "significant authority." Ultimately, the prosecutorial actions taken by the Special Counsel, as presently constituted, are unlawful. And for that reason, the Defendant's motion to dismiss should be granted.

**A.** ***Morrison*** **recognized that the now-defunct Independent Counsel position was "temporary," and not continuous**

In Part I.D *supra*, *Amici* explained how the *Morrison* Court ruled that the Independent Counsel was a "temporary," non-continuous position. *Morrison*, 487 U.S. at 671. In short, an Independent Counsel was appointed to "accomplish a single task," and when that prosecution was completed, "the office [was] terminated." *Id.* at 672. The Independent Counsel's position was limited to a specific "mission," and had "only certain, limited duties." *Id.* Chief Justice Rehnquist used the ephemeral nature of this position to conclude that the Independent Counsel was an *inferior* "Officer of the United States." But under *Germaine*, as recognized by *Lucia*, a person who holds such a non-continuous position cannot be an officer at all.

**B. The Office of Legal Counsel, contra** ***Morrison*,** **concluded that the Independent Counsel is a continuous position**

Prior to *Lucia*,[9] the Office of Legal Counsel concluded that the requirement of "continuance" could not be dispensed with, in light of precedents dating back to *Germaine*. 2007 OLC Memorandum at 111. However, OLC explained that "'continuance' is not 'permanence.'" *Id.* OLC put forward a three-factor test to determine if a "temporary" position still "qualifies as 'continuing,' and thus [is] an office." *Id.* at 112. First, "[t]he *position*'s existence should not be personal [to the first incumbent]: The duties should '*continue*, though the person be changed ....'" *Id.* (citing *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823)) (emphases added). Second, "[t]he position should not be 'transient': The less fleeting and more enduring it is (or is likely to be), the more likely it is to be a *continuing* seat of power and thus an office." *Id.* (emphasis added). Third, the "duties" of a continuing position "should be more than 'incidental' to the regular operations of government." *Id.* OLC acknowledged that the third element does not precisely relate to *Germaine*'s "temporal" requirement. *Id.* OLC identified several characteristics of "incidental" work, including "special work; special purposes; a special, specific, *single, or particular controversy or case.*" *Id.* (emphasis added).

---

[9] *Amici* do not know if the Office of Legal Counsel has updated this opinion in light of *Lucia*.

OLC concluded that the then-defunct Office of Independent Counsel was continuous. First, OLC explained that the "[a]lthough the position of a particular independent counsel was temporary, the position was non-personal." *Id.* at 114–15. (A non-personal position continues across successors, even if there are temporary vacancies or interregnums.) Second, the Office of Independent Counsel "was not 'transient,' but rather was indefinite and expected to last for multiple years, with ongoing duties, the hiring of a staff, and termination only by an affirmative determination that all matters within the counsel's jurisdiction were at least substantially complete ...." *Id.* at 115. Third, the duties exercised by the Office of Independent Counsel were "not 'incidental,' but rather possessed core and largely unchecked federal prosecutorial powers, effectively displacing the Attorney General and the Justice Department within the counsel's court-defined jurisdiction, which was not necessarily limited to the specific matter that had prompted his appointment." *Id.*

OLC's opinion is in tension with *Morrison*'s finding that the Independent Counsel was a "temporary" position. *Morrison*, 487 U.S. at 672. Indeed, OLC did not even mention Chief Justice Rehnquist's analysis. Whether this Court agrees with Chief Justice Rehnquist's characterization of the Independent Counsel as a "temporary" position, or agrees with the Office of Legal Counsel's characterization of the Independent Counsel as a "continuous" officer,[10] the current Special Counsel Regulations are distinguishable. As explained below, under the Special Counsel Regulations, a Special Counsel holds a non-continuous position.

---

[10] Under *Skidmore* deference, an Office of Legal Counsel opinion is entitled to "respect proportional to its power to persuade[, and] may claim the merit of its writer's thoroughness, logic and expertness, [and] its fit with prior interpretations." Zucker v. Menifee, Civ. A. No. 03 CIV. 10077 (RJH), 2004 WL 102779, at *5 (S.D.N.Y. Jan. 21, 2004) (quoting United States v. Mead Corp., 533 U.S. 218, 234–35 (2001)); *see also* SW Gen., Inc. v. NLRB, 796 F.3d 67, 74 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017); Steinbach v. Bureau of Prisons, 339 F. Supp. 2d 628, 629–30 (D.N.J. 2004).

16

**C. The Special Counsel Regulations authorize the Attorney General to establish an ad hoc, temporary position for a limited purpose and that position lacks duration**

The current Special Counsel Regulations are provided for in 28 C.F.R. § 600.1–600.10.[11] These regulations were adopted without the benefit of notice-and-comment rulemaking.[12] There are important distinctions between the lapsed-Office of Independent Counsel statute and the extant-Special Counsel Regulations. And these distinctions support the conclusion that the Special Counsel position lacks "duration," and is not a *continuous* office.

First, with the Independent Counsel Statute, Congress "established by law" a permanent umbrella office structure that could embrace multiple independent counsels. Indeed, throughout the 1980s and 1990s, there were many overlapping independent counsel investigations at any one point in time—all under the auspices of the same statutory framework. As a textual matter, Congress did not merely create a single "Office of the Independent Counsel." The statute recognized that there may be one or more "Independent Counsels" at any time within the broader institutional framework. For example, 28 U.S.C. § 596(b)(1) provided that "*An* office of independent counsel shall" terminate when the investigation is complete. *Id.* (emphasis added). The use of the singular word "*An*" reflects that the entire statutory office does not vanish, but just that the particular office of a particular independent counsel terminates. Other offices would continue unabated. The overall umbrella structure guaranteed that the positions held by individual independent counsels have continuity and duration within the larger statutory framework.

---

[11] Attorney General Garland's order appointing Mr. Smith as Special Counsel provides that "Sections 600.4 to 600.10 of title 28 of the Code of Federal Regulations *are applicable* to the Special Counsel." Attorney General Order No. 5559-2022 at 2, https://bit.ly/3IDB4df (emphasis added). Smith was not appointed *subject* to Section 600.1, which provides the grounds for appointing a Special Counsel. It is not clear what Garland's "are applicable to"-language means. *See, e.g.*, Jack Goldsmith & Maddie McMahon, *Don't Expect a Starr-Like Report from Mueller*, Lawfare (Mar. 22, 2018), https://www.lawfaremedia.org/article/dont-expect-starr-report-mueller ("Rosenstein was careful in his order authorizing Mueller to say only that the pertinent Sections of the special counsel regulations, which contemplate criminal matters, 'are applicable to the Special Counsel.' But Rosenstein did not say that these special counsel regulations governed his options with respect to counterintelligence matters that the regulations do not contemplate."). If Mr. Smith was not appointed pursuant to these regulations, then Smith cannot rely on these regulations to argue that he in fact holds an office. Should this Court (or any federal court on appeal) entertain any doubts about whether Mr. Smith's appointment is subject to these regulations, Mr. Smith can explain the status of his position.

[12] Office of Special Counsel, 64 Fed. Reg. 37038-01, 37,041 (1999).

By contrast, the Special Counsel Regulations do not establish any sort of broader office structure that unifies various special counsels. To the contrary, each special counsel is appointed pursuant to a particular order, without regard to any broader institution. And that special counsel is assigned ad hoc to investigate what OLC identified as a "*single, or particular controversy or case*." OLC at 112 (emphasis added).[13] For example, if all of the current special counsels finish their work, their positions would cease to exist, and there is no continuing institutional framework that would remain.

Second, with the Independent Counsel Statute, Congress provided a detailed mechanism by which a single independent counsel office can be terminated while the permanent structure continues. Conversely, even if the permanent structure lapsed, due to Congress' decision to not reauthorize the statute, Congress had already expressly provided that extant investigations would continue. Indeed, although the Independent Counsel statute required regular reauthorizations, if the law was not reauthorized, prosecutions of "pending matters" would "continue" until the matter was "completed." 92 Stat. 1867, 1873. (Robert Ray, who was the last appointed Independent Counsel, began his tenure in October 1999, and concluded in March 2002, after the statute had lapsed.[14]) By contrast, the Special Counsel regulations cite a bevy of federal statutes as authority to appoint special counsels.[15] If those statutes were repealed, the authorization for any extant

---

[13] *See* Jennifer L. Mascott, *Private Delegation Outside of Executive Supervision*, 45 Harv. J.L. & Pub. Pol'y 837, 848–49 (2022) ("This possibility was envisioned by scholars Josh Blackman and Seth Barrett Tillman in relation to Special Counsel Robert Mueller. As special counsel, Mueller served in a temporary role authorized by Justice Department regulations to spring into existence when the Attorney General deems a special counsel necessary to investigate potential criminal activity of a subject that might otherwise create a conflict of interest for the Department such as alleged criminal activity by a high-ranking government official. The regulatory special counsel spot is not permanent. The special counsel spot would continue just as long as it takes to carry out the investigation within the jurisdiction established by the Attorney General ('AG'), subject to potential AG termination for wrongdoing." (citing Seth Barrett Tillman & Josh Blackman, *Is Robert Mueller an "Officer of the United States" or an "Employee of the United States"?*, Lawfare (July 23, 2018, 2:50 PM), https://tinyurl.com/y9kmvn46, http://ssrn.com/abstract=3214158)).

[14] Neil A. Lewis, *Special Counsel Puts Lewinsky Case to Rest*, New York Times (Mar. 7, 2002), https://www.nytimes.com/2002/03/07/us/special-counsel-puts-lewinsky-case-to-rest.html.

[15] 5 U.S.C. § 301; 28 U.S.C. § 509; 28 U.S.C. § 510; 28 U.S.C. §§ 515–519. Several of these statutes expressly refer to the Attorney General's powers to regulate "officers" and "employees" as separate categories of positions.

special counsels would terminate immediately. Thus, the Attorney General lacks the power to make these positions continuous in ways that the Independent Counsel was continuous.[16]

Third, and relatedly, the Independent Counsel statute recognized that a single office would not terminate when there was a vacancy. Rather, if there was a "vacancy in office" due to "resignation, death, or removal of an independent counsel," then the special division of judges "shall appoint an independent counsel." 28 U.S.C. § 593(e).[17] The new independent counsel was slotted into the already-existing, now-vacant position. Indeed, three independent counsels, between 1994 and 2002, headed the same, continuous office, that investigated matters relating to President Clinton.[18]

This procedure was followed with the investigation into Theodore Olson: Independent Counsel James C. McKay resigned due to the appearance of a conflict of interest, and he was replaced by Alexia Morrison, the deputy independent counsel, "without alteration of the [Special] Division's original jurisdictional order."[19] In these circumstances, the replacement independent

---

[16] A Head of Department lacks the power to unilaterally *create* an office, in part, because that Head of Department only holds his statutory authority at the discretion of Congress. Generally, it is up to Congress, and not the Attorney General, to determine whether an agency or head of department may create an "office" or other position, temporary or otherwise, and what characteristics that position will have relating to the *Hartwell-Germaine* four factors: "tenure, duration, emolument, and duties." *See, e.g.*, *Federalist No. 39* (Madison) (explaining that the "tenure" of "ministerial offices generally will be a subject of legal regulation"). For these reasons, the Defendant is correct that an office must be "established," as the Appointments Clause provides, "by law"—that is, by statute. U.S. Const. art. II, § 2. *See* Tillman & Blackman, *Part III, supra*, note 6, at 378–83.

[17] The statute recognizes that an Independent Counsel can be removed "by impeachment." 28 U.S.C. § 596. An Independent Counsel can be impeached only if he is an "Officer of the United States." U.S. Const. art. I, § 2, cl. 5. Section 596 is consistent both with the *Morrison* majority, which held that the Independent Counsel is a *inferior* "Officer of the United States" and with Justice Scalia's *Morrison* dissent, which found that the Independent Counsel is an *principal* "Officer of the United States." *Amici* submit that Special Counsel Smith is not an "Officer of the United States," so he cannot be impeached. If Mr. Smith is, in fact, an "Officer of the United States," then he could be impeached by the House of Representatives.

[18] Benjamin Weiser & Neil A. Lewis, *An Aggressive Prosecutor Now Enters the Limelight as Starr's Successor*, New York Times, Dec. 19, 1999, https://www.nytimes.com/1999/12/19/us/an-aggressive-prosecutor-now-enters-the-limelight-as-starr-s-successor.html (expounding on the appointments of Robert B. Fiske, Kenneth W. Starr, and Robert Ray).

[19] In re Olson, 818 F.2d 34, 37 n.2 (D.C. Cir. 1987); AP, *Special Counsel Resigns Post*, New York Times, May 30, 1986, https://www.nytimes.com/1986/05/30/us/special-counsel-resigns-post.html; *see also* In re Madison Guar. Sav. & Loan Ass'n, No. 94-1, 1994 WL 913274, at *1 (D.C. Cir. Aug. 5, 1994) (replacing Independent Counsel Robert B. Fiske, Jr., with Independent Counsel Kenneth W. Starr).

counsel would "complete the work of the independent counsel whose resignation, death, or removal caused the vacancy." 28 U.S.C. § 593(e). Moreover, the Special Division could "appoint an acting independent counsel" in circumstances where the Attorney General removed the prior independent counsel. 28 U.S.C. § 593(e).

With the Special Counsel Regulations, the Attorney General can remove the Special Counsel under certain circumstances. 28 C.F.R. § 600.7(d). But the regulations provide no mechanism to deal with vacancies. For example, in this case, Attorney General Garland appointed John L. Smith, to "serve as Special Counsel for the United States Department of Justice." This is a single person, appointed for a single purpose, for a limited or temporary duration. If, for whatever reason Smith could not complete the prosecution, there is no succession plan in place. As far as *Amici* know, there is no established line of succession providing for an acting special counsel—certainly none exists in the Special Counsel regulations or in the appointment order.[20] The Attorney General would have to appoint a new special counsel, and delegate authority to that special counsel anew. And if Smith were removed from office, and if no new special counsel were appointed, it is likely that this prosecution could not go forward.

Given the structural architecture of the prior Independent Counsel statute, which expressly provided for resignation and succession, it could be argued that an Independent Counsel held a *continuous* position with duration per *Germaine* and *Lucia*. The Special Counsel Regulations are wholly different. The Special Counsel's position lacks structure; the Special Counsel Regulations do not provide for a *continuous* position, or for resignation and succession. As a result, a Special Counsel's position lacks duration per *Germaine* and *Lucia*. It follows that Jack Smith does not hold an "Office" of any type, and therefore he cannot be an "Officer of the United States."

**D. Under *Lucia*, the temporary Special Counsel is not an "Officer of the United States," but is an "Employee of the United States"**

If the Special Counsel is not an "officer," then what is he? At most, the Special Counsel would be what *Buckley* referred to as an "employee of the United States." Indeed, most assistant United States attorneys, serving under the supervision of a United States attorney, would likely fall under the rubric of an "employee of the United States." Mr. Smith's position "is 'temporary'

---

[20] The Vacancies Reform Act only applies to principal officers "whose appointment to office is required to be made by the President." 5 U.S.C. § 3345. This statute would not apply if the Special Counsel were removed.

in the sense that [he] is appointed essentially to accomplish a single task, and when that task is over the office is terminated." *Morrison*, 487 U.S. at 672. That Mr. Smith's tenure has already stretched nearly eighteen months does not make it permanent or continuing: Once his job is complete, the "office" dissolves. However, under *Lucia*, this ephemeral position is likely not an "officer" at all, because it fails one of the two factors put forth by Justice Kagan. Indeed, per Justice Sotomayor's dissent, Mr. Smith flunks one of the two "prerequisites."

Under the best reading of precedent, the Special Counsel is an "employee of the United States." But this characterization yields a significant problem for the separation of powers: a mere "employee of the United States" cannot exercise the "significant authority" of a United States attorney.

**E. The Special Counsel, a mere "employee of the United States," cannot be vested with the "significant authority" of a United States Attorney**

The current regulations vest the Special Counsel with broad prosecutorial authorities: "the Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney." 28 C.F.R. § 600.6. Though United States attorneys are, in the normal case, nominated by the President, and confirmed by the Senate, they are considered *inferior* "Officers of the United States." *United States v. Hilario*, 218 F.3d 19, 25 (1st Cir. 2000). Under *Buckley*, the "authority" of a United States attorney is "significant," and can only be exercised by an "Officer of the United States."

Mr. Smith can only exercise the powers of an inferior "Officer of the United States" if the Special Counsel position is an "Officer of the United States." And Mr. Smith characterizes himself as an inferior "Officer of the United States." Opposition to Motion to Dismiss at 5 n.1, ECF 374.

To be sure, an inferior "Officer of the United States" can be appointed by the "Heads of departments," U.S. Const. art. II, § 2, and Mr. Smith was appointed by the Attorney General. But simply being appointed by a department head does not elevate that position to the status of an inferior "Officer of the United States." Indeed, the mere fact that a person is appointed by the Head of a Department does not make that position an *office* at all. Instead, precedents from *Germaine* to *Lucia* provide that an office must be *continuous*. (The Special Counsel's brief does not cite *Germaine*, or discuss the *continuity-of-office* requirements for offices subject to the Appointments Clause.)

*Germaine* instructs that *offices* are "continuous" positions. The Special Counsel position, though appointed by the Attorney General, is not continuous, so it cannot be an office of any type. At most, the Special Counsel is an employee, and not an officer of the United States. And a mere employee of the United States cannot exercise the "significant authority" of any United States attorney, including the United States Attorney for the Southern District of Florida. In this case, Mr. Smith's actions as a notionally independent United States attorney are beyond the scope of what the Supreme Court has permitted, and therefore, his actions are unlawful.

Special Counsel Jack Smith was appointed to a "temporary" position. Therefore, he cannot be an "Officer of the United States" under the rule in *Lucia*; he is, instead, an "employee of the United States." And as an employee, Mr. Smith cannot exercise the powers of an "Officer of the United States." *See* Meese et al. Amicus Brief at 12 ("The authority exercised by [Smith] as a so-called 'Special Counsel' far exceeds the power exercisable by a mere employee."). The Attorney General could not vest a temporary employee, such as a summer intern in the Department of Justice, with the full prosecutorial powers of a United States attorney—not because of a lack of qualifications or experience, but because such a time-limited employee cannot wield "significant authority"

Were Mr. Smith akin to a line assistant United States attorney, he could exercise prosecutorial powers under the supervision of a United States attorney. But Smith was not granted such a subordinate power. Rather, he was given, and has exercised apex decision-making authority, which is subject only to limited supervision by the Attorney General. 28 C.F.R. § 600.7(d). But unlike a normal United States attorney who can be removed by the President, the Special Counsel can only be removed under the regulations in certain circumstances by the Attorney General—assuming that this appointment was made subject to all of the regulations.[21]

A mere "employee of the United States," who is not a principal or even an inferior "Officer of the United States," cannot exercise the breadth of power that the Special Counsel has done here. But there may be a way to salvage Mr. Smith's work to date.

---

[21] Josh Blackman, *Could Trump Remove Special Counsel Robert Mueller? Lessons from Watergate*, Lawfare (May 23, 2017), https://www.lawfaremedia.org/article/could-trump-remove-special-counsel-robert-mueller-lessons-watergate.

**III. The Special Counsel's past actions may be salvageable by operation of the De Facto Officer Doctrine, but going forward his work can continue only if supervised in the normal course by the U.S. Attorney for the Southern District of Florida**

Special Counsel Smith's actions taken to date in this case have been unlawful. However, his actions and those of his purported subordinates, may be salvageable by operation of the De Facto Officer Doctrine. *Nguyen v. United States* explained that the "de facto officer doctrine ... 'confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Nguyen v. United States*, 539 U.S. 69, 77 (2003) (quoting *Ryder v. United States*, 515 U.S. 177, 180 (1995)). The cases cited in *Nguyen* and *Ryder* concerned challenges to purported "officers of the United States"—all federal judges—whose appointments under the Appointments Clause were in some way defective. *See also Griffin's Case*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5815) (Chase, Circuit Justice) (discussing De Facto Officer Doctrine as applied to a state court judge purportedly disqualified under Section 3 of the Fourteenth Amendment in the context of a collateral challenge).[22] Admittedly, it is not entirely clear whether the De Facto Officer Doctrine applies to the facts and circumstances at hand involving a federal prosecutor.[23]

*Amici* take no position on whether Jack Smith's work to date can be salvageable by operation of the De Facto Officer Doctrine. That said: as a general matter, the focus of the De Facto Officer Doctrine insulates retrospective conduct, as opposed to prospective conduct. After there is a final judgment declaring that the (purported) Special Counsel is acting beyond his lawful authority, the government may be estopped from seeking to insulate, under the De Facto Officer

---

[22] Chief Justice Chase's circuit court decision in *Griffin's Case* was recently favorably cited by the U.S. Supreme Court. *See* Trump v. Anderson, Sup. Ct. No. 23-719, 2024 WL 899207, at *5 (U.S. Mar. 4, 2024) (*per curiam*). *Compare* Josh Blackman & Seth Barrett Tillman, *Sweeping and Forcing the President into Section 3*, 28(2) Tex. Rev. L. & Pol. 350, 407–11, 417–23 (forth. 2024) (expounding, favorably, on Chief Justice Chase's discussion of the De Facto Officer Doctrine in *Griffin's Case*), https://ssrn.com/abstract=4568771, *with* William Baude & Michael Stokes Paulsen, *The Sweep and Force of Section Three*, 172 U. Pa. L. Rev. 605, 644–59 (2024) (expounding, critically, on *Griffin's Case* and discussing De Facto Officer Doctrine).

[23] *Cf.* United States v. Durham, 941 F.2d 886, 891–93 (9th Cir. 1991) (ordering remand to trial court to complete the evidentiary record for appeal because a prosecution conducted by a Special Assistant United States Attorney who was not properly *appointed* and *supervised* lacked subject matter jurisdiction).

Doctrine, further unlawful actions taken after an adverse final judgment against the Special Counsel.

Going forward, these Appointment Clause issues can be obviated only if this prosecution proceeds in the regular course under the supervision of the duly-nominated, confirmed, and appointed United States Attorney for the Southern District of Florida. There is no question that such a prosecution would be valid under the Supreme Court's Appointments Clause jurisprudence. (Other constitutional defenses, such as presidential immunity, remain to be adjudicated.) Perhaps more importantly, prosecuting the Defendant under the auspices of the normal processes involving Department of Justice oversight would bring political accountability to this case.

Whether this prosecution will proceed in the normal course is a policy judgment for the Attorney General and the Department of Justice. It is not a decision this Court needs to reach in deciding Defendant's motion.

## Conclusion

For all the reasons stated above, the indictment should be dismissed, and the motion should be granted.

Dated: March 13, 2024.

Respectfully submitted,

/s/ **Michael A. Sasso**
Michael A. Sasso (Florida Bar No.: 93814)
masasso@sasso-law.com
SASSO & SASSO, P.A.
1031 West Morse Blvd, Ste. 120
Winter Park, FL 32789
(407) 644-7161
Counsel for Amici, Professor Seth Barrett
Tillman and the Landmark Legal Foundation

Michael J. O'Neill*
Landmark Legal Foundation
19415 Deerfield Ave., Ste. 312
Leesburg, VA 20176
(703) 554-6100
mike@landmarklegal.org

Josh Blackman*
Josh Blackman LLC
1303 San Jacinto Street
Houston, TX 77002

(202) 294-9003
Josh@joshblackman.com

*pro hac vice

### Certificate of Service

I hereby certify that on this 13th day of March, 2024, I caused a true and correct copy of

the foregoing to be served via ECF on all parties and counsel of record in this matter.

/s/ Michael A. Sasso
Michael A.  Sasso

| | |
|---|---|
| **From:** | JIB (JSPT) |
| **To:** | Michael Adam Sasso; DVH (JSPT) |
| **Cc:** | Christian Bonta |
| **Subject:** | RE: Amici Good Faith Conference - U.S. v. Trump, 9:23-CR-80101 (S.D. Fla. 2023). |
| **Date:** | Monday, March 11, 2024 2:38:25 PM |

The government takes no position on your request.

**From:** Michael Adam Sasso <masasso@sasso-law.com>
**Sent:** Monday, March 11, 2024 2:37 PM
**To:** DVH (JSPT) <DVH@usdoj.gov>; JIB (JSPT) <JIB@usdoj.gov>
**Cc:** Christian Bonta <cbonta@sasso-law.com>
**Subject:** [EXTERNAL] Amici Good Faith Conference - U.S. v. Trump, 9:23-CR-80101 (S.D. Fla. 2023).

Dear Mr. Harbach and Mr. Bratt,
I write on behalf of Professor Seth Barrett Tillman and the Landmark Legal Foundation. We intend to file an amicus brief in support of the Defendant in *United States v. Trump*, 9:23-cr-80101 (SDFL). We realize this brief may be beyond the normal time to file an amicus brief, but we decided to file after Judge Cannon's March 6 order. That order states:

> PAPERLESS ORDER granting Unopposed Motions for Leave to File Amicus Briefs 360 364 . The Court has reviewed the motions and finds that the proposed amici bring to the Court's attention relevant matter that may be of considerable help to the Court in resolving the cited pretrial motions. See Sup. Ct. R. 37; Fed. R. App. P. 29; Resort Timeshare Resales, Inc. v. Stuart, 764 F. Supp. 1495, 1500 (S.D. Fla. 1991). The amicus briefs [360-1] [364-1] are accepted for Court consideration. Should the Special Counsel or Defendants wish to file a separate response to either amicus brief, they may do so on or before March 15, 2024, in accordance with the Local Rules. Signed by Judge Aileen M. Cannon on 3/6/2024. (jf01) (Entered: 03/06/2024)

Our brief will raise issues related to the issues discussed in the Meese, et al, brief, based on Professor Tillman's scholarship: https://www.lawfaremedia.org/article/robert-mueller-officer-united-states-or-employee-united-states To date, these precise issues have not been developed in this prosecution.
As I am sure you know, District Courts have broad discretion over whether to accept out-of-time briefs. Chavez v. Credit Nation Auto Sales, Inc., No. 113CV00312WSDJCF, 2014 WL 12780146, at *3 (N.D. Ga. June 5, 2014) (accepting out-of-time amicus brief because "the Federal Rules of Appellate Procedure [deadlines] do not apply in district court.).
We plan to file our brief no later than Wednesday, March 13, which would give you time to reply in your filing due on Friday, March 15, so there would be no prejudice.
Would you provide consent to the brief, or take no position? I would be happy to discuss over the phone as well if you gentlemen would be kind enough to provide a good number.  Thank you in advance.
Sincerely yours,
..

Michael A. Sasso
SASSO & SASSO, P.A.
Tel.: (407) 644-7161

CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, any disclosure, copying, distribution, or action in reliance upon the communication is strictly prohibited. Inadvertent disclosure shall not compromise or waive the attorney-client privilege. If you  received this communication in error, please contact me at my address above.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 23-80101(s)-CR-CANNON**

UNITED STATES OF AMERICA

v.

DONALD J. TRUMP,
WALTINE NAUTA, and,
CARLOS DE OLIVEIRA,

     Defendants.
_____/

**ORDER GRANTING MOTION FOR LEAVE TO FILE BRIEF OF PROFESSOR SETH
BARRETT TILLMAN AND LANDMARK LEGAL FOUNDATION AS *AMICI CURIAE*
IN SUPPORT OF DEFENDANT TRUMP'S MOTION TO DISMISS THE INDICTMENT
[ECF NO. 326]**

THIS CAUSE having come before the Court on the Motion for Leave to File Brief by

Professor Seth Barrett Tillman and Landmark Legal Foundation as *Amici Curiae* in Support of

Defendant President Trump's Motion to Dismiss the indictment [ECF No. 326] (the "Motion"), it

is hereby:

ORDERED AND ADJUDGED that:

The Motion is GRANTED. The brief of Professor Seth Barrett Tillman and Landmark

Legal Foundation as *Amici Curiae* in Support of Defendant President Trump's Motion to Dismiss

the indictment is ordered to be filed.

DONE AND ORDERED in Chambers at _____, Florida, this _____ day of

_____, 2024.

                                          _____

                                          AILEEN M. CANNON
                                          UNITED STATES DISTRICT JUDGE