UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 23-80101-CR
CANNON/REINHART

**PRESIDENT TRUMP'S RESPONSE TO THE COURT'S MARCH 18, 2024 ORDER**

President Donald J. Trump respectfully submits this response to the Court's March 18, 2024 Order regarding proposed jury instructions relating to Counts 1 through 32 of the Superseding Indictment. ECF No. 407. Attached as Exhibit A are proposed jury instructions addressing scenario (a) from the Court's Order, with annotations and additional sub-exhibits providing supporting legal authorities.[1] Attached as Exhibit B is a proposed verdict form relating to scenario (a), which uses Count 1 as an example for each of Counts 1 through 32. Scenario (b) from the Court's Order is addressed below in connection with President Trump's renewal of his pretrial motion to dismiss Counts 1 through 32 on vagueness grounds, and because the Court's correct statement of the law in scenario (b) means that Counts 1 through 32 fail to state an offense under Rule 12(b)(3)(iv).

This important exercise further illustrates that crafting instructions applying the Espionage Act in this case would require recourse to "judicial gloss" and other authorities not included in or

---

[1] President Trump reserves the right to submit supplemental and/or modified instructions relating to Counts 1 through 32, the other charges in the Superseding Indictment, additional defenses developed as the case proceeds, and any other issues, pursuant to Rule 30(a) and on a schedule set by the Court. President Trump further reserves the right to file objections to proposed jury instructions submitted by the Special Counsel's Office in response to the Court's March 18, 2024 Order, at an appropriate time prior to any potential trial in this case.

authorized by the statute, such as Executive Order 13526 and the Presidential Records Act ("PRA"). Therefore, as applied to President Trump, § 793(e) is unconstitutionally vague and "no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). We therefore renew President Trump's void-for-vagueness challenge, ECF No. 325, which the Court denied without prejudice on March 14, 2024, "to be raised as appropriate in connection with jury-instruction briefing and/or other appropriate motions," ECF No. 402.

Under *Davis*, neither an Article III court nor a jury can address the constitutional problems that we have outlined in prior submissions and at the March 14, 2024 hearing. To hold otherwise would be to "hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges"—as well as to jurors—and to "leave people with no sure way to know what consequences will attach to their conduct." *Davis*, 139 S. Ct. at 2323. Here, "the role of courts under our Constitution is not to fashion a new, clearer law to take [§ 793(e)'s] place, but to treat the law as a nullity and invite Congress to try again." *Id.* That is a situation of Congress's own making due to the body's failure to address decades of judicial and public concern relating to obvious and unacceptable ambiguities in this statute. *See, e.g.*, Harold Edgar and Benno C. Schmidt, Jr., The Espionage Statutes and Publication of Defense Information, 73 COLUM. L. REV. 929, 998 (1973) (explaining that "key terms were formulated with hopeless imprecision, and as a consequence, the legislative materials indicate a basic and continuing congressional confusion about the ends sought to be achieved").

In addition to the fatal vagueness problem, the Court has correctly stated the law in scenario (b) of the March 18 Order. The Superseding Indictment alleges, and the Special Counsel's Office has elsewhere conceded, that President Trump "caused" the records at issue to be removed from the White House during the end of his term in Office. ECF No. 85 ¶¶ 4; *see also, e.g.*, ECF No.

277 at 3. Thus, it is undisputed, as stated in scenario (b), that this case involves "an outgoing president's decision to exclude what he/she considers to be personal records from presidential records transmitted to [NARA]," which "constitutes a president's categorization of those records as personal under the PRA." ECF No. 407 at 2. Based on the PRA, it is simply not the case—as a matter of law—that President Trump was "unauthorized" to possess the documents in question under § 793(e). There can be no appropriate jury instructions relating to factual issues in scenario (b) because that scenario forecloses prosecution of President Trump on Counts 1 through 32. The result is not, as the Special Counsel's Office has argued, an "implied[] repeal" of § 793(e) by the PRA. ECF No. 73 at 21. Rather, Counts 1 through 32 do not state offenses under these circumstances, and the Office cannot meet its burden of proof on those charges. Setting aside the vagueness problem, § 793(e) remains on the books, but it does not prohibit the conduct alleged by the Office against President Trump.

Specifically, under *Judicial Watch*, backed by decades of practice by NARA under the PRA, and consistent with the history of former Presidents and government officials retaining classified records when they leave office, "an outgoing president's decision to exclude what he/she considers to be personal records from presidential records transmitted to [NARA] constitutes a president's categorization of those records as personal under the PRA." ECF No. 407 at 2; *see also* 44 U.S.C. § 2203(f) (mandating that, "[d]uring a President's term of office," "[t]he President shall remain exclusively responsible for custody, control, and access to . . . Presidential records"); *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288, 301 (D.D.C. 2012) ("[T]he PRA does not confer any mandatory or even discretionary authority on the Archivist to classify records.").

"Neither a court nor a jury is permitted to make or review such a categorization decision" due to, *inter alia*, the separation-of-powers concerns such review would present. ECF No. 407 at

3

2; *see also Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991) ("*Armstrong I*") ("Congress was also keenly aware of the separation of powers concerns that were implicated by legislation regulating the conduct of the President's daily operations."); *CREW v. Cheney*, 593 F. Supp. 2d 194, 198 (D.D.C. 2009) (reasoning that Congress "limited the scope of judicial review and provided little oversight authority for the President and Vice President's document preservation decisions").

"[C]ourts may review *guidelines* outlining what is, and what is not, a 'presidential record' to ensure that materials that are not subject to the PRA are not treated as presidential records." *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1294 (D.C. Cir. 1993) ("*Armstrong II*") (emphasis added); *see also Cheney*, 593 F. Supp. 2d at 217 (considering judicial review of "*policies and guidelines* that exclude from the reach of the PRA all but a narrow category" of Vice Presidential Records (emphasis added)). In *American Historical Association v. Peterson*, for example, the court, in a civil case, reviewed an agreement between NARA and the Bush Administration that, in effect, created the types of "policies" and "guidelines" discussed in *Armstrong II* and *Cheney*. 876 F. Supp. 1300, 1314 (D.D.C. 1995) (considering judicial review of agreement that "on its face constitutes an opting out of the provisions of the PRA governing the Archivist's disposal of Presidential records following a term of office," which "are distinct from those that govern disposal of Presidential records by an incumbent President"). *Peterson* held that "this matter is subject to judicial review because the *Archivist's compliance* with the PRA is reviewable." *Id.* at 1313 (emphasis added).

However, whereas *Peterson*, *Cheney*, and *Armstrong II* involved guidelines and policy-level applications of the PRA, *Judicial Watch* involved the type of document-specific PRA categorization issue that is presented in this case. In that context, the *Judicial Watch* court

4

concluded that "a close reading of the *Armstrong II* decision suggests that the limited judicial review authorized by the D.C. Circuit left untouched that portion of *Armstrong I* that gave the President unfettered control over his own documents." *Judicial Watch*, 845 F. Supp. 2d at 297; *see also id.* at 298 (noting "that the D.C. Circuit has not yet blessed" *Peterson*). To the extent *Armstrong II* authorized anything, it was a civil proceeding "to review guidelines outlining what is, and what is not, a 'presidential record' under the terms of the PRA." 1 F.3d at 1290. The D.C. Circuit was clear that such civil review was authorized "for the limited purpose of ensuring that they do not encompass within their operational definition of presidential records materials properly subject to the FOIA." *Id.*

The Biden Administration and NARA never attempted to obtain such civil review, preferring instead to weaponize DOJ and the Special Counsel's Office in furtherance of their election-inference mission in a manner that, if not halted, would read out of existence the PRA and the above-described authorities interpreting it. As is clear from *Judicial Watch*, *Armstrong II* provides no authority for judicial review of document-specific PRA categorization decisions in the context of a criminal investigation, much less a criminal jury trial. Because that is so, as a matter of law, the Office cannot establish that President Trump's alleged possession of certain documents was "unauthorized" under § 793(e) for purposes of Counts 1 through 32. The merit of these propositions, as properly articulated in the Court's scenario (b), has implications for several pending motions.

*First*, the Court should grant President Trump's motion to dismiss the Superseding Indictment based on the PRA. The charges "fail[] to state an offense," Fed. R. Crim. P. 12(b)(3)(B)(v), because there is no basis for the Special Counsel's Office, this Court, or a jury to second-guess President Trump's document-specific PRA categorizations.

*Second*, the lack of legal authority and historical precedent for reviewing President Trump's PRA categorization decisions supports the pending selective and vindictive prosecution motions to dismiss the Superseding Indictment, which the Court should grant, or, at minimum, order discovery and hold a hearing on those issues.

*Third*, for similar reasons, President Trump's motion to dismiss based on prosecutorial misconduct and due process violations requires a hearing and should ultimately be granted. DOJ, NARA, the Biden Administration, the FBI, and, subsequently, the Special Counsel's Office colluded on the basis of non-existent authority under the PRA to demand records and responses to which they were not entitled, to execute search warrants based on legally meritless and unprecedented PRA arguments, to illegally pierce President Trump's attorney-client privileges based on similar flawed claims, and to initiate this wrongful and lawless prosecution.

*Fourth*, because the non-particularized and unlawfully executed search warrant that was used to raid Mar-a-Lago improperly delegated review of PRA categorization decisions to agents executing the warrant, which purported to authorize the seizure of "Presidential records," the fruits of that search must be suppressed on that basis and due to the other deficiencies identified in our suppression motion.

*Fifth*, the proposed jury instructions relating to scenario (a) illustrate that, if this case is presented to a jury—which it should not be—the jury would be forced to resolve factual issues relating to not only PRA categorizations, but also documents' alleged classification status. As such, the aspects of President Trump's motions to compel bearing on classification status and declassification efforts should be granted for the reasons set forth in the Classified Supplements supporting those motions and the related reply submission.

Finally, both scenarios posited in the Court's March 18 Order are consistent with President Trump's position that this prosecution is based on official acts that President Trump took during his first term in Office. The Special Counsel's Office cannot prevail without offering evidence of official acts, such as exercises of classification authority, declassification authority, receipt of Presidential briefings during which the documents at issue were allegedly presented, and PRA categorizations. However, the Office may not offer such evidence under the presidential immunity doctrine. These circumstances further support President Trump's request that the presidential immunity motion be held in abeyance pending the Supreme Court's resolution of *Trump v. United States*, and—to the extent the case is not dismissed on other grounds beforehand—the need for an evidentiary hearing following that ruling in order to prevent the Office from violating the presidential immunity doctrine.

Dated: April 2, 2024                                Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250


*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on April 2, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise
