**EXHIBIT A: APRIL 2, 2024 PROPOSED JURY INSTRUCTIONS [SCENARIO (A)]**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 23-80101-CR<br>CANNON/REINHART |

**Table of Contents (Scenario (a))**

Introduction: Counts 1 – 32 .................................................................................................. 1

Element 1: Possession............................................................................................................ 2

Element 2: Unauthorized Possession ..................................................................................... 4

Element 3: A Person Entitled To Receive It........................................................................... 9

Element 4: National Defense Information ........................................................................... 10

Element 5: Closely Held ...................................................................................................... 10

Element 6: Potential Damage............................................................................................... 14

Element 7: Willfully............................................................................................................. 14

**Introduction: Counts 1 – 32**

Counts 1 through 32 charge President Trump with willfully retaining national defense information. I am going to list the elements now, and then provide more detailed instructions regarding each of them. For each of Counts 1 through 32, the government must prove beyond a reasonable doubt the following seven elements:

First, the government must prove beyond a reasonable doubt that, on or about the dates alleged in the Count you are considering, President Trump possessed the document specified in that Count;

Second, the government must prove beyond a reasonable doubt that, on or about the dates alleged in the Count you are considering, President Trump was not authorized to possess the document associated with that Count;

Third, the government must prove beyond a reasonable doubt that President Trump failed to deliver the document associated with the Count you are considering to a person entitled to receive it[1];

Fourth, the government must prove beyond a reasonable doubt that the document associated with the Count you are considering contained information related to national defense, which I am going to refer to as national defense information or NDI;

---

[1] Although the Special Counsel's Office has argued that the "entitled-to-receive language is not part of the actus reus," this element has been included in instructions relating to document-retention cases under § 793(e). *Compare* 3/14/24 Tr. 51, *with* Ex. A-1 at 44 (jury instructions from *United States v. Ford*, No. 05 Cr. 235 (D. Md.) (hereinafter, "*Ford* Jury Instructions")), *and* Amended Jury Instructions, *United States v. Davila*, 2005 WL 6228515 (E.D. Wash. June 3, 2005) (DOJ's proposed instructions). These instructions are consistent with the statutory text—and the Office's position is not—because § 793(e) contains a distinct prohibition delimited by the term "or," and then describes retention and entitlement in the conjunctive: "willfully retains the same *and* fails to deliver it to the officer or employee of the United States entitled to receive it." 18 U.S.C. § 793(e) (emphasis added).

Fifth, the government must prove beyond a reasonable doubt that any NDI in the document associated with the Count that you are considering was closely held by the United States[2];

Sixth, the government must prove beyond a reasonable doubt that disclosure of any NDI in the document associated with the Count that you are considering would be potentially damaging to the United States or useful to an enemy of the United States[3]; and

Seventh, the government must prove beyond a reasonable doubt that President Trump acted willfully.

**Element 1: Possession**

The first element that the government must prove beyond a reasonable doubt is that, on or about the dates alleged in the Count you are considering, President Trump possessed the document specified in that Count.

The term "possession" includes actual, constructive, sole, and joint possession. I am going to define each of those different types of possession. "Actual possession" of a thing occurs if a

---

[2] In *United States v. Hernandez, et al.*, a district court in the Southern District of Florida described the "closely held" concept as a separate element. *See* Ex. A-2 at 19 (jury instructions from *United States v. Hernandez, et al.*, No. 98 Cr. 721 (S.D. Fla. June 5, 2001), *aff'd sub nom. United States v. Campa*, 529 F.3d 980 (11th Cir. 2008) (hereinafter, the "*Campa* Jury Instructions")).

[3] *See United States v. Morison*, 844 F.2d 1057, 1071 (4th Cir. 1988); *United States v. Dedeyan*, 584 F.2d 36, 39 (4th Cir. 1978) ("The Court gave a limiting instruction to the jury that in order to show relationship to the national defense, the Government must prove that 'disclosure of information in the document would be potentially damaging to the national defense, or that information in the document disclosed might be useful to an enemy of the United States.'"); *United States v. Kiriakou*, 898 F. Supp. 2d 921, 923 (E.D. Va. 2012) ("[I]n prosecutions under both the documents and the information clauses, the government must show that the disclosed NDI 'relate[s] to the national defense,' meaning that it is 'closely held' and that its disclosure 'would be potentially damaging to the United States or might be useful to an enemy of the United States.'" (quoting *Morison*, 844 F.2d at 1071-72)); *see also* 3/14/24 Tr. 72-73 (Special Counsel's Office acknowledging that "there were certain circumstances" where a "potential harm" instruction is appropriate and "it would be something else that the jury would be asked to find").

person knowingly has direct physical control of it.[4]  In order to find that President Trump acted "knowingly," the government must prove beyond a reasonable doubt that the act was done voluntarily and intentionally and not because of a mistake or by accident.[5]  Medical science has not yet devised an instrument which can record what was in one's mind in the distant past.  Rarely is direct proof available to establish the state of one's mind.  State of mind may be inferred from what a person says or does: his words, his actions, and his conduct, as of the time of the occurrence of certain events.  The intent with which an act is done is often more clearly and conclusively shown by the act itself, or by a series of acts, than by words or explanations of the act uttered long after the occurrence.  Accordingly, intent, including knowing and willfulness (as I will define that term for you later today) are usually established by surrounding facts and circumstances as of the time the acts in question occurred, or the events took place, and the reasonable inference to be drawn from them.[6]

"Constructive possession" of a thing occurs if a person does not have actual possession of the thing, but has both the power and the intention to take control over the thing later.[7]  Therefore, "Constructive possession" requires proof beyond a reasonable doubt that President Trump (1) was aware or knew of the document's presence, and (2) had the ability and intent to later exercise dominion and control over that document.[8]

---

[4] Special Instruction S6, Eleventh Circuit Pattern Instructions.

[5] Basic Instruction B9.1A, Eleventh Circuit Pattern Instructions.

[6] Ex. A-1, *Ford* Jury Instructions at 31.

[7] Special Instruction S6, Eleventh Circuit Pattern Instructions.

[8] *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011) (defining "constructive possession" in context of 18 U.S.C. § 924(c)); *see also* Ex. A-1, *Ford* Jury Instructions at 45 (defining "constructive possession").

3

"Sole possession" of a document occurs if a person is the only one to possess it. "Joint possession" of a document occurs if two or more people share possession of it.[9]

Possession cannot be found solely on the grounds that President Trump was near or close to a document. Nor can the government meet its burden of proof on the possession element of a particular Count solely on the grounds that President Trump was present at a scene where the document was discovered, or solely because President Trump associated with a person who did control the document when it was discovered. However, these factors may be considered by you, in connection with all other evidence, in making your decision whether the government has proven beyond a reasonable doubt that President Trump possessed a document in connection with the first element of each of Counts 1 through 32.[10]

If you find that the government has failed to prove beyond a reasonable doubt that President Trump possessed the relevant document during the timeframe alleged in the Count you are considering, mark "Not Guilty" for that Count on the Verdict Form. If you find that the government has established this element beyond a reasonable doubt, then you should consider the second element.

### Element 2: Unauthorized Possession

The second element that the government must prove beyond a reasonable doubt is that, on or about the dates alleged in the Count you are considering, President Trump was not authorized to possess the document associated with that Count.

---

[9] Special Instruction S6, Eleventh Circuit Pattern Instructions.

[10] Ex. A-1, *Ford* Jury Instructions at 45.

4

For purposes of this element, possession was unauthorized if President Trump was not entitled to possess the document on the dates alleged in the Count that you are considering.[11] I instruct you that President Trump was authorized to possess the documents at issue in Counts 1 through 32 during his Presidency, and that applicable law authorizes former Presidents and Vice Presidents (and their designees) to access classified information after their terms are completed under certain circumstances.[12] When considering this element, you may consider evidence relating to other former Presidents, Vice Presidents, and other government officials being authorized to possess documents containing classified information after they left their positions, without criminal prosecution by the government.[13]

I also instruct you that President Trump was authorized by a law called the Presidential Records Act to possess a category of documents defined as "personal records," both during and after his term in office. On the other hand, under the Presidential Records Act, after President

---

[11] *See* Ex. A-3 at 2330 (trial transcript from *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Aug. 1, 2022) (hereinafter, "*Schulte* Jury Instructions")).

[12] *See* 3/14/24 Tr. 59 ("So you would agree, of course, during the presidency, the access is authorized?" // "Yes."); Executive Order 13526 § 4.1(a)(3); *see also* ECF No. 277 at 49 n.25 ("Presidents are not required to obtain security clearances before accessing classified information[.]" (citing 50 U.S.C. § 3163)).

[13] *See, e.g.*, Superseding Indictment ¶ 24 (quoting President Trump's statement regarding "the practice of former officials maintaining access to our Nation's most sensitive secrets long after their time in Government has ended"); Hur Report at 192 ("[P]ast presidents routinely took national security files including briefing materials for the President, records of negotiations with foreign governments, correspondence with foreign heads of state or governments, and correspondence with or directives to agencies within the Executive branch on foreign affairs."); *see also id.* at 200 (referring to DOJ's "prior treatment of former presidents and vice presidents who kept national security materials"); NARA Briefing Tr. 63, U.S. House of Rep., Permanent Select Comm. on Intelligence, Washington, D.C. (Mar. 1, 2023), https://intelligence.house.gov/uploadedfiles/3.1.23_nara_briefing_transcript.pdf (NARA official acknowledging that in "every PRA administration from Reagan forward," NARA has "found classified information in unclassified boxes" following the administration's conclusion).

Trump's term concluded, the government owned a category of documents defined under the Presidential Records Act as "Presidential records."[14] Therefore, in order to establish that President Trump's possession of the document in the Count that you are considering was "unauthorized" for purposes of the second element, the government must prove beyond a reasonable doubt that the document you are considering is a "Presidential record" and not a "personal record."[15] Now I am going to give you instructions regarding the meaning of the terms "Presidential record" and "personal record."

A "Presidential record" is a document created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.[16]

The term "Presidential record" does not include extra copies of documents produced only for convenience of reference, when such copies were clearly so identified.[17] Therefore, in order for the government to meet its burden of proof on this element, the government must prove beyond a reasonable doubt that the document you are considering was not such a copy. When you are addressing this issue during your deliberations, you should consider the evidence—or lack

---

[14] 44 U.S.C. §§ 2202, 2203(g)(1).

[15] For the avoidance of doubt, President Trump reiterates his objection, as stated in his motion to dismiss based on the Presidential Records Act and in his April 2, 2024 submission, to the jury being permitted to second guess his PRA categorization decisions. Neither the statute nor related caselaw permits such a usurpation of Presidential authority and discretion.

[16] 44 U.S.C. § 2201(2).

[17] 44 U.S.C. § 2201(2)(B)(iv).

thereof—surrounding the manner in which the document you are considering was created and handled, including whether and how it was shown to President Trump.

The term "Presidential record" does not include President Trump's "personal records."[18] Therefore, in order for the government to meet its burden of proof on the second element, the government must prove beyond a reasonable doubt that the document you are considering is not a "personal record."

A "personal record" is a document of a purely private or nonpublic character which does not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.[19] Before the end of President Trump's term in Office on January 20, 2021, President Trump had exclusive authority under the Presidential Records Act to, himself or in working with his staff, categorize records as either "Presidential records" or "personal records," and he was authorized to possess both types of records.[20]

The term "personal records" includes diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal which are not prepared or utilized for, or circulated or communicated in the course of, transacting government business.[21] The term "personal records" also includes materials relating to private political associations, and having no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President.[22] The term "personal records" also includes materials relating exclusively to the

---

[18] 44 U.S.C. § 2201(2)(B)(ii).

[19] 44 U.S.C. § 2201(3).

[20] 44 U.S.C. §§ 2203(b), 2203(f).

[21] 44 U.S.C. § 2201(3)(A).

[22] 44 U.S.C. § 2201(3)(B).

7

President's own election to the office of the Presidency; and materials directly relating to the election of a particular individual or individuals to Federal, State, or local office, which have no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President.[23]  Under the Presidential Records Act, President Trump's decision to exclude what he considered to be "personal records" from "Presidential records" constitutes his categorization of those records as "personal."[24]

Finally, I instruct you that regulations relating to authorization to possess classified information do not apply to a former President's "personal records."[25]  Therefore, if President Trump designated a document as a "personal record" under the Presidential Records Act, then the classification status of that document, if any, is not relevant to your evaluation of whether the government has met its burden of proving beyond a reasonable doubt that the document you are considering is a "Presidential record."

If you find that the government has failed to prove beyond a reasonable doubt that the document in the Count you are considering is a "Presidential record," then mark "No" on Question 1 of the Verdict Form for that Count.  If you find that the government has proven beyond a

---

[23] 44 U.S.C. § 2201(3)(C).

[24] ECF No. 407 at 2; *see also* 44 U.S.C. § 2203(f) (mandating that, "[d]uring a President's term of office," "[t]he President shall remain exclusively responsible for custody, control, and access to . . . Presidential records"); *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288, 301 (D.D.C. 2012).

[25] The definition of "records" in Executive Order 13526 does not include a former President's "personal records."  *See id.* § 6.1(hh) (defining "records" to mean "records of an agency and Presidential papers or Presidential records, as those terms are defined in title 44, United States Code").  The definition contains some internal tension, in that it includes both "records of an agency" and "Presidential records" under the PRA, but the PRA defines "Presidential records" to *exclude* "official records of an agency, 44 U.S.C. § 2201(2)(B)(i).  What is clear, however, is that § 6.1(hh) does not include a former President's "personal records," as that term is also excluded from the PRA's definition of "Presidential records."  44 U.S.C. § 2201(2)(B)(ii).

reasonable doubt that the document you are considering is a "Presidential record," then mark "Yes" on Question 1 for that Count on the Verdict Form. If, and only if, you conclude that the government has met its burden of proving that a document is a "Presidential record," then you must consider whether the government has proven beyond a reasonable doubt that President Trump was not authorized to possess the document during the timeframe alleged in the Count you are considering. If, and only if, you find that the government has met its burden of proof on this second element, then you should consider the third element.

### Element 3: A Person Entitled To Receive It

The third element that the government must prove beyond a reasonable doubt is that President Trump failed to deliver the document associated with the Count that you are considering to an officer or employee of the United States entitled to receive it.

A person is not entitled to receive classified information if he did not hold a security clearance, or if he holds a security clearance but has no need to know the information.[26]

The phrase "need to know" means a determination within the Executive branch that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.[27]

If you find that the government has not proven beyond a reasonable doubt that President Trump failed to deliver the document to a person entitled to receive the document in connection with the Count you are considering, mark "Not Guilty" for that Count on the Verdict Form. If you

---

[26] *See* Preliminary Jury Instructions, *United States v. Abu-Jihaad*, 2008 WL 536674 (D. Conn. 2008).

[27] Executive Order 13526 § 6.1(dd).

find that the government has established this element beyond a reasonable doubt, then you should consider the fourth element.

### Element 4: National Defense Information

The term "national defense information," or NDI, means information that is directly or indirectly connected to the defense of the United States against any of its enemies.[28]

The mere fact that the government argues the information is classified does not mean that the information qualifies as NDI. In deciding this issue, you are to examine the information and consider the testimony of witnesses who testified regarding the information's content, significance, purpose, and use to which the information could be put. Whether the information is connected with the national defense is a question of fact that you, the jury, must determine following the instructions that I have just given you about what the term NDI means.[29]

If you find that the government has not proven beyond a reasonable doubt that the document associated with the Count that you are considering contained NDI, mark "Not Guilty" for that Count on the Verdict Form. If you find that the government has established this element beyond a reasonable doubt, then you should consider the fifth element.

### Element 5: Closely Held

The fifth element that the government must prove beyond a reasonable doubt is that any NDI in the document associated with the Count that you are considering was "closely held" by the United States.

---

[28] *Morison*, 844 F.2d at 1071; *see also* Ex. A-2, *Campa* Jury Instructions at 19. The instructions in *Morison* and *Campa* also used the phrase "activities of national preparedness" to define NDI, but that phrase lacks necessary specificity and clarity, and President Trump objects to its use in any jury instructions that may ultimately be necessary in this case.

[29] Ex. A-3, *Schulte* Jury Instructions at 2327.

In determining whether NDI is closely held, you may consider whether the NDI at issue was already in the public domain. Information typically cannot be considered to be closely held if it is already in the public domain. For example, where information has been made public by the government itself, it is not closely held. Similarly, where information has been made public by a person or entity other than the government, and the government confirms that the information came from the United States government, it is not closely held. If the particular information at issue has been so widely circulated and is so generally believed to be true or to have come from the government that confirmation that it came from the United States government would add nothing to its weight, the information is not closely held.[30]

As another example, information about weapons, munitions of war and intelligence, which has been made public by Congress or the Department of Defense and is found in sources lawfully available to the general public, is not closely held.[31]

In determining whether material is closely held, you may consider whether it was appropriately classified, and whether it remained classified on the dates alleged in the Count you are considering. However, the mere fact that the government argues that certain information is classified does not mean that it is closely held.[32]

"Classified information" means information that is classified at the "Top Secret," "Secret," or "Confidential" level, and marked in a manner that is immediately apparent with five things:

---

[30] Ex. A-3, *Schulte* Jury Instructions at 2325-26; *see also United States v. Squillacote*, 221 F.3d 542, 576 (4th Cir. 2000). The court in *Schulte* provided additional instructions to the jury regarding the "closely held" element due to the nature of the allegations in that case, which, unlike here, related to leaking classified information to the public.

[31] *Dedeyan*, 584 F.2d at 39-40.

[32] Ex. A-3, *Schulte* Jury Instructions at 2327.

11

first, the classification level; second, the identity, by name and position, or by personal identifier, of the original classification authority; third, the agency and office of origin, if not otherwise evident; fourth, declassification instructions; and fifth, a concise reason for classification.[33]

Information is appropriately classified at the "Top Secret" level where the unauthorized disclosure of the information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority is able to identify or describe. Information is appropriately classified at the "Secret" level where the unauthorized disclosure of the information reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe. Information is appropriately classified at the "Confidential" level where the unauthorized disclosure of the information reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe. If there is significant doubt about the appropriate level of classification, the governing rules require that it be classified at the lower

---

[33] Executive Order 13526 §§ 1.2(a), 1.6(a), 2.1 (relating to derivative classification); *see also* 50 U.S.C. § 3164(2); *Dedeyan*, 584 F.2d at 41 ("The Court's charge was fair and impartial and left to the jury the determination of the classification issue and its bearing, if any, upon whether the Vulnerability Analysis related to the national defense. The Court read to the jury parts of Executive Order # 11652 by which it stated the 'classification of this document is controlled.'"); *United States v. Kim*, 808 F. Supp. 2d 44, 55 (D.D.C. 2011) ("To the extent that Defendant intends to argue that the information he is charged with leaking was previously disclosed or was not properly classified, he may do so as part of his defense . . . ."); Ex. A-1, *Ford* Jury Instructions at 46.

level.[34] In order to qualify as "classified information," the information must be marked to indicate its classified status with the five pieces of information that I described to you.[35]

As President of the United States, President Trump was what is called an "original classification authority" based on his power under the Constitution and related laws, which means that it was his authority that was used, by himself and others that he delegated it to, to classify information.[36] As President of the United States, President Trump also had absolute and unreviewable authority to declassify documents and information.[37] You heard evidence during the trial that President Trump exercised that authority, at times verbally and at times without using formal procedures, while he was President. I instruct you that those declassification decisions are examples of valid and legally appropriate uses of President Trump's declassification authority while he was President of the United States.

If you find that the government has not proven beyond a reasonable doubt that NDI in the document associated with the Count that you are considering was "closely held" by the government, mark "Not Guilty" for that Count on the Verdict Form. If you find that the

---

[34] Executive Order 13526 §§ 1.2(a), 1.2(c); *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) ("The President, after all, is the 'Commander in Chief of the Army and Navy of the United States.' U.S. Const., Art. II, § 2. His authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.").

[35] Executive Order 13526 § 6.1(i).

[36] Executive Order 13526 §§ 1.1(a)(1), 1.3(a)(1), 1.3(c)(2)-(3).

[37] Executive Order 13526 § 3.1(b)(1); *see also Egan*, 484 U.S. at 530 ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.").

government has established this element beyond a reasonable doubt, then you should consider the sixth element.

**Element 6: Potential Damage**

The sixth element that the government must prove beyond a reasonable doubt is that disclosure of NDI in the document would be potentially damaging to the United States or useful to an enemy of the United States.

If you find that the government has not proven this element beyond a reasonable doubt for the Count that you are considering, mark "Not Guilty" for that Count on the Verdict Form. If you find that the government has established this element beyond a reasonable doubt, then you should consider the seventh element.

**Element 7: Willfully**

The seventh element that the government must prove beyond a reasonable doubt is that President Trump acted willfully.

The word "willfully" means that the act was done voluntarily and purposely with the specific intent to violate a known legal duty, that is, with the intent to do something the law forbids.[38]

President Trump's conduct was not "willful" if it was due to innocent intent, negligence, inadvertence, or mistake.[39]

---

[38] Basic Instruction B9.1B, Eleventh Circuit Pattern Instructions. President Trump respectfully submits that, under the circumstances presented by this case, the § 793(e) charges "involve [a] 'highly technical statute[] that present[s] the danger of ensnaring individuals engaged in apparently innocent conduct.'" *Id.* Annotations & Comments To Basic Instruction B9.1A (quoting *Bryan v. United States*, 524 U.S. 184, 194 (1998)). Therefore, the government "must prove more than the defendant knew that his conduct was done with a bad purpose to disobey the law in general." *Id.*

[39] Ex. A-1, *Ford* Jury Instructions at 19.

14

When considering the evidence relating to this element, you may consider, as I explained earlier, that President Trump was authorized to possess the documents at issue in Counts 1 – 32 during his term as President.[40] You may consider evidence that government officials discussed classified information with President Trump and provided classified briefings and documents to President Trump before and during his Presidency—including inside President Trump's private offices and residences, such as at Bedminster, New Jersey, and Mar-a-Lago, in Palm Beach, Florida, as well as at Trump Tower in New York City.

You may also consider, as I explained earlier, that President Trump acted as an "original classification authority" while he was President of the United States, which means that all classification decisions during his term as President were based on his authority, and that he also had absolute and unreviewable authority to declassify documents and information. You may also consider, as I explained earlier, that former Presidents, Vice Presidents, and other government officials are authorized to possess documents containing classified information under certain circumstances.[41] Finally, you may also consider, as I explained earlier, evidence relating to former Presidents, Vice Presidents, and other public officials being authorized to possess documents

---

[40] 3/14/24 Tr. 59 ("So you would agree, of course, during the presidency, the access is authorized?" // "Yes."); Executive Order 13526 § 4.1(a)(3); *see also* ECF No. 277 at 49 n.25 ("Presidents are not required to obtain security clearances before accessing classified information[.]" (citing 50 U.S.C. § 3163)).

[41] Executive Order 13526 § 4.1(a)(3).

containing classified information without criminal prosecution by the government after they left their positions.[42]

---

[42] *See, e.g.*, Superseding Indictment ¶ 24 (quoting President Trump's statement regarding "the practice of former officials maintaining access to our Nation's most sensitive secrets long after their time in Government has ended"); Hur Report at 192 ("[P]ast presidents routinely took national security files including briefing materials for the President, records of negotiations with foreign governments, correspondence with foreign heads of state or governments, and correspondence with or directives to agencies within the Executive branch on foreign affairs"); *see also id.* at 200 (referring to DOJ's "prior treatment of former presidents and vice presidents who kept national security materials"); NARA Briefing Tr. 63, U.S. House of Rep., Permanent Select Comm. on Intelligence, Washington, D.C. (Mar. 1, 2023), https://intelligence.house.gov/uploadedfiles/3.1.23_nara_briefing_transcript.pdf (NARA official acknowledging that in "every PRA administration from Reagan forward," NARA has "found classified information in unclassified boxes" following the administration's conclusion).