**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON/Reinhart**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**DONALD J. TRUMP**,
**WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA**,

      Defendants.

_____/

**ORDER ON SEALING REQUESTS ASSOCIATED**
**WITH DEFENDANTS' MOTIONS TO COMPEL DISCOVERY[1]**

    **THIS CAUSE** comes before the Court upon two Motions: (1) the Special Counsel's Motion for Reconsideration and Stay (the "Motion" or "Motion for Reconsideration") [ECF No. 294]; and (2) Defendants' Motion for Leave to Disclose Discovery [ECF No. 312]. Both Motions concern sealing requests associated with Defendants' Motions to Compel Discovery and related filings [*See* ECF No. 262]. The parties have filed their respective Responses and Replies [ECF Nos. 316, 333, 334, 350]. On March 1, 2024, the Court heard argument on the Special Counsel's Motion for Reconsideration [ECF No. 361]. Upon careful review of the Motions and the full record, including the arguments raised during the March 1, 2024, hearing, the Special Counsel's Motion for Reconsideration [ECF No. 294] is **GRANTED IN PART**, and Defendants' Motion for Leave to Disclose Discovery [ECF No. 312] is **GRANTED IN PART.**

---

[1] This Order does not address the various other sealing requests associated with Defendants' substantive pretrial motions [ECF Nos. 339, 348, 384, 423]. Order on those requests to follow.

## BACKGROUND

The lengthy procedural history leading to the instant Motions is provided below:

**The Motions to Compel Discovery and Sealing Request**:   On January 16, 2024, Defendants filed multiple Motions to Compel Discovery in consolidated form (hereinafter, "MTC") [ECF No. 262].   In the MTC, Defendants seek an order (1) defining the scope of the prosecution team, and (2) compelling the Special Counsel to produce various categories of evidence under Fed. R. Civ. P. 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).   Defendants attached numerous exhibits in support of their MTC, some of which are documents produced by the Special Counsel in discovery, and others which consist of materials obtained by Defendants pursuant to the Freedom of Information Act [ECF No. 262-1 (redacted); ECF No. 262-2 pp. 69–386 (sealed)].[2]   Consistent with the Protective Order entered on June 19, 2023 [ECF No. 27 ¶ 7], Defendants filed the MTC on the public docket in partially redacted form [ECF Nos. 262, 262-1].[3]   Defendants contemporaneously filed a Motion for Leave to file their MTC in substantially unredacted form (with limited exceptions), arguing that court filings are presumptively public records as provided in the Local Rules, *see* S.D. Fla.

---

[2] Defendants' Motions to Compel, as well as the associated Reply and Response, are accompanied by extensive classified supplements [ECF No. 263; *see* ECF Nos. 280, 301].   Neither Defendants nor the Press Coalition seek to unseal the classified supplements.

[3] The operative blanket Protective Order extends to "all discovery produced by the United States to the Defendants in preparation for, or in connection with, any stage of this case" [ECF No. 27 ¶ 1].   As relevant here, Paragraph 7 provides that "Defendants shall not disclose Discovery Material in any public filing or in open court without notice to, and agreement from, the United States, or prior approval from the Court" [ECF No. 27 ¶ 7].   All of the approximately 1.3 million pages of unclassified discovery in this case have been designated by the Special Counsel as subject to the Protective Order.

L.R. 5.4(a), (c), and that "no compelling interest in sealing the motions exists here" [ECF No. 261 pp. 1–2].

The Special Counsel filed a brief, generalized response to Defendants' Motion for Leave on January 18, 2024 (the "Seal Request") [ECF No. 267].[4]  In that Seal Request, the Special Counsel opposed unsealing the MTC and accompanying exhibits to the extent that the information therein (1) "reveals the identity of any potential Government witness," (2) "reveals personal identifying information for any potential Government witness," or (3) "constitutes Jencks Act material for any potential Government witness" [ECF No. 267 pp. 1–2 (also identifying "certain additional discrete sensitive information" falling outside these enumerated categories)].  The Seal Request did not propose a legal framework to govern the requests, nor did it provide any factual support for the relief sought [ECF No. 267].  Defendants took "no position on any particular request," but argued that the Special Counsel's generalized and vague claims failed to provide sufficient factual or legal basis for the relief requested [ECF No. 270 p. 1].

**The Press Coalition's Filing**:  On January 22, 2024, the Press Coalition filed a Motion to Intervene and Unseal Defendants' Motions to Compel Discovery [ECF No. 269].  The Press Coalition argued, citing authorities, that Defendants' MTC (and accompanying exhibits) are presumptively public court records subject to the First Amendment's qualified right of access [ECF No. 269 pp. 2–6].  Both sides responded to the Press Coalition's Motion [ECF Nos. 271, 282].  Defendants largely took issue with the Press Coalition's representations about Defendants' responsiveness to conferral efforts [ECF No. 271].  The Special Counsel argued that the Press

---

[4]  Later, on February 2, 2024, the Special Counsel moved to file sealed/redacted documents in connection with its Response to Defendants' MTC [ECF No. 278].  That motion largely incorporated the position taken in the Special Counsel's January 18, 2024, Seal Request [ECF No. 278 p. 1 (referencing ECF No. 267)].

Coalition failed to establish the elements of intervention under Fed. R. Civ. P. 24 [ECF No. 282]. The Special Counsel's response did not object to the Press Coalition's invocation of First Amendment principles, did not meaningfully engage with any of the legal standards, and did not offer any additional factual support.

**The Court's Sealing Orders**:  Against the backdrop of the preceding history and record, the Court then issued two Orders (collectively, the "Sealing Orders") authorizing the sealing of personal identifying information but otherwise requiring Defendants' MTC and attached exhibits to be filed in unredacted form [ECF Nos. 283, 286].  Guided by the strong presumption of public access to criminal proceedings, the Court applied the unobjected-to First Amendment standard [ECF No. 283 p. 4 (noting that "neither party argues that the First Amendment does not apply to Defendants' Motions to Compel or the materials attached thereto")].  Under this standard—along with the well-established rules governing public access in this District, *see* S.D. Fla. L.R. 5.4; *United States v. Maurival*, 795 F. App'x 725, 727 (11th Cir. 2019)—the Court determined that "the Special Counsel has not set forth a sufficient factual or legal basis warranting deviation from the strong presumption in favor of public access to the records at issue" [ECF No. 283 p. 5].  The Orders also set deadlines for the sealed submission of the parties' respective filings for the Court's review prior to public docketing [ECF No. 283 p. 9; ECF No. 286 p. 2].

**The Motion for Reconsideration**:  On February 8, 2024, the Special Counsel filed the instant Motion for Reconsideration [ECF No. 294].  The Special Counsel argues that (1) the Court clearly erred in applying the First Amendment standard to the seal requests, which are instead governed by the Rule 16 "good cause" standard; and (2) reconsideration is warranted to "prevent manifest injustice" [ECF No. 294 p. 2].  Unlike the Special Counsel's initial Seal Request [ECF No. 267], the Motion for Reconsideration proposes a legal standard and provides some

additional factual support [ECF No. 294 pp. 5–20; ECF No. 296 (sealed)].  Defendants responded, arguing that newly raised arguments and evidence cannot serve as a basis for reconsideration [ECF No. 333 pp. 1–2].  Defendants also argued that the Court applied the correct standard and distinguished the cases cited in the Motion from the circumstances presented in this criminal proceeding [ECF No. 333].

**The Motion for Leave to Disclose Discovery**:  In light of the Motion for Reconsideration, the Court stayed the deadlines established in the prior Sealing Orders [ECF No. 295].  At the Court's instruction, Defendants filed a Notice concerning their then-forthcoming MTC Reply in which they proposed (1) publicly filing all portions of the MTC Reply that do not reference discovery; and (2) conferring with the Special Counsel about discovery they seek to disclose, and if necessary, seeking leave to file a redacted version of their MTC Reply [ECF No. 297].  The Court approved this proposal [ECF No. 297].  On February 9, 2024, Defendants filed all portions of the MTC Reply that did not reference discovery [ECF No. 300].

On February 15, 2024, Defendants filed the instant Motion for Leave to Disclose Discovery, identifying four categories of material they seek to disclose in their Supplement to MTC Reply [ECF No. 312].  Defendants seek to disclose the following materials:

- Search warrant application for Defendant De Oliveira's Gmail account;

- Grand jury testimony of an FBI Special Agent and a Secret Service Agent concerning the thoroughness of the August 8, 2022, search of Mar-a-Lago;

- U.S. Secret Service email chain shown to the Secret Service Agent during the grand jury testimony described above;

- Mar-a-Lago floor plan and security memorandum prepared by the U.S. Secret Service.

[ECF No. 312 pp. 2–3].  In the alternative, Defendants seek permission to file a redacted copy of their Supplement (and accompanying exhibits) on the public docket, and an unredacted copy under

seal [ECF No. 312 p. 1].  The Special Counsel filed a Response opposing the materials' public disclosure for the same reasons raised in prior filings [ECF No. 316; *see, e.g.*, ECF No. 267; ECF No. 294 p. 2; (emphasizing concerns about witness safety, infecting witness testimony or the jury pool, and protecting privacy interests)].

**The March 1 Hearing**:  On March 1, 2024, the Court heard argument on the Special Counsel's Motion for Reconsideration [ECF No. 361].  In addition to presentations from the parties, the Court heard argument from a representative from the Press Coalition as a non-party *amicus curiae* [ECF No. 361; *see* ECF No. 355].

## LEGAL STANDARDS

"Although the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme Court and [the Eleventh Circuit] have permitted parties to file such motions in criminal cases."  *Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011) (citing *United States v. Phillips*, 597 F.3d 1190, 1199–1200 (11th Cir. 2010)).  In deciding motions for reconsideration in criminal cases, courts "generally employ the standards underlying motions for reconsideration in civil cases."  *United States v. Razz*, 387 F. Supp. 3d 1397, 1402 (S.D. Fla. 2019), *aff'd*, 837 F. App'x 712 (11th Cir. 2020).  As in civil cases, "there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.*; *see, e.g.*, *United States v. Grobman*, 548 F. Supp. 3d 1344, 1347–48 (S.D. Fla. 2021); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) ("The only grounds for granting a Rule 59 motion are newly discovered evidence or manifest errors of law or fact.") (quotations and citations omitted).

"[A] motion for reconsideration should not be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington, Fla*., 408 F.3d 757, 763 (11th Cir. 2005) (citing *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998), and 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (3d ed. 2023)); *see also O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992) ("Motions to amend should not be used to raise arguments which could, and should, have been made before the judgment was issued."); *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc*., 763 F.2d 1237, 1239 (11th Cir. 1985).  This includes "new arguments that were 'previously available, but not pressed.'"  *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 957 (11th Cir. 2009) (quoting *Stone*, 135 F.3d at 1442); *see also Lopez v. City of W. Miami*, 662 F. App'x 733, 738 (11th Cir. 2016); *United States v. Jiles*, No. 20-14471, 2022 WL 225519, at *3 (11th Cir. Jan. 26, 2022); *O'Neal*, 958 F.2d at 1047.  As such, a motion for reconsideration is appropriate where, for example, "the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension."  *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citations omitted).

Finally, "[r]econsideration is an extraordinary remedy that should be employed sparingly," *Grobman*, 548 F. Supp. at 1347–48, and the decision to reconsider is "committed to the sound discretion of the district judge," *Am. Home Assurance Co.*, 763 F.2d at 1238–39.

## **DISCUSSION**

The Special Counsel now seeks reconsideration of the Court's prior Sealing Orders [ECF No. 294; *see* ECF Nos. 283, 286].  The Special Counsel argues that (1) the Court clearly erred in applying the First Amendment standard to the seal requests, which are properly governed

by the Rule 16 "good cause" standard; and (2) reconsideration is warranted to "prevent manifest injustice"—namely, protecting potential witnesses and the integrity of the proceeding [ECF No. 294 p. 2].[5]  Upon full review of the issues presented, the Court ultimately elects to consider the Special Counsel's newly raised arguments and to reconsider its prior rulings.  The Court grants the Special Counsel's Motion in part, reasoning as follows:

**A. The Special Counsel's Newly Raised Arguments Could Have and Should Have Been Raised Previously.**

As a preliminary point, the arguments and evidence advanced in the Special Counsel's Motion could have, and should have, been raised in prior filings.  Denial of the Motion would be appropriate on that basis.  *See, e.g.*, *Michael Linet, Inc.*, 408 F.3d at 763 (providing that motions to reconsider cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment").  As provided above, *supra* pp. 2–3, the Special Counsel had two opportunities to raise these arguments and failed to do so in both instances [ECF Nos. 267, 282].  The Special Counsel's initial Seal Request failed to offer a governing legal framework or any factual support for the relief sought; instead, it contained only conclusory and unsubstantiated assertions about witness safety, the integrity of the proceedings, and privacy interests [ECF No. 267].  Later, in response to the Press Coalition's Motion, the Special Counsel failed to engage with—let alone refute—the Press Coalition's argument that the First Amendment attached to the subject materials [ECF No. 282; *see* ECF No. 269].   Instead, the Special Counsel focused solely on the elements of intervention under Fed. R. Civ. P. 24 [ECF No. 282].  Only now, after failing to meaningfully "raise argument[s] or present evidence that could have been raised"

---

[5]  "[E]ven if the Court finds that the Government's prior filings did not adequately address the issues before the Court, it should exercise its discretion to consider the arguments and evidence below before resolving the request for continued sealed" [ECF No. 294 p. 10].  Out of an abundance of caution, and cognizant of the interests implicated, the Court agrees to do so here.

in these responses, *Wilchombe*, 555 F.3d at 957, the Special Counsel moves for reconsideration and argues, in no uncertain terms, that the Court committed "clear error" by applying an unobjected-to legal standard [ECF Nos. 267, 282].

The same is true of the Special Counsel's "manifest injustice" claim. The factual support underlying this claim—*i.e.*, the basis for the assertion that disclosure of potential witnesses' identities could subject them to threats, intimidation, and harassment—was meaningfully developed for the first time in the Motion for Reconsideration itself [*Compare* ECF No. 267 *with* ECF No. 294 pp. 12–20 *and* ECF No. 296]. Indeed, as the Court's Order determined, the Special Counsel's initial Seal Request failed to provide the Court adequate support to grant the relief sought [ECF No. 283 ("Although substantiated witness safety and intimidation concerns can form a valid basis for overriding the strong presumption in favor of public access, the Special Counsel's sparse and undifferentiated Response fails to provide the Court with the necessary factual basis to justify sealing.")]. This remains true even if the Court had applied the Rule 16 "good cause" standard, which still requires a particularized, specific showing. *See United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) (same, collecting authorities).[6] And this is to say nothing of the Special Counsel's failure to comply with this District's Local Rules on sealing, which the Court has emphasized repeatedly throughout this proceeding [ECF Nos. 41, 48, 228, 231]; S.D. Fla. L.R.

---

[6] Although the Motion for Reconsideration correctly notes that "direct threats are not a strict condition precedent to a district court's granting of a closure motion" [ECF No. 294 p. 15 (quoting *United States v. Doe*, 870 F.3d 991, 999 (9th Cir. 2017) (internal quotation marks omitted))], it remains true that a party seeking to seal documents must support its request with particularity. S.D. Fla. L.R. 5.4(c)(1); *see Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789 (3d Cir. 1994) (explaining that even under a "good cause" standard, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing").

5.4(c)(1).  This served as another independent basis for denial.  *See Maurival*, 795 F. App'x at 727 (affirming denial of motion to seal for failure to comply with S.D. Fla. L.R. 5.4(c)(1) where movant's "cursory references to broad categories of protected classes of information did not provide the court with a specific factual basis justifying the motion to seal"); *id*. at 726 ("P]ursuant to the local rules for the Southern District of Florida, proceedings are public and court filings are 'matters of public record.'  Where a party seeks to seal documents in a criminal case, he must set forth 'the factual and legal basis for departing from' the court's open-access policy." (quoting S.D. Fla. L.R. 5.4(a), (c)(1))).

**B. Nevertheless, the Court exercises its discretion to reconsider its ruling in light of the Special Counsel's newly raised arguments and to apply Rule 16's "good cause" standard to Defendants' Motions to Compel.**

Although the record is clear that the Special Counsel could have, and should have, raised its current arguments previously, the Court elects, upon a full review of those newly raised arguments, to reconsider its prior Order.   Having done so, the bottom line is this.  The Eleventh Circuit has not specifically addressed the instant question: whether, in a criminal proceeding, the First Amendment qualified right of access attaches to discovery materials referenced or attached in support of a publicly filed Rule 12(b) motion to compel discovery under Rule 16.  Nevertheless, the most faithful application of Supreme Court and available Eleventh Circuit authority is that Defendants' MTC in this case is not subject to a public right of access, whether constitutional or common law in nature, because it is a still, ultimately, a discovery motion as distinct from a substantive pre-trial motion requiring judicial resolution on the merits.  This conclusion flows from *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001), a civil case in which the Eleventh Circuit held that discovery material filed in connection with a "discovery motion" is not subject to the First Amendment or common-law rights of access.  *Id.* at 1310–13.

It also flows indirectly from *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356 (11th Cir. 2021), another civil case in which the Eleventh Circuit, albeit in the common law context, recently reinforced a categorical view of what constitutes a "public or judicial record"—stressing a line between discovery material filed in connection with discovery motions versus discovery material referenced in substantive motions requiring judicial resolution of the merits.  *Id.* at 1362 (explaining that discovery materials "take on [the] status" of a judicial record "once they are filed in connection with a substantive motion").  And it derives most fundamentally from application of the Supreme Court's "experience and logic" tests to the discovery "process" at issue in the MTC, assuming it is correct to view the "process" in the MTC as strictly discovery-based.  *See Press–Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 9 (1986) (*Press–Enterprise II*).  *See infra* p. 12 (discussing the unique nature of the MTC).  Applying those authorities, the Court agrees with the Special Counsel's now-developed position that the discovery materials referenced in, and attached to, Defendants' MTC take on the character of the motion to which they are attached—here, a motion that is, at least in considerable part, a "discovery motion"—the net result being that they do not trigger the public's right of access.

None of this is to say that the issue presented on reconsideration is clear-cut or straightforward [ECF No. 283 (noting developing area of law)].  First, the Special Counsel's position depends on an extension of *Chicago Tribune* to discovery attached to public court filings in criminal cases—yet as all parties observe [ECF No. 369 p. 118; ECF No. 333 p. 4; *see* ECF No. 369 pp. 97–109], *Chicago Tribune* features a distinction between the First Amendment's applicability in civil and criminal cases.  *Chicago Tribune Co.*, 263 F.3d at 1310 ("The constitutional right of access has a more limited application in the civil context than it does in the criminal.").  This distinction cannot be ignored given the pronounced and well-developed history

of the public's heightened interest in criminal cases. *Id.* (emphasizing the "firmly established" nature of "[t]he media and general public's First Amendment right of access to criminal trial proceedings").[7]  Second, and more granularly, the Eleventh Circuit criminal cases cited by the Special Counsel in support of extending *Chicago Tribune*'s holding to the criminal context— *United States v. Anderson*, 799 F.2d 1438 (11th Cir. 1986) and *United States v. Nickens*, 809 F. App'x 584 (11th Cir. 2020)—are distinguishable in that they involve discovery unattached to a publicly filed Rule 12 motion seeking Rule 16 discovery, as is presented here.[8]  Third, as the Court noted in its initial Sealing Order, right-of-access caselaw as related to criminal pretrial motions remains developing—with at least one circuit court applying First Amendment principles to a pre-trial motion to compel discovery and other pre-trial motions/materials, *In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) (noting blanket protective order controlling discovery), and with another circuit endorsing a broader First Amendment right of access to "pretrial documents in general," although not specifically in the context of motions to compel discovery, *Associated Press v. U.S. Dist. Ct. for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983).[9]  And finally, more

---

[7] *See, e.g.*, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 605–606 (1982) ("[P]ublic access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government"); *Richmond Newspapers, Inc.*, 448 U.S. at 564–75 (1980) (surveying the history of the public's right to access to criminal proceedings); 4 William Blackstone, *Commentaries* *5 (explaining the public's heightened interest in criminal proceedings, as compared to civil).

[8] *Anderson*, 799 F.2d at 1440 & n.2 (finding no First Amendment right of access associated with a Rule 404(b) notice filed in compliance with a court order—and then expressly distinguishing that "voluntary discovery" material from a Rule 12 motion seeking discovery under Rule 16); *Nickens*, 809 F. App'x at 591 (holding that sealed transcript from an ex *parte* discovery conference between court and prosecutors, but not attached in support of a publicly filed Rule 12(b) motion, fell outside the First Amendment right of access).

[9] *See also In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986) (documents in plea and sentencing hearings); *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) (documents in pretrial bail proceedings); *In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987) (documents in

specific to the filing at issue, Defendants' MTC—a consolidated filing exceeding 300 pages (exclusive of classified supplements)—does not resemble a simple "discovery motion" [*see* ECF No. 369 pp. 97–109]. As the MTC and associated filings indicate [ECF Nos. 262, 300], Defendants primarily seek a "judicially enforced definition of the prosecution team," along with an adjudicative ruling that Defendants have produced "some evidence tending to show the existence of the essential elements" of their selective/vindictive prosecution claims. *United States v. Jordan*, 635 F.3d 1181, 1188–89 (11th Cir. 2011). These embedded scope-of-the-prosecution-team and selective-and-vindictive-prosecution questions, related to broader questions of due process and alleged "bias and political animus," give the MTC a decidedly different flavor than a "garden variety" discovery filing—making the access inquiry murkier.

Notwithstanding the still-developing and somewhat muddled questions raised in this criminal case, the Court determines, for the reasons previously stated, that no right of access attaches to the disputed discovery material referenced and/or attached in Defendants' MTC. The Court therefore applies the "good cause" standard set forth in Rule 16 to the categories of information in the Special Counsel's seal requests, addressed below. Fed. R. Crim. P. 16(d)(1); *see* Fed. R. Civ. P. 26(c).

### C.  Application of Rule 16's "Good Cause" Standard to the Disputed Categories of Information

The Rule 16 "good cause" standard requires a particularized, specific showing when the designation of a document produced under a "blanket" protective order is challenged. *Chicago*

---

suppression hearings); *Seattle Times Co. v. U.S. Dist. Ct. for W. Dist. of Washington*, 845 F.2d 1513 (9th Cir. 1988) (documents in pre-trial detention proceedings); *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569 (8th Cir. 1988) (documents in support of search warrant applications); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029–30 (11th Cir. 2005) (sealed dockets and specific plea and sentencing-related documents).

*Tribune Co.*, 263 F.3d at 1307–1308; *id.* at 1308 n.2; *Wecht*, 484 F.3d at 211.  This evaluation contemplates the balancing of several relevant factors, including the safety of witnesses and third parties; a particular danger of perjury or witness intimidation; the protection of information vital to the national security; and the protection of business enterprises from economic reprisals.  *E.g.*, *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citing Fed. R. Crim. P. 16, Advisory Committee Notes to the 1966 Amendment).  A party's reliance on a protective order is also a factor, albeit entitled to less weight in cases involving a "blanket" protective order.[10]  *United States v. Bulger*, 283 F.R.D. 46, 53–54 (D. Mass. 2012); *see Pansy*, 23 F.3d at 70 ("Reliance will be less with a blanket order, because it is by nature overinclusive.") (quotation omitted).  So too must courts accommodate any defendant's assertion or concern that disclosure of information will harm his or her interests or right to a fair trial, a suggestion that no Defendant makes here [ECF No. 270 pp. 2–3].[11]

The Special Counsel argues that, in light of the Protective Order, the "good cause" burden rests with Defendants [ECF No. 294 p. 9 ("[The Protective Order] presupposes that the burden is on *the defendants* to justify the basis for publicly disclosing presumptively confidential discovery material[.]") (emphasis in original)].  The Court disagrees.  As a general principle, a "protective order binds only the parties thereto, not the Court," and it does not displace binding legal principles governing good cause, the Local Rules, or access principles more generally.  *Kurimski v. Shell Oil*

---

[10]  A "blanket" protective order is one that "extend[s] broad protection to all documents produced by [a party], without a showing of good cause for confidentiality as to any individual documents." *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988).  The operative Protective Order, which covers "[a]ll non-classified discovery produced by the United States to the Defendants," is one such example [ECF No. 27; *see* ECF No. 23 (Motion for Protective Order)].

[11]  Although the Press Coalition was given leave to participate as an amicus on matters related to public access and presented oral argument at the March 1, 2024, hearing, the Press Coalition has not been granted intervention status in this case [ECF No. 283 p. 9 n.9 (denying as moot Press Coalition's intervention request)].

*Co.*, No. 21-80727-CV, 2021 WL 8972940, at *1 (S.D. Fla. Sept. 29, 2021). More specifically, under a blanket protective order issued upon a generalized "good cause" showing, as is in effect here [ECF No. 27; *see* ECF No. 23], the party seeking to maintain the seal carries the burden in the face of document-specific challenges. *Chicago Tribune Co.*, 263 F.3d at 1307 (explaining that a blanket protective order merely "postpones the necessary showing of 'good cause' required for entry of a protective order until the confidential designation [of a document] is challenged"); *In re Alexander Grant*, 820 F.2d at 356 (same); *Pansy*, 23 F.3d at 787 n.17 (same); *Bulger*, 286 F.R.D. at 52–53 (collecting cases). Because Defendants challenged the designation of the discovery materials referenced in support of their MTC [ECF No. 261 p. 2], the burden of making document-specific "good cause" showings falls to the Special Counsel.

Applying these legal principles to the voluminous record, the Court addresses below the categories of information subject to the Special Counsel's seal requests.

## 1. Witness Identities

The Special Counsel seeks to redact from Defendants' MTC and exhibits information that reveals the identity of any potential government witness, arguing that publicizing witness identities could subject those potential witnesses to threats, intimidation, or harassment [ECF No. 267 p. 2; ECF No. 294 pp. 12–15]. The Special Counsel offers examples of threats and/or concerning communications directed at judicial officers and law enforcement agents connected with proceedings following the August 8, 2022, search of Defendant Trump's home and with other cases involving Defendant Trump [ECF No. 294 pp. 13–16]. The Special Counsel also filed under seal evidence related to a government witness by a non-party not referenced or cited in Defendants' Motions [ECF No. 296 (sealed)].[12]

---

[12] The Special Counsel also acknowledges that no defendant in this case has engaged in witness

Although the Special Counsel's request remains sweeping in nature as applied to all potential government witnesses without differentiation—and although the Court was unable to locate another high-profile case (in publicly available records) in which a court granted a broad-based pre-trial request to seal the identities of all potential prosecution witnesses as sought here—the Court is satisfied that the Special Counsel has made an adequate showing on this issue under Rule 16, at least at this juncture pending final trial preparations.[13]   The Court directs the Special Counsel, consistent with the instructions below, *see infra* p. 24, to file under seal an index containing the name of each potential government witness and a corresponding pseudonym/anonymization for use in the redactions of Defendants' MTC.

### 2.  Personal Identifying Information ("P.I.I.")

The Special Counsel and Defendants request redactions of personal identifying information [ECF No. 267 p. 2 (seeking to redact information that "reveals personal identifying information for any potential Government witness"); ECF No. 261 p. 3 (seeking redactions of P.I.I.)].  The Court previously granted this joint request, and no party challenges it now [ECF Nos. 283, 286].  Thus, as before, the Court authorizes redactions to P.I.I. consistent with the privacy protections rooted in Federal Rule of Criminal Procedure 49.1 and this District's CM/ECF Administrative Procedures.  *See* Fed. R. Crim. P. 49.1(a)(1)–(5) (permitting redaction of certain P.I.I., including dates of birth, social security numbers, and home addresses).   The parties are directed to review the subject materials and redact email addresses, phone numbers, dates of birth, social security numbers, and home addresses.

---

intimidation [ECF No. 369 p. 135], and that all defendants are subject to a no-contact order that heretofore has generated no activity in the case [ECF Nos. 17, 19, 90].

[13]  The Special Counsel has not proposed a specific duration for the seal request, as required under the Local Rules, *see* S.D. Fla. L.R. 5.4(c)(1),

### 3.  Substantive Witness Statements

As for the third category, the Special Counsel argues for—in what is characterized as a part of a "narrow" set of seal requests—the wholesale and undifferentiated pre-trial sealing of all information that "constitutes Jencks Act material for any potential Government witness" [ECF No. 267 p. 2].[14]  The Special Counsel contends that this information should remain sealed "because of witness safety concerns and so as to not influence the testimony of other witnesses or the jury pool" [ECF No. 278 p. 2].  In response, Defendants argue that the Special Counsel has not provided "any case supporting their position that materials subject to the Jencks Act are categorically subject to sealing" [ECF No. 270 p. 2; ECF No. 333 p. 7].  Upon review, the Court grants the Special Counsel's request in limited part, as provided below:

### a.  Material that could be used to identify potential witnesses

The Court finds good cause to redact limited portions of the Jencks material that could directly identify potential witnesses. These limited redactions would include, for example: professional titles [*see, e.g.*, ECF No. 262-2 p. 73 ¶¶ 1, 3 (describing witness's current and former positions)]; detailed biographical or professional background information that could reasonably be used for identification purposes [*see, e.g.*, ECF No. 279 pp. 87–89]; information resembling P.I.I. that could be used for identification purposes; and other specific information which would obviously and directly identify a potential witness.   Sealing this material is supported by the same witness-safety rationale that has been deemed in this Order to justify redacting witness identities. *See United States v. Roberts*, 811 F.2d 257, 259 (4th Cir. 1987) (explaining that "questions of

---

[14]  The Jencks Act provides: "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a); *see* Fed. R. Crim. P. 16(a)(2).

witness safety necessarily arise" when Jencks material is disclosed). The Court is confident that these limited redactions, in conjunction with the redactions to witness identities and P.I.I. authorized above, effectively resolve the witness safety/harassment issues, which serve as the "prime concern" animating the Special Counsel's request [ECF No. 267 p. 2; *see* ECF No. 294 pp. 12–15]. The parties are directed to meaningfully confer and redact all identifying statements from the subject materials. In the event of closely contested phrases or information, the parties should err on the side of redaction.

b. Remaining substantive witness statements

The Court reaches a different conclusion as to the Special Counsel's broad-based request to seal the substance of all substantive Jencks statements referenced in and/or attached to the MTC [ECF No. 278 p. 2 (arguing for wholesale sealing of potential witnesses' statements to avoid "influenc[ing] the testimony of other witnesses or the jury pool")]. By granting this sweeping and undifferentiated request—which the Special Counsel also raises in seal requests associated with Defendants' substantive pretrial motions [*See* ECF No. 348 pp. 6–7]—the Court would be authorizing the categorical sealing of large portions of the record attached in support of critical pretrial defense motions.[15] For the reasons below, the Court does not find the Special Counsel's generalized witness- and jury-pool-influence concerns sufficient to establish good cause to categorically seal the remaining portions of the substantive witness statements in the manner requested.

---

[15] As an additional byproduct of granting this sweeping request, upcoming hearings on Defendants' MTC and substantive pretrial motions—hearings that are typically, and rightly (especially in a case of such public significance), conducted in open court—would necessarily be closed to the public at least in significant form. In light of the strong presumption of public access, and determining that "good cause" does not exist for such closure, the Court declines to do so. *See Craig v. Harney*, 331 U.S. 367, 374 (1947) ("What transpires in the courtroom is public property.").

To date, the Special Counsel has had multiple opportunities to provide factual and legal support for the contention that generalized witness- and jury-pool-influence concerns justify blanket sealing of all witness statements relied on in pre-trial motions [ECF Nos. 267, 282, 294, 350]. None has been provided. All factual Jencks-request support included in the Motion is offered as a means of substantiating witness-safety concerns—not witness- and jury-pool-influence concerns [*See, e.g.*, ECF No. 294 pp. 13–15; ECF No. 296]. As such, the good cause showing is inadequate. *See Wecht*, 484 F.3d at 211 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."). Moreover, the request is generalized and undifferentiated, applying without distinction to all potential government witnesses regardless of substance, context, or role. The Court has found no analogue for this type of request—which, it bears noting—arises in a case involving a lengthy speaking indictment that itself generously references and quotes from a variety of non-Defendant statements, many of which were allegedly made by potential government witnesses [*e.g.*, ECF No. 85 ¶¶ 28, 32, 35, 41–46, 53, 55–57, 59–60, 65, 67–70, 75, 77–78, 80, 84, 91].

As for legal authority, the cases cited in the Special Counsel's papers do not lend support to this sweeping request; nor do they appear to have been offered as such.[16] And based on the Court's independent research, granting this request would be unprecedented: the Court cannot locate any case—high-profile or otherwise—in which a court has authorized anything remotely similar to the sweeping relief sought here.[17] What does exist, as a counterpoint, are authorities

---

[16] The Jencks-related cases cited in the Special Counsel's papers are offered almost entirely in support of the witness-safety rationale, not in support of witness- and jury-influence concerns as a rationale for broad-based sealing [*see* ECF No. 267 p. 2 (citing two cases); ECF No. 294 pp. 15–16 (citing two cases)]. In any event, these cases do not provide examples of courts authorizing the indiscriminate sealing of all substantive witness statements.

[17] The Special Counsel's reliance on the umbrella Protective Order does not dictate a different

describing time-tested tools to ensure the integrity of highly publicized proceedings like this one, including comprehensive voir dire under oath and exclusion of trial witnesses from the courtroom. *See In re Charlotte Observer (Div. of Knight Pub. Co.)*, 882 F.2d 850, 855–56 (4th Cir. 1989) (collecting cases); *see Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1247 (11th Cir. 2007). The existence of these safeguards counsels against the categorical sealing of all substantive statements as used in pre-trial motions.

In sum, the Court finds that the Special Counsel has made a sufficient "good cause" showing to justify redactions of information in substantive witness statements that could be used to identify potential witnesses (along with witness names and P.I.I., as noted). Confident that such redactions will address the witness-safety concerns at the center of the Special Counsel's seal request, the Court exercises its discretion to decline the Special Counsel's wholesale request to seal non-identifying substantive witness statements, for which no particularized factual or legal support has been presented.[18]

### 4. Miscellaneous Requests

The Special Counsel also identifies documents that "contain certain additional discrete sensitive information" falling outside these three categories that should remain sealed [ECF No. 267 pp. 1–2]. As in the Court's initial Sealing Order, the Court finds that national security concerns are sufficient to warrant sealing of the "signals intelligence sub-compartments

---

result. Under the operative Protective Order, all 1.3 million pages of discovery produced to date have been designated confidential. And while reliance interests are properly weighed in the analysis, "[r]eliance will be less with a blanket order, because it is by nature overinclusive." *Pansy*, 23 F.3d at 70 (quotation omitted); *Bulger*, 286 F.R.D. at 54 (collecting cases).

[18] Although none has been identified, to the extent any substantive statements involve an ongoing criminal investigation such that public disclosure would jeopardize that investigation, that information shall be redacted.

that are redacted in the Superseding Indictment" [ECF No. 267 p. 2; *see* ECF No. 85 pp. 32–37]. *See Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (finding a "compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service"). Additionally, the Special Counsel requests to redact from certain exhibits "the FBI code name of a separate investigation" and "uncharged conduct as to one or more individuals" [ECF No. 267 pp. 2–3].[19] The Court determines that law enforcement and third-party privacy interests are sufficient to justify these redactions. Finally, unlike the Special Counsel's requests vis-à-vis Defendants substantive pretrial motions, the Seal Request does not seek the redaction of ancillary names [*see* ECF No. 348 p. 10; *but see* ECF No. 294-1]. Nevertheless, for consistency, and recognizing that third-party privacy concerns establish "good cause" under the operative framework, the Court authorizes the sealing of this type of information.

### 5.  Requests Associated with Defendants' Supplement to MTC Reply

In their Motion for Leave to Disclose Discovery, Defendants identify four categories of discovery material they seek to reference in their Supplement to MTC Reply [ECF No. 312 pp. 2–3]. The Special Counsel opposes disclosure of all four categories "for the same reasons the Government has explained elsewhere: doing so would unnecessarily expose potential witnesses to very real dangers of harassment, intimidation, and reprisal" [ECF No. 316 p. 1]. Each is discussed below.

---

[19] The Special Counsel's prior submission did not specifically identify either the "FBI code name" or "uncharged conduct," or where the Court could locate this information in the voluminous papers [ECF No. 283 p. 8]. The Motion for Reconsideration, however, provides sufficient detail to allow the Court to reasonably locate and rule on the requests [ECF Nos. 294, 294-1 (appendix)].

a.   <u>Search warrant application for Defendant De Oliveira's Gmail account</u>

First, the Special Counsel opposes the disclosure of a search warrant application for Defendant De Oliveira's Gmail account [ECF No. 316 p. 3].  This includes the search warrant itself, the accompanying affidavit, and any attachments thereto [ECF No. 312 p. 2].  Consistent with the holdings above, the Court directs Defendants to redact from these materials witness identities, P.I.I., and any Jencks material that could directly identify potential witnesses as previously described in this Order.[20]

b.   <u>Grand jury testimony for two potential government witnesses</u>

Second, the Special Counsel opposes disclosure of grand jury testimony for two potential government witnesses: an FBI Special Agent and a Secret Service Agent [ECF No. 316 p. 4].  The Special Counsel argues that these materials should remain sealed "for the same reasons they are protected by Rule 6(e)" [ECF No. 316 p. 4].  Consistent with the important public and private interests served by the grand jury secrecy requirement contained in Fed. R. Crim. P. 6(e), the Court finds good cause to seal this material on that basis, subject to any additional litigation.[21]  *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19 (1979). Defendants should redact (not-otherwise already public) grand jury testimony from their publicly filed Supplement.[22] Further, grand jury transcripts should not be attached to the publicly filed Supplement.

---

[20]  The Special Counsel indicates that, after the March 1, 2024, hearing, his office revisited six search warrant applications implicated in this case and now is comfortable releasing "substantially unredacted" versions of the associated affidavits [ECF No. 384 p. 3].  To the extent the Special Counsel agrees to greater disclosure than ordered herein, the Court authorizes that approach.

[21] The District of Columbia recently transferred grand jury resolution of pending public disclosure issues arising out of grand jury matters originating in that district.

[22] Defendant Nauta's FBI interview and grand jury testimony has since been included in a publicly filed Special Counsel response [ECF No. 381 p. 19 nn.6 –7].

i. <u>U.S. Secret Service email chain</u>.

Third, the Special Counsel opposes disclosure of a U.S. Secret Service email chain as "paradigmatic Jencks Act material" that should be sealed [ECF No. 316 p. 4]. Defendants intend to reference and quote these emails "insofar as they relate to the thoroughness of the search of Mar-a-Lago on August 8, 2022" [ECF No. 312 p. 3]. Consistent with the instructions provided for substantive witness statements above, *see supra* pp., 18–20, Defendants are directed to redact any information that could be used to directly identify witnesses but may otherwise reference and quote the email chain.

ii. <u>Mar-a-Lago floorplan / U.S. Secret Service security memorandum</u>.

Finally, the Special Counsel opposes disclosure of a "memorandum prepared by Secret Service personnel following a Residential Security Survey of Mar-a-Lago in April 2021" [ECF No. 316]. The Court finds good cause for sealing this material based on the same national-security and law-enforcement justifications provided above. Defendants are directed to redact all references to the Mara-a-Lago floorplan/memorandum in their publicly filed supplement and not attach it to their filing.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motions [ECF Nos. 294, 312] are **GRANTED IN PART** in accordance with this Order.

2. On or before **April 15, 2024**, the Special Counsel shall file under seal an index identifying each potential government witness identified in any of the discovery materials attached/referenced in the MTC, giving each a corresponding pseudonym/anonymization (*e.g*., "John Smith" – NARA Employee 1).

CASE NO. 23-80101-CR-CANNON/Reinhart

3. On or before **April 16, 2024**, the parties shall meaningfully confer regarding the redaction of Jencks material that could identify potential witnesses, erring on the side of redaction.  Should the parties be unable to reach an agreement on any particular content, they shall jointly submit a sealed Notice to the Court on or before **April 19, 2024**, identifying the areas of dispute with particularity.

4. On or before **April 22, 2024,** the parties shall file public versions of the MTC, Response, and Reply as separate entries on the docket, consistent with this Order and the aforementioned index of anonymous witness names.  To avoid confusion, and for docket clarity, the parties shall take care to effectuate this docketing in sequence (MTC and opposition).[23]  As for Defendants' Supplemental Reply in Support of the MTC, Defendants are authorized to file an unredacted copy and accompanying exhibits under seal in accordance with this Order.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 9th day of April 2024.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[23] Defendants already filed a limited Reply [ECF No. 300], so no additional docketing of that Reply is necessary, to be supplemented by the forthcoming Supplemental Reply [ECF No. 312 p. 1].