UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80-1010-CR-CANNON

UNITED STATES OF AMERICA,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

        **Defendants.**
_____/

## MOTION FOR A BILL OF PARTICULARS

Defendant Waltine Nauta, by and through the undersigned counsel, and pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, respectfully request this Court Order the Special Counsel's Office ("SCO") to file a bill of particulars.

### I. PROCEDURAL BACKGROUND

Defendant Waltine Nauta is charged in eight counts of the July 27, 2023, Superseding Indictment, (ECF No. 85), to include: conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k) (Count 33); withholding a document or record in violation of 18 U.S.C. § 1512(b)(2)(A) (Count 34); corruptly concealing a document or record in violation of 18 U.S.C. § 1512(c)(1) (Count 35); concealing a document in a federal investigation in violation of 18 U.S.C. § 1519 (Count 36); engaging in a scheme to conceal in violation of 18 U.S.C. § 1001(a)(1) (Count 37); making false statements and representations in violation of 18 U.S.C. § 1001(a)(2) (Count 39); altering, destroying mutilating, or concealing an object in violation of 18 U.S.C. § 1512(b)(2)(B) (Count 40); and corruptly altering, destroying, mutilating, or concealing a document, record or other object in violation of 18 U.S.C. § 1512(c)(1) (Count 41).

1

A bottom, the charges stem from an alleged conspiracy to conceal boxes stored at former President Trump's Mar-a-Lago club and residence from the government.  In January 2021, at the end of President Trump's Administration, hundreds of boxes containing a mixture of personal items and papers were moved from the White House to the Mar-a-Lago Club, President Trump's residence.  Mr. Nauta, who served as a valet to President Trump during his administration, explained that while he helped pack some boxes during his employment at the White House, the boxes he personally packed only contained personal and household items, including but not limited to, shoes, hats, shampoo and undergarments.  Interview Tr. at 8:21-25, 40:23-25 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 6:23 – 7:7-10, 19:19-14 (June 21, 2022) (USA-00809047).  The boxes he packed were an extended version of the Bankers boxes.  Grand Jury Tr. at 20:22-25 (June 21, 2022) (USA-00809047).  He did not personally pack any boxes with documents, *Id.* at 21:20-23, nor did he observe boxes of documents being packed during the packing process in January 2021.  *Id.* at 21: 24 – 22:1.  Mr. Nauta further explained that he did not return to Mar-a-Lago until October of 2021.  *Id.* at 29:23-25, 30:1-4.  Some of the boxes during the packing process at the White House were labeled and some of them were just taken away by the movers.  *Id.* at 23:14-17.

Once the boxes arrived at Mar-a-Lago they were stored in various location including, the White and Gold Ballroom, business center, bathroom shower, and storage room.  Superseding Indictment at 10-12 (July 27, 2023) (ECF No. 85).  As described by Mr. Nauta, the boxes located outside of Pine Hall were white, brown, Xerox, and bankers' boxes.  Interview Tr. at 22:20-25 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 45:9-15 (June 21, 2022) (USA-00809047).  These similar bankers' boxes were utilized at the White House by President Trump, Grand Jury Tr. at 13:1-18 (June 21, 2022) (USA-00809047), but Mr. Nauta only saw newspapers, ties, and

personal effects in the bankers' boxes at the White House.  *Id.*at 13: 21-23, 14:4-9.  Mr. Nauta believed those boxes were going to Mar-a-Lago, *id.* at 20:14-16, although he advised he did not help move boxes that were sent to Mal-a-Lago.  *Id.* at 40:1-9.  Mr. Nauta confirmed upon his arrival to Mal-a-Lago in October 2021, he observed some of the boxes that were previously packed at the White House in a storage room.  *Id.* at 36: 4-10.  However, he did not know who physically placed them there.  *Id.* at 38:4-6.  Mr. Nauta required permission to enter the storage room, which required a key.  *Id.* at 38:18-19.

Mr. Nauta first began working for President Trump as a valet in January 2017, *id.* at 7:7-10, until the first week of March 2021.  Interview Tr. at 41:15-24 (May 26, 2022) (USA-0082793).  Upon his return to DC, Mr. Nauta continued to work for the White House, Interview Tr. at 26:11-19 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 26:11-19 (June 21, 2022) (USA-00809047), until his retirement from the Navy, after which he permanently joined President Trump's staff beginning in August of 2021.  Grand Jury Tr. at 28:17-21 (June 21, 2022) (USA-00809047).  At that time, however, former President Trump was residing at his club in Bedminster, New Jersey, and President Trump and Mr. Nauta did not return to Mar-a-Lago again until October of 2021.  *Id.* at 29:11-13.

At various times, Mr. Nauta has acknowledged moving boxes.  For example, on January 17, 2022, Mr. Nauta told the FBI he and another employee moved approximately 15-17 boxes placed outside of Pine Hall, Interview Tr. at 19:2-3, 20:20-22 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 45:16-18 (June 21, 2022) (USA-00809047), so they could be loaded onto a vehicle stationed outside of the Mar-a-Lago Club and placed on a truck in route to the National Archives and Records Administration (NARA).  Interview Tr. at 17:23-25, 18:12-15 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 45:4-8 (June 21, 2022) (USA-00809047).  Mr. Nauta

3

never opened the boxes collected from Pine Hall and was unaware of what documents, if any, each box contained. Interview Tr. at 21:19-21 (May 26, 2022) (USA-0082793). Mr. Nauta further explained that he never saw documents with classification markings at the Mal-a-Lago residence. *Id.* at 30:13-15.

In pertinent part, the Superseding Indictment alleges that following the receipt of a grand jury subpoena for documents with classified markings, Trump Attorney 1 made arrangements to search boxes stored in a Storage Room at Mar-a-Lago on June 2, 2022. Superseding Indictment at 22 ¶57 (July 27, 2023) (ECF No. 85). Thereafter, the indictment alleges, Mr. Nauta, at President Trump's direction, moved "approximately 64 boxes from the Storage Room and brought them to [President Trump's] residence." *Id.* at 22-23 ¶59. Then, on June 2, 2022, prior to Trump Attorney 1's arrival, the indictment alleges that Messrs. Nauta and De Oliveira moved approximately 30 boxes back from President Trump's residence to the Storage Room. *Id.* at 24 ¶63. Thus, the indictment insinuates, when Trump Attorney 1 performed the June 2 search of the boxes for documents with classification markings, there were approximately 34 boxes missing from the Storage Room. Several months later, on August 8, 2022, the indictment alleges, "the FBI executed a court-authorized search warrant at the Mar-a-Lago Club" in which it seized 75 documents purportedly with classification markings from the Storage Room. *Id.* at 30 ¶90.

## II.   LEGAL STANDARD

Rule (7)(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment shall be a plain, concise, and definite written statement of essential facts constituting the offense charged. The Eleventh Circuit Court of Appeals has described the function of a bill of particulars as follows: (1) to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense; (2) to minimize surprise at trial; and (3) to enable him to plead double jeopardy in the event of a later prosecution for the same offense. *United States v. Anderson*, 799

4

F.2d 1438, 1441 (11th Cir. 1986).  Where critical facts are missing, Rule 7(f) authorizes the use of bills of particulars to fill the gaps.  The bill of particulars is not part of the indictment, but "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial."  *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996).

In *United States v. Anderson*, 799 F.2d 1438 (11th Cir. 1986), the Court of Appeals described the function of a bill of particulars as follows:

> The purpose of a true bill of particulars is threefold: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."

*Id.* at 1441 (citation omitted) (citing *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985).  A bill of particulars, therefore, "supplements an indictment by providing the defendant with information necessary for trial preparation."  *Id.*  A bill of particulars has been described as, "the one method open to a defendant in a criminal case to secure the details of the charge against him."  1 Wright, Federal Practice and Procedure, Criminal 2d, § 129.

The failure to grant a motion for bill of particulars may constitute reversible error where the information sought is essential to the defense, *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978), or where the motion seeks to cure the omission from the indictment of details that might enable the defendant to prepare his defense.  *United States v. Haas*, 583 F.2d 216, 221 (5th Cir. 1978).

The use of a bill of particulars to inform a defendant of just what facts, assertions, and occasions he must be prepared to meet is "entirely consonant with the growing realization [even 60 years ago] that disclosure, rather than suppression of relevant materials, ordinarily promotes the proper administration of criminal justice."  *Dennis v. United States*, 384 U.S. 855, 970 (1966).  In *United States v. Smith*, 16 F.R.D. 372 (W.D. Mo. 1954), the district court observed that, while

"there is no discovery means in criminal cases, such as provided by the civil rules for civil cases, and . . . the only means open to a defendant . . . for the securing of the details of the charge against him is that afforded by Rule 7(f)[.]" *Id.* at 375. The court went on to hold that although bills of particulars, "are not intended to advise a party of his adversary's evidence or theory, they will be required, even if that is the effect, in cases where justice necessitates it." *Id.* Thus, the fundamental and constitutionally required function that a bill of particulars serves is to inform a defendant of the charges distinctly and specifically that he is clearly advised of what has to be proved and therefore has a fair and reasonable opportunity to prepare the defense.

### III.  ANALYSIS

The crux of the SCO's charges as against Mr. Nauta is that President Trump and Messrs. Nauta and De Oliveira, at President Trump's direction, concealed 34 boxes from President Trump's attorney, Trump Attorney 1, the FBI, as well as the grand jury. Superseding Indictment at 39 ¶97(b). This scheme was effected, the indictment alleges, by moving approximately 64 boxes from a Storage Room at Mar-a-Lago to President Trump's residence, and then only returning approximately 30 of those boxes to the Storage Room in advance of Trump Attorney 1's search of the same. Thereafter, Mr. Nauta is alleged to have lied about moving the boxes in his voluntary interview with the FBI (but not during his testimony before the grand jury) as well as to have attempted to persuade a Mar-a-Lago employee to delete security camera footage at Mar-a-Lago.

Specifically, the Superseding Indictment alleges that President Trump and Messrs. Nauta and De Oliveira conspired to obstruct a grand jury's investigation by, "moving boxes of documents to conceal them from Trump Attorney 1, the FBI, and the grand jury." Superseding Indictment at 39 ¶97(b) (July 27, 2023) (ECF No. 85). The movement of the boxes is summarized as follows:

> between May 23, 2022, and June 2, 2022, before Trump Attorney 1's review of [President Trump's] boxes in the Storage Room, [Mr. Nauta]—at [President Trump's] direction—moved approximately 64 boxes from the

6

> Storage Room to [President Trump's] residence, and [Messrs Nauta and De Oliveira] brought to the Storage Room only approximately 30 boxes.

*Id.* at 24 ¶63.

As a general matter, the indictment fails to allege the contents of the 34 boxes the SCO alleges President Trump and Messrs. Nauta and De Oliveira concealed, and thus the indictment fails to provide, "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). For example, the indictment does not specify that the 34 boxes allegedly concealed from Trump Attorney 1 contained any documents with classification markings. Nor does the indictment allege that any of the boxes searched by the FBI on August 8, 2022, were among the approximately 34 boxes that were allegedly concealed from Trump Attorney 1 on June 2, 2022. Even if it did so allege, the indictment fails to explain how the SCO would prove that any of the boxes searched by the FBI on August 8, 2022, were among the approximately 34 boxes alleged to have been concealed from Trump Attorney 1 on June 2, 2022. Importantly, given that more than a few boxes were seized by the FBI during their raid of Mar-a-Lago on August 8, 2022, the indictment's failure to allege which of the approximately 34 boxes, if any, that were allegedly concealed from Trump Attorney 1 on June 2, 2022, but later searched by the FBI on August 8, 2022, is a critical omission necessary, "inform[] a defendant of the nature of the charges against him so that he will have sufficient detail to prepare for [his] defense." *United States v. Holzendorf*, 576 Fed. Appx. 932, 935 (11th Cir. 2014) (quoting *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973)).

Similarly, the indictment fails to allege with particularity how Mr. Nauta is to have concealed any boxes from the FBI. Again, the only movement of boxes alleged as against Mr. Nauta is the movement of approximately 64 boxes to President Trump's residence and the subsequent return of only approximately 30 boxes prior to Trump Attorney 1's June 2, 2022, search

7

of the Storage Room. Superseding Indictment at 39 ¶ 97(b) (July 27, 2023) (ECF No. 85). Thereafter, the indictment alleges, the FBI identified 75 documents contained in boxes in the Storage Room when it searched it on August 8, 2022. *Id.* at 90. The indictment does allege, however, whether any of the boxes searched by the FBI on August 8, 2022, are alleged to have been among the 34 that were allegedly concealed by Mr. Nauta on June 2, 2022. Put differently, without this specificity, it is entirely plausible that none of the boxes searched by the FBI on August 8, 2022, were actually moved by Mr. Nauta.[1] This is particularly noteworthy insofar as the Storage Room contained more than 70 boxes when it was searched by the FBI on August 8, 2022, but a few were seized. Accordingly, even if the 34 boxes allegedly concealed by Mr. Nauta were all returned to the Storage Room after Trump Attorney 1's June 2, 2022, search, but before the FBI's August 8, 2022, search, it is entirely possible that the boxes seized by the FBI were not among the 34 boxes allegedly concealed by Mr. Nauta from Trump Attorney 1.

In addition, Mr. Nauta is alleged to have both attempted to persuade a Mar-a-Lago employee to delete security camera footage at Mar-a-Lago, Superseding Indictment at 49 ¶114 (July 28, 2023) (ECF No. 85), and to have attempted to delete the footage himself. *Id.* at 50 ¶116. The indictment, however, contains only summary allegations with respect to what role Mr. Nauta played in attempting to persuade a Mar-a-Lago employee to delete security camera footage or himself delete the footage. Specifically, the indictment alleges that Mr. Nauta, "changed his travel schedule" to visit Palm Beach, Florida (where he resided), *Id.* at 27 ¶78; "provided inconsistent explanations" about the change in his travel schedule, *Id.* at 27 ¶79; and met with Mr. De Oliveira

---

[1] Alternatively, to the extent the indictment alleges Mr. Nauta concealed boxes from the FBI and/nor the grand jury by virtue of his concealing them only from Trump Attorney 1, the SCO should so state. In Count 37, for example, Mr. Nauta is alleged to have concealed boxes *only* from the FBI and grand jury as opposed to Trump Attorney 1. Superseding Indictment at 43 ¶105 (July 27, 2023) (ECF No. 85).

at Mar-a-Lago. *Id.* at 29 ¶82. And while the Superseding Indictment does allege that Mr. Nauta contacted the same Mar-a-Lago employee whom Mr. De Oliveira is alleged to have asked about the deletion of video, the indictment does not allege – not once – that Mr. Nauta had any conversations with anyone about the deletion of video. Accordingly, it is necessary for the SCO to provide a bill of particulars so that Mr. Nauta can adequately prepare his defense and understand how he is alleged to have attempted to persuade another to and/or himself delete Mar-a-Lago security camera footage. *See Holzendorf*, 567 Fed. Appx. at 935.

Finally, Mr. Nauta is also charged with, "knowingly and willfully" making a, "material false, fictious, and fraudulent statement and representation" in his May 26, 2022, voluntary interview with the FBI. Superseding Indictment at 46 ¶111 (July 27, 2023) (ECF No. 85). Specifically, the indictment alleges, he advised the FBI during his interview that the first time he ever saw the boxes that he moved to a truck for NARA was just prior to moving them. *Id.* The indictment alleges these statements were false because the boxes in Pine Hall had been moved from the Storage Room to Pine Hall and Mr. Nauta had observed the boxes in the Storage Room and moved them to various locations at Mar-a-Lago Club. *Id.* at 48 ¶112. However, the indictment fails to allege that the specific boxes provided to NARA had come from the Storage Room (as opposed to another area of Mar-a-Lago) or what was contained in the boxes actually had classified markings, given that many boxes contained no documents with classified markings, but instead contained only personal items, papers, toiletries and other content.

## CONCLUSION

For the foregoing reasons, Mr. Nauta respectfully requests this Court Order the SCO to prepare a bill of particulars setting forth with particularity the pertinent facts omitted from the Superseding Indictment.

[SIGNATURE BLOCK NEXT PAGE]

[SIGNATURE BLOCK NEXT PAGE]

Dated: April 11, 2024            Respectfully submitted,

         *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

         *s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2024, I electronically submitted the foregoing, via CM/ECF, to counsel of record.

Respectfully submitted,

 *s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*