**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 23-801010-CR-CANNON**

UNITED STATES OF AMERICA,

       v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

       **Defendants.**
_____ /

**DEFENDANT WALTINE NAUTA'S REPLY IN SUPPORT OF
HIS MOTION FOR A BILL OF PARTICULARS**

Where are the boxes? Mr. Nauta's Motion for a Bill of Particulars makes one salient fact clear – the Special Counsel's Office ("SCO") does not know if the documents with classified markings discovered in a Mar-a-Lago Storage Room were in fact moved by Mr. Nauta. The SCO's Opposition to Waltine Nauta's Motion states that Mr. Nauta failed to "provide a particularized list of details he contends a bill of particulars should have to answer." Opp'n at 2 (Mar. 7, 2024) (ECF No. 380); *see also* Mot. (Feb. 22, 2024). To the contrary, Mr. Nauta's Motion does address what questions are left to be answered by the SCO. The questions are listed in paragraph form, in the form of summaries gathered from the Superseding Indictment of what remains to be answered that has not been made available in discovery, the indictment, or other sources. If the information sought in a bill of particulars is not available through other sources, then a bill of particulars is appropriate. *United States v. Martell*, 906 F. 2d 555, 558 (11th Cir. 1990).

I.  **BACKGROUND**

In his motion for bill of particulars (*see* Mot. at 5 (Feb. 22, 2024), the Mr. Nauta requests the SCO to explain which of the 34 boxes allegedly concealed from Trump Attorney 1, the Federal Bureau of Investigation ("FBI"), as well as the grand jury contained classification markings and requests the SCO to answer which 34 boxes during the FBI search of August 8, 2022, contained classification markings, and whether those are the same 34 boxes that were allegedly concealed from Trump Attorney 1 on June 2, 2022. *See* Superseding Ind. at 21-24 (July 27, 2023) (ECF No. 85) These questions are particular to Counts 34-37 of the Superseding Indictment. *See id.* at 40-34. Because answers to these questions are not obtainable unless disclosed by the SCO, a bill of particulars is the appropriate manner to address these issues. If the SCO does not know which of the boxes contained documents bearing classification markings, then they should indicate as much with particularity in a bill of particulars. *See, e.g., United States v. Rosenthal*, 793 F. 2d 1214, 1227 (11th Cir. 1986) (defendant not entitled to a bill of particulars with respect to information that

is sought if its available through other sources such as indictment or discovery and inspection).

Additionally, Mr. Nauta's Motion requests the SCO to answer how Mr. Nauta can be said to have concealed boxes simply because he moved unmarked boxes, at the specific request of his employers, where it's unclear those boxes had any documents that were either classified at one time and later declassified or had classifications marking on them and when there is no explanation whether the defendant could look inside the boxes, was allowed to, or could otherwise be reasonably expected to know, unless the SCO can state some particular way it was possible. Mot. at 6 (Feb. 22, 2024).

While the Superseding Indictment does state that the FBI search produced 75 documents with classification markings, it does not state with specificity which of those 34 boxes, if any, were or were not returned by Mr. Nauta had any documents with classification markings on them, or were classified at one time, that Mr. Nauta had any knowledge about.

The question further is elaborated to seek which of the boxes seized by the FBI were moved by Mr. Nauta that contained documents bearing classification markings and which boxes and where the markings were. The storage room contained more than 70 boxes and if 30 were returned, as alleged, from what source does the SCO know, or intend to show, that out of the boxes returned, to any storage room by Mr. Nauta that any of the contents of unmarked boxes actually contained classification markings, or that he knew of any classified documents within them other than SCO's mere suggestion or imagination. This issue remains to be satisfied by the Superseding Indictment and other sources, but it must also be answered by the SCO in order to give Mr. Nauta a fair and legal chance to know the nature of the charge against him and enjoy the due process of notice and opportunity to be heard afforded to him by the United States Constitution, so that he may fairly defend himself.

## II.  ARGUMENT

The purpose of the request for the bill of particulars is not to obtain or in any way force SCO to reveal its trial strategy or legal theory, but simply to clarify the nature of the charge against the Defendant as is permissible under Rule 7 of the Federal Rules of Criminal Procedure, which provides that an indictment shall be plain, concise, and definite written statement of essential facts constituting the offense charged.  Fed. R. Crim. P. (7)(c)(1).  Here, these essential facts are missing, and the SCO should be required to state them clearly and in such a way that does not require the defense to guess, imagine, or try to dissect the SCO's logic when it elected to bring vague charges lacking specifically defined the facts they intend to use to meet elements of said charges.  Rule 7(f) authorizes the use of bills of particulars to fill the gaps. Fed. R. Crim. P. 7(f).   The bill of particulars is not part of the indictment, but rather "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996).

Nevertheless, the SCO's opposition to Mr. Nauta's request for a bill of particulars insinuates that their strategy of the prosecution is to render Mr. Nauta devoid of all essential and elemental facts to enable him to adequately prepare his defense against the largely inscrutable conspiracy and obstruction allegations, minimize surprise, and plead double jeopardy.  *See* Opp'n at 3 (Mar. 7, 2024) (ECF No. 380) (arguing that the defendant seeks "to force the government into divulging its prosecution strategy").  The SCO conflates Mr. Nauta's request for disclosure of elemental facts with what the defense is not requesting – that is, theories and strategy to be offered to prove those dispositive facts.  The SCO's reliance on *United States v. Maurya*, 25 F.4th 829, 838 (11th Cir. 2022), in which the defendant sought a "detailed exposition" of the evidence, including facts proving the "existence and formation" of the conspiracy, is misplaced.  Mr. Nauta seeks only particulars regarding three aspects of the case for which the Superseding Indictment

4

leaves factual gaps as to his linkage to the offense: (1) his alleged knowledge and participation in the charged conspiracy and his alleged participation therein; (2) his alleged knowledge that the charged conduct of moving box to a common access hall at Mar-a-Lago was undertaken to prevent, rather than comply, with a grand jury subpoena for documents; and (3) what, if any, alleged conduct by Mr. Nauta would make him liable for attempted obstruction (or violation of any federal criminal law), where he is alleged to have traveled or inspected any items that would have violated the statute charged.

The SCO rests its opposition on the assertion that the Superseding Indictment is "detailed and thorough." Opp'n at 2 (Mar. 7, 2024) (ECF No. 380). Notwithstanding this, the Superseding Indictment instead offers a befuddled confusion of facts from which even speculative inferences are impossible to draw, and is thereby devoid of clarity sufficient to make defenses. The Motion focuses on the disparities of the Superseding Indictment which require particularization; the SCO acknowledges this, but claims that a bill of particulars that seeks to make sense of the diffuse, eclectic allegations of the Indictment is barred by precedent. Opp'n at 2 (Mar. 7, 2024) (ECF No. 380) (citing *Maurya*, 25 F.4th at 837-38). The SCO's use of *Maurya* is confounded. In particular, *Maurya* dealt not with the haystack of disparate allegations, and a blunderbuss scatter of accusations against a mere servant of a prominent co-defendant, that we have in the Superseding Indictment in this case, but rather *Maurya* concerned a straightforward embezzlement/theft case that identified purpose and knowledge, personal interest and gains, and the fundamentals of how the defendant pursued his embezzlement and related fraud schemes – in stark contrast to the present proceedings. Unlike Mr. Nauta, the defendant in *Maurya* wanted to make things more complicated and confused, and less clear by seeking particulars about non-elemental matters: an accounting of the embezzled amounts and detail and to how the government reached the

accounting.  *Id*. at 837.  The information the defendant in *Maurya* sought – which relates more to sentencing or offense egregiousness factors than any elemental fact – was not needed to meet any of the goals of a bill of particulars.

In this case, Mr. Nauta asks only for clarity in seeking his bill of particulars, which this Court should grant in the interest of general fairness, due process, and a proper and fair adversarial trial.  Mr. Nauta's need for particulars is simply to know how the government is alleging his objectively innocent conduct – moving boxes at the request of his employer and examining storage areas – efficiently using closet space-all legal and expected behaviors, which was ignored and even omitted from the interview by the FBI who did not ask about relevant box movement or storage examination and, after testifying to his innocence in the grand jury, has not been charged with perjury or making any false statements.  The SCO states that "Nauta is alleged to have conspired to obstruct the grand jury investigation by. . . moving boxes out of the storage room so that they would not be reviewed by Trump's attorney."  Opp'n at 4 (Mar. 7, 2024) (ECF No. 380).  The SCO's view of the explanatory function of those words is unrealistic unless the actual conspiracy is alleged through symbolic language, the mere movement of boxes cannot be by conspiracy.  If instead the SCO were to say that a defendant who works as a deliveryman is alleged to have conspired to obstruct because he was hired to deliver a safe so that documents could be placed in the safe, the reasonableness of the request to provide some level of understanding in what way the factual allegation made matches up with the charged violation and would be self-apparent.  This is not the case here.  The SCO treats innocent alleged conduct here as if it were an indicted allegation that a defendant delivered contraband.  One requires further explanation, while the other – like the clear embezzlement allegations in *Maurya* – do not.

The bill of particulars raises a separate question regarding the allegation that Mr. Nauta

6

both attempted, and persuaded a Mar-a-Lago employee, to delete security footage as charged in Count 40 of the Superseding Indictment and Mr. Nauta seeks a bill of particulars as to what attempt he made to delete video footage when the SCO does not allege that Mr. Nauta had any conversations with anyone about the deletion of video. Instead, the SCO dismisses the question and states Mr. Nauta is attempting to ask the government about specific legal theories, which they claim is an inappropriate request for a bill of particulars. The SCO again references the generic language in *Maurya* that addressed why the forensic accounting evidence sought by that defendant was not properly sought in a bill of particulars motion. The general bar on mere evidence requests not covered by Rule 16 of the Federal Rules of Criminal Procedure does not address the masked allegations against Mr. Nauta as to a non-existent deletion request by a co-defendant and how Mr. Nauta relates to that non-request.

The government's final argument is totally deficient. The haystack in which the government tries to hide the needle of particulars, amid the gap-filled allegations of the Superseding Indictment are not clarified by the more than 1,300,000 pages of documentary discovery or days-worth of CCTV footage again showing only innocent conduct not marked by any indicia of criminality. Even with the open discovery of 1,300,000 pages, which is no substitute for adequate specification of the crimes charged. *See United States v. Trie*, 21 F. Supp. 2d 7, 21 n.12 (D.D.C.1998).

## **CONCLUSION**

For the reasons discussed above, the Court should grant Mr. Nauta's Motion for a Bill of Particulars because it is necessary to provide the Mr. Nauta the opportunity to prepare his defense.

[SIGNATURE NEXT PAGE]

Date: March 24, 2024                                      Respectfully submitted,

    <u>*s/ Stanley E. Woodward, Jr.*</u>
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, D.C. 20010
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

    <u>*s/ Sasha Dadan*</u>
Sasha Dadan, Esq. (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2024, I electronically submitted the foregoing via electronic mail, to counsel of record.

                                                     *s/ Sasha Dadan*