UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80-1010-CR-CANNON

UNITED STATES OF AMERICA,

v.

DONALD J. TRUMP,

WALTINE NAUTA, and

CARLOS DE OLIVIERA,

       Defendants.
_____/

**DEFENDANT WALTINE NAUTA'S REPLY IN SUPPORT OF HIS
MOTION TO DISMISS COUNTS 33, 34, 35, 40, AND 41
<u>OF THE INDICTMENT AS VOID FOR VAGUENESS</u>**

The Special Counsel's Office ("SCO") patronizingly criticizes Defendant Waltine Nauta's Motion to Dismiss Counts 33, 34, 35, 40, and 41 of the Superseding Indictment (July 27, 2023) (ECF No. 85). In so doing, the SCO obfuscates a glaring reality: the meaning "corruptly" under § 1512 (and its sister statutes) is wholly uncertain and where, as here, an indictment fails to plead *how* a defendant acted "corruptly," and use of the phrase, "fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

In the SCO's own words, Mr. Nauta alleged to have:

> [U]nbeknownst to Trump Attorney 1, . . . removed a total of approximately 64 boxes from the storage room: three boxes on May 24, 2022; 50 boxes on May 30, 2022; and 11 boxes on June 1, 2022. [Superseding Indictment] ¶ 59 [(July 27, 2023) (ECF No. 85)]. And hours before Trump Attorney 1 returned to Mar-a-Lago on June 2 to search for documents responsive to the [grand jury] subpoena, Nauta and De Oliveira moved approximately 30 boxes into the storage room. *Id.* ¶ 62. When Nauta escorted Trump Attorney 1 to and from the storage room for the attorney's search on June 2, Nauta did not inform him that boxes had been taken out of the storage room before he searched there. *Id.* ¶¶ 63-64, 66.

Opp'n at 3 (Mar. 7, 2024) (ECF No. 379). While sensational, nowhere does the SCO allege that Mr. Nauta was aware of any benefit from his alleged movement of boxes, let alone any proceeding to be obstructed by the movement of boxes. Equally as salacious is the SCO's description of what happened next – his purportedly nefarious trip to Mar-a-Lago *after* the movement of boxes has *literally* nothing to do with *why* the boxes were moved. In this way, the SCO's citation to *United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011), is telling insofar as the Eleventh Circuit recognized the government had failed to prove (and thus the defendant was entitled to a judgment of acquittal) that the defendant had any knowledge of the official proceeding he was allegedly obstructing. *Id.* at 1289. The SCO contends – obfuscating the issues – that the Eleventh Circuit, "construed 'corruptly' . . . without finding the term vague." Opp'n at 14 (Mar. 17, 2024) (ECF No. 379). Yet,

whether § 1512(c)(2) was void for vagueness was not the issue before the Court and therefore obviously was not addressed by the Eleventh Circuit in its Opinion.

Contrary to the SCO's position, the extensive litigation emanating from the D.C. Circuit without any clear legal definition of the term "corruptly" reaffirms Mr. Nauta's assertion that, as applied to him, the statutes with which he has been charged are void for vagueness. *First*, the SCO misreads the holding in *Fischer*. As Judge Walker made clear: "I believe that we *must* define that mental state to make sense of (c)(2)'s act element." *United States v. Fischer*, 64 F. 4th 329, 352 (D.C. Cir. 2023) (Walker, J., concurring). Without that definition, Judge Walker concluded, § 1512(c)(2) would be void for vagueness. *Id.* (citing *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021)). *See also Fischer*, 64 F.4th 329, at 362 ("Reading [the definition of 'corruptly'] that way reconciles (c)(2) with the statutory scheme, *avoids vagueness*, and heeds the Supreme Court's warning to beware of interpretations that impose onto criminal statutes a 'breathtaking' scope." (quoting *Van Buren*, 141 S. Ct. at 1661). *Second*, while a three-judge panel of the D.C. Circuit did portend to hold that Judge Walker's definition of "corruptly" was not binding on it, *see United States v. Robertson*, 86 F. 4th 355, 374 (D.C. Cir. 2023), the SCO ignores the dissent in that opinion from Judge Henderson, who concluded that, "our court already decided the issue *sub judice*" in referring to Judge Walker's concurrence. *Id.* at 381 (Henderson, J., dissenting). *Third* and finally, this debate is largely semantic insofar as the D.C. Circuit's debate over the meaning of "corruptly" are, at best, merely persuasive authority (and not precedential). Clearly, the Eleventh Circuit acknowledges a defendant must have knowledge of the proceeding they are obstructing, *see Friske*, 640 F.3d at 1289, and it stands to reason that Congress intended a defendant to know *why* the proceeding was being obstructed. In the alternative, the statute is void in that it, "fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary

enforcement." *Johnson*, 576 U.S. at 595. Put differently, Mr. Nauta could not have known that his mere movement of boxes, without more, implicated potentially the most significant prosecution of our lifetime.

Returning then to the question presented, does the term "corruptly" "fail[] to give ordinary people fair notice of the conduct it punishes" or is it "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. 595. Even the Circuit Judge writing for the majority acknowledged there were at least three definitions of "corruptly." *Fischer*, 64 F. 4th at 340. And given the SCO's failure, despite every opportunity to the contrary, to explain why Mr. Nauta acted "corruptly" when he "surreptitiously" moved boxes prior to Trump Attorney 1's inspection of the same, Opp'n at 3 (Mar. 7, 2024) (ECF No. 379), vitiates his constitutional protection from "lack of fair notice or . . . arbitrary enforcement" afforded by the Due Process Clause. *See* Opp'n at 6 (Mar. 7, 2024) (ECF No. 379).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court dismiss Counts 33, 34, 35, 40, and 41 of the Superseding Indictment.

[SIGNATURE BLOCK NEXT PAGE]

Dated: March 24, 2024								Respectfully submitted,

  *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

  *s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2024, I electronically submitted the foregoing, via CM/ECF, to counsel of record.

Respectfully submitted,

*s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*