FILED BY_____WCE_____D.C.

Apr 12, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTP

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:23-CR-80101-AMC CANNON-REINHART**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DONALD J. TRUMP,

WALTINE NAUTA, and

CARLOS DE OLIVEIRIA,

        Defendants.

**AMICUS CURIAE BRIEF OF DARRYL B. PHILLIPS IN SUPPORT OF**
**DEFENDANTS TRUMP, ET AL. AND BOTH INCLUSION OF THE**
**PRESIDENTIAL RECORDS ACT AND DISMISSAL ON GROUNDS OF**
**FACT AND LAW**

April 10, 2024
Darryl B. Phillips
Pro se Amici Curiae
5212 Florence Loop,
Dunsmuir, CA 96025
669.247.9074 phone
dbphilli@icloud.com

## CORPORATE DISCLOSURE STATEMENT

*Amici Curiae* Darryl B. Phillips certifies that he is a natural person, and as such

has no parent corporation(s) or stock. No Disclosure Statement under Federal

Rule of Appellate Procedure 26.1 or under Circuit Rule 26.1 is necessary, as

Amici is not a corporation or similar entity.

April 10, 2024

_____

Darryl B. Phillips
Pro se Amici Curiae
5212 Florence Loop,
Dunsmuir, CA 96025
669.247.9074 phone
dbphilli@icloud.com

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

No counsel for any party authored this brief in whole or in part and no entity or person, aside from the amici, made any monetary contribution intended to fund the preparation or submission of this brief.

A pro-se amicus brief by Paul M. Dorsey was used as a template.

April 10, 2024

_____

Darryl B. Phillips
Pro se Amici Curiae
5212 Florence Loop,
Dunsmuir, CA 96025
669.247.9074 phone
dbphilli@icloud.com

## TABLE OF CONTENTS

LOCAL RULE 7.1 CERTIFICATION OF GOOD-FAITH CONFERRAL    i

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES    ii

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS    vi

CERTIFICATE OF WHY SEPARATE BRIEF IS NECESSARY    vii

CERTIFICATE OF SERVICE    viii

CORPORATE DISCLOSURE STATEMENT    x

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS    xi

TABLE OF CONTENTS    xii

TABLE OF AUTHORITIES    xiii

INTERESTS OF AMICI CURIAE    1

INTRODUCTION    2

ARGUMENTS FOR INCLUDING THE PRA    3

BRIEF ARGUMENTS FOR DISMISSAL    7

ARGUMENTS THAT THE DOJ VIOLATED FEDERAL LAW    14

DETAILED ARGUMENTS FOR DISMISSAL    15

CONCLUSION:    29

## TABLE OF AUTHORITIES

Order of initial occurrence.

**Cases**                                                                **Page(s)**

*Judicial Watch v. National Archives and Records Administration 2012, Civil*

*Action No. 10-1834 (ABJ)*, p.12                                               6

United States v. Irving, 2011                                              20,28

United States v. Farrell, 1997                                               28

United States v. Thompson, 1996                                              28

**Constitutional Provisions**                                            **Page(s)**

U.S. Constitution Article II Sections 1&2                         2,7,8,9,15,16,30

U.S. Constitution 6th Amendment                                             12

U.S. Constitution 14th Amendment                                            13

**Statutes**                                                             **Page(s)**

44 U.S. Code Chapter 22 § 2203 (b)                                          2,3

3 U.S. Code § 102 note Former Presidents... (b)-(c)                        2,3,4

18 U.S.C. § 793(e)                                                    3,6,9,16,30

44 U.S. Code Chapter 22 § 2203 (a)                                           4

44 U.S. Code Chapter 22 § 2201 (2)(B)(iv)                                    6

18 U.S.C. § 1512 (k)                                                          11,17

18 U.S.C. § 1512                                                                 11

18 U.S.C. § 1512(b)(2)(A)                                                12,17,18,21

18 U.S.C. § 1512(c)(1)                                              12,13,17,18,21,27

18 U.S.C. § 1519                                                                 12

18 U.S.C. § 1001(a)(1)                                                         12,23

18 U.S.C. § 100l(a)(2)                                                12,23,24,25,29

18 U.S.C. § 1001(a)                                                              13

18 U.S.C. § 1512(b)(2)(B)                                                      13,27

18 U.S.C. § 1621                                                                 14

18 U.S.C. § 1623                                                                 14

3 U.S. Code § 102 note Former Presidents... (b)                                 15

18 U.S.Code §287                                                                 15

18 U.S.Code §2383                                                                15

**Executive Orders**                                                       **Page(s)**

Executive Order 14526 Part 1 Sec. 1.7. (a) (1)-(2)                               11

**Regulations**                                                            **Page(s)**

United States Office Of Personnel Management, 2021 Guide to Telework and

Remote Work in the Federal Government                                11

**Rules**                                                          **Page(s)**

Rule 12(b)(3)(B)(v)                                                      7

Rule 12(b)(3)(B)(ii)                                                 18,25

**Federal Correspondence**                                         **Page(s)**

Congressional Record: December 7, 2007, Senate, S15011                   9

Congressional Record: July 31, 2008, Senate, S7955                     10

John C. Yoo, Deputy Assistant Attorney General, U.S. Department of Justice,

"Constitutionality of Expanded Electronic Surveillance Techniques Against

Terrorists, November 2, 2001, p.6-7                                    10

Charles J. Cooper, Assistant Attorney General, U.S. Department of Justice Office

of Legal Counsel, "Legal Authority for Recent Covert Arms Transfers to Iran",

December 17, 1986,p.14 (C)                                             10

https://www.gsa.gov/system/files/2021%20Moving%20Support.pdf          19

https://www.loc.gov/resource/hhh.fl0181.photos/?sp=81                 25

**Other Authorities**                                              **Page(s)**

https://www.amazon.com/Letters-Trump-Donald-J/dp/1735503754            6

https://en.wikipedia.org/wiki/Kash_Patel                                     11

https://sgp.fas.org/crs/misc/RL34303.pdf                                  20,28

https://www.law.cornell.edu/wex/attempt                                   20,28

https://www.etymonline.com/word/antechamber                                 25

https://www.wordnik.com/words/vestibule                                     25

**News Reports**                                                          **Page**(s)

https://www.rollingstone.com/politics/politics-news/donald-trump-russia-
investigation-maralago-1234588357/#?utm_source=onesignal       5,11,28

https://www.newsweek.com/fbi-sought-documents-trump-hoarded-years-
including-about-russiagate-1734280                                  5,11,15,28

https://www.newsweek.com/donald-trump-white-house-exodus-photos-
boxes-1561959                                                                 7

https://www.cbs17.com/news/national-news/moving-truck-seen-outside-trumps-
estate-in-florida-as-biden-prepares-to-take-office/                      7,29

https://www.businessinsider.com/donald-trump-office-stephen-miller-taxpayer-
money-2021-5                                                               7,19

https://www.nbcnews.com/politics/donald-trump/trump-departs-white-house-
final-hours-president-n1254871                                                8

https://www.foxnews.com/politics/trump-authorizes-declassification-of-all-russia-

collusion-hillary-clinton-email-probe-documents                                    10

https://www.breitbart.com/politics/2022/05/05/documents-mar-a-lago-marked-

classified-were-already-declassified-kash-patel-says/                              11

https://www.nbcnews.com/politics/donald-trump/trumps-handling-secret-

documents-fbi-mar-a-lago-search-rcna42935                                          11

https://www.al.com/news/montgomery/2017/01/step-by-

step_5_craziest_hours.html                                                        19

https://www.nhpr.org/politics/2021-01-18/ask-civics-101-what-is-moving-day-

like-at-the-white-house                                                           19

https://www.cbs17.com/news/national-news/moving-truck-seen-outside-trumps-

estate-in-florida-as-biden-prepares-to-take-office/                               19

https://www.nbcnews.com/politics/donald-trump/lawyer-witness-trump-docs-

probe-alleges-prosecutorial-misconduct-rcna88472                                  27

## INTERESTS OF AMICI CURIAE

Amici[1] is a private, natural born citizen of the United States and California. He is an Electrical Engineer retired from Applied Materials. He has experience analyzing complex systems, software and semiconductors. He has written many technical reports and datasheets from laboratory observations. He has a little university training in Patent Law. And he has practice in both proofreading patents and technical analysis of patent claims for defeating them.

Amici's interest in this case arises from observations as a donor in the 1980s to a charity providing humanitarian aid to brutally repressed minorities in Soviet Russia. Amici is observing a trend in the USA towards similar tyranny and abuse of government systems. And, his view on the dangers posed by this and related cases is; "If they can selectively prosecute a Former President then they can do it to any of us." Amici is concerned that the trend is dangerous for his future.

This amicus brief is written after accepting a challenge to read the indictment, applying engineering critical thinking skills to analysis of the indictment, finding serious flaws in it, writing a report about those flaws, and then noting no competent discussion of those flaws in the press or public.

------------

[1] No counsel for any party authored this brief in whole or in part and no entity or person, aside from the amicus, made any monetary contribution intended to fund the preparation or submission of this brief. A pro-se amicus brief by Paul M. Dorsey was used as a template.

## INTRODUCTION

Exclusion of the Presidential Records Act (PRA) in this case is wrong, both legally, and in fact. And a decision to either exclude the PRA or to include it without strong grounds in this highly politicized case will diminish the Courts and call into question their integrity and trustworthiness as impartial arbiters of Justice. Navigating this requires careful analysis of a kind routine for Engineers.

When considered with the Former Presidents Act (FPA), the PRA is relevant to the case on strong grounds. Use of the word "practicable" in 44 U.S. Code Chapter 22 § 2203 (b) allows a President discretion to defer work separating Presidential records. And, 3 U.S. Code § 102 note Former Presidents... (b)-(c) provides office and staff for completing that work post-term. This authorizes post-term possession of and work on Presidential records, refuting Counts 1-32.

Furthermore, Amici found that the root allegation of unauthorized document possession in Paragraph 4 is false, and is contradicted in Paragraph 25 such that it is a knowing lie. The lie is that possession is unauthorized because Trump moved the documents from the White House after his Article II powers expired. Other allegations and counts subsequently topple like dominos on matters of law and fact after meticulous analysis. Amici's conclusion is that the case has no merit.

And, it appears that the Department of Justice (DOJ) violated 5 federal laws in this case.

p.2

## ARGUMENTS FOR INCLUDING THE PRA

The argument for excluding the Presidential Records Act (PRA), on grounds that it is irrelevant to "unauthorized" in 18 U.S.C.§793(e) required for validity of Counts 1-32, fails to faithfully represent the relevance of the PRA. Together, the PRA and FPA authorize post-term possession of and work on Presidential records, including classified ones. The most pertinent details missed are that:

1. Use of the word "practicable" in 44 U.S. Code Chapter 22 § 2203 (b)[2] of the Presidential Records Act (PRA) in the phrase;

   "shall, to the extent practicable, be categorized as Presidential records or personal records upon their creation"

   allows a President discretion to defer work categorizing Presidential records from personal records when impracticable.

2. The PRA provides no judicial review of a President's deferment decisions.

3. The Former Presidents Act (FPA) in 3 U.S. Code § 102 note Former Presidents... (b)-(c)[3] completes the PRA by providing staff and an office for activities that include post-term work on Presidential records;

---

[2] https://uscode.house.gov/view.xhtml?path=%2Fprelim%40title44%2Fchapter22&edition=prelim

[3] https://uscode.house.gov/view.xhtml?path=/prelim@title3/chapter2&edition=prelim

> "for the review of Presidential records of a former President in connection with the transfer of such records to the National Archives and Records Administration or a Presidential Library"

4. The FPA dispenses with the complexities of classification marked Presidential records by requiring that the Former President's office be a place of his choosing in the United States,

> The Administrator of General Services shall furnish for each former President suitable office space appropriately furnished and equipped, as determined by the Administrator, at such place within the United States as the former President shall specify.

and by requiring that the staff be provided without regard to classification laws, selected by the Former President and responsible only to him –waiving them for supporting the work.

> The Administrator of General Services shall, without regard to the civil-service and classification laws, provide for each former President an office staff. Persons employed under this subsection shall be selected by the former President and shall be responsible only to him for the performance of their duties.

(3 U.S. Code § 102 note Former Presidents… (b)-(c)).[4]

5. Responsibility from the PRA to "preserve and maintain" Presidential records implies responsibility to protect Presidential records not yet deposited with NARA. (44 U.S. Code Chapter 22 § 2203 (a))[5]

---

[4] https://uscode.house.gov/view.xhtml?path=/prelim@title3/chapter2&edition=prelim

[5] https://uscode.house.gov/view.xhtml?path=%2Fprelim%40title44%2Fchapter22&edition=prelim

> Through the implementation of records management controls and other necessary actions, the President shall take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are preserved and maintained as Presidential records pursuant to the requirements of this section and other provisions of law.

This includes protecting them from alleged efforts by the DOJ to suppress or destroy them.[6][7]

6. The facts alleged in the indictment (See Paragraphs .25-32, 38-49, 73) demonstrate that Former President Trump was working on boxes to categorize (separate) Presidential from personal records and send Presidential records to NARA, in lawful and faithful compliance with the PRA and FPA. Words used for this work in the indictment include "working on", "reviewing", "knocking out", "tracking". And, the outcome of a first batch of completed work is transfer of 15 boxes of Presidential records to NARA, including 197 classification marked Presidential records. (Paragraph 49) Inclusion of classified Presidential records in this transfer demonstrate that the central allegation of refusing to return them is fictional.

---

6 https://www.rollingstone.com/politics/politics-news/donald-trump-russia-investigation-maralago-1234588357/#?utm_source=onesignal

7 https://www.newsweek.com/fbi-sought-documents-trump-hoarded-years-including-about-russiagate-1734280

7.  On April 25, 2023, Former President Trump published a book, "Letters to Trump"[8], which demonstrates good faith intentions to meet the spirit of the PRA, which is to preserve presidential records and make them available to the public. (Judicial Watch v. National Archives and Records Administration 2012, Civil Action No. 10-1834 (ABJ), p.12)[9]

8.  The PRA gives a Former President a right to copies of Presidential records. (44 U.S. Code Chapter 22 § 2201 (2)(B)(iv)) And, classification marked Presidential records are not excluded. Note that Trump's classification marked records are all copies of documents printed from electronic form.

What has been demonstrated in law from the PRA and the FPA is that post-term work on Presidential records is authorized by statute law. What has been demonstrated in fact from the indictment is that Former President's actions are in faithful compliance with the PRA and FPA –both in substance and in spirit. There is no violation of 18 U.S.C.§793(e). There is no probable cause of crime. And, Counts 1-32 fall. Under these circumstances, removing the PRA from consideration in this highly politicized case demonstrates partiality that diminishes faith in the Courts and undermines their ability to provide a civilized, constructive forum for redress of grievances.

---

[8] https://www.amazon.com/Letters-Trump-Donald-J/dp/1735503754

[9] https://cases.justia.com/federal/district-courts/district-of-columbia/dcdce/1:2010cv01834/144698/13/0.pdf?ts=1376978744

## BRIEF ARGUMENTS FOR DISMISSAL

This section argues for dismissal primarily on grounds that the facts alleged in the indictment fail to meet the requirements of law for probable cause of crime in violation of Rule 12(b)(3)(B)(v), are internally inconsistent so as to be logically false, or are demonstrably false from public information such as news reports.

Arguments are first presented here briefly in essence, except for the first which are in detail. Later more details are provided to assist Judges or Jury.

**The root allegation of unauthorized possession** of classified Presidential records is built on a lie in Paragraph 4 of the indictment. This lie is that Donald J. Trump's possession of classified documents is unauthorized because he caused them to be moved from the White House after his term ended and his Article II Sections 1&2 powers under the US Constitution expired at 12:00PM on January 20, 2021. This allegation is false because the documents were hauled away from the White House on January 15[10] and arrived at Mar-a-Lago on January 18[11], or at the Arlington Transition Office.[12] President Trump himself arrived in

---

10 https://www.newsweek.com/donald-trump-white-house-exodus-photos-boxes-1561959

11 https://www.cbs17.com/news/national-news/moving-truck-seen-outside-trumps-estate-in-florida-as-biden-prepares-to-take-office/

12 https://www.businessinsider.com/donald-trump-office-stephen-miller-taxpayer-money-2021-5

Florida before 11:00AM on January 20, 2021 with Presidential powers.[13] The false allegation was slipped past readers by breaking it into 3 sentences so that people miss it when reading the indictment. Can you catch it?

> At 12:00 p.m. on January 20, 2021, TRUMP ceased to be president. As he departed the White House, TRUMP caused scores of boxes, many of which contained classified documents, to be transported to The Mar-a-Lago Club in Palm Beach, Florida, where he maintained his residence. TRUMP was not authorized to possess or retain those classified documents.

This can be consolidated into a single sentence and rewritten as

> TRUMP ceased to be president [and his Article II Sections 1&2 power to authorize expired], then as he departed he had boxes of documents transported to Mar-a-Lago, and thus he was not authorized to possess the classified documents.

It is a knowing and willful lie because the indictment contradicts itself in Paragraph 25. Can you catch it?

> In January 2021, as he was preparing to leave the White House, TRUMP and his White House staff, including NAUTA, packed items, including some of TRUMP's boxes. TRUMP was personally involved in this process. TRUMP caused his boxes, containing hundreds of classified documents, to be transported from the White House to The Mar-a-Lago Club.

Paragraph 25 tells the truth that the boxes were packed and transported as Trump was *preparing* to leave the White House, before his presidency expired. The allegation also fails to acknowledge, as a matter of law, that Article II Sections

---

13 https://www.nbcnews.com/politics/donald-trump/trump-departs-white-house-final-hours-president-n1254871

1&2 of the US Constitution provide President Trump with power to authorize both transport of boxes and their possession by Former President Trump, including at Mar-a-Lago. Therefore, the root allegation of unauthorized possession of classified documents is both false and a lie in both fact and law.

**Counts 1-32** leverage The Lie to allege unauthorized possession of national defense documents in violation of 18 U.S.C. § 793(e) by Donald J. Trump. These counts are systematically refuted using multiple redundant arguments:

A. **Constitutional Law:** President Trump exercised his in-term Article II Sections 1&2 powers[14] to authorize possession of the documents by Former President Trump, including at Mar-a-Lago, by the act of sending them.

B. **Statute Law:** The PRA and FPA authorize post-term completion of deferred work on Presidential records, and possession of copies (See above)

C. **Executive Order Law:** President Trump exercised his in-term Article II Sections 1&2 powers[15] to waive Executive order based classification regulations for possession, work and storage, by the act of sending the documents. The act of shipment is proof of the decision. (Congressional Record: December 7, 2007, Senate, S15011))[16] (Congressional Record:

---

14 https://constitution.congress.gov/constitution/article-2/

15 https://constitution.congress.gov/constitution/article-2/

16 https://www.congress.gov/110/crec/2007/12/07/CREC-2007-12-07-pt1-PgS15011-2.pdf

July 31, 2008, Senate, S7955)[17] (John C. Yoo, Deputy Assistant Attorney General, U.S. Department of Justice, "Constitutionality of Expanded Electronic Surveillance Techniques Against Terrorists, November 2, 2001, p.6-7)[18] ( Charles J. Cooper, Assistant Attorney General, U.S. Department of Justice Office of Legal Counsel, "Legal Authority for Recent Covert Arms Transfers to Iran", December 17, 1986,p.14 (C))[19]

D. **Declassification:** Many documents were declassified by President Trump, many classification markings were not updated, and it cannot be determined beyond a reasonable doubt which of the documents are still classified. [20]

---

17 https://www.congress.gov/110/crec/2008/07/31/CREC-2008-07-31-pt1-PgS7908.pdf

18 https://www.justice.gov/olc/page/file/1154156/download

19 https://ia903402.us.archive.org/23/items/covert-arms-transfers-to-iran/Re_Legal_Authority_for_Recent_text.pdf

20 https://www.foxnews.com/politics/trump-authorizes-declassification-of-all-russia-collusiou-hillary-clinton-email-probe-documents

[21] [22] [23] [24] [25] And, the embarrassing documents sought by the DOJ[26] are declassified under Executive Order 14526 Part 1 Sec. 1.7. (a) (1)-(2).[27]

E. **COVID-19 Pandemic Remote-Work Rules:** (*United States Office Of Personnel Management, 2021 Guide to Telework and Remote Work in the Federal Government*)[28]

**Count 33** alleges conspiracy by Trump, Waltine Nauta and Carlos De Oliveira under 18 U.S.C. § 1512 (k) to commit predicate crimes defined in 18 U.S.C. § 1512. The predicate crime allegations are mostly refuted with the other counts below. Count 33 was brought through a variety of disingenuous means, such as misrepresenting questions to legal counsel as statements suggesting action –an

21 https://www.rollingstone.com/politics/politics-news/donald-trump-russia-investigation-maralago-1234588357/#?utm_source=onesignal

22 https://en.wikipedia.org/wiki/Kash_Patel

23 https://www.breitbart.com/politics/2022/05/05/documents-mar-a-lago-marked-classified-were-already-declassified-kash-patel-says/

24 https://www.nbcnews.com/politics/donald-trump/trumps-handling-secret-documents-fbi-mar-a-lago-search-rcna42935

25 https://www.rollingstone.com/politics/politics-news/donald-trump-russia-investigation-maralago-1234588357/#?utm_source=onesignal

26 https://www.newsweek.com/fbi-sought-documents-trump-hoarded-years-including-about-russiagate-1734280

27 https://en.wikisource.org/wiki/Executive_Order_13526

28 https://www.opm.gov/telework/documents-for-telework/2021-guide-to-telework-and-remote-work.pdf

assault on the civil right to legal counsel. (6th Amendment, U.S. Constitution)[29] See the Detailed Arguments section below for more details.

**Counts 34-38** allege violations of different laws by Trump or Nauta from the same sequence of events. The laws include 18 U.S.C. §§ 1512(b)(2)(A), 18 U.S.C. §§ 1512(c)(1), 18 U.S.C. §§ 1519, 18 U.S.C. §§ 1001(a)(1) and 18 U.S.C. §§ 1001(a)(2)). The counts misrepresent as knowingly hiding documents, lawful work by Trump sorting 64 boxes and handing off around 30 consolidated boxes to Trump Attorney 1, for a search to meet the demands of a grand jury subpoena. Most of the boxes were packed by staff such that Trump had no knowledge of classification marked documents present, prior to working on the boxes. Thus, the circumstances fail to meet the definitions of "knowingly", "willfully" or "intent" required by the laws. And, the allegations fail to meet the burden of proof beyond a reasonable doubt because the evidence provided by the indictment better fits a hypothesis of classification marked documents being missed in the quick sort and search (61 boxes in 3.5 days by Trump and ~30 boxes in 2.5 hours by Trump Attorney 1). Exculpatory evidence includes calculations that 80.7% of the requested classification marked documents were successfully passed on for the search, most (73.5%) of documents missed were actually missed during the search by Trump Attorney 1. Note that the Department of Justice absolved Joe Biden

---

29 https://constitution.congress.gov/constitution/amendment-6/

over documents being similarly missed during searches at Penn Biden Center and University of Delaware. Failure to apply the laws evenly is a violation of equal protection under the 14th Amendment.[30]

**Count 39** misrepresents statements such as; "I don't know" from Waltine Nauta, as lies to the FBI when asked about the prior history of 15 boxes that were freshly packed by Former President Trump during lawful post-term work to separate Presidential and personal records under the PRA and FPA. Nauta's statements are true and not violations of 18 U.S.C. § 1001(a).

**Counts 40-41** allege that after being sent a Grand Jury subpoena for security camera footage, Trump, Nauta and De Oliveira attempted to persuade "Trump Employee 4" to delete security camera footage. However, initial and possibly final subpoena service appears to be improper. No security camera footage was destroyed. Nobody was persuaded to destroy it. No substantial steps of action were taken to destroy it. And, the single-source testimony that destruction was requested appears to be falsified, due to a detail obvious to an Engineer. Counts 40 and 41 are refuted as the requirements of 18 U.S.C. § 1512(b)(2)(B) and 18 U.S.C. § 1512(c)(1) are not met.

**Count 42** alleges as false statements to the FBI violating 18 U.S.C. § 1001(a), answers by Carlos De Oliveira that he did not see arrival of Trump's boxes at

---

30 https://constitution.congress.gov/constitution/amendment-14/

Mar-a-Lago in January 2021. The indictment describes De Oliveira's assisting in moving several boxes on June 3, 2022 and gambles that readers won't notice the different dates. No probable cause evidence is provided for Count 42 at all.

Amici is unable to present all the indictment flaws in the allowed space. The case has no merit in law or facts and should be tossed out of court with prejudice.

**ARGUMENTS THAT THE DOJ VIOLATED FEDERAL LAW**

These are Amici's opinions from his amateur reading of the laws.

The affidavit for the search warrant for Mar-a-Lago was obtained through perjury, in violation of 18 U.S.C. § 1621[31] or 18 U.S.C. § 1623[32], from misrepresentations of law. Former President Trump's possession and work on Presidential records, including classified Presidential records is lawful, as discussed above, and not probable cause of crime.

There is lack of evidence to support a claim of photo redaction in Paragraph 32 –there is no pixelation in the original photo, etc. And, an experiment by Amici demonstrated that the original resolution of the photo is likely too low to read the alleged classification markings. One plausible motive for falsifying redaction is to conceal means of obtaining knowledge of the presence of a document in a box using an informant. And, this hypothesis is supported by a DOJ leak to the press.

---

31 https://www.law.cornell.edu/uscode/text/18/1621

32 https://www.law.cornell.edu/uscode/text/18/1623

[33] Infiltration of such an informant into the staff of a Former President is a violation of (3 U.S. Code § 102 note Former Presidents… (b))[34], which requires that the the staff of a Former President "shall be responsible only to him for the performance of their duties".

Willful bringing of false claims against Donald J. Trump's Office of Former President is a violation of 18 U.S.Code §287.[35]

Usurpation of President Trump's Article II Sections 1&2 Constitutional power and authority for fraudulent counts against Former President Trump is an act of rebellion or insurrection in violation of 18 U.S.Code §2383.[36]

Those are Amici's opinions.

**DETAILED ARGUMENTS FOR DISMISSAL**

Arguments for some Counts are presented here with additional details of law and facts to assist decision makers, such as the Judge or Jury.

---

33 https://www.newsweek.com/fbi-sought-documents-trump-hoarded-years-including-about-russiagate-1734280

34 https://uscode.house.gov/view.xhtml?path=/prelim@title3/chapter2&edition=prelim

35 https://www.law.cornell.edu/uscode/text/18/287

36 https://www.law.cornell.edu/uscode/text/18/2383

**Counts 1-32**: In the brief arguments, it was shown that Former President Trumps possession and work on Presidential records, including classified Presidential records, is authorized by President Trump's in-term exercise of:

1. Article II Section 1&2 powers to authorize.

2. Deferment of Presidential record separation work under the PRA and FPA.

3. Powers to waive Executive order based classification regulations,

4. Declassification

5. COVID-19 Pandemic remote-work rules.

The statute law cited for these counts, 18 U.S.C. § 793(e), requires unauthorized possession as a requirement for application. The law is simplified here:

### §793. Gathering, transmitting or losing defense information

(e) Whoever having unauthorized possession of, access to, or control over any document, … relating to the national defense, … information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation…willfully communicates, …the same to any person not entitled to receive it…or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it…

The requirement of unauthorized possession has not been met, so the law 18 U.S.C. § 793(e) does not apply. Counts 1-32 have been refuted.

18 U.S.C. § 793(e) also does not apply on other grounds. Former President Trump did not communicate information injurious to the United States; The small

talk to friends in his office described in Paragraphs 6, and 33-36 covers public information already reported in the press.

Also, a Former President is the highest person entitled to possess his Presidential records prior to their being deposited with NARA; The criterion of "fails to deliver it to the officer or employee of the United States entitled to receive it" has not been met. Counts 1-32 have been refuted.

**Count 33**: This alleges conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k)) based on predicate offenses violating 18 U.S.C. § 1512(b)(2)(A) or 18 U.S.C. § 1512(c)(1). But, careful inspection exposes more falsifications. Many of the predicate crime allegations are included in and refuted with other couuts briefly above and in detail below. But, a few will be dealt with here.

Count 33.a&c alleges a conspiracy to do the following:

    a.  Suggesting that Trump Attorney 1 falsely represent to the FBI and grand jury that TRUMP did not have documents called for by the May 11 Subpoena;

    c.  suggesting that Trump Attorney I hide or destroy documents called for by the May 11 Subpoena;

Allegations a. and c. were falsified by misrepresenting questions to counsel as action statements. According to Paragraph 55, what was actually said is

    b.  Well what if we, what happens if we just don 't respond at all or don 't play ball with them?

    c.   Wouldn't it be better if we just told them we don't have anything here?

    d.   Well look isn't it better if there are no documents?

These are questions to counsel. And, it is the opinion of Amici that they are misrepresented as action statements as a pretext for breaking attorney-client privilege. There is no corrupt inducement to act, such as bribery, and nothing was done. And, there is no persuasion that escalates to a substantial step of action that meets the legal definition of "attempt". Neither 18 U.S.C. § 1512(b)(2)(A) or 18 U.S.C. § 1512(c)(1) apply. Counts 33 is refuted.

**Counts 34-38** allege violations of different laws for the same sequence of events, in what may be a violation of Rule 12(b)(3)(B)(ii) "charging the same offense in more than one count (multiplicity)".

Amici's Engineering-style analysis reveals that the DOJ and FBI...

6.   Misrepresented lawful work sorting through 64 boxes and consolidating them to 30 boxes before a search by Trump Attorney 1 as swapping 64 boxes with 30 other boxes to hide them. (Paragraphs 53-63)

7. Concealed that the 64 boxes were likely packed by staff such that there was no knowledge of their contents prior to working on them.[37] [38] [39] [40] [41]

8. Failed to identify that the 53.1% reduction in boxes is reasonable as around half the contents were discardable items, such as newspapers. (Paragraph 32.)

9. Neglected to disclose that 113 of 140, or 80.7%, of classification marked documents present were successfully handed off to Trump Attorney 1, which suggests sincere intent and reasonable diligence in sorting through 64 boxes quickly, and 61 of them in only 3.5 days.(Paragraphs 7, 8, 54, 59, 62, 63, 90)

10. Lied that the 102 classification marked documents found during the FBI raid were primarily present due to the alleged swap hiding boxes when in fact 75 (73.5%) of those documents were really found in the around 30 boxes searched by Trump Attorney 1. (Paragraphs 7, 8, 53-63, 88-91)

---

37 https://www.al.com/news/montgomery/2017/01/step-by-step_5_craziest_hours.html

38 https://www.nhpr.org/politics/2021-01-18/ask-civics-101-what-is-moving-day-like-at-the-white-house

39 https://www.cbs17.com/news/national-news/moving-truck-seen-outside-trumps-estate-in-florida-as-biden-prepares-to-take-office/

40 https://www.gsa.gov/system/files/2021%20Moving%20Support.pdf

41 https://www.businessinsider.com/donald-trump-office-stephen-miller-taxpayer-money-2021-5

11. Implied that finding 27 classification marked documents in Trump's federally funded Office of Former President is evidence beyond a reasonable doubt of hiding classification marked documents when its more likely that the documents were simply misfiled. (Paragraphs 7, 8, 53-63, 88-91)

12. Lied that Trump's sort had a significant impact on the search for classification marked documents when Trump Attorney 1 had a higher search failure rate of 66.4% per documents present or 2.5 documents per box. The combined search and sort missed 102 classification marked documents. Amici estimates that if Trump Attorney 1 had searched all 64 boxes then between 93 and 160 classification marked documents could have been missed.

13. Acted without legitimate probable cause and unlawfully; It can be argued that there was no lawful official proceeding to withhold documents from.

**Count 34 first alleges** that Trump knowingly, corruptly persuaded and attempted to [corruptly] persuade Trump Attorney 1 to hide documents from the Grand Jury. This allegation was fabricated by misrepresenting questions to counsel as action statements meeting the requirements of the law. Also, the legal definition of "attempt" in the context of this law reqnires a substantial step of action(United States v. Irving, 2011) [42] [43] towards corrupt persuasion and such a step did

---

42 https://sgp.fas.org/crs/misc/RL34303.pdf

43 https://www.law.cornell.edu/wex/attempt

not occur. 18 U.S.C. § 1512(b)(2)(A) was not violated. On these grounds and those for Counts 34-38 above, the first allegation of Count 34 has been refuted.

**Count 34 second alleges** that Trump and Nauta knowingly and intentionally mislead Trump Attorney 1 by moving 64 boxes. There is no evidence of boxes being swapped and not merely worked on, such as a cache with the 64 boxes. There is no evidence that Trump told Nauta to "conceal" boxes. There is no evidence of Trump saying that "conceal" was the purpose of moving boxes. And, there was no knowledge of classification marked documents, prior to work sorting the boxes, meeting the definition of "knowingly" and "intent". Unintentionally missing a document in a sort or search fails to meet the definition of "withholding" required by the law. "Withhold" means "To deduct or hold something back." No such action was done. 18 U.S.C. § 1512(b)(2)(A) was not violated. The second allegation of Count 34 has been refuted.

**Count 35** is similar to Count 34 but accuses Trump and Nauta of concealing documents in contrast with causing Trump Attorney 1 to withhold documents. (Paragraphs 65, 90, 101)

18 U.S.C. § 1512(c)(1) is about corruptly damaging, destroying or concealing evidence. It does not apply here because…

- No evidence is provided of corrupt intent, such as to sell documents. And, Trump's possession of copies of Presidential records and work on Presidential records is lawful under the PRA and FPA.

- Prior knowledge of classification marked documents needed for "corruptly" and "intent to" did not exist.

- Unintentionally missing a document fails to meet the definition of "conceals".

Count 35 has been refuted.

**Count 36 first alleges** that Trump and Nauta knowingly hid from the FBI Trump's continued possession of documents with classification markings.

**Count 36 second alleges** Trump knowingly caused a false certification to be submitted to the FBI.

18 U.S.C. § 1519 is about destruction or falsification of records in Federal investigations. It applies to the person doing the act. It does not apply because...

- Trump or Nauta did not write a false entry. Trump did not direct his attorneys to write a false entry. The condition of "Whoever ...makes a false entry" in the law has not been met against Trump or Nauta.

- No evidence is given that either Trump or Nauta knew classification marked documents were present before the sort or search or had been missed. The conditions of "knowingly" and "with intent" have not been met.

- Unintentionally missing a document in a sort or search fails to meet the definitions "conceals", "covers-up", "falsifies" or knowingly "makes a false entry" required by the law.

Also, the allegation does not meet the burden of proof beyond a reasonable doubt because the events can also be explained by a hypothesis of documents being missed while sorting and searching to meet the demands of the subpoena.

Count 36 places blame on Trump and Nauta for execution failure by Trump Attorney 1. He searched the ~30 boxes in 2.5 hours, which is inadequate time. And, he failed to audit his work, such as by conducting a second self-verification search. Furthermore, the false statement that a diligent search had been conducted and all classification marked documents had been handed over originates with Trump Attorney 1. (Paragraphs 65 and 70.)

**Count 37** is the same as 36 but applies a different law, 18 U.S.C. § 1001(a)(1).

**Count 38** is the same as 36 but applies a different law, 18 U.S.C. § 1001(a)(2). This allegation uses trickery by inserting a phrase "and cause to be made" not in the law to fraudulently expand coverage of the law. Otherwise, the scope of the law only covers the person making the false entry.

Count 36, Count 37 and. Count 38 have all been refuted.

**Count 39** alleges that Nauta knowingly and willfully lied to the FBI, in violation of 8 U.S.C. § 1001(a)(2), when he said that he did not previously see, or know the prior history of, the 15 boxes he shipped to NARA on January 17, 2022, and was not aware of boxes brought to Trump's suite.

The allegation argues that Nauta participated in moving boxes at Mar-a-Lago to Storage Room, participated in moving boxes from Storage Room to Pine Hall where Former President Trump was working on Presidential records, and then participated in moving boxes from Pine Hall to transfer them to NARA. And, therefore, Nauta knew the history of the boxes. But, the indictment lies by misrepresenting questions about 15 specific boxes (Paragraph 111) as general questions about boxes (Paragraph 48) to falsify one allegation of lying to the FBI. A second allegation was falsified by misrepresenting the work area, Pine Hall, as being within the interior boundaries of Trump's private suite at Mar-a-Lago.

The first allegation of lying is false on technical grounds because it maliciously assumes that the 15 boxes coming out of Trump's work separating Presidential and personal records are the same as the boxes coming in. Nauta did not participate in the work, was not the only employee moving boxes, and he could not know what documents were removed, present or added. Defining a box as an enclosure with contents, the 15 boxes are freshly packed. Therefore, Nauta's answer; "I don't know" is correct.

The second allegation of lying is false because Pine Hall, the location boxes were worked on, is according to the Library of Congress[44], the antechamber to Trumps residence/suite and not within the interior doorway that delineates the boundary of Trump's private quarters. In the building that encloses Trump's residence/suite, there is an antechamber ("ante" = before, "chamber" = room, house or apartment)[45] called Pine Hall and then a vestibule (porch, or entrance room or hall into a house)[46] called Louis XV Hall leading to the residential bedrooms, etc., with a door separating the two that is the interior boundary separating Trump's private residence/suite. The arrangement is a bit like a doctor's clinic where there is typically a quasi-public waiting room and then a room or hall leading to offices, with a door between those two rooms that delineates the boundary between the quasi-public and private areas.

18 U.S.C. § 1001(a)(2) does not apply here because the statements from Nauta are true from his perspective. Count 39 has been refuted.

**Counts 40-41** take the same sequence of events and allege violations of different laws, in what may be a violation of Rule 12(b)(3)(B)(ii). The superseding indictment alleges that the DOJ emailed a draft subpoena for security camera footage to a Trump business organization attorney on June 22, 2022. The

---

44 https://www.loc.gov/resource/hhh.fl0181.photos/?sp=81

45 https://www.etymonline.com/word/antechamber

46 https://www.wordnik.com/words/vestibule

DOJ emailed a "final" subpoena on Friday 24, 2022. It fails to disclose time of day when emailed, when receipt was acknowledged or whether service by email was agreed to. Normally service of a subpoena must be in person and a draft or improperly served subpoena is not binding. It says that that on Friday June 24, 2022 at 1:25PM, Trump Attorney 1 spoke with Trump by phone about the subpoena, but it fails to disclose if this was about the draft or final subpoena. After that, Nauta and Oliveira contacted Trump Employee 4, the IT director of Mar-a-Lago. Nauta changed travel plans and went to Florida on Saturday June 25. Nauta and De Olivera went to the security guard booth to look at the monitors and then walked through the tunnel to Storage Room and identified security cameras. At 9:49PM on Monday June 27, 2022, De Oliviera asked Trump Employee 5 how long the server retained security camera footage. Trump Employee 4 responded that he believed it was 45 days. Up to this point, activities could either be reconnaissance to meet subpoena demands or planning to destroy camera footage.

Evidence of a plan to destroy footage appears to be from a single witness:

> DE OLIVEIRA told Trump Employee 4 that "the boss" wanted the server deleted. Trump Employee 4 responded that he would not know how to do that, and that he did not believe that he would have the rights to do that. Trump Employee 4 told DE OLIVEIRA that DE OLIVEIRA would have to reach out to another employee who was a supervisor of security for TRUMP's business organization. DE OLIVEIRA then insisted to TRUMP Employee 4 that "the boss" wanted the server deleted and asked, "what are we going to do?"

Note that this is a paraphrase, and does not quote the witness directly.

p.26

The indictment continues by telling about how Oliveira and Nauta traded texts at 10:14AM on Monday June 27, spoke by phone, met at around 1:31PM. De Oliviera spoke with Trump Employee 4 again. Then at 3:55PM, Trump called De Oliveira. And, the security camera footage was given to the FBI in July, 2022.

As an Electrical Engineer, Amici sees flaws in the allegation. First, the statement; "he would not know how to do that" from an IT Director is like a plumber saying "he would not know how to replace a toilet". It is a red flag of false testimony. Note that the DOJ allegedly attempted to solicit false testimony from a Nauta defense attorney.[47] Second, replacing the storage media in a security system digital video recorder is too easy for a real attempt to have been made without a substantial step accomplished.

**Count 40** alleges that Trump, Nauta and Oliveira knowingly and corruptly persuaded (as in bribery) or attempted to [corruptly] persuade by requesting Trump Employee 4 to delete security camera footage in violation of 18 U.S.C. § 1512(b)(2)(B). **Count 41** alleges that Trump, Nauta and Oliveira corruptly destroyed a record and attempted to do so by requesting that Trump Attorney 1 delete security camera footage in violation of 18 U.S.C. § 1512 (c)(1). The difference is Count 41 applies to persons doing the act and Count 40 applies to persons attempting to persuade another to do it. Both allegations are lies because:

47 https://www.nbcnews.com/politics/donald-trump/lawyer-witness-trump-docs-probe-alleges-prosecutorial-misconduct-rcna88472

- No security camera footage was destroyed.

- The alleged plan to destroy camera footage ended at talk; There was no substantial step of action meeting the legal definition of "attempt".(United States v. Irving, 2011) [48] [49]

- Nobody was persuaded.

- No corrupt means of persuasion, such as bribery, were used.(United States v. Farrell, 1997)[50]

- No corrupt purpose of persuasion, such as to criminal plans to gain from selling classified documents, was demonstrated.(United States v. Thompson, 1996)[51]

- Reasonable suspicions of a DOJ conspiracy[52] to suppress or destroy Presidential records[53], combined with PRA requirements to preserve Presidential records, means that "corruptly" could not be met even if there was intent to destroy camera footage.

---

48 https://sgp.fas.org/crs/misc/RL34303.pdf

49 https://www.law.cornell.edu/wex/attempt

50 https://law.justia.com/cases/federal/appellate-courts/F3/126/484/497821/

51 https://casetext.com/case/us-v-thompson-456

52 https://www.newsweek.com/fbi-sought-documents-trump-hoarded-years-including-about-russiagate-1734280

53 https://www.rollingstone.com/politics/politics-news/donald-trump-russia-investigation-maralago-1234588357/#?utm_source=onesignal

Counts 40 and 41 have been refuted.

**Count 42** alleges that Carlos De Oliveira knowingly made false statements when he told the FBI on January 13, 2023 that he did not participate in unloading boxes; was not aware of boxes being moved in; and didn't know where boxes were stored –all specific to when Trump moved from the White House to Mar-a-Lago in January 2021. There are multiple problems with this allegation. The events occurred before De Oliveira was employed as property manager at Mar-a-Lago in January 2022. He was previously a valet. (Paragraph 10) No evidence is provided that De Oliveira was employed at Mar-a-Lago on January 18, 2021[54], worked that day, participated in moving Trump's Trump's boxes, or observed a difference in flow trucks at Mar-a-Lago distinct enough for a valet to remember almost 2 years later. The indictment appears to mislead readers by including allegations of De Oliveira helping Nauta moving boxes on June 2, 2022 and June 3, 2022 (Paragraph 62, 63 and 73), and then gambling that readers aren't attentive enough to catch the later dates. This is deceitful and unprofessional. No evidence of a violation of 18 U.S.C. § 1001(a)(2) is provided. Count 42 has been refuted.

## CONCLUSION:

For the reasons stated in this amicus brief, the PRA should be included in this case. The PRA and FPA together authorize post-term work on Presidential

54 https://www.cbs17.com/news/national-news/moving-truck-seen-outside-trumps-estate-in-florida-as-biden-prepares-to-take-office/

records. This is relevant to application of 18U.S.C. § 793(e) in Counts 1-32, which depends on unauthorized possession of national defense information.

Furthermore, for reasons stated in this amicus brief, the case should be dismissed.The root allegation of unauthorized possession of classified documents in Paragraph 4 lies in fact regarding chronology and in law regarding in-term Presidential power to authorize under Article II Sections 1&2 of the U.S. Constitution. Counts 1-32, which are built on the root allegation, are refuted on multiple grounds of constitutional, statute and executive order law, declassification and COVID-19 Pandemic remote work rules. Counts 33-42 also fall on close examination using meticulous analysis routine for an Engineer.

Amici remembers Legal Terrorism being similarly employed against associates of the Reagan Administration. But back then it was not done by abusing the deep pockets and brute destructive power of the criminal justice system.

Respectfully Submitted

April 10, 2024

Darryl B. Phillips
Pro se Amici Curiae
5212 Florence Loop,
Dunsmuir, CA 96025
669.247.9074 phone
dbphilli@icloud.com



ORIGIN ID:RDDA  (530) 926-2520
PAGES
PAGES MOUNT SHASTA PRINT & SHIP
404 N. MT. SHASTA BLVD

MOUNT SHASTA, CA 96067
UNITED STATES US

SHIP DATE: 11APR24
ACTWGT: 1.00 LB MAN
CAD: 0915432/CAFE3904

BILL SENDER

TO CLERK OF COURT
ALTO LEE ADAMS SR US COURTHOUSE
101 SOUTH US HIGHWAY 1
ROOM #1016
FORT PIERCE FL 34950
(772) 467-2300          REF:
INV:           DEPT:
PO:

FedEx
Express

E

FRI – 12 APR 5:00P
TRK# 7370 6837 7653    STANDARD OVERNIGHT
0201

XG FPRA                    34950
                    FL-US    PBI

The World On