UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-801010-CR-CANNON

UNITED STATES OF AMERICA,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

Defendants.

_____ /

MOTION TO EXTEND TIME

Defendant Waltine Nauta, by and through the undersigned counsel, and pursuant to Rule

45(b)(1)(B) of the Federal Rules of Criminal Procedure, hereby respectfully requests this Court

continue the deadlines for disclosures pursuant to Section 5(a) of the Classified Information

Procedures Act, Pub. L. 96–456, 94 Stat. 2025, 18 U.S.C. App. III §§ 1–16 ("CIPA") as well as

Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure.  Counsel for Mr. Nauta has conferred

with counsel for the Special Counsel's Office, who advise they oppose the relief requested.[1]

---

[1] On April 10, 2024, this Court issued a Paperless Order setting the deadline for the Defendants to provide their Rule 16 expert disclosures as well as any defense CIPA Section 5(a) written notice.  Order (Apr. 10, 2024) (ECF No. 439). Former President Trump subsequently moved to continue these deadlines based on, *inter alia*, the unavailability of his counsel.  *See* Mot. (Apr. 13, 2024) (ECF No. 452).  The Special Counsel's Office opposes this request. Opp'n (Apr. 14, 2024) (ECF No. 453).  *See also* Reply (Apr. 18, 2024) (ECF No. 458); Notice (Apr. 24, 2024) (ECF No. 478) (confirming the unavailability of former President Trump's counsel not involved in the pending trial).  Former President Trump's motion indicated that defense counsel for Mr. Nauta also had a conflict for which a separate motion would be filed, however that scheduling conflict, a four (4) to six (6) week trial in the United States District Court for the District of Maryland, has since been continued until August 26, 2024. *See United States v. Schulman*, No. 20-cr-434 (D. Md.).  Because Mr. Nauta's defense counsel can only consult and/or strategize with counsel for former President Trump within the secure location designated for the handling of classified materials in this matter, defense counsel for Mr. Nauta formally join former President Trump's request to continue the deadlines set forth in the Court's April 10, 2024, Paperless Scheduling Order.  Order (Apr. 10, 2024) (ECF No. 439).

The Special Counsel's Office has incessantly sought deadlines in this matter that belay the readiness of the case.  Thus, in November, the Special Counsel's Office requested that this Court set a "near-term date" by when the Defendants would be required to submit notice pursuant to CIPA § 5(a), despite acknowledging that so-doing would likely require repeated disclosures.  And in their January expert disclosure, the Special Counsel's Office asked this Court to require the Defendants to submit their own expert notices a mere two weeks later, despite no such requirement in Rule 16.  Notice (Jan. 12, 2024) (ECF No. 257).  On April 10, 2024, this Court issued a Paperless Order setting the deadline for the Defendants to provide expert disclosures pursuant to Rule 16 as well as any defense CIPA Section 5(a) written notice.  Order (Apr. 10, 2024) (ECF No. 439).  Mr. Nauta respectfully submits it is premature to set deadlines pursuant either to CIPA § 5(a) or Rule 16(b)(1)(C) because the Special Counsel's Office has yet to provide information necessary for defense counsel to make either disclosure.

Formally, Mr. Nauta is charged in eight counts of the July 27, 2023, Superseding Indictment, (July 27, 2023) (ECF No. 85), to include: conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k) (Count 33); withholding a document or record in violation of 18 U.S.C. § 1512(b)(2)(A) (Count 34); corruptly concealing a document or record in violation of 18 U.S.C. § 1512(c)(1) (Count 35); concealing a document in a federal investigation in violation of 18 U.S.C. § 1519 (Count 36); engaging in a scheme to conceal in violation of 18 U.S.C. § 1001(a)(1) (Count 37); making false statements and representations in violation of 18 U.S.C. § 1001(a)(2) (Count 39); altering, destroying mutilating, or concealing an object in violation of 18 U.S.C. § 1512(b)(2)(B) (Count 40); and corruptly altering, destroying, mutilating, or concealing a document, record or other object in violation of 18 U.S.C. § 1512(c)(1) (Count 41).

A.    It is Premature to Require a CIPA § 5(a) Disclosure Deadline.

With respect to CIPA § 5(a), Mr. Nauta has been individually substantively charged with moving boxes allegedly containing documents with classification markings at various points between May 2022 and June 2022 to and from the Storage Room at Mar-a-Lago. *See id.* at 21-24 (Counts 34, 35, 36, and 37).  In pertinent part, the Superseding Indictment alleges that following the receipt of a grand jury subpoena for documents with classified markings, Trump Attorney 1 made arrangements to search boxes stored in a Storage Room at Mar-a-Lago on June 2, 2022. Superseding Indictment at 22 ¶57 (July 27, 2023) (ECF No. 85).  Thereafter, the Indictment alleges, Mr. Nauta, at President Trump's direction, moved "approximately 64 boxes from the Storage Room and brought them to [former President Trump's] residence." *Id.* at 22-23 ¶59.  Then, on June 2, 2022, prior to Trump Attorney 1's arrival, the Indictment alleges that Messrs. Nauta and De Oliveira moved approximately 30 boxes back from former President Trump's residence to the Storage Room.  *Id.* at 24 ¶63.  Thus, the indictment insinuates, when Trump Attorney 1 performed the June 2 search of the boxes for documents with classification markings, there were approximately 34 boxes missing from the Storage Room.  Several months later, on August 8, 2022, the Indictment alleges, "the FBI executed a court-authorized search warrant at the Mar-a-Lago Club" in which it seized 75 documents purportedly with classification markings from the Storage Room.  *Id.* at 30 ¶90.  For example, in response to the Defendants' Motion to Dismiss (Feb. 28, 2024) (ECF No. 352) (originally submitted *in camera* on Feb. 22, 2024), the Special Counsel's Office describes the movement of boxes as follows:

> Nauta took out a total of approximately 64 boxes from the storage room: three boxes on May 24; 50 boxes on May 30; and 11 boxes on June 1.  Then, hours before the attorney returned to Mar-a-Lago on June 2 to conduct his review for documents responsive to the subpoena, Nauta moved only approximately 30 boxes into the storage room, aided by De Oliveira. . . .  The attorney ultimately

found and provided to the FBI 38 documents with classification markings. But when a search warrant was executed at the property on August 8, 2022, over 100 additional documents with classification markings were found, approximately 75 of them in the very storage room from which Nauta had removed boxes before the attorney's search.

Opp'n at 3 (Mar. 7, 2024) (ECF No. 378) (citations omitted). And at the hearing on Mr. Nauta's Motion for a Bill of Particulars, the Special Counsel's Office specifically claimed that documents with alleged classification markings seized by the FBI on August 8 were within the boxes moved by Mr. Nauta prior to Trump Attorney 1's June 2 review:

I would add that we're not conceding that all of the documents with classification markings made it back to the storage room. . . . [I]n many ways, we don't know where all the boxes that may have been removed of the – of the – the delta between the approximately 64 and the approximately 30, whether all those boxes actually made it back to the – to the storage room[.]

Hr'g Tr. at 63:20-64:02 (Apr. 12, 2024) (ECF No. 455). This additional detail supports the insinuations drawn from the allegations within the Indictment that that the documents discovered by the FBI on August 8 were within the 34 boxes allegedly missing from the Storage Room during Trump Attorney 1's search.

In summary, the purpose for moving these boxes, as alleged in the Indictment, was to "withhold" and/or "conceal" them from Trump Attorney 1's review of the boxes in the Storage Room on June 2. The contents of the boxes, including where documents with classification markings were within the boxes, is therefore relevant to Mr. Nauta's defense. For example, Mr. Nauta could argue that on their face the documents within the boxes did not appear to be classified or otherwise have classified markings.[2] Similarly, Mr. Nauta could argue the documents recovered

---

[2] As the Special Counsel's Office will no doubt note, Mr. Nauta may argue he had no knowledge of what was in the boxes. Even were the Court to conclude the Special Counsel's Office need not prove, as an element of the substantive offenses, that for Mr. Nauta to have a "corrupt" *mens rea*, he was aware that documents with classification markings

from the Storage Room by the FBI on August 8 were not within the boxes moved by Mr. Nauta prior to Trump Attorney 1's June 2 search.  In either event, what documents were in which boxes and where is relevant to Mr. Nauta's defense.

Moreover, even were the Special Counsel's Office to argue that Mr. Nauta's knowledge of the contents of the boxes immaterial or otherwise irrelevant to the charges as against Mr. Nauta – a concession the Special Counsel's Office should be required to acknowledge pretrial – "The bill of particulars is not part of the indictment, but 'merely amplifies the indictment by providing missing or additional information *so that the defendant can effectively prepare for trial*.'" Mot. at 5 (April 11, 2024) (ECF No. 446) (originally submitted *in camera* Feb. 22, 2024) (citing *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (emphasis added)) – Mr. Nauta could argue at trial that the documents seized by the FBI on August 8 were not in fact contained within the boxes moved by Mr. Nauta prior to Trump Attorney 1's search on June 2.

> *i. The Production of Boxes-Related Discovery To Date.*

By way of background, the boxes were first searched by the FBI at Mar-a-Lago on August 8, 2022.  During that search, FBI agents removed any documents with classification markings (or that were otherwise believed to be classified) and replaced them with slip sheets.  To that end, the Special Counsel's Office produced or otherwise made available to defense counsel the boxes in question in three formats.[3]  First, defense counsel has access to the boxes as they were seized by

---

were contained within the boxes, Mr. Nauta will certainly be permitted to challenge the presentation of evidence by the Special Counsel's Office and the fact that Mr. Nauta could not reasonably have known what was in the boxes.  *See generally* Hr'g Tr. (Apr. 12, 2024) (ECF No. 455).

[3] For purposes of the instant motion, Mr. Nauta refers only to those boxes that were seized by the FBI from the Mar-a-Lago Storage Room insofar as Mr. Nauta is only alleged to have "withheld" and/or "concealed" those boxes.

the FBI during its August 8, 2024, execution of a search warrant on Mar-a-Lago.[4]  In total, there are 12 boxes that were seized from the Storage Room, from which 77 documents with classification markings were replaced with slip sheets prior to their seizure.  By way of example, one of the boxes in question appear as depicted in the following image:



Second, the unclassified contents of the boxes (including the slip sheets added by the FBI on August 8) have been scanned and made available to defense counsel in unclassified discovery. Third, the documents with classification markings (or otherwise believed to be classified) that were removed from the boxes on August 8 have been produced in classified discovery.  In total, the FBI

---

[4] At the Court's last hearing in this matter, Counselor to the Special Counsel Jay Bratt advised the Court that the boxes remained in the same condition as when they were seized by the FBI.  *See* Hr'g Tr. at 65:18-22 (Apr. 12, 2024) (ECF No. 455).  However, at defense counsel's first viewing of the boxes, they were advised that as a result of the Special Master's review of the boxes, their contents may not be in the same order as when they were seized.

seized 77 documents with classification markings from the 12 boxes that were seized from the Storage Room, but of those 77 documents, 26 have now been produced in unclassified discovery.

To assist defense counsel in understanding which documents with classification markings (or that were otherwise purportedly classified) were taken from which boxes and where in the boxes those documents were at the time they were removed, the Special Counsel's Office provided defense counsel with an index to delineate the same.  That index provides the beginning classified Bates number of the document removed, its classification marking, and the number of pages of the document.  If accurate, this index would have enabled defense counsel to identify which documents were purportedly contained in which boxes and where.

ii. *Defense Counsel's Efforts to Re-Create the Boxes as They Existed When Seized from the Storage Room.*

Following this Court's ruling on the CIPA § 4 submission by the Special Counsel's Office (Feb. 28, 2024) (ECF No. 346) in February – over a month before the Court issued its Order setting the CIPA § 5(a) deadline on April 10, 2024 (ECF No. 439) – defense counsel undertook significant efforts to recreate the contents of the boxes Mr. Nauta is alleged to have "withheld" and/or "concealed" prior to Trump Attorney 1's June 2 search.  This significant effort has involved cross-referencing the unclassified scans of the contents of the 12 boxes seized by the FBI from the Storage Room with the documents produced in classified discovery by:  (i) physically reviewing the contents of the boxes (under the watch of both FBI agents and prosecutors with the Special Counsel's Office) at a warehouse in the District of Columbia; (ii) reviewing the scans of the contents produced in unclassified discovery and comparing these as against notes of the physical review (which, admittedly, can be done anywhere); and then (iii) comparing notes of those reviews

as against the hundreds of classified documents (or documents with classification markings) stored at a secure location in *this* District, where any notes taken during the review must remain.[5]

Following defense counsel's review of the physical boxes, the unclassified scans of the contents of the boxes, and the documents produced in classified discovery, defense counsel has learned that the cross-reference provided by the Special Counsel's Office does not contain accurate information. For example, Box A-15 is a box seized from the Storage Room and is identified by the FBI as Item 10. The FBI Index indicates that the classified documents removed from the box (and where a cover sheet was inserted in its place) appear in the order listed below. The contents of the unclassified discovery pertaining to Box A-15 begins at USA-00340924, with the first inserted at the second page of the scan, or Bates labeled USA-00340925:



---

[5] Further complicating defense counsel's efforts is the fact that unclassified discovery is unavailable within the secure location storing classified discovery. In March, defense counsel requested a hard drive on which defense counsel could save a copy of the unclassified discovery which will permit the side-by-side review of the unclassified scans of the contents of the boxes as against the classified documents produced in discovery. For reasons beyond the control of the CISO (regarding determining the physical place of manufacture of an external hard drive) this process has been attenuated. The CISO has recently procured drives that will work for this purpose and is facilitating the provision of the same to defense counsel so the unclassified discovery can be saved to those drives and rendered accessible to defense counsel within the secure facility storing the classified discovery. It does warrant mentioning that the Special Counsel's Office has had access to both the classified and unclassified discovery contemporaneously throughout its investigation and prosecution of this matter.

Per the FBI Index, the first purportedly classified document removed from box A-15 was assigned FBI Index code "ccc," its classified bates begins at 0079, is one page, and bears the classification marking of "CONFIDENTIAL." For reference, the physical cover sheet from the actual box for document "ccc" appears as depicted in the below image:



To state the obvious, a "Secret" document is not the same as a "Confidential" document. To be sure, a slip sheet in in Box A-15 does match the one scanned as part of unclassified discovery (at USA-00340925):



9

However, there is no way for defense counsel to know that the slip sheet depicted above actually corresponds with USA-00340925.  And the slipsheet labeled "ccc" does not appear for several hundreds of pages later than the FBI Index indicated it would.  Defense counsel's review of these materials calls into question the likelihood that the contents of the physical boxes remains the same as when they were seized by the FBI on August 8, 2022.

Although the Special Counsel's Office has indicated it will work with defense counsel to accurately produce an index cross-referencing the purported documents with classification markings produced in classified discovery as against the slip sheets now in the physical boxes, that process will take time.  Until that process is complete, however, defense counsel cannot know for certain which documents produced in classified discovery were recovered from boxes in the Storage Room nor where those documents were found in the boxes.  Accordingly, defense counsel cannot meaningfully identify, pursuant to CIPA § 5(a), the classified information it anticipates being disclosed at trial.

> iii.   *Defense Counsel Cannot Now Meet Its Disclosure Obligations Under CIPA § 5.*

Mr. Nauta is keenly aware of the consequences of insufficiently disclosing such classified information.  *See United States v. Badia*, 827 F.2d 1458, 1465 (11th Cir. 1987) ("Notice is necessary to permit the government to choose an alternative course that minimizes the threat to national security.").  Mr. Nauta anticipates his CIPA § 5(a) submission will specifically reference classified information from documents contained in boxes that were seized by the FBI during its execution of a search warrant at Mar-a-Lago.  Under § 5(a) of the CIPA, a defendant who

> reasonably expects to disclose or to cause the disclosure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant shall, within the time specified by the court or, where

no time is specified, within thirty days prior to trial, notify the attorney for the United States and the court in writing. Such notice shall include a brief description of the classified information. Whenever a defendant learns of additional classified information he reasonably expects to disclose at any such proceeding, he shall notify the attorney for the United States and the court in writing as soon as possible thereafter and shall include a brief description of the classified information. No defendant shall disclose any information known or believed to be classified in connection with a trial or pretrial proceeding until notice has been given under this subsection and until the United States has been afforded a reasonable opportunity to seek a determination pursuant to the procedure set forth in section 6 of this Act, and until the time for the United States to appeal such determination under section 7 has expired or any appeal under section 7 by the United States is decided.

18 U.S.C. App. 3 § 5(a).

Where a defendant fails to comply with the procedures set forth in Section 5(a) of CIPA, the court, "may preclude disclosure of any classified information not made the subject of notification and may prohibit the examination by the defendant of any witness with respect to any such information."  18 U.S.C. App. 3 § 5(b).  "[T]he objective of CIPA is to provide the government with both notice of the defendant's intent to introduce sensitive information at trial, *and a particularized description of the classified information prior to trial*."  *Badia*, 827 F.2d at 1465 (emphasis in the original).  It follows, then, that, a "defendant who reasonably expects that his or her defense will result in the disclosure of classified information is required."  *United States v. Collins*, 720 F.2d 1195, 1197 (11th Cir. 1983).  "The statute's text makes relevance and materiality a threshold matter for the defense: Section 5 opens by providing for notice of documents *defendant reasonably expects* to disclose or cause to be disclosed at trial." *United States v. North*, 708 F. Supp. 389, 392 (D.D.C. 1988) (emphasis in original).  The Court's Order setting the CIPA § 5 deadlines aptly echoes these sentiments and objectives, requiring that the, "Section 5(a) notice shall be sufficiently detailed and cover both documentary exhibits and

anticipated oral testimony."  Paperless Order (Apr. 10, 2024) (ECF No. 439).  And finally, the Department of Justice has not permitted defense counsel to simply identify swaths of classified discovery expected to be introduced at trial (such as all purported documents with classified markings recovered from the search of the Storage Room).  *See United States v. Fernandez*, 913 F.2d 148, 151 (4th Cir. 1990) (noting that government objected to notice that listed 5,000 documents without identifying classified information); *United States v. Zetti*, 835 F.2d 1059, 1064-65 (4th Cir. 1987) (Section 5 notice that listed hundreds of documents without specifying classified information, "could have been more precise").  *See also* 2 David Kris & J. Douglas Wilson, National Security Investigations and Prosecutions § 27:2, at 180-181 (3d ed. 2019, rev. 2023) ("Before a defendant is required to file a Section 5 notice, the government should have satisfied its discovery obligations, and the parties should have completed any necessary proceedings under CIPA Section 4. . . .  [N]otice should not be required prematurely.").

* * *

That documents with classification markings were stored within the boxes allegedly moved by Mr. Nauta prior to Trump Attorney 1's Storage Room search is at the heart of the claim by the Special Counsel's Office that Mr. Nauta sought to obstruct their investigation by "withholding" and/or "concealing" boxes from Trump Attorney 1.  Where those documents were stored in the boxes, and whether they were there at all, is unquestionably material to Mr. Nauta's defense and necessary to his determination of what classified discovery he reasonably expects to disclose or cause to be disclosed at trial.  *See* 18 U.S.C. App. III § 5(a).  Therefore, unless and until the Special Counsel's Office can definitively identify for defense counsel where documents in classified discovery were taken from the boxes seized on August 8 by the FBI from the Storage Room, defense counsel cannot meaningfully submit a CIPA § 5(a) notice.

B.       It is Premature to Set a Rule 16(b)(1)(C) Disclosure Deadline.

With respect to any Rule 16(b)(1)(C) disclosure, Mr. Nauta submits it is premature to set any deadline with respect to the same because the Special Counsel's Office has yet to provide forensic images of the devices for which it has proffered expert testimony.  Specifically, on January 12, 2024, the Special Counsel's Office provided notice of its intent to use expert testimony at trial. Notice (Jan. 12, 2024) (ECF No. 257).  That notice identified six (6) experts, three (3) of which pertain to the cell phones seized from Mr. Nauta by the FBI pursuant to search warrants and the experts will testify about the data contained on those devices (and every expert is proffered to testify about forensic data).

Despite its representation to the contrary, the Special Counsel's Office has yet to provide forensic images of the devices it seized during the course of its investigation.  Defense counsel noted as much in its Motion to Compel, filed under seal in January.  *See* Sealed Mot. Compel (Jan. 25, 2024) (ECF No. 262) ("The Special Counsel has yet to produce to defense counsel forensic images of the devices it obtained during the course of its investigation despite having provided such devices to Deloitte for processing in or around March of 2023 according to [a] request for non-FBI processing submitted to the FBI pursuant to Digital Evidence Policy Guide Section 4.3.9."); Redacted Mot. Compel (Apr. 22, 2024) (ECF No. 469) (same).

As the prosecution by the Special Counsel's Office will rely upon the data obtained from these devices, defense counsel necessarily needs forensic copies of these devices to assess the veracity of the representations made by the experts designated by the Special Counsel's Office. Only with a forensic extraction of a device can defense counsel assess the authenticity and/or reliability of the data contained therein.  Such an analysis includes assessing the location of a device when calls were made to/from the phone and whether they were answered, as well as with

whom they were made; when messages were sent and/or received from the device and with whom; whether photographs and/or video were created with the device and whether they were sent or otherwise transmitted by the device and to who; the source of photographs and/or video on the device that were not created by the device; and any social media and/or internet searches utilized by a device user. The technical detail of what is required by defense counsel was outlined in their reply in support of their motion to compel (after the Special Counsel's Office again claimed to have provided everything). *See* Reply in Support of Mot. Compel at 29-30 (Feb. 9, 2024) (ECF No. 300). Despite having nearly three (3) months to do so, defense counsel still do not have forensic copies of the devices the Special Counsel's Office obtained during the course of its investigation.

* * *

Of course, there can be no doubt that the parties – and the Court – have methodologically proceeded toward trial readiness over the course of the last few months. Thus, although defense counsel requests a continuance of the disclosure deadlines that arise from CIPA § 5(a) and Rule 16(b)(1)(C), this request comes in the context of the parties continued good faith efforts to resolve outstanding disputes. Earlier today, on May 1, 2024, defense counsel met with the Special Counsel's Office in an effort to resolve technical issues surrounding the provision of CCTV video in discovery. In addition, the parties prepared for and substantively participated in two recent hearings, *see* Paperless Minute Entry (Mar. 14, 2024) (ECF No. 401) (reflecting a three-hour and 30 minute hearing); Paperless Minute Entry (Apr. 12, 2024) (ECF No. 451) (reflecting a two-hour and five minute hearing), and the Court has otherwise received briefing on and resolved numerous pending motions, including five (5) substantive motions to dismiss. *See* Orders (Mar. 14, 2024) (ECF No. 402); (Apr. 4, 2024) (ECF No. 431); (Apr. 18, 2024) (ECF No. 462). Extending the

time within which defense counsel are required to make CIPA § 5(a) and Rule 16(b)(1)(C) disclosures will not meaningfully impact the trial readiness of this proceeding, especially where, as here, defense counsel do not yet have access to the discovery material necessary to make such disclosures.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Mr. Nauta respectfully requests this Court vacate the CIPA § 5 and Rule 16(b)(1)(C) disclosure deadlines set by the Court's April 10, 2024, Paperless Order (ECF No. 439).   To the extent the Special Counsel's Office indicates either it has no obligation to produce the Discovery Material described herein, or that such Discovery Material is unnecessary to make these disclosures, Mr. Nauta requests a hearing on the same.

[SIGNATURE BLOCK NEXT PAGE]

Date: May 1, 2024                              Respectfully submitted,

   _s/ Stanley E. Woodward, Jr._
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, D.C. 200001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

   _s/ Sasha Dadan_
Sasha Dadan, Esq. (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

## **HEARING REQUESTED**

Upon consideration of the issues discussed above, Mr. Nauta respectfully requests a non-evidentiary hearing before the Court resolves any disputes related to the submission of the notice required by CIPA § 5(a).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 1, 2024, the foregoing was provided via CM/ECF to counsel of record.

*s/ Sasha Dadan*