# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 23-80101-CR<br>CANNON/REINHART |

**PRESIDENT DONALD J. TRUMP'S (PROPOSED) SUR-REPLY BASED ON NEWLY DISCOVERED EVIDENCE OF SCO DISCOVERY VIOLATIONS AND MISREPRESENTATIONS**

President Donald J. Trump respectfully submits this Sur-Reply to address conceded discovery violations and misrepresentations to the Court by the Special Counsel's Office, as these issues relate to President Trump's Motion for Adjournment of the May 9, 2024 deadline for CIPA § 5 Notice and Rule 16 expert disclosures. ECF No. 452. Although President Trump will likely seek leave to file additional motions based on these issues, the most pressing concern is that the Office's recent disclosures serve as yet another basis for granting the pending motions to adjourn the May 9, 2024 deadline for CIPA § 5 Notice and expert notice. *See* ECF Nos. 452, 461.[1]

### I. Background

At approximately 3:30 pm on the afternoon of Friday, May 3, 2024, the Special Counsel's Office disclosed to the Court and the Defendants that the prosecution team has failed to maintain

---

[1] As noted below, we sought to confer with the Special Counsel's Office regarding these issues by letter dated May 4, 2024. On May 5, 2024, the Office confirmed that they continue to oppose the pending adjournment request and will respond to our discovery requests "promptly." We are filing this Sur-Reply in any event because President Trump is currently participating in proceedings in *People v. Trump*, Ind. No. 71543-23, and in light of the impending hearing on May 8, 2024, as well as the upcoming deadlines on May 9, 2024, which are the subject of other pending motions.

1

the integrity of the contents of at least some of the boxes obtained from Mar-a-Lago. *See* ECF No. 522. Using a dismissive and condescending tone to address serious contentions relating to these issues raised by Waltine Nauta, the Office admitted that "there are some boxes where the order of items within that box is not the same as in the associated scans." *Id.* at 8. The Office then attempted to bury in a footnote their concession that ***the disclosure is "inconsistent with what Government counsel previously understood and represented to the Court."*** *Id.* at 8 n.3. (emphasis added). Although the Office cited to an apparent misrepresentation at the April 12, 2024 conference, the Office has repeatedly—"essentially from day one," 7/18/23 Tr. 62—provided full-throated but now concededly false assertions of compliance with their discovery obligations.

Moreover, the May 3, 2024, submission by the Special Counsel's Office contains several vague assertions that only raise more questions regarding the Office's failure to maintain the integrity of the evidence in the boxes. For example, the Office indicated for the first time that the "filter team" was "not focused on maintaining the sequence of documents within each box." ECF 522 at 6. That concession alone implicates every box at issue, as well as the "scans." *Id.* at 8. The gravity of these issues is illustrated by the fact that the Office now claims that the "best evidence available" of the boxes' contents are ***scans prepared by "an outside vendor"*** in connection with a civil case that lacked the constitutional, statutory, and ethical safeguards that guide discovery obligations in this criminal case. *Id.* at 7, 8.

Regarding the so-called "cover sheets" that the prosecution team used as replacements for allegedly classified documents in the boxes, the Special Counsel's Office wrote that the FBI "generally" had "replaced the handwritten sheets with classified cover sheets annotated with the index code." ECF No. 522 at 7. But the Office did not explain why they could not offer a precise, categorical representation about the process that was used instead of a "general" one. *See id.* The

2

Office also admitted that in "many *but not all* instances, the FBI was able to determine which document with classification markings corresponded to a particular placeholder sheet." *Id.* (emphasis added). This further suggests that even if the scans are the "best evidence available," they are not a reliable record of the boxes' contents. The "not all" caveat is, however, consistent with the recent and inexplicable disclosure that the "filter team" was "not focused" on the order of documents in the boxes that are at the heart of this case. *Id.* at 6.

On May 4, 2024, counsel for President Trump sent a letter with discovery requests relating to these issues to the Special Counsel's Office, which is attached hereto as **Exhibit A**. The Office responded on May 5, indicating that they continue to oppose our request for an adjournment of the May 9 deadlines—notwithstanding the recent disclosures and that President Trump and counsel have been at a criminal trial in Manhattan since April 15, 2024—and that they will respond to our discovery requests "promptly."

## II. Discussion

President Trump and counsel are deeply troubled to be learning of these facts approximately 11 months after the charges were filed in this case. The May 3, 2024, disclosures by the Special Counsel's Office raise questions about the investigation and the handling of evidence that must be addressed before the matter proceeds.

During the review of discovery and preparation of pretrial motions, President Trump's counsel had relied on the scans and believed that the location of allegedly classified documents within the boxes was exculpatory. Indeed, it was our understanding that most, and potentially all, of the charged documents were buried within the boxes and located next to other items that provided favorable context regarding, *inter alia*, when the document was placed in a box. It never occurred to us, until last Friday, that the prosecution team could not be trusted to perform the basic

3

task of maintaining the integrity of such evidence despite the expansive resources at their disposal. That is why President Trump's defense team has not inspected the boxes up to this point and instead focused on other aspects of our defense in motion practice and discovery review.

Under *Brady*, the Special Counsel's Office had, and continues to have, an independent obligation to promptly make complete disclosures regarding the failure to maintain the sequence of the documents within the boxes at the time they were collected. *See Kyles v. Whitley*, 514 U.S. 419, 442 n.13 (1995) ("There was a considerable amount of . . . *Brady* evidence on which the defense could have attacked the investigation as shoddy."). These issues implicate, for example, President Trump's motion to suppress evidence seized from Mar-a-Lago and the motion to dismiss based on prosecutorial misconduct. President Trump will move to compel further disclosures regarding these issues in the event the Office does not turn over the materials sought in the May 4, 2024 letter. Moreover, after those further required disclosures, it is likely that President Trump will file additional motions for sanctions based on spoliation, including a motion to dismiss the charges if the Office cannot prove in a reliable way how it seized and handled the key evidence in the case, which will be a central issue at any trial.

Finally, these issues are relevant to President Trump's CIPA § 5 Notice and decisions regarding potential experts. Our review of classified discovery, including interviews regarding handling of classified documents during and after President Trump's first term, was undertaken without the information in the May 3, 2024, disclosure. Defense counsel cannot reasonably be expected to specify classified information that they intend to offer at trial when the Office recently disclosed that one of the most basic premises of the criminal justice process—that the prosecution team can be trusted to maintain existing evidence—no longer applies. For example, if the case proceeds to trial or evidentiary hearings, President Trump will now seek to use classified

4

information to cross-examine witnesses regarding appropriate procedures for handling classified information in connection with briefings and evidence in connection with investigations. Defense counsel will also need to re-review the classified discovery, among other things, to consider new defenses and potential expert notice based on these disclosures, such as defenses and experts that focus on the chain-of-custody and search-execution deficiencies. In addition to all of the other valid reasons to adjourn the May 9, 2024, deadlines, some of which have constitutional implications,[2] the Office's recent disclosures regarding the mishandling of the contents of the boxes and prior misrepresentations to the Court require that the deadline be held in abeyance.

---

[2] The trial in *People v. Trump*, Ind. No. 71543-23, is proceeding as scheduled. President Trump has been present for each trial day since April 15, 2024, and has not been able to participate in any of the classified communications that would be necessary to provide CIPA § 5 Notice or expert notice on May 9, 2024. Nor have Mr. Blanche and Mr. Bove, who are both representing President Trump at the trial in New York.

Dated: May 6, 2024

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
Lazaro Fields
Florida Bar No. 1004725
lfields@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on May 6, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise

# Exhibit A



TODD BLANCHE
ToddBlanche@blanchelaw.com
(212) 716-1250

May 4, 2024

<u>Via Email</u>
Jay Bratt
Julie Edelstein
David Harbach
Senior Assistant Special Counsels
950 Pennsylvania Avenue NW
Room B-206
Washington, D.C. 20530

Re:   <u>United States v. Donald J. Trump, No. 23 Cr. 80101 (AMC)</u>

Dear Mr. Bratt, Ms. Edelstein, and Mr. Harbach:

We write on behalf of President Donald J. Trump, pursuant to Rule 16(a)(1)(E), *Brady*, and *Giglio*, to request the documents and information set forth below relating to your May 3, 2024 submission to the Court.  *See* ECF No. 522.

We are troubled by the concession in your May 3 submission that the prosecution team failed to preserve critical evidence relating to the location of documents within boxes obtained from Mar-a-Lago.  The documents' location constituted exculpatory information relating to, *inter alia*, the complete absence of culpable criminal intent by President Trump.  Evidence relating to the mishandling of the boxes and documents is also independently discoverable.  *See Kyles v. Whitley*, 514 U.S. 419, 442 n.13 (1995) ("There was a considerable amount of . . . *Brady* evidence on which the defense could have attacked the investigation as shoddy.").

Your failure to disclose the spoliation of this evidence until this month is an extraordinary breach of your constitutional and ethical obligations.  Since the beginning of this case, our strategy, preparations, and arguments have been based on the basic premise that—biased as Jack Smith is in his futile efforts to help President Biden make up lost ground in the polls—the line prosecutors and agents would employ the minimal levels of professionalism and competence necessary to preserve evidence relating to the documents at the center of the charges.  In addition to all of the legal flaws that we have identified in your efforts through pending pretrial motions, it is now clear that even the most fundamental premise of the criminal justice process does not apply in this case.  Furthermore, your misrepresentations to Judge Cannon regarding this important issue are part of a pattern of inaccurate claims regarding the status and substance of discovery that have plagued this case from the start, as you have repeatedly and unjustly urged the Court to impose unworkable deadlines in connection with your election-interference mission.

May 4, 2024
Page 2

Irrespective of your views regarding whether this issue bears on CIPA practice by co-defendant Waltine Nauta—and we find your contentions to be self-serving and frivolous given your indefensible handling of the evidence at issue—you cannot seriously contend that your recent spoliation concession is irrelevant to President Trump's pending pretrial motions, CIPA practice, and expert notice. As such, in addition to the discovery requests below, please let us know if you consent to the pending motion for an adjournment of the May 9, 2024 deadline. *See* ECF Nos. 452, 458.

We respectfully request a response as soon as possible. We plan to raise these issues with the Court on Monday, May 6, 2024.

I. **Background**

Each of the Requests set forth below calls for production of documents irrespective of their classification level. As used herein, the term "documents" includes (i) all communications, including memoranda, reports, letters, notes, emails, text messages, and other electronic communications; (ii) hard copies and electronically stored information, whether written, printed, or typed; and (iii) all drafts and copies.

The term "Boxes" means any and all boxes and redwelds obtained from Mar-a-Lago, whether pursuant to a subpoena, warrant, or otherwise, including but not limited to the boxes turned over to NARA, the redweld turned over by Evan Corcoran, and boxes seized in connection with the execution of a search warrant at Mar-a-Lago.

The Requests call for specified documents in the possession of the prosecution team, as defined in our October 9, 2023 letter.

II. **Requests**

1. Please provide all documents relating to instructions provided to the "filter team," including instructions regarding evidence handling and preservation. *See* ECF No. 522 at 6 ("The filter team took care to ensure that no documents were moved from one box to another, *but it was not focused on maintaining the sequence of documents within each box*." (emphasis added)).

2. Please provide all documents relating to instructions provided to the "investigative team" that participated in the "on-site review," including instructions regarding evidence handling and preservation. ECF No. 522 at 6.

3. Please provide all documents, including communications between and relating to, the execution of the search by the "filter team" and the "investigative team." ECF No. 522 at 6.

4. Please provide all documents relating to chain of custody and access to the Boxes while they were "stored overnight at the FBI field office in Miami." ECF No. 522 at 6.

May 4, 2024
Page 3

     5.     Please provide all documents relating to chain of custody and access to the Boxes while they were "flown back to Washington, D.C., the next day." ECF No. 522 at 6.

     6.     Please provide all documents relating to the process by which the FBI "generally replaced the handwritten sheets with classified cover sheets annotated with the index code." ECF No. 522 at 7.

     7.     Please provide all documents relating to exceptions and/or deviations from the process that the FBI "generally" used to insert the "handwritten sheets." ECF No. 522 at 7.

     8.     Please provide all documents relating to the factual basis for your assertion that "any handwritten sheets that currently remain in the boxes do not represent additional classified documents—they were just not removed when the classified cover sheets with the index code were added." ECF No. 522 at 7.

     9.     Please provide all documents relating to the "instances" in which the FBI was *not* "able to determine which document with classification markings corresponded to a particular placeholder sheet." *See* ECF No. 522 at 7 ("In many *but not all instances*, the FBI was able to determine which document with classification markings corresponded to a particular placeholder sheet." (emphasis added)).

     10.     Please provide all documents relating to the "steps" that the "Government" has taken "to ensure that documents and placeholders remained within the same box as when they were seized, i.e., to prevent any movement of documents from one box to another." ECF No. 522 at 7.

     11.     Please provide all documents relating to the "personnel" who have "had access to the [B]oxes" and the "several reasons" that such access was granted. ECF No. 522 at 8.

     12.     Please identify the Boxes where you currently concede that "the order of items within that box is not the same as in the associated scans." ECF No. 522 at 8.

May 4, 2024
Page 4

13.   Please provide all documents, including but not limited to communications, relating to the inquiries and investigation that led to the disclosures in your May 3, 2024 submission.

Respectfully Submitted,

*/s/ Todd Blanche*
Todd Blanche
Emil Bove
Blanche Law PLLC

Christopher M. Kise
Chris Kise & Associates, P.A.

*Attorneys for Donald J. Trump*

Cc:   Stanley Woodword
      Sasha Dadan
      *Counsel for Waltine Nauta*
      (Via Email)

      John Irving
      Larry Murrell
      *Counsel for Carlos De Oliveira*
      (Via Email)