UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 23-80101-CR
CANNON/REINHART

**PRESIDENT DONALD J. TRUMP'S SUR-REPLY BASED ON NEWLY DISCOVERED EVIDENCE OF SCO DISCOVERY VIOLATIONS AND MISREPRESENTATIONS**

President Donald J. Trump respectfully submits this Sur-Reply to address conceded discovery violations and misrepresentations to the Court by the Special Counsel's Office, as these issues relate to President Trump's Motion for Adjournment of the May 9, 2024, deadline for CIPA § 5 Notice and Rule 16 expert disclosures. ECF No. 452. Although President Trump will likely seek leave to file additional motions based on these issues, the most pressing concern is that the Office's recent disclosures serve as yet another basis for granting the pending motions to adjourn the May 9, 2024, deadline for CIPA § 5 Notice and expert notice. *See* ECF Nos. 452, 461.[1]

**I.   Background**

At approximately 3:30 pm on the afternoon of Friday, May 3, 2024, the Special Counsel's Office disclosed to the Court and the Defendants that the prosecution team has failed to maintain the integrity of the contents of at least some of the boxes obtained from Mar-a-Lago. *See* ECF No.

---

[1] As noted below, we sought to confer with the Special Counsel's Office regarding these issues by letter dated May 4, 2024. On May 5, 2024, the Office confirmed that they continue to oppose the pending adjournment request and will respond to our discovery requests "promptly." We are filing this Sur-Reply in any event because President Trump is currently participating in proceedings in *People v. Trump*, Ind. No. 71543-23, and in light of the impending hearing on May 8, 2024, as well as the upcoming deadlines on May 9, 2024, which are the subject of other pending motions.

522.  Using a dismissive and condescending tone to address serious contentions relating to these issues raised by Waltine Nauta, the Office admitted that "there are some boxes where the order of items within that box is not the same as in the associated scans." *Id.* at 8.  The Office then attempted to bury in a footnote their concession that **the disclosure is "inconsistent with what Government counsel previously understood and represented to the Court."** *Id.* at 8 n.3. (emphasis added).  Although the Office cited to an apparent misrepresentation at the April 12, 2024, conference, the Office has repeatedly—"essentially from day one," 7/18/23 Tr. 62— provided full-throated but now concededly false assertions of compliance with their discovery obligations.

Moreover, the May 3, 2024, submission by the Special Counsel's Office contains several vague assertions that only raise more questions regarding the Office's failure to maintain the integrity of the evidence in the boxes.  For example, the Office indicated for the first time that the "filter team" was "not focused on maintaining the sequence of documents within each box." ECF 522 at 6.  That concession alone implicates every box at issue, as well as the "scans." *Id.* at 8.  The gravity of these issues is illustrated by the fact that the Office now claims that the "best evidence available" of the boxes' contents are *scans prepared by "an outside vendor"* in connection with a civil case that lacked the constitutional, statutory, and ethical safeguards that guide discovery obligations in this criminal case.  *Id.* at 7, 8.

Regarding the so-called "cover sheets" that the prosecution team used as replacements for allegedly classified documents in the boxes, the Special Counsel's Office wrote that the FBI "generally" had "replaced the handwritten sheets with classified cover sheets annotated with the index code." ECF No. 522 at 7.  But the Office did not explain why they could not offer a precise, categorical representation about the process that was used instead of a "general" one.  *See id.*  The

Office also admitted that in "many *but not all* instances, the FBI was able to determine which document with classification markings corresponded to a particular placeholder sheet." *Id.* (emphasis added). This further suggests that even if the scans are the "best evidence available," they are not a reliable record of the boxes' contents. The "not all" caveat is, however, consistent with the recent and inexplicable disclosure that the "filter team" was "not focused" on the order of documents in the boxes that are at the heart of this case. *Id.* at 6.

On May 4, 2024, counsel for President Trump sent a letter with discovery requests relating to these issues to the Special Counsel's Office, which is attached hereto as **Exhibit A**. The Office responded on May 5, indicating that they continue to oppose our request for an adjournment of the May 9 deadlines—notwithstanding the recent disclosures and that President Trump and counsel have been at a criminal trial in Manhattan since April 15, 2024—and that they will respond to our discovery requests "promptly."

**II.   Discussion**

President Trump and counsel are deeply troubled to be learning of these facts approximately 11 months after the charges were filed in this case. The May 3, 2024, disclosures by the Special Counsel's Office raise questions about the investigation and the handling of evidence that must be addressed before the matter proceeds.

During the review of discovery and preparation of pretrial motions, President Trump's counsel had relied on the scans and believed that the location of allegedly classified documents within the boxes was exculpatory. Indeed, it was our understanding that most, and potentially all, of the charged documents were buried within the boxes and located next to other items that provided favorable context regarding, *inter alia*, when the document was placed in a box. It never occurred to us, until last Friday, that the prosecution team could not be trusted to perform the basic

3

task of maintaining the integrity of such evidence despite the expansive resources at their disposal. That is why President Trump's defense team has not inspected the boxes up to this point and instead focused on other aspects of our defense in motion practice and discovery review.

Under *Brady*, the Special Counsel's Office had, and continues to have, an independent obligation to promptly make complete disclosures regarding the failure to maintain the sequence of the documents within the boxes at the time they were collected. *See Kyles v. Whitley*, 514 U.S. 419, 442 n.13 (1995) ("There was a considerable amount of . . . *Brady* evidence on which the defense could have attacked the investigation as shoddy."). These issues implicate, for example, President Trump's motion to suppress evidence seized from Mar-a-Lago and the motion to dismiss based on prosecutorial misconduct. President Trump will move to compel further disclosures regarding these issues in the event the Office does not turn over the materials sought in the May 4, 2024, letter. Moreover, after those further required disclosures, it is likely that President Trump will file additional motions for sanctions based on spoliation, including a motion to dismiss the charges if the Office cannot prove in a reliable way how it seized and handled the key evidence in the case, which will be a central issue at any trial.

Finally, these issues are relevant to President Trump's CIPA § 5 Notice and decisions regarding potential experts. Our review of classified discovery, including interviews regarding handling of classified documents during and after President Trump's first term, was undertaken without the information in the May 3, 2024, disclosure. Defense counsel cannot reasonably be expected to specify classified information that they intend to offer at trial when the Office recently disclosed that one of the most basic premises of the criminal justice process—that the prosecution team can be trusted to maintain existing evidence—no longer applies. For example, if the case proceeds to trial or evidentiary hearings, President Trump will now seek to use classified

4

information to cross-examine witnesses regarding appropriate procedures for handling classified information in connection with briefings and evidence in connection with investigations. Defense counsel will also need to re-review the classified discovery, among other things, to consider new defenses and potential expert notice based on these disclosures, such as defenses and experts that focus on the chain-of-custody and search-execution deficiencies. In addition to all of the other valid reasons to adjourn the May 9, 2024, deadlines, some of which have constitutional implications,[2] the Office's recent disclosures regarding the mishandling of the contents of the boxes and prior misrepresentations to the Court require that the deadline be held in abeyance.

---

[2] The trial in *People v. Trump*, Ind. No. 71543-23, is proceeding as scheduled. President Trump has been present for each trial day since April 15, 2024, and has not been able to participate in any of the classified communications that would be necessary to provide CIPA § 5 Notice or expert notice on May 9, 2024. Nor have Mr. Blanche and Mr. Bove, who are both representing President Trump at the trial in New York.

Dated: May 6, 2024

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
Lazaro Fields
Florida Bar No. 1004725
lfields@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on May 6, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise