**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON(s)**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA**, **and**
**CARLOS DE OLIVEIRA,**

      Defendants.

_____/

**GOVERNMENT'S MOTION FOR MODIFICATION**
**OF CONDITIONS OF RELEASE**

The Government moves to modify defendant Donald J. Trump's conditions of release, to make clear that he may not make statements that pose a significant, imminent, and foreseeable danger to law enforcement agents participating in the investigation and prosecution of this case. The Government's request is necessary because of several intentionally false and inflammatory statements recently made by Trump that distort the circumstances under which the Federal Bureau of Investigation planned and executed the search warrant at Mar-a-Lago. Those statements create a grossly misleading impression about the intentions and conduct of federal law enforcement agents—falsely suggesting that they were complicit in a plot to assassinate him—and expose those agents, some of whom will be witnesses at trial, to the risk of threats, violence, and harassment. The Court has an "independent obligation to protect the integrity of this judicial proceeding," ECF

No. 101, and should take steps immediately to halt this dangerous campaign to smear law enforcement.[1]

As Trump is well aware, the FBI took extraordinary care to execute the search warrant unobtrusively and without needless confrontation: they scheduled the search of Mar-a-Lago for a time when he and his family would be away; they planned to coordinate with Trump's attorney, Secret Service agents, and Mar-a-Lago staff before and during the execution of the warrant; and they planned for contingencies—which, in fact, never came to pass—about with whom to communicate if Trump were to arrive on the scene.

As part of this planning, the FBI used a form that contains standard and unobjectionable language setting out the Department of Justice's use-of-force policy, which prohibits the use of deadly force except "when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person." ECF No. 566-3 at 11. The inclusion of that policy is routine practice to *restrict* the use of force, and it is attached to countless warrants across the country. Moreover, as Trump is well aware, no force was used or threatened in executing the Mar-a-Lago search warrant: as planned, the FBI executed the search warrant in a professional and cooperative manner, at a time when Trump and his family were out of the state.

Trump, however, has distorted the standard inclusion of the policy limiting the use of deadly force by mischaracterizing it as a claim that that the FBI "WAS AUTHORIZED TO SHOOT ME," was "just itching to do the unthinkable," and was "locked & loaded ready to take

---

[1] The Government contacted the Probation Office to ascertain its position on the relief the Government seeks. The Probation Office advised that because Trump was released on a bond that does not have pretrial supervision as a special condition, that office is not supervising him and it would be outside the scope of the office's authority to take a position on this motion without a request from the Court.

me out & put my family in danger."  Exhibit 1.  These deceptive and inflammatory claims expose the law enforcement professionals who are involved in this case to unjustified and unacceptable risks:  they invite the sort of threats and harassment that have occurred when other participants in legal proceedings against Trump have been targeted by his invective.  Those risks have the potential to undermine the integrity of the proceedings as well as jeopardize the safety of law enforcement.  The Court has previously underscored its "independent obligation to protect the integrity of this judicial proceeding," ECF No. 101.  And the Court has the power and responsibility to "impose additional or different conditions of release," 18 U.S.C. § 3142(c)(1)(B)(xiv), that are "reasonably necessary to . . . assure the safety of any other person and the community."  18 U.S.C. § 3142(c)(3).  A condition of release that prohibits the defendant from making statements posing a significant, imminent, and foreseeable danger to law enforcement agents participating in the investigation and prosecution of this case is warranted and necessary here.  Such a prohibition will also minimize further prejudice caused by the defendant directing false and inflammatory messages regarding the facts of this case to potential jurors who may be summoned by the Court for jury service in this matter.

## BACKGROUND

As explained in more detail in other filings, *see, e.g.*, ECF No. 567 at 1-5, the Government applied for a warrant to conduct a search of Mar-a-Lago for documents with classification markings, and a United States Magistrate Judge in this district granted the application and issued the warrant on August 5, 2022.  The Magistrate Judge found probable cause that evidence of three crimes—willful retention of national defense information (18 U.S.C. § 793), concealment or removal of government records (18 U.S.C. § 2071), and obstruction of a federal investigation (18 U.S.C. § 1519)—would be found at Mar-a-Lago.

In preparation for the execution of the search warrant, the FBI created a Law Enforcement Operations Order, using an FD-888 form, as is typical in every case.  *See* ECF No. 566-3 ("Operations Form").  The FBI planned to execute the search warrant as unobtrusively as possible, communicating and coordinating with Trump's representatives throughout the time they were at his premises.  *See id.* at 9-11.  The FBI chose a date—August 8, 2022—during Mar-a-Lago's offseason when neither Trump nor his family would be in Florida.  Under the plan that the FBI prepared, prosecutors and agents would "contact [Trump's] retained counsel" before the warrant was executed, "to notify him of the search warrant and request collaboration and assistance." *Id.* The FBI would then coordinate with the U.S. Secret Service and, if necessary, with Mar-a-Lago guest services, "to ensure a fulsome understanding of spaces occupied as designated in the search warrant." *Id.* at 9; *see also id.* at 11 (section on "Coordinating Instructions," listing plans to coordinate with "USSS and other LE Agencies" and "MAL Security and Staff (execution occurs during off-season date range)").  In the section of the Operations Form addressing contingencies, the FBI noted that if, contrary to expectations, Trump and the Secret Service were to arrive at Mar-a-Lago while the search warrant was being executed, FBI management would be prepared to "engage with" points of contact with the Secret Service "per existing liaison relationships." *Id.* at 12.

FBI policy requires that special agents "must be armed when on official business," unless "dictated by operational necessity," and are "encouraged to be armed at all times." *See FBI Firearms Policy Guide* 7 (June 22, 2017).[2]  In keeping with that policy, the Operations Form provided that the FBI agents who conducted the search would carry "Standard Issue Weapon[s]" and be attired in "[b]usiness casual with unmarked polo or collared shirts and law enforcement

---

[2] https://vault.fbi.gov/firearms-policy-0888pg/firearms-policy-0888pg-part-01-of-01.

equipment concealed." *Id.* at 12.  The Operations Form also included a section—again, standard in every case—entitled "Policy Statement Use of Deadly Force (7/19/2022)."  *Id.* at 11 (capitalization altered).  That section stated, among other things, that "[l]aw enforcement officers of the Department of Justice may use deadly force only when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person."  *Id.*  The policy statement further provides that "[o]fficers should seek to gain voluntary compliance before using force if feasible and if doing so would not increase the danger to the officer or others."  *Id.*  This language repeated general FBI policy for use of deadly force.  *See, e.g.*, https://www.fbi.gov/about/faqs/what-is-the-fbis-policy-on-the-use-of-deadly-force-by-its-special-agents ("FBI special agents may use deadly force only when necessary—when the agent has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the agent or another person.").

The FBI executed the warrant as planned on August 8, 2022.  *See* ECF No. 566-3 at 24. "Prior to the Federal Bureau of Investigation (FBI) team's entry onto the [Mar-a-Lago] premises, FBI leadership informed and coordinated with local United States Secret Service (USSS) leadership."  *Id.*  And "[l]ocal USSS facilitated entry onto the premises, provided escort and access to various locations within, and posted USSS personnel in locations where the FBI team conducted searches."  *Id.*  The FBI also contacted Trump's attorney before beginning the search of the premises.  *Id.*  As anticipated, neither Trump nor any of his family members were present at the time of the search.  At no point were any weapons drawn.

After the grand jury issued the indictment in this case, the Government produced the warrant and the Operations Form to Trump and the other defendants in discovery.  There was nothing unusual about the use of an Operations Form containing the Department's policy statement

on the use of deadly force.  To the contrary, the same form, containing the same policy statement, is regularly used in searches throughout the country.

On February 22, 2024, Trump filed under seal a motion to suppress evidence obtained through the search of Mar-a-Lago.  *See* ECF No. 566.  In setting forth what he described as the relevant facts, Trump stated that the Operations Form "contained a 'Policy Statement' regarding 'Use Of Deadly Force,' which stated, for example, 'Law enforcement officers of the Department of Justice may use deadly force when necessary [sic] . . . .'"  *Id.* at 4.  Although Trump included the warrant and Operations Form as exhibits to his motion, the motion misquoted the Operations Form by omitting the crucial word "only" before "when necessary," without any ellipsis reflecting the omission.  The motion also left out language explaining that deadly force is necessary only "when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person."  *Compare* ECF No. 566-3 at 11 *with* ECF No. 566 at 6.  Notwithstanding the misleading characterization of the use-of-force provision when describing the search, the motion did not seek suppression based on the policy, claim that the agents had acted inappropriately in following that standard protocol, or otherwise rely on the policy as part of the argument.  *See* ECF No. 566 at 12-13.

On May 21, 2024, Trump filed a redacted version of his suppression motion and exhibits on the public docket.  *See* ECF No. 566.  The same day, Trump publicly claimed that he was just "shown Reports that Crooked Joe Biden's DOJ, in their illegal and UnConstitutional Raid of Mar-a-Lago, AUTHORIZED THE FBI TO USE DEADLY (LETHAL) FORCE."  Exhibit 1.  Trump also sent an email stating that the government "WAS AUTHORIZED TO SHOOT ME," was "just itching to do the unthinkable," and was "locked & loaded ready to take me out & put my family in danger."  Exhibit 2.  On May 23, Trump publicly claimed that, "[s]hockingly," the Department

of Justice "authorized the use of 'deadly force' in their Illegal, UnConstitutional, and Un-American RAID of Mar-a-Lago, and that would include against our Great Secret Service, who they thought might be 'in the line of fire.'"  Exhibit 3.[3]  Predictably and as he certainly intended, others have amplified Trump's misleading statements, falsely characterizing the inclusion of the entirely standard use-of-force policy as an effort to "assassinate" Trump.  *See* Exhibit 4.

### DISCUSSION

The Court should modify Trump's conditions of release to "reasonably assure . . . the safety of any other person or the community," 18 U.S.C. § 3142(c), and to implement the Court's "independent obligation to protect the integrity of this judicial proceeding," ECF No. 101. Professional law enforcement officers and agents in this country put their lives on the line every day in carrying out their duties to enforce the law.  When executing court-authorized warrants, those professionals face many uncertainties and potentially grave risks.  To minimize the threat of harm to law enforcement professionals and civilians, agents plan carefully for all contingencies. They also follow standard policies and protocols, including the prohibition on using deadly force except when necessary.  The FBI followed these entirely standard and appropriate practices here.

Trump, however, has grossly distorted these standard practices by mischaracterizing them as a plan to kill him, his family, and U.S. Secret Service agents.  Those deceptive and inflammatory assertions irresponsibly put a target on the backs of the FBI agents involved in this case, as Trump well knows.  Indeed, Trump "himself recognizes the power of his words and their effect on his

---

[3] On May 24, Trump continued to issue false statements smearing and endangering the agents who executed the search.  *See* https://truthsocial.com/@realDonaldTrump (on May 24, "reTruthing" statement claiming that the FBI was authorized to use "'Lethal Force' on Trump or anyone at MAL – WHILE the FBI/DOJ plants evidence to frame Trump!!!").  Even the day after this motion was publicly filed (the first time, on May 24), Trump continued to post deceptive and inflammatory assertions.  Exhibit 5.

audience, agreeing that his supporters 'listen to [him] like no one else.'" *United States v. Trump*, 88 F.4th 990, 1012 (D.C. Cir. 2023) (quoting Transcript of CNN's Town Hall with Former President Donald Trump, CNN (May 11, 2023)).  And his "documented pattern of speech and its demonstrated real-time, real-world consequences," *id.*, have often posed significant, imminent, and foreseeable threats to witnesses, particularly where, as here, they include deceptive and inflammatory claims.  *See id.* at 1010-12 (collecting examples of Trump's inflammatory statements and resulting threats).  Those risks have justified restrictions on Trump's extrajudicial speech in other proceedings precisely to prevent threats, harassment, and other harms that undermine judicial proceedings.  *See id.* at 1010-19.  Indeed, an armed attack on an FBI office in Cincinnati, Ohio, was carried out by one of his supporters in the wake of Trump's Truth Social statements inflaming his supporters regarding the search of Mar-a-Lago.[4]

Under the Bail Reform Act, a "judicial officer shall issue an order that, pending trial, the [defendant] be" either released on personal recognizance or an unsecured bond, 18 U.S.C. § 3142(a)(1), released "on a condition or combination of conditions under subsection (c)," *id.* § 3142(a)(2), temporarily detained pending revocation, deportation, or exclusion, *id.* § 3142(a)(3), or detained, *id.* § 3142(a)(4).  Here, Trump was released on conditions under subsection (c).  ECF No. 17.

---

[4] *See* FBI Cincinnati Statement, August 11, 2022, available at https://www.fbi.gov/contact-us/field-offices/cincinnati/news/press-releases/fbi-cincinnati-statement-081122; *see also* Meryl Kornfield, Spencer S. Hsu, & James Bikales, *Gunman killed after trying to breach FBI office in Ohio, authorities say*, Wash. Post, Aug. 11, 2022, https://www.washingtonpost.com/nation/2022/08/11/fbi-building-breach-armed/; Paul P. Murphy, Josh Campbell, & Brynn Gingras, *Account bearing Ohio FBI standoff suspect's name encouraged violence against the agency in posts on Trump social media platform*, CNN, Aug. 12, 2022, https://www.cnn.com/2022/08/11/us/ricky-shiffer-purported-social-media-posts/index.html.

Subsection (c) provides that, if a person is released on conditions, the "judicial officer shall order the pretrial release of the person" subject to (1) "the condition that the person not commit a Federal, State, or local crime during the period of release," and (2) "the least restrictive further condition, or combination of conditions that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(A), (B).  The statute then lists several "further condition[s]" that the release order "may include."  As relevant here, those further conditions include that the defendant "satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community," *id.* § 3142(c)(1)(B)(xiv).  Subsection (c) further provides that "[t]he judicial officer may at any time amend the order to impose additional or different conditions of release."  *Id.* § 3142(c)(3).

The Court should exercise its authority to impose a condition that Trump may not make public statements that pose a significant, imminent, and foreseeable danger to the law enforcement agents participating in the investigation and prosecution of this case.  Whether a particular statement meets that test "must be determined by reference to the statement's full context."  *Trump*, 88 F.3d at 1025.  But that condition would clearly prohibit further statements deceptively claiming that the agents involved in the execution of the search warrant were engaged in an effort to kill him, his family, or Secret Service agents.  As such, the condition is "sufficiently clear and specific to serve as a guide for the person's conduct," 18 U.S.C § 3142(h)(1), and it "gives sufficient warning that [he] can conform [his] conduct to the law and avoid that which is forbidden," *Trump*, 88 F.3d at 1024 (quotation marks omitted).

This modification would also fully comport with the First Amendment.  "Like any other criminal defendant, Mr. Trump has a constitutional right to speak," and "his millions of supporters,

as well as his millions of detractors, have a right to hear what he has to say." *Id.* at 1007. "Also like any other criminal defendant, Mr. Trump does not have an unlimited right to speak." *Id.* To the contrary, pretrial release conditions "commonly include measures that burden criminal defendants' ability to act, associate, and speak." *Id.* at 1006. For example, the restriction that a defendant "avoid all contact . . . with a potential witness who may testify concerning the offense," 18 U.S.C. § 3142(c)(1)(B)(v), "is so commonplace that Mr. Trump does not dispute the court's authority to have ordered him, as a condition of pretrial release, not to communicate with witnesses except in the presence of counsel." *Trump*, 88 F.4th at 1013.

Courts overseeing criminal cases must also "take such steps by rule and regulation that will protect their processes from prejudicial outside interferences." *Sheppard v. Maxwell*, 384 U.S. 333 (1966). Prejudicial outside interferences can include pretrial statements by participants in a criminal case, which may be restricted when, as here, they pose a "substantial likelihood of material prejudice" to the proceedings. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991). And even if a "more demanding" level of scrutiny were to apply, the proposed condition of release would be entirely permissible because it reaches only statements that pose a "significant and imminent threat to the administration of criminal justice." *Trump*, 88 F.4th at 1008. Trump "cannot evade" this "legitimate limitation by dressing up" inflammatory messages such as these "in political-speech garb." *Id.* at 1016. Moreover, because the sorts of foreseeably endangering statements covered by the proposed condition cannot be remedied through measures like *voir dire*, "[n]o less-speech-restrictive alternative could viably protect against" the significant harms created by this aspect of Trump's speech. *Id.* at 1017.

**CONCLUSION**

The law enforcement agents participating in this case conducted the search in an appropriate and professional manner, subject to the Department of Justice's standard use-of-force policy. Trump's repeated mischaracterization of these facts in widely distributed messages as an attempt to kill him, his family, and Secret Service agents has endangered law enforcement officers involved in the investigation and prosecution of this case and threatened the integrity of these proceedings. A restriction prohibiting future similar statements does not restrict legitimate speech. Trump's conditions of release should therefore be modified to prohibit similar communications going forward.

<div style="margin-left:40%">

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:    /s/ *Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

</div>

May 31, 2024

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on May 29, 2024, counsel for the Government and defendant Trump conferred telephonically about the relief the Government seeks in this Motion and communicated further via email on May 30 and 31.  Government counsel have conferred in a good faith effort to resolve the issues raised in the motion, but were unable to do so.  Counsel for defendant Trump agreed that no further conferral was necessary and requested that the following statement be included here:

> "President Trump opposes the motion.  As an initial matter, we do not believe that the Court or the defense should have to address the significant and complex constitutional issues presented by this motion until Pretrial Services has provided its views about whether such a condition is necessary to meet the purposes of the Bail Reform Act and how such a condition would be enforced.  President Trump respectfully requests that the Court direct Pretrial Services to provide that input to the parties as soon as is practicable.  On the merits, President Trump's position is that the requested modification is a blatant violation of the First Amendment rights of President Trump and the American People, which would in effect allow President Trump's political opponent to regulate his campaign communications to voters across the country.  We seek the customary two weeks to respond to the motion, and we respectfully request that the defense opposition deadline run from the time at which the parties and the Court receive the requested information from Pretrial Services."

/s/ *Jay I. Bratt*
Jay I. Bratt

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves all counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt