# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



| | |
|---|---|
| IN RE GRAND JURY SUBPOENA NO. GJ 2022042790054 | Case No. █████ (JEB)  Under Seal |
| IN RE GRAND JURY NO. 22-3 SUBPOENA 63-13 (SEP. 16, 2022) | Case No. █████ (JEB)  Under Seal |
| IN RE GRAND JURY SUBPOENA GJ2022090894633 | Case No. █████ (JEB)  Under Seal |
| IN RE GRAND JURY SUBPOENA GJ42-17 AND GJ42-69 | Case No. █████ (JEB)  Under Seal |
| IN RE GRAND JURY SUBPOENAS | Case No. █████ (JEB)  Under Seal |

### MEMORANDUM OPINION

Following a grand-jury investigation that began in this district, former President Donald Trump and his aide Waltine Nauta were ultimately indicted in the Southern District of Florida for unlawfully retaining classified documents and obstructing the ensuing federal investigation. In the hope of uncovering additional material that might advance his legal defense, Nauta has now petitioned this Court to disclose and transfer the records of all grand-jury matters related to

1

that investigation to the Florida court presiding over his case, including five specific matters enumerated in his Motion. Because that request is patently overbroad — and he has not made a sufficient showing of need as to each enumerated matter — the Court will deny the Motion.

**I.      Background**

The Court begins with two minor housekeeping matters. First, although the parties' briefs have been filed in each of the above-captioned dockets, this Opinion, for the sake of simplicity, cites only the copies filed in Case No. ▮▮▮▮. Second, Nauta at one point cites Case No. ▮▮▮▮, see ECF No. 42 (Mot.) at 9, which is wholly unrelated to his Motion. The Court will assume, as the Government does, that he means ▮▮▮▮.

In April 2022, a grand jury was convened in the District of Columbia to investigate the "unlawful retention of national defense information by former president Donald J. Trump and obstruction of justice by both Trump and Waltine Nauta." ECF No. 44 (Gov't Response) at 3. On June 8, 2023, another grand jury in the Southern District of Florida returned a 38-count indictment against both defendants. Nauta was charged with conspiring to obstruct justice, withholding and concealing classified documents, and lying to the FBI. See United States v. Trump, No. 23-cr-80101 (S.D. Fla.), ECF Nos. 3 (Indictment) & 85 (Superseding Indictment). Nauta has since filed a motion to compel discovery and motion to dismiss the indictment for selective and vindictive prosecution, both of which remain pending. See Mot. at 2.

Believing that the grand-jury proceedings in this district are "directly relevant" to those motions, Nauta filed the instant Motion for Disclosure and Transfer on April 10, 2024. Id. at 6. It seeks the transfer of all "grand jury proceedings related to the investigation of former President Trump" to the Florida district court presiding over the indictment. Id. This Court infers that Nauta means that he wants the records of such proceedings since the proceedings themselves

have terminated. Such transfer would then allow the Florida court to consider whether any of those materials should be disclosed to the defendants. Id. The Motion also enumerates what Nauta believes to be a "comprehensive" list of the relevant pre-indictment grand-jury proceedings in this district, the descriptions of which are not contested by the Government:

1. The proceeding by which the prosecutors "obtained an Order permitting the disclosure of Mr. Nauta's grand jury testimony to defense counsel," which he styles "In re Grand Jury No. 22-4" for want of the actual case name and number, see Mot. at 6–7;
2. Case No. ▮▮▮▮, in which they obtained an immunity order compelling ▮▮▮▮ ▮▮▮▮ to appear before the grand jury;
3. Case Nos. ▮▮▮▮ and ▮▮▮▮, in which they obtained an order compelling ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ compliance with a grand-jury subpoena;
4. Case No. ▮▮▮▮, in which they obtained an order piercing the attorney-client privilege and compelling the former president's lawyers to testify before the grand jury; and
5. Case No. ▮▮▮▮, in which they obtained an order compelling Trump to produce additional documents in his possession bearing classification markings.

See Mot. at 6–10. Nauta makes clear, however, that the request encompasses any other relevant grand-jury matters of which he is presently unaware. Id. at 6 (requesting that Court provide Nauta with list of relevant matters or else docket the Motion in "every proceeding related to the investigation of former President Trump").

In opposing this request, the Government spills much ink on disputing Nauta's theory of vindictiveness underlying the motion to dismiss. See Gov't Response at 27–34. Although Nauta himself does not fully articulate what that theory is in the current Motion, the Government explains that it rests partly on his belief that prosecutors have pursued a vendetta against both

him and his counsel, Stanley Woodward, because Nauta declined to serve as a cooperating witness. Id. at 27. Among the accusations lobbed in support of this claim is that prosecutors, in a pre-indictment meeting with Woodward, implied that Nauta's non-cooperation might jeopardize Woodward's prospects of being nominated to the D.C. Superior Court. Id. at 28 & n.23; see also United States v. Trump, No. 23-cr-80101 (S.D. Fla.), ECF No. 487 (Reply in Support of Motion to Dismiss) at 4. The Government contends that this narrative is both factually unfounded and legally insufficient (because animus toward counsel is not a cognizable basis for a vindictive-prosecution claim). See Gov't Response at 27–34.

While the Government may well be correct, the Court is not inclined to wade any further into this dispute. That is because the instant Motion for Disclosure can be expediently resolved on other grounds.

## II. Analysis

As the Supreme Court has recognized, "[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218 (1979). Such secrecy safeguards the interests of, among others, witnesses, who may hesitate to testify "fully and frankly," if at all; grand jurors, who may be subjected to retribution or inducements; and persons accused but exonerated, who may otherwise be "held up to public ridicule." Id. at 219. Federal Rule of Criminal Procedure 6(e)(2)(B), accordingly, bars the disclosure of matters occurring before a grand jury by certain enumerated persons (with exceptions). This includes "the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." In re Motions of Dow Jones & Co., 142 F.3d 496, 500 (D.C. Cir. 1998) (cleaned up).

The grand jury's business may also call for "judicial proceedings relating to," but "at arm's length" from, that body, including the resolution of a grand-jury witness's "motion to . . . quash [a] subpoena" or her invocation "of a testimonial privilege." Dow Jones & Co. (Dow Jones I), 142 F.3d 496, 498 (D.C. Cir. 1998). Records of such proceedings ancillary to the grand jury's work are not themselves subject to grand-jury secrecy but are governed by Rule 6(e)(6), which requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Such records (which appear to be at issue here) may only be disclosed upon a finding that their continued sealing is no longer needed to safeguard grand-jury secrets, see Local Crim. R. 6.1, or that an exception under Rule 6(e)(3) applies. See In re New York Times Co., 657 F. Supp. 3d 136, 155, 158 (D.D.C. 2023), vacated on other grounds sub nom. In re Cheney, 2024 WL 1739096 (D.C. Cir. Apr. 23, 2024).

Here, given the Government's opposition to disclosure of any records beyond what is already in Nauta's possession, and Nauta's silence on the matter, the necessity of continued sealing appears to be uncontested. Rather, Nauta seems to rely exclusively on the exception under Rule 6(e)(3)(E)(i), which permits courts to authorize disclosure of "a grand jury matter . . . preliminarily to or in connection with a judicial proceeding."

Instead of making an affirmative case to this Court as to why the requested materials should be disclosed to him, however, he argues that they must be transferred to Florida for that court to address the issue, which he believes it is in a better position to do. See Mot at 5; ECF No. 45 (Reply) at 1–2. The questions presented, then, are whether the Court should transfer the requested materials so that the Florida court may analyze whether the Motion satisfies the

requirements for disclosure under the judicial-proceeding exception, and, if not, whether the Motion in fact satisfies such requirements. The Court probes those issues sequentially.

A. Transfer

The transfer procedure laid out in Rule 6(e) is simple enough: "A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened." Fed. R. Crim. P. 6(e)(3)(F). If, however, such petition seeks materials that are needed for "a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper." Fed. R. Crim. P. 6(e)(3)(G). In transferring the petition, the grand-jury court "must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand-jury secrecy." Id.

As best the Court can discern from Nauta's briefing (which is at times internally inconsistent), he interprets this language to mean that the Court must transfer the requested materials to Florida — automatically — simply because that is where his indictment pends. See Reply at 2 (Rule 6(e) cannot "be read as even suggesting that [this Court] may decide whether disclosure of grand jury materials is warranted"); but see id. (suggesting that the Court "could conclude that [Nauta] has a 'particularized need'" and disclose the grand-jury materials to him outright). Such a reading has no basis in the text or purpose of Rule 6(e)(3)(G).

The Rule reflects a concern, articulated by the Supreme Court in Douglas Oil, that, when the judicial proceeding is occurring elsewhere, the petitioned court "will have no firsthand knowledge of the litigation in which the transcripts allegedly are needed, and no practical means by which such knowledge can be obtained." 441 U.S. at 226. Such a court, venturing beyond its expertise, may disclose more material than warranted, resulting in an "unnecessary breach of

grand jury secrecy." Id. at 229. But the Supreme Court also recognized that "there will be cases in which the court to whom the Rule 6(e) request is directed will be able intelligently, on the basis of limited knowledge, to decide that disclosure plainly is inappropriate." Id. at 231; Matter of Grand Jury Investigation, 2019 WL 13160140, at *4 (D.D.C. Oct. 30, 2019) (declining to transfer in such a scenario).

Indeed, that caveat is expressed in the language of the Rule. See Fed. R. Crim. Pro. 6(e)(3)(G) (transfer required "unless the petitioned court can reasonably determine whether disclosure is proper") (emphasis added); see also Fed. R. Crim. Pro. 6, Notes of Advisory Comm. on Rules, 1983 Amendment (highlighting that language and noting that it "expresses a preference for having the disclosure issue decided by the grand jury court" whenever possible).

In short, transfer is not automatic. At a minimum, Nauta must make some threshold showing to this Court that disclosure "might be appropriate." Douglas Oil, 441 U.S. at 230. As explained below, however, it plainly is not.

B. Disclosure

To trigger the judicial-proceeding exception, a party seeking grand-jury materials must meet two requirements. The first is to show, as the Rule states, that the sought-after information is needed for some purpose that is preliminary to or in connection with another judicial proceeding. See Fed. R. Crim. P. 6(e)(3)(E)(i). The second — not apparent from the Rule itself but well established in caselaw — is a showing of "particularized need." United States v. Baggot, 463 U.S. 476, 480 (1983). "The two requirements, though related in some ways, are independent prerequisites to . . . disclosure." Id. (cleaned up). The "judicial proceeding" requirement imposes a "criterion governing the kind of need that must be shown," while the "particularized need test is a criterion of degree." Id.

7

The latter, more specifically, requires the party to show that the information "is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the[] request is structured to cover only material so needed." Douglas Oil, 441 U.S. at 222. This standard is "highly flexible . . . and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." United States v. Sells Eng'g, 463 U.S. 418, 445 (1983). Although the party seeking disclosure must show "with particularity" why it needs the information, see United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958), it will face a "lesser burden" as "the considerations justifying secrecy become less relevant." Douglas Oil, 441 U.S. at 223.

In assessing whether the foregoing standards are met, the Court considers first Nauta's broad request for disclosure of all grand-jury matters. It then examines whether they are satisfied as to any of the five specific matters listed in the Motion.

### 1. *All Grand-Jury Matters*

Insofar as Nauta seeks disclosure of all grand-jury dockets and entries related to the classified-documents investigation, the Court finds that this would be inappropriate because the request is not "structured to cover only material so needed." Id. at 222. He does not ever argue that all such materials would be relevant to his pending motion for discovery or motion to dismiss. Nor could he, because his request extends to matters he knows nothing about. Rather, he imagines that upon transfer to Florida, the court presiding over his criminal case would sift through the records docket by docket and entry by entry, plucking out whatever material it deems relevant to his defense. See Reply at 3 (Florida court could "make a determination as to which proceedings should be disclosed") (emphasis added). Alternatively, if his request is not transferred, presumably he envisions this Court undertaking that task. There is a name for such a

venture: a fishing expedition. And Rule 6(e)'s grand-jury secrecy provisions forbid it. See, e.g., United States v. Sutton, 2023 WL 5827718, at *13 (D.D.C. Sept. 8, 2023) (rejecting request for grand-jury documents as "no more than a 'fishing expedition' for material that confirms [defendant's] theory about the insufficiencies in the government's case"); cf. United States v. Wilkerson, 656 F. Supp. 2d 22, 35 (D.D.C. 2009) ("A general claim that disclosure of grand jury transcripts would reveal exculpatory evidence is not sufficient to satisfy the requirement of a showing of particularized need.") (cleaned up), aff'd, 966 F.3d 828 (D.C. Cir. 2020).

In some ways this request mirrors the sweeping petition for disclosure filed by the Government and rejected by this Court's predecessor in In re Capitol Breach Grand Jury Investigations Within D.C., 339 F.R.D. 1 (D.D.C. 2021). There, in the course of investigating the insurrection at the United States Capitol on January 6, 2021, the Government collected "massive amounts" of electronic data on defendants by issuing thousands of grand-jury subpoenas. Id. at 3. To aid in the processing and review of this voluminous material, it retained an independent contractor and sought an order authorizing disclosure of those materials to that contractor (partly based on the judicial-proceeding exception). Id. at 3–4. In concluding that the Government had failed to show particularized need, the court raised the overbreadth of the request as a sufficient reason (among others) to reject it: "A 'blanket request' for disclosure of all grand jury materials even in a single case 'cannot be described as the kind of particularized request required for the production of otherwise secret information' because 'the breadth' of such requests necessarily 'makes it virtually impossible for [movants] to demonstrate that each of hundreds [or here, thousands] of sought-after grand-jury items' must be disclosed." Id. at 28 (quoting United Kingdom v. United States, 238 F.3d 1312, 1321 (11th Cir. 2001)) (emphasis added). So too here.

9

### 2. *Five Specified Matters*

Even if the Court construed Nauta's request as seeking disclosure of only the dockets and entries in the five matters listed in his Motion, it would still be overbroad and deficient for additional reasons specific to each matter. First, as to the Government's petition for an order "permitting defense counsel's review of Mr. Nauta's grand jury testimony transcript," Mot. at 6–7, the Special Counsel explains that no such petition exists. See Gov't Response at 34. The transcript was erroneously disclosed to counsel without the Court's permission, and the Court was subsequently informed of the oversight. Id.

Second, as to ███████ grand-jury testimony (Case No. ███████), Nauta argues that he needs all relevant filings because they would evince an "aggressive posture taken by prosecutors" in response to Nauta's decision not to cooperate with their investigation — which in turn (he supposes) would corroborate his claims of vindictive or selective prosecution and other impropriety. See Mot. at 7. Nauta's counsel, Stanley Woodward, also represented ███ in this matter. The Government maintains that Woodward already possesses all of its filings in connection with his representation of ███, see Gov't Response at 35–36, and the Reply offers no reason why Woodward cannot refer to those materials in pressing Nauta's Florida motions. If there is an "aggressive posture" to be found, it will be located in the records he already holds.

Third, Woodward also represented ███████ in connection with his testimony before a grand jury. As further evidence of the Government's "aggressive posture" following Nauta's refusal to cooperate, Nauta seeks records of the proceedings by which the Government compelled ███ to testify. See Mot. at 7–8 (citing Case ███████ and ███████). In particular, he expects such records to reveal a "campaign of harassment of [Woodward] that began only following [his] indication that Mr. Nauta would not become a cooperating witness."

Id. at 8. ▮▮▮▮ testimony and the relevant dockets, however, relate exclusively to the election-fraud investigation (before a separate grand jury), which culminated in the other indictment of the former president, this time in this district. See United States v. Trump, No. 23-cr-257 (D.D.C.). It seems a stretch to argue that this would aid Nauta's vindictive-prosecution claim, given that Nauta is not a defendant in that matter. In addition, the bare fact that the Government moved to compel ▮▮▮▮ compliance with a lawful subpoena is not evidence of animus. Contra Mot. at 8. Nor is the Government's unwillingness to reschedule the testimony to accommodate Woodward's availability (following what the Government described as multiple attempts to set a date that went unanswered). See In re Grand Jury Subpoena, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is thus unclear why the filings in these dockets offer anything of relevance.

The fourth docket (Case No. ▮▮▮▮) involves a motion to pierce the attorney-client privilege and compel the testimony of two of Trump's lawyers regarding their and others' responses to a grand-jury subpoena for unlawfully retained documents bearing classification markings. In March of this year, the Government filed a petition for disclosure and transfer of certain information on this docket to the Southern District of Florida — viz., filings that the former president cited in a motion he had filed in the Florida case (and filings cited in the Government's opposition). See In re Grand Jury Subpoena GJ 42-17 and GJ 42-69, No. ▮▮▮▮ (D.D.C.), ECF No. 49. The Court transferred the petition along with a recommendation as to what information should remain under seal. Id., ECF No. 52. Nauta now takes issue with the fact that the Court did not transfer the "entirety of the [records of the] proceedings" (including ex parte submissions by Trump's counsel). See Mot. at 9.

11

Why he would need such materials remains a mystery. Nauta claims that they are "potentially" relevant to a motion that Trump filed in Florida to vacate the crime-fraud order. Id. He cannot, however, assert a need for records on behalf of his co-defendant — particularly when that co-defendant has not himself filed a motion for disclosure. See Powers v. Ohio, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). He also states in conclusory fashion that the Special Counsel's "investigative approach" in this matter would be "relevant to [his] claims of vindictive and/or selective prosecution." See Mot. at 9. But he offers no explanation as to how the withheld filings (particularly filings not authored by Government counsel) would bear on such an argument. Absent that explanation, disclosure is clearly unwarranted. Cf. Wilkerson, 656 F. Supp. 2d at 35 (finding particularized-need requirement unmet where criminal-defendant petitioner had not "properly linked the [grand-jury witness's] testimony to his statute of limitations defense").

The fifth docket (Case No. ▓▓▓▓▓) concerns a motion to compel Trump's compliance with a subpoena for additional documents with classification markings. Nauta claims that the filings in this docket would be relevant to his pending motion to compel because they might shed light on "the theory of the Special Counsel's Office . . . with respect to how documents with classification marking were found in the Storage Room [of Trump's Florida residence] after that room had been searched by [his] counsel." Mot. at 10. Pure speculation of this sort does not constitute particularized need. See United States v. Apodaca, 287 F. Supp. 3d 21, 47 (D.D.C. 2017) ("[W]here a defendant fails to provide a discrete reason, and instead relies on speculation or unsupported assumptions, courts have made clear that disclosure of grand jury minutes is not warranted."). Even if the filings on this docket contained such information, it is not apparent

what "possible injustice" would befall Nauta absent their disclosure. Douglas Oil, 441 U.S. at 222. As the Government notes, see Gov't Response at 39, the Florida court has already denied Nauta's motion for a bill of particulars seeking similar information because he is not legally entitled to it. United States v. Trump, No. 23-cr-80101 (S.D. Fla.), ECF No. 462 (Apr. 19, 2024, Order) at 4.

### III. Conclusion

Nauta, in short, has failed to demonstrate a particularized need for disclosure of the requested grand-jury materials, generally, or any of the individual dockets (and filings) he listed. The Court will therefore deny the Motion. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: May 15, 2024