UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*,

Defendants.

**Case No. 23-80101-CR
CANNON/REINHART**

**PRESIDENT DONALD J. TRUMP'S OPPOSITION TO THE MOTION FOR A GAG ORDER BY THE SPECIAL COUNSEL'S OFFICE**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I.      The Raid At Mar-A-Lago ................................................................................. 2

    II.     President Trump's Release Conditions ........................................................... 3

    III.    The Court's Sealing Orders ............................................................................. 4

APPLICABLE LAW ............................................................................................................ 4

    I.      Bail Reform Act ............................................................................................... 4

    II.     First Amendment Protections For Political Speech ....................................... 5

DISCUSSION ....................................................................................................................... 7

    I.      There Is No Evidentiary Justification For A Gag Order ................................ 7

    II.     The Gag Order Modification Is Unconstitutionally Vague ......................... 12

    III.   *United States v. Trump* Does Not Support The Gag Order Modification ................... 14

CONCLUSION ................................................................................................................... 16

# INTRODUCTION

President Donald J. Trump respectfully submits this opposition to the May 31, 2024 motion to modify release conditions in order to impose a gag order on President Trump (the "Gag Order Modification"). ECF No. 592.

In Jack Smith's most recent shocking display of overreach and disregard for the Constitution, the Special Counsel's Office asks the Court to enter an unconstitutional gag order as one of the release conditions on the leading candidate in the 2024 presidential election. Like Manhattan District Attorney Alvin Bragg, Smith seeks to restrict President Trump's campaign speech as the first presidential debate approaches at the end of this month. Smith's motion goes one step further in his efforts to interfere in the 2024 presidential election and assist President Biden, by seeking improper restrictions on President Trump's core protected speech that would continue through the Republican National Convention in July, and thereafter, until this case is dismissed for one or more of the myriad reasons we have identified.

Fundamentally, the motion is based on the fact that President Trump criticized the Mar-a-Lago raid based on evidence from publicly filed motions in this case, as part of his constitutionally protected campaign speech, in a manner that someone in the government disagreed with and does not like. The Office chose this cynical litigation strategy just one day after concluding a series of untimely disclosures that revealed additional extremely problematic features of the raid: spoliation of exculpatory evidence and other discovery violations by the same FBI team in connection with the same unlawful search. *See* ECF Nos. 581 & 612 (discussing the Office's untimely May 23, 2024 disclosure).

The Office's submission regarding the Gag Order Modification is egregiously lacking in legal and evidentiary support. Pursuant to the Court's sealing orders, no FBI agent who

1

participated in the raid has been publicly identified in a court filing or commentary by President Trump.  That is almost certainly why, nearly three weeks after the most recent Truth Social post cited by the Office, they have not submitted to the Court any evidence of threats or harassment resulting from President Trump's protected speech.  Not a single FBI agent who participated in the raid submitted an affidavit, or even an argument, claiming that President Trump's remarks put them at risk.  The Gag Order Modification is also vague and lacking in sufficient enforcement criteria—as if tailor-made to broadly chill protected speech.  As a result, the requested release condition would place Smith and his colleagues in a position to seek President Trump's arrest and temporary detention any time he said something they disagreed with—including but not limited to statements on the debate stage, the campaign trail, on social media, and potentially even including communications by President Trump's campaign staff.  Straining credulity, the Office even suggests that statements by third parties such as Steve Bannon could lead to President Trump's pre-trial detention at the height of his leading presidential campaign.

For all of these reasons, the motion is a naked effort to impose totalitarian censorship of core political speech, under threat of incarceration, in a clear attempt to silence President Trump's arguments to the American people about the outrageous nature of this investigation and prosecution.  Neither the Bail Reform Act nor the First Amendment permit such a result.  Therefore, the Court should deny the motion.

## BACKGROUND

I.  **The Raid At Mar-A-Lago**

On August 8, 2022, the FBI carried out an unprecedented raid targeting President Trump's and his family's home and his office at Mar-a-Lago.  Whereas DOJ attorneys considered even the *suggestion* of seizing classified evidence from former President Clinton to be "extraordinary" and "unfounded" in 2012, DOJ leadership "frankly" did not "give a damn about the optics" of raiding

2

Mar-a-Lago a decade later in 2022. *Compare Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288, 302-03 (D.D.C. 2012), *with* ECF No. 469 at 26. Indeed, the Attorney General proudly notified the public that he "personally approved" the raid. ECF No. 469 at 26.

During the raid, the FBI deployed agents to ransack rooms for which there was no plausible argument that any evidence might be found, including the bedroom suites of the First Lady and one of President Trump's sons as well as a gym and a kitchen. ECF No. 566 at 6-7. There were no conceivable safety risks associated with the raid in light of the existing security at Mar-a-Lago, which is undertaken by the Secret Service and other security personnel. Nevertheless, in connection with this unprecedented violation of a former Commander-In-Chief's home, the Operations Order relating to the raid indicates that the FBI elected to apply its "Use Of Deadly Force" policy. ECF No. 566-3 at 11.

As a result, DOJ-authorized FBI agents with "Standard Issue Weapon[s]" and "Ammo" penetrated Mar-a-Lago in a manner that was inconceivable to DOJ attorneys responsible for litigation and investigations involving the Clintons. Only recently did the Special Counsel's Office disclose that the agents destroyed exculpatory evidence favorable to President Trump's defense during the process after repeatedly insisting to President Trump and this Court that the materials in the boxes taken during the raid were in exactly the same condition they were in when they were illegally seized. *See* ECF No. 612.

## II.     President Trump's Release Conditions

President Trump was arraigned just over a year ago, on June 13, 2023, and released on his own recognizance. ECF No. 16. There was no suggestion at the arraignment that President Trump posed any sort of flight risk or danger. *See generally* ECF No. 31. President Trump's personal recognizance bond is subject to the standard condition that he not violate any law, and a special

condition that he refrain from communicating with "Fact Witnesses on the list provided by the Government" regarding "the facts of the case," "except through counsel."  ECF No. 17.

### III. The Court's Sealing Orders

The Special Counsel's Office has not been shy about making unsupported and incorrect claims regarding risks to witness safety.  *See*, *e.g.*, ECF No. 278.  Nevertheless, the Court has devoted substantial resources and paid meticulous attention to the Office's stated concerns, and President Trump has not stood in the way of sealing applications supported by non-speculative evidence of actual safety risks.  *See*, *e.g.*, ECF Nos. 361, 369 & 438.  Pursuant to the Court's rulings, the names of FBI witnesses who participated in the raid of Mar-a-Lago have been redacted from all public filings in the case.  *See*, *e.g.*, ECF No. 566-3 at 8.

## APPLICABLE LAW

### I. Bail Reform Act

"The policy underlying the Bail Reform Act 'is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant.'"  *United States v. Diaz Guillen*, 2022 WL 4119741, *2 (S.D. Fla. Sept. 2022) (quoting *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985)); *see also* 18 U.S.C. § 3142(b)-(c).  A court can only impose "pre-trial release conditions that infringe upon [a defendant's] constitutional rights" where "there has been an independent judicial determination that such conditions are necessary."  *United States v. Laurent*, 861 F. Supp. 2d 71, 91 (E.D.N.Y. 2011).

"The judicial officer may at any time amend the order to impose additional or different conditions of release."  18 U.S.C. § 3142(c)(3).  The Bail Reform Act sets forth a non-exhaustive list of release conditions and contemplates imposition of "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other

person and the community." 18 U.S.C. § 3142(c)(1)(xiv). Relevant considerations include the "nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

## II. First Amendment Protections For Political Speech

Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)). Such restraints are "one of the most extraordinary remedies known to our jurisprudence," *id.* at 562, and they are "accorded the most exacting scrutiny," *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 102 (1979). This is so because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (cleaned up).

> [T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Speech is often provocative and challenging . . . . But it is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

*City of Houston, Tex. v. Hill*, 482 U.S. 451, 461-62 (1987) (cleaned up); *see also, e.g.*, *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 844-45 (1978); *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964) (holding that "repression" of speech about court proceedings "can be justified, if at all, only by a clear and present danger of the obstruction of justice"). "For circumstances to create a clear and present danger to judicial administration, a solidity of evidence should be required . . . ." *Pennekamp v. Florida*, 328 U.S. 331, 347 (1946); *see also Stuart*, 427 U.S. at 565 (invalidating a prior restraint where "the record is lacking in evidence to support such

5

a finding"). Further, "the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished. . . . The danger must not be remote or even probable; it must immediately imperil." *Landmark*, 435 U.S. at 845 (citations omitted).

"No form of speech is entitled to greater constitutional protection" than "[c]ore political speech." *McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 347 (1995). "Speech on matters of public concern is at the heart of the First Amendment's protection. . . . That is because speech concerning public affairs is more than self-expression; it is the essence of self-government." *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (cleaned up); *see also Meyer v. Grant*, 486 U.S. 414, 425 (1988) (reasoning that campaign speech lies "at the core of our electoral process of the First Amendment freedoms—an area . . . where protection of robust discussion is at its zenith"); *United States v. Brown*, 218 F.3d 415, 419 (5th Cir. 2000) ("[T]he district court . . . lifted the gag order in this case to avoid interfering with Brown's re-election campaign . . . ."); *United States v. Ford*, 830 F.2d 596, 600-01 (6th Cir. 1987) ("[T]he defendant, a Democrat, . . . is entitled to attack the alleged political motives of the Republican administration which he claims is persecuting him because of his political views and his race."). Thus, the Supreme Court has "never allowed the government to prohibit candidates from communicating relevant information to voters during an election." *Repub. Party of Minn. v. White*, 536 U.S. 765, 781-82 (2002).

Moreover, "[f]reedom of speech presupposes a willing speaker. But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976); *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (recognizing the right to "speak and listen, and then . . . speak and listen once more," as a "fundamental principle of the

First Amendment"); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("It is now well established that the Constitution protects the right to receive information and ideas." (cleaned up)).

## DISCUSSION

"Criticism of government is at the very center of the constitutionally protected area of free discussion," and such criticisms "must be free, lest criticism of government itself be penalized." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). The Special Counsel's Office offers no basis for the claim that President Trump's protected campaign speech threatens "the integrity of the proceedings." ECF No. 592 at 3. Even if substantiated, such a claim would not warrant modification of the current release conditions. Under the Bail Reform Act, the pertinent concerns are flight risk and safety. The Office offers nothing to support the suggestion that either of those concerns is an issue based on the statements attached to the motion.

Moreover, the Court has implemented extensive, and much less restrictive, measures to avoid harassment or other risks to witnesses in this case. The name of every agent who participated in the raid has been redacted from the record, and in the place of those names there is now a dizzying list of pseudonyms to keep track of. Accordingly, for the reasons set forth below, the Court should deny the motion.

### I. There Is No Evidentiary Justification For A Gag Order

The Special Counsel's Office has failed to provide adequate evidence to support the Gag Order Modification. The Office submitted just five exhibits. Not one is from the FBI or other law enforcement. And none of them supports their claim regarding "risk of threats, violence, and harassment." ECF No. 592 at 1. Notably, President Trump and the defense are similarly unaware of any hostility, harassment, or risk of harm directed at any agent involved in this case based on President Trump's statements.

7

Exhibit 1 is a May 21, 2024 Truth Social post by President Trump that describes the defense's litigation positions regarding the raid, which are the subject of pretrial motions, and references the "Use Of Deadly Force" policy in the FBI's Operations Order. Specifically, the post states, in pertinent part, that "Joe Biden's DOJ, in their Illegal and UnConstitutional Raid of Mar-a-Lago, AUTHORIZED THE FBI TO USE DEADLY (LETHAL) FORCE." ECF No. 592-1. Hardly "deceptive and inflammatory," the post accurately summarizes aspects of President Trump's legal defense and contains truthful and accurate characterization of the deadly force policy that applied during the raid. Specifically, the policy stated: "Law enforcement officers of the Department of Justice may use deadly force only when necessary." ECF No. 566-3 at 11

Exhibit 2 is a May 23, 2024 campaign communication on behalf of President Trump. The email stated that it had been "revealed," through the unsealing of President Trump's suppression motion, "that Biden's DOJ was authorized to use DEADLY FORCE for their DESPICABLE raid in Mar-a-Lago." ECF No. 592-2. While President Trump's use of "DESPICABLE" appears to have ruffled someone's feathers, that is not a basis for the government to violate the First Amendment. *See, e.g.*, *Snyder*, 562 U.S. at 458 ("[I]n public debate we must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." (cleaned up)). Indeed, to many, it is an extremely fair comment.

The May 23, 2024 communication marked as Exhibit 2 also stated that "Joe Biden was locked & loaded ready to take me out & put my family in danger." ECF No. 592-2 at 2. The Special Counsel's Office claims that this is an example of "deceptive and inflammatory" language by President Trump. ECF No. 592 at 3. Regarding the false charge that this speech is "deceptive," the Supreme Court has rejected the notion that the government may prohibit speech through a

provision that "targets falsity and nothing more." *United States v. Alvarez*, 567 U.S. 709, 719 (2012) (plurality op.). Characterizing speech as "inflammatory," moreover, "obviously did not deprive the demonstration of its protected character under the Constitution . . . ." *Cox v. Louisiana*, 379 U.S. 536, 546 (1965). "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Prohibiting such speech because it is the government itself that apparently finds the speech offensive is even more problematic. *Id.*

Exhibit 3 is a May 23, 2023 Truth Social post by President Trump that is substantially similar to Exhibit 1. ECF No. 592-3. The principal difference is that, in the May 23 post, President Trump argued that the Secret Service—which is responsible for protecting President Trump, his family, and Mar-a-Lago—"thought [they] might be 'in the line of fire.'" In light of the statements in the Operations Order, that was a plausible concern for President Trump and the Secret Service. In addition to the deadly force authorization and the FBI's instruction that the participating agents bring "Standard Issue Weapon[s]" and "Ammo," the Operations Order included contingency planning for steps the FBI would take "[s]hould USSS provide resistance or interference with FBI timeline or access." ECF No. 566-3 at 12. The fact that armed FBI agents raided Mar-a-Lago while planning for potential "resistance" from well-intentioned and also armed Secret Service personnel created exactly the type of dangerous, volatile, and entirely unnecessary situation that President Trump has criticized in public statements. DOJ "frankly" did not "give a damn about the optics" at the time, but now seeks to threaten President Trump with detention for commenting upon them. ECF No. 469 at 26.

Exhibit 4 is a May 21, 2024 X post attributing to Steve Bannon a "claim[]" that "the Mar-a-Lago FBI classified document search was 'an attempted assassination' by Joe Biden on Trump and his associates." ECF No. 592-4. In support of the troubling suggestion that a third party's protected speech could serve as a basis for increasing pre-trial restrictions on a defendant's liberty, via a presumptively unconstitutional prior restraint, the Special Counsel's Office offers only the *ipse dixit* that "[p]redictably and as he certainly intended, others have amplified Trump's misleading statements." ECF No. 592 at 7.

Relying on similarly flawed reasoning, and without any evidentiary basis, the Office seeks to blame President Trump for tragic violence at an FBI office on August 11, 2022. ECF No. 592 at 8. One would hope that incident was investigated extensively. Surely if there was actual evidence of the type of link to President Trump that the Office suggests, as opposed to biased and conclusory speculation, they would have submitted that evidence to the Court beyond relying on two newspaper articles in a footnote. *Id.* at 8 n.4. Only political animus exacerbated by deep arrogance would cause a group of prosecutors to make such a false, flawed claim in a brief where their main argument is that President Trump has made public statements they believe are "deceptive" and inaccurate.

Exhibit 5 is a May 25, 2024 Truth Social post by President Trump that only serves to illustrate how lacking in support the government's motion is. Largely duplicative of aspects of Exhibit 1 and Exhibit 3, the post correctly states: "Biden's DOJ Authorized Use Of Deadly Force Against President Trump In Mar-a-Lago Raid." ECF No. 592-5. The Special Counsel's Office wisely limited discussion of this post to a footnote, where they expressed outrage that "[e]ven the day after this motion was publicly filed (the first time, on May 24), Trump continued to post deceptive and inflammatory assertions." ECF No. 592 at 7. To be clear, and as we said shortly

after the Office filed the motion in a manner that the Court appropriately characterized "as wholly lacking in substance and professional courtesy," ECF No. 584, the Office's filing of this frivolous censorship demand without any support for the claimed safety risks they posit had no impact whatsoever on President Trump's dialogue with the American people in connection with his leading campaign. To repeat: "We will not acquiesce in unsupported histrionics from biased and reckless prosecutors who have shown no respect for the First Amendment, other constitutional protections, the Local Rules, and the Court's orders." ECF No. 583 at 11.

Based on these five exhibits and two news articles, the Special Counsel's Office has not demonstrated that the Gag Order Modification is "reasonably necessary . . . to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(xiv). Such evidence does not in any way warrant the imposition of "different conditions of release," 18 U.S.C. § 3142(c)(3).

Even if the evidentiary showing by the Special Counsel's Office passed muster under the Bail Reform Act—and it does not—the Gag Order Modification would serve as an unconstitutionally and wholly unwarranted prior restraint. That the Office's exhibits reflect core political speech is manifest; each of them references President Biden, and Exhibit 2 is a communication directly from President Trump's campaign. Freedom of speech "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (cleaned up). The five exhibits fall far short of the "solidity of evidence" that is "required" under *Pennekamp*. 328 U.S. at 347. The Office's motion does not establish "clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Hill*, 482 U.S. at 461-62.

Exhibit 4, concerning the alleged statement by Bannon, is troubling from a constitutional perspective for an additional reason. The logic of the Office's reliance on Bannon's reaction to

11

President Trump's publicly filed motion and related public statements is based on an unlawful heckler's veto theory—*i.e.*, that President Trump's speech may be restricted because his *audience* might react with some level of hostility. Speech may not be restricted merely because the audience "might react with disorder or violence." *Brown v. Louisiana*, 383 U.S. 131, 133 n.1 (1966) (plurality op.); *see also Cox*, 379 U.S. at 551 ("[T]he compelling answer . . . is that constitutional rights may not be denied simply because of hostility to their assertion or exercise.'"). "The Government may not insulate a law from charges of viewpoint discrimination by tying censorship to the reaction of the speaker's audience," *Matal v. Tam*, 582 U.S. 218, 250 (2017) (Kennedy, J., concurring in part and concurring in the judgment)—regardless of whether the audience is supportive or hostile to the speaker. "Indeed, a speech burden based on audience reactions is simply government hostility and intervention in a different guise." *Id.*

For all of these reasons, the Special Counsel's Office has fallen far short of meeting its evidentiary burden in seeking the Gag Order Modification.

## II. The Gag Order Modification Is Unconstitutionally Vague

The Special Counsel's Office completely ignores the practical challenges and legal infirmities that would result from the Court adopting the Gag Order Modification.

For example, who would decide whether a statement by President Trump during the June 27, 2024 presidential debate, or during the Republic National Convention, "pose[d] a significant, imminent, and foreseeable danger to the law enforcement agents participating in the investigation and prosecution of this case"? ECF No. 592 at 1, 9. To our knowledge, the Probation Office has expressed no interest in taking on that burden under the circumstances presented, and it is hard to blame them. Pursuant to 18 U.S.C. § 3184(b), however, Jack Smith could seek an arrest warrant

and at least temporary detention if he believed President Trump had crossed this undefined and imaginary line. That is another fatal problem with the motion.

The Gag Order Modification is ambiguous, lacking in enforcement criteria, and likely to invite arbitrary enforcement by Smith as a surrogate for President Biden. "If the line drawn" by a prior restraint "is an ambiguous one," the Supreme Court "will not presume that the statute curtails constitutionally protected activity as little as possible." *NAACP v. Button*, 371 U.S. 415, 432 (1963). "For standards of permissible statutory vagueness are strict in the area of free expression." *Id.*; *see also*, *e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) ("A vague law impermissibly delegates basic policy matters . . . on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."); *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976) ("Stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech." (modifications omitted)); *Buckley v. Valeo*, 424 U.S. 1, 77 (1976) ("Where First Amendment rights are involved, an even 'greater degree of specificity' is required.").

Piling modifiers onto the word "danger"—"significant," "imminent," and "foreseeable"—does not provide necessary guidance to whoever would be enforcing the condition, and the lack of enforcement criteria would impermissibly chill President Trump's speech as he campaigns for the presidency. This is illustrated by the fact that the Special Counsel's Office believes that their proposed condition would "clearly" be violated by "statements deceptively claiming that the agents involved in the execution of the search warrant were engaged in an effort to kill him, his family, or Secret Service agents." ECF No. 592 at 9. Their formulation requires no threats, much less "true threats," and nothing approaching the "extremely high" "degree of imminence" based on a "solidity of evidence" under *Landmark Communications* and *Pennekamp*. The "irreparable"

13

First Amendment injury, *Cuomo*, 592 U.S. at 19, from the chilling effect of the Gag Order Modification would be suffered not only by President Trump, but also by the American people. The voters have a well-established "right to receive information and ideas," *Kleindienst*, 408 U.S. at 762, including—indeed, especially—ideas that President Biden, Smith, or the prosecution team in this case find to be deceptive, disagreeable, or otherwise inconvenient to their election-interference narrative. Therefore, the ambiguities, lack of enforcement criteria, and resulting chilling effect are a separate basis for denying the motion.

### III. *United States v. Trump* Does Not Support The Gag Order Modification

Contrary to the suggestion by the Special Counsel's Office, the analysis in *United States v. Trump*, 88 F.4th 990 (D.C. Cir. 2023), adds no merit to this motion. *E.g.*, ECF No. 592 at 7-8, 9. The D.C. Circuit's opinion is not binding, and to the extent that it authorized prior restraints on President Trump's political speech, it is unpersuasive. It is plainly distinguishable in any event.

This motion is based on alleged, non-existent safety concerns under the Bail Reform Act arising from the fact that members of the prosecution team disagree with President Trump's protected political speech. That was not an issue in *Trump*. There, the D.C. Circuit focused on President Trump's "ability to speak about his criminal trial" and "the need to protect the trial process and its truth-finding function." 88 F.4th at 1000-01. The D.C. Circuit framed its merits analysis as a balancing of "[t]wo foundational constitutional values": "an individual's right to free speech and the fair and effective functioning of the *criminal trial process* and its truth-finding function." *Id.* at 1002 (emphasis added). As to the First Amendment, the court described political speech as "the lifeblood of American democracy," which "allows voters to make informed decisions about those who seek to represent them in government, including their character, qualifications, and policy platforms." *Id.* Moreover, in the D.C. Circuit's view, "speech about

14

judicial proceedings, especially criminal prosecutions, promotes transparency in the legal system and 'guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.'" *Id.* at 1002-03 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966)). The only "compelling governmental interest" addressed in *Trump* as a basis for curbing these important rights was "the fair administration of a criminal trial."[1] *Trump*, 88 F.4th at 1003.

Moreover, the *Trump* panel rejected an effort by the district court to "clarif[y]" its unconstitutional gag order by elaborating that the prior restraint "cover[ed] only those kinds of 'targeting' statements that could result in 'significant and immediate risk[s]' to 'the integrity of these proceedings.'" 88 F.4th at 1021.[2] Thus, the D.C. Circuit rejected two of the three modifiers proposed by the Special Counsel's Office here, "significant" and "immediate," as inadequate to address overbreadth concerns presented by the gag order under review. *See id.* ("For those reasons,

---

[1] Not surprisingly, the Office barely touches any such trial risks associated with President Trump's protected speech. *See* ECF No. 592 at 3. How could they, considering the Biden Administration has no issues publicly proclaiming its version of the FBI's conduct during this raid, and the Office certainly does not volunteer to silence its bosses. Attorney General Garland, without providing any evidence in support, called President Trump's concerns "baseless and extremely dangerous falsehoods," while claiming that neither the DOJ nor the FBI will be "influence[d]" or "intimidated" by President Trump's or others' statements. Attorney General Merrick B. Garland Delivers Opening Statement Before the House Judiciary Committee (June 4, 2024), https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-opening-statement-house-judiciary-.

[2] The gag order under review in *Trump* originally provided that:

> All interested parties in this matter, including the parties and their counsel, are prohibited from making any public statements, or directing others to make any public statements, that target (1) the Special Counsel prosecuting this case or his staff; (2) defense counsel or their staff; (3) any of this court's staff or other supporting personnel; or (4) any reasonably foreseeable witness or the substance of their testimony.

88 F.4th at 999.

we hold that the Order is not sufficiently narrowly tailored and so can be upheld only in part, as explained below.").

Finally, the D.C. Circuit imposed a "*mens rea* requirement" that is absent from the Gag Order Modification. *Trump*, 88 F.4th at 1026. As modified, the gag order in *Trump* only prohibits statements regarding counsel, staff, and relatives where the statement is made "with either the intent to *materially interfere* with their work or the *knowledge* that such interference is highly likely to result." *Id.* (emphasis added). In contrast, the Gag Order Modification here lacks any *mens rea* requirement, and thus it threatens to chill even more protected speech than the narrowed—but still unconstitutional—version of the gag order upheld by the D.C. Circuit. Even the D.C. Circuit's flawed analysis took pains to "make clear that statements including or leading to intemperate and rude remarks—without more—are not proscribed." *Id.* at 1027. That is because "[w]orking in the criminal justice sphere fairly requires some thick skin." *Id.* Yet that is *exactly* what the Gag Order Modification here seeks to accomplish—to silence criticism of the government precisely because government officials do not like it. That proposal strikes at the First Amendment's heart, and it violates the First Amendment even under the D.C. Circuit's flawed reasoning.

## **CONCLUSION**

For the foregoing reasons, the Court should reject the efforts by the Special Counsel's Office to use bail conditions as a gag order on the leading candidate in the 2024 presidential election. The Gag Order Modification should be swiftly rejected.

Dated: June 14, 2024                          Respectfully submitted,

*/s/ Todd Blanche / Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250


*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on June 14, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise
