UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

 Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, **and
CARLOS DE OLIVEIRA,**

 Defendants.
_____/

### GOVERNMENT'S REPLY IN SUPPORT OF
### MOTION FOR MODIFICATION OF CONDITIONS OF RELEASE

 In late May 2024, defendant Donald J. Trump made a series of false and inflammatory public statements about the law enforcement professionals who conducted the court-authorized search at Mar-a-Lago, telling his audience that the FBI was out to kill him and his family. Trump knew that this was false, and he intended that his comments would inflame his listeners; indeed, that was the whole purpose. Comments like those create an immediate threat to the safety of law enforcement professionals—men and women who dedicate themselves to enforcing the law and protecting the American public every day, and who are entitled to do their work without fear of violent retribution. The Government has accordingly moved to modify Trump's conditions of release to prohibit further statements that pose a significant, imminent, and foreseeable danger to the law enforcement professionals involved in the case.

 Rather than address the risk of harm that his recent false statements created, Trump's opposition focuses on his political campaign and the timing of campaign events. *See* ECF No. 622

at 1. But the Government has absolutely no interest in those matters. None. Indeed, Trump has released a torrent of criticisms of the Biden Administration and the Department of Justice, and the Government has made no motion to this Court to limit or address such comments in any way. Trump is welcome to make such comments to his heart's content—they are simply not the Government's concern. Instead, the Government's sole purpose is to protect the safety of law enforcement professionals and the integrity of this proceeding, and nothing more.

Consistent with that purpose, the limitation that the Government asks the Court to impose is exceedingly narrow, focused, and fully consistent with the First Amendment. In resisting even that narrow limitation, Trump is left to argue that the First Amendment will be eroded unless he is permitted to lie about FBI agents intending to murder him and his family. The law requires no such thing. This is a pending criminal case, and "like any other criminal defendant, Mr. Trump does not have an unlimited right" to engage in speech that poses a risk to witnesses and threatens the integrity of the proceedings. *United States v. Trump*, 88 F.4th 990, 1007 (D.C. Cir. 2023). Nor can he "evade that legitimate limitation by dressing up" his comments "in political-speech garb." *Id.* at 1016.

In his response, Trump backpedals, struggling to dilute, parse, and reinterpret his false and intentionally inflammatory comments in order to justify them, *see* ECF No. 622 at 8-11; but there is no question that his statements were intentionally false, that they were designed to inflame and anger his audience, and that he knew that his statements would do so. Every court to have examined the issue has recognized the threat caused by the long-standing and well-documented dynamic between Trump's comments and the predictable response from some of his supporters. *See United States v. Trump*, 88 F.4th at 1010-12; *United States v. Trump*, -- F. Supp. 3d --, 2023 WL 6818589 (D.D.C. Oct. 17, 2023); *Trump v. Merchan*, -- N.Y.S.3d --, 2024 WL 2138460 (N.Y.

App. Div. May 14, 2024); *People v. Trump*, -- N.Y.S.3d --, 2024 WL 1787973 (N.Y. Sup. Ct. Mar. 26, 2024); Affirmation in Opposition, *Trump v. Engoron*, No. 2023-05859, (N.Y. App. Div. Nov. 22, 2023), NYSECF No. 9, Ex. E at 3-5; Supplemental Limited Gag Order, *People v. Trump*, No. 452564/2022, (N.Y. Sup. Ct. Nov. 3, 2023), NYSECF No. 1631 at 2.  Shortly after the execution of the search warrant at Mar-a-Lago, one of Trump's supporters carried out an armed attack on an FBI office in the wake of Trump's Truth Social statements regarding the search. *See* Ex. 1 (unsealed search warrant).  And just last week, a supporter of Trump called an FBI agent associated with the Hunter Biden case and claimed that, if Trump wins reelection, FBI agents will be thrown in jail; and if he does not win, the agents will be "hunt[ed] down" and "slaughter[ed]" in their own homes, after which "[w]e're going to slaughter your whole fucking family." Ex. 2 (complaint).  No court would tolerate another defendant deliberately creating such immediate risks to the safety of law enforcement, and this Court should not wait for a tragic event before taking action in this case.

While Trump boastfully acknowledges the impact that his words have on his listeners, he will just as predictably decline any responsibility for their actions should any further violence take place.  Neither the Government nor the Court has that luxury.  Protecting law enforcement is the Government's duty, and we respectfully ask the Court to address the serious risks posed to law enforcement and to protect the integrity of these proceedings.

**I.    The Government's Proposed Release Condition is Necessary and Constitutional**

    **A.    Legal Standard**

This Court has the statutory authority to impose a condition of release that is "reasonably necessary . . . to assure the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B)(xiv).  Pretrial release conditions "commonly include measures that burden criminal defendants' ability to act, associate, and speak," and indeed Trump has recognized that such conditions are consistent with the First Amendment. *Trump*, 88 F.4th 990 at 1006.  A court

may impose such a condition as long as it makes a defendant-specific determination that absent the condition the defendant is likely to engage in conduct that would endanger another person or the community. *See, e.g.*, *United States v. Lillemoe*, No. 15-CR-25, 2015 WL 9694385, at *2 (D. Conn. May 28, 2015).

The Court can—and should—impose the proposed condition based on the Court's statutory authority under 18 U.S.C. § 3142. A condition of release prohibiting Trump from making statements that pose a significant, imminent, and foreseeable danger to the law enforcement agents who assisted with the investigation and prosecution of this case is necessary to ensure the safety of other persons and the community.

The Court's authority flows not only from 18 U.S.C. § 3142 but also from its inherent authority and obligation to take steps necessary to protect the integrity of criminal proceedings from "prejudicial outside interferences," *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966), which may require restricting speech by trial participants, *see Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991), including the defendant, *see, e.g.*, *Trump*, 88 F.4th at 1005-06, and *United States v. Brown*, 218 F.3d 415, 425-28 (5th Cir. 2000). The parties and the public all "have an interest in seeing that justice is administered fairly" in a criminal case. *United States v. Scrushy*, No. 2:03-cr-530, 2004 WL 848221, at *1 (N.D. Ala. Apr. 13, 2004) (citing *Brown*, 218 F.3d at 424). And to ensure a fair trial, "the district judge can place restrictions on parties . . . and others involved with the proceedings despite the fact that such restrictions might affect First Amendment considerations." *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977).

To that end, this Court's local rules expressly prohibit lawyers associated with a pending criminal case from publicly disseminating information "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of

4

justice." S.D. Fla. Local Rule 77.2. Courts in this district have applied that restriction to criminal defendants as well. *See United States v. Campa*, 459 F.3d 1121, 1127 (11th Cir. 2006) (en banc) (noting that "upon the government's motion . . . the [district] court entered a gag order ordering all parties and their attorneys to abide by Southern District of Florida Local Rule 77.2"); *see also United States v. Batiste, et al.*, 06-cr-20373, (S.D. Fla. Jan. 31, 2008), ECF No. 840. And courts around the country have likewise imposed restrictions on the extrajudicial statements of parties to protect the integrity of criminal proceedings.[1]

The First Amendment therefore provides no impediment to imposing a condition of release prohibiting Trump from making statements that pose a significant, imminent, and foreseeable danger to the law enforcement agents who assisted with the investigation and prosecution of this case. As discussed, that condition is necessary to ensure the safety of other persons and the community and therefore is entirely permissible under 18 U.S.C. § 3142. But in addition, the condition is needed to ensure the fair administration of justice. Statements that present a significant, imminent, and foreseeable danger to the law enforcement agents working on this case pose a significant and imminent threat to the integrity of these criminal proceedings.[2]

---

[1] *See Brown*, 218 F.3d at 428; *United States v. Hill*, 420 F. App'x 407, 409-12 (5th Cir. 2011); *United States v. Calabrese*, No. 02-cr-1050, 2007 WL 2075630, at *1 (N.D. Ill. July 13, 2007); *United States v. Fieger*, No. 07-20414, 2008 WL 474084, at *3-4 (E.D. Mich. Feb. 19, 2008); *United States v. Rodriguez*, No. 04-cr-55, 2006 WL 8438023, at *3 (D.N.D. June 29, 2006); *United States v. Koubriti*, 307 F. Supp. 2d 891, 899 (E.D. Mich. 2004); *Scrushy*, 2004 WL 848221, at *4-6; *United States v. Davis*, 902 F. Supp. 98, 102 (E.D. La. 1995); *United States v. Hill*, 893 F. Supp. 1039, 1040-41 (N.D. Fla. 1994).

[2] The Eleventh Circuit has not specifically addressed the First Amendment standard that applies to restrictions on a party's speech in a criminal case. *See News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1515 n.18 (11th Cir. 1991). Consistent with the Supreme Court's decision in *Gentile*, some courts have evaluated whether the restricted speech poses a "substantial likelihood of material prejudice" to the proceedings. *See, e.g.*, *Brown*, 218 F.3d at 428-29. Other courts have applied a more stringent standard, requiring "a 'clear and present danger' or a 'serious and imminent threat' to" the proceedings. *United States v. Carmichael*, 326 F. Supp. 2d 1267, 1292-

### B.     Trump's Statements Pose an Imminent Threat to Law Enforcement

As far back as August 2022, the magistrate judge now assigned to this case took notice of the dangerous atmosphere for the FBI when deciding to maintain under seal the bulk of the Mar-a-Lago search warrant affidavit. *In re Search Warrant*, 622 F. Supp. 3d 1257, 1263 (S.D. Fla. 2022) ("After the public release of an unredacted copy of the [search warrant] Inventory, FBI agents involved in this investigation were threatened and harassed."). The magistrate judge further noted that, after the search, there were "increased threats against FBI personnel." *Id*. Three days after the search, Trump supporter Ricky Shiffer, armed with an AR-15 and a nail gun, attempted to attack an FBI office in Ohio. *See* Ex. 1. Hours after Trump posted on his social media platform (Truth Social) about the search on August 8, *see* Ex. 3, Shiffer also posted on Truth Social, "Kill F.B.I. on sight," advocated "combat" against the FBI, and stated, "Trump showed us we could still elect," Ex. 1; *see also* Ex. 4 (spreadsheet of additional posts). On August 10, Shiffer posted, "When they try to make you fear, hold up a sign saying, 'We love Trump,' when they come for you, kill them." *See id.* According to search warrant returns on Shiffer's Truth Social account, Shiffer officially joined Truth Social on August 2, 2022, and in the days preceding his attack on the FBI, he followed Trump's Truth Social account.

Shiffer's threats to the FBI were not isolated. Just last week, another of Trump's supporters was charged with making threats by calling the cell phone number of an FBI agent associated with the Hunter Biden case and claiming that, if Trump does not win the election, FBI agents will be "hunt[ed] down" and "slaughter[ed]" in their own homes, after which "[w]e're going to slaughter

---

93 (M.D. Ala. 2004) (discussing cases). Because the proposed condition satisfies even the most stringent form of scrutiny, the Court need not decide which level of scrutiny applies. *See Trump*, 88 F.4th at 1008 (assuming without deciding "that the most demanding scrutiny applies").

your whole fucking family." Redacted Criminal Complaint as to Timothy Muller, *United States v. Muller*, No. 4:24-mj-479, (N.D. Tex. June 14, 2024), ECF No. 11 at 3.

Trump, for his part, has "repeatedly" made "threatening public statements," including a message of vengeance the day after his initial appearance in court in *United States v. Trump*, 23-cr-00257 (D.D.C.): "IF YOU GO AFTER ME, I'M COMING AFTER YOU!" Ex. 5; *see Trump*, 88 F.4th at 1010. His rhetoric on social media also contains clear allusions to violence. On September 22, 2023, on Truth Social, the defendant falsely claimed that a witness, the retiring Chairman of the Joint Chiefs of Staff, had committed treason and intimated that he should be executed. Ex. 5; *see Trump*, 23-cr-00257, (D.D.C. Sept. 29, 2023) ECF No. 64 at 10.

Trump's recent posts falsely insinuating that the FBI and DOJ had planned to assassinate him during the search at Mar-a-Lago are even more egregious. Much like Trump's motion to suppress evidence from that search (ECF No. 566 at 4), which misleadingly omitted the word "only" before "when necessary" in describing the FBI's policy on the use of deadly force, his response (ECF No. 622 at 8-9) selectively quotes his statements from the assassination allegations, hiding the part of Trump's statement where he directly and falsely accused "Biden's DOJ" that "they're just itching to do the unthinkable" and downplaying the falsity of "locked & loaded ready to take me out & put my family in danger." ECF No. 592-2 at 2. Deploying such knowingly false and inflammatory language in the combustible atmosphere that Trump has created poses an imminent danger to law enforcement that must be addressed before more violence occurs.

This Court has the authority under 18 U.S.C. § 3142 to impose a condition of release to ensure the safety of others before violence materializes. Similarly, when exercising the Court's separate authority to protect the integrity of the proceedings, the Court is not "helpless to act until witnesses have been intimidated, violence has been attempted, or a trial participant has been

materially hindered from doing her job." *Trump*, 88 F.4th at 1014; *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 553-54 (1976) (noting a court's duty to prevent harms to proceedings "at their 'inception,' before they are realized and dysfunction envelops the trial"). "Nor are the court's hands tied until evidence of direct causation materializes." *Id.* at 1014. A trial court's assessment of the threat to the court's functioning must be "of necessity speculative, dealing with factors unknown and unknowable[,]" and may appropriately be grounded both in record facts and "common human experience." *Nebraska Press,* 427 U.S. at 563. Multiple courts have correctly found there is ample basis to conclude that "some of Mr. Trump's speech poses a significant and imminent threat to the fair and orderly adjudication of the criminal proceeding against him." *Trump*, 88 F.4th at 1010. Here, common human experience leaves no question of the imminently foreseeable harm posed by Trump's knowingly false and inflammatory accusation of an FBI plot to murder him and his family—he spread it for the first time shortly after the FBI's operational plan, of which he had long been aware in discovery, was unsealed and published on the docket. The Court need not and should not wait for violence to be inflicted upon law enforcement to act.

Trump's contention (ECF No. 622 at 11-12) that the proposed order would constitute an impermissible "heckler's veto" fundamentally "misunderstands the heckler's veto doctrine." *Trump*, 88 F.4th at 1014-15. "That doctrine prohibits restraining speech on the grounds that it 'might offend a hostile mob' hearing the message, or because its audience might express 'hostility to' the message." *Id.* at 1015 (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134-135 (1992), and *Cox v. Louisiana*, 379 U.S. 559, 561 (1965)). The harm at issue here is "not that some members of the public who oppose Mr. Trump's message might react violently and try to shut down his speech," but rather "how predictable it has become that some (but certainly not all, or even many) of Mr. Trump's followers will act minaciously in response to his words." *Id.*

8

(quotation marks and citation omitted). As such, Trump cannot "ignore[] the significant risk of harm caused by [his] own messaging," *id*. at 1014—or, worse still, contend that, because his intentionally inflammatory language foreseeably results in action by his supporters, he is entitled to extra constitutional protections. Indeed, Trump is acutely aware of the "power of his words and their effect on his audience." *Id.* at 1012.

### C. The Proposed Condition is Not Vague and Is the Least Restrictive Condition

Trump feigns ignorance of "who would decide" (ECF No. 622 at 12) whether he had violated the proposed release condition, falsely implying that the Government would unilaterally "temporarily detain" him if his extrajudicial statements crossed the line. But Trump knows that the Court would be the arbiter of whether a violation has occurred, just as it is in all criminal cases. And whether a statement is a "significant, imminent, and foreseeable" danger to law enforcement gives fair notice based on its ordinary meaning, much as Local Rule 77.2 does when it prohibits communication that has "a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."[3]

Trump suggests (ECF No. 622 at 7) that the agents in this case face no danger since their names are currently redacted from public filings. That argument ignores that Trump's former aide twice (after the search and after the June 2023 indictment) disseminated the names of two FBI agents on this case, their dates of birth, their work email addresses, and supposed links to social media accounts of their family members. *See* Alia Shoaib, *An Ex-Trump Aide and Right-wing*

---

[3] A proscription on speech is not unconstitutionally vague so long as it gives "fair warning as to what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972); *see, e.g.*, *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 946 (11th Cir. 2023). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Tracy v. Fla. Atl. Univ. Bd. of Trustees*, 980 F.3d 799, 808 (11th Cir. 2020) (quotation marks omitted); *see Grayned*, 408 U.S. at 110 ("Condemned to the use of words, we can never expect mathematical certainty from our language.").

*Breitbart News Have Been Separately Accused of Doxxing [sic] the FBI Agents Involved in the Mar-a-Lago Raid*, BUSINESSINSIDER.COM (Aug. 13, 2022), https://www.businessinsider.com/breitbart-trump-aide-doxxing-mar-a-lago-raid-fbi-agents-2022-8 (cited in *In re Warrant*, 622 F. Supp. 3d at 1263).  Redaction is also an insufficient protection when the agents' names will necessarily be public when they testify at trial.  Nor should Trump receive any credit for merely complying with this Court's order to redact, given that he gratuitously included FBI agents' names in exhibits to court filings that he said should be public, *see, e.g.*, ECF Nos. 262 (Motion to Compel) and 566 (Motion to Suppress), and opposed the Government's efforts to redact them, *see, e.g.*, ECF Nos. 261 and 312.

Finally, Trump's attempts at distinguishing the D.C. Circuit's decision in *United States v. Trump* are unavailing.  Contrary to his assertion, the D.C. Circuit did not find any overbreadth concerns with the district court's use of the words "significant and immediate risk" to the integrity of the proceedings.  Rather, the D.C. Circuit was focused on ensuring that any restrictions would not encompass speech concerning public figures that was unrelated to their participation in the criminal proceedings.  *See Trump*, 88 F.4th at 1023-24.  The D.C. Circuit therefore modified the district court's order to "prohibit only those statements that concern reasonably foreseeable witnesses' potential participation in the investigation or in this criminal proceeding." *Id.* at 1024.  Here, the proposed restriction is limited to statements that pose a significant, imminent, and foreseeable danger to law enforcement participating in this case, and, like the D.C. Circuit, this Court may fashion its own order to further ensure it is fully consistent with the First Amendment.

**II.     Conclusion**

To protect the safety of law enforcement and the integrity of this proceeding, this Court should grant the Government's motion to modify Trump's conditions of release.

...

                Respectfully submitted,

                JACK SMITH
                Special Counsel
                N.Y. Bar No. 2678084

By:    /s/ *Jay I. Bratt*
                Jay I. Bratt
                Counselor to the Special Counsel
                Special Bar ID #A5502946

                David V. Harbach, II
                Assistant Special Counsel
                Special Bar ID #A5503068
                950 Pennsylvania Avenue, NW
                Washington, D.C. 20530

                Michael E. Thakur
                Assistant Special Counsel
                Florida Bar No. 1011456

June 21, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt