# Exhibit 1

REPORT OF SPECIAL COUNSEL

NICHOLAS J. BUA

TO

THE ATTORNEY GENERAL

OF THE UNITED STATES

REGARDING THE ALLEGATIONS OF INSLAW, INC.

NICHOLAS J. BUA

HELENE B. GREENWALD
JOSEPH H. HARTZLER
CHARLES D. KNIGHT
DEAN J. POLALES
DAVID S. ROSENBLOOM

March 1993

THIS DOCUMENT HAS BEEN REVISED
IN ORDER TO DELETE MATERIAL
THE DISCLOSURE OF WHICH IS
PROHIBITED PURSUANT TO
RULE 6(e) OF THE FEDERAL
RULES OF CRIMINAL PROCEDURE

# TABLE OF CONTENTS

                                                                **Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . .   1

II.  THE HISTORY OF INSLAW'S ALLEGATIONS . . . . . . .   3
     A.   The Brewer Bias Theory . . . . . . . . . . .   4
     B.   The Conspiracy Allegations . . . . . . . . .   6
     C.   Additional Allegations . . . . . . . . . . .  10

III. SUMMARY OF OUR CONCLUSIONS . . . . . . . . . . . .  13

IV.  THE DEVELOPMENT OF INSLAW'S CLAIMED PROPRIETARY
     SOFTWARE . . . . . . . . . . . . . . . . . . . . .  15
     A.   History of Inslaw . . . . . . . . . . . . . .  15
     B.   Negotiation of the 1982 Implementation Contract . .  18
     C.   Early Proprietary Rights Disputes . . . . . .  21
     D.   The Advance Payments Dispute . . . . . . . .  24
     E.   The Events Leading Up To Modification 12 . . . . .  25
     F.   Inslaw's Efforts to Identify the Proprietary
          Enhancements . . . . . . . . . . . . . . . . .  32
     G.   The Effect of The Bankruptcy Court's Findings . . .  36

V.   THE ALLEGATION OF A CONSPIRACY TO STEAL PROMIS . . . . .  39
     A.   The Claimed Direct Evidence Of A Conspiracy . . . .  41
          1.   Michael Riconosciuto . . . . . . . . . . .  42
               a.   Summary of Riconosciuto's Allegations . .  42
                    (i)    Riconosciuto's Calls To The
                           Hamiltons . . . . . . . . . .  43
                    (ii)   Riconosciuto's March 21, 1991
                           Affidavit . . . . . . . . . .  44
                    (iii)  Riconosciuto's Statement to
                           Congress . . . . . . . . . . .  46
                    (iv)   Riconosciuto's Testimony At His
                           Trial . . . . . . . . . . . .  47
               b.   The Inconsistencies Within The
                    Allegations . . . . . . . . . . . . .  49
               c.   Results Of Our Investigation . . . . . .  53
                    (i)    The Wackenhut-Cabazon Joint
                           Venture . . . . . . . . . . .  55
                    (ii)   The September 10, 1981 Weapons
                           Demonstration . . . . . . . .  61
                    (iii)  Riconosciuto's March 29, 1991
                           Arrest . . . . . . . . . . . .  66
          2.   Ari Ben-Menashe . . . . . . . . . . . . . .  73
               a.   Ben-Menashe's Previous Allegations . . .  73
               b.   Our Investigation . . . . . . . . . . .  75
          3.   Charles Hayes . . . . . . . . . . . . . .  81

Material Omitted Pursuant to
Fed. R. Crim. P. 6(e)

-i-

B.    The Claimed Circumstantial Evidence Of A
       Conspiracy . . . . . . . . . . . . . . . . . . 85
       1.   The Alleged Call From Dominic Laiti . . . . . 87
       2.   The 1983 Laiti Trip To New York . . . . . . . 87
           a.   Earl Brian . . . . . . . . . . . . . . . 88
           b.   Dominic Laiti . . . . . . . . . . . . . 88
           c.   Paul Wormeli . . . . . . . . . . . . . . 88
           d.   Marilyn Titus . . . . . . . . . . . . . 90
           e.   Mark Kesselman . . . . . . . . . . . . . 90
       3.   The 53rd Street Ventures Connection . . . . . 91
           a.   Daniel Tessler . . . . . . . . . . . . . 92
           b.   Richard D'Amore . . . . . . . . . . . . 95
           c.   Patricia Cloherty . . . . . . . . . . . 95
       4.   The Jonathan Ben Cnaan Allegations . . . . . 97
       5.   The Edward Hurley Overtures . . . . . . . . . 98
       6.   The Accumenics Contract Award . . . . . . . . 100
       7.   The Alleged Videnieks/Hadron Connection . . . 101
       8.   The Attempted Purchase of Inslaw By SCT . . . 104
       9.   The Lois Battistoni Allegations . . . . . . . 106
           a.   Lois Battistoni . . . . . . . . . . . . 106
           b.   Charles Trombetta . . . . . . . . . . . 109
           c.   Garnett Taylor . . . . . . . . . . . . . 109
           d.   James Walker . . . . . . . . . . . . . . 111
           e.   Floyd Bankson . . . . . . . . . . . . . 112
       10.  Ronald LeGrand . . . . . . . . . . . . . . . 113
C.    Conclusion Regarding The Alleged Earl Brian
       Connection . . . . . . . . . . . . . . . . . . 121

VI.  THE ALLEGATION THAT DOJ OBTAINED AN ENHANCED
     VERSION OF PROMIS THROUGH FRAUD AND DECEIT . . . . . . 124
    A.    The Advance Payments Dispute . . . . . . . . . 127
    B.    DOJ's Demand For a Copy Of PROMIS . . . . . . . 129
    C.    DOJ's Original Demand Was Not For Enhanced PROMIS . 133
    D.    DOJ's Conduct After Modification 12 . . . . . . 136

VII. THE ALLEGATION THAT DOJ WRONGFULLY DISTRIBUTED PROMIS . 141
    A.    A Comparison of FOIMS and PROMIS . . . . . . . . 141
       1.   The Allegation that FOIMS is Pirated From
           PROMIS . . . . . . . . . . . . . . . . . . . 141
       2.   Our Investigation . . . . . . . . . . . . . . 143
    B.    DOJ's Self-Installation of PROMIS . . . . . . . 147
    C.    The Alleged International Distribution of PROMIS by
       DOJ . . . . . . . . . . . . . . . . . . . . . . 150

VIII. THE ALLEGATION THAT DOJ OBSTRUCTED THE
      REAPPOINTMENT OF BANKRUPTCY JUDGE BASON . . . . . . . 153
    A.    The Selection Process . . . . . . . . . . . . . 155
       1.   The Vacancy . . . . . . . . . . . . . . . . . 155
       2.   The Merit Selection Panel . . . . . . . . . . 155
       3.   The Panel's Consideration of the Inslaw
           Ruling . . . . . . . . . . . . . . . . . . . 156

|  |  |  | a. | AUSA reported Inslaw ruling to Civil Division Chief | 157 |
|  |  |  | b. | Royce Lambreth reported Inslaw ruling to Judge Johnson | 160 |
|  |  |  | c. | The Panel considered the Inslaw ruling | 162 |
|  |  |  | d. | Our Conclusions Regarding Lambreth's Communication With Judge Johnson | 163 |
|  |  | 4. | | Opposition to Bason From Outside DOJ | 166 |
|  |  | 5. | | The Other Possible Opposition Effort | 169 |
|  |  | 6. | | The Panel's Recommendation | 171 |
|  |  | 7. | | The Judicial Council's Recommendation | 171 |
|  |  | 8. | | The Selection By the Court of Appeals | 172 |
|  |  | 9. | | The Confidential Memorandum | 172 |
|  | B. | | | The Initial Allegation | 175 |
|  | C. | | | DOJ's Motion to Recuse Bason | 176 |
|  |  | 1. | | Prior Consideration of a Recusal Motion | 176 |
|  |  | 2. | | Letter to Wald as Basis for Recusal | 177 |
|  |  | 3. | | House Judiciary Committee's Implied Criticism | 179 |
|  | D. | | | Bason's Lawsuit | 180 |
|  | E. | | | More Detailed Allegations | 181 |
|  |  | 1. | | The Overheard Remark of a DOJ Attorney | 181 |
|  |  | 2. | | Reporter Chris Welles | 182 |
|  |  | 3. | | Stuart Schiffer | 182 |
|  |  | 4. | | Judge Tim Murphy | 184 |
|  |  | 5. | | Kevin Reynolds/William Hamilton | 185 |
|  |  | 6. | | William Hamilton/Garnett Taylor | 186 |
|  | F. | | | Conclusion | 188 |
| IX. | | | | THE ALLEGATION THAT DOJ OFFICIALS TRIED TO CONVERT INSLAW'S BANKRUPTCY TO A LIQUIDATION, AND THEN COMMITTED PERJURY AND FIRED A WHISTLEBLOWER TO COVER UP THIS MISCONDUCT | 190 |
|  | A. | | | Background | 190 |
|  |  | 1. | | The Primary Allegation | 191 |
|  |  | 2. | | The Cover-Up Allegations | 193 |
|  |  | 3. | | The Bankruptcy Court Decision | 194 |
|  |  | 4. | | The OPR Investigation | 196 |
|  |  | 5. | | The Public Integrity Investigation | 198 |
|  |  | 6. | | The Senate Subcommittee's Investigation | 200 |
|  |  | 7. | | The House Judiciary Committee Investigation | 202 |
|  | B. | | | Our Analysis | 203 |
|  |  | 1. | | Brewer's Conversation with Stanton | 203 |
|  |  | 2. | | Pasciuto's Allegation that Stanton Pressured White to Convert the Inslaw Case | 204 |
|  |  | 3. | | The Videnieks' Notes | 211 |
|  |  | 4. | | McKain's Testimony | 212 |
|  |  | 5. | | White's Addition to Confidentiality Order | 214 |
|  |  | 6. | | Cornelius Blackshear | 215 |
|  |  | 7. | | Stanton's Consideration of Transferring Harry Jones | 224 |
|  | C. | | | Conclusion | 226 |

        1.    The Alleged Scheme To Convert . . . . . . . . 227
        2.    The Alleged Cover-up . . . . . . . . . . . . 229
            a.   Blackshear's Recantation . . . . . . . 229
            b.   Pasciuto's Termination . . . . . . . . 230

X.    DOJ'S RESPONSES TO CONGRESSIONAL INVESTIGATIONS . . . . 232
    A.   Allegation that DOJ's Objections Created Delays . . 232
    B.   Allegation that DOJ Violated Conflict of Interest
        Principles . . . . . . . . . . . . . . . . . . 235
    C.   Question of Whether DOJ Destroyed Documents. . . . 237
    D.   Allegation that DOJ Interfered With the House
        Committee's Interview of Riconosciuto . . . . . . 242

XI.   REMAINING ALLEGATIONS . . . . . . . . . . . . . . . . 244
    A.   Allegations Concerning Dickstein, Shapiro & Morin . 244
    B.   The Death of Joseph Daniel Casolaro . . . . . . . 246
    C.   The Alleged Sham Contract Disputes . . . . . . . . 250
    D.   Response Of DOJ To Claims of Brewer Bias . . . . . 256
    E.   Inslaw's Proof Of Private Financing . . . . . . . 261

XII.  CONCLUSIONS . . . . . . . . . . . . . . . . . . . . . 264

I.   __INTRODUCTION__

On November 7, 1991, Attorney General William Barr appointed me to serve as a Special Counsel for the purpose of investigating all allegations of wrongdoing in connection with what has come to be known as the Inslaw matter.  The Attorney General requested that I conduct a complete and thorough investigation, and determine whether there had been any misconduct by any individuals, either inside or outside the Department of Justice.  The Attorney General told me that my investigation should be completely independent, and assured me that he would demand complete cooperation with my investigation by all Department of Justice employees.

I selected six Assistant United States Attorneys, all with significant criminal prosecution experience, and one of my law partners, to assist me in my investigation.[1]   Together, my assistants and I selected two seasoned and highly regarded Special Agents from the FBI to work as our investigators.  For purposes of this investigation, the Assistant U.S. Attorneys and the FBI agents reported solely to me, and to nobody else within the Department of Justice ("DOJ").

During the past year we have devoted considerable resources to investigating the myriad allegations that have been made about the conduct of DOJ employees, and others, in connection with the

---

[1]One of the Assistant United States Attorneys I originally selected resigned from my staff after he was appointed Chief of the Public Integrity Section of the Criminal Division of the Department of Justice.  We agreed that resignation was appropriate in order to maintain the independence of this investigation.   In addition, Thomas M. Durkin, the former First Assistant United States Attorney for the Northern District of Illinois resigned from my staff when he entered private practice in February 1993.

administration of a contract between DOJ and Inslaw.   At times, this has been a daunting task.   The allegations in this case seem to know no bounds.   They literally range from charges of murder and international espionage to claims of simple incompetence.   In investigating these allegations, we necessarily had to assign priorities to our tasks.   We have for the most part completed our investigation regarding what we consider be the most serious allegations.   As is described more specifically elsewhere in this report, there remain a few areas where we have not completed our investigation.   Our preliminary review of these remaining areas, however, leads us to believe that it is unlikely that we will find evidence that would ·affect the tentative conclusions set out in this report.   We are forwarding our conclusions to you now in order to allow you to determine how you wish to proceed in this matter.[2]

---

[2]During our investigation we subpoenaed several third party witnesses to appear before a grand jury in the Northern District of Illinois.   Matters occurring before the grand jury are described in several places in this report.   Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, those matters cannot be disclosed without leave of the Chief Judge of the district court. Consequently, unless and until that authorization is obtained, we will be taking the customary precautions to preserve the confidentiality of this report and the matters discussed herein.