```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                   WEST PALM BEACH DIVISION
                      CASE NO. 23-cr-80101-AMC
 3
     UNITED STATES OF AMERICA,            Fort Pierce, Florida
 4
                   Plaintiff,             June 21, 2024
 5
            vs.
 6                                        9:33 a.m. - 2:21 p.m.

 7   DONALD J. TRUMP, WALTINE NAUTA, CARLOS
     DE OLIVEIRA,
 8
                   Defendant.             Pages 1 to 197
 9   _____

10                    TRANSCRIPT OF MOTIONS
                 BEFORE THE HONORABLE AILEEN M. CANNON
11                  UNITED STATES DISTRICT JUDGE
     APPEARANCES:
12
     FOR THE GOVERNMENT:
13
                              U. S. DEPARTMENT OF JUSTICE
14                            JAY I. BRATT, ESQ.
                              DAVID HARBACH, ESQ.
15                            JAMES PEARCE, ESQ.
                              National Security Division
16                            950 Pennsylvania Avenue, NW
                              Washington, DC 20530
17
     FOR THE DEFENDANT:
18
     Donald J. Trump
19
                              BLANCHE LAW
20                            EMIL BOVE, ESQ.
                              TODD BLANCHE, ESQ.
21                            99 Wall Street
                              Suite 4460
22                            New York, New York 10005

23
                              CHRIS KISE & ASSOCIATES, P.A.
24                            CHRISTOPHER M. KISE, ESQ.
                              201 East Park Avenue
25                            5th Floor
                              Tallahassee, Florida 32301
```

```
 1   Waltine Nauta

 2                           DADAN LAW FIRM
                            SASHA DADAN, ESQ.
 3                          201 S. 2nd Street
                            Suite 202
 4                          Fort Pierce, Florida 34950

 5
                            BRAND WOODWARD LAW, LP
 6                          STANLEY WOODWARD, ESQ.
                            400 Fifth Street
 7                          Northwest Suite 300
                            Washington, DC 20001
 8   Carlos De Oliveira

 9                           L.D. MURRELL, PA
                            LARRY DONALD MURRELL JR., ESQ.
10                          400 Executive Center Drive
                            Suite 201
11                          West Palm Beach, Florida 33401

12                          E&W LAW
                            JOHN S. IRVING, ESQ.
13                          1455 Pennsylvania Avenue, NW
                            Suite 1400
14                          Washington, DC 20004

15   Amici Curiae:
                            JOSH BLACKMAN, ESQ.
16                          josh@joshmblackman.com

17                          MATTHEW SELIGMAN, ESQ.

18                          GENE SHAERR, ESQ.

19   STENOGRAPHICALLY REPORTED BY:

20                          LAURA E. MELTON, RMR, CRR, FPR
                            Official Court Reporter to the
21                          Honorable Aileen M. Cannon
                            United States District Court
22                          Fort Pierce, Florida

23

24

25
```

```
 1          (Call to the order of the Court.)

 2          THE COURT:  Good morning.  Please be seated.  Let's

 3   call the case.

 4          COURTROOM DEPUTY:  United States of

 5   America v. Donald J. Trump, Waltine Nauta, and

 6   Carlos De Oliveira.

 7          Will counsel please make your appearances, starting

 8   with Special Counsel.

 9          MR. BRATT:  Good morning, Your Honor.  Jay Bratt,

10   James Pearce, and David Harbach on behalf of the United States.

11          THE COURT:  Thank you.

12          MR. BOVE:  Good morning, Your Honor.  Emil Bove,

13   Todd Blanche, and Chris Kise here for President Trump, who is

14   not here today with leave of the Court.

15          THE COURT:  All right.  Thank you.

16          Who is here for Mr. Nauta?

17          MR. WOODWARD:  Good morning, Your Honor.

18   Stanley Woodward and Sasha Dadan on behalf of Mr. Nauta.

19          THE COURT:  Thank you.

20          And who is here for Mr. De Oliveira?

21          MR. IRVING:  Good morning, Your Honor.

22          John Irving and Donnie Murrell on behalf of

23   Mr. De Oliveira, who is also not here.

24          THE COURT:  All right.  Thank you, all.  Good morning.

25          Good morning to everybody in the gallery.
```

```
 1              As usual, I will make the reminders that there are no
 2    electronic devices permitted in the courtroom.  We have set up
 3    the overflow room.
 4              Ms. Cassisi, I don't see the live stream.  Is that
 5    functional?
 6              COURTROOM DEPUTY:  It should be, Your Honor.  Give me
 7    one second.
 8              THE COURT:  We may need to recess briefly to ensure
 9    that anybody wishing to view these proceedings has that
10    ability.  So I'm going to step off the bench momentarily to
11    make sure we have that access set up.  Thank you.
12              We are in a brief recess.
13         (A recess was taken from 9:35 a.m. to 9:37 a.m.)
14              THE COURT:  All right.  Thank you.  Hello again.  You
15    may be seated.  I have been advised that the overflow room is
16    receiving the feed, both audio and video.  So we are all set to
17    proceed.
18              We have had appearances.  I will then set forth the
19    motion that is to be heard today, which, as the parties are
20    aware, is entitled:  Defendant Trump's motion to dismiss
21    indictment based on unlawful appointment of Special Counsel
22    Jack Smith.
23              This is filed at entry 326.  Defendants Nauta and
24    De Oliveira join the motion.  There is a separate aspect to
25    this motion that will be covered on Monday.
```

1          I have reviewed the Special Counsel's opposition, along

2     with the reply filed in support of the motion.  The Court also

3     authorized the filing of three amicus briefs on the

4     Appointments Clause question.  One of those briefs has been

5     filed by Former Attorneys General Meese and Mukasey, along with

6     law professors Steven Calabresi and Gary Lawson, an

7     organization, Citizens United and Citizens United Foundation.

8          There is a second amicus brief filed by

9     Professor Seth Tillman and Landmark Legal Foundation in support

10    of a motion to dismiss, and that can be found on the docket at

11    entry 410-2.

12         And finally, there is the amicus brief filed by the

13    constitutional lawyers, which consists of constitutional

14    lawyers, former government officials, and State Democracy

15    Defenders Action, which is at entry 429.

16         The Court also ordered and received supplemental

17    briefing addressing and eschewing the need for further factual

18    development on the motion, at least as relates to the

19    Appointments Clause component.

20         I understand we have the three presenting attorneys for

21    the amicus in the courtroom.  And those individuals are:

22    Josh Blackman, Gene Schaerr, and Matthew Seligman.

23         The plan for today is to begin with defense counsel

24    because it is their motion, then turn to the Special Counsel's

25    team, then likely break for lunch, depending on the time and

 1    where we are.

 2              Is there an issue with the IT?

 3                   (Off-the-record discussion with IT.)

 4         THE COURT:  All right.  Do we have confirmation that

 5    it's streaming to the second floor?

 6         COURT SECURITY OFFICER:  Yes.

 7         COURTROOM DEPUTY:  Yes, Your Honor.

 8         THE COURT:  Okay.  Thank you, Larry.  Okay.

 9         So that is the plan.  After we hear from the amicus

10    parties, then I will be winding up with rebuttal from the

11    parties, as appropriate.  I do want to just understand, in

12    terms of who is going to be presenting argument for the defense

13    side, who will that be today?

14         MR. BOVE:  I will be arguing for President Trump.

15         THE COURT:  Okay.  Mr. Woodward, do you plan on

16    presenting oral argument today?

17         MR. WOODWARD:  No, Your Honor.

18         THE COURT:  Mr. Irving?

19         MR. IRVING:  No, Your Honor.

20         THE COURT:  Okay.  All right.  Then let's start with

21    Mr. Bove.

22         MR. BOVE:  Good afternoon, Your Honor.

23         So this motion today, we are focused on two components

24    of the Appointments Clause.  First, the part of the clause that

25    requires that a Special Counsel be appointed and an officer be

1    appointed by law; and that is what is addressed in our motions

2    with respect to several of the statutes in Title 28 that the

3    Special Counsel has argued in this case, and in previous cases,

4    justify the appointment.  And then we're also relying on the

5    principal officer argument in the amicus brief filed by

6    Attorneys General Meese and Mukasey.

7            THE COURT:  So am I correct that you're not taking the

8    position that the Special Counsel is merely an employee?

9            MR. BOVE:  That is correct, Judge.  That's a very

10   thoughtful amicus submission by Professors Tillman and Blackman

11   that raises some important points, we think.  But

12   we're -- there is too much tension, from our perspective,

13   between the employee argument and the arguments that we're

14   presenting about the bylaw language and the principal officer.

15           THE COURT:  So you're proceeding on the "he qualifies

16   at least as an inferior officer, and then also, potentially, in

17   your view, as a superior"; is that correct?

18           MR. BOVE:  Yes, Judge.

19           THE COURT:  Okay.  Continue.

20           MR. BOVE:  And so, with respect to the bylaw part of

21   this argument, I don't think that there is -- there is any

22   dispute that the Special Counsel regulations, the Reno

23   Regulations, do not qualify as a provision that would authorize

24   this appointment.  And really, what's been put forward by the

25   Special Counsel's Office in this case are two provisions of

```
 1    Title 28; they're Section 533 and Section 515.  And
 2    when -- when attention is drawn, when focus is given to the
 3    text of those statutes, I don't think that there is much of a
 4    question that that statutory text does not authorize the
 5    Attorney General's appointment of the Special Counsel in this
 6    case.
 7           And we're mindful of the fact that we come before
 8    Your Honor in the context of a record that involves some
 9    litigation in the District of Columbia relating to a prior
10    Special Counsel.  I don't think that even in those -- in many
11    of those proceedings, at least, those decisions, there was a
12    lot of careful analysis of the text of those statutes.  And so
13    that is where I would like to begin this morning.  And I would
14    like to start with Section 533-1.
15           This -- this is a provision that in litigation in the
16    District of Columbia, the Concord Management case,
17    Judge Friedrich said:  That there are strong arguments that
18    this provision does not confer the authority at issue here.
19    And I think that the reason that -- that that Court found that
20    they were strong arguments, and the reason they are, in fact,
21    meritorious arguments, is that this is a provision that refers
22    to officials, not officers.  It is not a provision that
23    authorizes the appointment of an officer as required by the
24    Appointments Clause.
25           And this is language, often -- distinction, "officers
```

1    versus officials," that Congress has drawn both in this

2    chapter, Chapter 33, and in the adjacent chapter, Chapter 31.

3    And so we can look to Section 535, where Congress makes

4    specific reference to officers and employees; 509, there is a

5    reference to other officers; 516, officers; and in 519 as well.

6          And that is a critical distinction in our mind because

7    this is a provision that is being relied on by the government

8    to justify this appointment, and it doesn't say what the

9    Constitution requires.  It doesn't provide for the appointment

10   of an officer.

11         Congress also knows outside of the Attorney General DOJ

12   statutes how to authorize the appointment of officers.  And

13   we've laid out some of those in our briefing, and it's also in

14   the Attorney General's amicus, that's in -- the Department of

15   Agriculture has a specific officer-appointing statute; so does

16   the Department of Education; HHS does; and the Department of

17   Transportation as well.

18         In addition to all of that, there is a specific

19   officer-appointing provision in Title 18 relating to the Bureau

20   of Prisons only.

21         So with all of this context, Judge, we just do not

22   think that this term "may appoint officials" can be read to

23   authorize the appointment of an officer like the Special

24   Counsel in this case.

25         THE COURT:  Are you aware of any other general vesting

1    clauses that use the word "official"?

2         MR. BOVE:  There is a Bureau of Prisons statute that we

3    cite, 18 U.S.C., 404(1) -- excuse me, use "official."

4         THE COURT:  Correct.

5         MR. BOVE:  I'm not, Judge.

6         And so this -- this is why I say that the text of these

7    statutes really matters here.  And this is not a provision that

8    authorizes the appointment of an officer.  We think that this

9    is best read to authorize the appointment of employees, like

10   special agents of the FBI.

11        THE COURT:  Would you agree that the word "official" is

12   used throughout the U.S. Code in various definitional sections,

13   for example, identified by the constitutional lawyer's brief?

14   What to be made of that?

15        MR. BOVE:  I think that it is used throughout the

16   U.S. Code, but not in a way that authorizes appointments, and

17   not in a way that would authorize this type of appointment to

18   create an office like the office of the Special Counsel.  And

19   if -- if "officials" is read this way, then many of the other

20   parts of Chapter 33 and Chapter 31 don't make any sense with

21   the statutes -- the parts of the statute that authorize the

22   appointment of the Deputy Attorney General, the Assistant

23   Attorney General, the Associate Attorney General.  All of those

24   provisions specifically refer to officers.

25        And so this -- if 533 is a general authorization to

1    appoint any type of inferior officer that the Attorney General

2    sees fit, then the rest of the carefully set-up structure of

3    this -- these two chapters doesn't make any sense.

4         THE COURT:  What do you make of the reference to

5    "prosecute" in 533, where it references appointing officials to

6    detect and prosecute crimes against the United States?

7         MR. BOVE:  I think that that is a term that is

8    ambiguous in this setting.  It's ambiguous, first, because it

9    is located in a chapter about the FBI.  But second, because

10   there are times when that word "prosecute" is used in a

11   more -- doesn't necessarily mean criminal prosecution.  It's

12   used in a manner that connotes pushing forward with a case,

13   with a litigation.

14        So, for example, a Federal Rule of Civil Procedure 41

15   refers to a failure to prosecute, and it means to litigate.

16   And so there are employees and people within the FBI that have

17   the ability to litigate in that context.  And so I don't think

18   that this is limited -- I don't think that this means,

19   necessarily, criminally prosecute.  And I think that there are

20   attorneys at the FBI who do that type of work and assist in

21   prosecutions, in any event.

22        And so for both those reasons, this does not, from our

23   perspective, create the ability of the Attorney General to make

24   a general appointment of any type of inferior officer that he

25   sees fit.

1          THE COURT:  Historically, can you shed any light on the

2     use of 533 as a basis for the appointment of an independent

3     counsel or a Special Counsel?

4          MR. BOVE:  I can, Judge.  And I think that that is

5     important.  Because from -- from what I have seen, there is a

6     citation to 533 in the Supreme Court's Nixon decision that

7     I assume we are going to talk about at some point this morning.

8     And then it's really not relied on after that point, to my

9     mind, until the order in this case appointing Jack Smith.

10          And that holds even for -- the Mueller appointment

11     order does not cite 533.  And I take that as recognition that a

12     statute that references officials explicitly doesn't authorize,

13     pursuant to the Appointments Clause, the appointment of an

14     officer.  And I certainly think that even in the Nixon case,

15     there is -- there is no analysis or thought put into what that

16     term means and what it authorizes.  And I don't think that it's

17     been used again until this case.

18          THE COURT:  Has it been used after this appointment

19     order?

20          MR. BOVE:  Yes.  It's also cited in the order

21     appointing Robert Hur.

22          THE COURT:  So do you take the position that if a

23     general vesting statute doesn't use the word "officer," it

24     can't operate as a general vesting clause?

25          MR. BOVE:  I think that's right textually, Judge, but I

1   don't think you need to -- I don't think you need to go that

2   far in the context of 533 to resolve this part of the motion in

3   our favor.  Because in addition to what the -- the words of 533

4   actually say, there is a very important context here, a series

5   of provisions that precede 533 that are very specific about the

6   use of the word "officer."

7          There is a provision of Title 18 relating to the Bureau

8   of Prisons only that uses the word "officer."  And then there's

9   this provision in a section relating to the FBI that says

10  "official."  And so I think, yes, there is a strong categorical

11  argument that in a situation that is as important as whether or

12  not the Appointments Clause is satisfied, particularly when

13  Your Honor is interpreting the statute in light of what has

14  been increased focus by the Supreme Court, on this type of

15  issue, and on textual analysis of this type of issue, that,

16  yes, categorically, that's required.

17         But you don't need to go that far, because in the

18  context of everything else that's going on in Title 28 and

19  Title 18 here, to look -- to read this term to mean something

20  that it doesn't say doesn't fit with the rest of what's going

21  on in these provisions.

22         THE COURT:  All right.  Please turn to any other

23  statutes you wish to comment on.

24         MR. BOVE:  So I'm focusing this morning on the -- the

25  arguments that the Special Counsel's Office has made both in

1    this case and in the litigation in the District of Columbia

2    based on -- relating to Robert Mueller's appointment.  And so

3    the other provision -- there was no argument about 533 in the

4    Mueller litigation, whether that -- in any of those cases.

5            The statute that drew a lot of the focus, as I

6    understand it, is 515.  And so I would like to spend some time

7    there.

8            And I think where I'd like to start is with the

9    judicial analysis of 515 in the District of Columbia.  This

10   Concord Management case was very clear.  This 515 does not

11   explicitly empower the acting Attorney General to appoint or

12   retain anyone.  In Re: Sealed case -- this is the D.C. circuit

13   in 1987.  I think a big part of why the District of Columbia

14   courts were inclined to deny Appointments Clause motions

15   relating to Mueller was this 1987 In Re: Sealed case.  That

16   panel also said 515 does -- do not explicitly authorize this

17   appointment.

18           And so, obviously In Re: Sealed case comes out against

19   us; it comes out the other way.  But it's striking to me that

20   both -- both those courts, and I think others, acknowledge that

21   when you look at the text of 515, it doesn't say what the

22   Attorney General has said, in litigating positions, they think

23   that it means.

24           And so when you start with just -- just the plain

25   English, 515(a) is about restricting the scope of -- excuse

1    me -- expanding the scope of the authorities of properly

2    appointed special attorney.  It is about setting the duties and

3    the responsibilities and, to some extent, the geographic

4    limitations on somebody who has already been appointed pursuant

5    to a statute that authorizes the appointment of an officer.

6            515(b) --

7            THE COURT:  What do you take the meaning of a special

8    attorney to be in 515?  Is it the same special attorney

9    referenced in 543 and in 519?

10           MR. BOVE:  Thank you for asking, Judge.  I think that's

11   so important to this argument, and I think that what you just

12   said is exactly right.  And it gets back to why the textual

13   analysis is so important here.

14           There is -- there is -- 515(a) is specifically limited

15   to two types of attorneys, neither of which fits the bill for

16   what's going on in this courtroom.

17           There are attorneys who are assisting the Attorney

18   General; that's not what we have here.  And I think, really,

19   when we get to the principal officer argument, it's quite the

20   opposite.  And then you have this term, "special attorney,"

21   that is -- if -- if we're going to be focused on the text of

22   the statutes, as we must be, that term is then defined in 543,

23   the title of that provision is "special attorney."

24           THE COURT:  You would agree there is no explicit

25   cross-reference, though, to 543 and 515?

 1          MR. BOVE:  I agree with that, Judge.  But I think that

 2     these -- these provisions are so closely -- just, their

 3     proximity is so close within Title 28 that this is the most

 4     obvious place to look.  This is where -- I mean, there is a

 5     statute several sections down that says this is what a special

 6     attorney is.

 7          If we are trying to figure out what Congress meant in

 8     515 by that term, that is the most obvious place to look.  And

 9     it's -- you don't drop down all the way to Section 543.  As you

10     pointed out, you look, I think, to 519, which also references

11     "special attorney" and makes a point, in the same chapter as

12     515, to look down to 543.

13          And so that is -- you know, these are the -- those are

14     the two types of attorneys that are referenced in 515.

15          THE COURT:  So what is a special attorney?  Is it any

16     different from --

17          MR. BOVE:  It --

18          THE COURT:  -- excuse me -- a special assistant?

19          MR. BOVE:  I think so, yes, Judge.

20          THE COURT:  What is the difference between a special

21     attorney to the Attorney General, perhaps, versus a special

22     assistant to the Attorney General?

23          MR. BOVE:  I think that there is a special assistant to

24     the Attorney General -- I think that both terms contemplate

25     somebody coming from outside of the government.  I think a

 1   special -- a special assistant to the Attorney General

 2   contemplates a more direct reporting relationship, sort

 3   of -- and I think this is part of the issue when you start to

 4   try and stretch that term to reach a Special Counsel-type

 5   position, because it's somebody who is more akin to a DAAG,

 6   somebody reporting and assisting the Attorney General, somebody

 7   who comes in from outside of the government to serve in that

 8   capacity, who -- almost like a shadow DAAG, somebody at a high

 9   level.  I think that's what it means to be an assistant to the

10   Attorney General.

11          A special attorney, as defined in 543(a), I think -- I

12   think you look there and it says "to assist United States

13   attorneys."  And so this -- clearly, the Special Counsel here

14   is not assisting a United States attorney.  It's -- once again,

15   and I think the Attorney General amicus does a very good job of

16   laying out this concern, that there is a -- basically, if you

17   read the statutes in this way, it comes -- it can lead to a

18   conclusion where the Attorney General has the ability to set up

19   a shadow government and to have people operating without, you

20   know, the specifics of the procedures that are laid out in

21   504 --

22          THE COURT:  That sounds very ominous, this shadow

23   government, but what do you really mean?

24          MR. BOVE:  I mean, inferior officers who are not -- who

25   don't receive confirmation from the Senate and they serve in

1    positions that are akin to deputy attorney generals, as defined

2    in 504, or for a special attorney, somebody who's -- in the

3    same way, a U.S. attorney would be confirmed, this person is

4    not, and that is the risks that we're running.

5         THE COURT:  But is that really a realistic risk when

6    you have, arguably, well-defined regulations and various other

7    statutes that delineate the positions of various other officers

8    within the Department?

9         MR. BOVE:  I think that it's more than a realistic

10   risk.  I think that it -- in many ways, that's what happened

11   here.  There is a Special Counsel operating in a physical

12   building in the District of Columbia, convening and relying on

13   grand jury proceedings in the District of Columbia, in a case

14   here that could have never conceivably been venued any place

15   but here, avoiding the judges of this bench, avoiding the grand

16   jury --

17        THE COURT:  Well, I don't know if it's fair to draw

18   aspersions in that direction.

19        Focusing again on the text, though, what limitations

20   would exist within the framework of Title 28 to potentially

21   prevent this notion of a shadow government that you have

22   suggested?

23        MR. BOVE:  I think it is the Appointments Clause.  I

24   think it is that without a careful focus on the text of what

25   these statutes do and do not authorize, you lead to these

1    risks.  You lead to -- you run into situations where Special

2    Counsels can be appointed without the type of oversight and the

3    type of confirmation and interaction that -- that is required

4    so that they're accountable.  I think that that's what the --

5    the lack of textual analysis has led us to this place, and that

6    is why the motion, I think, wins, because these statutes do not

7    do what the government says they do.

8         And the only way that they can get there is to rely on

9    cases that are either -- that did not engage with these issues,

10   as Nixon, or are not binding on Your Honor.

11        THE COURT:  What is your view of the interplay between

12   515(a) and (b)?  I take the Special Counsel's brief to be

13   relying, really, on (b).  And I'm wondering what does (a) do,

14   if anything, in the analysis?

15        MR. BOVE:  I think (a) provides context that supports

16   our position, but it does no more than that.  And when I say

17   that it provides context that supports our position, what I

18   mean is that (a) is crafted in terms of the past tense,

19   "appointed."  It also -- it refers to a separate source of

20   authority for the appointment by the Attorney General under

21   law.

22        And so I think that these parts of 515(a) sort of

23   inform what -- what the past tense means, "retained" and

24   "commissioned," in 515(b).  And when the -- 515(b) says "under

25   authority of the Department of Justice."  When you read these

1    two provisions together -- and I acknowledge some of the

2    history cited by the government that these provisions sort of

3    came from separate places and were merged.  But for -- for

4    purposes of this motion, we need to go by what they say today

5    and what they authorized around the time of the appointment in

6    November of '22 of Jack Smith.  And they do not say that --

7    these do not serve as independent bases for an appointment of

8    an officer.  They -- they refer to other sources of authority,

9    which we don't think exist, that need to be relied on.

10         And so that's why -- that's why we think -- frankly,

11   assume that to -- the government, when it came time to appoint

12   Smith to shore up its position, to do the best they could, they

13   added 533 to try and get to another place with a textual

14   commitment of authority for an appointment.

15         Looking back to Nixon, that was a statute that was

16   cited in Nixon.  We can't get around that; that's true.  And so

17   that jumps back in -- 533 jumps back in when it wasn't in the

18   Mueller order.

19         THE COURT:  What do you make of the terminology

20   "specially retained" in 515(b)?

21         MR. BOVE:  I think it's just -- it's another point,

22   Judge, where, instead of using the terminology that is

23   consistent and required by -- consistent with and required by

24   the Appointments Clause, these ideas that people can be

25   retained in the sense of hiring from outside of the government

1     to serve in certain capacities to assist either the Attorney

2     General or the U.S. attorney.

3            THE COURT:  Is there anything to draw from the word

4     "commissioned"?

5            MR. BOVE:  I think that what I draw from it is it's

6     another past tense verb in this provision that, to me, points

7     in the direction of there needs to be a separate source of

8     authority because 515(b) contemplates somebody who has already

9     been properly appointed and is now at a point where the

10    commission needs to be entered.

11           THE COURT:  Is the act of providing a commission more

12    consistent with officers?

13           MR. BOVE:  I'm not sure that that's right, Judge.  I

14    would have to look back at that.

15           THE COURT:  All right.  So why don't you address the

16    history, which is treated in the Special Counsel's opposition;

17    and I know it's been addressed in other authorities.  And by

18    that, I mean the history of the use of special prosecutors.  I

19    want to be careful with the terminology.

20           And when we say "special prosecutor" or "independent

21    counsel" or "Special Counsel," we're carefully attuned to what

22    those individuals' roles actually were in comparison to what

23    we're addressing now.

24           MR. BOVE:  Thank you, Your Honor.  And I will do my

25    best with the terminology; I think it shifted over time.  And I

1   think that part of the reason that it shifted is that there

2   were -- in these previous cases, there were other sources of

3   authority relied on for the appointments at issue.  And so I

4   will start with -- with Nixon, if I could, Judge.

5          THE COURT:  Well, that -- but part of my question is:

6   Where do we start in that history?  Do we focus on the modern

7   history starting in 1974, or do we go backwards, you know, all

8   the way to the 1800s where -- and it's hard to find some of

9   these sources -- where there is reference to the existence of

10  special prosecutors, what exactly their role was, and the

11  degree of their independence is not entirely clear?

12         MR. BOVE:  I think that for our purposes, for President

13  Trump's purposes, the last thing that you said is the most

14  important.  There is a varied history and practice with respect

15  to bringing in attorneys, either from within the government, as

16  in the case of Patrick Fitzgerald, or from outside of the

17  government, as we have here.  There are -- there is a history.

18  History and practice, though, can't overcome the text of these

19  statutes.  And that is ultimately our position and what we're

20  relying on in this motion.

21         THE COURT:  Is there something to be said, though --

22  this is referenced -- about Congressional acquiescence to this

23  practice?

24         MR. BOVE:  I really don't think so, Judge, because when

25  we talk -- I think it goes back to the point you made about

1   different terminology.  When we talk about "this practice," the

2   practice has shifted over time, and the Supreme Court's focus

3   on the Appointments Clause has shifted over time.  And so to

4   look to pre-Buckley practice, when I don't think that

5   the -- the Appointments Clause was getting this level of focus

6   and scrutiny, I don't think it can -- it can't inform a textual

7   analysis of what these statutes do and do not authorize.

8   That's the issue for us.

9       THE COURT:  What about some of those other cases?  The

10   Special Counsel refers to a prosecution in New York involving a

11   prosecutor or a defendant by the name of Rosenthal.  And then

12   there is a subsequent case called Persico that, I think,

13   endeavors to discuss some of this history.  Have you studied

14   those authorities, and what can you offer on them?

15       MR. BOVE:  So I have looked at Rosenthal.  And I think

16   that its relevance here is that that is what drove in large

17   measure the text of 515(a).  It was a case where there were

18   concerns at a district court level about whether a -- I'm not

19   sure what the -- a special -- a special attorney had authority

20   to work in grand jury proceedings.  And so Congress then came

21   in and -- the predecessor to 515(a) -- to fix that problem.

22   And that's why I said that I think today the right way to look

23   at 515(a) is to think about it as a statute that governs, in

24   part, a geography and, in part, sort of scope and duties of

25   what somebody who is properly appointed from a separate source

 1   can handle.

 2          THE COURT:  So do you view that history as kind of

 3   authorizing the assistant role, so to speak, that ultimately

 4   features in the text of 515, or is it more akin to the

 5   independent Special Counsel that we're faced with now?

 6          MR. BOVE:  I think to the extent that we're looking

 7   at -- and we have to look at 515 as, you know, what's currently

 8   on the books; and it's referencing this special attorney

 9   concept.  I think that's the way to frame it, is some -- that

10   what the statute currently authorizes, which is what matters,

11   is someone who can assist a U.S. attorney or assist, in a

12   direct way, the Attorney General, but not someone with the

13   independence that we see from the Special Counsel.

14          THE COURT:  In your view -- and what would be the best

15   source, historical source, to review, kind of, like an overview

16   of the history of special prosecutors?

17          MR. BOVE:  Honestly, Judge, my candid answer to that

18   question would be Mr. Schaerr.  I think that that is a brief

19   that reflects it -- an attention to detail on some of the

20   historical points and some of the real practical realities of

21   the expansion of this role, so we get to a place where there is

22   no more Ethics in Government Act.  There is, I think, the Reno

23   Regulations that have limitations, and a sprawling Special

24   Counsel who is now conducting two prosecutions in two

25   districts.

1          THE COURT:  I would like to focus on the regulations

2     for a minute.  What in the regulation speaks to the Attorney

3     General having the authority to direct the Special Counsel's

4     decisions with respect to the exercise of his jurisdiction as

5     defined in the appointment order?

6          MR. BOVE:  I think, you know, this sort of -- to my

7     mind trends over towards the principal officer argument in that

8     the parts of the regulation that we think are most relevant

9     there are at 600.7, where, in subparagraph B, it's clear that

10    the -- a Special Counsel acting in a way that's consistent with

11    those regulations is not subject to the day-to-day supervision

12    of the Attorney General.

13          That same paragraph says that, when there is sort of a

14    dispute or Attorney General review, that there is deference to

15    the Special Counsel's view, quote, "great weight to the views

16    of the Special Counsel," and that those are things that

17    emphasize that this really is sort of a free-floating principal

18    officer, as opposed to somebody who is subject to the oversight

19    and control of the Attorney General which is ultimately one of

20    the key issues, if not the -- the key issue on the principal

21    officer argument.

22          THE COURT:  But under the Edmond line of authority,

23    would you acknowledge that at least at some level, those

24    decisions really just speak in terms of whether you are

25    subordinate to a principal officer, and kind of end the

1   analysis at that point?

2        MR. BOVE:  I do -- I think that -- that there are

3   readings of Edmond that are like that.  I don't think that's an

4   unfair characterization; that, to be an inferior officer, there

5   must be a superior; right?  I think that is the -- the logic of

6   what some people have taken out of Edmond.  But I think, even

7   if you take that at face value, that's not what we have here,

8   at least right now.

9        When Attorney General Garland issued the order

10  appointing Jack Smith, he said he expected that Smith would

11  independently manage an investigation and prosecution -- I'm

12  quoting -- "to exercise independent prosecutorial judgment."

13       And in Congressional testimony this month, Attorney

14  General Garland doubled-down on that and said that he appointed

15  Smith because he was independent.

16       And then I think both in our papers and in the Attorney

17  General amicus, we cited to a motion in limine filing from

18  December of last year by the Special Counsel in the District of

19  Columbia where the prosecutors really scoffed at the idea that

20  there was coordination and oversight from, you know -- that was

21  framed in terms of the Biden administration, but Attorney

22  General Garland is very much a part of that.

23       And that -- that actually goes directly to the point

24  that you have a head of the department, under the Edmond line,

25  needs to be the superior, and Jack Smith, the inferior.  When

1    we expressed concerns about that, the Special Counsel's Office

2    argued in response that there -- that there was -- that that

3    was wholly false, that coordination with the Biden

4    administration was nonexistent.

5            And so I think that in this case, in the way that the

6    Special Counsel has been authorized and is operating, that he

7    is -- he is a principal officer because of the way that the

8    Attorney General -- and even in the Special Counsel's Office is

9    staffed, and court filings, is holding him out to operate.

10           THE COURT:  Zooming out, though, from this case and

11   just looking at the regulations, do you know if they would

12   require the Attorney General to sign off on the seeking of an

13   indictment?

14           MR. BOVE:  So this case prevent --

15           THE COURT:  I'm just looking at the text of the

16   regulations.

17           MR. BOVE:  I don't think that's clear.  I think that,

18   in the litigation over Mueller's appointment, there was some

19   representations made about the extent of the coordination, and

20   I think that that's the kind of thing that hopefully will be

21   clarified today.

22           In -- at the hearing in the Concord Management case on

23   the Appointments Clause issue, the Special Counsel's Office

24   represented that we have regular meetings and consultations so

25   that he -- that is, the acting Attorney General at the time --

1   is aware of our conduct, and went a little bit further and said

2   that they did expect that decisions could be countermanded by

3   the Attorney General.

4          THE COURT:  But you would agree -- I think the parties

5   are in agreement -- that no factual development is necessary on

6   this motion, because we can just focus on the text of the

7   regulations and the text of the appointment order without

8   concerning ourselves with what may or may not be happening in

9   reality?

10         MR. BOVE:  In response to Your Honor's order on that

11  issue, what we understood "factual development" to mean was --

12  is live testimony necessary?  And we understood that this type

13  of issue has been resolved by crediting representations to the

14  government about how they are operating.  I do think that those

15  types of representations about the relationship between the

16  Attorney General and the Special Counsel's Office and how

17  they're operating are necessary today to resolve that -- this

18  part of the motion, the principal officer argument, consistent

19  with what happened in the District of Columbia.

20         And I think what -- you know, we have had some

21  representations in this case about compliance with the Justice

22  Manual, and it's important in a couple of different ways.  One

23  is the election interference provision.  And I think that the

24  things that were said at the March 1st hearing about that

25  provision are not consistent with the text of that provision.

1           Another part of the Justice Manual that I think -- in

2    terms of how it operates in a case with a U.S. Attorney that's

3    really important is NSD's approval authority on investigative

4    steps and charges in a case involving national security.

5           THE COURT:  What does that have to do with this motion,

6    though?

7           MR. BOVE:  What that has to do with this motion is

8    whether or not the Special Counsel is complying with the

9    Justice Manual and operating subject to the Attorney General's

10   authority or, alternatively, operating separately as a

11   principal officer without that type of oversight, not engaging

12   in the types of procedural requirements that are necessary to

13   file these types of charges; as I said, if it was the U.S.

14   Attorney for the Southern District of Florida.  In that

15   scenario, the U.S. Attorney, pursuant to Justice Manual

16   9-90.020, would have to seek National Security Division

17   approval for a number of steps:  The search warrant for the

18   charges to be filed, and I think that's both the 793 charges as

19   well as the charges that relate to classified information

20   issues.

21          And so that's the type of thing that, to the extent the

22   government's position here today -- and I think this is their

23   position -- is "we are operating under the -- the oversight of

24   the Attorney General."  Well, what does that mean?  Because

25   what was said, again, in the Mueller litigation was we are

1    having regular coordination with him, meetings and -- regular

2    meetings and consultations.

3           That certainly is not the defense's impression of the

4    level of coordination, at least from what's been said, between

5    the Attorney General's Office and the Special Counsel's Office.

6    That was an important representation in Concord Management, and

7    it's an important representation in the context of this

8    principal officer analysis.  So I do think that some clarity on

9    that -- the level of engagement is important to resolve that

10   motion.

11          THE COURT:  Now, let's just talk briefly.  There is

12   some discussion in one of the amicus briefs about the absence

13   of the establishment of an office, sort of, the secondary point

14   to the officer issue.  And I'm wondering what is your view on

15   that?  When Special Counsels are appointed, is there usually a

16   corresponding establishment of an office?

17          MR. BOVE:  I -- to -- to me, it's, sort of, a related

18   point to the bylaw requirement in the Appointments Clause.

19   You know, we have focused on whether there is the ability to

20   appoint the officer, the Special Counsel, but there is also

21   provisions in Title 28 that authorize offices to be created.  I

22   think 509(b) relates to a human rights component of the

23   Department of Justice; 509(a) relates to the National Security

24   Division, which I just -- I referenced a minute ago.  And so

25   there is authority for the idea that Congress also knows how to

1     create offices and to populate them with appointments.  And

2     that hasn't happened here either.

3          THE COURT:  Is it necessary to go into that discussion,

4     sort of the statutory creation of an office?

5          MR. BOVE:  To me, it's complementary to the textual

6     analysis that's required by the bylaw requirement for the

7     officer appointment.  That there are examples of -- it just

8     goes to the point that Congress crafted, sort of, a careful set

9     of provisions here that call for very specific things.  And

10    what they do not call for is an office of the magnitude that is

11    running on -- in D.C. right now to operate this case, or a

12    Special Counsel with the level of independent authority that we

13    see being wielded here.

14         THE COURT:  Now, you would accept the reality that all

15    of the circuit case law addressing whether U.S. attorneys

16    qualify as principal or inferior have decided that they fall on

17    the inferior line; correct?

18         MR. BOVE:  I would accept that the Hilario decision in

19    the First Circuit reached a -- used language like that in a

20    situation where -- talking about interim U.S. Attorneys.  I

21    don't think that they -- that that case addressed head on what

22    it means to deal with a U.S. Attorney appointed pursuant to

23    28 U.S.C. -- I think it's 541.

24         And so I think it's distinguishable on that grounds,

25    that they're talking about a, sort of -- almost like a

1    succession of the U.S. attorneys.  And so there is language

2    from that First Circuit opinion.  I don't think it's been

3    followed since then, and I think it's been distinguished on the

4    basis that I'm describing.

5         THE COURT:  But to get to where you want to go with the

6    superior designation, wouldn't you have to broaden out the

7    Edmond test in a way that courts don't appear to have done?

8         MR. BOVE:  I think that the -- the record here, in

9    terms of what the Attorney General has said about this Special

10   Counsel, is clear enough that the -- there is no superior for

11   Jack Smith, that he is operating independently.  That's what's

12   been said repeatedly.  We have been scoffed at when we suggest

13   otherwise.  And so I think that that's what factually takes

14   this case out -- it sort of -- it addresses that Edmond issue,

15   an inferior is someone who has a superior.

16        Jack Smith does not have a superior who is operating

17   with sufficient oversight authority over his decisions right

18   now.

19        THE COURT:  All right.  Now, address Nixon.

20        MR. BOVE:  Look, I think Nixon did not address the

21   types of things that we're talking about.  It was taken as a --

22   sort of, a foregone conclusion that the statutes that are cited

23   in Nixon, 509 and 510, which I don't think anybody is relying

24   on as authority to appoint a Special Counsel from outside of

25   the government.

1           And then, obviously, the Court referred to 515 and 533

2    without any discussion whatsoever.  And so -- so what does that

3    mean, is obviously the question.  I think the historical

4    context is very, very important to that question.  What was

5    going on in Nixon was that the Attorney General, who was

6    appointing the special prosecutors, had agreed, as a condition

7    of his confirmation, to put people in that position, and felt

8    so strongly about that agreement, that when President Nixon

9    asked him to terminate the first Special Counsel, he resigned.

10           Ultimately, by the time the Supreme Court got the Nixon

11    case, there was another Special Counsel in place.  And it was

12    on that record where there was this commitment in confirmation

13    proceedings to have a Special Counsel with these certain

14    authorities that the Court -- in a paragraph that -- again,

15    it's factual; it skims right past what is the core of our

16    arguments.  There is no textual analysis.  And that's because

17    nobody was challenging the validity of that appointment,

18    because it had received so much, sort of, both political and

19    legal wrangling before that case.  And the government has

20    conceded that.  They concede in their briefing here that

21    President Nixon did not contest that statutory analysis; that's

22    a quote from their brief.  They conceded in -- the same thing

23    in litigation relating to Mueller.

24           And so these -- to take -- to stretch this, this

25    paragraph from Nixon, into, you know, binding authority about

1    the text of these statutes is -- is too much.  And I don't

2    think that the D.C. circuit has gone there either.

3         If you look at the Sealed case, the 1987 D.C. Circuit

4    decision, footnote 30 says that:  "The Nixon decision

5    presupposed" -- presupposed -- "the validity of a regulation

6    appointing the special prosecutor."  So I -- and I think

7    footnote 30 is, if not the -- if not the only, there is not

8    much other citation to Nixon in that whole decision by the D.C.

9    circuit case because there is nothing to rely on here.

10        And then --

11        THE COURT:  What do you say to the Special Counsel's

12   point, though, that at least with respect -- like, on the

13   justiciability holding, that there -- that the Supreme Court,

14   arguably, was reasoning from that prior statement to reach

15   its -- its decision that the matter was -- I have trouble

16   saying that word -- justiciable?

17        MR. BOVE:  I'm not even going to try, Judge, if I can

18   get away with it.

19        That's a stretch, Judge.  That is absolutely a stretch

20   to say that an undisputed proposition that no one challenged,

21   that even the D.C. circuit recognized in '87 was presupposed,

22   was some sort of necessary component to the decision -- because

23   what's really going on at that point in the opinion, I submit,

24   is that there is an argument by President Nixon that this is a,

25   quote, "intrabranch conflict," meaning within the executive

1   branch.

2          And if you look at the very beginning of this paragraph

3   in Nixon, our starting point is the nature of the proceeding.

4   And what the Court is focused on is the fact that they're in

5   federal court, with a criminal prosecution.  It's not

6   intrabranch anymore.  They're out in public.  There's an

7   Article 3 judge involved, and that's what mattered in terms of,

8   was there a case or controversy from a constitutional

9   perspective?

10         They didn't spend any time at all, other than just

11  observing factually, what led the special prosecutor to be in

12  the courtroom, sitting at the table that day.  But that wasn't

13  core to the analysis at all.

14         And I just -- it's self-evident, Judge.  There is no

15  discussion of what 515 means, of what 533 means.  And I think

16  the 533 part is really significant because not even the

17  government, until this case, really relied on 533 as a basis

18  for this type of appointment.  It's not in the Mueller

19  appointment.

20         THE COURT:  Well, you would agree that, just in

21  general, when we discussed dicta versus holding, that just the

22  insufficiency of rationale isn't alone enough to designate

23  something merely as dictum; correct?

24         MR. BOVE:  I think that's right.  But I think that it

25  goes a long way toward -- towards Your Honor interpreting what

1    to make of this single paragraph of that decision.  And when

2    it's not necessary to even the -- I almost -- to the analysis

3    in that part of the opinion.

4          THE COURT:  We'll just call that part 2.

5          MR. BOVE:  It's not necessary to part 2, and it glosses

6    over the fundamental issues that are presented by this motion

7    to such an extent that when -- they're distinct, but similar

8    arguments were raised in the District of Columbia, not -- the

9    Court -- these courts did not -- they didn't look to -- there

10   is no citation to Nixon as "this is persuasive authority."

11   It's just they reference -- the Supreme Court has referenced

12   these statutes, and so we're going to gloss over the issue in

13   the same way.

14         And that's very much what we're urging Your Honor not

15   to do here, and that's why I started in the text of these

16   statutes because they -- whatever Nixon means as a factual

17   observation for why people were standing up in the courtroom,

18   seeking that evidence in that case, this is not analysis that

19   supports an appointment of someone operating as Jack Smith is

20   today.

21         THE COURT:  All right.  I think, sort of, my final

22   question would -- at this stage would just be, you would agree,

23   though, that the regulations -- the regulation in Nixon did not

24   address -- did not cite 533?

25         Am I correct about that?

```
 1            MR. BOVE:  I think that -- I'm not positive, Judge.

 2            THE COURT:  Okay.  So -- so is it your view that this

 3    statutory authorization piece just got lost and was -- was

 4    assumed?

 5            What do you make of that?

 6            MR. BOVE:  I think "assumed" is the right word.  I

 7    think the D.C. circuit said "presupposed."  But in either

 8    event, what happened here is, there was not careful attention

 9    given to the Appointments Clause argument that we are making

10    here.  And so Nixon is not binding authority -- I mean, it's

11    just absolutely not binding authority with respect to the

12    textual analysis that we put forward.

13            And I think the question is:  What does Your Honor do

14    with the D.C. circuit and district court decisions that sort of

15    built off of Nixon, based on this concept that the analysis

16    presupposed?

17            And what you see is that the 1987 case was dealing with

18    a special attorney who -- the decision turns on this idea that

19    he was already within the -- the Department of Justice.

20            And so that, from our perspective, brings that --

21            THE COURT:  That decision came within the context of

22    the independent counsel statute?

23            MR. BOVE:  Well, there were alternative bases for that

24    appointment.  There was the Ethics in Government Act and the

25    independent counsel statute, and a regulation specifically
```

1    promulgated to authorize a Special Counsel with respect to the

2    Iran-Contra investigation.

3           And so the Court was looking at the regulation, and the

4    Court -- there was already litigation about the Ethics in

5    Government Act at that point.  And so the D.C. circuit is

6    looking to the regulation, but making the point in

7    foot- -- it's one of the footnotes -- footnote 29 -- that that

8    attorney was within DOJ.

9           And so that -- under that type of analysis, I think

10   that's a very important distinction.  Once you're within DOJ,

11   that means there was another source of authority that

12   authorized the appointment.  And then 515 starts to look a lot

13   more plausible as a -- as something to define scope of duties,

14   title, geographic limitations, things like that.

15          But that's not what we have here.  That is not -- Jack

16   Smith was not within the U.S. government, and so

17   that's -- that's a reason -- you have these two features of the

18   1987 D.C. circuit case.  One, treating Nixon as a case that

19   presupposed the very issues that we're raising here; and two,

20   analysis that focused on an attorney who was already within

21   DOJ.

22          And so for both of those reasons, as Your Honor sits

23   here outside of the D.C. circuit thinking about what to make of

24   that decision, I think what is to be made of that decision is

25   that it doesn't -- it should not even be persuasive to the

1    arguments that we're making here.  There's no discussion,

2    again, of the textual arguments that we have raised and that

3    have been raised in the Attorney General amicus briefs.

4         And then you see courts -- as the Mueller challenges

5    happened, you see courts sort of struggling with what to make

6    of this.  And Judge --

7         THE COURT:  Well, I was just going to say the district

8    court in D.C. did do a fairly comprehensive review.

9         MR. BOVE:  I'm not going to argue with that.

10        Two points.

11        One, 533 was not -- not an issue.  And two, I think if

12   you look at the specific part of the analysis in that opinion

13   that relates to 515, there is sort of two lines of logic or

14   analysis there.  One is historical practice.  My point, just to

15   reiterate it, is that historical practice can't overcome the

16   operative text of a statute that we're dealing with today.

17        Two, that the -- the Court is also looking at

18   dictionary definitions, instead of just what these terms mean

19   in 515 relative to the -- the discussion we had about special

20   attorneys as defined in 543 and referenced in 519.

21   That -- that type of analysis, I don't think, is meaningfully

22   engaged with.  And I think that that decision was affirmed by

23   the D.C. circuit; we acknowledge that.  The D.C. circuit did

24   not engage or adopt, I don't think, in much, if any, of that

25   textual analysis.

1           Because what's really going on there is the D.C.

2    circuit treats dicta in a way that I don't see similar

3    authority in -- in the Eleventh Circuit with a very, sort of,

4    broad brush.

5           And I'm quoting here --

6           THE COURT:  All right.  Well, we're approaching 10:30.

7    I'd like to hear from whoever will be taking the lead on this

8    motion from the Special Counsel's Office.

9           So thank you.

10          MR. BOVE:  Thank you, Judge.

11          MR. PEARCE:  Good morning, Your Honor.  James Pearce

12   for the United States.

13          THE COURT:  Good morning.

14          MR. PEARCE:  The former president's argument that the

15   Attorney General lacked the statutory authority to appoint the

16   Special Counsel is foreclosed by precedent, finds no support in

17   text or history, and would have potentially pernicious

18   consequences.

19          The second argument, which I hear him adopt today, that

20   the Special Counsel is a principal officer, runs headlong into

21   the test from Edmond alongside a statutory and regulatory

22   framework that makes clear that the Special Counsel is inferior

23   to the Attorney General.

24          I'd like to start on the statutory argument and kind of

25   go through in the order that I just suggested, sort of

1    precedent, text/history, and consequences.  But, of course, if

2    the Court wants to take me any other direction, I'm happy to do

3    that.  And, in fact, Nixon is where we just stopped the

4    conversation.

5           In Nixon itself -- and I should start by saying all

6    eight of the judges in four cases that have confronted this

7    issue -- so two from -- two decisions from the D.C. circuit, as

8    well as two of the district court judges in D.C. -- have all

9    uniformly concluded that United States v. Nixon did resolve

10   this question.  Of course, it wasn't the principle issue.  The

11   principle issue was whether the president could invoke a

12   presidential communications privilege to -- to -- in the face

13   of a criminal trial subpoena.

14          THE COURT:  What do you mean "this issue"?

15          MR. PEARCE:  The issue of whether the Attorney General

16   has the statutory authority to appoint a Special Counsel.

17          THE COURT:  So in the Nixon record, what can you point

18   to to indicate that that question was presented and contested,

19   or even just presented to the Court in a way in which we could

20   say that a principle of decision actually was reached on that

21   question?

22          MR. PEARCE:  So we agree that it was not briefed by the

23   parties.  We made that -- we made that acknowledgement in our

24   brief.  I think that was part of the conversation you just had

25   with my friend on the other side.

1          But it is also the case, as Professor Garner cites in

2    his treatise on the law of judicial precedent, and as I think I

3    heard Your Honor indicate, that that's not, sort of,

4    dispositive of whether something is dicta or holding.

5          What matters is, is it a necessary antecedent to the

6    resolution of the case as a whole?  And that is precisely on

7    the justiciability, part 2, the question of, sort of, was there

8    a case or controversy?  President Nixon had argued, "Look, this

9    is just an intrabranch dispute.  There's no reason the Court

10   should be involved.  This is all the executive branch.  I'm the

11   president.  This is a prosecutor within the executive branch.

12   There is nothing for the Supreme Court to do here."

13         So what the Court necessarily had to decide was, did

14   the Attorney General have the statutory authority to issue the

15   regulation under -- which created the special prosecutor, and

16   which also gave the special prosecutor the specific power to

17   contest any assertion of executive privilege, which, of course,

18   was the --

19         THE COURT:  Why do you say the Supreme Court had to

20   necessarily decide that statutory question?  Could it be that

21   they were looking at the scope of the regulation, acknowledging

22   that it was a grant -- a delegated grant of authority, and then

23   deciding, well, there is an adverse relationship created

24   between the president and the special prosecutor, given the

25   nature of the scope of the regulations, without actually going,

1    kind of, behind the curtain and questioning the uncontested

2    point that the regulation was validly issued?

3          MR. PEARCE:  So I agree with everything except for that

4    last piece at the end.  I think, of course, they were --

5    they're trying to determine whether the special prosecutor had

6    the authority to contest whether the regulation rested on some

7    kind of authority that the Attorney General had.  But it

8    necessarily -- that the Supreme Court necessarily had to decide

9    that the Court -- excuse me -- that the Attorney General had

10   that authority.  And, of course -- and we acknowledge that the

11   passage is brief.  And it says the Attorney General is in

12   charge of all criminal litigation on behalf of the

13   United States, citing, I think, 28 U.S.C. 516.  And then says:

14   And also has the authority under the four statutes that are

15   cited, Sections 509, 510, 515, and 533.

16          Though that is not a -- an extended discussion, as the

17   D.C. Circuit said in the In Re: Grand Jury decision, as both

18   Judge Friedrich, who I heard my friend on the other side rely

19   on quite a bit, characterized it.  That was, as I said, a

20   necessary antecedent to deciding whether there was a case for

21   controversy.

22          THE COURT:  Do you think when you use this terminology,

23   "necessary antecedent," is that -- is that how you characterize

24   the footnote in the Sealed case where there is a reference to a

25   presupposition?  What do you make of that?

1          MR. PEARCE:  I think that confirms it.  I mean, it's

2    true that what the -- in footnote 30, in the Sealed case, the

3    D.C. circuit describes the Supreme Court as presupposing.  But

4    that -- whether it's a presupposition or whether it is the

5    product of extended textual analysis that doesn't make its way

6    into the opinion, in either instance, you cannot move past -- I

7    mean, you can't move past the justiciability question unless

8    you have that resolved, and you can't get to the merits of it.

9          And, again, that's -- I think that's why all eight of

10   the judges that have addressed this have concluded that it is

11   not dicta, but, in fact, a holding, or certainly a necessary

12   component of the case.

13          I would add, though --

14          THE COURT:  What do you make of the Verdugo-Urquidez

15   case -- if I have pronounced that correctly -- that says,

16   quote, "the Court often grants cert to decide particular legal

17   issues while assuming without deciding the validity of

18   antecedent propositions, and such assumptions, even on

19   jurisdictional issues, aren't binding in future cases that

20   directly raise the questions"?

21          MR. PEARCE:  So -- and I think that kind of discusses

22   things like the, sort of, drive-by jurisdictional rulings.  As

23   a technical matter, there is a difference between a

24   jurisdictional question and the justiciability question that

25   they were addressing.  Of course, the first parts of the

1    opinion in Nixon addressed a question of jurisdiction.

2         But even beyond that, the Court's decision on the -- on

3    the -- whether there was a case or a controversy invokes the

4    specific statutes.  And I do think it is relevant that all of

5    the judges and the courts that have looked at this question

6    have so concluded.

7         What I would add, however, is to the extent this Court

8    were not persuaded by that analysis and said, you know what, at

9    most, I think this is dicta, certainly the Eleventh Circuit has

10   said frequently, as I think most courts of appeals have said,

11   dicta from the Supreme Court is of an entirely different, sort

12   of, genre than any other types of dicta.  And it might be that

13   the Supreme Court, if it were ever to confront this issue,

14   would look at it afresh and might come to -- we certainly hope

15   not and think it should not -- but a different conclusion.

16        But I think for this Court, even if you were to treat

17   it as dicta, which, for the reasons I have given, I don't think

18   you should, I think that is entitled to the kind of deference

19   that certainly all of the other judges on all the other courts

20   that have looked at this have given it.

21        I'm happy to address anything else on Nixon.

22        THE COURT:  Let's turn to the text, then, of the

23   statutes.

24        Would you agree with Judge Ginsburg on the D.C. Circuit

25   that they don't explicitly authorize the statutory

1    authorization?  I think it stated that.  And then there is a

2    line about accommodating it with the citation to Nixon.

3          MR. PEARCE:  So I think it's probably true it's not as

4    an -- explicit as an authorization as it could be.  I believe

5    that particular language was actually in reference to the

6    delegation that existed there under the Ethics in Government.

7    So it was an independent counsel who, we would acknowledge, has

8    sort of greater independence and certainly far less oversight

9    than the Special Counsel does here; that is more relevant to

10   the second question about principal officer versus inferior

11   officer.  But to answer sort of the nub of the question --

12         THE COURT:  Well, can we turn to the In re: Sealed

13   reference?  I just want to make sure that we're accurately

14   understanding it.

15         MR. PEARCE:  I'm happy to quote it or --

16         THE COURT:  Yes, yes.

17         MR. PEARCE:  So what I think the provision that the

18   Court has referred to is:  While these provisions, that is 509,

19   510, and 515, do not explicitly authorize the Attorney General

20   to create an office of independent counsel virtually free of

21   ongoing supervision, we read them as accommodating the

22   delegation at issue here.

23         My point was, in referencing "an office of independent

24   counsel virtually free of ongoing supervision," that is, of

25   course, referring to the now no longer in existence -- in

1  existence independent counsel, which has a different framework

2  than what we have now.

3          So to the extent that the -- the -- the opinion here

4  was --

5          THE COURT:  But in terms of this differing framework,

6  what about the Special Counsel regulations provides more

7  supervision or more direction than what was previously afforded

8  in the Independent Counsel Act?

9          MR. PEARCE:  So I'm happy to -- to talk about that.

10  That's going to take us sideways into the principal versus

11  inferior, as opposed to the statutory authorization question,

12  but if that's -- if that's the direction the Court --

13          THE COURT:  I guess, yeah.  Point me to the

14  regulations.  I want to understand those well to understand

15  where those regulations actually steer or command the Attorney

16  General to direct the litigation conduct of the Special

17  Counsel.

18          MR. PEARCE:  So there are -- there are a couple of

19  different points here.  I mean, in terms of the Attorney

20  General's ability to direct litigation on behalf of the

21  United States, you don't even actually have to go to the

22  regulation.  As the Supreme Court in Nixon cited, 28 U.S.C. 516

23  puts the Attorney General in charge of litigation on behalf of

24  the United States.  There are similar other provision that make

25  that -- that -- that clear.

 1            But turning specifically to the regulation, I think

 2    Section 600.7, that talks about conduct and accountability in a

 3    couple of different provisions, it is true that the regulations

 4    provide that there was not day-to-day supervision, and that was

 5    part of the effort, as was made clear in the promulgation of

 6    the regulation itself to strike a balance between, on the one

 7    hand, some degree of independence, while on the other hand, not

 8    having such an independent body like the independent counsel

 9    itself, but have accountability that's still lodged in the

10    Attorney General.

11            Now, 600.7 makes clear a number of different things:

12    That the Attorney General can at any point ask the Special

13    Counsel to provide an explanation for any investigative or

14    prosecutorial step, and may conclude that any such step is so

15    inappropriate or unwarranted under established departmental

16    practices as to not allow that to go forward.

17            THE COURT:  But absent that determination that the --

18    that the decision is so outside the bounds of standard

19    departmental policies, is there anything else in the

20    regulations that actually permits the Attorney General to

21    direct the conduct of the Special Counsel?

22            MR. PEARCE:  I -- I don't necessarily think in the

23    regulation itself.  However, it is also true -- a point that we

24    make in our opposition and that is clear in a couple of -- of

25    the In re: Grand Jury cases, the Attorney General could at this

1   very moment, not liking my argument here from the podium,

2   revoke the regulation and automatically fire or terminate the

3   Special Counsel.  So that is another piece where the Attorney

4   General retains that kind of ultimate control and

5   responsibility, again, relevant, really, for the principal

6   officer versus inferior officer.

7        THE COURT:  But absent rescission of the regulation,

8   the degree of direction -- and I'm tracking it from Edmond

9   there -- is -- is -- is different or nonexistent.  Would you

10  agree with that, that there is really not direction going on

11  within the regulations between the Attorney General and the

12  Special Counsel?

13       MR. PEARCE:  So I -- I guess I have two -- two thoughts

14  in response.  One is, I think what Edmond talks about, of

15  course, is:  Is the individual in question ultimately

16  supervised -- guided -- I think, directed and supervised by

17  someone who is presidentially nominated and Senate confirmed?

18  While at the same time -- and this is at 565 -- or maybe 665,

19  in Edmond -- saying, of course an officer who is an inferior

20  will make many decisions that are -- that are not reviewed.

21       That isn't itself sufficient to turn that person into a

22  principal officer.  And the Court has repeated that again in

23  cases like Arthrex and, I think, in Free Enterprise Fund as

24  well.  So I'm not going to get up here and say that the Special

25  Counsel -- that every decision that is issued by the Special

1    Counsel is necessarily reviewed by the Attorney General.  The

2    relevant question is, does the Attorney General have the

3    authority to review and, in fact, in the penultimate paragraph

4    of the Chief Justice's opinion in Arthrex makes that very

5    point.  I think that that case is about the administrative

6    patent judges, and says something like, so long as the director

7    there, the director of the Patent and Trademark Office, has the

8    discretion or ability to review those decisions, that is enough

9    to make the APJs there inferior offices.

10         THE COURT:  Would that be the case here, for example,

11   in signing off an indictment?

12         MR. PEARCE:  So the -- there is not specific language

13   in the -- in the regulations about, you know, this

14   investigative step versus that investigative step.  There is,

15   in Section 600.8 -- 600.8(b), as in Bravo, a notification of

16   significant events.  I think it would be certainly fair to

17   think of an indictment as a significant --

18         THE COURT:  But that's more of a notice piece.

19         MR. PEARCE:  That's correct.  I guess if the Court is

20   saying, do the regulations require the Attorney General to

21   approve an indictment, I don't see language like that here.

22   Would it be fair to --

23         THE COURT:  There is statutory authority that would

24   require that sort of direction?

25         MR. PEARCE:  I am not aware of any statute that would

 1    require.  Just like a U.S. attorney, there is no statute that

 2    requires a U.S. attorney, before he or she seeks an indictment,

 3    to consult with the Attorney General.  I'm not aware of any

 4    similar statute that would require this -- or that does,

 5    rather, require the Special Counsel to --

 6         THE COURT:  Okay.

 7         MR. PEARCE:  That said, I think it would be a fair

 8    inference in reading the regulations that a step of that

 9    significance would be one the Attorney General reviews before

10    the step is taken.

11         THE COURT:  All right.  And I know I took you off

12    track.  So let's back -- get back to the text of the statutes

13    on which you're relying.  And I leave it up to you whether you

14    want to begin with 515 or 533.

15         MR. PEARCE:  I'm happy to do it either way.  I will

16    start with -- let me make one clarification about the place of

17    533, and then I will start with 515.

18         But it is, actually, not the case that the government

19    did not -- I don't mean to use the double negative -- the

20    government did rely on 533 throughout the Mueller litigation.

21    It's true it was not in the appointment order.  But the point

22    that the Special Counsel's Office there made is the appointment

23    order, as the appointment order here, and including the

24    appointment order for Special Counsel Weiss and Special Counsel

25    Durham and Special Counsel Hur, et cetera, all say is:  I, the

1    Attorney General, rely on the -- my authority, including...and

2    then listing specific statutes.

3         So the government did rely extensively on 533.  And the

4    District Court opinions from Judge Howell and from

5    Judge Friedrich also relied and discussed 533 in significant

6    detail.  So --

7         THE COURT:  But why -- but then why was it omitted from

8    the appointment order?

9         MR. PEARCE:  That is a question that I too have, and I

10   wish I could give the Court an answer.  I mean, there is this,

11   kind of, weird historical gap where the -- the Supreme Court in

12   Nixon refers to it.

13        You asked the question to my friend on the other side

14   about whether it was in the regulation.  I don't think that it

15   was -- excuse me.  The regulation that appointed the Watergate

16   special prosecutor.  I don't think that it was.  But that also

17   then raises the question, why was the Court invoking it?

18        So I could be -- I could be mistaken.

19        THE COURT:  So is there anything to be said about 533

20   really being, sort of, a recent addition to the statutory

21   options?

22        MR. PEARCE:  I don't -- I'm not sure exactly what -- I

23   mean --

24        THE COURT:  In terms of the appointment orders and the

25   regulations -- the Nixon regulations, and the appointment

1    orders, all the way up to 2022.

2         MR. PEARCE:  I think that the reliance on 533 is one

3    that, whether or not there is this historical lacuna where it

4    has not been -- was not cited as the basis for the appointment

5    order, nonetheless, is a valid and, in our view, a compelling

6    reason -- compelling statutory basis for an Attorney General to

7    appoint a Special Counsel.

8         THE COURT:  Okay.  So let's get to the text of 533,

9    then.

10        MR. PEARCE:  Sure.

11        I heard my friend on the other side make two arguments,

12   and I want to focus on each of them.  The first is the term,

13   "Officials can't encompass officers."  I think that's mistaken

14   for a couple of different reasons.

15        First of all, if I understand the argument correctly,

16   it is -- "officials" must mean employees.  But that seems to

17   create its own odd textual problem because if the Court --

18   excuse me -- if Congress wanted to say "employees," it could

19   just say "employees."  I think what "officials" is, is a

20   catch-all phrase that includes both officers and employees.

21   And that's consistent with -- I think I heard the Court ask a

22   question about it -- a series of the statutes that the

23   constitutional lawyers cite at page 10, note 4.

24        We provide one example in our brief, the -- 201, the

25   public -- the federal bribery statute.  It says, "Government

1    officials," and that includes officers as well as employees.

2    And so I think that the cleaner reading there is to say that

3    "officials" is capturing both officers and employees.

4         And I heard my friend refer to Section 535.  And it's

5    true that that provision cites "officers," but it says

6    "government officers and employees."  So the point being, you

7    can imagine when Congress wants to say "officers," it will say

8    "officers."  When it wants to say "employees," it will say

9    that.  "Officials" does require some interpretative work.  I

10   think the best interpretation is that it captures both officers

11   and employees.

12        THE COURT:  Are you aware of any other vesting statutes

13   that are framed in the way you say 533 is?

14        MR. PEARCE:  So I -- I think I heard you ask my friend

15   on the other side -- that uses the term "officials."  That, I

16   don't know.  In terms of -- that are framed as a general -- the

17   Attorney General or head of agency X may appoint such and such

18   and such and such, there are, I think, statutes like that.

19        THE COURT:  But are there any other vesting clauses

20   that use the catch-all term "official" and have been

21   interpreted to be actual vesting clauses?

22        MR. PEARCE:  If by "vesting," you mean for purposes of

23   the Appointments Clause, the "by law" piece, I'm not aware of

24   any that do that, no.  Doesn't mean they don't exist.

25        THE COURT:  So, then, what do you make of the other

1    statutes that have been identified in the other departments

2    that use the word "officer" and operate like a general vesting

3    statute?

4          MR. PEARCE:  I mean, I -- I don't see that there's

5    any -- any problem in -- between the two.  Certainly those

6    other statutes for other agencies are clear as to "officers."

7    This one in 533 enables the -- the hiring and the use of both

8    the officers and the employees.  And so I guess that's all I'd

9    have to say.

10          The other point that I think I heard is that the term

11    "prosecute," which -- in 533, subsection 1 -- which makes clear

12    that, in our view, that that is -- that -- not limited to

13    agents alone, that encompasses the kinds of things that the

14    Special Counsel Office does, what I'm doing right now, getting

15    up and litigating in court.

16          I think I heard, sort of, a stretch of an argument to

17    liken it to sort of "prosecute" used in the civil context.

18    That is certainly not the ordinary meaning of the term, and

19    particularly in a section that is involving, sort of, the

20    criminal investigative responsibilities of the United States.

21          I'm happy to address anything else on 533.  Otherwise,

22    I would be inclined to address Section 515, but I don't want to

23    go there if the Court has any further questions on 533.

24          THE COURT:  No.  I think I'm satisfied on 533 for now

25    with respect to the argument.  You can proceed to 515.

1          MR. PEARCE:  Thank you.

2          I think it is correct, as I believe I heard the Court

3     say, that we are principally relying on 515(b), the provision

4     that actually was enacted at the very creation of the Justice

5     Department in 1870.  It was Section 17 of the Department of

6     Justice Act.  Over the years, there have been, sort of, some

7     changes to the language, but it has been a through line since

8     the Justice Department came into existence.

9          And the very purpose of what is now 515(b), what was

10    then Section 17, was to enable a Attorney General, who

11    preexisted the Department of Justice, to come in and hire

12    special assistants.  There was some conversation, in 1930,

13    Congress added the word "special attorneys."  I think that's

14    relevant, partially for the Congressional acquiescence point

15    and the historical argument, which I'm happy to address in a

16    moment.

17         But for present purposes, what 515(b) does is it

18    enables the Department of Justice to specially retain attorneys

19    to come in and assist the Attorney General.  It's different

20    from 543, which is a way for special assistants to, then,

21    assist United States attorneys, or what have previously been

22    called district attorneys.  So it is a provision that allows

23    for the appointing of officers and the hiring of employees, for

24    the Attorney General, him or herself.

25         THE COURT:  Wait.  I want to make sure I understand

1      your argument.  So you're drawing a distinction between the

2      special attorney in 515 and the special attorney in 543?

3      Please crystallize that for me.

4            MR. PEARCE:  Sure.  I think -- I will do my best.  My

5      point was more of a -- not that there is a distinction between

6      the two on the word "special assistant."  It was that what 515

7      does is enable the Attorney General to hire a special assistant

8      to operate for the Attorney General, whereas 543 allows the

9      Attorney General to hire -- to appoint a special assistant for

10     district attorneys, now called United States attorneys.

11           So one is a mechanism to bring in individuals who will

12     assist or operate as a Special Counsel or a special attorney

13     for the Attorney General; that's 515(b) on which we rely.  The

14     other is a provision that allows for bringing in a, sort of,

15     "SAUSA," essentially, for United States attorneys.

16           As the Court may know, there's a special provision that

17     statutorily authorizes the hiring of assistant United States

18     attorneys; I think that is 542, if I'm not mistaken.

19           THE COURT:  And so, to be clear, you're not relying on

20     Section 543.  That's not in the appointment order and I haven't

21     seen that brief; is that correct?

22           MR. PEARCE:  That is absolutely correct, because the

23     Special Counsel here -- it was not appointed to assist a

24     United States attorney.  So we are not relying on that here.

25           THE COURT:  So, then, what do you make of the reference

```
 1   to special attorneys in 519?
 2        MR. PEARCE:  So, if I'm not mistaken, that reference is
 3   to the Attorney General supervision of various attorneys.  And
 4   it lists not only the -- let me -- so, you are right.  "Direct
 5   all United States attorneys assistant -- and special
 6   appointed" -- it's enumerating three of the four categories
 7   over which the Attorney General has supervisory litigation.
 8        THE COURT:  But -- so you're saying there is a fourth
 9   category that's not listed here, and it's the type of special
10   attorney that you've described, separate and apart from the
11   special attorney conceived of in 543?
12        MR. PEARCE:  Yes, I think that's right.  And that
13   supervision, nonetheless, still falls under 516, as the Supreme
14   Court in Nixon said.
15        THE COURT:  These statutes, 515 -- 515, as it is
16   codified now, 519, and 543, were they all passed within the
17   same public law, do you know?
18        MR. PEARCE:  They were not.  So I don't know
19   everything, but -- so what I can tell you for sure, 515(b), as
20   I mentioned a moment ago, was passed first in 1870.  That was
21   section -- Section 17 of --
22        THE COURT:  In its exact form that we see now?
23        MR. PEARCE:  No.  So it's been modified in part over
24   times, including in 1930 when the term "special" -- I mixed
25   this up.  I believe "special attorney" was added.  "Special
```

1    assistant" was already there.  But in its -- in its core

2    terminology, the specially retained, that was a product of

3    1870.

4         515(a) -- so even within 515 -- was enacted in 1906;

5    there was some discussion about this a moment ago.  The

6    District Court in the Southern District of New York in the

7    Rosenthal case had concluded, essentially on a private attorney

8    who was briefly appointed and then started doing grand jury

9    work, there was no such authorization under 515.

10        Congress overrode that decision and created what is now

11   515(a), which allows for the kinds of specially retained

12   attorneys, Special Counsels, that is described in 515(b)

13   to -- to make crystal clear that those individuals could

14   practice before the grand jury, and also --

15        THE COURT:  Were those individuals still, however, in

16   an assistant capacity?

17        MR. PEARCE:  So I don't know if you're asking that as a

18   historical empirical matter.  I think the answer to that would

19   require some discussion of the history.  And --

20        THE COURT:  Just -- what about just as a textual

21   matter?

22        MR. PEARCE:  I mean, yes, I suppose so, insofar as the

23   term says "special assistant" or "special attorney."  I guess

24   "special attorney" is a broader term than "special assistant."

25   I'm not familiar with anything in legislative history or

1    courts' decisions that say the idea that this individual would

2    always need to be an assistant or -- or an attorney or a

3    Special Counsel, not, kind of, giving particular prominence to

4    a textual difference between the two.

5         THE COURT:  So, I guess, what's your best authority for

6    understanding 515's reference to special attorney as the

7    authorization of the type of independent Special Counsel that

8    we have in the current appointment order, who is not assisting,

9    but rather leading, I would say, the prosecution?

10        MR. PEARCE:  So I think the best way to answer that is

11   sort of a historical response, and then focus on the 1930, when

12   I believe "special attorney" was added.  Because I think that's

13   relevant.

14        So you asked my friend on the other side for the

15   history.  After the Department of Justice is created in 1870,

16   Ulysses S. Grant is the first president, appoints someone as a

17   special prosecutor to work on the whiskey -- Whiskey Ring

18   prosecutions.  President Garfield then appoints a special

19   prosecutor in 1881 to prosecute the star route, which had to do

20   with sort of corruption in the post office.

21        Theodore Roosevelt appoints a couple of different

22   special prosecutors in 1903.  There is the -- the infamous

23   Teapot Dome scandal, which, as I understand it, it involved the

24   sale of oil reserves that had been, sort of, set up for naval

25   use, being, sort of, taken over by the Department of The

1    Interior, and then, sort of, that -- the head of the

2    department, the Secretary of the Interior, using that as a way

3    to solicit bribes.  There were three -- two special prosecutors

4    set up then.

5         So you have all of this history, and then Congress, in

6    1930, comes along and adds the term "special attorney."

7    Whether that meant it viewed what happened before as a special

8    attorney or a special assistant, I think the point is it

9    is -- it ratified a, at that point, nearly 50-year history

10   of -- in fact, 60-year history of the use of the special

11   prosecutors.

12        THE COURT:  I guess I want to make sure that we're

13   being precise with our terminology.  When we say that Congress

14   is ratifying a practice, is it ratifying what we have today or

15   is it ratifying some other function that was more of an

16   assistant, rather than somebody fully in charge of the

17   jurisdiction as defined?

18        MR. PEARCE:  So I think it was more of someone who has

19   the kind of freedom to go and prosecute.  I mean, as a

20   practical matter, historically there wasn't the kind of direct

21   supervision -- in fact, there is far more supervision, I think,

22   today than there was historically of a lot of the different

23   special prosecutors that I have just described.

24        And so, I think when Congress passed the -- amended

25   what is now 515(b) in 1930, it was ratifying a practice that

1    probably involves more independence for a special prosecutor

2    than exists today.

3              THE COURT:  So your argument is that the 1930 act is

4    really, sort of, that moment in time when Congress is -- is

5    blessing the practice of an independent Special Counsel?

6              MR. PEARCE:  Yeah, I mean, I don't want to overfreight

7    it and say that our entire argument hangs on the Court agreeing

8    with me, but I do think that that is a significant historical

9    marker that confirms our textual analysis.  And I agree with my

10   friend on the other side, that, you know, if the text isn't

11   there, you know, history doesn't just, kind of, ride in and get

12   you to where you need to go.  But where you have got the text

13   that we have here --

14             THE COURT:  So then getting back to the text of 515,

15   what do you make of the fact that 515(b), which is the main

16   provision you're relying on in 515, doesn't use the word

17   "appoint"?

18             MR. PEARCE:  I -- I don't think that means much

19   of -- of anything.  Certainly, more -- some of the more modern

20   statutes have used the word "appoint."  But "specially

21   retained," nonetheless, refers to hiring by the Department of

22   Justice, who, at the time it was passed, was the Attorney

23   General.  You know, "appointing" is, essentially, the hiring.

24   So I don't see any significant difference between "specially

25   retained" and "appoint."

1          I would also add -- I think you asked some questions

2     about the word "commissioned."  Commissioned, I think, is

3     naturally understood as the type of thing that an officer gets.

4     You know, again, this is, sort of, tilting over, I suppose, to

5     the arguments both on principal officer and employee.  But

6     it's -- it's also relevant to say this is not someone viewed

7     as, sort of, assistant, someone who is a standby, but in --

8     but, in fact, has that kind of independent officer status.

9          THE COURT:  What do you make, I think, of -- I think

10     it's maybe Edmond and Weiss, where the Supreme Court is

11     seemingly really insisting upon compliance with the text of the

12     Appointments Clause and use of words like "appoint"?

13          MR. PEARCE:  So I'm not sure that's entirely the -- an

14     accurate, sort of, description of what the court has done.

15     Certainly, in other cases, there are -- there is language that

16     is less precise than "appoint."  It's the -- it's the -- the

17     idea is, does the -- is the power to -- I will use the word

18     "appoint" -- but to hire or to bring in a particular

19     individual -- is that vested by law in either the president

20     alone, a court of law, or a head of department?

21          I'm certainly not aware of any place where the

22     Court -- or for that matter -- any court has said, you know,

23     what is dispositive is whether or not the word "appoint" was

24     used.

25          Now, in Edmond, I acknowledge there was discussion of a

1    separate statute on which, I think, the petitioner there had

2    relied and suggested that that too provided the authority.  The

3    Court rejected that because it said -- for two reasons:  One,

4    it didn't like the use of the word "assign," but it wasn't

5    because there was something intrinsically wrong with "assign"

6    as I read the opinion.  It was, that that was a term that had a

7    specific definition within the military context.  And then,

8    probably, the larger problem, the authority that -- in whom

9    that assignment power was vested was not the president alone, a

10   court of law, or a head of department.  It was a -- it was a

11   JAG.

12       So beyond that, I don't -- I'm not aware of an

13   authority that says, absent the magic word "appoint," the

14   statute isn't sufficiently clear to grant the, in our case,

15   Attorney General power to make that appointment.

16       THE COURT:  Is there any concern to be had about the

17   fact that we're getting a bit farther from the text of the

18   Appointments Clause, "officer" -- or official is officer,

19   retained is appoint?  At what point do you -- do you get in,

20   sort of, a more malleable reading of the Constitution?

21       MR. PEARCE:  Well, to be clear, what we are

22   interpreting now are statutory terms consistent with the

23   Constitution.  I don't think I have offered anything that is

24   malleable or at least not consistent with the ordinary meaning

25   of the terms.  I mean, I don't want to repeat the arguments,

 1    but "official" to mean "officer and employee."  I think giving

 2    that a different reading would itself be malleable and just

 3    make "official" into "employee" all of a sudden.

 4         You know, I grant that "specially retained" -- it would

 5    be a different argument if it said "specially appointed."  But

 6    I just don't see how one could understand that any differently

 7    in light of the very purpose of what -- what is now 515(b) was

 8    designed to do, and the long history of special prosecutors.  A

 9    history I should, of course, add, that I have -- that I have

10    left out, kind of the, you know, modern era of those

11    appointments as well.

12         THE COURT:  And by "modern era," you mean?

13         MR. PEARCE:  Watergate on, essentially.

14         THE COURT:  Watergate on.

15         MR. PEARCE:  Yeah.

16         THE COURT:  So what could you add to the -- to the

17    discussion on that more modern segment?

18         MR. PEARCE:  Well, some of it -- and I don't want to

19    repeat anything I have said.  But, of course, the Supreme Court

20    in Nixon itself, identifying the very statutory authorities on

21    which we rely here, and then a series of appointments.

22    You know, obviously there was the period from 1978 through

23    1992, then a short lapse, and then 1994 through 1999, where you

24    had the Ethics in Government Act and the Independent Counsel

25    Statute.  But even in the interim of when the statute lapsed,

1    there was an appointment made of Robert Fiske, who was known as

2    the independent regulatory counsel, essentially, a forerunner

3    of the Special Counsel.  Because at the time of Mr. Fiske's

4    appointment, there was no -- there was no Ethics in Government

5    Act by which to appoint him.  Former Attorney General

6    Bill Barr, in his first pass-through, appointed three

7    independent regulatory counsels.  And then there have been,

8    under the 1999 regulations, a series of individuals appointed:

9    John Danforth, who, by the way, was not at the time an Attorney

10   General -- excuse me -- a U.S. Attorney; Mr. Hur, who also

11   wasn't a U.S. Attorney.

12           And so all of this is, kind of, the accreted practice

13   alongside the -- sort of, that firms up just the textual

14   argument that I have been making.

15           THE COURT:  Just a small point.  Do you know why in the

16   CFR, you have regulations specific to the three particular

17   Special Counsels, Iran-Contra, Nofziger, and the Savings and

18   Loan, but then the various other Special Counsels do not

19   feature in a promulgated regulation but were either borne

20   through an appointment order or maybe some other mechanisms?

21           MR. PEARCE:  So I don't think I can give the Court a --

22   kind of, a fully comprehensive answer.  I can give a couple of

23   reflections that may be useful.

24           With respect to Iran-Contra -- and I think there was

25   some of this discussion when you had a, sort of, colloquy with

1    my friend on the other side -- there, the -- that Attorney

2    General, Ed Meese, issued a regulation, same place -- the

3    regulation that's in the same chapter where the current Special

4    Counsel regulation is found.  That was done with concern about

5    litigation as to the potential constitutional validity of the

6    independent counsel, obviously resolved in the Morrison

7    decision.

8         And so that was created specific to the Iran-Contra

9    independent counsel to give that individual parallel

10   investigative authority --

11        THE COURT:  So those were like one-off regulations,

12   just in the event of adverse litigation?

13        MR. PEARCE:  That is my understanding with Iran-Contra.

14   I don't want to make that representation.  I don't know that

15   for -- for the others.  But then, maybe, to sort of fill out

16   the answer, certainly in 1999, as the independent counsel

17   statute was expiring, that 1999 regulation was promulgated to

18   create some mechanism to enable the appointment of someone, a

19   Special Counsel or a special prosecutor, in cases that

20   warranted it.

21        And that is something that Justice Kavanaugh, before he

22   was on the Court, recognized in the -- his article "Independent

23   Counsel and the President," something that then Attorney

24   General Reno recognized.  It's a challenging problem to create

25   a position that has, on the one hand, sufficient independence,

1   but not so much independence that it created the kind of

2   concerns that led to the lapsing of the independent counsel

3   statute.

4          THE COURT:  All right.

5          MR. PEARCE:  Could I say a word about the -- sort of,

6   what I -- what I described at the top is the, sort of,

7   pernicious consequences of --

8          THE COURT:  Yes.

9          MR. PEARCE:  -- of the argument?

10          So if I understand the argument from the former

11   president, essentially there would be a series of other

12   officers or individuals at the Justice Department for whom

13   there would also be no statutory authority, and who would have

14   been operating unconstitutionally for a number of years.  So I

15   give this as, sort of, a primary example, Deputy Assistant

16   Attorney Generals, in government parlance, DAAGs.  And these

17   are individuals who are below assistant attorney generals, and

18   have great responsibility and supervisory powers within the

19   Justice Department.  And they are appointed and -- excuse me --

20   they -- the operating power for them, or the statutory

21   authority for them, is 515 -- to a certain extent, 510 if they

22   are already within the government, but if they are not, it's

23   515.

24          And if I understand the argument on the other side,

25   they also would -- would no longer be statutorily authorized to

```
 1    carry out critical work on behalf of the Justice Department.
 2    And that argument could, if, sort of, then extrapolated to
 3    other agencies, could also have significant effects elsewhere
 4    because of the operative understanding that -- well, I will
 5    focus on 515 -- now, but understanding, certainly, of the
 6    Justice Department that these are individuals whom the Attorney
 7    General has the authority to -- to appoint.
 8            THE COURT:  Those individuals don't operate
 9    independently, though; correct?
10            MR. PEARCE:  I mean, no, they don't operate any more
11    independently than your standard Justice Department attorney
12    who is, you know -- but -- but they -- yes, they are inferior
13    to the Attorney General, but they're -- the relevant question
14    is whether they have the -- when they -- when they act on
15    behalf of the Justice Department, they do exert significant
16    authority.  And a consequence of the other side's position, I
17    think, would be to say that those are -- they are acting
18    invalidly.
19            THE COURT:  What do you make of the Bureau of Prisons
20    reference?
21            MR. PEARCE:  So I think that's in the past tense.  But
22    the fact that Congress may have provided the specific
23    appointment power later in time for the director of the Bureau
24    of Prisons, I don't think does anything to undermine our core
25    submission; particularly, again, when you understand that this
```

1   was created in 1870 with the very purpose of authorizing the

2   use of attorneys to come and assist the Attorney General.

3          THE COURT:  So just so I understand, are you submitting

4   that the Special Counsel is an assistant?  In what sense?

5          MR. PEARCE:  I mean, I pause because, you know, whether

6   we say it's a special assistant or a special attorney, I think

7   "special attorney" is probably the better fit.  Obviously, the

8   regulations designate the special counsel as a special counsel.

9   I'm not aware of an authority that draws a sharp distinction

10   between special assistant and special counsel.  And for our

11   purposes, 515(b) includes them both.  So, you know, I don't

12   think we have a developed position on that.

13          THE COURT:  Okay.  All right.  Well, I think that

14   exhausts my questions for now.  Thank you very much.

15          MR. PEARCE:  Okay.  Thank you.

16          THE COURT:  It is 11:13.  I think, to keep things

17   organized, we will break for one hour, until 12:15, and then

18   resume argument, starting first with the constitutional

19   lawyers, then with Mr. Blackman -- and I should rewind for a

20   minute.  First, Mr. Seligman, and then Mr. Blackman, and then

21   Mr. Schaerr.  So please prepare accordingly and enjoy your

22   lunch.  We will resume after the break.  Thank you.

23          (A recess was taken from 11:16 a.m.)

24          THE COURT:  All right.  Good afternoon.  You may be

25   seated.  We are back in session and prepared to hear argument,

1    first, from Mr. Seligman.

2         MR. SELIGMAN:  Thank you, Your Honor.

3         Matthew Seligman for a group of constitutional lawyers,

4    former government officials, and State Democracy Defenders

5    Action as amicus supporting the government.  I would like to

6    start by thanking Your Honor for the opportunity to participate

7    in the argument today.

8         So the two issues before the Court today, as you're

9    aware, are whether the Special Counsel is an inferior officer

10   for the purposes of the Appointment Clause, and whether

11   Congress has vested the authority to appoint the Special

12   Counsel by statute.  And the answer to both of those questions

13   is yes.

14        Those conclusions are compelled by precedent.  And even

15   if they weren't, they would be correct.  So in light of the

16   extensive argument Your Honor has already heard, I'm happy to

17   address the issues in whichever order would be most effective

18   and helpful for you; but if not, I can just go in the order

19   that I just stated.

20        So the proposition that the Special Counsel is an

21   inferior officer is compelled by precedent on two levels.

22   First, the Supreme Court in the United States -- I'm

23   sorry -- in Morrison v. Olson said so.  And it said that the

24   independent counsel who is, by every measure, either identical

25   to the Special Counsel or had even more independence than the

1    Special Counsel, was an inferior officer.  And that was a

2    conclusion that eight justices agreed with.  Now,

3    Justice Scalia dissented in that case, but as we see nine years

4    later in Edmond, his disagreement with the majority in Morrison

5    had nothing to do with the issues in this case.  And the reason

6    is because his disagreement with the majority had to do with

7    the Congressional statute intervening into the internal

8    structure of the executive branch.

9          And so in the independent counsel statute, the Ethics

10   in Government Act, there was a Congressional statute that

11   imposed limitations on the removability of the independent

12   counsel.  That is wholly absent here.

13         And so whatever objection Justice Scalia had to the

14   Independent Counsel Act in Morrison is absent here.  And we can

15   see that in Edmond, nine years later, when he drafts the

16   Court's opinion characterizing the judges of the Coast Guard

17   Court of Criminal Appeal as inferior officers.

18         And so we can see that for the purpose of the type of

19   structure we see here, there was really a unanimous quorum in

20   Morrison that that would characterize the independent counsel,

21   or at least characterize the Special Counsel, as we see here,

22   as an inferior officer.  So that case is directly on point, and

23   that should resolve that issue.

24         But even if we don't take Morrison to control the issue

25   and we, instead, look to the factors that the Court considered

1    in Edmond, which didn't purport to break new ground, it was

2    just applying the same tests that it -- had been applied

3    before, if we look to those factors in Edmond and apply them to

4    the Special Counsel here, it's pretty clear, I think, that the

5    Special Counsel is an inferior as opposed to principal officer.

6          Now, the most important factor that the Court has

7    considered -- this is in Edmond and this is also most recently

8    in the Arthrex -- is whether the officer at issue has a

9    superior -- an inferior officer has a superior officer; and,

10   relatedly, whether that inferior officer or purportedly

11   inferior officer has the authority to bind the executive branch

12   without any superior officer.

13         And so, what the Court said in Arthrex and what the

14   Court didn't say in Edmond is that the officer could bind the

15   executive branch with no further stop.  And so in Arthrex, you

16   had a situation where the patent judges -- administrative

17   judges, they would make a decision on what was called an inter

18   partes review and then there was no further executive branch

19   review.  The next stop was judicial review in Article 3.

20         By contrast, in Edmond we had a situation where the

21   judges of the Coast Guard Court of Criminal Appeals, there was

22   further review in the executive branch.  And that further

23   review was deferential.  And I think that's critically

24   important to understand here.

25         By statute, the further review within the executive

1  branch of the Court of Criminal Appeals in the Coast Guard was

2  compelled by statute to uphold those decisions if there was any

3  competent evidence to support guilt beyond a reasonable doubt.

4  It's a highly, highly deferential standard; and, again, by

5  statute, not by regulation.  And in Edmond, Justice Scalia from

6  the Supreme Court characterized that as a sufficient amount of

7  oversight and review by a superior principal officer in the

8  executive branch.

9          THE COURT:  So how does that map onto this context?

10         MR. SELIGMAN:  By every measure, the Special Counsel is

11 subject to more review here.

12         So, first, the difference between statute and

13 regulation.  Here, we don't have a statute that imposes any

14 kind of independence on the Special Counsel.  What we have,

15 instead, is a combination of regulations and an order.

16         And so the way that structure works here is there's an

17 order that says, "Mr. Smith, you're appointed as Special

18 Counsel, and the statutes in the 600 series are made applicable

19 to you."

20         And through accommodation of those internal executive

21 branch documents --

22         THE COURT:  Does that mean -- the "made applicable," is

23 that equivalent to "you're subject to the regulations"?

24         MR. SELIGMAN:  Yes, I believe it does.  And the

25 implication of that combination of documents is that -- I think

1    there are actually two ways that the executive branch, the

2    Attorney General, could change things.  One is by rescinding

3    the regulations.  And there are no procedural requirements.

4    It's not like, you know, APA -- the APA imposes procedural

5    requirements about promulgating a notice or something like

6    that.  The Attorney General, as far as I'm aware of, can just

7    rescind them.

8              But even if that --

9              THE COURT:  Slow down just a tad, if don't mind.

10             MR. SELIGMAN:  Sure.  Sorry.

11             But even if that wasn't true, the order appointing Jack

12   Smith could just be changed.  You know, Attorney General

13   Merrick Garland -- sorry about the speed here -- Attorney

14   General Merrick Garland could issue a new order that either

15   terminates Mr. Smith's appointment or says that these

16   regulations are no longer applicable, which would mean that he

17   could review any decision at any time.

18             THE COURT:  But absent rescission of the regulation, he

19   can be removed only for misconduct or other violations of

20   department policy; is that generally right?

21             MR. SELIGMAN:  Not quite.  I think it's rescission of

22   the regulations or changing the order and saying, "Okay.  New

23   order.  You're still appointed, but the regulations are no

24   longer applicable to you."

25             And so either way, I think, that would -- that

1    would --

2        THE COURT:  But I think -- is it 600.7, maybe,

3    that's -- that speaks about the removability and sets some kind

4    of conditions?

5        MR. SELIGMAN:  Yeah, that's absolutely correct.  But I

6    think the reason -- so -- but the reason is:  Why does that

7    regulatory provision apply to Special Counsel Smith?  And the

8    answer is the order.

9        And so if the order is changed, then that -- you know,

10   600.7 would still exist on the books, but it would no longer be

11   made applicable to the Special Counsel.  And the upshot of this

12   is that there are multiple avenues, completely within the

13   executive branch, at the discretion of the Attorney General of

14   principle --

15       THE COURT:  How would that work?  We would have a new

16   appointment order that would pick up on some of the

17   regulations, but not all?

18       MR. SELIGMAN:  Or none of them.

19       THE COURT:  Okay.

20       MR. SELIGMAN:  It's entirely within the discretion of

21   the Attorney General.  And the reason why -- and, by the way,

22   there is -- there is historical precedent for this.  So Special

23   Counsel Patrick Fitzgerald, who is one of the amici I

24   represent, was appointed as Special Counsel.  But the order

25   from then Attorney General James Comey made clear that the

1    regulations didn't apply.

2            And so the mechanism --

3            THE COURT:  And is that because he wasn't an outside

4    attorney?

5            MR. SELIGMAN:  I'm not sure of the exact reason for

6    that, but the phrasing of the order that Attorney General Comey

7    issued was specific to saying that it wasn't limited, that his

8    jurisdiction wasn't limited in the ways that the --

9            THE COURT:  But, I mean, the regulations expressly

10   require the Special Counsel to be drawn from outside the

11   Department of Justice, and that would have not have applied to

12   Mr. Fitzgerald; right?

13           MR. SELIGMAN:  Yeah, I think that's correct.  We have

14   seen that in other cases as well, where there is somebody --

15   so, for example, Special Counsel Weiss is -- you know, he was

16   already a U.S. attorney.  And so I think that's -- that's part

17   of the reason why, but I want to say in addition to that, the

18   appointment order for Special Counsel Fitzgerald also made this

19   point about his jurisdiction not being limited in the way the

20   regulations -- the regulations would have.

21           THE COURT:  Turning to Edmond, I know you have touched

22   on that.  Do you -- what do you make of the language at

23   page 663 that refers to an officer being someone -- an inferior

24   officer being someone whose work is directed and supervised at

25   some level?

1           Is there anything to be made about the need for

2    direction?  And, if so, is there sufficient direction here?

3           MR. SELIGMAN:  There is sufficient direction here.  And

4    I think that the application of that legal principle to the

5    facts of Edmond illustrates that fact.  And so Edmond makes

6    clear, first of all, that the review by a higher executive

7    branch entity of the decisions of the Coast Guard Court of

8    Criminal Appeal was highly deferential.  Again, it was, if

9    there was any competent evidence to support guilt beyond a

10   reasonable doubt.

11          But then the Court also makes clear that, although

12   there was the ability to remove the Coast Guard judges,

13   they -- the higher -- the higher executive branch officials

14   couldn't reverse individual actions.  And so the inability,

15   again, by statute, not by regulation, the inability of higher

16   executive branch officials in Edmond to reverse the individual

17   actions of the officials at issue was consistent with the

18   direction, at some level, that the Court said was necessary.

19          And so, I think the way to understand that statement

20   from Edmond, as illustrated by its application to the facts of

21   Edmond itself, demonstrates that there is certainly sufficient

22   oversight here.  Because, pursuant to the regulations, there

23   has to be notification to the Attorney General of any

24   significant investigative or prosecutorial steps, and then

25   there is a -- albeit deferential, but that's just like

1    Edmond -- a deferential standard of review of sorts about

2    overruling the Special Counsel.  But --

3         THE COURT:  You make a mention of that in the brief as

4    if there is, sort of, this commandeering-type authority the

5    Attorney General wields.  But where is that in the actual

6    regulations?

7         MR. SELIGMAN:  I'm sorry.  "Commandeering authority"

8    means --

9         THE COURT:  In terms of actual direction.  There is a

10   notice requirement.  There is a point in the regs where it says

11   the Special Counsel can, if it wants to, consult.  There's a

12   point where it says the Special Counsel shall consult on

13   matters of department policy.  And then there's a portion where

14   the Attorney General can, essentially, overrule a decision if

15   it's so inappropriate.

16        But -- but where in that scheme do you see, kind of,

17   more traditional direction of litigation conduct or strategy?

18        MR. SELIGMAN:  I think that there is more -- a more

19   hands-off approach, and I think that's the entire point of the

20   Special Counsel regulation.

21        THE COURT:  So it's not there?

22        MR. SELIGMAN:  So day-to-day supervision of litigation

23   is not there, and the regulations make that clear, yes.

24        THE COURT:  And where is there actual direction of

25   litigation in the regulations?

1            MR. SELIGMAN:  Well, so, I think the provisions that

2      you pointed out are the direction.  Now, again, it's not

3      day-to-day direction, and I'm not claiming otherwise.  But I

4      think the amount of direction that there is, is sufficient for

5      the purposes of --

6            THE COURT:  But where is the direction at all?

7            MR. SELIGMAN:  The direction is the authority within

8      the regulations to overrule decisions of the Special Counsel.

9            THE COURT:  And where does that come from?

10            MR. SELIGMAN:  That's -- so, Your Honor cited that --

11            THE COURT:  The inappropriate --

12            MR. SELIGMAN:  That's correct.

13            THE COURT:  Okay.  All right.

14            Let's turn to the -- to the statutes, to the inferior

15      question.

16            MR. SELIGMAN:  So to the statutes about the Attorney

17      General statutory authority?

18            THE COURT:  Yes.

19            MR. SELIGMAN:  So there are two bases of statutory

20      authority.  The first is Section 515(b), and the second is

21      Section 533.  They're both independently sufficient to provide

22      the authority here.

23            THE COURT:  Your brief focuses, really, on 533.  Do you

24      think that's a stronger source of authority than 515?

25            MR. SELIGMAN:  I think they're both strong authorities.

1    I think that section, 533, is a textually crisper source of

2    authority for a couple of reasons.  First -- so, before lunch

3    Your Honor was -- was asking questions about the absence of the

4    word "appoint."  Session 533 uses the word "appoint."  It says

5    that the Attorney General may appoint attorneys to dot, dot,

6    dot, prosecute crimes against the United States.  That's

7    exactly what this is.

8            Now, the use of the word "appoint" also answers another

9    question.  So the defendant here has argued that "officials,"

10   as used in Section 533, doesn't include officers.  Well, so,

11   what they would read the section to be is, the Attorney General

12   may appoint employees.  You don't appoint employees.  If we're

13   taking that word seriously as a term of art, you appoint

14   officers.  And so I think the textual fit for Section 533 is

15   absolutely perfect here.

16           Now, if there are --

17           THE COURT:  Do you know of any other vesting statutes

18   that are phrased in the way 533 is?

19           MR. SELIGMAN:  That have this -- that don't --

20           THE COURT:  That say "appoint officials" and then are

21   treated as general vesting clauses.

22           MR. SELIGMAN:  No, I don't.  You know, so as you know,

23   in our brief we looked for where the word "officials" was used

24   in other statutes.  I don't think any of the ones we

25   found -- but there were dozens.  I don't think any of the ones

1    we found were these vesting ones, which I take it to mean,

2    you know, appointment authorizations.  I don't think they were,

3    but I'm happy to go back and check.

4         THE COURT:  Does that matter, though?  I mean, we

5    could -- we could, I'm sure, I think, understand that the word

6    "official" is going to appear in the code, but in what context

7    is it appearing?  And I guess my question is:  If one were to

8    scour the U.S. Code, could you find a comparable vesting

9    statute that uses the term "official," but is, nevertheless,

10   treated as general inferior officer appointment authority?

11        MR. SELIGMAN:  I'm not aware of that.  I promise you I

12   will go back and look, because that would be very helpful if it

13   exists.

14        Now, I think it's also important to understand the

15   context of this -- so you're referring to Section 533, I think,

16   as a catch-all appointment vesting clause.  And the question

17   is:  Why would they do that?  Why would Congress do that?

18        And I think if you look at the structure of the

19   statute, that becomes clear.  It is true that there are other

20   provisions of the code that give the Attorney General the

21   specific appointment authority for other -- I'm sorry -- that

22   give -- provide for the appointment of other Department of

23   Justice officials.  That's the Deputy Attorney General, the

24   Associate Attorney General, the 11 assistant attorneys general,

25   and the Solicitor General, all of whom are principle officers.

1          And so what we have here is a statute that says, Okay,

2   Congress is going to list the principal officers below the

3   Attorney General -- including the Attorney General -- and then

4   below the Attorney General --

5          THE COURT:  So do you believe that, for example, a

6   Solicitor General is a principal officer?

7          MR. SELIGMAN:  Yes.  And --

8          THE COURT:  So what about a U.S. Attorney?

9          MR. SELIGMAN:  No.  And I think that, you know -- so,

10   as Your Honor mentioned this morning, every case that's

11   addressed that issue has said that --

12          THE COURT:  Well, why would we treat those differently

13   if the mechanism is the same in the Code?

14          MR. SELIGMAN:  Well -- and the reason is because -- so

15   the operation of the Appointments Clause for inferior officers

16   gives Congress an option.  It doesn't compel Congress to vest

17   the appointment of the inferior officers in someone other than

18   the president.  It just gives an option for convenience.  And

19   Congress has taken that option with respect to some inferior

20   officers, but it hasn't with respect to U.S. attorneys.  And

21   that's true in, I think, other circumstances as well.

22          Now, another important point here is, as the government

23   pointed out, there is no other source of statutory authority

24   for the Attorney General to appoint inferior officers.  So this

25   isn't just about the Special Counsel.  This is about any other

1    inferior officers within the Department of Justice.

2         Now, the government mentioned all of the DAAGs, the

3    deputy assistant attorneys general.  And I would like to add

4    another to the list, which is the principal deputy solicitor

5    general.  And so, Judge Srinivasan, in oral arguments in In Re:

6    Grand Jury Investigation brought this point up.  And he was the

7    principal deputy solicitor general.  So I guess it was an

8    example that was close to him.

9         Now, I think that this is a particularly important and

10   potentially disruptive appointment issue.  And the reason is

11   because the principal deputy solicitor general is often the

12   acting solicitor general when there's an interregnum between

13   confirmed solicitors general.

14        And so the implication of the argument that the

15   defendant is offering here is that the principal attorney

16   arguing before the United -- before the United States Supreme

17   Court on behalf of the United States is unlawfully appointed.

18   And that is an extreme --

19        THE COURT:  So as of right now, the DAAGs and the

20   principal deputy solicitor general, the statutory appointment

21   authority is 533?

22        MR. SELIGMAN:  A combination of 515(b) and 533.  And

23   I'm happy to talk about how those two interact, if you would

24   like.

25        THE COURT:  Okay.  Yes, you may briefly.

1           MR. SELIGMAN:  So briefly -- so the reason why
2      515(b) -- and I think Your Honor was discussing this, this
3      morning.  It's an old statute.  It dates back to the initiation
4      of the Department of Justice in the 1870s.  It's been around
5      for a long time.  It seems, you know, it's grammatically a
6      little bit cumbersome.  It seems to presuppose the power of the
7      Attorney General to appoint attorneys, and then imposes some
8      restrictions on that appointment by saying that he has to set a
9      yearly salary, they have to be commissioned, they have to take
10     an oath, and so on.
11           Now, there would be no point in passing that statute if
12     there wasn't an authority to appoint the officer -- the
13     attorneys to whom it would apply in the first place.  And
14     that's how Congress and everyone else has understood it for
15     154 years.  So I think that the acquiescence canon that you
16     referred to before is particularly strong.  Now, I think it's
17     even stronger still because of the context in which this
18     statute was used in a highly, highly, politically contentious
19     context, and that's Nixon.
20           So it is true that the -- it is true that Nixon says
21     that the appointment of the special prosecutor in that case was
22     lawful, and it lists the statute, including 533 and 515.  Now,
23     if everyone was up in arms after that and said, actually, no,
24     there was never --
25           THE COURT:  Well, does -- does the Nixon decision

1    actually comment on the legality of the appointment?  Wasn't

2    that issue not contested?

3            MR. SELIGMAN:  It wasn't contested, but it does state

4    that the appointment was lawful.  And as the government

5    explained, that was an essential predicate of the -- of the

6    decision.  And the reason is because, if the Special Counsel

7    was not lawfully appointed, then there would be no dispute.  It

8    would be an interloper.

9            And more than that, the subpoena that was at issue

10   there, which is perhaps the most historically important

11   subpoena up until recent years, it would have been void

12   ab initio.  And so the lawfulness of the special prosecutor's

13   appointment was critically important.  And, you know, it's not

14   dicta.  But even if it were dicta, it's something that was so

15   high profile that as the defense counsel pointed out, it was

16   discussed in confirmation hearings.  This is not something that

17   people weren't paying attention to at the time.

18           So it's not something like:  Well, nobody noticed that

19   there was an issue here; it wasn't briefed.  And then, a couple

20   of years later, we realize, oh, actually, there is a potential

21   problem here.

22           This is something that was addressed.  It was essential

23   and integral to the decision, and it wasn't an oversight.  It

24   was something that was the focus of an immense amount of

25   attention.  And that further supports the Congressional

 1   acquiescence argument.

 2        THE COURT:  Okay.  All right.  Let me just turn to your

 3   brief to ensure I don't have any other questions.

 4        Oh, what's your view on assistant U.S. attorneys?  Are

 5   they inferior officers?

 6        MR. SELIGMAN:  No, I don't think they are; I think

 7   they're employees.

 8        THE COURT:  All right.  Okay.  So the footnote that you

 9   have in your brief that lists out various statutes, you would

10   agree that none of those are vesting statutes?

11        MR. SELIGMAN:  I -- I think you're correct, Your Honor.

12   But that footnote doesn't include all that we found and all

13   that exist.

14        THE COURT:  Okay.  So there might be some?

15        MR. SELIGMAN:  There might be some.  That's correct,

16   yes.

17        THE COURT:  Okay.  Do you have any thoughts on the

18   Clear Statement Rule?  That has featured somewhat in the

19   briefing; and I just wanted to give you an opportunity to

20   comment.

21        MR. SELIGMAN:  I don't think there is a Clear Statement

22   Rule that applies, but if it did apply, it would be satisfied

23   by Section 533.  It could not be clearer that the Attorney

24   General has the authority to appoint officials to prosecute

25   crimes against the United States.

1        THE COURT:  Well, it's true that it says "officials,"

2   but I think that's the question, is:  Does that term

3   "officials" encompass constitutionally appointed officers?

4        MR. SELIGMAN:  So I think that -- so a Clear Statement

5   Rule is not a magic words requirement.  And the Supreme Court

6   has said that over and over and over again, and particularly in

7   the context of statutes where, you know, for example, sovereign

8   immunity statutes, you give a certain amount of solicitude to

9   the powers of government.

10       So there's no magic words requirement.  The word

11  "officials" here -- and I think Your Honor was gesturing

12  towards this, this morning.  The word "officials" here is used

13  precisely because it's an umbrella term; that includes both

14  officers -- inferior officers and employees.  And the point is

15  to use one word that applies to both.

16       And the other statutes that we cite in that footnote

17  use it in exactly the same way.  It's a -- and this is common

18  in -- both in common language and in statutory drafting where

19  you use a single term that applies to multiple subcategories.

20  And so that --

21       THE COURT:  But if it were so common, then why wouldn't

22  there be more vesting statutes that use the word "official"?

23  This appears to be the only one, according to the position

24  you're taking.  And I guess that's what my question is:  If

25  it's -- if Congress knows how to legislate in this arena, then

1   why wouldn't it use the term "officer," if that's term in the

2   Constitution, and that is the term used, for example, in other

3   provisions of the Constitution, and then in other provisions of

4   the Code itself?

5         MR. SELIGMAN:  I'm not sure of the answer of why

6   Congress used this umbrella term in its -- as you call it, the

7   vesting statute for the Department of Justice, but not --

8   again, as far as I'm aware, but I may not know, with respect to

9   vesting -- sort of, these umbrella vesting statutes for other

10   departments.

11        Now, I can give a couple of historical thoughts about

12   this.  One, is that the Department of Justice is both older

13   than a lot of other departments and has evolved over time in

14   ways that others haven't.  And so, if you're talking about

15   something like, for example, the Department of Homeland

16   Security, the -- you know, the organic statutes are much more

17   detailed than the Department of Justice because of modern

18   statutory drafting techniques.  And so, it wouldn't surprise

19   me -- for example, like, if there were this, kind of, umbrella

20   vesting clause, I would imagine it would be in something like

21   the Department of Treasury rather than the Department of

22   Homeland Security, or EPA, or something like that.  So that

23   might be the reason why.

24        But the answer is I don't know.  What's enough though,

25   is that the plain text of this statute uses the word

1   "officials," but says "appointed officials."  And every piece

2   of statutory evidence that we have indicates that "officials"

3   is a capacious term that includes both inferior officers and

4   employees.

5          THE COURT:  Thank you.

6          One last question.  If it's correct, that the term

7   "official" is -- is the equivalent of "officer" for Appointment

8   Clause purposes, would that have any effect on any other

9   statutes in the Code that use the word "official"?  In other

10  words, would there be, sort of, all of a sudden, new vesting

11  powers that would be implicitly borne, so to speak, as a result

12  of an understanding that the word "official" captures

13  constitutional officers?

14         MR. SELIGMAN:  Not that I'm aware, no.

15         THE COURT:  All right.  Well, thank you very much, sir.

16  I appreciate your assistance.

17         MR. SELIGMAN:  Thank you.

18         THE COURT:  All right.  Mr. Blackman.

19         MR. BLACKMAN:  Okay.  Thank you, Your Honor.  May it

20  please the Court.

21         Josh Blackman for amicus, Professor Seth Barrett

22  Tillman and the Landmark Legal Foundation.  And I'm grateful

23  for the chance to argue.

24         I have four primary points I want to discuss today.

25  First, I want to reconcile any tension that may appear from my

1    position, that of Mr. Trump.  Second, I want to talk about

2    Nixon v. United States.  Third, I want to talk about what it

3    means to be a continuous officer under the precedence.  Fourth,

4    why Mr. Smith cannot exercise the power that he is purporting

5    to exercise.  And fifth, I want to turn to Section 515, which

6    has been discussed quite a lot today.

7         I am also happy to answer any other questions that Your

8    Honor may have.

9         THE COURT:  Okay.  I'm just going to ask that you speak

10   slowly for the benefit of our court reporter so we have a clean

11   record.

12        MR. BLACKMAN:  I will do my best.  Thank you, Your

13   Honor.

14        First, I recognize that Mr. Trump's counsel says there

15   tensions between our positions.  The way we look at it is there

16   is two steps of this inquiry.  The first step is:  How do we

17   characterize Mr. Smith?  And the second step is:  Can he

18   exercise the powers he is purporting to exercise?

19        We agree with Mr. Trump on step 2 entirely; that he

20   can't exercise those powers.  The only difference is that,

21   step 1, is he characterized as a principal, or inferior, or as

22   an employee?  But these are parallel tracks that lead to the

23   exact same destination, which is that he can't exercise these

24   powers.  We want to put that out at the outset.

25        With regard to the United States -- United States

1    against Nixon, we've talked a lot about the statute.  You also

2    mentioned the regulations.  I think you used the phrase,

3    "unique one-off regulations."  That is very important.

4          Attorney General Bork, in 1973, appointed

5    Leon Jaworski, with a very specific set of regulations.  And

6    the Court cites these at footnote 8 of the opinion, at page 694

7    to 695, footnote 8.  The parties have discussed 694 to 695

8    quite a bit, but they haven't discussed footnote 8.  What does

9    footnote 8 say?

10         Footnote 8 cites the code of -- I will give you a

11    moment to catch up.  It's on page 694 to 695, Nixon,

12    footnote 8.

13         THE COURT:  Okay.  I see it.

14         MR. BLACKMAN:  Okay.  So the sentence begins, "Acting

15    pursuant to those statutes," which we've discussed a lot today,

16    "the Attorney General is delegated the authority to represent

17    the United States in these particular matters to a special

18    prosecutor with a" -- here is the key language -- "unique

19    authority and tenure."  "Unique authority and tenure."

20         And I think Your Honor referred to the one-off

21    regulations earlier.  That is quite astute.

22         Footnote 8 lists those regulations.  The regulations

23    say that the Attorney General gives a special prosecutor the

24    greatest degree of independence that is consistent with the

25    AG's authority.  Then it says, the next sentence, "The Attorney

1   General will not countermand or interfere with the special

2   prosecutor's decisions."

3         By the way, you asked earlier where in the regs it says

4   you cannot interfere.  That is in the Bork regulations; that

5   does not exist here.  So one important difference.

6         Next sentence says, "In accordance with the assurances

7   given by the president," so on, "the president will not

8   exercise his removal power unless" -- and this is the sort of

9   striking part -- "he has the consent of eight members of

10  Congress."  Eight members of Congress.  The president or the AG

11  can only remove the Special Counsel with the consent of eight

12  members of Congress.  That's significant because of a case

13  called Bowsher against Synar, 1986.

14        This was a case involving the comptroller general,

15  where Congress vested the removal power of the comptroller in

16  Congress; not impeachment.  But both houses of Congress removed

17  the comptroller.  The Supreme Court said, no, you cannot do

18  that.  So Attorney General Bork gave the removal power to

19  Congress.  That is unconstitutional.  You can't do that.

20        So to the extent these regulations rely on a practice

21  that's been abrogated by Bowsher, I don't think they carry very

22  much weight anywhere.

23        I will go one step further.  We have been talking a lot

24  today about the difference between holding and dictum.  I wrote

25  a paper on this in my earlier career.  I don't think it

1    actually matters.  I'm going to stipulate that Mr. Smith is

2    correct, that this was a holding of the case.  But it's a

3    holding limited to unique authority and tenure, what you call

4    one-off regulations.  That's the holding.  If Attorney General

5    Garland issued the exact regs that Bork issued, okay, we have a

6    different case.  But he changed them because he noted there is

7    no countermanding; right?  That's not in the regs.

8            So we have here, very clear, it says, "Unique

9    authority."  That's from page 694.  If you go to page 696, up

10   ahead just a bit, the Court says, "The delegation of

11   authority," the special prosecutor in this case, "is not an

12   ordinary delegation."  Not an ordinary -- they're saying this

13   is unique.  When the Supreme Court wants what they call a

14   ticket for one ride, they want to ride it.

15           And if you go to page 697, this very last page of the

16   majority -- might be the second-to-the-last page -- the Court

17   says, "In light of the uniqueness -- the uniqueness of the

18   setting in which this conflict arose," blah-blah-blah, "not a

19   barrier to justiciability."

20           So they use the word "unique" twice.  They say "not

21   ordinary delegation."  Whatever the holding is here, it is so

22   squarely limited to these regulations which have been abrogated

23   by Bowsher.  Forget holding and dictum.  This is not a binding

24   precedent of this Court.  Persuasive.  I will stipulate,

25   Your Honor, that Nixon is persuasive.  Not very persuasive,

1  because it doesn't explain why the statutes and regulations are

2  fine.  It's persuasive, but it's not binding.

3       I think this Court has free jurisprudential discretion

4  to decide the issue, notwithstanding what the fine judges in

5  D.C. have found, but it's not controlling in this regard,

6  citing Nixon's no barrier to reaching the merits here.

7       THE COURT:  All right.  What are -- I know you had five

8  main points you wanted to make.

9       MR. BLACKMAN:  Very good.  Yes, Your Honor.  The next

10  point discusses "continuous."  What does it mean to be

11  continuous?  There is a long line of cases going back to John

12  Marshall in United States against Maurice, M-A-U-R-I-C-E,

13  holding that an essential element of being an officer is

14  continuity.  And let me just explain the reason why that's

15  there.

16       "Continuity" means accountability.  When a position is

17  created as a one-off, that is for one specific target, there is

18  a risk that IS designed to either benefit or burden that one

19  person.  I think Justice Scalia explained this quite well.

20  When you appoint a special prosecutor to go after one person,

21  they will follow him to the end OF the Earth to go after them.

22       Meanwhile, when you appoint a permanent, continuous

23  position, it's always there.  It serves the common good in this

24  context or that context.  When Congress creates a permanent

25  position, maybe they might like this position today, but it

1   might hurt them down the road when someone else is in power.

2   But "continuity" means accountability.  Perhaps we'll quote

3   Spiderman:  "With great power comes great" --

4           THE COURT:  Wouldn't there be accountability here?

5   Accountability to the Attorney General, who is most accountable

6   to the executive?

7           MR. BLACKMAN:  For sure, Your Honor.  And there are

8   lots of officers who are accountable to the Attorney General,

9   but this is a temporary position; it's noncontinuous.

10          THE COURT:  What do you mean by that, though?  I mean,

11  is it the case that continuity requires permanence?  How

12  permanent?  At the end of the day, I think even OLC's opinion

13  in 2007 takes the view that it doesn't need to be permanent,

14  and then applies that principle to the independent counsel and

15  concludes that it's sufficiently continuous.

16          MR. BLACKMAN:  Your Honor, I'm happy to talk about the

17  OLC's opinion from 2007.  Also, if you have Morrison v. Olson,

18  page 672, it might be a relevant thing to consider.  In

19  Morrison, at page 672, Chief Justice Rehnquist explains why the

20  independent counsel was a temporary, not continuous, position.

21  And he gives three factors; right?

22          The first factor:  Is this person appointed,

23  essentially, to accomplish a single task?

24          Factor Number 2:  When the task is over, the office is

25  terminated.

1          Factor Number 3:  That the person has no on-board

2    responsibilities that extent beyond the accomplishment of the

3    mission to which he was appointed.

4          Rehnquist looks at each of those factors and says that

5    the independent counsel, Alexa Morrison, was not a continuous

6    position.  The OLC position does not even cite that.  Doesn't

7    even mention it.  I think OLC realizes that there's a tension

8    there.  So OLC made up this three-factor test, the third of

9    which has nothing to do with continuity, whether it's limited

10   to the person, whether it's incidental powers and so on.

11         These are just, sort of, factors that the executive

12   branch, sort of, grasps from.  But we have actual precedent

13   from William Rehnquist; the three factors.  And I submit that

14   Jack Smith flunks all three factors.  He is appointed for a

15   single task:  To prosecute Donald Trump.  If you read the

16   order, it involves January 6th -- except for everyone else, who

17   is already prosecuted by someone else.  So it's just Trump.

18   And it discuss the incident at Mar-a-Lago.  It's a single task.

19         The second factor --

20         THE COURT:  Well, I don't know if that's a fair reading

21   of the appointment order.  It captures events arising -- you

22   know, I -- the language is what it is, but I don't know if it's

23   as targeted as you suggest.

24         MR. BLACKMAN:  But it's still a single task.  Once

25   those discrete set of items are accomplished, the position's

1    over.  For example, if tomorrow there were to be a blanket

2    amnesty, a blanket pardon involving the defenses, Jack Smith

3    would have nothing to do, the position is over.

4         For example, Jack Smith --

5         THE COURT:  But what -- I mean, in terms of your

6    continuity point, what Supreme Court cases -- I know you rely

7    on Morrison and Lucia, but is that, sort of, continuity plus a

8    true prerequisite?  Or is it just a factor to consider in the

9    somewhat malleable guidance the Supreme Court has endeavored to

10   provide in this complex area of the law?

11        MR. BLACKMAN:  Your Honor, it's -- actually Hartwell,

12   Germaine, and Lucia are the leading cases.  So Hartwell and

13   Germaine are cases from the 19th century that elicit four

14   factors.  What is an office?  Tenure, duration, emoluments, and

15   duties.

16        All right.  So I will go through each one.

17        What is tenure?  Are you at-will?  Removal for cause?

18   Good behavior, like a federal judge?  What is your tenure?

19   Okay?

20        The second one is duration.  Is it continuous?  And

21   Chief Justice Rehnquist lays out pretty clearly what it means

22   to be continuous.  When the specific set of tasks are over, you

23   are no longer employed.  If Jack Smith were to resign right

24   now, my friend, Mr. Bratt, and others would have to lay their

25   pencils down.  They couldn't do a thing.  Their power comes

1   solely from his agency; right?  Once his task is over, it's

2   gone.

3        By contrast, the independent counsel statute has this

4   umbrella statute with certain provisions for continuity.  The

5   regulations that exist now have no provisions for continuity.

6   This is a position that's limited to Jack Smith.  If Jack Smith

7   resigns, this entire process stops.  They have to appoint a new

8   person from scratch.  It's not a continuous position.

9        And in Lucia, Justice Kagan's opinion recognized that

10  continuity is an important factor.  Whether it's required or

11  not, I'm actually not sure it much matters.  But, for certain,

12  he is not continuous at all.  He is in the exact same position

13  as just, basically, a one-off employee.  Now, granted, he is

14  working for years on end.  I don't doubt that.  And his duties

15  are a lot.  They work extremely hard.  But continuity is a very

16  important aspect of being an officer.  I think it's really

17  essential in this case.

18        THE COURT:  There has been some other adjectives thrown

19  around:  "Incidental," "personal."  How does your analysis

20  square up with those?

21        MR. BLACKMAN:  Right.  Your Honor, so there are four

22  elements; right?  There is tenure, duration, emoluments, and

23  duties.  The words you are using describe the duties, episodic

24  duties; right?  If you read Justice Kagan's opinion -- this is

25  at Lucia, at page -- I think it's this 245.  I might be off by

1    a page or two.

2         She says, In Germaine, the surgeons were mere employees

3    because their duties were occasional or temporary, rather than

4    continuing and permanent.  So this word, "occasional,"

5    "episodic," refers to the duties.  Then in the very next

6    sentence, Kagan separates:  "Stressing ideas of tenure and

7    duration," first two elements, the Court made clear that an

8    individual must occupy a continuing position established by law

9    to qualify as an officer.

10         The keyword there is "must" -- "must occupy a

11   continuing position to be established by law as an officer."

12   The OLC opinion from 2007 was before Lucia.  We don't know if

13   they have updated the opinion.  I have no idea.  I think Lucia

14   changed the landscape.  Lucia changed the ball game.  If I was

15   here arguing in 2017, I'd have a much more different argument

16   to make.

17         THE COURT:  I mean, is it more of just a sliding scale,

18   that maybe you're not continuous in the permanent sense you're

19   suggesting, but the power, the sovereign power you're wielding

20   is so substantial that pursuant to Buckley, you get there?

21         In other words, it's not a black-and-white equation?

22         MR. BLACKMAN:  So, Your Honor, there are two elements

23   in Justice Kagan's analysis.  I think you said the second

24   element.  The first is:  Is this person an employee or an

25   officer?  That does not turn on the authority they're

1    exercising.

2         The second element, right, where we agree with

3    Mr. Trump:  Can a mere employee exercise the significant

4    authority under Buckley?  The answer is no.  You have to

5    separate those out.

6         Step 1, are you an officer or an employee?  And Justice

7    Kagan said "must occupy a continuing position."  That's a must.

8    And that's something that OLC did not have the advantage of

9    when they wrote their opinion.  I read the word "must" to be

10   there.  In fact, the dissent by Justice Sotomayor said,

11   "Continuity is a prerequisite."  So both the majority and the

12   dissent agreed must -- prerequisite -- you have to have this

13   continuity.

14        So we're talking --

15        THE COURT:  But what does "continuity" mean?  At the

16   end of the day, I mean, does it require the establishment of an

17   official office, or can it be inferred from the reality on the

18   ground, which is multiyear investigations, extensive staffing,

19   and everything else that comes with -- with building a Special

20   Counsel's Office?

21        MR. BLACKMAN:  It's a fair question.  And I look again

22   to Chief Justice Rehnquist at page 672.  He gives three

23   factors.  He recognized that the independent counsel went on

24   for years.  The Ted Olson incident actually began in the early

25   1980s and didn't reach the Supreme Court until 1988.  It was a

1    seven-year investigation with several people that went through

2    the office, millions of dollars expended.  He knew all that,

3    and still said temporary, noncontinuous.

4           Again, are you appointed for a single task, or perhaps

5    a set of discrete tasks?  That's number one.

6           Number two, when that task is offered -- when that task

7    is over, is the office terminated?

8           And number three, are there any ongoing

9    responsibilities that extend beyond that task?  Those are three

10   very easy factors to satisfy, and they describe a lot of

11   people, but not Mr. Smith.

12          THE COURT:  All right.  Thank you very much, sir.

13   Anything further?

14          MR. BLACKMAN:  Oh, yes.

15          So on the point of significant authority, Buckley v.

16   Valeo here is significant; right?  Buckley explains that when

17   you're an officer of the United States, you can exercise

18   significant authority.  But if you're not an officer of the

19   United States, you cannot exercise that significant authority.

20   The regulations here give the power of the United States

21   attorney to Mr. Smith.  It's right there in the regulations.

22   Okay?

23          If you want, Your Honor, it's -- whoa.

24          THE COURT:  That's okay.  That happens occasionally.

25          MR. BLACKMAN:  Sorry about that.

1          When Attorney General Garland appointed Mr. Smith, he

2     gave him the power of the United States.  I don't have the

3     order handy here, but it's -- it's in there.  Whether you think

4     the U.S. Attorney is principal or inferior -- that was the

5     discussion we had before -- the powers of the U.S. Attorney are

6     those of an officer of the United States.  If you are a mere

7     employee, you cannot exercise those powers.  And that would

8     suggest that Mr. Smith is not able to do this in his current

9     capacity.

10          Now, why is this important?  A lot of the discussion of

11     Mr. Trump and Mr. Smith is whether you're principal or

12     inferior.  Our argument doesn't turn that at all.  In fact, it

13     makes no difference whether Mr. Smith in the Special Counsel

14     Office would be principal or inferior.  The reason why is

15     because the office created is temporary.

16          When you realize that, Morrison is no longer a

17     roadblock; right?  Morrison doesn't prevent our position; in

18     fact, Morrison supports our position that it's temporary.

19          Edmond doesn't block our position at all; in fact,

20     Edmond, Freytag, and others recognize that mere employees can't

21     exercise this power.

22          I feel like Morrison has kind of been this -- this

23     gorilla in the sky that's just not -- it's not really mentioned

24     much.  But it's a precedent of this Court.  And you know, maybe

25     at some point, the Supreme Court might revisit it, but it's

1    still there.  I think the path we put forward does not run to

2    Morrison at all, doesn't run to Edmond.  It provides an

3    alternate way for the Court to rule, consistent with Lucia,

4    that the Special Counsel cannot exercise the power he is trying

5    to exercise.

6              THE COURT:  All right.  Well, thank you very much.

7              MR. BLACKMAN:  May I make an argument on the statute,

8    please?

9              THE COURT:  You may.

10             MR. BLACKMAN:  Thank you, Your Honor.

11             We talked a lot this morning about Section 515, and we

12    also discussed what it means to be a special assistant.  And

13    that came up quite a bit this morning.

14             There is another statute that we've not talked about,

15    which is Section 28 U.S.C. 591.  And that is actually

16    significant.  That was an old statute in Chapter 40 that

17    authorized the appointment of independent counsel.  You might

18    think:  Wait a minute.  Isn't that expired?  Didn't it lapse?

19             Well, there is still a relevance for Section 591.

20    Section's 591 note -- N-O-T-E, note -- is the basis of the

21    appropriation.  This might come up Monday, but it relates to

22    the issue today.  The appropriation, as we all know, refers to

23    an independent counsel; right?  And I'm not arguing what that

24    means in the statute, but in the government's brief, the motion

25    in opposition, page 20, they have a discussion about what

1    independent counsel means and what special counsel means, and I

2    think this relates to what special assistant also means.

3            I can pause for a moment.

4            THE COURT:  No, no, no.  Please continue.

5            MR. BLACKMAN:  Okay.  So in 591 note, again, the

6    statute said independent counsel.  And at page 20 of the

7    government's opposition brief, they refer to the decision in

8    the Roger Stone case.  And also they cite the opinion of the

9    comptroller general with the general accountability office.

10   And they explain that a Special Counsel, as understood by the

11   various regulations, refers to a person who prosecutes a

12   high-ranking government official, a high-ranking government

13   official.

14           Now, why is that important?  Mr. Smith's prosecution in

15   the District of Columbia, I think arguably refers to a

16   high-ranking government official.  It involved January 6th,

17   when President Trump was still president.  In this case,

18   though, the gravamen of the indictment is conduct after Trump

19   left office, when he was no longer a high-ranking government

20   official.

21           So the very definition of the special counsel that they

22   have adopted seems to suggest prosecuting a high-ranking

23   government official.  And if you go through the list of all of

24   the Special Counsels that have been appointed back to

25   Ulysses S. Grant, they're all prosecuting current or former

1   high-ranking officials who had conduct while they were in

2   office.  What is unique about this case is it argues against

3   prosecuting a private citizen who had some government

4   documents.  Now, why does that matter?

5        THE COURT:  The independent counsel statute would have

6   authorized prosecution of high-level executive officials for a

7   year post-office; correct?

8        MR. BLACKMAN:  You are exactly right.  And this is

9   beyond a year.  We're beyond a year.  It was November -- it was

10  post-January '21 --

11       THE COURT:  So how does that impact your inquiry?

12       MR. BLACKMAN:  The funding source, Your Honor.

13       If the funding for this is limited to the prosecution

14  of high-ranking government officials, I think Mr. Smith can tap

15  that indictment for the D.C. prosecution, but couldn't tap it

16  for this prosecution.  In other words, the funding source that

17  GAO approved was the prosecution of high-ranking government

18  officials.  In this case in Florida, Trump was out of office

19  more than a year.  He would not be a high-ranking government

20  official anymore.  So the appropriation may not be valid for

21  this prosecution at all.

22       THE COURT:  Well, that -- that appropriation doesn't

23  also refer to other law, so --

24       MR. BLACKMAN:  I know that.  But this is -- even if you

25  agree with Mr. Smith what "other law" means, that would only

1    get him to go after high-ranking government officials.

2            In fact, this is at page 20 of the brief.  It says it

3    right there, "high-ranking government officials."  And it cites

4    a GAO opinion and a comptroller general opinion where they try

5    to say, how are we still using this old appropriation from the

6    independent counsel statute if it expired?  They say it's

7    limited to high-ranking government officials.  This is their

8    opinion and this is their brief.

9            So I think there is some argument.  I know this,

10   perhaps, bleeds over into Monday that the appropriation would

11   be valid for the prosecution in D.C., because, again, that was

12   for Trump conduct while he was president.  Whereas, the

13   prosecution today is prosecution for Trump after he left office

14   more than a year.  So Section 591, and 591 note, asks the

15   intention of this entire prosecution.

16           THE COURT:  Okay.  All right.

17           MR. BLACKMAN:  Any other questions?

18           THE COURT:  No, I don't think so.  But I do want to let

19   you wrap up if you had any other --

20           MR. BLACKMAN:  A few more points, Your Honor.

21           THE COURT:  -- named submissions you would like to

22   make.

23           MR. BLACKMAN:  Thank you, Your Honor.

24           So, further on Section 515, it says:  Each attorney

25   specially retained under authority of the Department of Justice

1    shall be commissioned as special assistant.

2         And there are two words there that I want to focus on.

3    The first one is "retained."  We speak of retention as

4    something you do as an employee, not something you do as an

5    officer.  I think that's an important word.

6         The second one is "commissioned."  Now, we all remember

7    Marbury v. Madison.  We all have commissions -- which, you have

8    one on your wall hanging.  Commissions don't come from the

9    Attorney General.  The commissions clause of the Constitution

10   in Article II, Section 3 says:  The president shall commission

11   all of the officers of the United States.  Shall.  Must.  All.

12        The Attorney General does not commission officers.  The

13   Attorney General can commission, perhaps, employees, but he

14   can't commission officers.  This might be similar to judicial

15   notice, but I asked General Mukasey during the break if he has

16   ever commissioned anyone; he said, no, I have never

17   commissioned anyone.

18        So the language of "commission" here, I think, is

19   actually consistent with appointing employees; right?  The

20   Attorney General can appoint lots of employees, and they do.

21   And the special assistants are these sort of noncontinuous

22   employees appointed for a specific purpose.

23        If, in fact, the Attorney General's commissioning

24   officers, it's inconsistent with the Appointments Clause;

25   right?  I'm sorry.  Inconsistent with the Commissions Clause;

1    that only the President commissions the officers of the

2    United States.

3            THE COURT:  Okay.

4            MR. BLACKMAN:  Okay.

5            THE COURT:  What is your view on the Special Counsel's

6    argument for 533, that if you read it in the way the defense

7    does, it would kind of remove any significance to the term

8    "officials," and it would be, essentially, equivalent to

9    "employees"?

10           MR. BLACKMAN:  You know, we have not advanced the

11   argument that "official" versus "officers" has a different

12   meaning.  In our view, if, in fact, you're merely appointing an

13   employee, then Mr. Smith can exercise those powers.  He has

14   been quite adamant that he is an officer; and in our view, he

15   is not.  So our view doesn't really turn on the meaning of

16   "officials" in 533.

17           I would make, sort of, the broader point, where I agree

18   with Mr. Schaerr, that there is some fairly precise statutes in

19   515 that govern the appointment of special attorneys.  And

20   there is a general construction of a specific statute prevails

21   over a more general statute.  So I think you would need to

22   comply with both.  And, again, 515 uses the word "commission."

23           There was a reference to President Grant earlier.  I

24   just want to -- to, sort of, mention that.  The first several

25   Special Counsels -- you have President Grant, President

1    Garfield, President Theodore Roosevelt, and President Calvin

2    Coolidge.  Those are the ones that were mentioned.

3         What is unique there is that they were all presidents

4    appointing officers, which is the entire reason why we are

5    here.  If President Biden had appointed a U.S. attorney or

6    someone else to prosecute Mr. Trump, we would have no problem.

7         One note on the Grant appointment.  I think it was said

8    before that he was independent.  Grant fired him almost

9    immediately.  What happened was Grant appointed someone to

10   investigate the Whiskey Rebellion.  And then the special

11   prosecutor got too close to his secretary.  Grant fired him

12   right away.  That's not a good precedent for independence.

13        THE COURT:  What is your most useful historical source

14   for understanding this history of special prosecutors, how they

15   were appointed --

16        MR. BLACKMAN:  Sure, Your Honor.

17        THE COURT:  -- what were they doing, etc.?

18        MR. BLACKMAN:  There is a book by a professor at the

19   University of Arizona, Andrew Coan, C-O-A-N, who wrote a very

20   good book on this.

21        There is also a Congressional Research -- CRS,

22   Congressional Research Service report from 1971.  I think his

23   name is Thomas Logan (phonetic).  I might be off by a letter or

24   two.  But it was a CRS report; it's cited in Coan's book.  It's

25   quite thorough.  But if I could just walk through those

1    presidents, it's actually quite useful.

2           THE COURT:  Well, we are bumping up against some time.

3    So I will give you just a couple of minutes on this piece.

4           MR. BLACKMAN:  Okay.  I'll go to the last one.

5           Coolidge is most relevant.  That's the Teapot Dome

6    scandal.  Congress actually passed a statute which authorized

7    Coolidge to appoint two special prosecutors with the advice and

8    consent of the Senate.  Senate confirmation.  And, in fact, one

9    of those was actually Owen Roberts who was going to be a

10   Supreme Court justice.  So I think the Coolidge example cuts

11   against him; that when Congress, 1933, wanted a special

12   prosecutor, they made it so that it's up to the Senate

13   confirmation.

14          The other presidents -- I'll be candid, and I will

15   save, Your Judge -- Your Honor, the research.  I can't find

16   what authority Grant relied on to appoint the special attorney.

17   I have looked.  I have no idea.  In fact, I sure emailed

18   Mr. Coan about this; he had no idea either.  So I don't know

19   what authority was relied on.

20          Watergate, the modern era, Archibald Cox and Jaworski,

21   who was at the beginning of when presidents -- I'm sorry --

22   presidents -- AGs reach from outside government to put a

23   private citizen in a position of prosecutorial power.  It's

24   really Watergate when it began.  At the outset, Bowsher against

25   Synar from 1986 said that you can't vest legal power in

1    Congress.

2         So, we say the uniqueness of these one-off

3    regulations -- this was basically an anomaly.  This was also

4    before Buckley.  Nixon came before Buckley.  I think Buckley

5    sort of said, whoa, let's pull back a little bit.  And then

6    even with Morrison, Rehnquist recognized that temporary

7    employees can exercise this power.  So I think there are a lot

8    of authorities of why this might be there.

9         I will make just one last point, Your Honor, and then

10   I'll sit down.  Morrison v. Olson, of course, is precedent.  I

11   don't know that the defendants have asked to preserve the issue

12   over whether Morrison should be overruled.  Maybe I can.  I

13   will.  But I think this is a precedent that has been chipped

14   away by sealed law in other cases.  And I think it's at least

15   fair to acknowledge that this stands on a shaky foundation.

16        THE COURT:  All right.  Thank you very much.  I

17   appreciate your assistance.

18        MR. BLACKMAN:  Thank you, Your Honor.

19        THE COURT:  All right.  Mr. Schaerr.

20        MR. SCHAERR:  Well, Your Honor, I will begin by taking

21   advantage of this elevator feature on this -- on this podium,

22   if it's all right.

23        THE COURT:  Okay.  Yes, you may.  I think it

24   should -- okay.

25        MR. SCHAERR:  I think I got it to the max.

 1          THE COURT:  All right.

 2          MR. SCHAERR:  Your Honor, I'm honored to represent

 3     former attorneys general Ed Meese and Michael Mukasey, law

 4     Professors Calabresi and Lawson, and our friends at Citizens

 5     United.  And I'm especially delighted that Judge Mukasey was

 6     able to be here today, in person.  Ed Meese would like -- would

 7     like to have come but is not traveling very well right now.

 8          They have taken a keen interest in this motion, not

 9     because they're supporting or campaigning for the former

10     president, but because Mr. Smith's appointment seriously

11     undermines the federal constitutional order, as well as the

12     whole structure that Congress carefully put in place for the

13     U.S. Department of Justice.

14          Now, despite some disagreements on other points,

15     Mr. Smith acknowledges two things that are important; A, that

16     only Congress can create or authorize the creation of a federal

17     office; and B, that if Smith was validly appointed, he is,

18     indeed, a federal officer rather than a mere employee.

19          And so given those concessions, I'd like to briefly

20     make three points, Your Honor.

21          First of all, U.S. v. Nixon cannot plausibly be treated

22     as controlling the question before this Court under

23     Eleventh Circuit precedent.

24          Second, especially given the broader statutory context

25     that I'll address in a minute, neither of the two specific

1    provisions of 28 U.S.C., on which Mr. Smith now relies,

2    actually authorizes the creation of federal prosecutorial

3    offices of the sort that Mr. Smith purports to occupy.

4         And third, although the Court need not actually

5    interpret the Appointments Clause issue to resolve this matter,

6    one powerful reason to reject Mr. Smith's readings of the two

7    provisions on which he relies, beyond the plain statutory

8    language and the structure of the statute, is that his readings

9    would raise, at a minimum, serious constitutional concerns.

10   And under Eleventh Circuit precedent, that's an important thing

11   to consider when you're interpreting a statute.

12        So on -- on the status of U.S. v. Nixon, for three

13   independent reasons the suggestion that the Supreme Court's

14   simple listing in that decision of the -- of the two provisions

15   on which Smith relies here is somehow binding authority on the

16   question before this Court is -- is just dead wrong.

17   Notwithstanding what other judges may have said about that,

18   it's just demonstrably wrong.

19        First of all, that short provision in the Court's

20   decision wasn't a holding because it wasn't necessary to the

21   Court's decision.  And when you -- and we talked earlier -- you

22   talked earlier about -- about the justiciability analysis in

23   Section 2 of the opinion.  Well, as the Court's aware, that

24   portion of the opinion addressed Nixon's claim that litigation

25   over the Watergate tapes was non- -- was a non-justiciable

1    political question; that is, because it was just an intrabranch

2    dispute, was his argument.  And, of course, the Court held that

3    it was -- it was a justiciable question, and so they rejected

4    his argument.

5         So what role did those -- those four statutory

6    provisions play in the analysis?  None at all, Your Honor.

7    Neither Nixon's argument, nor the Court's rejection of that

8    argument, turned in any way on whether the Special Counsel

9    there was validly appointed.

10        THE COURT:  But why not?

11        MR. SCHAERR:  Because Nixon had conceded that he was.

12   His brief squarely acknowledged and embraced the idea that he

13   was validly appointed.  So it was not something that the Court

14   had to deal with.  And, in fact, it didn't matter to Nixon's

15   justiciability argument whether the prosecutor was the Special

16   Counsel, or a duly assigned U.S. attorney, or the Attorney

17   General himself.  His justiciability argument in the Court's

18   analysis would have been exactly the same, regardless of who

19   the prosecutor was.

20        THE COURT:  But what is the justiciability holding in

21   that case?  Is it because of the scope of the regulations or

22   because the delegation was extant and had the force of law, and

23   there was this controversy created and, therefore, there was an

24   issue to be addressed?

25        MR. SCHAERR:  It was much narrower than that,

1    Your Honor.  All the Court held was that there was a genuine

2    controversy between a prosecutor and the president.

3          THE COURT:  But why was there a controversy?  Was it

4    because of the scope of the regulations and the fact that the

5    president had delegated that authority?

6          MR. SCHAERR:  No.  No.

7          THE COURT:  Then what is the source of -- then what is

8    the source of the controversy?

9          MR. SCHAERR:  Well, it was because there was a

10   prosecutor with -- with -- without any question about his

11   authority because the president had conceded it.  And there was

12   a live dispute between that prosecutor, whatever authority he

13   had, and the president.  And, therefore, they said this

14   is -- this is a justiciable dispute, it's not a political

15   question.

16         So it really didn't matter, as Judge Mukasey said

17   earlier, in fact, that that listing of the statutes was really

18   just stage setting.  It had no decisional -- decisional

19   significance at all.

20         So second, though, for our purposes, the passage on

21   which Mr. Smith relies here isn't even dicta because it doesn't

22   even opine on the question before this Court.  That the passage

23   there simply says the Attorney General was, quote, "acting

24   pursuant to" that -- those four enumerated provisions, okay?

25         But the question here was -- is not:  What was

1    Mr. Garland acting pursuant to?  The question here is:  Was his

2    action valid?  Did he validly rely on those two provisions?

3           And Nixon has nothing at all to say about that

4    question.  Contrary to what we heard earlier, the -- the

5    opinion in U.S. v. Nixon does not say that the Attorney General

6    had -- had acted lawfully pursuant to those provisions.  If the

7    opinion said that, then, yes, we would have dicta.  Okay?  It

8    still wouldn't have decisional significance, but it at least

9    would be dicta.

10          But just listing those four provisions doesn't even

11   count as dicta.  And so you don't really even have to get to

12   the question of, you know, is this dicta binding, or is it

13   dicta that I should follow, even though it was dicta and

14   not -- and not part of the holding.

15          THE COURT:  At the very least, would you acknowledge

16   that it would require careful consideration?

17          MR. SCHAERR:  Well, I think anything the Supreme Court

18   says requires careful consideration, but I think here, the

19   careful consideration would tell you that language was just

20   stage setting.  It didn't have any decisional significance.

21          And so, you know, regardless of what other judges have

22   said about it --

23          THE COURT:  How do you think other judges came to the

24   view --

25          MR. SCHAERR:  I think by not reading it carefully.  I

1    think they just didn't read the opinion that carefully.  But

2    even -- even if you wanted to treat that -- that little

3    provision as -- as dicta, the Eleventh Circuit, of course, as

4    the Court is aware, has held that not all Supreme Court dicta

5    are binding on lower courts.

6         And someone earlier today mentioned the treatise by

7    Bryan Garner that collects a lot of essays from very, very

8    esteemed judges.  And, you know, that treatise has been cited

9    several times by the Eleventh Circuit.  Judge Pryor, in fact,

10   recently quoted that treatise in an opinion in which he

11   explained that not all dicta are created equal.

12        And as the treatise puts it, the type of dicta that

13   should be accorded presidential value and -- is an opinion

14   where the question had been briefed by the parties, and so the

15   statement was informed.  And the treatise distinguishes that

16   kind of potentially binding dictum from the kind of obiter

17   dicta or ill-considered dicta that we see, at most, in the

18   Nixon opinion where they simply listed four statutes --

19   statutory provisions with no analysis whatsoever.

20        And, in fact, the question of whether the Special

21   Counsel there was validly appointed was not even one of the

22   questions on which the Court granted cert.

23        THE COURT:  In Nixon?

24        MR. SCHAERR:  In Nixon.

25        THE COURT:  That's correct.

1          MR. SCHAERR:  Right, yeah, it wasn't briefed.  It

2    wasn't considered, analyzed, or anything like that.  So even if

3    you felt like you needed to consider that as dicta, under the

4    Bryan -- the Bryan Garner treatise that the Eleventh Circuit

5    has treated as -- as binding, or at least persuasive, you still

6    wouldn't -- you still wouldn't --

7          THE COURT:  Do you agree with Mr. Blackman that even if

8    you -- if you considered it a holding, there would be a

9    contextual difference, given the difference in regulations and

10   the, arguably --

11         MR. SCHAERR:  Sure.

12         THE COURT:  -- nature of the text of the Nixon reg?

13         MR. SCHAERR:  Absolutely.  You can distinguish it on

14   all kinds of grounds; if you -- if you even consider it dicta,

15   which I --

16         THE COURT:  So let's turn to the text of the statutes.

17         MR. SCHAERR:  Okay.  Well, as the Court -- and we agree

18   completely with Mr. Bove on the reading of those -- those

19   statutes.

20         But to understand fully why the defense's understanding

21   of those statutes are correct, and why Mr. Smith and

22   Mr. Garland are wrong about them, it's important to look at the

23   entire statutory context.  Consistent with the frequent

24   admonition by the Supreme Court and by the Eleventh Circuit

25   that, in statutory interpretation, a court needs to read

1    specific provisions, and I'm quoting now, "in their context and

2    with a view to their place in the overall statutory scheme."

3    That's from the Brown and William case -- Brown and Williamson

4    case to the Supreme Court.

5        So one fundamental problem with the interpretations

6    advanced by Mr. Smith here is that they would subvert the whole

7    statutory structure that Congress carefully crafted in

8    Title 28, Part 2, which establishes and regulates the U.S.

9    Department of Justice.

10       THE COURT:  But why?  Why would that destabilization

11   happen?

12       MR. SCHAERR:  Okay.  Let me go through it, if I may,

13   Your Honor.  Here are the key elements of that structure, okay?

14   Chapter 31, which is where Section 515 is located, establishes

15   and regulates the Office of the Attorney General.  And then

16   next, Chapter 33, where Section 533 is located, establishes and

17   regulates not the whole Justice Department, but the FBI.

18       And then Chapter 35 establishes and regulates the U.S.

19   attorneys, which, among other things, sets out the enormous

20   prosecutorial power that Mr. Garland claims to have conferred

21   on Mr. Smith, except with nationwide jurisdiction.

22       And Chapter 40, as the Court, I'm sure, remembers,

23   before it was allowed to sunset, was the chapter that

24   established and governed the Office of the Independent Counsel.

25       So to see how Mr. Smith's interpretation would

1    contravene Congress's carefully crafted allocation of power

2    within the Justice Department, I think it's important to begin

3    by looking carefully at Chapter 35, which deals with U.S.

4    attorneys.

5          And Section 541(a), which is part of Chapter 35,

6    specifies that a U.S. attorney is appointed by the President,

7    not the Attorney General, and has to be confirmed by the

8    Senate, and is also removable only by the President, not by the

9    Attorney General.

10         And, by the way, that structure goes all the way back

11    to the Judiciary Act of 1789.  Your Honor asked earlier where

12    should we begin with our historical analysis.  1789 is a real

13    good place to start because that's where the first U.S.

14    attorneys -- they were called district attorneys then -- but

15    that's where the first U.S. attorneys --

16         THE COURT:  And offices were created in that statute.

17         MR. SCHAERR:  Yes.  Yes, exactly.

18         And so Congress -- well, I'm sorry.

19         And then Section 543(a) gives -- it gives the Attorney

20    General, now, power and authority to appoint special attorneys

21    to assist each of the U.S. attorneys, and gives the Attorney

22    General power to fire them, okay?

23         So when you look at the contrast between those two

24    provisions, it's clear that Congress viewed the role of the

25    U.S. attorney to be so important that it made sure their

1  appointment carried the political accountability of being

2  appointed by the president and confirmed by the Senate.  And so

3  it made them noninferior or superior officers, for purposes of

4  the establish -- of the Appointments Clause.

5      All you have to do is read that provision in

6  Section 541(a), and it's clear Congress is saying We view

7  these -- we view these U.S. attorneys as noninferior officers.

8      THE COURT:  But just because Congress prescribes a

9  mechanism doesn't necessarily answer the question of what

10 status they actually hold; correct?

11     MR. SCHAERR:  Not necessarily, but --

12     THE COURT:  So what to make of those various statutes

13 that Congress has required these various people to go through

14 this nomination and consent procedure?

15     MR. SCHAERR:  Yeah, well, I think Congress is entitled

16 to some deference when it basically tells us:  We think this

17 person is a noninferior or a superior officer, rather than a --

18 rather than an inferior officer.  And then it says the people

19 who are going to assist him or her are inferior officers,

20 because -- because we're -- we're conferring upon the Attorney

21 General the authority to appoint them.

22     So with that background, it becomes clear that what the

23 Attorney General has tried to do in his appointment of

24 Mr. Smith is he has tried to give to an inferior officer --

25 which is what Smith claims he is -- all the power of a superior

1    officer; that is, a U.S. Attorney, and then some, and then a

2    lot more, actually, but without the political accountability of

3    actually being a U.S. Attorney.

4         THE COURT:  So you're assuming, though, in your

5    argument, that U.S. Attorneys are superior officers.  If you're

6    incorrect about that, then what happens to your argument?

7         MR. SCHAERR:  Well, I think it's -- I think it's clear

8    from the statute that they are -- that they are superior

9    officers; I think that's right.

10        THE COURT:  Because -- well, I'm not taking a position

11   on that.  I'm saying:  If courts have concluded that U.S.

12   attorneys are not superior officers under the Edmond line,

13   wouldn't it require stretching Edmond to conclude that the

14   Special Counsel is a superior officer?

15        MR. SCHAERR:  No.  I don't -- I don't think it would

16   require stretching Edmond at all.  And, by the way, I'm not

17   aware of any binding authority at all that says that U.S.

18   attorneys are inferior officers rather than -- rather than

19   superior officers.

20        Yeah, there is -- I'm aware of a couple of -- a couple

21   of decisions that say that temporary U.S. attorneys are

22   inferior officers.  And that makes sense because they're only

23   going to serve for a limited amount of time; right?  And very

24   often, just a matter of weeks or months.  Or at least

25   that's -- at least that's the intention.  And that's -- that's

1    clear in a wide variety of contexts, that -- that people can

2    have temporary appointments, and they're not viewed -- they

3    don't have to be appointed by the President and

4    Senate-confirmed.

5         So -- but, again, from the -- from the statute, it's

6    clear that Congress viewed the U.S. attorney as a -- as a -- as

7    a superior officer.

8         And so the -- so when you look at -- at what Attorney

9    General Garland did, it's clearly an end run around the

10   statutory scheme for U.S. attorneys.  And so the essential

11   question here is whether either Section 515 or 533 somehow

12   authorizes that end run around the scheme that Congress put in

13   place for --

14        THE COURT:  If it is an end run -- and again, that's

15   very debatable -- isn't it an end run that's been done many

16   times already?  What to make of this potentially tolerated

17   practice?

18        MR. SCHAERR:  It certainly has been tolerated in some

19   situations.  I don't -- you know, we've -- we've seen over the

20   last few years an increased focus in the Supreme Court on both

21   statutory text, and we've seen an increased focus on the

22   requirements of the Appointments Clause and that sort of thing,

23   so much so that when I -- when I talked with -- with Attorney

24   General Meese a few days ago about -- about his providing a --

25   kind of, a secondary appointment to Lawrence Walsh to -- to

1    examine the Iran-Contra affair, he said:  You know, I think

2    that was wrong.  The way the law is developed, I think that was

3    a mistake.

4         And, yeah, there have been -- there have been some

5    mistakes, but I think the -- you know, the older pattern,

6    where -- you know, where Special Counsels were appointed by the

7    President, for example, some of the examples that Mr. Blackman

8    mentioned or, you know, I think -- I think Attorney General

9    Barr was very careful in his -- in his Special Counsel

10   appointments to choose people who were already sitting U.S.

11   attorneys.  And that's -- that's entirely proper, and

12   that's -- that's consistent with --

13        THE COURT:  Did he do that uniformly?  Did Mr. Barr --

14   did Attorney General Barr ever appoint a non-sitting U.S.

15   attorney?

16        MR. SCHAERR:  No, not that I am aware of.  They were

17   always sitting -- they were always sitting U.S. attorneys.

18        You know, and -- and AG Garland has done it properly

19   recently, right, in the -- in the appointment of Mr. Weiss.

20        THE COURT:  So what to make of this potential patchwork

21   historically?  What -- what conclusions do you draw from that?

22        MR. SCHAERR:  It's an imperfect world.  People --

23   people make mistakes.  And just because other people

24   have -- have made that mistake doesn't mean that this Court

25   should.  And I -- you know, I -- that -- that would be my

1    answer to that.

2         THE COURT:  What's your view on the -- on the

3    Congressional acquiescence piece:  It's a historical argument

4    about the origins of 515, and that it potentially pulls a

5    history of using special prosecutors -- unclear whether they're

6    exercising the same authority we have now -- but that we should

7    read the term "special attorney" as picking up that independent

8    authority?

9         MR. SCHAERR:  Well, by its term, I -- two things.

10   First of all, the Supreme Court has made clear recently that

11   Congressional acquiescence is not really a legitimate tool of

12   statutory interpretation.  So -- and so I don't think the Court

13   needs to be -- needs to be worried about that as a matter of

14   statutory interpretation.

15        But if you look at the language of Section 515,

16   you know, Section 515(a) basically just says that -- you know,

17   that the Attorney General can move people around

18   geographically.  If they already have the authority to conduct

19   the -- the activity that he wants them to conduct, he can move

20   them around geographically, which is why he could -- he could

21   say to Mr. Weiss, for example, you know, you can -- and I

22   don't -- I don't know exactly whether this has occurred, but he

23   could say to a sitting U.S. attorney:  Even though -- you know,

24   even though most of the events that I want you to investigate

25   occurred in your home judicial district, I'm going to authorize

1    you to -- you know, to carry out the prosecution in another

2    district as well, if you -- if you find that there are crimes

3    that have possibly been committed there.

4         So 515(a) doesn't really -- doesn't really get

5    Mr. Smith anywhere, I think.

6         And then 515(b) just says that -- that if the -- if the

7    AG has properly invoked some other statute to appoint a special

8    assistant or a special attorney, like Section 543(a) that we

9    talked about earlier -- if the AG has already invoked some --

10   some other provision of Title 28 to appoint -- to appoint

11   somebody to a special attorney position, then that person has

12   to be duly commissioned, if necessary.  And they have to take

13   the oath of office, and he can pay them, and that sort of

14   thing.

15        But neither of those subsections of 515 confer any

16   substantive authority at all on the Attorney General to -- to

17   appoint people to positions where he doesn't already have some

18   other source of authority within -- within Title 28.

19        THE COURT:  The "special attorney" reference in 515, do

20   you view that as the same definition of "special attorney" used

21   in 519 and 543?

22        MR. SCHAERR:  Yes.  I think that's fair.

23        THE COURT:  Could there be room -- I think -- and I

24   will ask Mr. Pearce to help me on this.  But could there be

25   room for viewing the "special attorney" in 515 as distinct from

1    the "special attorney" in 543 or 519?

2         MR. SCHAERR:  Well, I think -- I think "special

3    attorney" in 515 is the broader set.  And by then -- and the

4    "special attorney" mentioned in 543(a) is one subset of those

5    special attorneys.  And -- and there -- and there are others in

6    Title 28.

7         THE COURT:  So why couldn't a Special Counsel just be a

8    special attorney then?

9         MR. SCHAERR:  Well, if there is some other provision

10   that -- that authorizes his appointment as a -- as a special

11   attorney, then -- then that would be fine.  But Section 515

12   itself doesn't authorize -- you know, doesn't confer any

13   substantive appointment authority.

14        THE COURT:  So your view is that there would have to be

15   a separate enactment to give the special attorney the sort of

16   power that the Special Counsel in this case has?

17        MR. SCHAERR:  Yes.  Or a different -- or a different

18   provision of law like 543(a).

19        THE COURT:  So if the appointment order in this case

20   had cited 543 -- I think -- I think the Savings and Loan one

21   actually did -- would that change anything?

22        MR. SCHAERR:  No.  Because the -- because it would

23   still be equivalent to the appointment of the U.S. attorney.

24   And it wouldn't be -- I think the Special Counsel in that -- in

25   that circumstance would -- would still have to be appointed in

1    a way that's consistent with U.S. attorneys.  He would -- he

2    would have to be nominated by the President and confirmed by

3    the Senate; otherwise, you would have this end run around

4    the -- the provisions in 540 -- 541(a) dealing with U.S.

5    attorneys.

6              Should I move on to 533 --

7              THE COURT:  Yes.

8              MR. SCHAERR:  -- briefly?

9              It's interesting that 533 is not actually cited in the

10   Reno Regulations because -- so, obviously, Attorney General

11   Reno didn't think that that -- that that provision provided the

12   authority to appoint a Special -- a Special Counsel.  And the

13   reason for that, I'm quite sure, is because 533 is part of

14   Chapter 33, which, as we discussed earlier, is entitled to

15   Federal Bureau of -- Bureau of Investigation.  So --

16             THE COURT:  I think I heard the Special Counsel say,

17   though, although 533 wasn't cited in the Special Counsel regs,

18   or in appointment orders prior to 2022, it still was part of

19   the discussion and made its way into the judicial opinions; and

20   so it's -- it was still invoked, so to speak, as authority.

21   What is your position on that?

22             MR. SCHAERR:  Yeah.  I mean, they -- they have been

23   searching around for authority for a while.  And, you know,

24   as -- as Mr. Smith's counsel here today acknowledged earlier,

25   there has been a bit of -- I can't remember the term he

1    used -- but creativity or interpretative work to be done.  I

2    think -- I think it's just part of that process.

3         But when you -- again, when you look at the structure

4    of Title 28, Part 2, it's very clear that Section 533 is just

5    talking about the FBI.  And, yes, it -- it -- you know, it does

6    authorize the Attorney General to -- to appoint lawyers within

7    the FBI to assist with prosecutions being carried out by U.S.

8    attorneys, but it doesn't authorize the Attorney General to

9    supplant Section 541(a) and essentially use attorneys who are

10   employed by the FBI to, sort of, take the place of U.S.

11   attorneys.

12        THE COURT:  What do you make of the "officials"

13   argument that if you -- if you take the defense view, you have

14   sort of obliterated the difference between officials and

15   employees?

16        MR. SCHAERR:  No.  I -- I don't think that is true.

17   You know, the definition of -- well, I -- officials, I think,

18   can include employees.  And so, I don't -- I don't think

19   that -- that those two categories are -- are hermetically

20   sealed off or --

21        THE COURT:  So what does "officials" capture then, if

22   it doesn't capture officers?

23        MR. SCHAERR:  Well, I think -- I -- I think if Congress

24   had meant "officers," that they would have used that -- that

25   they probably would have used that word.

1          THE COURT:  Why do you say that with such confidence?

2          MR. SCHAERR:  Well, because -- because they -- they do

3    that in -- in a lot of other places in statute.  They -- you

4    know, they refer to officers when they -- when they mean

5    to -- when they mean to invoke officers.

6          THE COURT:  And there, you're referring to the trio,

7    the DOT, Department of Education set you have identified?

8          MR. SCHAERR:  Yes, which -- which make -- and I think

9    those -- those statutes are a very clear contrast to what we

10   see here; where, you know, Congress clearly knows how to -- how

11   to confer general officer-creating or officer-appointing

12   authority on cabinet secretaries when it wants to.  But it made

13   a very deliberate decision not to confer that authority on the

14   Attorney General, except with respect to the -- to the Bureau

15   of Prisons.

16         The Attorney General has general officer-creating

17   authority with respect to the Bureau of Prisons, but not more

18   generally.  And that -- and that is a contrast to a -- to a

19   number of other cabinet secretaries which -- which are given

20   that authority.

21         THE COURT:  What do you say to the argument, I think,

22   raised by both the constitutional lawyers and the Special

23   Counsel, that this would have a pernicious effect on the DAAG

24   role, the deputy assistant attorney general, and then a

25   principal deputy within the SG's office?

1          MR. SCHAERR:  Well, I -- I don't really see that as a

2     problem because -- because those -- those officials do not need

3     to be -- they do not need to function as -- as superior

4     officers.  And, in fact, if they're not -- if they're not being

5     appointed by the President and confirmed by the Senate, they

6     shouldn't be.

7          And so, the Attorney General has the authority to --

8     you know, to appoint -- to appoint employees to certain kinds

9     of supervisory roles.  And in the case of the principal deputy

10     solicitor general, for example, that -- that person is only

11     going to serve as the -- as the acting solicitor general

12     in -- in, at most, a very few cases per year.  So it's kind of

13     analogous to a temporary U.S. attorney.  And I think --

14          THE COURT:  So what is your view about the role held by

15     the deputy assistant attorney general and the principal deputy

16     solicitor general?  Are those inferior officers or employees?

17          MR. SCHAERR:  I would -- I would say they're employees.

18     I don't think the Attorney General has the authority to create

19     inferior officers, except with respect to the Bureau of

20     Prisons.  And so I would -- I would have to say they're

21     employees.

22          So, again, if -- well, should I -- should I move on now

23     to the -- to the Appointments Clause and the

24     Constitutional-Doubts doctrine, or do you have other questions

25     about the statute?

1    THE COURT:  Anything further on 533 that you wish to

2    add?

3    MR. SCHAERR:  Well, I think -- you know, I think it's a

4    classic case of arguing that Congress has hidden an elephant in

5    a mouse hole.  There is just no -- it strikes me as just a

6    completely implausible interpretation of that provision, and

7    made even more so by the fact that -- that when Janet Reno

8    wrote those regulations, she didn't even cite that as authority

9    for appointing a Special Counsel.

10   THE COURT:  Okay.  So then you have about five or so

11   minutes, so let's wrap up.

12   MR. SCHAERR:  So even if the text of the two statutes

13   or the two provisions on which Smith relies were ambiguous, and

14   we think in context they do not authorize the kind of office

15   that the AG purported to give Mr. Smith, the other powerful

16   reason to reject Mr. Smith's reading of those statutes is the

17   Constitutional-Doubts doctrine.  And as the Court is aware, it

18   simply means, as the Eleventh Circuit stated recently, in

19   Burban v. City of Neptune Beach, that, quote, "We avoid

20   statutory interpretations that raise constitutional problems."

21   And we have heard lots of constitutional problems

22   today.

23   But Smith's interpretation raises obvious

24   constitutional problems under the -- under the Appointments

25   Clause.  He concedes that, given his putative power to convene

1    grand juries, issue subpoenas, initiate, direct, and conduct

2    prosecutions and seek indictments, and litigate in this court

3    and even before the U.S. Supreme Court, he concedes, as I

4    mentioned earlier, that he is an officer of the United States,

5    if he's validly appointed, rather than a mere employee.

6           But more than that, if he is validly appointed, he is

7    also necessarily a superior officer.  But he hasn't been

8    appointed and confirmed by the Senate.

9           So -- and I think -- I think Justice Scalia's majority

10   opinion in Edmond helps us understand why that is so.  And I

11   think Your Honor is right to focus on the issue of supervision.

12   Now, a lot of what we've heard about the regulations and the

13   appointment order today is basically an argument of the sort

14   that, well, if Mr. Garland had acted differently, then --

15   you know, then maybe Smith would really be an inferior officer,

16   arguably, rather than a superior officer.

17          But the fact is, Mr. Garland did what he did, and he

18   didn't -- and he didn't make an exception to the Reno

19   Regulations.  He left the Reno Regulations in place.  And given

20   all of that, the authority that has been conferred on Mr. Smith

21   is clearly the authority of a -- of a superior officer.

22          And if you look at the Edmond opinion, what

23   that -- what that opinion turned on was whether the officer at

24   issue has, quote, "power to render a final decision on behalf

25   of the United States without any approval from other executive

1    officers through a defined appeals process or otherwise."

2         And that's -- that's clearly true of Mr. Smith.  Yes,

3    under the regulations, the Attorney General can ask him:  Why

4    did you make this decision?  But he doesn't have to.  And, in

5    fact, he has made clear that he doesn't intend to.  And, in

6    fact, if he did, he would have to report that to the -- to the

7    chairs and ranking members of the House and Senate judiciary

8    committees.  So there is a huge built-in disincentive for the

9    Attorney General to exercise any kind of supervision of

10   Mr. Smith at all, at least supervision where he would be

11   countermanding some decision that -- that Mr. Smith made.

12        And that's -- that's clearly a superior -- a superior

13   officer.  Because he's -- he's allowed to make decisions on

14   behalf of the United States without seeking or -- or getting

15   any approval from the Attorney General at all.

16        THE COURT:  At some level.  If you take the Edmond

17   language at its word, it says at some level, supervised and

18   directed.  And you could conceive of -- of an understanding

19   that at some level, even if a -- attenuated level, there is

20   supervision and direction, because you can either rescind the

21   regulation at any time or you can exercise the removal for

22   whatever categories, you can countermand a highly inappropriate

23   decision.

24        What do you make of that?

25        MR. SCHAERR:  Well, it's theoretically possible that

1    the Attorney General could step in and do something -- you

2    know, and force him to do something different.

3         But the question is that the -- the question under

4    Edmond is really:  What power does Mr. Smith have if the

5    Attorney General doesn't do anything?  Because there is nothing

6    in the regulations that requires him to seek approval to do

7    anything, and there's nothing in the appointment that requires

8    him to seek -- seek approval to do anything.

9         So he -- you know, unless the Attorney General makes

10   some affirmative effort to step in, his decisions stand.  And I

11   think -- you know, I think perhaps the best analogy here

12   is -- is to the U.S. Courts of Appeals.  At some level, U.S.

13   Court of Appeals judges are subject to oversight and direction

14   from the Supreme Court; right?  But does anybody think that

15   Congress could vest in the Supreme Court the authority to

16   appoint Court of Appeals justices?  I don't think so.

17        Because -- and under -- under Edmond's analysis, the

18   reality is that -- you know, is that somebody has to do

19   something affirmative to get the Supreme Court involved in

20   overruling what a Court of Appeals judge or a Court of Appeals

21   panel has done.  And -- and I think that's -- that's analogous

22   to what we have with Mr. Smith.  Somebody has to do something

23   affirmative or, you know -- and the Supreme Court can

24   occasionally reach out and intervene.

25        But -- but somebody has to do something affirmative in

1   order to get the Supreme Court to overrule the Court of Appeals

2   judge.  And the same is true with respect to Mr. Smith, even

3   if -- even if it's the Attorney General affirmatively reaching

4   out to countermand some decision that he's made which he did

5   not have to seek approval for.

6          So his authorization to take important and final

7   actions on behalf of the United States without approval from

8   anyone else, any other executive officers, under Edmond clearly

9   makes him, in our view, a superior officer and not an inferior

10  officer.  And because he was not nominated by the President or

11  confirmed by the Senate, he cannot lawfully exercise the office

12  that he purports to exercise.

13         If I could just close, Your Honor -- unless you have

14  other questions for me.

15         THE COURT:  No.  You may conclude.

16         MR. SCHAERR:  I just wanted to conclude by reiterating

17  an important statement by Robert Jackson, who was then the

18  Attorney General and later became a Supreme Court justice, as

19  you know.  This is a statement he made to a convention of U.S.

20  attorneys about the importance of their roles.  He said:  The

21  prosecutor has more control over life, liberty, and reputation

22  than any other person in America.  His discretion is

23  tremendous.  He can order arrests, present cases to the grand

24  jury in secret session.  And on the basis of his one-sided

25  presentation of the facts, he can cause the citizen to be

1    indicted and held for trial; or he may dismiss the case before

2    trial, in which case the defense never has a chance to be

3    heard; or he may go on with a public trial.  And if he obtains

4    a conviction, the prosecutor can make recommendations as to

5    sentence.  And after the defendant is put away, he can make

6    recommendations as to whether he is a fit subject for parole.

7         On all of those matters, under Mr. Garland's

8    appointment order, Mr. Smith is just like a U.S. attorney.  He

9    has the putative authority to make all those decisionis on

10   behalf of the entire executive branch, without approval from

11   anyone else.

12        And since 1789, with the exception of prosecutors

13   appointed under the now defunct Ethics in Government Act,

14   prosecutors who wield that -- that kind of power have generally

15   been treated statutorily as -- as superior officers.

16        And -- and, yes, there have been a few cases where

17   mistakes have been made, but at least in statute, people who

18   exercised that -- that kind of authority have been treated as

19   superior officers.

20        And so we urge the Court to hold that Mr. Smith lacks

21   the authority to conduct the present prosecution.

22        THE COURT:  Thank you very much.

23        All right.  I will hear from Mr. Bove briefly in

24   rebuttal, and then Mr. Pearce, and then we will be concluded.

25        MR. BOVE:  Thank you, Judge, and good afternoon.

1          The thrust of so much of the opposition to this motion

2     is based on these concepts of, historically, we've done some of

3     these things; in other settings, under distinguishable

4     authorities; and currently, in other settings, unchallenged

5     settings inside the Department of Justice, we're doing similar

6     things, so this must be okay too.

7          And to really adopt that kind of reasoning is to ignore

8     the text of these statutes, which do not permit what is going

9     on here.  And there's just -- there are a couple of practical

10    points that I would like to try and make.  And I will start

11    with Nixon.

12         Nixon is really -- it's a case about the setting in

13    which the dispute arose.  And the court -- and the courts below

14    it, I don't think, went further than the fact that we are in a

15    courtroom, not at the White House.  It's not an intrabranch

16    dispute.  It is a dispute in front of an Article 3 judge.  And

17    didn't pause to look at the text of these statutes.

18         And I don't think it's much different than a situation

19    if an AUSA came in front of this Court with a motion to compel

20    on a -- on a -- to compel compliance with a subpoena, and

21    had -- there was a litigated issue in front of Your Honor on

22    that type of thing, and in your order there was a whereas

23    clause that said:  I had a hearing on this day with an AUSA and

24    a defense lawyer representing a defendant.  That got litigated

25    up.  And then in an Eleventh Circuit decision, or in the

1    Supreme Court decision, one of those courts observed

2    that -- that there was an AUSA in the room.

3            And to treat Nixon in the way people are asking you to

4    treat it would be to treat a decision like that as adopting a

5    valid appointment of that AUSA, and to be treating it as a

6    persuasive authority that future AUSAs were appointed and hired

7    in an appropriate way.  And that wouldn't be what was going on

8    there.  What would be happening there is, there was an AUSA

9    that was entitled to a presumption of regularity on an

10   undisputed issue about his authority to be in the courtroom.

11           And the Court moved to the real issue, and that's all

12   that really happened in Nixon.

13           With respect to the statutes that I think are the real

14   focus of this argument, 515 and 533, and also ones that are

15   important with respect to who -- what does "special attorney"

16   mean, 519 and 543, there has been discussion of an acquiescence

17   canon and past practices and back to the 1700s.  Your Honor

18   touched on this, and I just want to hit it clearly.

19           These statutes were all part of the same public law in

20   1966.  They all came on the books at the same time in one place

21   under public law 89-554.  And the significance of that is

22   whatever the predecessor to 515(b) meant decades ago, and

23   decades and decades ago, it sort of -- it has to fall away to

24   what it means in the context of the entire chapter in the

25   statutes that Congress put into play in that public law.

1          And in that public law, when Congress said -- used the

2    term "special attorneys," it included a provision, 543, that

3    defined what that means.  And it is much more narrow, I think

4    indisputably more narrow, than what the Special Counsel is

5    doing here.  And the concept of Congressional acquiescence, it

6    has to fall away in the -- in context of statutes all enacted

7    at the same time.  They have to be read together, and they

8    can't be in a way that's consistent with what's going on here.

9          With respect to 533, the -- the meaning of the term

10   "official," our position is that it means employee in this

11   setting.  And -- because without that definition, the Bureau of

12   Prisons' vesting clause would make no sense.

13         THE COURT:  So in your view, "officials" is equal to

14   "employees"?

15         MR. BOVE:  Yes, Judge.  And I think that in

16   Mr. Seligman's amicus, that footnote that cites other places

17   where the term "official" has been used, most, if not all of

18   them, are definitional.  They define what that term means.

19         The fact that in other settings, Congress has looked at

20   that term and said, hey, we better clarify that this -- that

21   this includes officers, is actually entirely supportive of our

22   position.  Because it's not clear.  It is not the type of thing

23   that -- on an issue with constitutional significance, whether

24   the Appointments Clause is being complied with, Congress hasn't

25   left any doubt in the other provisions in that footnote.  Here,

1    we think it can't possibly mean both of those things, in part

2    because of all of the other --

3         THE COURT:  Well, why would Congress not just have said

4    "employees" then?

5         MR. BOVE:  I think there are many places in this

6    argument where it's difficult to explain exactly the choices

7    that Congress made.  I think that here -- I don't have a good

8    answer for that.  But they could have used it.  I think I would

9    have preferred that they did.

10        What it means here, though, is there are other places

11   in the neighborhood, in the Chapters 31 and 33 of this

12   provision, that speak to officers and employees.  Meaning, when

13   Congress wanted to speak in a scope that included both of those

14   terms, it did it explicitly.

15        They didn't do that here.  And I think, again, in a

16   setting where there are -- there is constitutional significance

17   to the words chosen by Congress, they should not -- in a

18   criminal case -- they shouldn't be expanded to defeat an

19   important argument by the defense.

20        THE COURT:  What do you say about the DAAG point, the

21   deputy assistant attorney general point?

22        MR. BOVE:  I, sort of, alluded to that in the

23   beginning, Judge.  I don't think it's much of an answer to

24   the -- the problem presented by this motion to say, hey, we

25   also do it in other settings.

1           If there has to be an answer to that question, to -- to

2    give the Court an ability to, sort of, reconcile all these

3    different -- different provisions, then my answer is that the

4    DAAGs and the people under the Solicitor General are employees,

5    because there is no other provision for their appointment.

6           And this is a provision that speaks to the appointment

7    of officials, not officers.

8           THE COURT:  Okay.  I'm going to ask that you wrap up so

9    that we can conclude the hearing; of course, hearing first from

10   Mr. Pearce.

11          MR. BOVE:  Yes, Judge.

12          The last point that I want to make is on the principal

13   versus inferior officer distinction, and this concept of

14   independence.

15          The statements that the Special Counsel made to

16   Judge Chutkan in D.C., in 2023, about, there is no

17   coordination -- emphatic, categorical statements -- no

18   coordination.  If they're not entitled to some kind of estoppel

19   effect in this hearing, as Your Honor considers what measure of

20   independence is there to apply all of these precedents that

21   we're talking about, if it's not estoppel, they're certainly

22   entitled and require an answer as to why that statement was

23   made in court, and we can come to this hearing and have a

24   position that is very, very inconsistent with it.  And it's not

25   just that motion in limine.  I think Attorney General Garland's

1    statements throughout have suggested to the public that this is

2    a case that he is not overseeing, that he is allowing the

3    Special Counsel's Office to act independently.

4           And when you covered this with the government, I don't

5    think a single -- just as a practical matter, not a single

6    example of something that happened in this case that the

7    Attorney General approved was provided.  And that's extremely

8    problematic in terms of, is this record sufficient to support

9    and apply precedents like Edmond and Morrison and the Court's

10   other jurisprudence on this issue?

11          And there is some very specific procedural approval

12   requirements.  So 600.7(a) requires compliance with basically

13   DOJ policies and procedures.  We talked about the Justice

14   Manual provision relating to election interference.  If -- if

15   there is compliance with these procedures, if the Attorney

16   General is overseeing that, so that the Special Counsel's

17   Office is not completely independent, there must be compliance

18   with 9-85, 500.

19          And if Your Honor looks at the statements that were

20   made by the Special Counsel's Office, at page 80 of the

21   transcript, at the March 1st hearing, what you will see is

22   statements that are not consistent with the text of that

23   provision.  And so --

24          THE COURT:  But your position requires me to conclude

25   that there has been some sort of deviation from policy to then

1    conclude that because there was such a deviation, arguably,

2    that there is then no oversight of any kind by the Attorney

3    General.

4         MR. BOVE:  I don't think so, Judge.  I think my

5    position requires the Special Counsel's Office to put some

6    proof to show Your Honor that they mean what they say, that

7    it's accurate that the Attorney General is overseeing their

8    compliance with the Justice Manual.  And that's one example.

9         The second example, which I raised this morning, but I

10   want to come back to, because the topic of indictment approvals

11   did come up, is the NSD provisions in the Justice Manual,

12   9-90.020.  If Your Honor consults those provisions, you will

13   see that these -- that provision applies to cases, quote,

14   "involving or relating to the national security."  For all

15   kinds of important steps in a case, including the filing of an

16   indictment, that provision requires, quote, "express approval

17   of NSD or," quote, "higher authority."

18        When I was a prosecutor and Mr. Bratt was at DOJ, I

19   used to have to send my indictments through his office to get

20   them approved.  What the Special Counsel's Office is suggesting

21   to you here is that they are in compliance with those types of

22   procedures.  But they're not saying that.  And I think that's

23   extraordinarily significant for this motion, for what to make

24   of fact-finding that would be -- will be necessary on the

25   motions to compel and in other -- in other settings relating to

1    our pretrial motions.

2         It's also -- this concept of independence and to what

3    extent it's being applied and enforced is also very significant

4    for Monday, as I think Mr. Blackman touched on.

5         The way that I took the government to, sort of,

6    sidestep this this morning -- and I don't think they should be

7    permitted to, but I think where they went -- and Your Honor has

8    referenced it as well -- is this possibility that the Attorney

9    General could amend or rescind the appointing order, or get rid

10   of the Reno Regulations altogether.

11        I find that logic to be rather circular.  It rests on

12   this idea that that decision to rescind them would be

13   unchallengeable.  And no one could litigate against a decision

14   under any circumstances to modify those orders.  And courts, I

15   think, in very conclusory discussion, have cited APA as a basis

16   for that.

17        We certainly don't concede that.  We don't concede that

18   it's categorically true.  I think there are circumstances where

19   the -- where an Attorney General could act in a way that was so

20   extraordinarily inappropriate and arbitrary and capricious and

21   unconstitutional that a decision to modify one of these

22   appointing orders in order to avoid an outcome that they don't

23   like for political purposes could be challengeable.  And so, I

24   think that this -- the sidestepping of the independence,

25   coupled with the circular nature of the logic of, well, we

1   could just get rid of this thing and nobody can complain about

2   it, those two things together, I don't -- cannot support a

3   finding that defeats this motion.

4            THE COURT:  Okay.  Thank you.

5            MR. BOVE:  Thank you, Judge.

6            THE COURT:  Mr. Pearce.

7            MR. PEARCE:  Good afternoon, Your Honor.  It's been a

8   long day, so I will try to keep this brief, but there are some

9   points I want to touch on and, of course, respond to any

10   questions that come up.

11           I just want to start at the very end of where my friend

12   on the other side, Mr. Bove, started.  We are in compliance,

13   consistent with Regulation 600.7(a).  We are following all of

14   the rules and the policies of the Justice Department.  And

15   there is --

16           THE COURT:  So has there been express approval by the

17   National Security Division?

18           MR. PEARCE:  So, I -- I am -- let me put it this way.

19   I don't want to talk about the internal deliberations.  If that

20   is a -- if what he is talking about is a specific policy, yes,

21   then we have done that.  But I don't want to talk here about

22   what we have done and haven't done.  Even my friend on the

23   other side acknowledges this is not something for which this

24   issue -- the appointments issue is not something for which any

25   factual or evidentiary developments is required.

1          THE COURT:  So you're taking the position that all of

2     the Department policies have been upheld?

3          MR. PEARCE:  I'm telling this Court that we, the

4     Special Counsel, have complied with all of -- of the

5     regulation -- I'm sorry -- all of the Department's policies,

6     and the Attorney General has stated publicly that he too has

7     complied with the regulations.

8          THE COURT:  So to what extent has there been any actual

9     oversight by the Attorney General?

10         MR. PEARCE:  I mean, again, I think the question that

11    the Court is asking me, is asking me to, kind of, go into the

12    internal deliberations.  The regulations don't say, you know,

13    you need to meet X number of times, or you need to meet when

14    this issue or that issue arises.

15         The regulations say there is not day-to-day

16    supervision, but the Attorney General can ask to consult on any

17    decision and can countermand any decision.

18         THE COURT:  Has any of that actually happened, though?

19    Has there been any actual oversight?

20         MR. PEARCE:  Yes.  But, again, I mean, I'm not

21    prepared, from the podium, to -- to sort of go into a detailed

22    what we have and we haven't done.  That's not hiding anything;

23    that is standard Justice Department.  We comply with all

24    Department policies and practices and consultation

25    requirements.

1          THE COURT:  So, for example, on the indictment, I

2     understand from the regulations that they do not require any

3     actual oversight by the Attorney General in the issuance or

4     seeking of an indictment.

5          Did the Attorney General have any sort of oversight

6     role in seeking the indictment?

7          MR. PEARCE:  So, again, I don't want to make it look

8     like I am trying to hide something.  What I can tell you is

9     what I told you when I was up here this morning.  The

10    regulations don't address specifically the role of the Attorney

11    General for the indictment.  I can tell you just, if one were

12    to read --

13         THE COURT:  Why would there be any, I guess, heartburn

14    answering whether there was Attorney General signoff on the

15    indictment?  That should either have happened or not happened.

16         MR. PEARCE:  I am telling you that I am not in a

17    position on behalf of the Department as a whole to make

18    representations about that, as I stand here from the podium.

19    We have understood, coming into this hearing, that there is

20    not -- that -- consistent with both the parties' requests and

21    the way the courts have looked at it, the question of the

22    Attorney General statutory authority to appoint the Special

23    Counsel, whether the Special Counsel is a principal or inferior

24    officer or an employee, turns entirely on the laws and the

25    regulatory framework.

1     THE COURT:  So there has been reference to a motion in

2  the D.C. case of zero coordination.  Does that representation

3  coincide in this proceeding equally?

4     MR. PEARCE:  So I believe the representation is that

5  the Special Counsel has not -- has been zero coordination with

6  the Biden Administration.  I think, yes, we can make the same

7  representation to this Court.

8     THE COURT:  But that's distinct from oversight by the

9  Attorney General?

10     MR. PEARCE:  I'm not -- I -- I -- candidly, I don't

11  quite follow the difference -- or not the difference, but what

12  the Court is asking with the latter question.  The -- the

13  Attorney General has had all of the oversight consistent with

14  the regulations and, of course, with his ultimate

15  responsibility on behalf of the Justice Department of which the

16  Special Counsel is a part of.

17     THE COURT:  So because there is -- and, correct me if

18  I'm wrong -- no oversight or -- or maybe I'm incorrect -- no

19  oversight, we should treat it as a full-blown independence?

20     MR. PEARCE:  So I don't -- I disagree with the premise

21  that there is no oversight.  I think the kinds of things built

22  into 600.7 talk about the fact -- and Mr. Seligman, I think,

23  made these points -- the fact that we have to comply with

24  government consultation requirements, policies, practices; the

25  fact that the Attorney General can call for a -- sort of, an

1    update or get -- you know, get information from the Special

2    Counsel at any point, and can countermand any decision to the

3    extent that the Attorney General concludes it is so

4    inappropriate or unwarranted under Department -- established

5    Department practices, and, of course, at the end of the day can

6    also simply rescind the regulation and/or simply remove the

7    appointment order.  So all of those things --

8             THE COURT:  But that would all take, as Mr. Schaerr

9    said, I think, additional affirmative efforts on the part of

10   the Attorney General to either modify the regulation or modify

11   the appointment order; correct?

12            MR. PEARCE:  Of course.  And that's entirely consistent

13   with the way the Court thinks about cases like Edmond or

14   Arthrex.  I mean, those -- those are cases where there are

15   judges who make decisions that are going to be final.  They

16   could be overridden, but the mere fact that there isn't some

17   record of their having been overridden, that didn't, sort of,

18   transform those particular individuals in Edmond or in Arthrex

19   into principal officers.

20            THE COURT:  But as far as looking at the extent of

21   authority, the only place to look right now is a regulation

22   because it hasn't been rescinded.  So that is the universe of

23   applicable law, correct, in terms of looking at the scope of

24   authority being exercised?

25            MR. PEARCE:  I don't agree that's the full scope,

1   because this is a question that is -- the regulations are

2   when -- I mean, as the Court said -- the Supreme Court said in

3   Nixon -- citing Accardi:  When the regulation is extant, it is

4   fully in power and, therefore, it binds the Attorney General.

5         So, yes, that is a source.  But for the reasons I just

6   mentioned about rescission, the fact that there hasn't been

7   that affirmative step, that factual question is not relevant to

8   the legal determination of:  Where does the buck stop?  Who

9   has responsibility and ultimate supervision and direction

10  of -- of the Special Counsel?

11        THE COURT:  It just seems that on the one hand you're

12  saying, look to the regulation to delimit the scope of

13  authority, but really, you don't really need to look at the

14  regulations.

15        MR. PEARCE:  Well, I mean, we're answering, kind of,

16  different questions here.  So I understand these to be driving

17  at whether it's a -- whether the Special Counsel is a principal

18  or inferior officer.  That is relevant, both with -- answering

19  that question requires looking both at the current relationship

20  under the regulations which are in force.  And our view is,

21  looking at that alone that, that which -- because of the types

22  of oversight and direction that the Attorney General retains,

23  the Special Counsel is an inferior officer.  But in addition --

24        THE COURT:  And that retention of authority is in the

25  potential rescission of the regulation?

1    MR. PEARCE:  I mean, not alone.  It is also baked into

2    the regulation itself.  I don't want to repeat them again, but

3    all the pieces --

4        THE COURT:  Okay.  I'm aware of those.  Except for none

5    of those actually have the Attorney General directing the

6    conduct of the litigation.

7        MR. PEARCE:  I agree with you.  And my point was

8    simply, that was equally true in Edmond, that was equally true

9    in Arthrex, and that didn't transform those -- the judges --

10   the individuals there into principal officers.

11       You asked -- if I could just transition to a couple

12   other points.  You asked this morning about any statutes.  I

13   think you said vesting clauses that used the term "officials."

14   We identified a couple over the lunch break.  You know, with

15   the caveat that we found them over the lunch break, I can cite

16   them to the Court.  And also, to the extent it would be

17   helpful, we can submit them --

18       THE COURT:  Yes.

19       MR. PEARCE:  -- as a stand-alone.

20       But I'll cite them now:  18, United States Code,

21   831(e), as in echo.  It's a --

22       THE COURT:  Lowercase (e)?

23       MR. PEARCE:  Lowercase (e), as in echo.  That is a

24   provision -- I believe that has to do with the Tennessee Valley

25   Authority.  Then we have 10, United States Code, 397.  That's a

1    Department of Defense provision that talks about officials.

2    And then we've also got one that, I believe, has since been

3    amended.  But this is in 6, United States Code, 458.  This was

4    a provision for -- "Counter-narcotics Officer" was the title of

5    the provision.  And it said, "The secretary shall appoint a

6    senior official in the Department to assume primary

7    responsibility," et cetera, et cetera, which seems to draw a

8    line -- sort of makes "official" and "officer" synonymous.  I

9    think that's a fair point.  One could make that argument.  That

10   wasn't the argument I made this morning, although in our brief

11   we talk about the way the Court in Lucia, I think, uses the

12   terms interchangeably.

13        I think in 533(1), for reasons we already said, it

14   encompasses both, but what it certainly doesn't do is just mean

15   employee.

16        And another reason why it doesn't, and I think

17   Mr. Seligman touched on this, is Justice Kagan said for the

18   Court in Lucia, "The Constitution cares not a wit about

19   employees.  There would be no reason to pass a statute that

20   empowers the appointment of employees separate from the

21   preexisting statutory -- statute 5, United States Code, 1301,"

22   which is basically just a catch-all that says all executive

23   departments can hire employees.  So all the more reason why you

24   wouldn't treat "officials" in 533(1) as meaning employees

25   alone.

1          Now, I want to spend just a moment, if I could, on the

2    difference between "employee" and "officer."  I think that was

3    the thrust of what I understood the Tillman amicus brief and

4    Mr. Blackman -- although Mr. Blackman was wide-ranging, I think

5    he asked this Court to overrule Morrison v. Olson, which I

6    don't think is in any way presented.  But I want to focus on

7    what the brief was about.

8          As I understand the test for differentiating an

9    employee from an officer, it looks at the significant exercise

10   of government authority and continuity.  I don't think there is

11   any dispute here that the Special Counsel is engaged in the

12   significant exercise of government authority.

13         Then the question becomes one of continuity.  And the

14   way the courts have talked about this, from Germaine and

15   Hartwell on, are questions of:  Is this something that is

16   episodic, intermittent, occasional?  So, sort of, a doctor

17   that's seeing patients on an occasional basis or -- I think

18   there was a distinction in Freytag between the special tax

19   judges there and special masters, which that's where -- the

20   episodic and intermittent language.

21         The Special Counsel is nothing like that.

22         THE COURT:  I think I have enough on the employee

23   topic.

24         MR. PEARCE:  Excellent.

25         I'd like to briefly just touch on the history, a couple

1    of points on the history question; I think Mr. Blackman

2    developed this to some extent, as did Mr. Schaerr.

3          So I think I heard Mr. Blackman recognize that after

4    the appointment that President Ulysses S. Grant made, he,

5    Mr. Blackman, couldn't figure out the appointing authority or

6    the statute by which -- well, I think that tells you that it's

7    got to be Section 17 of the 1870 act; in other words, the

8    predecessor for 515.

9          That was the only thing that was on the books.  All

10   these later statutes didn't exist yet.  Unless we're just going

11   to assume that President Grant acted unconstitutionally, then I

12   I think the only plausible account is what is now 515(b).  The

13   fact that it was the president alone that did it, that doesn't

14   mean, oh, well, that's fine; that makes him a principal

15   officer.

16         The President alone, or a head of a department, or a

17   court of law is empowered, when so vested by Congress, to

18   appoint an inferior officer.  But that wouldn't have been

19   sufficient to appoint a principal officer at that point.

20         So I think that also helps in establishing that the

21   special -- that the prosecutor in 1875, the Special Counsel was

22   under 1515 [sic] and was seen as an inferior officer.

23         The Teapot Dome scandal, I agree that involved Senate

24   confirmation and -- presidential nomination and Senate

25   confirmation.  I think that's the exception that proves the

1    rule.  Congress did it once, as I think came out in the

2    colloquy before.  Congress can set up that -- in fact, it's the

3    default to have presidential nomination and Senate

4    confirmation.  That doesn't answer the constitutional question.

5         THE COURT:  And that Congress also did it in the EGA.

6         MR. PEARCE:  Correct.  And so it can do it, but in so

7    doing it, it does not mean that that person becomes a principal

8    officer; right?  That doesn't necessarily transform it.

9         And it also doesn't mean that's the only way -- the

10   only mechanism by which a Special Counsel could be appointed.

11        THE COURT:  But you need statutory authority.

12        MR. PEARCE:  That's certainly true.

13        THE COURT:  And there's no Special Counsel statute.

14        MR. PEARCE:  I agree there is no statute designated

15   "the Special Counsel statute."  Obviously, you've heard the

16   arguments -- I won't repeat them -- that we view 515(b) and

17   533(1) as providing that.

18        Just another historical correction.  I think I heard

19   Mr. Schaerr represent that Mr. Barr -- Attorney General Barr

20   only appointed former -- or then U.S. attorneys.  That was true

21   with respect to Mr. Durham.  That was not true with respect to

22   the three -- I think I mentioned this in the morning --

23        THE COURT:  You did.

24        MR. PEARCE:  -- the three independent regulatory

25   counsels that Mr. Barr -- Attorney General Barr appointed

1    during the first time that he was --

2         THE COURT:  And those were who again?

3         MR. PEARCE:  You know, I apologize, Your Honor.  I

4    don't remember their names.  We could put that in a separate

5    filing, in addition to the statutes I mentioned.  But there are

6    three individuals at the time, interestingly, that the

7    independent counsel statute was operative.  But, nonetheless,

8    Mr. Barr decided -- did it outside of that.

9         THE COURT:  And why does it not matter, again, in your

10   view that it would have been the President -- President Grant

11   to have appointed the Special Counsel?  I think you made a

12   point that it really is not indicative of anything.

13        MR. PEARCE:  Well, I may have misunderstood what the

14   argument on the other side was.  I took that as suggesting

15   somehow that it was constitutionally -- there was no -- there

16   was -- it was clear that the -- that that Special Counsel was a

17   principal officer because the -- President Grant had appointed

18   him, and it's true that presidents had also appointed -- so,

19   for example, Garfield appointed and --

20        THE COURT:  So why wouldn't those presidential

21   appointments be treated differently?

22        MR. PEARCE:  That -- my point is that they should not;

23   right?  So that a president and a head of department stand on

24   equal footing for purposes of appointing an inferior officer,

25   so long as Congress has, by law, allowed for that appointment

1    as an inferior officer.  So that -- to the that extent there

2    was some argument that, oh, the fact that President Grant

3    appointed the -- and not the Attorney General, that that is

4    somehow problematic.  So...

5            THE COURT:  Because there still wouldn't have been,

6    beyond the predecessor to 515, any other statutory authority?

7            MR. PEARCE:  I think that's right.  I mean, I think

8    it's also -- you could potentially argue that the President is

9    somehow acting on behalf of the Justice Department.  I mean,

10   what -- 515 is broader; right?  That it doesn't say -- I'll

11   read the language.  515(b) says -- I should have it right here.

12   Just give me a moment.

13           "Specially retained under authority of the Department

14   of Justice"; right?  So, in our view, that would encompass both

15   the President, who can act on behalf of the Department of

16   Justice and the Attorney General.  Either of those would --

17   that would be a constitutionally permissible appointment in

18   either instance.

19           THE COURT:  All right.  I'd like to wrap up soon, so

20   just, please, conclude.

21           MR. PEARCE:  Yes.  Can I make just one final point --

22           THE COURT:  Yes.

23           MR. PEARCE:  -- just on the dicta point about Nixon?  I

24   can keep this pretty clear.

25           The -- Chief Judge Pryor, when he says not all dicta

1    are treated alike, was -- is in a case called Farah, where he

2    was talking about the importance of actually deferring to

3    Minnesota Supreme Court dicta in a case where it involved a

4    question of Minnesota law.

5         And the portion of the Garner treatise that Mr. Schaerr

6    cited when he was discussing, you know, "dicta is important

7    when -- only when things have been discussed," was actually not

8    talking about a case that involved dicta; it was talking about,

9    hey, we should take -- we should heed this particular

10   discussion because it has all been discussed without respect to

11   whether it was dicta or not.

12        That may have not been articulated as clean.  My point

13   is, reading the Garner treatise, it does not support

14   Mr. Schaerr's view of dicta.  And even if this Court were to

15   conclude -- which we don't think it should, for all the reasons

16   that I gave this morning -- that the discussion in Nixon is

17   dicta, it should, nonetheless, find it persuasive and follow

18   it.

19        Unless there are any further questions, we'd ask the

20   Court to deny the motion.

21        THE COURT:  Okay.  With respect to any supplemental

22   authority, I will permit Special Counsel and the defendants, in

23   one combined filing, to submit no more than five pages, with

24   any additional statutory citations or case law citations that

25   were referenced today or that you think are pertinent to the

1    question before the Court.  Again, limited to five pages.  And

2    no additional filings will be accepted by the amicus parties.

3          So at this point, I thank everybody for being here and

4    for this extensive argument that has been very illuminating and

5    helpful.  I wish you all a very pleasant weekend and safe

6    travels to your home districts.

7          Thank you.  We are in recess.

8        (These proceedings concluded at 2:21 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3

4     I hereby certify that the foregoing is an accurate

5     transcription of the proceedings in the above-entitled matter.

6

7
      DATE:   06-22-2024        /s/Laura Melton
8                               LAURA E. MELTON, RMR, CRR, FPR
                                Official Court Reporter
9                               United States District Court
                                Southern District of Florida
10                              Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

163

'

'21 [1]– - 1:106:11
'22 [1]– - 1:20:6
'87 [1]– - 1:34:21

1

1 [3]– - 1:55:11–, 1:91:21–, 1:101:6
10 [2]– - 1:53:23–, 1:154:2
10:30 [1]– - 1:40:6
11 [1]– - 1:82:24
11:13 [1]– - 1:70:16
11:16 [1]– - 1:70:23
12:15 [1]– - 1:70:17
1301 [1]– - 1:154:23
1515 [1]– - 1:156:24
154 [1]– - 1:85:15
17 [4]– - 1:56:5–, 1:56:10–, 1:58:21–, 1:156:9
1700s [1]– - 1:140:19
1789 [3]– - 1:121:13–, 1:121:14–, 1:138:14
18 [5]– - 1:9:19–, 1:10:3–, 1:13:7–, 1:13:19–, 1:153:22
1800s [1]– - 1:22:8
1870 [6]– - 1:56:5–, 1:58:20–, 1:59:3–, 1:60:15–, 1:70:1–, 1:156:9
1870s [1]– - 1:85:4
1875 [1]– - 1:156:23
1881 [1]– - 1:60:19
1903 [1]– - 1:60:22
1906 [1]– - 1:59:4
1930 [6]– - 1:56:12–, 1:58:24–, 1:60:11–, 1:61:6–, 1:61:25–, 1:62:3
1933 [1]– - 1:111:13
1966 [1]– - 1:140:22
1971 [1]– - 1:110:24
1973 [1]– - 1:92:4
1974 [1]– - 1:22:7
1978 [1]– - 1:65:22
1980s [1]– - 1:101:25
1986 [2]– - 1:93:13–, 1:112:2
1987 [5]– - 1:14:13–, 1:14:15–, 1:34:3–, 1:37:17–, 1:38:18
1988 [1]– - 1:101:25

1992 [1]– - 1:65:23
1994 [1]– - 1:65:23
1999 [4]– - 1:65:23–, 1:66:8–, 1:67:16–, 1:67:17
19th [1]– - 1:98:13
1st [2]– - 1:28:24–, 1:144:23

2

2 [8]– - 1:36:4–, 1:36:5–, 1:42:7–, 1:91:19–, 1:96:24–, 1:114:25–, 1:120:10–, 1:130:6
20 [3]– - 1:105:1–, 1:105:7 –, 1:107:3
2007 [3]– - 1:96:13–, 1:96:17–, 1:100:12
201 [1]– - 1:53:24
2017 [1]– - 1:100:15
2022 [2]– - 1:53:1–, 1:129:20
2023 [1]– - 1:143:18
245 [1]– - 1:99:25
28 [16]– - 1:7:2–, 1:8:1–, 1:13:18–, 1:16:3–, 1:18:20–, 1:30:21–, 1:31:23–, 1:43:13 –, 1:47:22–, 1:104:15–, 1:114:3–, 1:120:10–, 1:127:12–, 1:127:20–, 1:128:8–, 1:130:6
29 [1]– - 1:38:7
2:21 [1]– - 1:161:10

3

3 [5]– - 1:35:7–, 1:73:19–, 1:97:1–, 1:108:11–, 1:139:18
30 [3]– - 1:34:4–, 1:34:7–, 1:44:2
31 [4]– - 1:9:2–, 1:10:20–, 1:120:16–, 1:142:13
326 [1]– - 1:4:23
33 [5]– - 1:9:2–, 1:10:20–, 1:120:18–, 1:129:16–, 1:142:13
35 [3]– - 1:120:20–, 1:121:5 –, 1:121:7
397 [1]– - 1:154:2

4

4 [1]– - 1:53:23
40 [2]– - 1:104:16–,

1:120:24
404(1 [1]– - 1:10:3
41 [1]– - 1:11:14
410-2 [1]– - 1:5:11
429 [1]– - 1:5:15
458 [1]– - 1:154:5

5

5 [1]– - 1:154:23
50-year [1]– - 1:61:9
500 [1]– - 1:144:20
504 [2]– - 1:17:21–, 1:18:2
509 [4]– - 1:9:4–, 1:32:23–, 1:43:15–, 1:46:18
509(a [1]– - 1:30:23
509(b [1]– - 1:30:22
510 [4]– - 1:32:23–, 1:43:15–, 1:46:19–, 1:68:21
515 [55]– - 1:8:1–, 1:14:6–, 1:14:9–, 1:14:10–, 1:14:16–, 1:14:21–, 1:15:8–, 1:15:25–, 1:16:8–, 1:16:12–, 1:16:14–, 1:24:4–, 1:24:7–, 1:33:1–, 1:35:15–, 1:38:12–, 1:39:13 –, 1:39:19–, 1:43:15–, 1:46:19–, 1:51:14–, 1:51:17 –, 1:55:22–, 1:55:25–, 1:57:2 –, 1:57:6–, 1:58:15–, 1:59:4–, 1:59:9–, 1:62:14–, 1:62:16–, 1:68:21–, 1:68:23–, 1:69:5–, 1:80:24–, 1:85:22–, 1:91:5–, 1:104:11–, 1:107:25–, 1:109:20–, 1:109:23–, 1:120:16–, 1:124:13–, 1:126:6–, 1:126:17–, 1:127:17–, 1:127:21–, 1:128:2–, 1:128:5–, 1:128:13 –, 1:140:16–, 1:156:10–, 1:159:8–, 1:159:12
515's [1]– - 1:60:6
515(a [10]– - 1:14:25–, 1:15:14–, 1:19:12–, 1:19:22 –, 1:23:21–, 1:23:23–, 1:59:4 –, 1:59:11–, 1:126:18–, 1:127:6
515(a) [1]– - 1:23:17
515(b [21]– - 1:15:6–, 1:19:24–, 1:20:20–, 1:21:8–, 1:56:3–, 1:56:9–, 1:56:17–, 1:57:13–, 1:58:19–, 1:59:12 –, 1:61:25–, 1:62:15–, 1:65:7 –, 1:70:11–, 1:80:20–, 1:84:22–, 1:85:2–, 1:127:8–, 1:140:24–, 1:157:18–, 1:159:13

515(b) [2]– - 1:19:24–, 1:156:14
516 [4]– - 1:9:5–, 1:43:13–, 1:47:22–, 1:58:13
519 [9]– - 1:9:5–, 1:15:9–, 1:16:10–, 1:39:20–, 1:58:1–, 1:58:16–, 1:127:23–, 1:128:3 –, 1:140:18
533 [57]– - 1:8:1–, 1:10:25 –, 1:11:5–, 1:12:2–, 1:12:6–, 1:12:11–, 1:13:2–, 1:13:3–, 1:13:5–, 1:14:3–, 1:20:13–, 1:20:17–, 1:33:1–, 1:35:15–, 1:35:16–, 1:35:17–, 1:36:24 –, 1:39:11–, 1:43:15–, 1:51:14–, 1:51:17–, 1:51:20 –, 1:52:3–, 1:52:5–, 1:52:19–, 1:53:2–, 1:53:8–, 1:54:13–, 1:55:7–, 1:55:11–, 1:55:21–, 1:55:23–, 1:55:24–, 1:80:21 –, 1:80:23–, 1:81:1–, 1:81:4–, 1:81:10–, 1:81:14–, 1:81:18 –, 1:82:15–, 1:84:21–, 1:84:22–, 1:85:22–, 1:87:23 –, 1:109:7–, 1:109:17–, 1:120:18–, 1:124:13–, 1:129:8–, 1:129:11–, 1:129:15–, 1:129:19–, 1:130:6–, 1:133:3–, 1:140:16 –, 1:141:11
533(1 [3]– - 1:154:15–, 1:155:1–, 1:157:19
533-1 [1]– - 1:8:14
535 [2]– - 1:9:3–, 1:54:4
540 [1]– - 1:129:6
541 [1]– - 1:31:23
541(a [4]– - 1:121:7–, 1:122:8–, 1:129:6–, 1:130:11
542 [1]– - 1:57:18
543 [17]– - 1:15:9–, 1:15:22 –, 1:15:25–, 1:16:9–, 1:16:12 –, 1:39:20–, 1:56:20–, 1:57:2 –, 1:57:8–, 1:57:20–, 1:58:11 –, 1:58:16–, 1:127:23–, 1:128:3–, 1:128:22–, 1:140:18–, 1:141:4
543(a [4]– - 1:17:11–, 1:121:21–, 1:127:10–, 1:128:6
543(a) [1]– - 1:128:20
565 [1]– - 1:49:18
591 [6]– - 1:104:15–, 1:104:20–, 1:104:21–, 1:105:6–, 1:107:15

## 6

6 [1]₋ - 1:154:5
60-year [1]₋ - 1:61:10
600 [1]₋ - 1:74:18
600.7 [6]₋ - 1:25:9₋, 1:48:2
₋, 1:48:11₋, 1:76:2₋, 1:76:10
₋, 1:150:24
600.7(a [1]₋ - 1:144:14
600.7(a) [1]₋ - 1:147:15
600.8 [1]₋ - 1:50:15
600.8(b [1]₋ - 1:50:15
663 [1]₋ - 1:77:23
665 [1]₋ - 1:49:18
672 [3]₋ - 1:96:18₋,
1:96:19₋, 1:101:22
694 [4]₋ - 1:92:6₋, 1:92:7₋,
1:92:11₋, 1:94:9
695 [3]₋ - 1:92:7₋, 1:92:11
696 [1]₋ - 1:94:9
697 [1]₋ - 1:94:15
6th [2]₋ - 1:97:16₋,
1:105:17

## 7

793 [1]₋ - 1:29:18

## 8

8 [7]₋ - 1:92:6₋, 1:92:7₋,
1:92:8₋, 1:92:9₋, 1:92:10₋,
1:92:12₋, 1:92:22
80 [1]₋ - 1:144:22
831(e [1]₋ - 1:153:23
89-554 [1]₋ - 1:140:23

## 9

9-85 [1]₋ - 1:144:20
9-90.020 [2]₋ - 1:29:16₋,
1:145:14
9:35 [1]₋ - 1:4:13
9:37 [1]₋ - 1:4:13

## A

a.m [3]₋ - 1:4:13₋, 1:70:23
ab [1]₋ - 1:86:12
ability [9]₋ - 1:4:10₋,
1:11:17₋, 1:11:23₋, 1:17:18
₋, 1:30:19₋, 1:47:20₋, 1:50:8
₋, 1:78:12₋, 1:143:4

able [2]₋ - 1:103:8₋,
1:113:8
abrogated [2]₋ - 1:93:21₋,
1:94:22
absence [2]₋ - 1:30:12₋,
1:81:3
absent [6]₋ - 1:48:17₋,
1:49:7₋, 1:64:13₋, 1:72:12₋,
1:72:14₋, 1:75:18
absolutely [6]₋ - 1:34:19₋,
1:37:11₋, 1:57:22₋, 1:76:5₋,
1:81:15₋, 1:119:15
Accardi [1]₋ - 1:152:5
accept [2]₋ - 1:31:14₋,
1:31:18
accepted [1]₋ - 1:161:4
access [1]₋ - 1:4:11
accommodating [2]₋ -
1:46:2₋, 1:46:21
accommodation [1]₋ -
1:74:20
accomplish [1]₋ - 1:96:23
accomplished [1]₋ -
1:97:25
accomplishment [1]₋ -
1:97:2
accordance [1]₋ - 1:93:6
accorded [1]₋ - 1:118:15
according [1]₋ - 1:88:23
accordingly [1]₋ - 1:70:21
account [1]₋ - 1:156:14
accountability [9]₋ -
1:48:2₋, 1:48:9₋, 1:95:16₋,
1:96:2₋, 1:96:4₋, 1:96:5₋,
1:105:10₋, 1:122:3₋, 1:123:4
accountable [3]₋ - 1:19:4
₋, 1:96:5₋, 1:96:8
accreted [1]₋ - 1:66:12
accurate [2]₋ - 1:63:14₋,
1:145:9
accurately [1]₋ - 1:46:13
acknowledge [9]₋ -
1:14:20₋, 1:20:1₋, 1:25:23₋,
1:39:23₋, 1:43:10₋, 1:46:7₋,
1:63:25₋, 1:112:17₋,
1:117:17
acknowledged [2]₋ -
1:115:14₋, 1:130:1
acknowledgement [1]₋ -
1:41:23
acknowledges [2]₋ -
1:113:17₋, 1:147:25
acknowledging [1]₋ -

1:42:21
acquiescence [8]₋ -
1:22:22₋, 1:56:14₋, 1:85:15
₋, 1:87:1₋, 1:126:5₋,
1:126:13₋, 1:140:18₋,
1:141:7
Act [1]₋ - 1:24:22₋,
1:37:24₋, 1:38:5₋, 1:47:8₋,
1:56:6₋, 1:65:24₋, 1:66:5₋,
1:72:10₋, 1:72:14₋, 1:121:13
₋, 1:138:15
act [7]₋ - 1:21:11₋, 1:62:3₋,
1:69:14₋, 1:144:5₋, 1:146:21
₋, 1:156:9₋, 1:159:17
acted [3]₋ - 1:117:8₋,
1:134:16₋, 1:156:13
acting [9]₋ - 1:14:11₋,
1:25:10₋, 1:27:25₋, 1:69:17
₋, 1:84:12₋, 1:116:25₋,
1:117:3₋, 1:132:13₋,
1:159:11
Acting [1]₋ - 1:92:14
action [1]₋ - 1:117:4
Action [2]₋ - 1:5:15₋,
1:71:5
actions [3]₋ - 1:78:14₋,
1:78:17₋, 1:137:9
activity [1]₋ - 1:126:21
actual [3]₋ - 1:54:21₋,
1:79:5₋, 1:79:9₋, 1:79:24₋,
1:97:12₋, 1:148:10₋,
1:148:21₋, 1:149:5
adamant [1]₋ - 1:109:15
add [7]₋ - 1:44:13₋, 1:45:7
₋, 1:63:1₋, 1:65:9₋, 1:65:16₋,
1:84:3₋, 1:133:4
added [4]₋ - 1:20:13₋,
1:56:13₋, 1:58:25₋, 1:60:12
addition [6]₋ - 1:9:18₋,
1:13:3₋, 1:52:20₋, 1:77:17₋,
1:152:25₋, 1:158:7
additional [3]₋ - 1:151:11
₋, 1:161:1₋, 1:161:4
address [11]₋ - 1:21:15₋,
1:32:19₋, 1:32:20₋, 1:36:24
₋, 1:45:21₋, 1:55:21₋,
1:55:22₋, 1:56:15₋, 1:71:17
₋, 1:114:2₋, 1:149:12
addressed [7]₋ - 1:7:1₋,
1:21:17₋, 1:31:21₋, 1:44:10
₋, 1:45:1₋, 1:83:11₋, 1:86:22
₋, 1:115:1₋, 1:116:1
addresses [1]₋ - 1:32:14
addressing [4]₋ - 1:5:17₋,
1:21:23₋, 1:31:15₋, 1:44:25

adds [1]₋ - 1:61:6
adjacent [1]₋ - 1:9:2
adjectives [1]₋ - 1:99:18
Administration [1]₋ -
1:150:8
administration [1]₋ -
1:26:21₋, 1:27:4
administrative [2]₋ -
1:50:5₋, 1:73:16
admonition [1]₋ - 1:120:1
adopt [2]₋ - 1:39:24₋,
1:40:19₋, 1:139:9
adopted [1]₋ - 1:105:23
adopting [1]₋ - 1:140:6
advanced [2]₋ - 1:109:11
₋, 1:120:8
advantage [1]₋ - 1:101:8
₋, 1:112:23
adverse [2]₋ - 1:42:23₋,
1:67:12
advice [1]₋ - 1:111:9
advised [1]₋ - 1:4:15
affair [1]₋ - 1:125:3
affirmatively [1]₋ -
1:137:5
affirmed [1]₋ - 1:39:22
afforded [1]₋ - 1:47:7
afresh [1]₋ - 1:45:14
afternoon [4]₋ - 1:6:22₋,
1:70:24₋, 1:139:2₋, 1:147:9
AG [5]₋ - 1:93:10₋,
1:125:20₋, 1:127:9₋,
1:127:11₋, 1:133:17
AG's [1]₋ - 1:92:25
agencies [2]₋ - 1:55:6₋,
1:69:3
agency [2]₋ - 1:54:17₋,
1:99:1
agents [2]₋ - 1:10:10₋,
1:55:13
ago [6]₋ - 1:30:24₋,
1:58:20₋, 1:59:5₋, 1:125:1₋,
1:140:24₋, 1:140:25
agree [22]₋ - 1:10:11₋,
1:15:24₋, 1:16:1₋, 1:28:4₋,
1:35:20₋, 1:36:22₋, 1:41:22
₋, 1:43:3₋, 1:45:24₋, 1:49:10
₋, 1:62:9₋, 1:87:10₋, 1:91:19
₋, 1:101:2₋, 1:107:1₋,
1:109:18₋, 1:119:9₋,
1:119:19₋, 1:152:2₋, 1:153:9
₋, 1:156:25₋, 1:157:16
agreed [3]₋ - 1:33:6₋,

1:72:2_, 1:101:12

agreeing [1]_ - 1:62:7

agreement [2]_ - 1:28:5_, 1:33:8

Agriculture [1]_ - 1:9:15

AGs [1]_ - 1:111:24

ahead [1]_ - 1:94:10

akin [3]_ - 1:17:5_, 1:18:1_, 1:24:4

albeit [1]_ - 1:78:25

Alexa [1]_ - 1:97:5

alike [1]_ - 1:160:3

allocation [1]_ - 1:121:3

allow [1]_ - 1:48:16

allowed [3]_ - 1:120:25_, 1:135:15_, 1:159:2

allowing [1]_ - 1:144:4

allows [4]_ - 1:56:22_, 1:57:8_, 1:57:14_, 1:59:11

alluded [1]_ - 1:142:24

almost [4]_ - 1:17:8_, 1:31:25_, 1:36:2_, 1:110:10

alone [10]_ - 1:35:22_, 1:55:13_, 1:63:20_, 1:64:9_, 1:152:23_, 1:153:3, 1:153:21_, 1:155:2_, 1:156:15_, 1:156:18

alongside [2]_ - 1:40:21_, 1:66:13

alternate [1]_ - 1:104:3

alternative [1]_ - 1:37:23

alternatively [1]_ - 1:29:10

altogether [1]_ - 1:146:12

ambiguous [3]_ - 1:11:8_, 1:133:15

amend [1]_ - 1:146:11

amended [2]_ - 1:61:24_, 1:154:5

America [2]_ - 1:3:5_, 1:137:24

amici [1]_ - 1:76:23

amicus [17]_ - 1:5:3_, 1:5:8_, 1:5:12_, 1:5:21_, 1:6:9_, 1:7:5_, 1:7:10_, 1:9:14_, 1:17:15_, 1:26:17_, 1:30:12_, 1:39:3_, 1:71:5_, 1:90:21_, 1:141:18_, 1:155:5_, 1:161:4

amnesty [1]_ - 1:98:2

amount [5]_ - 1:74:6_, 1:80:4_, 1:86:24_, 1:88:8_, 1:123:25

analogous [2]_ - 1:132:15_, 1:136:23

analogy [1]_ - 1:136:13

analysis [35]_ - 1:8:12_, 1:12:15_, 1:13:15_, 1:14:9_, 1:15:13_, 1:19:5_, 1:19:14_, 1:23:7_, 1:26:1_, 1:30:8_, 1:31:6_, 1:33:16_, 1:33:21_, 1:35:13_, 1:36:2_, 1:36:18_, 1:37:12_, 1:37:15_, 1:38:9_, 1:38:20_, 1:39:12_, 1:39:14_, 1:39:21_, 1:39:25_, 1:44:5_, 1:45:8_, 1:62:9_, 1:99:19_, 1:100:23_, 1:114:24_, 1:115:8_, 1:115:20_, 1:118:21_, 1:121:14_, 1:136:19

analyzed [1]_ - 1:119:4

Andrew [1]_ - 1:110:21

anomaly [1]_ - 1:112:5

answer [21]_ - 1:24:17_, 1:46:11_, 1:52:10_, 1:59:18_, 1:60:10_, 1:66:22_, 1:67:16_, 1:71:12_, 1:76:8_, 1:89:5_, 1:89:24_, 1:91:7_, 1:101:4_, 1:122:11_, 1:126:3_, 1:142:10_, 1:142:25_, 1:143:3_, 1:143:5_, 1:143:24_, 1:157:6

answering [3]_ - 1:149:16_, 1:152:17_, 1:152:20

answers [1]_ - 1:81:8

antecedent [4]_ - 1:42:5_, 1:43:20_, 1:43:23_, 1:44:18

APA [3]_ - 1:75:4_, 1:146:17

apart [1]_ - 1:58:10

APJs [1]_ - 1:50:9

apologize [1]_ - 1:158:5

Appeal [2]_ - 1:72:17_, 1:78:8

Appeals [8]_ - 1:73:21_, 1:74:1_, 1:136:14_, 1:136:15_, 1:136:18_, 1:136:22_, 1:137:3

appeals [2]_ - 1:45:10_, 1:135:3

appear [3]_ - 1:32:7_, 1:82:6_, 1:90:25

appearances [2]_ - 1:3:7_, 1:4:18

appearing [1]_ - 1:82:7

applicable [6]_ - 1:74:18_, 1:74:22_, 1:75:16_, 1:75:24_, 1:76:11_, 1:151:25

application [2]_ - 1:78:4_, 1:78:20

applied [3]_ - 1:73:2_, 1:77:11_, 1:146:5

applies [5]_ - 1:87:22_, 1:88:15_, 1:88:19_, 1:96:14_, 1:145:15

apply [7]_ - 1:73:3_, 1:76:7_, 1:77:1_, 1:85:13_, 1:87:22_, 1:143:22_, 1:144:11

applying [1]_ - 1:73:2

appoint [57]_ - 1:9:22_, 1:11:1_, 1:14:11_, 1:20:11_, 1:30:20_, 1:32:24_, 1:40:15_, 1:41:16_, 1:53:7_, 1:54:17_, 1:57:9_, 1:62:17_, 1:62:20_, 1:62:25_, 1:63:12_, 1:63:16_, 1:63:18_, 1:63:23_, 1:64:13_, 1:64:19_, 1:66:5_, 1:69:7_, 1:71:11_, 1:81:4_, 1:81:5_, 1:81:8_, 1:81:12_, 1:81:13_, 1:81:20_, 1:83:24_, 1:85:7_, 1:85:12_, 1:87:24_, 1:95:20_, 1:95:22_, 1:99:7_, 1:108:21_, 1:111:9_, 1:111:18_, 1:121:22_, 1:122:23_, 1:125:16_, 1:127:9_, 1:127:12_, 1:127:19_, 1:129:14_, 1:130:8_, 1:132:10_, 1:136:18_, 1:149:24_, 1:154:7_, 1:156:20_, 1:156:21

appointed [60]_ - 1:6:25_, 1:7:1_, 1:15:2_, 1:15:4_, 1:19:2_, 1:19:19_, 1:21:9_, 1:23:25_, 1:26:14_, 1:30:15_, 1:31:22_, 1:52:5_, 1:57:23_, 1:58:6_, 1:59:8_, 1:65:5_, 1:66:6_, 1:66:8_, 1:68:19_, 1:74:17_, 1:75:23_, 1:76:24_, 1:84:17_, 1:86:7_, 1:88:3_, 1:90:1_, 1:92:4_, 1:96:22_, 1:97:3_, 1:97:14_, 1:102:4_, 1:103:1_, 1:105:25_, 1:108:23_, 1:110:7_, 1:110:11_, 1:110:17_, 1:113:19_, 1:115:11_, 1:115:15_, 1:118:23_, 1:121:8_, 1:122:4_, 1:124:5_, 1:125:8_, 1:129:2_, 1:132:7_, 1:134:7_, 1:134:8_, 1:134:10_, 1:138:15_, 1:140:8_, 1:157:12_, 1:157:22_, 1:158:2_, 1:158:13_, 1:158:19_, 1:158:20_, 1:158:21_, 1:159:5

appointing [20]_ - 1:9:15_,

1:9:19_, 1:11:5_, 1:12:9_, 1:12:21_, 1:26:10_, 1:33:6_, 1:34:6_, 1:56:23_, 1:62:23_, 1:75:11_, 1:108:20_, 1:109:13_, 1:110:6_, 1:131:13_, 1:133:11_, 1:146:11_, 1:146:24_, 1:156:7_, 1:159:1

appointment [93]_ - 1:4:21_, 1:7:4_, 1:7:24_, 1:8:5_, 1:8:23_, 1:9:8_, 1:9:9_, 1:9:12_, 1:9:23_, 1:10:8_, 1:10:9_, 1:10:17_, 1:10:22_, 1:11:24_, 1:12:2_, 1:12:10_, 1:12:13_, 1:12:18_, 1:14:2_, 1:14:17_, 1:15:5_, 1:19:20_, 1:20:5_, 1:20:7_, 1:20:14_, 1:25:5_, 1:27:18_, 1:28:7_, 1:31:7_, 1:33:17_, 1:35:18_, 1:35:19_, 1:36:19_, 1:37:24_, 1:38:12_, 1:51:21_, 1:51:22_, 1:51:23_, 1:51:24_, 1:52:8_, 1:52:24_, 1:52:25_, 1:53:4_, 1:57:20_, 1:60:8_, 1:64:15_, 1:66:1_, 1:66:4_, 1:66:20_, 1:67:18_, 1:69:23_, 1:75:15_, 1:76:16_, 1:77:18_, 1:82:2_, 1:82:10_, 1:82:16_, 1:82:21_, 1:82:22_, 1:83:17_, 1:84:10_, 1:84:20_, 1:85:8_, 1:85:21_, 1:86:1_, 1:86:4_, 1:86:13_, 1:97:21_, 1:104:17_, 1:109:20_, 1:110:9_, 1:113:12_, 1:122:3_, 1:122:25_, 1:125:2_, 1:125:21_, 1:128:12_, 1:128:15_, 1:128:21_, 1:128:25_, 1:129:20_, 1:134:15_, 1:136:9_, 1:138:10_, 1:140:7_, 1:143:7_, 1:143:8_, 1:151:9_, 1:151:13_, 1:154:22_, 1:156:6_, 1:159:2_, 1:159:19

Appointment [2]_ - 1:71:10_, 1:90:7

Appointments [25]_ - 1:5:4_, 1:5:19_, 1:6:24_, 1:8:24_, 1:12:13_, 1:13:12_, 1:14:14_, 1:18:23_, 1:20:24_, 1:23:3_, 1:23:5_, 1:27:23_, 1:30:18_, 1:37:9_, 1:54:23_, 1:63:12_, 1:64:18_, 1:83:15_, 1:108:25_, 1:114:7_, 1:122:6_, 1:124:24_, 1:132:25_, 1:134:1_, 1:142:1

appointments [9]_ - 1:10:16_, 1:22:3_, 1:31:1_, 1:65:11_, 1:65:21_, 1:124:4_, 1:125:12_, 1:148:1_,

1:158:23

appoints [3]₋ - 1:60:16₋, 1:60:18₋, 1:60:21

appreciate [2]₋ - 1:90:16 ₋, 1:112:19

approach [1]₋ - 1:79:19

approaching [1]₋ - 1:40:6

appropriate [2]₋ - 1:6:11 ₋, 1:140:9

appropriation [6]₋ - 1:104:22₋, 1:104:23₋, 1:106:21₋, 1:106:23₋, 1:107:6₋, 1:107:11

approval [12]₋ - 1:29:3₋, 1:29:17₋, 1:135:2₋, 1:135:17 ₋, 1:136:8₋, 1:136:10₋, 1:137:7₋, 1:137:9₋, 1:138:12 ₋, 1:144:13₋, 1:145:18₋, 1:147:18

approvals [1]₋ - 1:145:12

approve [1]₋ - 1:50:21

approved [3]₋ - 1:106:18 ₋, 1:144:9₋, 1:145:22

arbitrary [1]₋ - 1:146:22

Archibald [1]₋ - 1:111:22

area [1]₋ - 1:98:10

arena [1]₋ - 1:88:25

arguably [6]₋ - 1:18:6₋, 1:34:14₋, 1:105:16₋, 1:119:12₋, 1:134:18₋, 1:145:3

argue [3]₋ - 1:39:9₋, 1:90:23₋, 1:159:10

argued [4]₋ - 1:7:3₋, 1:27:2₋, 1:42:8₋, 1:81:9

argues [1]₋ - 1:106:3

arguing [5]₋ - 1:6:14₋, 1:84:16₋, 1:100:15₋, 1:104:24₋, 1:133:6

argument [63]₋ - 1:6:12₋, 1:6:16₋, 1:7:5₋, 1:7:13₋, 1:7:21₋, 1:13:11₋, 1:14:3₋, 1:15:11₋, 1:15:19₋, 1:25:7₋, 1:25:21₋, 1:28:18₋, 1:34:24 ₋, 1:37:9₋, 1:40:14₋, 1:40:19 ₋, 1:40:24₋, 1:49:1₋, 1:53:15 ₋, 1:55:16₋, 1:55:25₋, 1:56:15₋, 1:57:1₋, 1:62:3₋, 1:62:7₋, 1:65:5₋, 1:66:14₋, 1:68:9₋, 1:68:10₋, 1:68:24₋, 1:69:2₋, 1:70:18₋, 1:70:25₋, 1:71:7₋, 1:71:16₋, 1:84:14₋, 1:87:1₋, 1:100:15₋, 1:103:12 ₋, 1:104:7₋, 1:107:10₋, 1:109:7₋, 1:109:12₋, 1:115:4

₋, 1:115:6₋, 1:115:9₋, 1:115:10₋, 1:115:17₋, 1:115:19₋, 1:123:7₋, 1:123:8 ₋, 1:126:5₋, 1:130:15₋, 1:131:23₋, 1:134:15₋, 1:140:16₋, 1:142:8₋, 1:142:21₋, 1:154:11₋, 1:154:12₋, 1:158:16₋, 1:159:4₋, 1:161:6

arguments [14]₋ - 1:7:13 ₋, 1:8:17₋, 1:8:20₋, 1:8:21₋, 1:13:25₋, 1:33:16₋, 1:36:8₋, 1:39:1₋, 1:39:2₋, 1:53:11₋, 1:63:5₋, 1:64:25₋, 1:84:5₋, 1:157:18

arises [1]₋ - 1:148:16

arising [1]₋ - 1:97:21

Arizona [1]₋ - 1:110:21

arms [1]₋ - 1:85:23

arose [2]₋ - 1:94:18₋, 1:139:15

arrests [1]₋ - 1:137:25

art [1]₋ - 1:81:13

Arthrex [8]₋ - 1:49:23₋, 1:50:4₋, 1:73:8₋, 1:73:13₋, 1:73:15₋, 1:151:16₋, 1:151:20₋, 1:153:11

Article [4]₋ - 1:35:7₋, 1:73:19₋, 1:108:11₋, 1:139:18

article [1]₋ - 1:67:22

articulated [1]₋ - 1:160:14

aspect [1]₋ - 1:24:24₋, 1:99:16

aspersions [1]₋ - 1:18:18

assertion [1]₋ - 1:42:17

assign [2]₋ - 1:64:4₋, 1:64:5

assigned [1]₋ - 1:115:18

assignment [1]₋ - 1:64:9

assist [13]₋ - 1:11:20₋, 1:17:12₋, 1:21:1₋, 1:24:11₋, 1:56:19₋, 1:56:21₋, 1:57:12 ₋, 1:57:23₋, 1:70:2₋, 1:121:23₋, 1:122:21₋, 1:130:9

assistance [2]₋ - 1:90:16 ₋, 1:112:19

Assistant [2]₋ - 1:10:22₋, 1:68:15

assistant [33]₋ - 1:16:18₋, 1:16:22₋, 1:16:23₋, 1:17:1₋, 1:17:9₋, 1:24:3₋, 1:57:6₋, 1:57:7₋, 1:57:9₋, 1:57:17₋, 1:58:5₋, 1:59:1₋, 1:59:16₋,

1:59:23₋, 1:59:24₋, 1:60:2₋, 1:61:8₋, 1:61:16₋, 1:63:7₋, 1:68:17₋, 1:70:4₋, 1:70:6₋, 1:70:10₋, 1:82:24₋, 1:84:3₋, 1:87:4₋, 1:104:12₋, 1:105:3 ₋, 1:108:2₋, 1:127:10₋, 1:132:1₋, 1:132:17₋, 1:142:23

assistants [3]₋ - 1:56:12₋, 1:56:20₋, 1:108:22

assisting [4]₋ - 1:15:17₋, 1:17:6₋, 1:17:14₋, 1:60:8

Associate [2]₋ - 1:10:23₋, 1:82:24

assume [4]₋ - 1:12:7₋, 1:20:11₋, 1:154:8₋, 1:156:13

assumed [2]₋ - 1:37:4₋, 1:37:6

assuming [2]₋ - 1:44:17₋, 1:123:6

assumptions [1]₋ - 1:44:18

assurances [1]₋ - 1:93:6

astute [1]₋ - 1:92:21

at-will [1]₋ - 1:98:17

attention [5]₋ - 1:8:2₋, 1:24:19₋, 1:37:8₋, 1:86:17₋, 1:86:25

attenuated [1]₋ - 1:135:21

attorney [73]₋ - 1:15:2₋, 1:15:8₋, 1:15:20₋, 1:15:23₋, 1:16:6₋, 1:16:11₋, 1:16:15₋, 1:16:21₋, 1:17:11₋, 1:17:14 ₋, 1:18:1₋, 1:18:2₋, 1:18:3₋, 1:21:2₋, 1:23:19₋, 1:24:8₋, 1:24:11₋, 1:37:18₋, 1:38:8₋, 1:38:20₋, 1:51:1₋, 1:51:2₋, 1:57:2₋, 1:57:12₋, 1:57:24₋, 1:58:10₋, 1:58:11₋, 1:58:25 ₋, 1:59:7₋, 1:59:23₋, 1:59:24 ₋, 1:60:2₋, 1:60:6₋, 1:60:12₋, 1:61:6₋, 1:61:8₋, 1:68:17₋, 1:69:11₋, 1:70:6₋, 1:70:7₋, 1:77:4₋, 1:77:16₋, 1:84:15₋, 1:102:21₋, 1:107:25₋, 1:111:18₋, 1:115:18₋, 1:121:8₋, 1:122:2₋, 1:124:8 ₋, 1:125:17₋, 1:126:9₋, 1:126:25₋, 1:127:10₋, 1:127:13₋, 1:127:21₋, 1:127:22₋, 1:128:2₋, 1:128:3 ₋, 1:128:5₋, 1:128:6₋, 1:128:10₋, 1:128:13₋, 1:128:17₋, 1:128:25₋, 1:132:1₋, 1:132:15₋, 1:132:17₋, 1:138:10₋,

1:140:17₋, 1:142:23

Attorney [192]₋ - 1:8:5₋, 1:9:11₋, 1:9:14₋, 1:10:22₋, 1:10:23₋, 1:11:1₋, 1:11:23₋, 1:14:11₋, 1:14:22₋, 1:15:17 ₋, 1:16:21₋, 1:16:22₋, 1:16:24₋, 1:17:1₋, 1:17:6₋, 1:17:10₋, 1:17:15₋, 1:17:18 ₋, 1:19:20₋, 1:21:1₋, 1:24:12 ₋, 1:25:2₋, 1:25:12₋, 1:25:14 ₋, 1:25:19₋, 1:26:9₋, 1:26:13 ₋, 1:26:16₋, 1:26:21₋, 1:27:8 ₋, 1:27:12₋, 1:27:25₋, 1:28:3 ₋, 1:28:16₋, 1:29:2₋, 1:29:9₋, 1:29:14₋, 1:29:15₋, 1:29:24 ₋, 1:30:5₋, 1:31:22₋, 1:32:9₋, 1:33:5₋, 1:39:3₋, 1:40:15₋, 1:40:23₋, 1:41:15₋, 1:42:14 ₋, 1:43:7₋, 1:43:9₋, 1:43:11₋, 1:46:19₋, 1:47:15₋, 1:47:19 ₋, 1:47:23₋, 1:48:10₋, 1:48:12₋, 1:48:20₋, 1:48:25 ₋, 1:49:3₋, 1:49:11₋, 1:50:1₋, 1:50:2₋, 1:50:20₋, 1:51:3₋, 1:51:9₋, 1:52:1₋, 1:53:6₋, 1:54:17₋, 1:56:10₋, 1:56:19 ₋, 1:56:24₋, 1:57:7₋, 1:57:8₋, 1:57:9₋, 1:57:13₋, 1:58:3₋, 1:58:7₋, 1:62:22₋, 1:64:15₋, 1:66:5₋, 1:66:9₋, 1:66:10₋, 1:66:11₋, 1:67:1₋, 1:67:23₋, 1:68:16₋, 1:69:6₋, 1:69:13₋, 1:70:2₋, 1:75:2₋, 1:75:6₋, 1:75:12₋, 1:75:13₋, 1:76:13 ₋, 1:76:21₋, 1:76:25₋, 1:77:6 ₋, 1:78:23₋, 1:79:5₋, 1:79:14 ₋, 1:80:16₋, 1:81:5₋, 1:81:11 ₋, 1:82:20₋, 1:82:23₋, 1:82:24₋, 1:83:3₋, 1:83:4₋, 1:83:8₋, 1:83:24₋, 1:85:7₋, 1:87:23₋, 1:92:4₋, 1:92:16₋, 1:92:23₋, 1:92:25₋, 1:93:18 ₋, 1:94:4₋, 1:96:5₋, 1:96:8₋, 1:103:1₋, 1:103:4₋, 1:103:5 ₋, 1:108:10₋, 1:108:13₋, 1:108:14₋, 1:108:21₋, 1:108:24₋, 1:110:7₋, 1:115:18₋, 1:116:25₋, 1:117:7₋, 1:120:17₋, 1:121:9 ₋, 1:121:11₋, 1:121:21₋, 1:121:23₋, 1:122:22₋, 1:122:25₋, 1:123:3₋, 1:123:5 ₋, 1:124:10₋, 1:124:25₋, 1:125:10₋, 1:125:16₋, 1:126:19₋, 1:127:18₋, 1:129:12₋, 1:130:8₋, 1:130:10₋, 1:131:16₋, 1:131:18₋, 1:132:9₋, 1:132:20₋, 1:135:5₋, 1:135:11₋, 1:135:17₋,

1:136:3_, 1:136:7_, 1:136:11
_, 1:137:5_, 1:137:20_,
1:144:2_, 1:144:9_, 1:144:17
_, 1:145:4_, 1:145:9_,
1:146:10_, 1:146:21_,
1:148:8_, 1:148:11_,
1:148:18_, 1:149:5_, 1:149:7
_, 1:149:12_, 1:149:16_,
1:149:24_, 1:150:11_,
1:150:15_, 1:151:2_, 1:151:5
_, 1:151:12_, 1:152:6_,
1:152:24_, 1:153:7_,
1:157:21_, 1:158:2_, 1:159:5
_, 1:159:18

Attorneys [4]_ - 1:5:5_,
1:7:6_, 1:31:20_, 1:123:7

attorneys [55]_ - 1:5:20_,
1:11:20_, 1:15:15_, 1:15:17
_, 1:16:14_, 1:17:13_,
1:22:15_, 1:31:15_, 1:32:1_,
1:39:20_, 1:56:13_, 1:56:18
_, 1:56:21_, 1:56:22_,
1:57:10_, 1:57:15_, 1:57:18
_, 1:58:1_, 1:58:3_, 1:58:5_,
1:59:12_, 1:70:2_, 1:81:5_,
1:82:24_, 1:83:20_, 1:84:3_,
1:85:7_, 1:85:13_, 1:87:4_,
1:109:20_, 1:113:5_,
1:120:21_, 1:121:6_,
1:121:16_, 1:121:17_,
1:121:22_, 1:121:23_,
1:122:9_, 1:123:14_,
1:123:20_, 1:123:23_,
1:124:12_, 1:125:13_,
1:125:19_, 1:128:7_, 1:129:3
_, 1:129:7_, 1:130:10_,
1:130:11_, 1:130:13_,
1:137:22_, 1:141:4_,
1:157:22

attuned [1]_ - 1:21:21

audio [1]_ - 1:4:16

AUSA [5]_ - 1:139:21_,
1:139:25_, 1:140:4_, 1:140:7
_, 1:140:10

AUSAs [1]_ - 1:140:8

authorities [8]_ - 1:15:1_,
1:21:17_, 1:23:14_, 1:33:14
_, 1:65:20_, 1:80:25_,
1:112:10_, 1:139:6

authority [118]_ - 1:8:18_,
1:19:20_, 1:19:25_, 1:20:8_,
1:20:14_, 1:21:8_, 1:22:3_,
1:23:19_, 1:25:3_, 1:25:22_,
1:29:3_, 1:29:10_, 1:30:25_,
1:31:12_, 1:32:17_, 1:32:24
_, 1:33:25_, 1:36:10_,
1:37:10_, 1:37:11_, 1:38:11
_, 1:40:3_, 1:40:15_, 1:41:16
_, 1:42:14_, 1:42:22_, 1:43:6

1:43:7_, 1:43:10_, 1:43:14
_, 1:50:3_, 1:50:23_, 1:52:1_,
1:60:5_, 1:64:2_, 1:64:8_,
1:64:13_, 1:67:10_, 1:68:13
_, 1:68:21_, 1:69:7_, 1:69:16
_, 1:70:9_, 1:71:11_, 1:73:11
_, 1:79:4_, 1:79:7_, 1:80:7_,
1:80:17_, 1:80:20_, 1:80:22
_, 1:80:24_, 1:81:2_, 1:82:10
_, 1:82:21_, 1:83:23_,
1:84:21_, 1:85:12_, 1:87:24
_, 1:92:16_, 1:92:19_,
1:92:25_, 1:94:3_, 1:94:9_,
1:94:11_, 1:100:25_, 1:101:4
_, 1:102:15_, 1:102:18_,
1:102:19_, 1:108:1_,
1:111:18_, 1:111:21_,
1:114:17_, 1:116:7_,
1:116:13_, 1:116:14_,
1:121:22_, 1:122:23_,
1:123:19_, 1:126:8_,
1:126:10_, 1:126:20_,
1:127:18_, 1:127:20_,
1:128:15_, 1:129:14_,
1:129:22_, 1:129:25_,
1:131:14_, 1:131:15_,
1:131:19_, 1:131:22_,
1:132:9_, 1:132:20_,
1:133:10_, 1:134:22_,
1:134:23_, 1:136:17_,
1:138:11_, 1:138:20_,
1:138:23_, 1:140:8_,
1:140:12_, 1:145:19_,
1:149:24_, 1:151:23_,
1:152:1_, 1:152:15_, 1:153:1
_, 1:155:12_, 1:155:14_,
1:156:7_, 1:157:13_, 1:159:8
_, 1:159:15_, 1:160:24

Authority [1]_ - 1:154:2

authorization [8]_ -
1:10:25_, 1:37:3_, 1:46:1_,
1:46:4_, 1:47:11_, 1:59:9_,
1:60:7_, 1:137:8

authorizations [1]_ -
1:82:2

authorize [21]_ - 1:7:23_,
1:8:4_, 1:9:12_, 1:9:23_,
1:10:9_, 1:10:17_, 1:10:21_,
1:12:12_, 1:14:16_, 1:18:25
_, 1:23:7_, 1:30:21_, 1:38:1_,
1:45:25_, 1:46:19_, 1:113:18
_, 1:127:2_, 1:128:14_,
1:130:8_, 1:130:10_,
1:133:16

authorized [8]_ - 1:5:3_,
1:20:5_, 1:27:6_, 1:38:12_,
1:68:25_, 1:104:17_, 1:106:7
_, 1:111:8

authorizes [10]_ - 1:8:23_,

1:10:8_, 1:10:16_, 1:12:16_,
1:15:5_, 1:24:10_, 1:57:17_,
1:114:4_, 1:124:14_,
1:128:12

authorizing [2]_ - 1:24:3_,
1:70:1

automatically [1]_ -
1:49:2

avenues [1]_ - 1:76:12

avoid [2]_ - 1:133:21_,
1:146:24

avoiding [2]_ - 1:18:15

aware [22]_ - 1:4:20_,
1:9:25_, 1:28:1_, 1:50:25_,
1:51:3_, 1:54:12_, 1:54:23_,
1:63:21_, 1:64:12_, 1:70:9_,
1:71:9_, 1:75:6_, 1:82:11_,
1:89:8_, 1:90:14_, 1:114:25
_, 1:118:6_, 1:123:19_,
1:123:22_, 1:125:18_,
1:133:19_, 1:153:6

## B

b) [1]_ - 1:19:13

background [1]_ -
1:122:24

backwards [1]_ - 1:22:7

baked [1]_ - 1:153:3

balance [1]_ - 1:48:6

ball [1]_ - 1:100:14

Barr [1]_ - 1:66:6_,
1:125:11_, 1:125:15_,
1:125:16_, 1:157:21_,
1:158:2_, 1:158:10

Barrett [1]_ - 1:90:21

barrier [2]_ - 1:94:19_,
1:95:6

based [4]_ - 1:4:21_,
1:14:2_, 1:37:15_, 1:139:4

bases [3]_ - 1:20:7_,
1:37:23_, 1:80:19

basis [9]_ - 1:12:2_, 1:32:4
_, 1:35:17_, 1:53:4_, 1:53:6_,
1:104:21_, 1:138:1_,
1:146:17_, 1:155:19

Beach [1]_ - 1:133:21

became [1]_ - 1:137:20

becomes [4]_ - 1:82:19_,
1:122:24_, 1:155:15_,
1:157:9

began [2]_ - 1:101:24_,
1:112:1

begin [6]_ - 1:5:23_, 1:8:13
_, 1:51:14_, 1:112:22_,

1:121:4_, 1:121:14

beginning [3]_ - 1:35:2_,
1:111:23_, 1:142:25

begins [1]_ - 1:92:14

behalf [17]_ - 1:3:10_,
1:3:18_, 1:3:22_, 1:43:12_,
1:47:20_, 1:47:23_, 1:69:1_,
1:69:15_, 1:84:17_, 1:135:1
_, 1:135:16_, 1:137:9_,
1:138:12_, 1:149:19_,
1:150:17_, 1:159:11_,
1:159:17

behavior [1]_ - 1:98:18

behind [1]_ - 1:43:1

below [4]_ - 1:68:17_,
1:83:2_, 1:83:4_, 1:139:15

bench [2]_ - 1:4:10_,
1:18:15

benefit [2]_ - 1:91:10_,
1:95:18

best [10]_ - 1:10:9_,
1:20:12_, 1:21:25_, 1:24:14
_, 1:54:10_, 1:57:4_, 1:60:5_,
1:60:10_, 1:91:12_, 1:136:13

better [2]_ - 1:70:7_,
1:141:22

between [25]_ - 1:7:13_,
1:16:20_, 1:19:11_, 1:28:15
_, 1:30:4_, 1:42:24_, 1:44:23
_, 1:48:6_, 1:49:11_, 1:55:5_,
1:57:1_, 1:57:5_, 1:60:4_,
1:62:24_, 1:70:10_, 1:74:12
_, 1:84:12_, 1:91:15_,
1:93:24_, 1:116:4_, 1:116:14
_, 1:121:25_, 1:130:16_,
1:155:4_, 1:155:20

beyond [10]_ - 1:45:2_,
1:64:12_, 1:74:3_, 1:78:9_,
1:97:2_, 1:102:9_, 1:106:10
_, 1:114:9_, 1:159:8

Biden [4]_ - 1:26:21_,
1:27:3_, 1:110:7_, 1:150:8

big [1]_ - 1:14:13

Bill [1]_ - 1:66:6

bill [1]_ - 1:15:15

bind [2]_ - 1:73:11_,
1:73:14

binding [13]_ - 1:19:10_,
1:33:25_, 1:37:10_, 1:37:11
_, 1:44:19_, 1:94:23_, 1:95:2
_, 1:114:17_, 1:117:14_,
1:118:7_, 1:118:18_, 1:119:7
_, 1:123:19

binds [1]_ - 1:152:6

bit [9]_ - 1:28:1_, 1:43:19_,

1:64:17_, 1:85:6_, 1:92:8_, 1:94:10_, 1:104:13_, 1:112:7_, 1:130:2

black [1]_ - 1:100:21

black-and-white [1]_ - 1:100:21

Blackman [14]_ - 1:5:22_, 1:7:10_, 1:70:19_, 1:70:20_, 1:90:18_, 1:90:21_, 1:119:9_, 1:125:9_, 1:146:6_, 1:155:6_, 1:156:3_, 1:156:5_, 1:156:7

BLACKMAN [28]_ - 1:90:19_, 1:91:12_, 1:92:14_, 1:95:9_, 1:96:7_, 1:96:16_, 1:97:24_, 1:98:11_, 1:99:21_, 1:100:22_, 1:101:21_, 1:102:14_, 1:102:25_, 1:104:7_, 1:104:10_, 1:105:6_, 1:106:9_, 1:106:13_, 1:106:25_, 1:107:18_, 1:107:21_, 1:107:24_, 1:109:5_, 1:109:11, 1:110:18_, 1:110:20_, 1:111:6_, 1:112:20

blah [3]_ - 1:94:18

blah-blah-blah [1]_ - 1:94:18

Blanche [1]_ - 1:3:13

blanket [2]_ - 1:98:1_, 1:98:2

bleeds [1]_ - 1:107:11

blessing [1]_ - 1:62:5

block [1]_ - 1:103:19

blown [1]_ - 1:150:21

board [1]_ - 1:97:1

body [1]_ - 1:48:8

book [3]_ - 1:110:20_, 1:110:22_, 1:111:1

books [4]_ - 1:24:8_, 1:76:10_, 1:140:22_, 1:156:11

Bork [4]_ - 1:92:4_, 1:93:4_, 1:93:18_, 1:94:5

borne [2]_ - 1:66:19_, 1:90:11

bounds [1]_ - 1:48:18

BOVE [58]_ - 1:3:12_, 1:6:14_, 1:6:22_, 1:7:9_, 1:7:18_, 1:7:20_, 1:10:2_, 1:10:5_, 1:10:15_, 1:11:7_, 1:12:4_, 1:12:20_, 1:12:25_, 1:13:24_, 1:15:10_, 1:16:1, 1:16:17_, 1:16:19_, 1:16:23_, 1:17:24_, 1:18:9_, 1:18:23

1:19:15_, 1:20:21_, 1:21:5_, 1:21:13_, 1:21:24_, 1:22:12_, 1:22:24_, 1:23:15_, 1:24:6_, 1:24:17_, 1:25:6_, 1:26:2_, 1:27:14_, 1:27:17_, 1:28:10_, 1:29:7_, 1:30:17_, 1:31:5_, 1:31:18_, 1:32:8_, 1:32:20_, 1:34:17_, 1:35:24_, 1:36:5_, 1:37:1_, 1:37:6_, 1:37:23_, 1:39:9_, 1:40:10_, 1:39:2_, 1:41:17_, 1:42:7_, 1:142:24_, 1:143:13_, 1:145:6_, 1:147:7

Bove [5]_ - 1:3:12_, 1:6:21_, 1:119:20_, 1:138:25_, 1:147:14

Bowsher [4]_ - 1:93:13_, 1:93:21_, 1:94:23_, 1:112:1

branch [18]_ - 1:35:1_, 1:42:10_, 1:42:11_, 1:72:8_, 1:73:11_, 1:73:15_, 1:73:18_, 1:73:22_, 1:74:1_, 1:74:8_, 1:74:21_, 1:75:1_, 1:76:13_, 1:78:7_, 1:78:13_, 1:78:16_, 1:97:12_, 1:138:12

BRATT [1]_ - 1:3:9

Bratt [3]_ - 1:3:9_, 1:98:24_, 1:145:20

Bravo [1]_ - 1:50:15

break [7]_ - 1:5:25_, 1:70:17_, 1:70:22_, 1:73:1_, 1:108:16_, 1:153:16_, 1:153:17

bribery [1]_ - 1:53:25

bribes [1]_ - 1:61:3

brief [26]_ - 1:4:12_, 1:5:8_, 1:5:12_, 1:7:5_, 1:10:13_, 1:19:12_, 1:24:18_, 1:33:22_, 1:41:24_, 1:43:11_, 1:53:24_, 1:57:21_, 1:79:3_, 1:80:23_, 1:81:23_, 1:87:3_, 1:87:9_, 1:104:25_, 1:105:8_, 1:107:3_, 1:107:9_, 1:115:14_, 1:147:10_, 1:154:12_, 1:155:5_, 1:155:9

briefed [4]_ - 1:41:22_, 1:86:19_, 1:118:16_, 1:119:3

briefing [4]_ - 1:5:17_, 1:9:13_, 1:33:20_, 1:87:19

briefly [9]_ - 1:4:8_, 1:30:11_, 1:59:8_, 1:84:25_, 1:85:1_, 1:113:21_, 1:129:10_, 1:138:25_, 1:156:2

briefs [4]_ - 1:5:3_, 1:5:4_, 1:30:12_, 1:39:3

bring [2]_ - 1:57:11_, 1:63:18

bringing [2]_ - 1:22:15_, 1:57:14

brings [1]_ - 1:37:20

broad [1]_ - 1:40:4

broaden [1]_ - 1:32:6

broader [5]_ - 1:59:24_, 1:109:18_, 1:114:1_, 1:128:5_, 1:159:12

brought [1]_ - 1:84:6

Brown [2]_ - 1:120:5

brush [1]_ - 1:40:4

Bryan [3]_ - 1:118:9_, 1:119:6

buck [1]_ - 1:152:10

Buckley [8]_ - 1:23:4_, 1:100:20_, 1:101:4_, 1:102:15_, 1:102:16_, 1:112:6

building [2]_ - 1:18:12_, 1:101:19

built [3]_ - 1:37:15_, 1:135:10_, 1:150:23

built-in [1]_ - 1:135:10

bumping [1]_ - 1:111:4

Burban [1]_ - 1:133:21

burden [1]_ - 1:95:18

Bureau [7]_ - 1:9:19_, 1:10:2_, 1:13:7_, 1:69:19_, 1:69:23_, 1:129:17_, 1:131:16_, 1:131:19_, 1:132:21_, 1:141:13

bylaw [4]_ - 1:7:14_, 1:7:20_, 1:30:18_, 1:31:6

**C**

cabinet [1]_ - 1:131:14_, 1:131:21

Calabresi [2]_ - 1:5:6_, 1:113:6

Calvin [1]_ - 1:110:3

campaigning [1]_ - 1:113:11

candid [2]_ - 1:24:17_, 1:111:16

candidly [1]_ - 1:150:12

cannot [10]_ - 1:44:6_, 1:91:4_, 1:93:4_, 1:93:17_, 1:102:19_, 1:103:7_, 1:104:4_, 1:113:23_, 1:137:13_, 1:147:4

canon [2]_ - 1:85:15_, 1:140:19

capacious [1]_ - 1:90:3

capacities [1]_ - 1:21:1

capacity [3]_ - 1:17:8_, 1:59:16_, 1:103:9

capricious [1]_ - 1:146:22

capture [2]_ - 1:130:23_, 1:130:24

captures [3]_ - 1:54:10_, 1:90:12_, 1:97:21

capturing [1]_ - 1:54:3

career [1]_ - 1:93:25

careful [9]_ - 1:8:12_, 1:18:24_, 1:21:19_, 1:31:8_, 1:37:8_, 1:117:18_, 1:117:20_, 1:117:21_, 1:125:11

carefully [8]_ - 1:11:2_, 1:21:21_, 1:113:14_, 1:118:2_, 1:118:3_, 1:120:9_, 1:121:3_, 1:121:5

cares [1]_ - 1:154:20

Carlos [1]_ - 1:3:6

carried [2]_ - 1:122:3_, 1:130:9

carry [3]_ - 1:69:1_, 1:93:21_, 1:127:3

case [89]_ - 1:3:3_, 1:7:3_, 1:7:25_, 1:8:6_, 1:8:16_, 1:9:24_, 1:11:12_, 1:12:9_, 1:12:14_, 1:12:17_, 1:14:1_, 1:14:10_, 1:14:12_, 1:14:15_, 1:14:18_, 1:18:13_, 1:22:16_, 1:23:12_, 1:23:17_, 1:27:5_, 1:27:10_, 1:27:14_, 1:27:22_, 1:28:21_, 1:29:2_, 1:29:4_, 1:31:11_, 1:31:15_, 1:31:21_, 1:32:14_, 1:33:1_, 1:33:19_, 1:34:3_, 1:34:9_, 1:35:8_, 1:35:17_, 1:36:18_, 1:37:17_, 1:38:18_, 1:42:1_, 1:42:6_, 1:42:8_, 1:43:20_, 1:43:24_, 1:44:2_, 1:44:12_, 1:44:15_, 1:45:3_, 1:50:5_, 1:50:10_, 1:51:18_, 1:59:7_, 1:64:14_, 1:72:3_, 1:72:5_, 1:72:22_, 1:83:10_, 1:85:21_, 1:93:12_, 1:93:14_, 1:94:2_, 1:94:6_, 1:94:11_, 1:96:11_, 1:99:17_, 1:105:9_, 1:105:18_, 1:106:3_, 1:106:19_, 1:115:23_, 1:120:5_, 1:120:6_, 1:128:18_, 1:128:21_, 1:132:11_, 1:133:6_, 1:138:3_, 1:138:4_, 1:139:14_, 1:142:20_, 1:144:4_, 1:144:8_, 1:145:17_, 1:150:4_, 1:160:3_, 1:160:5_, 1:160:10_, 1:161:1

cases [23]_ - 1:7:3_, 1:14:4_, 1:19:9_, 1:22:2_, 1:23:9_, 1:41:6_, 1:44:19_, 1:48:25_, 1:49:23_, 1:63:15_, 1:67:19_, 1:77:14_, 1:95:11_, 1:98:6_, 1:98:12_, 1:98:13_, 1:112:16_, 1:132:14_, 1:137:25_, 1:138:18_, 1:145:15_, 1:151:15_, 1:151:16

Cassisi [1] - 1:4:4

catch [5]_ - 1:53:20_, 1:54:20_, 1:82:16_, 1:92:11_, 1:154:24

catch-all [4]_ - 1:53:20_, 1:54:20_, 1:82:16_, 1:154:24

categorical [2]_ - 1:13:10_, 1:143:19

categorically [2]_ - 1:13:16_, 1:146:20

categories [3]_ - 1:58:6_, 1:130:21_, 1:135:24

category [1]_ - 1:58:9

caveat [1]_ - 1:153:17

century [1]_ - 1:98:13

cert [2]_ - 1:44:16_, 1:118:24

certain [7]_ - 1:21:1_, 1:33:13_, 1:68:21_, 1:88:8_, 1:99:4_, 1:99:11_, 1:132:10

certainly [21]_ - 1:12:14_, 1:30:3_, 1:44:11_, 1:45:9_, 1:45:14_, 1:45:19_, 1:46:8_, 1:50:16_, 1:55:5_, 1:55:18_, 1:62:19_, 1:63:15_, 1:63:21_, 1:67:16_, 1:69:5_, 1:78:21_, 1:124:20_, 1:143:23_, 1:146:19_, 1:154:16_, 1:157:14

cetera [3]_ - 1:51:25_, 1:154:9

CFR [1]_ - 1:66:16

chairs [1]_ - 1:135:9

challengeable [1]_ - 1:146:25

challenged [1]_ - 1:34:20

challenges [1]_ - 1:39:4

challenging [2]_ - 1:33:17_, 1:67:24

chance [2]_ - 1:90:23_, 1:138:4

change [2]_ - 1:75:2_, 1:128:23

changed [5]_ - 1:75:12_, 1:76:9_, 1:94:6_, 1:100:14

changes [1]_ - 1:56:7

changing [1]_ - 1:75:22

chapter [7]_ - 1:9:2_, 1:11:9_, 1:16:11_, 1:67:3_, 1:120:25_, 1:141:1

Chapter [12]_ - 1:9:2_, 1:10:20_, 1:104:16_, 1:120:16_, 1:120:18_, 1:120:20_, 1:120:24_, 1:121:5_, 1:121:7_, 1:129:16

chapters [1] - 1:11:3

Chapters [1]_ - 1:142:13

characterization [1]_ - 1:26:4

characterize [4]_ - 1:43:23_, 1:72:20_, 1:72:21_, 1:91:17

characterized [3]_ - 1:43:19_, 1:74:6_, 1:91:21

characterizing [1]_ - 1:72:16

charge [3]_ - 1:43:12_, 1:47:23_, 1:61:16

charges [5]_ - 1:29:4_, 1:29:13_, 1:29:18_, 1:29:19

check [1]_ - 1:82:3

Chief [5]_ - 1:50:4_, 1:96:19_, 1:98:21_, 1:101:22_, 1:160:2

chipped [1]_ - 1:112:15

choices [1]_ - 1:142:8

choose [1]_ - 1:125:12

chosen [1]_ - 1:142:19

Chris [1]_ - 1:3:13

Chutkan [1]_ - 1:143:18

circuit [15]_ - 1:14:12_, 1:31:15_, 1:34:2_, 1:34:9_, 1:34:21_, 1:37:7_, 1:37:14_, 1:38:5_, 1:38:18_, 1:38:23_, 1:39:23_, 1:40:2_, 1:41:7_, 1:44:3

Circuit [15]_ - 1:31:19_, 1:32:2_, 1:34:3_, 1:40:3_, 1:43:17_, 1:45:9_, 1:45:24_, 1:113:25_, 1:114:12_, 1:118:5_, 1:118:11_, 1:119:6_, 1:120:1_, 1:133:20_, 1:140:2

circular [2]_ - 1:146:13_, 1:147:2

circumstance [1]_ - 1:129:2

circumstances [3]_ - 1:83:21_, 1:146:16_,

1:146:20

citation [4]_ - 1:12:6_, 1:34:8_, 1:36:10_, 1:46:2

citations [2]_ - 1:161:1

cite [10]_ - 1:10:3_, 1:12:11_, 1:36:24_, 1:53:23_, 1:88:16_, 1:97:6_, 1:105:9_, 1:133:10_, 1:153:17_, 1:153:22

cited [16]_ - 1:12:20_, 1:20:2_, 1:20:16_, 1:26:17_, 1:32:22_, 1:43:15_, 1:47:22_, 1:53:4_, 1:80:10_, 1:111:1_, 1:118:10_, 1:128:22_, 1:129:11_, 1:129:19_, 1:146:17_, 1:160:8

cites [6]_ - 1:42:1_, 1:54:5_, 1:92:6_, 1:92:10_, 1:107:4_, 1:141:18

citing [3]_ - 1:43:13_, 1:95:6_, 1:152:5

citizen [3]_ - 1:106:4_, 1:111:25_, 1:138:2

Citizens [3]_ - 1:5:7_, 1:113:6

City [1]_ - 1:133:21

civil [1]_ - 1:55:17

Civil [1]_ - 1:11:14

claim [1]_ - 1:115:1

claiming [1]_ - 1:80:3

claims [2]_ - 1:120:22_, 1:123:2

clarification [1]_ - 1:51:16

clarified [1]_ - 1:27:21

clarify [1]_ - 1:141:22

clarity [1]_ - 1:30:8

classic [1]_ - 1:133:6

classified [1]_ - 1:29:19

clause [7]_ - 1:6:24_, 1:12:24_, 1:82:16_, 1:89:20_, 1:108:10_, 1:139:25_, 1:141:14

Clause [28]_ - 1:5:4_, 1:5:19_, 1:6:24_, 1:8:24_, 1:12:13_, 1:13:12_, 1:14:14_, 1:18:23_, 1:20:24_, 1:23:3_, 1:23:5_, 1:27:23_, 1:30:18_, 1:37:9_, 1:54:23_, 1:63:12_, 1:64:18_, 1:71:10_, 1:83:15_, 1:90:8_, 1:108:25_, 1:109:1_, 1:114:7_, 1:122:6_, 1:124:24_, 1:132:25_, 1:134:2_, 1:142:1

clauses [5]_ - 1:10:1_, 1:54:19_, 1:54:21_, 1:81:21

1:153:15

clean [2]_ - 1:91:10_, 1:160:14

cleaner [1]_ - 1:54:2

Clear [3]_ - 1:87:18_, 1:87:21_, 1:88:4

clear [37]_ - 1:14:10_, 1:22:11_, 1:25:9_, 1:27:17_, 1:32:10_, 1:40:22_, 1:47:25_, 1:48:5_, 1:48:11_, 1:48:24_, 1:55:6_, 1:55:11_, 1:57:19_, 1:59:13_, 1:64:14_, 1:64:21_, 1:73:4_, 1:76:25_, 1:78:6_, 1:78:11_, 1:79:23_, 1:82:19_, 1:94:8_, 1:100:7_, 1:122:1_, 1:122:8_, 1:122:24_, 1:123:9_, 1:124:3_, 1:124:8_, 1:126:12_, 1:130:6_, 1:131:11_, 1:135:7_, 1:141:24_, 1:158:18_, 1:160:1

clearer [1]_ - 1:87:23

clearly [9]_ - 1:17:13_, 1:98:21_, 1:124:11_, 1:131:12_, 1:134:23_, 1:135:4_, 1:135:14_, 1:137:10_, 1:140:20

close [4]_ - 1:16:3_, 1:84:8_, 1:110:13_, 1:137:15

closely [1]_ - 1:16:2

Coan [2]_ - 1:110:21_, 1:111:20

COAN [1]_ - 1:110:21

Coan's [1]_ - 1:111:1

Coast [5]_ - 1:72:16_, 1:73:21_, 1:74:1_, 1:78:7_, 1:78:12

code [3]_ - 1:82:6_, 1:82:20_, 1:92:10

Code [10]_ - 1:10:12_, 1:10:16_, 1:82:8_, 1:83:13_, 1:89:4_, 1:90:9_, 1:153:22_, 1:154:2_, 1:154:5_, 1:154:23

codified [1]_ - 1:58:16

coincide [1]_ - 1:150:5

collects [1]_ - 1:118:9

colloquy [2]_ - 1:66:25_, 1:157:4

Columbia [11]_ - 1:8:9_, 1:8:16_, 1:14:1_, 1:14:9_, 1:14:13_, 1:18:12_, 1:18:13_, 1:26:19_, 1:28:19_, 1:36:8_, 1:105:16

combination [3]_ - 1:74:15_, 1:74:25_, 1:84:22

combined [1]– - 1:160:25

Comey [2]– - 1:76:25–, 1:77:6

coming [2]– - 1:16:25–, 1:149:21

command [1]– - 1:47:15

commandeering [2]– - 1:79:4–, 1:79:7

commandeering-type [1]– - 1:79:4

comment [2]– - 1:13:23–, 1:86:1–, 1:87:20

commission [8]– - 1:21:10–, 1:21:11–, 1:108:11–, 1:108:13–, 1:108:14–, 1:108:15–, 1:108:19–, 1:109:24

commissioned [10]– - 1:19:24–, 1:21:4–, 1:63:2–, 1:85:9–, 1:108:2–, 1:108:7–, 1:108:17–, 1:108:18–, 1:127:14

commissioning [1]– - 1:108:24

commissions [4]– - 1:108:8–, 1:108:9–, 1:108:10–, 1:109:2

Commissions [1]– - 1:109:1

commitment [2]– - 1:20:14–, 1:33:12

committed [1]– - 1:127:5

committees [1]– - 1:135:10

common [4]– - 1:88:17–, 1:88:18–, 1:88:21–, 1:95:23

communications [1]– - 1:41:12

comparable [1]– - 1:82:8

comparison [1]– - 1:21:22

compel [4]– - 1:83:16–, 1:139:21–, 1:139:22–, 1:146:2

compelled [3]– - 1:71:14–, 1:71:21–, 1:74:2

compelling [2]– - 1:53:5–, 1:53:6

competent [2]– - 1:74:3–, 1:78:9

complain [1]– - 1:147:3

complementary [1]– - 1:31:5

completely [4]– - 1:76:12

–, 1:119:20–, 1:133:8–, 1:144:19

complex [1]– - 1:98:10

compliance [9]– - 1:28:21–, 1:63:11–, 1:139:22–, 1:144:14–, 1:144:17–, 1:144:19–, 1:145:10–, 1:145:23–, 1:147:14

complied [3]– - 1:142:1–, 1:148:6–, 1:148:9

comply [3]– - 1:109:23–, 1:148:25–, 1:150:25

complying [1]– - 1:29:8

component [4]– - 1:5:19–, 1:30:22–, 1:34:22–, 1:44:12

components [1]– - 1:6:23

comprehensive [1]– - 1:39:8–, 1:66:22

comptroller [1]– - 1:93:14–, 1:93:15–, 1:93:17–, 1:105:10–, 1:107:5

concede [3]– - 1:33:20–, 1:146:19

conceded [4]– - 1:33:20–, 1:33:22–, 1:115:13–, 1:116:13

concedes [2]– - 1:134:2–, 1:134:5

conceivably [1]– - 1:18:14

conceive [1]– - 1:135:20

conceived [1]– - 1:58:11

concept [5]– - 1:24:9–, 1:37:15–, 1:141:7–, 1:143:15–, 1:146:4

concepts [1]– - 1:139:4

concern [3]– - 1:17:16–, 1:64:16–, 1:67:4

concerning [1]– - 1:28:8

concerns [4]– - 1:23:18–, 1:27:1–, 1:68:2–, 1:114:11

concessions [1]– - 1:113:21

conclude [9]– - 1:48:14–, 1:123:15–, 1:137:17–, 1:137:18–, 1:143:11–, 1:145:1–, 1:145:3–, 1:159:22–, 1:160:17

concluded [7]– - 1:41:9–, 1:44:10–, 1:45:6–, 1:59:7–, 1:123:13–, 1:139:1–, 1:161:10

concludes [2]– - 1:96:15–, 1:151:5

conclusion [4]– - 1:17:18–, 1:32:22–, 1:45:15–, 1:72:2

conclusions [2]– - 1:71:14–, 1:125:23

conclusory [1]– - 1:146:17

Concord [4]– - 1:8:16–, 1:14:10–, 1:27:22–, 1:30:6

condition [1]– - 1:33:6

conditions [1]– - 1:76:4

conduct [13]– - 1:28:1–, 1:47:16–, 1:48:2–, 1:48:21–, 1:79:17–, 1:105:19–, 1:106:2–, 1:107:13–, 1:126:20–, 1:126:21–, 1:134:3–, 1:138:23–, 1:153:8

conducting [1]– - 1:24:24

confer [5]– - 1:8:18–, 1:127:17–, 1:128:14–, 1:131:13–, 1:131:15

conferred [2]– - 1:120:22–, 1:134:22

conferring [1]– - 1:122:22

confidence [1]– - 1:131:3

confirmation [11]– - 1:6:4–, 1:17:25–, 1:19:3–, 1:33:7–, 1:33:12–, 1:86:16–, 1:111:10–, 1:111:15–, 1:157:1–, 1:157:2–, 1:157:6

confirmed [10]– - 1:18:3–, 1:49:17–, 1:84:13–, 1:121:9–, 1:122:4–, 1:124:6–, 1:129:4–, 1:132:7–, 1:134:10–, 1:137:13

confirms [2]– - 1:44:1–, 1:62:9

conflict [2]– - 1:34:25–, 1:94:18

confront [1]– - 1:45:13

confronted [1]– - 1:41:6

Congress [64]– - 1:9:1–, 1:9:3–, 1:19:1–, 1:16:7–, 1:23:20–, 1:30:25–, 1:31:8–, 1:53:18–, 1:54:7–, 1:56:13–, 1:59:10–, 1:61:5–, 1:61:13–, 1:61:24–, 1:62:4–, 1:69:22–, 1:71:11–, 1:82:17–, 1:83:2–, 1:83:16–, 1:83:19–, 1:85:14–, 1:88:25–, 1:89:6–, 1:93:10–, 1:93:12–, 1:93:15–, 1:93:16–, 1:93:19–, 1:95:24–, 1:111:8–, 1:111:13–, 1:112:3–, 1:113:14–, 1:113:18–, 1:120:9–, 1:121:20–, 1:122:1–, 1:122:8–, 1:122:10–, 1:122:15–,

1:122:17–, 1:124:8–, 1:124:14–, 1:130:25–, 1:131:12–, 1:133:6–, 1:136:17–, 1:141:2–, 1:141:3–, 1:141:21–, 1:142:1–, 1:142:5–, 1:142:9–, 1:142:15–, 1:142:19–, 1:156:19–, 1:157:3–, 1:157:4–, 1:157:7–, 1:159:2

Congress's [1]– - 1:121:3

Congressional [11]– - 1:22:22–, 1:26:13–, 1:56:14–, 1:72:7–, 1:72:10–, 1:86:25–, 1:110:23–, 1:110:24–, 1:126:5–, 1:126:13–, 1:141:7

connotes [1]– - 1:11:12

consent [4]– - 1:93:9–, 1:93:11–, 1:111:10–, 1:122:16

consequence [1]– - 1:69:16

consequences [3]– - 1:40:18–, 1:41:1–, 1:68:7

consider [5]– - 1:96:18–, 1:98:8–, 1:114:13–, 1:119:5–, 1:119:16

consideration [3]– - 1:117:18–, 1:117:20–, 1:117:21

considered [5]– - 1:72:25–, 1:73:7–, 1:118:19–, 1:119:4–, 1:119:10

considers [1]– - 1:143:21

consistent [22]– - 1:20:23–, 1:21:12–, 1:25:10–, 1:28:18–, 1:28:25–, 1:53:21–, 1:64:22–, 1:64:24–, 1:78:17–, 1:92:24–, 1:104:3–, 1:108:20–, 1:119:25–, 1:125:14–, 1:129:3–, 1:141:10–, 1:144:24–, 1:147:15–, 1:149:22–, 1:150:15–, 1:151:14

consists [1]– - 1:5:13

Constitution [1]– - 1:9:9–, 1:64:20–, 1:64:23–, 1:89:2–, 1:89:3–, 1:108:10–, 1:154:20

constitutional [18]– - 1:5:13–, 1:10:13–, 1:35:8–, 1:53:23–, 1:67:5–, 1:70:18–, 1:71:3–, 1:90:13–, 1:113:13–, 1:114:11–, 1:131:24–, 1:133:22–, 1:133:23–, 1:134:1–, 1:141:25–, 1:142:18–, 1:157:6

Constitutional [2]– - 1:133:1–, 1:133:19

Constitutional-Doubts [2]₋ - 1:133:1₋, 1:133:19

constitutionally [3]₋ - 1:88:3₋, 1:158:17₋, 1:159:19

construction [1]₋ - 1:109:21

consult [4]₋ - 1:51:3₋, 1:79:11₋, 1:79:12₋, 1:148:18

consultation [2]₋ - 1:149:1₋, 1:151:1

consultations [2]₋ - 1:27:24₋, 1:30:2

consults [1]₋ - 1:145:14

contemplate [1]₋ - 1:16:24

contemplates [2]₋ - 1:17:2₋, 1:21:8

contentious [1]₋ - 1:85:18

contest [3]₋ - 1:33:21₋, 1:42:17₋, 1:43:6

contested [3]₋ - 1:41:18₋, 1:86:2₋, 1:86:3

context [27]₋ - 1:8:8₋, 1:9:21₋, 1:11:17₋, 1:13:2₋, 1:13:4₋, 1:13:18₋, 1:19:15₋, 1:19:17₋, 1:30:7₋, 1:33:4₋, 1:37:21₋, 1:55:17₋, 1:64:7₋, 1:74:9₋, 1:82:6₋, 1:82:15₋, 1:85:17₋, 1:85:19₋, 1:88:7₋, 1:95:24₋, 1:114:1₋, 1:119:25₋, 1:120:3₋, 1:133:16₋, 1:141:1₋, 1:141:8

contexts [1]₋ - 1:124:3

contextual [1]₋ - 1:119:11

continue [2]₋ - 1:7:19₋, 1:105:5

continuing [4]₋ - 1:100:4₋, 1:100:8₋, 1:100:11₋, 1:101:7

Continuity [1]₋ - 1:101:11

continuity [15]₋ - 1:95:14₋, 1:95:16₋, 1:96:2₋, 1:96:11₋, 1:97:9₋, 1:98:6₋, 1:98:7₋, 1:99:4₋, 1:99:5₋, 1:99:10₋, 1:99:15₋, 1:101:13₋, 1:101:15₋, 1:155:12₋, 1:155:15

continuous [12]₋ - 1:91:3₋, 1:95:10₋, 1:95:11₋, 1:95:22₋, 1:96:15₋, 1:96:20₋, 1:97:5₋, 1:98:20₋, 1:98:22₋, 1:99:8₋, 1:99:12₋, 1:100:18

Contra [6]₋ - 1:38:2₋, 1:66:17₋, 1:66:24₋, 1:67:8₋,

1:67:13₋, 1:125:3

contrary [1]₋ - 1:117:6

contrast [5]₋ - 1:73:20₋, 1:99:3₋, 1:121:25₋, 1:131:11₋, 1:131:20

contravene [1]₋ - 1:121:3

control [4]₋ - 1:25:19₋, 1:49:4₋, 1:72:24₋, 1:137:23

controlling [2]₋ - 1:95:5₋, 1:113:24

controversy [8]₋ - 1:35:8₋, 1:42:8₋, 1:43:21₋, 1:45:3₋, 1:115:25₋, 1:116:4₋, 1:116:5₋, 1:116:10

convene [1]₋ - 1:134:2

convenience [1]₋ - 1:83:18

convening [1]₋ - 1:18:12

convention [1]₋ - 1:137:21

conversation [3]₋ - 1:41:4₋, 1:41:24₋, 1:56:12

conviction [1]₋ - 1:138:6

Coolidge [4]₋ - 1:110:4₋, 1:111:7₋, 1:111:9₋, 1:111:12

coordination [9]₋ - 1:26:20₋, 1:27:3₋, 1:27:19₋, 1:30:1₋, 1:30:4₋, 1:143:19₋, 1:143:20₋, 1:150:4₋, 1:150:7

core [4]₋ - 1:33:15₋, 1:35:13₋, 1:59:1₋, 1:69:24

correct [28]₋ - 1:7:7₋, 1:7:9₋, 1:7:17₋, 1:10:4₋, 1:31:17₋, 1:35:23₋, 1:36:25₋, 1:50:19₋, 1:56:2₋, 1:57:21₋, 1:57:22₋, 1:69:9₋, 1:71:15₋, 1:76:5₋, 1:77:13₋, 1:80:12₋, 1:87:11₋, 1:87:15₋, 1:90:6₋, 1:94:2₋, 1:106:8₋, 1:119:2₋, 1:119:23₋, 1:122:12₋, 1:150:19₋, 1:151:13₋, 1:151:25₋, 1:157:8

correction [1]₋ - 1:157:20

correctly [2]₋ - 1:44:15₋, 1:53:15

corresponding [1]₋ - 1:30:16

corruption [1]₋ - 1:60:20

counsel [40]₋ - 1:3:7₋, 1:5:23₋, 1:12:3₋, 1:21:21₋, 1:37:22₋, 1:37:25₋, 1:46:7₋, 1:46:20₋, 1:46:24₋, 1:47:1₋, 1:48:8₋, 1:66:2₋, 1:67:6₋, 1:67:9₋, 1:67:16₋, 1:68:2₋, 1:70:8₋, 1:70:10₋, 1:71:24₋,

1:72:9₋, 1:72:12₋, 1:72:20₋, 1:86:15₋, 1:91:14₋, 1:96:14₋, 1:96:20₋, 1:97:5₋, 1:99:3₋, 1:101:23₋, 1:104:17₋, 1:104:24₋, 1:105:2₋, 1:105:7₋, 1:105:22₋, 1:106:6₋, 1:107:7₋, 1:130:1₋, 1:158:9

Counsel [127]₋ - 1:3:8₋, 1:4:21₋, 1:6:25₋, 1:7:3₋, 1:7:8₋, 1:7:22₋, 1:8:5₋, 1:8:10₋, 1:9:24₋, 1:10:18₋, 1:12:3₋, 1:17:4₋, 1:17:13₋, 1:18:11₋, 1:21:21₋, 1:23:10₋, 1:24:5₋, 1:24:13₋, 1:24:24₋, 1:25:10₋, 1:25:16₋, 1:26:18₋, 1:27:6₋, 1:29:8₋, 1:30:20₋, 1:31:12₋, 1:32:10₋, 1:32:24₋, 1:33:9₋, 1:33:11₋, 1:33:13₋, 1:38:1₋, 1:40:16₋, 1:40:20₋, 1:40:22₋, 1:41:16₋, 1:46:9₋, 1:47:6₋, 1:47:8₋, 1:47:17₋, 1:48:13₋, 1:48:21₋, 1:49:3₋, 1:49:12₋, 1:49:25₋, 1:50:1₋, 1:51:5₋, 1:51:24₋, 1:51:25₋, 1:53:7₋, 1:55:14₋, 1:57:12₋, 1:57:23₋, 1:60:3₋, 1:60:7₋, 1:62:5₋, 1:65:24₋, 1:66:3₋, 1:67:4₋, 1:67:19₋, 1:67:23₋, 1:70:4₋, 1:71:9₋, 1:71:12₋, 1:71:20₋, 1:71:25₋, 1:72:1₋, 1:72:14₋, 1:72:21₋, 1:73:4₋, 1:73:5₋, 1:74:10₋, 1:74:14₋, 1:74:18₋, 1:76:7₋, 1:76:11₋, 1:76:23₋, 1:76:24₋, 1:77:10₋, 1:77:15₋, 1:77:18₋, 1:79:2₋, 1:79:11₋, 1:79:12₋, 1:79:20₋, 1:80:8₋, 1:83:25₋, 1:86:6₋, 1:93:11₋, 1:103:13₋, 1:104:4₋, 1:105:11₋, 1:115:10₋, 1:115:18₋, 1:118:23₋, 1:121:1₋, 1:123:16₋, 1:125:11₋, 1:128:9₋, 1:128:18₋, 1:129:1₋, 1:129:14₋, 1:129:18₋, 1:129:19₋, 1:131:25₋, 1:133:11₋, 1:141:6₋, 1:143:17₋, 1:148:6₋, 1:149:25₋, 1:150:7₋, 1:150:18₋, 1:151:4₋, 1:152:12₋, 1:152:19₋, 1:152:25₋, 1:155:13₋, 1:155:23₋, 1:156:23₋, 1:157:12₋, 1:157:15₋, 1:157:17₋, 1:158:13₋, 1:158:18₋, 1:160:24

Counsel's [23]₋ - 1:5:1₋, 1:5:24₋, 1:7:25₋, 1:13:25₋, 1:19:12₋, 1:21:16₋, 1:25:3₋, 1:25:15₋, 1:27:1₋, 1:27:8₋,

1:27:23₋, 1:28:16₋, 1:30:5₋, 1:34:11₋, 1:40:8₋, 1:51:22₋, 1:101:20₋, 1:109:6₋, 1:144:5₋, 1:144:18₋, 1:144:22₋, 1:145:7₋, 1:145:22

Counsel-type [1]₋ - 1:17:4

counsels [2]₋ - 1:66:7₋, 1:58:2

Counsels [8]₋ - 1:19:2₋, 1:30:15₋, 1:59:12₋, 1:66:17₋, 1:66:18₋, 1:105:25₋, 1:110:2₋, 1:125:8

count [1]₋ - 1:117:13

Counter [1]₋ - 1:154:6

Counter-narcotics [1]₋ - 1:154:6

countermand [5]₋ - 1:93:1₋, 1:135:24₋, 1:137:6₋, 1:148:19₋, 1:151:4

countermanded [1]₋ - 1:28:2

countermanding [2]₋ - 1:94:7₋, 1:135:13

couple [17]₋ - 1:28:22₋, 1:47:18₋, 1:48:3₋, 1:48:24₋, 1:53:14₋, 1:60:21₋, 1:66:22₋, 1:81:2₋, 1:86:19₋, 1:89:11₋, 1:111:5₋, 1:123:22₋, 1:139:11₋, 1:153:13₋, 1:153:16₋, 1:156:2

coupled [1]₋ - 1:147:2

course [19]₋ - 1:41:1₋, 1:41:10₋, 1:42:17₋, 1:43:4₋, 1:43:10₋, 1:44:25₋, 1:46:25₋, 1:49:15₋, 1:49:19₋, 1:65:9₋, 1:65:19₋, 1:112:12₋, 1:115:4₋, 1:118:5₋, 1:143:11₋, 1:147:11₋, 1:150:16₋, 1:151:7₋, 1:151:14

court [17]₋ - 1:23:18₋, 1:27:9₋, 1:35:5₋, 1:37:14₋, 1:39:8₋, 1:41:8₋, 1:55:15₋, 1:63:14₋, 1:63:20₋, 1:63:22₋, 1:64:10₋, 1:91:10₋, 1:120:2₋, 1:134:4₋, 1:139:15₋, 1:143:25₋, 1:156:19

Court [136]₋ - 1:3:1₋, 1:3:14₋, 1:5:2₋, 1:5:16₋, 1:8:19₋, 1:13:14₋, 1:33:1₋, 1:33:10₋, 1:33:14₋, 1:34:13₋, 1:35:4₋, 1:36:9₋, 1:36:11₋, 1:38:3₋, 1:38:4₋, 1:39:17₋, 1:41:2₋, 1:41:19₋, 1:42:9₋, 1:42:12₋, 1:42:13₋, 1:42:19₋, 1:43:8₋, 1:43:9₋, 1:44:3₋, 1:44:16₋, 1:45:7₋, 1:45:11₋,

1:45:13..., 1:45:16..., 1:46:18
..., 1:47:12..., 1:47:22...,
1:49:22..., 1:50:19..., 1:52:4...,
1:52:10..., 1:52:11..., 1:52:17
..., 1:53:17..., 1:53:21...,
1:55:23..., 1:56:2..., 1:57:16...,
1:58:14..., 1:59:6..., 1:62:7...,
1:63:10..., 1:63:22..., 1:64:3...,
1:65:19..., 1:66:21..., 1:67:22
..., 1:71:8..., 1:71:22..., 1:72:17
..., 1:72:25..., 1:73:6..., 1:73:13
..., 1:73:14..., 1:73:21..., 1:74:1
..., 1:74:6..., 1:78:7..., 1:78:11...,
1:78:18..., 1:84:17..., 1:88:5...,
1:90:20..., 1:92:6..., 1:93:17...,
1:94:10..., 1:94:13..., 1:94:16
..., 1:94:24..., 1:95:3..., 1:98:6...,
1:98:9..., 1:100:7..., 1:101:25
..., 1:103:24..., 1:103:25...,
1:104:3..., 1:111:12...,
1:113:24..., 1:114:6...,
1:114:18..., 1:115:4...,
1:115:15..., 1:116:3...,
1:116:24..., 1:117:19...,
1:118:6..., 1:118:24...,
1:119:19..., 1:120:1..., 1:120:6
..., 1:120:24..., 1:124:22...,
1:126:1..., 1:126:12...,
1:126:14..., 1:133:19...,
1:134:5..., 1:136:15...,
1:136:16..., 1:136:17...,
1:136:18..., 1:136:21...,
1:136:22..., 1:136:25...,
1:137:3..., 1:137:20...,
1:138:22..., 1:139:21...,
1:140:3..., 1:140:13..., 1:143:4
..., 1:148:5..., 1:148:13...,
1:150:9..., 1:150:14...,
1:151:15..., 1:152:4...,
1:153:18..., 1:154:13...,
1:154:20..., 1:155:7..., 1:160:5
..., 1:160:16..., 1:160:22...,
1:161:3

COURT [256].. - 1:3:2...,
1:3:11..., 1:3:15..., 1:3:19...,
1:3:24..., 1:4:8..., 1:4:14...,
1:6:4..., 1:6:6..., 1:6:8..., 1:6:15
..., 1:6:18..., 1:6:20..., 1:7:7...,
1:7:15..., 1:7:19..., 1:9:25...,
1:10:4..., 1:10:11..., 1:11:4...,
1:12:1..., 1:12:18..., 1:12:22...,
1:13:22..., 1:15:7..., 1:15:24...,
1:16:15..., 1:16:18..., 1:16:20
..., 1:17:22..., 1:18:5..., 1:18:17
..., 1:19:11..., 1:20:19..., 1:21:3
..., 1:21:11..., 1:21:15..., 1:22:5
..., 1:22:21..., 1:23:9..., 1:24:2...,
1:24:14..., 1:25:1..., 1:25:22...,
1:27:10..., 1:27:15..., 1:28:4...,
1:29:5..., 1:30:11..., 1:31:3...,

1:31:14..., 1:32:5..., 1:32:19...,
1:34:11..., 1:35:20..., 1:36:4...,
1:36:21..., 1:37:2..., 1:37:21...,
1:39:7..., 1:40:6..., 1:40:13...,
1:41:14..., 1:41:17..., 1:42:19
..., 1:43:22..., 1:44:14...,
1:45:22..., 1:46:12..., 1:46:16
..., 1:47:5..., 1:47:13..., 1:48:17
..., 1:49:7..., 1:50:10..., 1:50:18
..., 1:50:23..., 1:51:6..., 1:51:11
..., 1:52:7..., 1:52:19..., 1:52:24
..., 1:53:8..., 1:54:12..., 1:54:19
..., 1:54:25..., 1:55:24...,
1:56:25..., 1:57:19..., 1:57:25
..., 1:58:8..., 1:58:15..., 1:58:22
..., 1:59:15..., 1:59:20..., 1:60:5
..., 1:61:12..., 1:62:3..., 1:62:14
..., 1:63:9..., 1:64:16..., 1:65:12
..., 1:65:14..., 1:65:16...,
1:66:15..., 1:67:11..., 1:68:4...,
1:68:8..., 1:69:8..., 1:69:19...,
1:70:3..., 1:70:13..., 1:70:16...,
1:70:24..., 1:74:9..., 1:74:22...,
1:75:9..., 1:75:18..., 1:76:2...,
1:76:15..., 1:76:19..., 1:77:3...,
1:77:9..., 1:77:21..., 1:79:3...,
1:79:9..., 1:79:21..., 1:79:24...,
1:80:6..., 1:80:9..., 1:80:11...,
1:80:13..., 1:80:18..., 1:80:23
..., 1:81:17..., 1:81:20..., 1:82:4
..., 1:83:5..., 1:83:8..., 1:83:12...,
1:84:19..., 1:84:25..., 1:85:25
..., 1:87:2..., 1:87:8..., 1:87:14...,
1:87:17..., 1:88:1..., 1:88:21...,
1:90:5..., 1:90:15..., 1:90:18...,
1:91:9..., 1:92:13..., 1:95:7...,
1:96:4..., 1:96:10..., 1:97:20...,
1:98:5..., 1:99:18..., 1:100:17
..., 1:101:15..., 1:102:12...,
1:102:24..., 1:104:6..., 1:104:9
..., 1:105:5..., 1:106:6...,
1:106:12..., 1:106:23...,
1:107:17..., 1:107:19...,
1:107:22..., 1:109:4..., 1:109:6
..., 1:110:15..., 1:110:19...,
1:111:4..., 1:112:18...,
1:112:21..., 1:112:25...,
1:113:3..., 1:115:12...,
1:115:22..., 1:116:5..., 1:116:9
..., 1:117:17..., 1:117:25...,
1:118:25..., 1:119:2..., 1:119:9
..., 1:119:14..., 1:119:18...,
1:120:12..., 1:121:18...,
1:122:10..., 1:122:14...,
1:123:6..., 1:123:12...,
1:124:16..., 1:125:15...,
1:125:22..., 1:126:4...,
1:127:21..., 1:127:25...,
1:128:9..., 1:128:16...,
1:128:21..., 1:129:9...,
1:129:18..., 1:130:14...,

1:130:23..., 1:131:3..., 1:131:8
..., 1:131:23..., 1:132:16...,
1:133:3..., 1:133:12...,
1:135:18..., 1:137:17...,
1:138:24..., 1:141:15...,
1:142:5..., 1:142:22...,
1:143:10..., 1:145:1..., 1:147:6
..., 1:147:8..., 1:147:18...,
1:148:3..., 1:148:10...,
1:148:20..., 1:149:3...,
1:149:15..., 1:150:3...,
1:150:10..., 1:150:19...,
1:151:10..., 1:151:22...,
1:152:13..., 1:153:1...,
1:153:6, 1:153:20..., 1:153:24
..., 1:155:24..., 1:157:7...,
1:157:13..., 1:157:15...,
1:157:25..., 1:158:4...,
1:158:11..., 1:158:22...,
1:159:7..., 1:159:21...,
1:159:24..., 1:160:23

Court's [11].. - 1:12:6...,
1:23:2..., 1:45:2..., 1:72:16...,
1:114:15..., 1:114:21...,
1:114:23..., 1:114:25...,
1:115:9..., 1:115:19...,
1:144:11

COURTROOM [3].. -
1:3:4..., 1:4:6..., 1:6:7

courtroom [7].. - 1:4:2...,
1:5:21..., 1:15:16..., 1:35:12...,
1:36:17..., 1:139:17...,
1:140:12

Courts [1].. - 1:136:14

courts [16].. - 1:14:14...,
1:14:20..., 1:32:7..., 1:36:9...,
1:39:4..., 1:39:5..., 1:45:5...,
1:45:10..., 1:45:19..., 1:118:7
..., 1:123:13..., 1:139:15...,
1:140:3..., 1:146:16...,
1:149:23..., 1:155:16

courts' [1].. - 1:60:1

covered [2].. - 1:4:25...,
1:144:6

Cox [1].. - 1:111:22

crafted [4].. - 1:19:18...,
1:31:8..., 1:120:9..., 1:121:3

create [9].. - 1:10:18...,
1:11:23..., 1:31:1..., 1:46:20...,
1:53:17..., 1:67:18..., 1:67:24
..., 1:113:18..., 1:132:20

created [13].. - 1:30:21...,
1:42:15..., 1:42:23..., 1:59:10
..., 1:60:15..., 1:67:8..., 1:68:1...,
1:70:1..., 1:95:17..., 1:103:15
..., 1:115:25..., 1:118:13...,
1:121:18

creates [1].. - 1:95:24

creating [2].. - 1:131:13...,
1:131:18

creation [4].. - 1:31:4...,
1:56:4..., 1:113:18..., 1:114:4

creativity [1].. - 1:130:3

crediting [1].. - 1:28:13

crimes [4].. - 1:11:6...,
1:81:6..., 1:87:25..., 1:127:4

Criminal [4].. - 1:72:17...,
1:73:21..., 1:74:1..., 1:78:8

criminal [6].. - 1:11:11...,
1:35:5..., 1:41:13..., 1:43:12...,
1:55:20..., 1:142:20

criminally [1].. - 1:11:19

crisper [1].. - 1:81:1

critical [2].. - 1:9:6..., 1:69:1

critically [2].. - 1:73:23...,
1:86:13

cross [1].. - 1:15:25

cross-reference [1].. -
1:15:25

CRS [2].. - 1:110:23...,
1:111:1

crystal [1].. - 1:59:13

crystallize [1].. - 1:57:3

cumbersome [1].. -
1:85:6

current [5].. - 1:60:8...,
1:67:3..., 1:103:8..., 1:106:1...,
1:152:21

curtain [1].. - 1:43:1

cuts [1].. - 1:111:12

## D

D.C [25].. - 1:14:12...,
1:31:11..., 1:34:2..., 1:34:3...,
1:34:8..., 1:34:21..., 1:37:7...,
1:37:14..., 1:38:5..., 1:38:18...,
1:38:23..., 1:39:8..., 1:39:23...,
1:40:1..., 1:41:7..., 1:41:8...,
1:43:17..., 1:44:3..., 1:45:24...,
1:95:5..., 1:106:16..., 1:107:12
..., 1:143:18..., 1:150:4

DAAG [4].. - 1:17:5...,
1:17:8..., 1:131:25..., 1:142:22

DAAGs [4].. - 1:68:16...,
1:84:2..., 1:84:19..., 1:143:6

Dadan [1].. - 1:3:18

Danforth [1].. - 1:66:9

dates [1].. - 1:85:3

David [1].. - 1:3:10

day-to-day [5].. - 1:25:11

_, 1:48:4_, 1:79:22_, 1:80:3_,
1:148:17

days [1]_ - 1:125:1

De [4]_ - 1:3:6_, 1:3:20_,
1:3:23_, 1:4:24

dead [1]_ - 1:114:18

deal [2]_ - 1:31:22_,
1:115:16

dealing [3]_ - 1:37:17_,
1:39:16_, 1:129:6

deals [1]_ - 1:121:5

debatable [1]_ - 1:124:17

decades [3]_ - 1:140:24_,
1:140:25

December [1]_ - 1:26:18

decide [5]_ - 1:42:13_,
1:42:20_, 1:43:8_, 1:44:16_,
1:95:4

decided [2]_ - 1:31:16_,
1:158:10

deciding [3]_ - 1:42:23_,
1:43:20_, 1:44:17

decision [45]_ - 1:12:6_,
1:31:18_, 1:34:4_, 1:34:8_,
1:34:15_, 1:34:22_, 1:36:1_,
1:37:18_, 1:37:21_, 1:38:24
_, 1:39:22_, 1:41:20_,
1:43:17_, 1:45:2_, 1:48:18_,
1:49:25_, 1:59:10_, 1:67:7_,
1:73:17_, 1:75:17_, 1:79:14
_, 1:85:25_, 1:86:6_, 1:86:23
_, 1:105:8_, 1:114:16_,
1:114:22_, 1:114:23_,
1:131:15_, 1:135:1_, 1:135:6
_, 1:135:13_, 1:135:25_,
1:137:6_, 1:140:2_, 1:140:3
_, 1:140:6_, 1:146:14_,
1:146:15_, 1:146:23_,
1:148:19_, 1:151:4

decisional [4]_ - 1:116:20
_, 1:117:10_, 1:117:22

decisionis [1]_ - 1:138:11

decisions [18]_ - 1:8:11_,
1:25:4_, 1:25:24_, 1:28:2_,
1:32:17_, 1:37:14_, 1:41:7_,
1:49:20_, 1:50:8_, 1:60:1_,
1:74:2_, 1:78:7_, 1:80:8_,
1:93:2_, 1:123:23_, 1:135:15
_, 1:136:12_, 1:151:17

default [1]_ - 1:157:5

defeat [1]_ - 1:142:20

defeats [1]_ - 1:147:5

Defendant [1]_ - 1:4:20

defendant [5]_ - 1:23:11_,
1:81:9_, 1:84:15_, 1:138:7_,

1:140:1

defendants [3]_ - 1:4:23_,
1:112:13_, 1:160:24

Defenders [2]_ - 1:5:15_,
1:71:4

Defense [1]_ - 1:154:3

defense [8]_ - 1:5:23_,
1:6:12_, 1:86:15_, 1:109:7_,
1:130:15_, 1:138:4_, 1:140:1
_, 1:142:21

defense's [1]_ - 1:30:3_,
1:119:22

defenses [1]_ - 1:98:2

deference [3]_ - 1:25:14_,
1:45:18_, 1:122:18

deferential [5]_ - 1:73:23
_, 1:74:4_, 1:78:8_, 1:78:25_,
1:79:1

deferring [1]_ - 1:160:4

define [2]_ - 1:38:13_,
1:141:20

defined [9]_ - 1:15:22_,
1:17:11_, 1:18:1_, 1:18:6_,
1:25:5_, 1:39:20_, 1:61:17_,
1:135:3_, 1:141:5

definition [1]_ - 1:64:7_,
1:105:22_, 1:127:22_,
1:130:19_, 1:141:13

definitional [2]_ - 1:10:12
_, 1:141:20

definitions [1]_ - 1:39:18

defunct [1]_ - 1:138:15

degree [4]_ - 1:22:11_,
1:48:7_, 1:49:8_, 1:92:24

delegated [3]_ - 1:42:22_,
1:92:16_, 1:116:7

delegation [6]_ - 1:46:6_,
1:46:22_, 1:94:10_, 1:94:12
_, 1:94:21_, 1:115:24

deliberate [1]_ - 1:131:15

deliberations [2]_ -
1:147:21_, 1:148:14

delighted [1]_ - 1:113:7

delimit [1]_ - 1:152:14

delineate [1]_ - 1:18:7

Democracy [2]_ - 1:5:14
_, 1:71:4

demonstrably [1]_ -
1:114:20

demonstrates [1]_ -
1:78:21

deny [2]_ - 1:14:14_,
1:160:22

department [8]_ - 1:26:24
_, 1:61:2_, 1:63:20_, 1:64:10
_, 1:75:20_, 1:79:13_,
1:156:18_, 1:158:25

Department [51]_ - 1:9:14
_, 1:9:16_, 1:18:8_, 1:19:25_,
1:30:23_, 1:37:19_, 1:56:5_,
1:56:8_, 1:56:11_, 1:56:18_,
1:60:15_, 1:60:25_, 1:62:21
_, 1:68:12_, 1:68:19_, 1:69:1
_, 1:69:6_, 1:69:11_, 1:69:15
_, 1:77:11_, 1:82:22_, 1:84:1
_, 1:85:4_, 1:89:7_, 1:89:12_,
1:89:15_, 1:89:17_, 1:89:21
_, 1:108:1_, 1:113:15_,
1:120:11_, 1:120:19_,
1:121:4_, 1:131:9_, 1:139:7
_, 1:147:16_, 1:148:4_,
1:148:25_, 1:149:1_,
1:149:19_, 1:150:17_,
1:151:6_, 1:151:7_, 1:154:3
_, 1:154:8_, 1:159:11_,
1:159:15_, 1:159:17

Department's [1]_ -
1:148:7

departmental [2]_ -
1:48:15_, 1:48:19

departments [4]_ - 1:55:1
_, 1:89:10_, 1:89:13_,
1:154:25

DEPUTY [3]_ - 1:3:4_,
1:4:6_, 1:6:7

deputy [12]_ - 1:18:1_,
1:84:3_, 1:84:4_, 1:84:7_,
1:84:11_, 1:84:20_, 1:132:1
_, 1:132:2_, 1:132:11_,
1:132:17_, 1:142:23

Deputy [3]_ - 1:10:22_,
1:68:15_, 1:82:23

describe [2]_ - 1:99:23_,
1:102:10

described [4]_ - 1:58:10_,
1:59:12_, 1:61:23_, 1:68:6

describes [1]_ - 1:44:3

describing [1]_ - 1:32:4

description [1]_ - 1:63:14

designate [2]_ - 1:35:22_,
1:70:8

designated [1]_ -
1:157:16

designation [1]_ - 1:32:6

designed [2]_ - 1:65:8_,
1:95:18

despite [1]_ - 1:113:16

destabilization [1]_ -
1:120:12

destination [1]_ - 1:91:23

detail [2]_ - 1:24:19_,
1:52:6

detailed [2]_ - 1:89:17_,
1:148:23

detect [1]_ - 1:11:6

determination [2]_ -
1:48:17_, 1:152:10

determine [1]_ - 1:43:5

developed [3]_ - 1:70:12
_, 1:125:4_, 1:156:4

development [3]_ -
1:5:18_, 1:28:5_, 1:28:11

developments [1]_ -
1:148:2

deviation [2]_ - 1:145:2_,
1:145:3

devices [1]_ - 1:4:2

dicta [33]_ - 1:35:21_,
1:40:2_, 1:42:4_, 1:44:11_,
1:45:9_, 1:45:11_, 1:45:12_,
1:45:17_, 1:86:14_, 1:116:23
_, 1:117:9_, 1:117:11_,
1:117:13_, 1:117:14_,
1:117:15_, 1:118:5_, 1:118:6
_, 1:118:13_, 1:118:14_,
1:118:19_, 1:119:5_,
1:119:16_, 1:159:25_,
1:160:2_, 1:160:5_, 1:160:8
_, 1:160:10_, 1:160:13_,
1:160:16_, 1:160:19

dictionary [1]_ - 1:39:18

dictum [4]_ - 1:35:23_,
1:93:24_, 1:94:23_, 1:118:18

difference [15]_ - 1:16:20
_, 1:44:23_, 1:60:4_, 1:62:24
_, 1:74:12_, 1:91:20_, 1:93:5
_, 1:93:24_, 1:103:13_,
1:119:11_, 1:130:16_,
1:150:13_, 1:155:4

different [26]_ - 1:16:16_,
1:23:1_, 1:28:22_, 1:45:11_,
1:45:15_, 1:47:1_, 1:47:19_,
1:48:3_, 1:48:11_, 1:49:9_,
1:53:14_, 1:56:19_, 1:60:21
_, 1:61:22_, 1:65:2_, 1:65:5_,
1:94:6_, 1:100:15_, 1:109:12
_, 1:128:19_, 1:136:4_,
1:139:20_, 1:143:5_,
1:152:18

differentiating [1]_ -
1:155:10

differently [4]_ - 1:65:6_,
1:83:12_, 1:134:16_,
1:158:23

differing [1]_ - 1:47:5

difficult [1]₋ - 1:142:8

direct [9]₋ - 1:17:2₋, 1:24:12₋, 1:25:3₋, 1:47:16₋, 1:47:20₋, 1:48:21₋, 1:58:4₋, 1:61:20₋, 1:134:3

directed [3]₋ - 1:49:16₋, 1:77:24₋, 1:135:20

directing [1]₋ - 1:153:7

direction [24]₋ - 1:18:18₋, 1:21:7₋, 1:41:2₋, 1:47:7₋, 1:47:12₋, 1:49:8₋, 1:49:10₋, 1:50:24₋, 1:78:2₋, 1:78:3₋, 1:78:18₋, 1:79:9₋, 1:79:17₋, 1:79:24₋, 1:80:2₋, 1:80:3₋, 1:80:4₋, 1:80:6₋, 1:80:7₋, 1:135:22₋, 1:136:15₋, 1:152:11₋, 1:152:24

directly [3]₋ - 1:26:23₋, 1:44:20₋, 1:72:22

director [3]₋ - 1:50:6₋, 1:50:7₋, 1:69:23

disagree [1]₋ - 1:150:22

disagreement [2]₋ - 1:72:4₋, 1:72:6

disagreements [1]₋ - 1:113:16

discrete [2]₋ - 1:97:25₋, 1:102:5

discretion [5]₋ - 1:50:8₋, 1:76:13₋, 1:76:20₋, 1:95:3₋, 1:137:24

discuss [3]₋ - 1:23:13₋, 1:90:24₋, 1:97:18

discussed [11]₋ - 1:35:21 ₋, 1:52:5₋, 1:86:16₋, 1:91:6₋, 1:92:7₋, 1:92:8₋, 1:92:15₋, 1:104:12₋, 1:129:16₋, 1:160:9₋, 1:160:12

discusses [2]₋ - 1:44:21₋, 1:95:10

discussing [2]₋ - 1:85:2₋, 1:160:8

discussion [21]₋ - 1:6:3₋, 1:30:12₋, 1:31:3₋, 1:33:2₋, 1:35:15₋, 1:39:1₋, 1:39:19₋, 1:43:16₋, 1:59:5₋, 1:59:19₋, 1:63:25₋, 1:65:17₋, 1:66:25 ₋, 1:103:5₋, 1:103:10₋, 1:105:1₋, 1:129:21₋, 1:140:18₋, 1:146:17₋, 1:160:12₋, 1:160:18

disincentive [1]₋ - 1:135:10

dismiss [3]₋ - 1:4:20₋, 1:5:10₋, 1:138:3

dispositive [2]₋ - 1:42:4₋, 1:63:23

dispute [11]₋ - 1:7:22₋, 1:25:14₋, 1:42:9₋, 1:86:7₋, 1:115:4₋, 1:116:14₋, 1:116:16₋, 1:139:15₋, 1:139:18₋, 1:155:13

disruptive [1]₋ - 1:84:10

dissent [2]₋ - 1:101:10₋, 1:101:12

dissented [1]₋ - 1:72:3

distinct [3]₋ - 1:36:7₋, 1:128:2₋, 1:150:10

distinction [8]₋ - 1:8:25₋, 1:9:6₋, 1:38:10₋, 1:57:1₋, 1:57:5₋, 1:70:9₋, 1:143:15₋, 1:155:20

distinguish [1]₋ - 1:119:15

distinguishable [2]₋ - 1:31:24₋, 1:139:5

distinguished [1]₋ - 1:32:3

distinguishes [1]₋ - 1:118:17

District [15]₋ - 1:8:9₋, 1:8:16₋, 1:14:1₋, 1:14:9₋, 1:14:13₋, 1:18:12₋, 1:18:13 ₋, 1:26:18₋, 1:28:19₋, 1:29:14₋, 1:36:8₋, 1:52:4₋, 1:59:6₋, 1:105:16

district [9]₋ - 1:23:18₋, 1:37:14₋, 1:39:7₋, 1:41:8₋, 1:56:22₋, 1:57:10₋, 1:121:16 ₋, 1:127:2₋, 1:127:4

districts [2]₋ - 1:24:25₋, 1:161:8

Division [3]₋ - 1:29:16₋, 1:30:24₋, 1:147:19

docket [1]₋ - 1:5:10

doctor [1]₋ - 1:155:18

doctrine [2]₋ - 1:133:1₋, 1:133:19

documents [3]₋ - 1:74:21 ₋, 1:74:25₋, 1:106:5

DOJ [6]₋ - 1:9:11₋, 1:38:8 ₋, 1:38:10₋, 1:38:21₋, 1:144:15₋, 1:145:20

dollars [1]₋ - 1:102:2

Dome [3]₋ - 1:60:23₋, 1:111:7₋, 1:156:25

Donald [2]₋ - 1:3:5₋, 1:97:15

done [12]₋ - 1:32:7₋, 1:63:14₋, 1:67:4₋, 1:124:17

₋, 1:125:20₋, 1:130:3₋, 1:136:23₋, 1:139:4₋, 1:147:23₋, 1:147:24₋, 1:148:24

Donnie [1]₋ - 1:3:22

DOT [1]₋ - 1:131:9

dot [3]₋ - 1:81:5₋, 1:81:6

double [1]₋ - 1:51:19

doubled [1]₋ - 1:26:14

doubled-down [1]₋ - 1:26:14

doubt [4]₋ - 1:74:3₋, 1:78:10₋, 1:99:14₋, 1:142:2

Doubts [1]₋ - 1:133:1₋, 1:133:19

down [8]₋ - 1:16:5₋, 1:16:9 ₋, 1:16:12₋, 1:26:14₋, 1:75:9 ₋, 1:96:1₋, 1:98:25₋, 1:112:12

dozens [1]₋ - 1:81:25

drafting [2]₋ - 1:88:18₋, 1:89:18

drafts [1]₋ - 1:72:15

draw [5]₋ - 1:18:17₋, 1:21:3₋, 1:21:5₋, 1:125:23₋, 1:154:9

drawing [1]₋ - 1:57:1

drawn [3]₋ - 1:8:2₋, 1:9:1₋, 1:77:10

draws [1]₋ - 1:70:9

drew [1]₋ - 1:14:5

drive [1]₋ - 1:44:22

drive-by [1]₋ - 1:44:22

driving [1]₋ - 1:152:18

drop [1]₋ - 1:16:9

drove [1]₋ - 1:23:16

duly [2]₋ - 1:115:18₋, 1:127:14

duration [4]₋ - 1:98:14₋, 1:98:20₋, 1:99:22₋, 1:100:7

Durham [2]₋ - 1:51:25₋, 1:157:23

during [2]₋ - 1:108:16₋, 1:158:3

duties [10]₋ - 1:15:2₋, 1:23:24₋, 1:38:13₋, 1:98:15 ₋, 1:99:14₋, 1:99:23₋, 1:99:24₋, 1:100:3₋, 1:100:5

**E**

early [1]₋ - 1:101:24

Earth [1]₋ - 1:95:21

easy [1]₋ - 1:102:10

echo [2]₋ - 1:153:23₋, 1:153:25

Ed [2]₋ - 1:67:2₋, 1:113:5

ed [1]₋ - 1:113:8

Edmond [42]₋ - 1:25:22₋, 1:26:3₋, 1:26:6₋, 1:26:24₋, 1:32:7₋, 1:32:14₋, 1:40:21₋, 1:49:8₋, 1:49:14₋, 1:49:19₋, 1:63:10₋, 1:63:25₋, 1:72:4₋, 1:72:15₋, 1:73:1₋, 1:73:3₋, 1:73:7₋, 1:73:14₋, 1:73:20₋, 1:74:5₋, 1:77:21₋, 1:78:5₋, 1:78:16₋, 1:78:20₋, 1:78:21 ₋, 1:79:1₋, 1:103:19₋, 1:103:20₋, 1:104:2₋, 1:123:14₋, 1:123:15₋, 1:123:18₋, 1:134:12₋, 1:134:24₋, 1:135:18₋, 1:136:6₋, 1:137:10₋, 1:144:11₋, 1:151:15₋, 1:151:20₋, 1:153:10

Edmond's [1]₋ - 1:136:19

Education [2]₋ - 1:9:16₋, 1:131:9

effect [3]₋ - 1:90:8₋, 1:131:25₋, 1:143:21

effective [1]₋ - 1:71:17

effects [1]₋ - 1:69:3

effort [2]₋ - 1:48:5₋, 1:136:12

efforts [1]₋ - 1:151:11

EGA [1]₋ - 1:157:7

eight [6]₋ - 1:41:6₋, 1:44:9 ₋, 1:72:2₋, 1:93:9₋, 1:93:10₋, 1:93:11

either [21]₋ - 1:19:9₋, 1:21:1₋, 1:22:15₋, 1:31:2₋, 1:34:2₋, 1:37:7₋, 1:44:6₋, 1:51:15₋, 1:63:19₋, 1:66:19 ₋, 1:71:24₋, 1:75:14₋, 1:75:25₋, 1:95:18₋, 1:111:20 ₋, 1:124:13₋, 1:135:22₋, 1:149:17₋, 1:151:12₋, 1:159:18₋, 1:159:20

election [2]₋ - 1:28:23₋, 1:144:16

electronic [1]₋ - 1:4:2

element [3]₋ - 1:95:13₋, 1:100:24₋, 1:101:2

elements [4]₋ - 1:99:22₋, 1:100:7₋, 1:100:22₋, 1:120:15

elephant [1]₋ - 1:133:6

elevator [1]₋ - 1:112:23

Eleventh [10]– - 1:40:3–, 1:45:9–, 1:113:25–, 1:114:12 –, 1:118:5–, 1:118:11–, 1:119:6–, 1:120:1–, 1:133:20 –, 1:140:2

elicit [1]– - 1:98:13

elsewhere [1]– - 1:69:3

emailed [1]– - 1:111:19

embraced [1]– - 1:115:14

Emil [1]– - 1:3:12

emoluments [2]– - 1:98:14–, 1:99:22

emphasize [1]– - 1:25:17

emphatic [1]– - 1:143:19

empirical [1]– - 1:59:18

employed [2]– - 1:98:23–, 1:30:12

employee [21]– - 1:7:8–, 1:7:13–, 1:63:5–, 1:65:1–, 1:65:3–, 1:91:22–, 1:99:13–, 1:100:24–, 1:101:3–, 1:101:6 –, 1:103:7–, 1:108:5–, 1:109:14–, 1:113:20–, 1:134:7–, 1:141:12–, 1:150:1 –, 1:154:17–, 1:155:4–, 1:155:11–, 1:155:24

employees [41]– - 1:9:4–, 1:10:9–, 1:11:16–, 1:53:16–, 1:53:18–, 1:53:19–, 1:53:20 –, 1:54:1–, 1:54:3–, 1:54:6–, 1:54:8–, 1:54:11–, 1:55:8–, 1:56:23–, 1:81:12–, 1:87:7–, 1:88:14–, 1:90:4–, 1:100:2–, 1:103:20–, 1:108:14–, 1:108:20–, 1:108:21–, 1:108:23–, 1:109:10–, 1:112:9–, 1:130:17–, 1:130:20–, 1:132:10–, 1:132:18–, 1:132:19–, 1:132:23–, 1:141:16–, 1:142:6–, 1:142:14–, 1:143:6 –, 1:154:21–, 1:154:22–, 1:154:25–, 1:155:1

empower [1]– - 1:14:11

empowered [1]– - 1:156:19

empowers [1]– - 1:154:22

enable [3]– - 1:56:10–, 1:57:7–, 1:67:18

enables [2]– - 1:55:7–, 1:56:18

enacted [3]– - 1:56:4–, 1:59:4–, 1:141:8

enactment [1]– - 1:128:17

encompass [3]– - 1:53:13

1:88:3–, 1:159:16

encompasses [2]– - 1:55:13–, 1:154:16

end [13]– - 1:25:25–, 1:43:4 –, 1:95:21–, 1:96:12–, 1:99:14–, 1:101:16–, 1:124:11–, 1:124:14–, 1:124:16–, 1:124:17–, 1:129:5–, 1:147:13–, 1:151:7

endeavored [1]– - 1:98:9

endeavors [1]– - 1:23:13

enforced [1]– - 1:146:5

engage [2]– - 1:19:9–, 1:39:24

engaged [2]– - 1:39:22–, 1:155:13

engagement [1]– - 1:30:9

engaging [1]– - 1:29:11

English [1]– - 1:14:25

enjoy [1]– - 1:70:21

enormous [1]– - 1:120:21

ensure [2]– - 1:4:8–, 1:87:3

entered [1]– - 1:21:10

Enterprise [1]– - 1:49:23

entire [8]– - 1:62:7–, 1:79:19–, 1:99:7–, 1:107:16 –, 1:110:6–, 1:119:25–, 1:138:12–, 1:141:1

entirely [9]– - 1:22:11–, 1:45:11–, 1:63:13–, 1:76:20 –, 1:91:19–, 1:125:13–, 1:141:23–, 1:150:1–, 1:151:14

entitled [7]– - 1:4:20–, 1:45:18–, 1:122:17–, 1:129:16–, 1:140:11–, 1:143:20–, 1:143:24

entity [1]– - 1:78:7

entry [3]– - 1:4:23–, 1:5:11 –, 1:5:15

enumerated [1]– - 1:117:1

enumerating [1]– - 1:58:6

EPA [1]– - 1:89:22

episodic [4]– - 1:99:23–, 1:100:5–, 1:155:18–, 1:155:22

equal [3]– - 1:118:13–, 1:141:15–, 1:159:1

equally [3]– - 1:150:5–, 1:153:10

equation [1]– - 1:100:21

equivalent [4]– - 1:74:23–, 1:90:7–, 1:109:9–, 1:128:25

era [3]– - 1:65:10–, 1:65:12 –, 1:111:22

eschewing [1]– - 1:5:17

especially [2]– - 1:113:7–, 1:114:1

essays [1]– - 1:118:9

essential [5]– - 1:86:5–, 1:86:22–, 1:95:13–, 1:99:17 –, 1:124:12

essentially [10]– - 1:57:15 –, 1:59:7–, 1:62:23–, 1:65:13 –, 1:66:2–, 1:68:11–, 1:79:14 –, 1:96:23–, 1:109:9–, 1:130:11

establish [1]– - 1:122:6

established [5]– - 1:48:15 –, 1:100:8–, 1:100:11–, 1:121:1–, 1:151:6

establishes [4]– - 1:120:10–, 1:120:16–, 1:120:18–, 1:120:20

establishing [1]– - 1:156:22

establishment [3]– - 1:30:13–, 1:30:16–, 1:101:16

esteemed [1]– - 1:118:10

estoppel [2]– - 1:143:20–, 1:143:23

et [3]– - 1:51:25–, 1:154:9

etc [1]– - 1:110:19

Ethics [8]– - 1:24:22–, 1:37:24–, 1:38:4–, 1:46:6–, 1:65:24–, 1:66:4–, 1:72:9–, 1:138:15

event [3]– - 1:11:21–, 1:37:8–, 1:67:12

events [3]– - 1:50:16–, 1:97:21–, 1:127:1

evidence [4]– - 1:36:18–, 1:74:3–, 1:78:9–, 1:90:2

evident [1]– - 1:35:14

evidentiary [1]– - 1:148:2

evolved [1]– - 1:89:13

exact [5]– - 1:58:22–, 1:77:5–, 1:91:23–, 1:94:5–, 1:99:12

exactly [10]– - 1:15:12–, 1:22:10–, 1:52:22–, 1:81:7–, 1:88:17–, 1:106:9–, 1:115:20 –, 1:121:19–, 1:126:24–, 1:142:8

examine [1]– - 1:125:3

example [23]– - 1:10:13–, 1:11:14–, 1:50:10–, 1:53:24 –, 1:68:15–, 1:77:15–, 1:83:5 –, 1:84:8–, 1:88:7–, 1:89:2–, 1:89:15–, 1:89:19–, 1:98:1–, 1:98:4–, 1:111:12–, 1:125:9 –, 1:126:23–, 1:132:12–, 1:144:8–, 1:145:10–, 1:145:11–, 1:149:3–, 1:158:21

examples [2]– - 1:31:7–, 1:125:9

excellent [1]– - 1:156:1

except [6]– - 1:43:3–, 1:97:16–, 1:120:23–, 1:131:16–, 1:132:21–, 1:153:6

exception [3]– - 1:134:20 –, 1:138:14–, 1:157:2

excuse [8]– - 1:10:3–, 1:14:25–, 1:16:18–, 1:43:9–, 1:52:15–, 1:53:18–, 1:66:10 –, 1:68:19

executive [24]– - 1:34:25–, 1:42:10–, 1:42:11–, 1:42:17 –, 1:72:8–, 1:73:11–, 1:73:15 –, 1:73:18–, 1:73:22–, 1:73:25–, 1:74:8–, 1:74:20–, 1:75:1–, 1:76:13–, 1:78:6–, 1:78:13–, 1:78:16–, 1:96:6–, 1:97:11–, 1:106:7–, 1:135:2 –, 1:137:10–, 1:138:12–, 1:154:24

exercise [24]– - 1:25:4–, 1:26:12–, 1:91:4–, 1:91:5–, 1:91:18–, 1:91:20–, 1:91:23 –, 1:93:8–, 1:101:3–, 1:102:17–, 1:102:19–, 1:103:7–, 1:103:21–, 1:104:4 –, 1:104:5–, 1:109:14–, 1:112:9–, 1:135:11–, 1:135:23–, 1:137:13–, 1:137:14–, 1:155:11–, 1:155:14

exercised [2]– - 1:138:20 –, 1:152:1

exercising [2]– - 1:101:1–, 1:126:8

exert [1]– - 1:69:15

exhausts [1]– - 1:70:14

exist [8]– - 1:18:20–, 1:20:9 –, 1:54:24–, 1:76:10–, 1:87:13–, 1:93:5–, 1:99:5–, 1:156:12

existed [1]– - 1:46:6

existence [4]– - 1:22:9–, 1:46:25–, 1:47:1–, 1:56:8

exists [2]_ - 1:62:2_, 1:82:13

expanded [1]_ - 1:142:20

expanding [1]_ - 1:15:1

expansion [1]_ - 1:24:21

expect [1]_ - 1:28:2

expected [1]_ - 1:26:10

expended [1]_ - 1:102:2

expired [2]_ - 1:104:18_, 1:107:7

expiring [1]_ - 1:67:17

explain [4]_ - 1:95:1_, 1:95:14_, 1:105:11_, 1:142:8

explained [3]_ - 1:86:5_, 1:95:19_, 1:118:13

explains [2]_ - 1:96:19_, 1:102:16

explanation [1]_ - 1:48:13

explicit [2]_ - 1:15:24_, 1:46:4

explicitly [6]_ - 1:12:12_, 1:14:11_, 1:14:16_, 1:45:25 _, 1:46:19_, 1:142:16

express [2]_ - 1:145:18_, 1:147:18

expressed [1]_ - 1:27:1

expressly [1]_ - 1:77:9

extant [2]_ - 1:115:24_, 1:152:5

extend [1]_ - 1:102:9

extended [2]_ - 1:43:16_, 1:44:5

extensive [3]_ - 1:71:16_, 1:101:18_, 1:161:6

extensively [1]_ - 1:52:3

extent [17]_ - 1:15:3_, 1:24:6_, 1:27:19_, 1:29:21_, 1:36:7_, 1:45:7_, 1:47:3_, 1:68:21_, 1:93:20_, 1:97:2_, 1:146:5_, 1:148:10_, 1:151:5 _, 1:151:22_, 1:153:18_, 1:156:4_, 1:159:3

extraordinarily [2]_ - 1:145:25_, 1:146:22

extrapolated [1]_ - 1:69:2

extreme [1]_ - 1:84:18

extremely [2]_ - 1:99:15_, 1:144:9

---

F

---

face [2]_ - 1:26:7_, 1:41:12

faced [1]_ - 1:24:5

fact [43]_ - 1:8:7_, 1:8:20_, 1:35:4_, 1:41:3_, 1:44:11_, 1:50:3_, 1:61:10_, 1:61:21_, 1:62:15_, 1:63:8_, 1:64:17_, 1:69:22_, 1:78:5_, 1:101:10 _, 1:103:12_, 1:103:18_, 1:103:19_, 1:107:3_, 1:108:24_, 1:109:13_, 1:111:10_, 1:111:19_, 1:115:16_, 1:116:6_, 1:116:19_, 1:118:11_, 1:118:22_, 1:132:6_, 1:133:9 _, 1:134:19_, 1:135:7_, 1:135:8_, 1:139:16_, 1:141:21_, 1:146:1_, 1:150:24_, 1:150:25_, 1:151:2_, 1:151:18_, 1:152:8 _, 1:156:15_, 1:157:4_, 1:159:4

fact-finding [1]_ - 1:146:1

factor [8]_ - 1:73:6_, 1:96:22_, 1:96:24_, 1:97:1_, 1:97:8_, 1:97:19_, 1:98:8_, 1:99:10

factors [10]_ - 1:72:25_, 1:73:3_, 1:96:21_, 1:97:4_, 1:97:11_, 1:97:13_, 1:97:14 _, 1:98:14_, 1:101:23_, 1:102:10

facts [3]_ - 1:78:5_, 1:78:20_, 1:138:2

factual [7]_ - 1:5:17_, 1:28:5_, 1:28:11_, 1:33:15_, 1:36:16_, 1:148:2_, 1:152:9

factually [2]_ - 1:32:13_, 1:35:11

failure [1]_ - 1:11:15

fair [9]_ - 1:18:17_, 1:50:16 _, 1:50:22_, 1:51:7_, 1:97:20 _, 1:101:21_, 1:112:17_, 1:127:24_, 1:154:11

fairly [2]_ - 1:39:8_, 1:109:19

fall [3]_ - 1:31:16_, 1:140:25_, 1:141:8

falls [1]_ - 1:58:13

false [1]_ - 1:27:3

familiar [1]_ - 1:59:25

far [7]_ - 1:13:2_, 1:13:17_, 1:46:8_, 1:61:21_, 1:75:6_, 1:89:8_, 1:151:22

Farah [1]_ - 1:160:3

favor [1]_ - 1:13:3

FBI [5]_ - 1:10:10_, 1:11:9 _, 1:11:16_, 1:11:20_, 1:13:9 _, 1:120:19_, 1:130:7_,

1:130:9_, 1:130:12

feature [2]_ - 1:66:19_, 1:112:23

featured [1]_ - 1:87:18

features [2]_ - 1:24:4_, 1:38:17

federal [7]_ - 1:35:5_, 1:53:25_, 1:98:18_, 1:113:13 _, 1:113:18_, 1:113:20_, 1:114:4

Federal [2]_ - 1:11:14_, 1:129:17

feed [1]_ - 1:4:16

felt [2]_ - 1:33:7_, 1:119:5

few [5]_ - 1:107:21_, 1:124:22_, 1:125:1_, 1:132:14_, 1:138:18

fifth [1]_ - 1:91:5

figure [2]_ - 1:16:7_, 1:156:7

file [1]_ - 1:29:13

filed [7]_ - 1:4:23_, 1:5:2_, 1:5:5_, 1:5:8_, 1:5:12_, 1:7:5 _, 1:29:18

filing [5]_ - 1:5:3_, 1:26:17 _, 1:145:17_, 1:158:7_, 1:160:25

filings [2]_ - 1:27:9_, 1:161:4

fill [1]_ - 1:67:15

final [5]_ - 1:36:21_, 1:135:1_, 1:137:8_, 1:151:17 _, 1:159:23

finally [1]_ - 1:5:12

fine [4]_ - 1:95:2_, 1:95:4_, 1:128:13_, 1:156:16

fire [2]_ - 1:49:2_, 1:121:24

fired [2]_ - 1:110:10_, 1:110:13

firms [1]_ - 1:66:13

First [2]_ - 1:31:19_, 1:32:2

first [33]_ - 1:6:24_, 1:11:8 _, 1:33:9_, 1:44:25_, 1:53:12 _, 1:53:15_, 1:58:20_, 1:60:16_, 1:66:6_, 1:70:18_, 1:70:20_, 1:71:1_, 1:77:22_, 1:74:12_, 1:78:6_, 1:80:20_, 1:81:2_, 1:85:13_, 1:90:25_, 1:91:14_, 1:91:16_, 1:96:22 _, 1:100:7_, 1:100:24_, 1:108:4_, 1:110:1_, 1:113:23 _, 1:114:21_, 1:121:15_, 1:121:17_, 1:126:12_, 1:143:11_, 1:158:3

Fiske [1]_ - 1:66:1

Fiske's [1]_ - 1:66:3

fit [6]_ - 1:11:2_, 1:11:25_, 1:13:20_, 1:70:7_, 1:81:14_, 1:138:8

fits [1]_ - 1:15:15

Fitzgerald [4]_ - 1:22:16_, 1:76:23_, 1:77:12_, 1:77:18

five [4]_ - 1:95:7_, 1:133:12 _, 1:160:25_, 1:161:3

fix [1]_ - 1:23:21

floating [1]_ - 1:25:17

floor [1]_ - 1:6:5

Florida [2]_ - 1:29:14_, 1:106:19

flunks [1]_ - 1:97:14

focus [19]_ - 1:8:2_, 1:13:14_, 1:14:5_, 1:18:24_, 1:22:6_, 1:23:2_, 1:23:5_, 1:25:1_, 1:28:6_, 1:53:12_, 1:60:11_, 1:69:5_, 1:86:24_, 1:108:3_, 1:124:22_, 1:124:23_, 1:134:13_, 1:140:16_, 1:155:8

focused [5]_ - 1:6:23_, 1:15:21_, 1:30:19_, 1:35:4_, 1:38:20

focuses [1]_ - 1:80:23

focusing [2]_ - 1:13:24_, 1:18:19

follow [4]_ - 1:95:21_, 1:117:15_, 1:150:13_, 1:160:19

followed [1]_ - 1:32:3

following [1]_ - 1:147:15

foot [1]_ - 1:38:7

footing [1]_ - 1:159:1

footnote [17]_ - 1:34:4_, 1:34:7_, 1:38:7_, 1:43:24_, 1:44:2_, 1:87:8_, 1:87:12_, 1:88:16_, 1:92:6_, 1:92:7_, 1:92:8_, 1:92:9_, 1:92:10_, 1:92:12_, 1:92:22_, 1:141:18 _, 1:142:2

footnotes [1]_ - 1:38:7

force [3]_ - 1:115:24_, 1:136:4_, 1:152:22

foreclosed [1]_ - 1:40:16

foregone [1]_ - 1:32:22

forerunner [1]_ - 1:66:2

forget [1]_ - 1:94:23

form [1]_ - 1:58:22

Former [1]_ - 1:5:5

former [9]₋ - 1:5:14₋, 1:40:14₋, 1:66:5₋, 1:68:10₋, 1:71:4₋, 1:106:1₋, 1:113:5₋, 1:113:11₋, 1:157:22

forth [1]₋ - 1:4:18

forward [5]₋ - 1:7:24₋, 1:11:12₋, 1:37:12₋, 1:48:16₋, 1:104:1

foundation [1]₋ - 1:112:17

Foundation [3]₋ - 1:5:7₋, 1:5:9₋, 1:90:22

four [10]₋ - 1:41:6₋, 1:43:14₋, 1:58:6₋, 1:90:24₋, 1:98:13₋, 1:99:21₋, 1:115:7₋, 1:117:1₋, 1:117:12₋, 1:118:20

fourth [2]₋ - 1:58:8₋, 1:91:3

frame [1]₋ - 1:24:9

framed [3]₋ - 1:26:21₋, 1:54:13₋, 1:54:16

framework [5]₋ - 1:18:20₋, 1:40:22₋, 1:47:1₋, 1:47:5₋, 1:50:2

frankly [1]₋ - 1:20:10

Free [1]₋ - 1:49:23

free [4]₋ - 1:25:17₋, 1:46:20₋, 1:46:24₋, 1:95:3

free-floating [1]₋ - 1:25:17

freedom [1]₋ - 1:61:19

frequent [1]₋ - 1:119:25

frequently [1]₋ - 1:45:10

Freytag [1]₋ - 1:103:20₋, 1:155:20

Friedrich [3]₋ - 1:8:17₋, 1:43:18₋, 1:52:5

friend [12]₋ - 1:41:25₋, 1:43:18₋, 1:52:13₋, 1:53:11₋, 1:54:4₋, 1:54:14₋, 1:60:14₋, 1:62:10₋, 1:67:1₋, 1:98:24₋, 1:147:13₋, 1:147:24

friends [1]₋ - 1:113:6

front [3]₋ - 1:139:18₋, 1:139:21₋, 1:139:23

full [2]₋ - 1:150:21₋, 1:152:2

full-blown [1]₋ - 1:150:21

fully [4]₋ - 1:61:16₋, 1:66:22₋, 1:119:22₋, 1:152:6

function [2]₋ - 1:61:15₋, 1:132:5

functional [1]₋ - 1:4:5

Fund [1]₋ - 1:49:23

fundamental [2]₋ - 1:36:6₋, 1:120:7

funding [3]₋ - 1:106:13₋, 1:106:14₋, 1:106:17

future [2]₋ - 1:44:19₋, 1:140:8

## G

gallery [1]₋ - 1:3:25

game [1]₋ - 1:100:14

GAO [2]₋ - 1:106:18₋, 1:107:5

gap [1]₋ - 1:52:11

Garfield [3]₋ - 1:60:18₋, 1:110:3₋, 1:158:21

Garland [14]₋ - 1:26:9₋, 1:26:14₋, 1:26:22₋, 1:75:13₋, 1:75:14₋, 1:94:5₋, 1:103:1₋, 1:117:3₋, 1:119:24₋, 1:120:22₋, 1:124:11₋, 1:125:20₋, 1:134:16₋, 1:134:19

Garland's [1]₋ - 1:138:9₋, 1:144:2

Garner [5]₋ - 1:42:1₋, 1:118:9₋, 1:119:6₋, 1:160:7₋, 1:160:15

Gary [1]₋ - 1:5:6

Gene [1]₋ - 1:5:22

general [33]₋ - 1:9:25₋, 1:10:25₋, 1:11:24₋, 1:12:23₋, 1:12:24₋, 1:35:21₋, 1:54:16₋, 1:55:2₋, 1:81:21₋, 1:82:10₋, 1:82:24₋, 1:84:3₋, 1:84:5₋, 1:84:7₋, 1:84:11₋, 1:84:12₋, 1:84:13₋, 1:84:20₋, 1:93:14₋, 1:105:10₋, 1:107:5₋, 1:109:21₋, 1:109:22₋, 1:113:5₋, 1:131:13₋, 1:131:18₋, 1:132:1₋, 1:132:12₋, 1:132:13₋, 1:132:17₋, 1:132:18₋, 1:142:23

General [179]₋ - 1:5:5₋, 1:7:6₋, 1:9:11₋, 1:10:22₋, 1:10:23₋, 1:11:1₋, 1:11:23₋, 1:14:11₋, 1:14:22₋, 1:15:18₋, 1:16:21₋, 1:16:22₋, 1:16:24₋, 1:17:1₋, 1:17:6₋, 1:17:10₋, 1:17:15₋, 1:17:18₋, 1:19:20₋, 1:21:2₋, 1:24:12₋, 1:25:3₋, 1:25:12₋, 1:25:14₋, 1:25:19₋, 1:26:9₋, 1:26:14₋, 1:26:17₋, 1:26:22₋, 1:27:8₋, 1:27:12₋, 1:27:25₋, 1:28:3₋

1:28:16₋, 1:29:24₋, 1:32:9₋, 1:33:5₋, 1:39:3₋, 1:40:15₋, 1:40:23₋, 1:41:15₋, 1:42:14₋, 1:43:7₋, 1:43:9₋, 1:43:11₋, 1:46:19₋, 1:47:16₋, 1:47:23₋, 1:48:10₋, 1:48:12₋, 1:48:20₋, 1:48:25₋, 1:49:4₋, 1:49:11₋, 1:50:1₋, 1:50:2₋, 1:50:20₋, 1:51:3₋, 1:51:9₋, 1:52:1₋, 1:53:6₋, 1:54:17₋, 1:56:10₋, 1:56:19₋, 1:56:24₋, 1:57:7₋, 1:57:8₋, 1:57:9₋, 1:57:13₋, 1:58:3₋, 1:58:7₋, 1:62:23₋, 1:64:15₋, 1:66:5₋, 1:66:10₋, 1:67:2₋, 1:67:24₋, 1:69:7₋, 1:69:13₋, 1:70:2₋, 1:75:2₋, 1:75:6₋, 1:75:12₋, 1:75:14₋, 1:76:13₋, 1:76:21₋, 1:76:25₋, 1:77:6₋, 1:78:23₋, 1:79:5₋, 1:79:14₋, 1:80:17₋, 1:81:5₋, 1:81:11₋, 1:82:20₋, 1:82:23₋, 1:82:24₋, 1:82:25₋, 1:83:3₋, 1:83:4₋, 1:83:6₋, 1:83:24₋, 1:85:7₋, 1:87:24₋, 1:92:4₋, 1:92:16₋, 1:92:23₋, 1:93:1₋, 1:93:18₋, 1:94:4₋, 1:96:5₋, 1:96:8₋, 1:103:1₋, 1:108:10₋, 1:108:13₋, 1:108:14₋, 1:108:16₋, 1:108:21₋, 1:115:19₋, 1:116:25₋, 1:117:7₋, 1:120:17₋, 1:121:9₋, 1:121:11₋, 1:121:22₋, 1:121:24₋, 1:122:23₋, 1:122:25₋, 1:124:11₋, 1:125:1₋, 1:125:10₋, 1:125:16₋, 1:126:19₋, 1:127:18₋, 1:129:12₋, 1:130:8₋, 1:130:10₋, 1:131:16₋, 1:131:18₋, 1:132:9₋, 1:132:20₋, 1:135:5₋, 1:135:11₋, 1:135:17₋, 1:136:3₋, 1:136:7₋, 1:136:11₋, 1:137:5₋, 1:137:20₋, 1:143:6₋, 1:144:2₋, 1:144:9₋, 1:144:18₋, 1:145:5₋, 1:145:9₋, 1:146:11₋, 1:146:21₋, 1:148:8₋, 1:148:11₋, 1:148:18₋, 1:149:5₋, 1:149:7₋, 1:149:13₋, 1:149:16₋, 1:149:24₋, 1:150:11₋, 1:150:15₋, 1:151:2₋, 1:151:5₋, 1:151:12₋, 1:152:6₋, 1:152:24₋, 1:153:7₋, 1:157:21₋, 1:158:22₋, 1:159:5₋, 1:159:18

General's [6]₋ - 1:8:5₋, 1:9:14₋, 1:29:9₋, 1:30:5₋, 1:47:20₋, 1:108:24

generally [3]₋ - 1:75:20₋,

1:131:20₋, 1:138:16

generals [2]₋ - 1:18:1₋, 1:68:17

Generals [1]₋ - 1:68:16

genre [1]₋ - 1:45:12

genuine [1]₋ - 1:116:3

geographic [2]₋ - 1:15:3₋, 1:38:14

geographically [2]₋ - 1:126:20₋, 1:126:22

geography [1]₋ - 1:23:24

Germaine [4]₋ - 1:98:12₋, 1:98:13₋, 1:100:2₋, 1:155:16

gesturing [1]₋ - 1:88:11

Ginsburg [1]₋ - 1:45:24

given [12]₋ - 1:8:2₋, 1:37:9₋, 1:42:24₋, 1:45:17₋, 1:45:20₋, 1:93:7₋, 1:113:21₋, 1:114:1₋, 1:119:11₋, 1:131:21₋, 1:134:2₋, 1:134:21

gloss [1]₋ - 1:36:12

glosses [1]₋ - 1:36:5

gorilla [1]₋ - 1:103:23

govern [1]₋ - 1:109:20

governed [1]₋ - 1:121:1

Government [9]₋ - 1:24:22₋, 1:37:24₋, 1:38:5₋, 1:46:6₋, 1:53:25₋, 1:65:24₋, 1:66:4₋, 1:72:10₋, 1:138:15

government [48]₋ - 1:5:14₋, 1:9:7₋, 1:16:25₋, 1:17:7₋, 1:17:19₋, 1:17:23₋, 1:18:21₋, 1:19:7₋, 1:20:2₋, 1:20:11₋, 1:20:25₋, 1:22:15₋, 1:22:17₋, 1:28:14₋, 1:32:25₋, 1:33:19₋, 1:35:17₋, 1:38:16₋, 1:51:18₋, 1:51:20₋, 1:52:3₋, 1:54:6₋, 1:68:16₋, 1:68:22₋, 1:71:4₋, 1:71:5₋, 1:83:22₋, 1:84:2₋, 1:86:4₋, 1:88:9₋, 1:105:13₋, 1:105:17₋, 1:105:20₋, 1:105:24₋, 1:106:4₋, 1:106:15₋, 1:106:18₋, 1:106:20₋, 1:107:2₋, 1:107:4₋, 1:107:8₋, 1:111:24₋, 1:144:6₋, 1:146:7₋, 1:151:1₋, 1:155:12₋, 1:155:14

government's [3]₋ - 1:29:22₋, 1:104:25₋, 1:105:8

governs [1]₋ - 1:23:23

grammatically [1]₋ - 1:85:5

Grand [3]₋ - 1:43:17₋,

1:48:25_, 1:84:6
grand [7]_ - 1:18:13_,
1:18:15_, 1:23:20_, 1:59:8_,
1:59:14_, 1:134:3_, 1:137:25
Grant [9]_ - 1:109:25_,
1:110:2_, 1:110:9_, 1:110:11
_, 1:111:18_, 1:156:13_,
1:158:12_, 1:158:19_,
1:159:4
grant [9]_ - 1:42:22_,
1:60:16_, 1:64:14_, 1:65:4_,
1:106:1_, 1:110:10_,
1:110:13_, 1:156:6
granted [2]_ - 1:99:13_,
1:118:24
grants [1]_ - 1:44:16
grasps [1]_ - 1:97:12
grateful [1]_ - 1:90:22
gravamen [1]_ - 1:105:19
great [4]_ - 1:25:15_,
1:68:18_, 1:96:3
greater [1]_ - 1:46:8
greatest [1]_ - 1:92:24
ground [2]_ - 1:73:1_,
1:101:18
grounds [2]_ - 1:31:24_,
1:119:16
group [1]_ - 1:71:3
Guard [5]_ - 1:72:16_,
1:73:21_, 1:74:1_, 1:78:7_,
1:78:12
guess [11]_ - 1:47:13_,
1:49:13_, 1:50:19_, 1:55:8_,
1:59:23_, 1:60:5_, 1:61:12_,
1:82:7_, 1:84:7_, 1:88:24_,
1:149:15
guidance [1]_ - 1:98:9
guided [1]_ - 1:49:16
guilt [2]_ - 1:74:3_, 1:78:9

H

hand [4]_ - 1:48:7_,
1:67:25_, 1:152:13
handle [1]_ - 1:24:1
hands [1]_ - 1:79:19
hands-off [1]_ - 1:79:19
handy [1]_ - 1:103:3
hanging [1]_ - 1:108:9
hangs [1]_ - 1:62:7
happy [12]_ - 1:41:2_,
1:45:21_, 1:46:15_, 1:47:9_,
1:51:15_, 1:55:21_, 1:56:15
_, 1:71:16_, 1:82:3_, 1:84:23

_, 1:91:7_, 1:96:16
Harbach [1]_ - 1:3:10
hard [2]_ - 1:22:8_, 1:99:15
Hartwell [3]_ - 1:98:11_,
1:98:12_, 1:155:17
head [8]_ - 1:26:24_,
1:31:21_, 1:54:17_, 1:61:1_,
1:63:20_, 1:64:10_, 1:156:18
_, 1:158:25
headlong [1]_ - 1:40:20
hear [1] - 1:6:9_, 1:40:7_,
1:40:19_, 1:70:25_, 1:138:25
heard [19]_ - 1:4:19_,
1:42:3_, 1:43:18_, 1:53:11_,
1:53:21_, 1:54:4_, 1:54:14_,
1:55:10_, 1:55:16_, 1:56:2_,
1:71:16_, 1:117:6_, 1:129:18
_, 1:133:23_, 1:134:14_,
1:138:5_, 1:156:5_, 1:157:17
_, 1:157:20
hearing [9]_ - 1:27:22_,
1:28:24_, 1:139:25_,
1:143:11_, 1:143:21_,
1:143:25_, 1:144:23_,
1:149:21
hearings [1]_ - 1:86:16
heartburn [1]_ - 1:149:15
heed [1]_ - 1:160:11
held [5]_ - 1:115:4_,
1:116:3_, 1:118:6_, 1:132:16
_, 1:138:3
hello [1]_ - 1:4:14
help [1]_ - 1:128:1
helpful [4]_ - 1:71:18_,
1:82:12_, 1:153:19_, 1:161:7
helps [2]_ - 1:134:12_,
1:156:22
hermetically [1]_ -
1:130:21
herself [1]_ - 1:56:24
HHS [1]_ - 1:9:16
hidden [1]_ - 1:133:6
hide [1]_ - 1:149:10
hiding [1]_ - 1:148:24
high [15]_ - 1:17:8_,
1:86:15_, 1:105:13_,
1:105:17_, 1:105:20_,
1:105:23_, 1:106:2_, 1:106:7
_, 1:106:15_, 1:106:18_,
1:106:20_, 1:107:2_, 1:107:4
_, 1:107:8
high-level [1]_ - 1:106:7
high-ranking [12]_ -
1:105:13_, 1:105:17_,

1:105:20_, 1:105:23_,
1:106:2_, 1:106:15_,
1:106:18_, 1:106:20_,
1:107:2_, 1:107:4_, 1:107:8
higher [5]_ - 1:78:6_,
1:78:13_, 1:78:15_, 1:145:19
highly [6]_ - 1:74:4_,
1:78:8_, 1:85:18_, 1:135:24
Hilario [1]_ - 1:31:18
himself [1]_ - 1:115:19
hire [5]_ - 1:56:11_, 1:57:7
_, 1:57:9_, 1:63:18_,
1:154:25
hired [1]_ - 1:140:8
hiring [6]_ - 1:20:25_,
1:55:7_, 1:56:23_, 1:57:17_,
1:62:21_, 1:62:23
historical [17]_ - 1:24:15_,
1:24:20_, 1:33:3_, 1:39:14_,
1:39:15_, 1:52:11_, 1:53:3_,
1:56:15_, 1:59:18_, 1:60:11
_, 1:62:8_, 1:76:22_, 1:89:11
_, 1:110:15_, 1:121:14_,
1:126:5_, 1:157:20
historically [6]_ - 1:12:1_,
1:61:20_, 1:61:22_, 1:86:10
_, 1:125:23_, 1:139:4
history [25]_ - 1:20:2_,
1:21:16_, 1:21:18_, 1:22:6_,
1:22:7_, 1:22:14_, 1:22:17_,
1:22:18_, 1:23:13_, 1:24:2_,
1:24:16_, 1:40:17_, 1:59:19
_, 1:59:25_, 1:60:15_, 1:61:5
_, 1:61:9_, 1:61:10_, 1:62:11
_, 1:65:8_, 1:65:9_, 1:110:16
_, 1:126:7_, 1:156:2_,
1:156:3
hit [1]_ - 1:140:20
hold [2]_ - 1:122:12_,
1:138:22
holding [16]_ - 1:27:9_,
1:34:13_, 1:35:21_, 1:42:4_,
1:44:11_, 1:93:24_, 1:94:2_,
1:94:3_, 1:94:4_, 1:94:21_,
1:94:23_, 1:95:13_, 1:114:22
_, 1:115:22_, 1:117:16_,
1:119:10
holds [1]_ - 1:12:10
hole [1]_ - 1:133:7
home [2]_ - 1:127:2_,
1:161:8
Homeland [2]_ - 1:89:15
_, 1:89:22
honestly [1]_ - 1:24:17
Honor [66]_ - 1:3:9_,
1:3:12_, 1:3:17_, 1:3:21_,

1:4:6_, 1:6:7_, 1:6:17_,
1:6:19_, 1:6:22_, 1:8:8_,
1:13:13_, 1:19:10_, 1:21:24
_, 1:35:25_, 1:36:14_,
1:37:13_, 1:38:22_, 1:40:11
_, 1:42:3_, 1:71:2_, 1:71:6_,
1:71:16_, 1:80:10_, 1:81:3_,
1:83:10_, 1:85:2_, 1:87:11_,
1:88:11_, 1:90:19_, 1:91:8,
1:91:13_, 1:92:20_, 1:94:25
_, 1:95:9_, 1:96:7_, 1:96:16_,
1:98:11_, 1:99:21_, 1:100:22
_, 1:102:23_, 1:104:10_,
1:106:13_, 1:107:21_,
1:107:24, 1:110:18_,
1:111:17_, 1:112:11_,
1:112:20_, 1:112:22_,
1:113:4_, 1:113:22_, 1:115:8
_, 1:116:3_, 1:120:15_,
1:121:13_, 1:134:13_,
1:137:15_, 1:139:23_,
1:140:19_, 1:143:21_,
1:144:21_, 1:145:8_,
1:145:14_, 1:146:9_, 1:147:9
_, 1:158:5
Honor's [1]_ - 1:28:10
honored [1]_ - 1:113:4
hope [1]_ - 1:45:14
hopefully [1]_ - 1:27:20
hour [1]_ - 1:70:17
House [2]_ - 1:135:9_,
1:139:17
houses [1]_ - 1:93:16
Howell [1]_ - 1:52:4
huge [1]_ - 1:135:10
human [1]_ - 1:30:22
Hur [3]_ - 1:12:21_, 1:51:25
_, 1:66:10
hurt [1]_ - 1:96:1

I

idea [10]_ - 1:26:19_,
1:30:25_, 1:37:18_, 1:60:1_,
1:63:17_, 1:100:13_,
1:111:19_, 1:111:20_,
1:115:14_, 1:146:14
ideas [2]_ - 1:20:24_,
1:100:6
identical [1]_ - 1:71:24
identified [4]_ - 1:10:13_,
1:55:1_, 1:131:9_, 1:153:16
identifying [1]_ - 1:65:20
ignore [1]_ - 1:139:9
II [1]_ - 1:108:11
ill [1]_ - 1:118:19

ill-considered [1]_ - 1:118:19

illuminating [1]_ - 1:161:6

illustrated [1]_ - 1:78:20

illustrates [1]_ - 1:78:5

imagine [2]_ - 1:54:7_, 1:89:20

immediately [1]_ - 1:110:11

immense [1]_ - 1:86:24

immunity [1]_ - 1:88:8

impact [1]_ - 1:106:12

impeachment [1]_ - 1:93:16

imperfect [1]_ - 1:125:24

implausible [1]_ - 1:133:8

implication [2]_ - 1:74:25_, 1:84:14

implicitly [1]_ - 1:90:11

importance [2]_ - 1:137:22_, 1:160:4

important [39]_ - 1:7:11_, 1:12:5_, 1:13:4_, 1:13:11_, 1:15:11_, 1:15:13_, 1:22:14_, 1:28:22_, 1:29:3_, 1:30:6_, 1:30:7_, 1:30:9_, 1:33:4_, 1:38:10_, 1:73:6_, 1:73:24_, 1:82:14_, 1:83:22_, 1:84:9_, 1:86:10_, 1:86:13_, 1:92:3_, 1:93:5_, 1:99:10_, 1:99:16_, 1:103:10_, 1:105:15_, 1:108:6_, 1:113:17_, 1:114:12_, 1:119:24_, 1:121:4_, 1:122:2_, 1:137:8_, 1:137:19_, 1:140:17_, 1:142:21_, 1:145:17_, 1:160:8

imposed [1]_ - 1:72:11

imposes [3]_ - 1:74:13_, 1:75:4_, 1:85:7

impression [1]_ - 1:30:3

inability [2]_ - 1:78:14_, 1:78:15

inappropriate [6]_ - 1:48:15_, 1:79:15_, 1:80:11_, 1:135:24_, 1:146:22_, 1:151:6

incident [2]_ - 1:97:18_, 1:101:24

incidental [2]_ - 1:97:10_, 1:99:19

inclined [2]_ - 1:14:14_, 1:55:22

include [3]_ - 1:81:10_,

1:87:12_, 1:130:20

included [2]_ - 1:141:4_, 1:142:15

includes [6]_ - 1:53:20_, 1:54:1_, 1:70:11_, 1:88:13_, 1:90:3_, 1:141:23

including [5]_ - 1:51:23_, 1:58:24_, 1:83:3_, 1:85:22_, 1:145:17

including...and [1]_ - 1:52:1

inconsistent [3]_ - 1:108:25_, 1:109:1_, 1:144:1

incorrect [2]_ - 1:123:8_, 1:150:20

increased [3]_ - 1:13:14_, 1:124:22_, 1:124:23

indeed [1]_ - 1:113:20

independence [16]_ - 1:22:11_, 1:24:13_, 1:46:8_, 1:48:7_, 1:62:1_, 1:67:25_, 1:68:1_, 1:71:25_, 1:74:14_, 1:92:24_, 1:110:14_, 1:143:16_, 1:143:22_, 1:146:4_, 1:147:1_, 1:150:21

independent [45]_ - 1:12:2_, 1:20:7_, 1:21:20_, 1:24:5_, 1:26:12_, 1:26:15_, 1:31:12_, 1:37:22_, 1:37:25_, 1:46:7_, 1:46:20_, 1:46:23_, 1:47:1_, 1:48:8_, 1:60:7_, 1:62:5_, 1:63:8_, 1:66:7_, 1:66:7_, 1:67:6_, 1:67:9_, 1:67:16_, 1:68:2_, 1:71:24_, 1:72:9_, 1:72:11_, 1:72:20_, 1:96:14_, 1:96:20_, 1:97:5_, 1:99:3_, 1:101:23_, 1:104:17_, 1:104:24_, 1:105:2_, 1:105:7_, 1:106:6_, 1:107:7_, 1:110:10_, 1:114:15_, 1:126:9_, 1:144:19_, 1:158:1_, 1:158:9

Independent [5]_ - 1:47:8_, 1:65:24_, 1:67:22_, 1:72:14_, 1:121:1

independently [6]_ - 1:26:11_, 1:32:11_, 1:69:9_, 1:69:11_, 1:80:21_, 1:144:5

indicate [2]_ - 1:41:18_, 1:42:3

indicates [1]_ - 1:90:2

indicative [1]_ - 1:158:14

indicted [1]_ - 1:138:3

indictment [15]_ - 1:4:21_, 1:27:13_, 1:50:11_, 1:50:17_, 1:50:21_, 1:51:2_,

1:105:19_, 1:106:16_, 1:145:12_, 1:145:18_, 1:149:3_, 1:149:6_, 1:149:8_, 1:149:13_, 1:149:17

indictments [1]_ - 1:134:4_, 1:145:21

indisputably [1]_ - 1:141:6

individual [7]_ - 1:49:15_, 1:60:1_, 1:63:19_, 1:67:9_, 1:78:14_, 1:78:16_, 1:100:8

individuals [12]_ - 1:5:21_, 1:57:11_, 1:59:13_, 1:59:15_, 1:66:8_, 1:68:12_, 1:68:17_, 1:69:6_, 1:69:8_, 1:151:20_, 1:153:12_, 1:158:8

individuals' [1]_ - 1:21:22

infamous [1]_ - 1:60:22

inference [1]_ - 1:51:8

inferior [57]_ - 1:7:16_, 1:11:1_, 1:11:24_, 1:17:24_, 1:26:4_, 1:26:25_, 1:31:16_, 1:31:17_, 1:32:15_, 1:40:22_, 1:46:10_, 1:47:11_, 1:49:6_, 1:49:19_, 1:50:9_, 1:69:12_, 1:71:9_, 1:71:21_, 1:72:1_, 1:72:17_, 1:72:22_, 1:73:5_, 1:73:9_, 1:73:10_, 1:73:11_, 1:77:23_, 1:80:14_, 1:82:10_, 1:83:15_, 1:83:17_, 1:83:19_, 1:83:24_, 1:84:1_, 1:87:5_, 1:88:14_, 1:90:3_, 1:91:21_, 1:103:4_, 1:103:12_, 1:103:14_, 1:122:20_, 1:122:21_, 1:123:1_, 1:123:20_, 1:123:24_, 1:132:18_, 1:132:21_, 1:134:17_, 1:137:11_, 1:143:15_, 1:149:25_, 1:152:20_, 1:152:25_, 1:156:20_, 1:156:24_, 1:159:1_, 1:159:3

inferred [1]_ - 1:101:17

inform [2]_ - 1:19:23_, 1:23:6

information [2]_ - 1:29:19_, 1:151:3

informed [1]_ - 1:118:17

initiate [1]_ - 1:134:3

initiation [1]_ - 1:85:3

initio [1]_ - 1:86:12

inquiry [2]_ - 1:91:16_, 1:106:12

inside [1]_ - 1:139:7

insisting [1]_ - 1:63:11

insofar [1]_ - 1:59:22

instance [2]_ - 1:44:6_, 1:159:20

instead [4]_ - 1:20:22_, 1:39:18_, 1:72:25_, 1:74:15

insufficiency [1]_ - 1:35:22

integral [1]_ - 1:86:23

intend [1]_ - 1:135:7

intention [2]_ - 1:107:16_, 1:124:2

inter [1]_ - 1:73:17

interact [1]_ - 1:84:23

interaction [1]_ - 1:19:3

interchangeably [1]_ - 1:154:14

interest [1]_ - 1:113:10

interesting [1]_ - 1:129:11

interestingly [1]_ - 1:158:8

interfere [2]_ - 1:93:1_, 1:93:4

interference [2]_ - 1:28:23_, 1:144:16

interim [2]_ - 1:31:20_, 1:65:25

Interior [2]_ - 1:61:1_, 1:61:2

interloper [1]_ - 1:86:8

intermittent [2]_ - 1:155:18_, 1:155:22

internal [4]_ - 1:72:7_, 1:74:20_, 1:147:21_, 1:148:14

interplay [1]_ - 1:19:11

interpret [1]_ - 1:114:7

interpretation [7]_ - 1:54:10_, 1:120:2_, 1:121:2_, 1:126:14_, 1:126:16_, 1:133:8_, 1:133:25

interpretations [2]_ - 1:120:7_, 1:133:22

interpretative [2]_ - 1:54:9_, 1:130:3

interpreted [1]_ - 1:54:21

interpreting [4]_ - 1:13:13_, 1:35:25_, 1:64:22_, 1:114:13

interregnum [1]_ - 1:84:12

intervene [1]_ - 1:137:1

intervening [1]_ - 1:72:7

intrabranch [5]_ - 1:34:25_, 1:35:6_, 1:42:9_, 1:115:3_,

1:139:17

intrinsically [1]_ - 1:64:5

invalidly [1]_ - 1:69:18

investigate [2]_ - 1:110:12_, 1:127:1

investigation [3]_ - 1:26:11_, 1:38:2_, 1:102:1

Investigation [2]_ - 1:84:6 _, 1:129:17

investigations [1]_ - 1:101:18

investigative [7]_ - 1:29:3 _, 1:48:13_, 1:50:14_, 1:55:20_, 1:67:10_, 1:78:24

invoke [2]_ - 1:41:11_, 1:131:7

invoked [3]_ - 1:127:9_, 1:127:11_, 1:129:22

invokes [1]_ - 1:45:3

invoking [1]_ - 1:52:17

involved [8]_ - 1:35:7_, 1:42:10_, 1:60:23_, 1:105:17 _, 1:136:21_, 1:156:25_, 1:160:5_, 1:160:10

involves [1:8:8_, 1:62:1_, 1:97:16

involving [6]_ - 1:23:10_, 1:29:4_, 1:55:19_, 1:93:14_, 1:98:2_, 1:145:16

Iran [6]_ - 1:38:2_, 1:66:17 _, 1:66:24_, 1:67:8_, 1:67:13 _, 1:125:3

Iran-Contra [6]_ - 1:38:2 _, 1:66:17_, 1:66:24_, 1:67:8 _, 1:67:13_, 1:125:3

IRVING [2]_ - 1:3:21_, 1:6:19

Irving [2]_ - 1:3:22_, 1:6:18

IS [1]_ - 1:95:18

issuance [1]_ - 1:149:5

issue [50]_ - 1:6:2_, 1:8:18 _, 1:13:15_, 1:17:3_, 1:22:3_, 1:23:8_, 1:25:20_, 1:27:23_, 1:28:11_, 1:28:13_, 1:30:14 _, 1:32:14_, 1:36:12_, 1:39:11_, 1:41:7_, 1:41:10_, 1:41:11_, 1:41:14_, 1:41:15 _, 1:42:14_, 1:45:13_, 1:46:22_, 1:72:23_, 1:72:24 _, 1:73:8_, 1:75:14_, 1:78:17 _, 1:83:11_, 1:84:10_, 1:86:2 _, 1:86:9_, 1:86:19_, 1:95:4_, 1:104:23_, 1:112:13_, 1:114:7_, 1:116:1_, 1:134:3 _, 1:134:13_, 1:135:1_,

1:139:23_, 1:140:12_, 1:140:13_, 1:141:25_, 1:144:12_, 1:148:1_, 1:148:16

issued [7]_ - 1:26:9_, 1:43:2_, 1:49:25_, 1:67:2_, 1:77:7_, 1:94:5

issues [10]_ - 1:19:9_, 1:25:20_, 1:29:20_, 1:36:6_, 1:38:19_, 1:44:17_, 1:44:19 _, 1:71:8_, 1:71:17_, 1:72:5

IT [2]_ - 1:6:2_, 1:6:3

items [1]_ - 1:97:25

itself [11]_ - 1:41:5_, 1:48:6 _, 1:48:9_, 1:48:23_, 1:49:21 _, 1:65:2_, 1:65:20_, 1:78:21 _, 1:89:4_, 1:128:14_, 1:153:4

J

Jack [16]_ - 1:4:22_, 1:12:9 _, 1:20:6_, 1:26:10_, 1:26:25 _, 1:32:11_, 1:32:16_, 1:36:19_, 1:38:15_, 1:75:11 _, 1:97:14_, 1:98:2_, 1:98:4_, 1:98:23_, 1:99:6

Jackson [1]_ - 1:137:19

JAG [1]_ - 1:64:11

James [3]_ - 1:3:10_, 1:40:11_, 1:76:25

Janet [1]_ - 1:133:9

January [3]_ - 1:97:16_, 1:105:17_, 1:106:11

Jaworski [2]_ - 1:92:5_, 1:111:22

Jay [1]_ - 1:3:9

job [1]_ - 1:17:15

John [3]_ - 1:3:22_, 1:66:9 _, 1:95:11

join [1]_ - 1:4:24

Josh [2]_ - 1:5:22_, 1:90:21

judge [5]_ - 1:35:7_, 1:98:18_, 1:136:22_, 1:137:4 _, 1:139:18

Judge [38]_ - 1:7:9_, 1:7:18_, 1:8:17_, 1:9:21_, 1:10:5_, 1:12:4_, 1:12:25_, 1:15:10_, 1:16:1_, 1:16:19_, 1:20:22_, 1:21:13_, 1:22:4_, 1:22:24_, 1:24:17_, 1:34:17 _, 1:34:19_, 1:35:14_, 1:37:1 _, 1:39:6_, 1:40:10_, 1:43:18 _, 1:45:24_, 1:52:4_, 1:52:5_, 1:84:5_, 1:111:17_, 1:113:7

_, 1:116:18_, 1:118:11_, 1:139:2_, 1:141:17_, 1:142:25_, 1:143:13_, 1:143:18_, 1:145:6_, 1:147:7 _, 1:160:2

judges [21]_ - 1:18:15_, 1:41:6_, 1:41:8_, 1:44:10_, 1:45:5_, 1:45:19_, 1:50:6_, 1:72:16_, 1:73:16_, 1:73:17 _, 1:73:21_, 1:78:12_, 1:95:4 _, 1:114:19_, 1:117:23_, 1:117:25_, 1:118:10_, 1:136:15_, 1:151:17_, 1:153:11_, 1:155:21

judgment [1]_ - 1:26:12

judicial [6]_ - 1:14:9_, 1:42:2_, 1:73:19_, 1:108:15 _, 1:127:2_, 1:129:21

Judiciary [1]_ - 1:121:13

judiciary [1]_ - 1:135:9

jumps [2]_ - 1:20:17

juries [1]_ - 1:134:3

jurisdiction [6]_ - 1:25:4_, 1:45:1_, 1:61:17_, 1:77:8_, 1:77:19_, 1:120:23

jurisdictional [3]_ - 1:44:19_, 1:44:22_, 1:44:24

jurisprudence [1]_ - 1:144:12

jurisprudential [1]_ - 1:95:3

jury [6]_ - 1:18:13_, 1:18:16 _, 1:23:20_, 1:59:8_, 1:59:14 _, 1:138:1

Jury [3]_ - 1:43:17_, 1:48:25_, 1:84:6

justice [2]_ - 1:111:12_, 1:137:20

Justice [57]_ - 1:19:25_, 1:28:21_, 1:29:1_, 1:29:9_, 1:29:15_, 1:30:23_, 1:37:19 _, 1:56:4_, 1:56:6_, 1:56:8_, 1:56:11_, 1:56:18_, 1:60:15 _, 1:62:22_, 1:67:21_, 1:68:12_, 1:68:19_, 1:69:1_, 1:69:6_, 1:69:11_, 1:69:15_, 1:72:3_, 1:72:13_, 1:74:5_, 1:77:11_, 1:82:23_, 1:84:1_, 1:85:4_, 1:89:7_, 1:89:12_, 1:89:17_, 1:95:19_, 1:96:19 _, 1:98:21_, 1:99:9_, 1:99:24 _, 1:100:23_, 1:101:6_, 1:101:10_, 1:101:22_, 1:108:1_, 1:113:15_, 1:120:11_, 1:120:19_, 1:121:4_, 1:134:11_, 1:139:7 _, 1:144:15_, 1:145:10_,

1:145:13_, 1:147:16_, 1:148:25_, 1:150:17_, 1:154:19_, 1:159:11_, 1:159:16_, 1:159:18

Justice's [1]_ - 1:50:4

justices [2]_ - 1:72:2_, 1:136:18

justiciability [9]_ - 1:34:13 _, 1:42:7_, 1:44:7_, 1:44:24_, 1:94:19_, 1:114:24_, 1:115:17_, 1:115:19_, 1:115:22

justiciable [4]_ - 1:34:16_, 1:115:2_, 1:115:5_, 1:116:16

justify [2]_ - 1:7:4_, 1:9:8

K

Kagan [3]_ - 1:100:6_, 1:101:7_, 1:154:19

Kagan's [3]_ - 1:99:9_, 1:99:24_, 1:100:23

Kavanaugh [1]_ - 1:67:21

keen [1]_ - 1:113:10

keep [3]_ - 1:70:16_, 1:147:10_, 1:160:1

key [4]_ - 1:25:20_, 1:92:18 _, 1:120:15

keyword [1]_ - 1:100:10

kind [39]_ - 1:24:2_, 1:24:15_, 1:25:25_, 1:27:20 _, 1:40:24_, 1:43:1_, 1:43:7_, 1:44:21_, 1:45:18_, 1:49:4_, 1:52:11_, 1:60:3_, 1:61:19_, 1:61:20_, 1:62:11_, 1:63:8_, 1:65:10_, 1:66:12_, 1:66:22 _, 1:68:1_, 1:74:14_, 1:76:3_, 1:79:16_, 1:89:19_, 1:103:22 _, 1:109:8_, 1:118:18_, 1:125:2_, 1:132:14_, 1:133:16_, 1:135:11_, 1:138:16_, 1:138:20_, 1:139:9_, 1:143:20_, 1:145:4 _, 1:148:13_, 1:152:17

kinds [6]_ - 1:55:13_, 1:59:11_, 1:119:16_, 1:132:10_, 1:145:17_, 1:150:23

Kise [1]_ - 1:3:13

known [1]_ - 1:66:1

knows [4]_ - 1:9:11_, 1:30:25_, 1:88:25_, 1:131:12

L

lack [1]_ - 1:19:5

lacked [1]₋ - 1:40:15

lacks [1]₋ - 1:138:22

lacuna [1]₋ - 1:53:3

Lago [1]₋ - 1:97:18

laid [2]₋ - 1:9:13₋, 1:17:20

Landmark [2]₋ - 1:5:9₋, 1:90:22

landscape [1]₋ - 1:100:14

language [20]₋ - 1:7:14₋, 1:8:25₋, 1:31:19₋, 1:32:1₋, 1:46:5₋, 1:50:12₋, 1:50:21₋, 1:56:7₋, 1:63:15₋, 1:77:22₋, 1:88:18₋, 1:92:18₋, 1:97:22 ₋, 1:108:19₋, 1:114:10₋, 1:117:21₋, 1:126:17₋, 1:135:19₋, 1:155:22₋, 1:159:13

lapse [2]₋ - 1:65:23₋, 1:104:19

lapsed [1]₋ - 1:65:25

lapsing [1]₋ - 1:68:2

large [1]₋ - 1:23:16

larger [1]₋ - 1:64:8

Larry [1]₋ - 1:6:8

last [10]₋ - 1:22:13₋, 1:26:18₋, 1:43:4₋, 1:90:6₋, 1:94:15₋, 1:94:16₋, 1:111:6 ₋, 1:112:11₋, 1:124:22₋, 1:143:14

latter [1]₋ - 1:150:14

law [29]₋ - 1:5:6₋, 1:7:1₋, 1:19:21₋, 1:31:15₋, 1:42:2₋, 1:54:23₋, 1:58:17₋, 1:63:19 ₋, 1:63:20₋, 1:64:10₋, 1:98:10₋, 1:100:8₋, 1:100:11 ₋, 1:106:24₋, 1:107:1₋, 1:112:16₋, 1:113:5₋, 1:115:24₋, 1:125:4₋, 1:128:20₋, 1:140:21₋, 1:140:23₋, 1:141:2₋, 1:141:3 ₋, 1:151:25₋, 1:156:19₋, 1:159:2₋, 1:160:6₋, 1:161:1

lawful [2]₋ - 1:85:22₋, 1:86:4

lawfully [3]₋ - 1:86:7₋, 1:117:8₋, 1:137:13

lawfulness [1]₋ - 1:86:12

Lawrence [1]₋ - 1:125:2

laws [1]₋ - 1:150:1

Lawson [2]₋ - 1:5:6₋, 1:113:6

lawyer [1]₋ - 1:140:1

lawyer's [1]₋ - 1:10:13

lawyers [7]₋ - 1:5:13₋,

1:5:14₋, 1:53:23₋, 1:70:19₋, 1:71:3₋, 1:130:8₋, 1:131:24

lay [1]₋ - 1:98:24

laying [1]₋ - 1:17:16

lays [1]₋ - 1:98:21

lead [5]₋ - 1:17:17₋, 1:18:25₋, 1:19:1₋, 1:40:7₋, 1:91:22

leading [2]₋ - 1:60:9₋, 1:98:12

least [17]₋ - 1:5:18₋, 1:7:16 ₋, 1:8:11₋, 1:25:23₋, 1:26:8₋, 1:30:4₋, 1:34:12₋, 1:64:24₋, 1:72:21₋, 1:112:16₋, 1:117:10₋, 1:117:17₋, 1:119:7₋, 1:124:1₋, 1:124:2 ₋, 1:135:12₋, 1:138:19

leave [2]₋ - 1:3:14₋, 1:51:13

led [3]₋ - 1:19:5₋, 1:35:11₋, 1:68:2

left [5]₋ - 1:65:10₋, 1:105:20₋, 1:107:14₋, 1:134:21₋, 1:142:2

legal [5]₋ - 1:33:19₋, 1:44:16₋, 1:78:4₋, 1:112:2₋, 1:152:10

Legal [2]₋ - 1:5:9₋, 1:90:22

legality [1]₋ - 1:86:1

legislate [1]₋ - 1:88:25

legislative [1]₋ - 1:59:25

legitimate [1]₋ - 1:126:13

Leon [1]₋ - 1:92:5

less [2]₋ - 1:46:8₋, 1:63:16

letter [1]₋ - 1:110:25

level [15]₋ - 1:17:9₋, 1:23:5 ₋, 1:23:18₋, 1:25:23₋, 1:30:4 ₋, 1:30:9₋, 1:31:12₋, 1:77:25 ₋, 1:78:18₋, 1:106:7₋, 1:135:18₋, 1:135:19₋, 1:135:21₋, 1:136:14

levels [1]₋ - 1:71:21

liberty [1]₋ - 1:137:23

life [1]₋ - 1:137:23

light [5]₋ - 1:12:1₋, 1:13:13 ₋, 1:65:7₋, 1:71:15₋, 1:94:17

likely [1]₋ - 1:5:25

liken [1]₋ - 1:55:17

limine [2]₋ - 1:26:17₋, 1:144:2

limitations [5]₋ - 1:15:4₋, 1:18:19₋, 1:24:23₋, 1:38:14 ₋, 1:72:11

limited [14]₋ - 1:11:18₋, 1:15:14₋, 1:55:12₋, 1:77:7₋, 1:77:8₋, 1:77:19₋, 1:94:3₋, 1:94:22₋, 1:97:9₋, 1:99:6₋, 1:106:14₋, 1:107:8₋, 1:123:25₋, 1:161:3

line [1]₋ - 1:25:22₋, 1:26:24 ₋, 1:31:17₋, 1:46:2₋, 1:56:7₋, 1:95:11₋, 1:123:14₋, 1:154:10

lines [1]₋ - 1:39:13

list [3]₋ - 1:83:2₋, 1:84:4₋, 1:105:24

listed [2]₋ - 1:58:9₋, 1:118:20

listing [4]₋ - 1:52:2₋, 1:114:16₋, 1:116:19₋, 1:117:12

lists [4]₋ - 1:58:4₋, 1:85:22 ₋, 1:87:9₋, 1:92:22

litigate [4]₋ - 1:11:15₋, 1:11:17₋, 1:134:4₋, 1:146:15

litigated [2]₋ - 1:139:23₋, 1:140:1

litigating [2]₋ - 1:14:22₋, 1:55:15

litigation [22]₋ - 1:8:9₋, 1:8:15₋, 1:11:13₋, 1:14:1₋, 1:14:4₋, 1:27:18₋, 1:29:25₋, 1:33:23₋, 1:38:4₋, 1:43:12₋, 1:47:16₋, 1:47:20₋, 1:47:23 ₋, 1:51:20₋, 1:58:7₋, 1:67:5₋, 1:67:12₋, 1:79:17₋, 1:79:22 ₋, 1:79:25₋, 1:115:1₋, 1:153:8

live [3]₋ - 1:4:4₋, 1:28:12₋, 1:116:14

Loan [2]₋ - 1:66:18₋, 1:128:22

located [3]₋ - 1:11:9₋, 1:120:16₋, 1:120:18

lodged [1]₋ - 1:48:9

Logan [1]₋ - 1:110:25

logic [4]₋ - 1:26:5₋, 1:39:13 ₋, 1:146:13₋, 1:147:2

Look [1]₋ - 1:42:8

look [36]₋ - 1:9:3₋, 1:13:19 ₋, 1:14:21₋, 1:16:4₋, 1:16:8₋, 1:16:10₋, 1:16:12₋, 1:17:12 ₋, 1:21:14₋, 1:23:4₋, 1:23:22 ₋, 1:24:7₋, 1:32:20₋, 1:34:3₋, 1:35:2₋, 1:36:9₋, 1:38:12₋, 1:39:12₋, 1:45:14₋, 1:72:25 ₋, 1:73:3₋, 1:82:12₋, 1:82:18 ₋, 1:91:15₋, 1:101:21₋, 1:119:24₋, 1:121:25₋,

1:124:10₋, 1:126:17₋, 1:130:5₋, 1:134:24₋, 1:139:19₋, 1:149:9₋, 1:151:23₋, 1:152:14₋, 1:152:15

looked [7]₋ - 1:23:15₋, 1:45:5₋, 1:45:20₋, 1:81:23₋, 1:111:19₋, 1:141:21₋, 1:149:23

looking [13]₋ - 1:20:15₋, 1:24:6₋, 1:27:11₋, 1:27:15₋, 1:38:3₋, 1:38:6₋, 1:39:17₋, 1:42:21₋, 1:121:5₋, 1:151:22 ₋, 1:151:25₋, 1:152:21₋, 1:152:23

looks [3]₋ - 1:97:4₋, 1:144:21₋, 1:155:11

lost [1]₋ - 1:37:3

lower [1]₋ - 1:118:7

lowercase [1]₋ - 1:153:24

Lowercase [1]₋ - 1:153:25

Lucia [10]₋ - 1:98:7₋, 1:98:12₋, 1:99:9₋, 1:99:25₋, 1:100:12₋, 1:100:13₋, 1:100:14₋, 1:104:3₋, 1:154:13₋, 1:154:20

lunch [5]₋ - 1:5:25₋, 1:70:22₋, 1:81:2₋, 1:153:16 ₋, 1:153:17

## M

Madison [1]₋ - 1:108:8

magic [3]₋ - 1:64:13₋, 1:88:5₋, 1:88:10

magnitude [1]₋ - 1:31:10

main [2]₋ - 1:62:15₋, 1:95:8

majority [5]₋ - 1:72:4₋, 1:72:6₋, 1:94:16₋, 1:101:11 ₋, 1:134:11

malleable [4]₋ - 1:64:20₋, 1:64:24₋, 1:65:2₋, 1:98:9

manage [1]₋ - 1:26:11

Management [4]₋ - 1:8:16₋, 1:14:10₋, 1:27:22₋, 1:30:6

manner [1]₋ - 1:11:12

Manual [7]₋ - 1:28:22₋, 1:29:1₋, 1:29:9₋, 1:29:15₋, 1:144:16₋, 1:145:10₋, 1:145:13

map [1]₋ - 1:74:9

Mar [1]₋ - 1:97:18

Mar-a-Lago [1]- - 1:97:18

Marbury [1]- - 1:108:8

March [2]- - 1:28:24-, 1:144:23

marker [1]- - 1:62:9

Marshall [1]- - 1:95:12

masters [1]- - 1:155:21

matter [15]- - 1:34:15-, 1:44:23-, 1:59:18-, 1:59:21-, 1:61:20-, 1:63:22-, 1:82:4-, 1:106:5-, 1:114:7-, 1:115:16-, 1:116:18-, 1:124:1-, 1:126:15-, 1:144:7-, 1:158:11

mattered [1]- - 1:35:7

matters [8]- - 1:10:7-, 1:24:10-, 1:42:5-, 1:79:13-, 1:92:17-, 1:94:1-, 1:99:11-, 1:138:9

Matthew [2]- - 1:5:22-, 1:71:3

Maurice [1]- - 1:95:12

MAURICE [1]- - 1:95:12

max [1]- - 1:113:2

mean [62]- - 1:11:11-, 1:13:19-, 1:16:4-, 1:17:23-, 1:17:24-, 1:19:18-, 1:21:18-, 1:28:11-, 1:29:24-, 1:33:3-, 1:37:10-, 1:39:18-, 1:41:14-, 1:44:1-, 1:44:7-, 1:47:19-, 1:51:19-, 1:52:10-, 1:52:23-, 1:53:16-, 1:54:22-, 1:54:24-, 1:55:4-, 1:59:22-, 1:61:19-, 1:62:6-, 1:64:25-, 1:65:1-, 1:65:12-, 1:69:10-, 1:70:5-, 1:74:22-, 1:75:16-, 1:77:9-, 1:82:1-, 1:82:4-, 1:95:10-, 1:96:10-, 1:98:5-, 1:100:17-, 1:101:15-, 1:101:16-, 1:126:1-, 1:129:24-, 1:131:6-, 1:131:7-, 1:140:18-, 1:142:3-, 1:145:8-, 1:148:12-, 1:148:22-, 1:151:16-, 1:152:4-, 1:152:17-, 1:153:3-, 1:154:16-, 1:156:16-, 1:157:9-, 1:157:11-, 1:159:9-, 1:159:11

meaning [9]- - 1:15:7-, 1:34:25-, 1:55:18-, 1:64:24-, 1:109:13-, 1:109:16-, 1:141:11-, 1:142:14-, 1:155:1

meaningfully [1]- - 1:39:21

means [29]- - 1:11:15-,

1:11:18-, 1:12:16-, 1:14:23-, 1:17:9-, 1:19:23-, 1:31:22-, 1:35:15-, 1:36:16-, 1:38:11-, 1:62:18, 1:79:8-, 1:91:3-, 1:95:16-, 1:96:2-, 1:98:21-, 1:104:12-, 1:104:25-, 1:105:2-, 1:105:3-, 1:107:1-, 1:133:20-, 1:141:1-, 1:141:5-, 1:141:12-, 1:141:20-, 1:142:12

meant [4]- - 1:16:7-, 1:61:7-, 1:131:1-, 1:140:24

meanwhile [1]- - 1:95:22

measure [4]- - 1:23:17-, 1:71:24-, 1:74:10-, 1:143:21

mechanism [6]- - 1:57:11-, 1:67:18-, 1:77:2-, 1:83:13-, 1:122:11-, 1:157:12

mechanisms [1]- - 1:66:20

Meese [6]- - 1:5:5-, 1:7:6-, 1:67:2-, 1:113:5-, 1:113:8-, 1:125:1

meet [2]- - 1:148:15

meetings [3]- - 1:27:24-, 1:30:1-, 1:30:2

members [4]- - 1:93:9-, 1:93:10-, 1:93:12-, 1:135:9

mention [3]- - 1:79:3-, 1:97:7-, 1:110:1

mentioned [13]- - 1:58:20-, 1:83:10-, 1:84:2-, 1:92:2-, 1:103:23-, 1:110:4-, 1:118:8-, 1:125:10-, 1:128:6-, 1:134:6-, 1:152:8-, 1:157:24-, 1:158:7

mere [7]- - 1:100:2-, 1:101:3-, 1:103:6-, 1:103:20-, 1:113:20-, 1:134:7-, 1:151:18

merely [3]- - 1:7:8-, 1:35:23-, 1:109:13

merged [1]- - 1:20:3

meritorious [1]- - 1:8:21

merits [2]- - 1:44:8-, 1:95:6

Merrick [2]- - 1:75:13-, 1:75:14

Michael [1]- - 1:113:5

might [16]- - 1:45:12-, 1:45:14-, 1:87:14-, 1:87:15-, 1:89:23-, 1:94:16-, 1:95:25-, 1:96:1-, 1:96:18-, 1:99:25-, 1:103:25-, 1:104:18-, 1:104:22-, 1:108:15-, 1:110:25-,

1:112:10

military [1]- - 1:64:7

millions [1]- - 1:102:2

mind [4]- - 1:9:6-, 1:12:9-, 1:25:7-, 1:75:9

mindful [1]- - 1:8:7

minimum [1]- - 1:114:11

Minnesota [2]- - 1:160:5-, 1:160:6

minute [5]- - 1:25:2-, 1:30:24-, 1:70:20-, 1:104:18-, 1:114:2

minutes [2]- - 1:111:5-, 1:133:13

misconduct [1]- - 1:75:19

mission [1]- - 1:97:3

mistake [2]- - 1:125:5-, 1:126:1

mistaken [4]- - 1:52:18-, 1:53:13-, 1:57:18-, 1:58:2

mistakes [3]- - 1:125:7-, 1:125:25-, 1:138:19

misunderstood [1]- - 1:58:15

mixed [1]- - 1:58:24

modern [7]- - 1:22:6-, 1:62:19-, 1:65:10-, 1:65:12-, 1:65:17-, 1:89:17-, 1:111:22

modified [1]- - 1:58:23

modify [4]- - 1:146:16-, 1:146:23-, 1:151:12

moment [9]- - 1:49:1-, 1:56:16-, 1:58:20-, 1:59:5-, 1:62:4-, 1:92:11-, 1:105:4-, 1:155:3-, 1:159:14

momentarily [1]- - 1:4:10

Monday [4]- - 1:4:25-, 1:104:22-, 1:107:11-, 1:146:6

month [1]- - 1:26:13

months [1]- - 1:124:1

morning [24]- - 1:3:2-, 1:3:9-, 1:3:12-, 1:3:17-, 1:3:21-, 1:3:24-, 1:3:25-, 1:8:13-, 1:12:7-, 1:13:24-, 1:40:11-, 1:40:13-, 1:83:10-, 1:85:3-, 1:88:12-, 1:104:11-, 1:104:13-, 1:145:11-, 1:146:8-, 1:149:11-, 1:153:14-, 1:154:12-, 1:157:24-, 1:160:18

Morrison [20]- - 1:67:6-,

1:71:23-, 1:72:4-, 1:72:14-, 1:72:20-, 1:72:24-, 1:96:17-, 1:96:19-, 1:97:5-, 1:98:7-, 1:103:16-, 1:103:17-, 1:103:18-, 1:103:22-, 1:104:2-, 1:112:8-, 1:112:12-, 1:112:14-, 1:144:11-, 1:155:7

most [17]- - 1:16:3-, 1:16:8-, 1:22:13-, 1:25:8-, 1:45:9-, 1:45:10-, 1:71:17-, 1:73:6-, 1:73:7-, 1:86:10-, 1:96:5-, 1:110:15-, 1:111:7-, 1:118:19-, 1:127:1-, 1:132:14-, 1:141:19

motion [31]- - 1:4:19-, 1:4:20-, 1:4:24-, 1:4:25-, 1:5:2-, 1:5:10-, 1:5:18-, 1:5:24-, 1:6:23-, 1:13:2-, 1:19:6-, 1:20:4-, 1:22:20-, 1:26:17-, 1:28:6-, 1:28:18-, 1:29:5-, 1:29:7-, 1:30:10-, 1:36:6-, 1:40:8-, 1:104:25-, 1:113:10-, 1:139:3-, 1:139:21-, 1:143:1-, 1:144:2-, 1:145:25-, 1:147:5-, 1:150:3-, 1:160:22

motions [4]- - 1:7:1-, 1:14:14-, 1:146:2-, 1:146:3

mouse [1]- - 1:133:7

move [6]- - 1:44:6-, 1:44:7-, 1:126:19-, 1:126:21-, 1:129:8-, 1:132:24

moved [1]- - 1:140:13

MR [250]- - 1:3:9-, 1:3:12-, 1:3:17-, 1:3:21-, 1:6:14-, 1:6:17-, 1:6:19-, 1:6:22-, 1:7:9-, 1:7:18-, 1:7:20-, 1:10:2-, 1:10:5-, 1:10:15-, 1:11:7-, 1:12:4-, 1:12:20-, 1:12:25-, 1:13:24-, 1:15:10-, 1:16:1, 1:16:17-, 1:16:19-, 1:16:23-, 1:17:24-, 1:18:9-, 1:18:23-, 1:19:15-, 1:20:21-, 1:21:5-, 1:21:13-, 1:21:24-, 1:22:12-, 1:22:24-, 1:23:15-, 1:24:6-, 1:24:17-, 1:25:6-, 1:26:2-, 1:27:14-, 1:27:17-, 1:28:10-, 1:29:7-, 1:30:17-, 1:31:5-, 1:31:18-, 1:32:8-, 1:32:20-, 1:34:17-, 1:35:24-, 1:36:5-, 1:37:1-, 1:37:6-, 1:37:23-, 1:39:9-, 1:40:10-, 1:40:11-, 1:40:14-, 1:41:15-, 1:41:22-, 1:43:3-, 1:44:1-, 1:44:21-, 1:46:3-, 1:46:15-, 1:46:17-, 1:47:9-, 1:47:18-, 1:48:22-, 1:49:13-, 1:50:12-, 1:50:19-,

1:50:25_, 1:51:7_, 1:51:15_, 1:52:9_, 1:52:22_, 1:53:2_, 1:53:10_, 1:54:14_, 1:54:22 _, 1:55:4_, 1:56:1_, 1:57:4_, 1:57:22_, 1:58:2_, 1:58:12_, 1:58:18_, 1:58:23_, 1:59:17 _, 1:59:22_, 1:60:10_, 1:61:18_, 1:62:6_, 1:62:18_, 1:63:13_, 1:64:21_, 1:65:13 _, 1:65:15_, 1:65:18_, 1:66:21_, 1:67:13_, 1:68:5_, 1:68:9_, 1:69:10_, 1:69:21_, 1:70:5_, 1:70:15_, 1:71:2_, 1:74:10_, 1:74:24_, 1:75:10 _, 1:75:21_, 1:76:5_, 1:76:18 _, 1:76:20_, 1:77:5_, 1:77:13 _, 1:78:3_, 1:79:7_, 1:79:18_, 1:79:22_, 1:80:1_, 1:80:7_, 1:80:10_, 1:80:12_, 1:80:16 _, 1:80:19_, 1:80:25_, 1:81:19_, 1:81:22_, 1:82:11 _, 1:83:7_, 1:83:9_, 1:83:14_, 1:84:22_, 1:85:1_, 1:86:3_, 1:87:6_, 1:87:11_, 1:87:15_, 1:87:21_, 1:88:4_, 1:89:5_, 1:90:14_, 1:90:17_, 1:90:19 _, 1:91:12_, 1:92:14_, 1:95:9 _, 1:96:7_, 1:96:16_, 1:97:24 _, 1:98:11_, 1:99:21_, 1:100:22_, 1:101:21_, 1:102:14_, 1:102:25_, 1:104:7_, 1:104:10_, 1:105:6 _, 1:106:9_, 1:106:13_, 1:106:25_, 1:107:18_, 1:107:21_, 1:107:24_, 1:109:5_, 1:109:11, 1:110:18 _, 1:110:20_, 1:111:6_, 1:112:20_, 1:112:22_, 1:113:2_, 1:113:4_, 1:115:13 _, 1:116:2_, 1:116:8_, 1:116:11_, 1:117:19_, 1:118:2_, 1:119:1_, 1:119:3, 1:119:13_, 1:119:15_, 1:119:19_, 1:120:14_, 1:121:19_, 1:122:13_, 1:122:17_, 1:123:9_, 1:123:17_, 1:124:20_, 1:125:18_, 1:125:24_, 1:126:11_, 1:127:24_, 1:128:4_, 1:128:11_, 1:128:19_, 1:128:24_, 1:129:10_, 1:129:24_, 1:130:18_, 1:130:25_, 1:131:4_, 1:131:10_, 1:132:3 _, 1:132:19_, 1:133:5_, 1:133:14_, 1:136:2_, 1:137:18_, 1:139:2_, 1:141:17_, 1:142:7_, 1:142:24_, 1:143:13_, 1:145:6_, 1:147:7_, 1:147:9 _, 1:147:20_, 1:148:5_,

1:148:12_, 1:148:22_, 1:149:9_, 1:149:18_, 1:150:6 _, 1:150:12_, 1:150:22_, 1:151:14_, 1:152:2_, 1:152:17_, 1:153:3_, 1:153:9, 1:153:21_, 1:153:25 _, 1:156:1_, 1:157:8_, 1:157:14_, 1:157:16_, 1:158:1_, 1:158:5_, 1:158:15 _, 1:158:24_, 1:159:9_, 1:159:23_, 1:159:25

Mueller [9]_ - 1:12:10_, 1:14:4_, 1:14:15_, 1:20:18_, 1:29:25_, 1:33:23_, 1:35:18 _, 1:39:4_, 1:51:20

Mueller's [2]_ - 1:14:2_, 1:27:18

Mukasey [6]_ - 1:5:5_, 1:7:6_, 1:108:16_, 1:113:5_, 1:113:7_, 1:116:18

multiple [2]_ - 1:76:12_, 1:88:19

multiyear [1]_ - 1:101:18

Murrell [1]_ - 1:3:22

must [13]_ - 1:15:22_, 1:26:5_, 1:53:16_, 1:100:8_, 1:100:10_, 1:101:7_, 1:101:9 _, 1:101:12_, 1:108:12_, 1:139:8_, 1:144:19

## N

name [3]_ - 1:23:11_, 1:110:21_, 1:110:25
named [1]_ - 1:107:22
names [1]_ - 1:158:6
narcotics [1]_ - 1:154:6
narrow [2]_ - 1:141:5_, 1:141:6
narrower [1]_ - 1:116:2
national [2]_ - 1:29:4_, 1:145:16
National [3]_ - 1:29:16_, 1:30:23_, 1:147:19
nationwide [1]_ - 1:120:23
naturally [1]_ - 1:63:3
nature [4]_ - 1:35:3_, 1:42:25_, 1:119:14_, 1:147:2
Nauta [4]_ - 1:3:5_, 1:3:16 _, 1:3:18_, 1:4:23
naval [1]_ - 1:60:24
nearly [1]_ - 1:61:9
necessarily [12]_ - 1:11:11_, 1:11:19_, 1:42:13

_, 1:42:20_, 1:43:8_, 1:48:22 _, 1:50:1_, 1:122:11_, 1:122:13_, 1:134:9_, 1:157:10

necessary [16]_ - 1:28:5_, 1:28:12_, 1:28:17_, 1:29:12 _, 1:31:3_, 1:34:22_, 1:36:2_, 1:36:5_, 1:42:5_, 1:43:20_, 1:43:23_, 1:44:11_, 1:78:18 _, 1:114:22_, 1:127:14_, 1:146:1

need [19]_ - 1:4:8_, 1:5:17 _, 1:13:1_, 1:13:17_, 1:20:4_, 1:20:9_, 1:60:2_, 1:62:12_, 1:78:1_, 1:96:13_, 1:109:23 _, 1:114:6_, 1:132:4_, 1:132:5_, 1:148:15_, 1:152:15_, 1:157:13

needed [1]_ - 1:119:5

needs [6]_ - 1:21:7_, 1:21:10_, 1:26:25_, 1:120:2 _, 1:126:15

negative [1]_ - 1:51:19

neighborhood [1]_ - 1:142:13

Neptune [1]_ - 1:133:21

never [4]_ - 1:18:14_, 1:85:24_, 1:108:17_, 1:138:4

nevertheless [1]_ - 1:82:9

new [6]_ - 1:73:1_, 1:75:14 _, 1:75:22_, 1:76:15_, 1:90:10_, 1:99:7

New [2]_ - 1:23:10_, 1:59:6

next [6]_ - 1:73:19_, 1:92:25_, 1:93:6_, 1:95:9_, 1:100:5_, 1:120:18

nine [2]_ - 1:72:3_, 1:72:15

Nixon [61]_ - 1:12:6_, 1:12:14_, 1:19:10_, 1:20:15 _, 1:20:16_, 1:22:4_, 1:32:19 _, 1:32:20_, 1:32:23_, 1:33:5 _, 1:33:8_, 1:33:10_, 1:33:21 _, 1:33:25_, 1:34:4_, 1:34:8_, 1:34:24_, 1:35:3_, 1:36:10_, 1:36:16_, 1:36:23_, 1:37:10 _, 1:37:15_, 1:38:18_, 1:41:3 _, 1:41:5_, 1:41:9_, 1:41:17_, 1:42:8_, 1:45:1_, 1:45:21_, 1:46:2_, 1:47:22_, 1:52:12_, 1:52:25_, 1:58:14_, 1:65:20 _, 1:85:19_, 1:85:20_, 1:85:25_, 1:91:2_, 1:92:1_, 1:92:11_, 1:94:25_, 1:112:6 _, 1:113:23_, 1:114:14_, 1:115:13_, 1:117:5_, 1:117:7 _, 1:118:20_, 1:118:25_,

1:119:1_, 1:119:14_, 1:139:13_, 1:139:14_, 1:140:5_, 1:140:14_, 1:152:5 _, 1:159:25_, 1:160:18

Nixon's [4]_ - 1:95:6_, 1:115:1_, 1:115:9_, 1:115:16

nobody [3]_ - 1:33:17_, 1:86:18_, 1:147:3

Nofziger [1]_ - 1:66:17

nominated [3]_ - 1:49:17 _, 1:129:4_, 1:137:12

nomination [3]_ - 1:122:16_, 1:157:1_, 1:157:5

non [3]_ - 1:115:2_, 1:125:16

non-justiciable [1]_ - 1:115:2

non-sitting [1]_ - 1:125:16

noncontinuous [3]_ - 1:96:9_, 1:102:3_, 1:108:22

none [4]_ - 1:76:18_, 1:87:10_, 1:115:8_, 1:153:6

nonetheless [5]_ - 1:53:5 _, 1:58:13_, 1:62:21_, 1:158:9_, 1:160:19

nonexistent [2]_ - 1:27:4 _, 1:49:9

noninferior [3]_ - 1:122:5 _, 1:122:9_, 1:122:19

NOTE [1]_ - 1:104:21

note [5]_ - 1:53:23_, 1:104:21_, 1:105:6_, 1:107:15_, 1:110:9

noted [1]_ - 1:94:6

nothing [9]_ - 1:34:9_, 1:42:12_, 1:72:5_, 1:97:9_, 1:98:3_, 1:117:5_, 1:136:7_, 1:136:9_, 1:155:23

notice [4]_ - 1:50:18_, 1:75:5_, 1:79:10_, 1:108:16

noticed [1]_ - 1:86:18

notification [2]_ - 1:50:15 _, 1:78:23

notion [1]_ - 1:18:21

notwithstanding [2]_ - 1:95:4_, 1:114:19

November [2]_ - 1:20:6_, 1:106:10

NSD [2]_ - 1:145:13_, 1:145:19

NSD's [1]_ - 1:29:3

nub [1]_ - 1:46:11

Number [3]_ - 1:96:24_, 1:97:1_, 1:102:6

number [7]– - 1:29:17–, 1:48:11–, 1:68:14–, 1:102:5 –, 1:102:8–, 1:131:21–, 1:148:15

## O

oath [2]– - 1:85:10–, 1:127:15
obiter [1]– - 1:118:18
objection [1]– - 1:72:13
obliterated [1]– - 1:130:16
observation [1]– - 1:36:17
observed [1]– - 1:140:3
observing [1]– - 1:35:11
obtains [1]– - 1:138:5
obvious [3]– - 1:16:4–, 1:16:8–, 1:133:25
obviously [8]– - 1:14:18–, 1:33:1–, 1:33:3–, 1:65:22–, 1:67:6–, 1:70:7–, 1:129:12–, 1:157:17
occasional [4]– - 1:100:3 –, 1:100:4–, 1:155:18–, 1:155:19
occasionally [2]– - 1:102:24–, 1:137:1
occupy [4]– - 1:100:8–, 1:100:10–, 1:101:7–, 1:114:5
occurred [2]– - 1:126:24–, 1:127:2
odd [1]– - 1:53:17
OF [1]– - 1:95:21
Off-the-record [1]– - 1:6:3
offer [1]– - 1:23:14
offered [2]– - 1:64:23–, 1:102:6
offering [1]– - 1:84:15
office [27]– - 1:10:18–, 1:30:13–, 1:30:16–, 1:31:4–, 1:31:10–, 1:46:20–, 1:46:23 –, 1:60:20–, 1:96:24–, 1:98:14–, 1:101:17–, 1:102:2 –, 1:102:7–, 1:103:15–, 1:105:10–, 1:105:20–, 1:106:3–, 1:106:8–, 1:106:19 –, 1:107:14–, 1:113:19–, 1:127:15–, 1:132:2–, 1:133:16–, 1:137:13–, 1:145:21
Office [21]– - 1:7:25–, 1:13:25–, 1:27:1–, 1:27:8–, 1:27:23–, 1:28:16–, 1:30:5–, 1:40:8–, 1:50:7–, 1:51:22–,

1:55:14–, 1:101:20–, 1:103:14–, 1:120:17–, 1:121:1–, 1:144:5–, 1:144:19 –, 1:144:22–, 1:145:7–, 1:145:22
OFFICER [1]– - 1:6:6
Officer [1]– - 1:154:6
officer [111]– - 1:6:25–, 1:7:5–, 1:7:14–, 1:7:16–, 1:8:23–, 1:9:10–, 1:9:15–, 1:9:19–, 1:9:23–, 1:10:8–, 1:11:1–, 1:11:24–, 1:12:14–, 1:12:23–, 1:13:6–, 1:13:8–, 1:15:5–, 1:15:19–, 1:20:8–, 1:25:7–, 1:25:18–, 1:25:21–, 1:25:25–, 1:26:4–, 1:27:7–, 1:28:18–, 1:29:11–, 1:30:8–, 1:30:14–, 1:30:20–, 1:31:7–, 1:40:20–, 1:46:10–, 1:46:11 –, 1:49:6–, 1:49:19–, 1:49:22 –, 1:55:2–, 1:63:3–, 1:63:5–, 1:63:8–, 1:64:18–, 1:65:1–, 1:71:9–, 1:71:21–, 1:72:1–, 1:72:22–, 1:73:5–, 1:73:8–, 1:73:9–, 1:73:10–, 1:73:11–, 1:73:12–, 1:73:14–, 1:74:7–, 1:77:23–, 1:77:24–, 1:82:10 –, 1:83:6–, 1:85:12–, 1:89:1–, 1:90:7–, 1:91:3–, 1:95:13–, 1:99:16–, 1:100:9–, 1:100:11 –, 1:100:25–, 1:101:6–, 1:102:17–, 1:102:18–, 1:103:6–, 1:108:6–, 1:109:15 –, 1:113:20–, 1:122:19–, 1:122:20–, 1:123:1–, 1:123:3 –, 1:123:16–, 1:124:9–, 1:131:13–, 1:131:18–, 1:134:6–, 1:134:9–, 1:134:17 –, 1:134:18–, 1:134:23–, 1:134:25–, 1:135:15–, 1:137:11–, 1:137:12–, 1:143:15–, 1:150:1–, 1:152:20–, 1:152:25–, 1:154:10–, 1:155:4–, 1:155:11–, 1:156:17–, 1:156:20–, 1:156:21–, 1:156:24–, 1:157:10–, 1:158:19–, 1:159:1–, 1:159:3
officer-appointing [3]– - 1:9:15–, 1:9:19–, 1:131:13
officer-creating [2]– - 1:131:13–, 1:131:18
officers [72]– - 1:8:22–, 1:8:25–, 1:9:4–, 1:9:5–, 1:9:12–, 1:10:24–, 1:17:24–, 1:18:7–, 1:21:12–, 1:53:13–, 1:53:20–, 1:54:1–, 1:54:3–, 1:54:5–, 1:54:6–, 1:54:7–, 1:54:8–, 1:54:10–, 1:55:6–,

1:55:8–, 1:56:23–, 1:68:12–, 1:72:17–, 1:81:10–, 1:81:14 –, 1:82:25–, 1:83:2–, 1:83:15 –, 1:83:17–, 1:83:20–, 1:83:24–, 1:84:1–, 1:87:5–, 1:88:3–, 1:88:14–, 1:90:3–, 1:90:13–, 1:96:8–, 1:108:12 –, 1:108:13–, 1:108:15–, 1:108:25–, 1:109:2–, 1:109:12–, 1:110:6–, 1:122:5 –, 1:122:9–, 1:122:21–, 1:123:7–, 1:123:11–, 1:123:14–, 1:123:20–, 1:123:21–, 1:123:24–, 1:130:24–, 1:131:1–, 1:131:6 –, 1:131:7–, 1:132:6–, 1:132:18–, 1:132:21–, 1:135:3–, 1:137:10–, 1:138:17–, 1:138:21–, 1:141:23–, 1:142:14–, 1:143:9–, 1:151:21–, 1:153:12
offices [5]– - 1:30:21–, 1:31:1–, 1:50:9–, 1:114:5–, 1:121:18
official [27]– - 1:10:1–, 1:10:3–, 1:10:11–, 1:13:10–, 1:54:20–, 1:64:18–, 1:65:1–, 1:65:3–, 1:82:6–, 1:82:9–, 1:88:22–, 1:90:7–, 1:90:9–, 1:90:12–, 1:101:17–, 1:105:13–, 1:105:14–, 1:105:17–, 1:105:21–, 1:105:24–, 1:106:21–, 1:107:8–, 1:109:12–, 1:141:12–, 1:141:19–, 1:154:8–, 1:154:10
Officials [1]– - 1:53:13
officials [47]– - 1:5:14–, 1:8:22–, 1:9:1–, 1:9:22–, 1:10:19–, 1:11:5–, 1:12:12–, 1:53:16–, 1:53:19–, 1:54:1–, 1:54:3–, 1:54:9–, 1:54:15–, 1:71:4–, 1:78:13–, 1:78:16–, 1:78:17–, 1:81:9–, 1:81:20–, 1:81:23–, 1:82:23–, 1:87:24 –, 1:88:1–, 1:88:3–, 1:88:11–, 1:88:12–, 1:90:1–, 1:90:2–, 1:106:2–, 1:106:7–, 1:106:15 –, 1:106:19–, 1:107:2–, 1:107:4–, 1:109:9–, 1:109:17 –, 1:130:14–, 1:130:16–, 1:130:19–, 1:130:23–, 1:132:4–, 1:141:15–, 1:143:9 –, 1:153:15–, 1:154:3–, 1:155:1
often [4]– - 1:8:25–, 1:44:16–, 1:84:11–, 1:124:1
oil [1]– - 1:60:24

OLC [5]– - 1:97:6–, 1:97:7 –, 1:97:8–, 1:100:12–, 1:101:8
OLC's [2]– - 1:96:12–, 1:96:17
old [3]– - 1:85:3–, 1:104:16 –, 1:107:6
older [2]– - 1:89:12–, 1:125:7
Oliveira [4]– - 1:3:6–, 1:3:20–, 1:3:23–, 1:4:24
Olson [5]– - 1:71:23–, 1:96:17–, 1:101:24–, 1:112:12–, 1:155:7
ominous [1]– - 1:17:22
omitted [1]– - 1:52:7
on-board [1]– - 1:97:1
once [5]– - 1:17:14–, 1:38:10–, 1:97:24–, 1:99:1–, 1:157:3
one [70]– - 1:4:7–, 1:5:4–, 1:25:19–, 1:28:22–, 1:30:12 –, 1:34:20–, 1:38:7–, 1:38:18 –, 1:39:11–, 1:39:14–, 1:48:6 –, 1:49:14–, 1:51:9–, 1:51:16 –, 1:53:2–, 1:53:24–, 1:55:7–, 1:57:11–, 1:64:3–, 1:65:6–, 1:67:11–, 1:67:25–, 1:70:17 –, 1:75:2–, 1:76:23–, 1:82:7–, 1:88:15–, 1:88:23–, 1:89:12 –, 1:90:6–, 1:92:3–, 1:92:20–, 1:93:5–, 1:93:23–, 1:94:4–, 1:94:14–, 1:95:17–, 1:95:18 –, 1:95:20–, 1:98:16–, 1:98:20–, 1:99:13–, 1:102:5 –, 1:108:4–, 1:108:7–, 1:108:9–, 1:110:9–, 1:111:6 –, 1:111:10–, 1:112:4–, 1:112:11–, 1:114:8–, 1:118:23–, 1:120:7–, 1:128:6 –, 1:128:22–, 1:138:1–, 1:140:3–, 1:140:22–, 1:145:10–, 1:146:15–, 1:146:23–, 1:149:13–, 1:152:13–, 1:154:4–, 1:154:11–, 1:155:15–, 1:159:23–, 1:160:25
one-off [7]– - 1:67:11–, 1:92:3–, 1:92:20–, 1:94:4–, 1:95:17–, 1:99:13–, 1:112:4
one-sided [1]– - 1:138:1
ones [5]– - 1:81:24–, 1:81:25–, 1:82:1–, 1:110:4–, 1:140:16
ongoing [3]– - 1:46:21–, 1:46:24–, 1:102:8

operate [8]₋ - 1:12:24₋, 1:27:9₋, 1:31:11₋, 1:55:2₋, 1:57:8₋, 1:57:12₋, 1:69:8₋, 1:69:10

operates [1]₋ - 1:29:2

operating [13]₋ - 1:17:19₋, 1:18:11₋, 1:27:6₋, 1:28:14₋, 1:28:17₋, 1:29:9₋, 1:29:10₋, 1:29:23₋, 1:32:11₋, 1:32:16 ₋, 1:36:19₋, 1:68:14₋, 1:68:20

operation [1]₋ - 1:83:15

operative [3]₋ - 1:39:16₋, 1:69:4₋, 1:158:9

opine [1]₋ - 1:116:24

opinion [33]₋ - 1:32:2₋, 1:34:23₋, 1:36:3₋, 1:39:12₋, 1:44:6₋, 1:45:1₋, 1:47:3₋, 1:50:4₋, 1:64:6₋, 1:72:16₋, 1:92:6₋, 1:96:12₋, 1:96:17₋, 1:99:9₋, 1:99:24₋, 1:100:12 ₋, 1:100:13₋, 1:101:9₋, 1:105:9₋, 1:107:5₋, 1:107:9 ₋, 1:114:25₋, 1:115:1₋, 1:117:7₋, 1:117:9₋, 1:118:3 ₋, 1:118:12₋, 1:118:15₋, 1:118:20₋, 1:134:12₋, 1:134:24₋, 1:134:25

opinions [2]₋ - 1:52:4₋, 1:129:21

opportunity [2]₋ - 1:71:6₋, 1:87:19

opposed [3]₋ - 1:25:18₋, 1:47:11₋, 1:73:5

opposite [1]₋ - 1:15:20

opposition [6]₋ - 1:5:1₋, 1:21:16₋, 1:48:24₋, 1:105:1 ₋, 1:105:8₋, 1:139:3

option [3]₋ - 1:83:16₋, 1:83:18₋, 1:83:19

options [1]₋ - 1:52:21

oral [2]₋ - 1:6:16₋, 1:84:5

order [48]₋ - 1:3:1₋, 1:12:9 ₋, 1:12:11₋, 1:12:19₋, 1:12:20₋, 1:20:18₋, 1:25:5₋, 1:26:9₋, 1:28:7₋, 1:28:10₋, 1:40:25₋, 1:51:21₋, 1:51:23 ₋, 1:51:24₋, 1:52:8₋, 1:53:5₋, 1:57:20₋, 1:60:8₋, 1:66:20₋, 1:71:17₋, 1:71:18₋, 1:74:15 ₋, 1:74:17₋, 1:75:11₋, 1:75:14₋, 1:75:22₋, 1:75:23 ₋, 1:76:8₋, 1:76:9₋, 1:76:16₋, 1:76:24₋, 1:77:6₋, 1:77:18₋, 1:97:16₋, 1:97:21₋, 1:103:3 ₋, 1:113:13₋, 1:128:21₋,

1:134:15₋, 1:137:3₋, 1:137:25₋, 1:138:10₋, 1:139:24₋, 1:146:11₋, 1:146:24₋, 1:151:9₋, 1:151:13

ordered [1]₋ - 1:5:16

orders [5]₋ - 1:52:24₋, 1:53:1₋, 1:129:20₋, 1:146:16 ₋, 1:146:24

ordinary [5]₋ - 1:55:18₋, 1:64:24₋, 1:94:12₋, 1:94:21

organic [1]₋ - 1:89:16

organization [1]₋ - 1:5:7

organized [1]₋ - 1:70:17

origins [1]₋ - 1:126:6

otherwise [5]₋ - 1:32:13₋, 1:55:21₋, 1:80:3₋, 1:129:5₋, 1:135:3

ourselves [1]₋ - 1:28:8

outcome [1]₋ - 1:146:24

outset [2]₋ - 1:91:24₋, 1:112:1

outside [12]₋ - 1:9:11₋, 1:16:25₋, 1:17:7₋, 1:20:25₋, 1:22:16₋, 1:32:24₋, 1:38:23 ₋, 1:48:18₋, 1:77:3₋, 1:77:10 ₋, 1:111:24₋, 1:158:10

overall [1]₋ - 1:120:4

overcome [2]₋ - 1:22:18₋, 1:39:15

overflow [2]₋ - 1:4:3₋, 1:4:15

overfreight [1]₋ - 1:62:6

overridden [2]₋ - 1:151:18 ₋, 1:151:19

overrode [1]₋ - 1:59:10

overrule [4]₋ - 1:79:14₋, 1:80:8₋, 1:137:3₋, 1:155:7

overruled [1]₋ - 1:112:14

overruling [1]₋ - 1:79:2₋, 1:136:22

overseeing [3]₋ - 1:144:4 ₋, 1:144:18₋, 1:145:9

oversight [22]₋ - 1:19:2₋, 1:25:18₋, 1:26:20₋, 1:29:11 ₋, 1:29:23₋, 1:32:17₋, 1:46:8 ₋, 1:74:7₋, 1:78:22₋, 1:86:23 ₋, 1:136:15₋, 1:145:4₋, 1:148:11₋, 1:148:21₋, 1:149:5₋, 1:149:7₋, 1:150:10 ₋, 1:150:15₋, 1:150:20₋, 1:150:21₋, 1:150:23₋, 1:152:24

overview [1]₋ - 1:24:15

Owen [1]₋ - 1:111:11

own [1]₋ - 1:53:17

P

p.m [1]₋ - 1:161:10

page [18]₋ - 1:53:23₋, 1:77:23₋, 1:92:6₋, 1:92:11₋, 1:94:9₋, 1:94:15₋, 1:94:16₋, 1:96:18₋, 1:96:19₋, 1:99:25 ₋, 1:100:1₋, 1:101:22₋, 1:105:1₋, 1:105:7₋, 1:107:3 ₋, 1:144:22

pages [2]₋ - 1:160:25₋, 1:161:3

panel [2]₋ - 1:14:16₋, 1:136:23

paper [1]₋ - 1:93:25

papers [1]₋ - 1:26:16

paragraph [6]₋ - 1:25:13 ₋, 1:33:14₋, 1:33:25₋, 1:35:2 ₋, 1:36:1₋, 1:50:3

parallel [2]₋ - 1:67:9₋, 1:91:22

pardon [1]₋ - 1:98:2

parlance [1]₋ - 1:68:16

parole [1]₋ - 1:138:8

part [32]₋ - 1:6:24₋, 1:7:20 ₋, 1:13:2₋, 1:14:13₋, 1:17:3₋, 1:22:1₋, 1:22:5₋, 1:23:24₋, 1:26:22₋, 1:28:18₋, 1:29:1₋, 1:35:16₋, 1:36:3₋, 1:36:4₋, 1:36:5₋, 1:39:12₋, 1:41:24₋, 1:42:7₋, 1:48:5₋, 1:58:23₋, 1:77:16₋, 1:93:9₋, 1:117:16 ₋, 1:121:7₋, 1:129:15₋, 1:129:20₋, 1:130:4₋, 1:140:21₋, 1:142:3₋, 1:150:18₋, 1:151:11

Part [2]₋ - 1:120:10₋, 1:130:6

partes [1]₋ - 1:73:18

partially [1]₋ - 1:56:14

participate [1]₋ - 1:71:6

particular [8]₋ - 1:44:16₋, 1:46:5₋, 1:60:3₋, 1:63:18₋, 1:66:16₋, 1:92:17₋, 1:151:20 ₋, 1:160:11

particularly [6]₋ - 1:13:12 ₋, 1:55:19₋, 1:69:25₋, 1:84:9 ₋, 1:85:16₋, 1:88:6

parties [3]₋ - 1:4:19₋, 1:6:10₋, 1:6:11₋, 1:28:4₋, 1:41:23₋, 1:92:7₋, 1:118:16 ₋, 1:161:4

parties' [1]₋ - 1:149:22

parts [5]₋ - 1:10:20₋, 1:10:21₋, 1:19:22₋, 1:25:8₋, 1:44:25

pass [2]₋ - 1:66:6₋, 1:154:21

pass-through [1]₋ - 1:66:6

passage [3]₋ - 1:43:11₋, 1:116:22₋, 1:116:24

passed [5]₋ - 1:58:16₋, 1:58:20₋, 1:61:24₋, 1:62:22 ₋, 1:111:8

passing [1]₋ - 1:85:11

past [8]₋ - 1:19:18₋, 1:19:23₋, 1:21:6₋, 1:33:15₋, 1:44:6₋, 1:44:7₋, 1:69:21₋, 1:140:19

patchwork [1]₋ - 1:125:22

patent [1]₋ - 1:50:6₋, 1:73:16

Patent [1]₋ - 1:50:7

path [1]₋ - 1:104:1

patients [1]₋ - 1:155:19

Patrick [2]₋ - 1:22:16₋, 1:76:23

pattern [1]₋ - 1:125:7

pause [3]₋ - 1:70:5₋, 1:105:4₋, 1:139:19

pay [1]₋ - 1:127:15

paying [1]₋ - 1:86:17

PEARCE [80]₋ - 1:40:11₋, 1:40:14₋, 1:41:15₋, 1:41:22 ₋, 1:43:3₋, 1:44:1₋, 1:44:21₋, 1:46:3₋, 1:46:15₋, 1:46:17₋, 1:47:9₋, 1:47:18₋, 1:48:22₋, 1:49:13₋, 1:50:12₋, 1:50:19 ₋, 1:50:25₋, 1:51:7₋, 1:51:15 ₋, 1:52:9₋, 1:52:22₋, 1:53:2₋, 1:53:10₋, 1:54:14₋, 1:54:22 ₋, 1:55:4₋, 1:56:1₋, 1:57:4₋, 1:57:22₋, 1:58:2₋, 1:58:12₋, 1:58:18₋, 1:58:23₋, 1:59:17 ₋, 1:59:22₋, 1:60:10₋, 1:61:18₋, 1:62:6₋, 1:62:18₋, 1:63:13₋, 1:64:21₋, 1:65:13 ₋, 1:65:15₋, 1:65:18₋, 1:66:21₋, 1:67:13₋, 1:68:5₋, 1:68:9₋, 1:69:10₋, 1:69:21₋, 1:70:5₋, 1:70:15₋, 1:147:9₋, 1:147:20₋, 1:148:5₋, 1:148:12₋, 1:148:22₋, 1:149:9₋, 1:149:18₋, 1:150:6 ₋, 1:150:12₋, 1:150:22₋, 1:151:14₋, 1:152:2₋, 1:152:17₋, 1:153:3₋,

1:153:9, 1:153:21_, 1:153:25 _, 1:156:1_, 1:157:8_, 1:157:14_, 1:157:16_, 1:158:1_, 1:158:5_, 1:158:15 _, 1:158:24_, 1:159:9_, 1:159:23_, 1:159:25

Pearce [6]_ - 1:3:10_, 1:40:11_, 1:128:1_, 1:139:1 _, 1:143:12_, 1:147:8

pencils [1]_ - 1:98:25

penultimate [1]_ - 1:50:3

people [21]_ - 1:11:16_, 1:17:19_, 1:20:24_, 1:26:6_, 1:33:7_, 1:36:17_, 1:86:17_, 1:102:1_, 1:102:11_, 1:122:15_, 1:122:20_, 1:124:3_, 1:125:12_, 1:125:24_, 1:125:25_, 1:126:19_, 1:127:19_, 1:138:19_, 1:140:5_, 1:143:6

per [1]_ - 1:132:14

perfect [1]_ - 1:81:15

perhaps [6]_ - 1:16:21_, 1:86:10_, 1:102:4_, 1:107:11 _, 1:108:14_, 1:136:13

Perhaps [1]_ - 1:96:2

period [1]_ - 1:65:22

permanence [1]_ - 1:96:11

permanent [6]_ - 1:95:22 _, 1:95:24_, 1:96:12_, 1:96:13_, 1:100:4_, 1:100:18

permissible [1]_ - 1:159:19

permit [2]_ - 1:139:10_, 1:160:24

permits [1]_ - 1:48:20

permitted [2]_ - 1:4:2_, 1:146:9

pernicious [3]_ - 1:40:17 _, 1:68:7_, 1:131:25

Persico [1]_ - 1:23:12

person [16]_ - 1:18:3_, 1:49:21_, 1:95:19_, 1:95:20 _, 1:96:22_, 1:97:1_, 1:97:10 _, 1:99:8_, 1:100:24_, 1:105:12_, 1:113:8_, 1:122:19_, 1:127:13_, 1:132:12_, 1:137:24_, 1:157:9

personal [1]_ - 1:99:19

perspective [4]_ - 1:7:12 _, 1:11:23_, 1:35:9_, 1:37:20

persuaded [1]_ - 1:45:8

persuasive [9]_ - 1:36:10

1:38:25_, 1:94:24_, 1:94:25_, 1:95:2_, 1:119:7_, 1:140:8_, 1:160:19

pertinent [1]_ - 1:161:2

petitioner [1]_ - 1:64:1

phonetic) [1]_ - 1:110:25

phrase [2]_ - 1:53:20_, 1:92:2

phrased [1]_ - 1:81:18

phrasing [1]_ - 1:77:6

physical [1]_ - 1:18:11

pick [1]_ - 1:76:16

picking [1]_ - 1:126:9

piece [8]_ - 1:37:3_, 1:43:4 _, 1:49:3_, 1:50:18_, 1:54:23 _, 1:90:1_, 1:111:5_, 1:126:5

pieces [1]_ - 1:153:5

place [19]_ - 1:16:4_, 1:16:8_, 1:18:14_, 1:19:5_, 1:20:13_, 1:24:21_, 1:33:11 _, 1:51:16_, 1:63:21_, 1:67:2 _, 1:85:13_, 1:113:14_, 1:120:4_, 1:121:15_, 1:124:15_, 1:130:12_, 1:134:21_, 1:140:22_, 1:151:23

places [5]_ - 1:20:3_, 1:131:5_, 1:141:18_, 1:142:7 _, 1:142:12

plain [3]_ - 1:14:24_, 1:89:25_, 1:114:9

plan [3]_ - 1:5:23_, 1:6:9_, 1:6:15

plausible [2]_ - 1:38:13_, 1:156:14

plausibly [1]_ - 1:113:23

play [2]_ - 1:115:8_, 1:141:2

pleasant [1]_ - 1:161:7

plus [1]_ - 1:98:7

podium [1]_ - 1:49:1_, 1:112:23_, 1:148:23_, 1:149:20

point [61]_ - 1:12:7_, 1:12:8 _, 1:16:11_, 1:20:21_, 1:21:9 _, 1:22:25_, 1:26:1_, 1:26:23 _, 1:30:13_, 1:30:18_, 1:31:8 _, 1:34:12_, 1:34:23_, 1:35:3 _, 1:38:5_, 1:38:6_, 1:39:14_, 1:41:17_, 1:43:2_, 1:46:23_, 1:47:13_, 1:48:12_, 1:48:23 _, 1:50:5_, 1:51:21_, 1:54:6_, 1:55:10_, 1:56:14_, 1:57:5_, 1:61:8_, 1:61:9_, 1:64:19_, 1:66:15_, 1:72:22_, 1:77:19

_, 1:79:10_, 1:79:12_, 1:79:19_, 1:83:22_, 1:84:6_, 1:85:11_, 1:88:14_, 1:95:10 _, 1:98:6_, 1:102:15_, 1:103:25_, 1:109:18_, 1:112:11_, 1:142:22_, 1:142:23_, 1:143:14_, 1:151:4_, 1:153:9_, 1:154:11 _, 1:156:21_, 1:158:14_, 1:158:24_, 1:159:23_, 1:159:25_, 1:160:14_, 1:161:5

pointed [4]_ - 1:16:10_, 1:80:2_, 1:83:23_, 1:86:15

points [15]_ - 1:7:11_, 1:21:6_, 1:24:20_, 1:39:10_, 1:47:19_, 1:90:24_, 1:95:8_, 1:107:21_, 1:113:16_, 1:113:22_, 1:139:12_, 1:147:11_, 1:150:25_, 1:153:14_, 1:156:3

policies [7]_ - 1:48:19_, 1:144:15_, 1:147:16_, 1:148:4_, 1:148:7_, 1:149:1 _, 1:151:1

policy [4]_ - 1:75:20_, 1:79:13_, 1:145:2_, 1:147:22

political [6]_ - 1:33:18_, 1:115:3_, 1:116:16_, 1:122:3 _, 1:123:4_, 1:146:25

politically [1]_ - 1:85:18

populate [1]_ - 1:31:1

portion [3]_ - 1:79:13_, 1:115:1_, 1:160:7

position [44]_ - 1:7:8_, 1:12:22_, 1:17:5_, 1:19:16_, 1:19:17_, 1:20:12_, 1:22:19 _, 1:29:22_, 1:29:23_, 1:33:7 _, 1:67:25_, 1:69:16_, 1:70:12_, 1:88:23_, 1:91:1_, 1:95:16_, 1:95:23_, 1:95:25 _, 1:96:9_, 1:96:20_, 1:97:6_, 1:98:3_, 1:99:6_, 1:99:8_, 1:99:12_, 1:100:8_, 1:100:11 _, 1:101:7_, 1:103:17_, 1:103:18_, 1:103:19_, 1:111:25_, 1:123:12_, 1:127:13_, 1:129:23_, 1:141:12_, 1:141:24_, 1:144:1_, 1:145:1_, 1:145:7 _, 1:148:3_, 1:149:19

position's [1]_ - 1:97:25

positions [5]_ - 1:14:22_, 1:18:1_, 1:18:7_, 1:91:15_, 1:127:19

positive [1]_ - 1:37:1

possibility [1]_ - 1:146:10

possible [1]_ - 1:136:2

possibly [2]_ - 1:127:5_, 1:142:3

post [3]_ - 1:60:20_, 1:106:8_, 1:106:11

post-January [1]_ - 1:106:11

post-office [1]_ - 1:106:8

potential [4]_ - 1:67:5_, 1:86:20_, 1:125:22_, 1:153:2

potentially [8]_ - 1:7:16_, 1:18:20_, 1:40:17_, 1:84:10 _, 1:118:18_, 1:124:18_, 1:126:6_, 1:159:10

power [34]_ - 1:42:16_, 1:63:17_, 1:64:9_, 1:64:15_, 1:68:20_, 1:69:23_, 1:85:6_, 1:91:4_, 1:93:8_, 1:93:15_, 1:93:18_, 1:96:1_, 1:96:3_, 1:98:25_, 1:100:19_, 1:102:20_, 1:103:2_, 1:103:21_, 1:104:4_, 1:111:25_, 1:112:2_, 1:112:9 _, 1:120:22_, 1:121:3_, 1:121:22_, 1:121:24_, 1:123:2_, 1:128:18_, 1:134:2 _, 1:135:1_, 1:136:6_, 1:138:16_, 1:152:6

powerful [2]_ - 1:114:8_, 1:133:17

powers [10]_ - 1:68:18_, 1:88:9_, 1:90:11_, 1:91:18_, 1:91:20_, 1:91:24_, 1:97:10 _, 1:103:5_, 1:103:7_, 1:109:14

practical [4]_ - 1:24:20_, 1:61:20_, 1:139:11_, 1:144:7

practice [15]_ - 1:22:14_, 1:22:18_, 1:22:23_, 1:23:1_, 1:23:2_, 1:23:4_, 1:39:14_, 1:39:15_, 1:59:14_, 1:61:14 _, 1:61:25_, 1:62:5_, 1:66:12 _, 1:93:20_, 1:124:19

practices [5]_ - 1:48:16_, 1:140:19_, 1:149:1_, 1:151:1 _, 1:151:7

pre [1]_ - 1:23:4

pre-Buckley [1]_ - 1:23:4

precede [1]_ - 1:13:5

precedence [1]_ - 1:91:3

precedent [14]_ - 1:40:16 _, 1:41:1_, 1:42:2_, 1:71:14_, 1:71:21_, 1:76:22_, 1:94:24 _, 1:97:12_, 1:103:24_, 1:110:14_, 1:112:12_, 1:112:15_, 1:113:25_,

1:114:12

precedents [2]– - 1:143:22–, 1:144:11

precise [3]– - 1:61:13–, 1:63:16–, 1:109:19

precisely [2]– - 1:42:6–, 88:13

predecessor [4]– - 1:23:21–, 1:140:24–, 1:156:10–, 1:159:8

predicate [1]– - 1:86:5

preexisted [1]– - 1:56:11

preexisting [1]– - 1:154:23

preferred [1]– - 1:142:11

premise [1]– - 1:150:22

prepare [1]– - 1:70:21

prepared [2]– - 1:70:25–, 1:148:23

prerequisite [3]– - 1:98:8–, 1:101:11–, 1:101:12

prescribes [1]– - 1:122:10

present [3]– - 1:56:17–, 1:137:25–, 1:138:23

presentation [1]– - 1:138:2

presented [5]– - 1:36:6–, 1:41:18–, 1:41:19–, 1:143:1–, 1:155:8

presenting [4]– - 1:5:20–, 1:6:12–, 1:6:16–, 1:7:14

preserve [1]– - 1:112:13

President [32]– - 1:3:13–, 1:6:14–, 1:22:12–, 1:33:8–, 1:33:21–, 1:34:24–, 1:42:8–, 1:67:23–, 1:105:18–, 1:109:2–, 1:109:25–, 1:110:2–, 1:110:3–, 1:110:7–, 1:121:8–, 1:121:10–, 1:124:5–, 1:125:9–, 1:129:4–, 1:132:7–, 1:137:12–, 1:156:6–, 1:156:13–, 1:156:18–, 1:158:12–, 1:158:19–, 1:159:4–, 1:159:10–, 1:159:17

president [23]– - 1:41:11–, 1:42:11–, 1:42:24–, 1:60:16–, 1:60:18–, 1:63:19–, 1:64:9–, 1:68:11–, 1:83:18–, 1:93:7–, 1:93:10–, 1:105:18–, 1:107:13–, 1:108:11–, 1:113:12–, 1:116:4–, 1:116:7–, 1:116:13–, 1:116:15–, 1:122:4–, 1:156:15–, 1:158:25

president's [1]– - 1:40:14

presidential [5]– - 1:41:12–, 1:118:15–, 1:157:1–, 1:157:5–, 1:158:22

presidentially [1]– - 1:49:17

presidents [6]– - 1:110:5–, 1:111:3–, 1:111:16–, 1:111:23–, 1:111:24–, 1:158:20

presumption [1]– - 1:140:11

presuppose [1]– - 1:85:6

presupposed [6]– - 1:34:5–, 1:34:21–, 1:37:7–, 1:37:16–, 1:38:19

presupposing [1]– - 1:44:3

presupposition [1]– - 1:43:25–, 1:44:4

pretrial [1]– - 1:146:3

pretty [3]– - 1:73:4–, 1:98:21–, 1:160:1

prevails [1]– - 1:109:22

prevent [3]– - 1:18:21–, 1:27:14–, 1:103:17

previous [2]– - 1:7:3–, 1:22:2

previously [2]– - 1:47:7–, 1:56:21

primary [3]– - 1:68:15–, 1:90:24–, 1:154:8

principal [43]– - 1:7:5–, 1:7:14–, 1:15:19–, 1:25:7–, 1:25:17–, 1:25:20–, 1:25:25–, 1:27:7–, 1:28:18–, 1:29:11–, 1:30:8–, 1:31:16–, 1:40:20–, 1:46:10–, 1:47:10–, 1:49:5–, 1:49:22–, 1:63:5–, 1:73:5–, 1:74:7–, 1:83:2–, 1:83:6–, 1:84:4–, 1:84:7–, 1:84:11–, 1:84:15–, 1:84:20–, 1:91:21–, 1:103:4–, 1:103:11–, 1:103:14–, 1:132:2–, 1:132:11–, 1:132:17–, 1:143:14–, 1:149:25–, 1:151:21–, 1:152:19–, 1:153:12–, 1:156:16–, 1:156:21–, 1:157:9–, 1:158:19

principally [1]– - 1:56:3

principle [7]– - 1:41:10–, 1:41:11–, 1:41:20–, 1:76:14–, 1:78:4–, 1:82:25–, 1:96:14

Prisons [8]– - 1:9:20–,

1:10:2–, 1:13:8–, 1:69:19–, 1:69:24–, 1:131:17–, 1:131:19–, 1:132:22

Prisons' [1]– - 1:141:14

private [3]– - 1:59:7–, 1:106:4–, 1:111:25

privilege [1]– - 1:41:12–, 1:42:17

problem [10]– - 1:23:21–, 1:53:17–, 1:55:5–, 1:64:8–, 1:67:24–, 1:86:21–, 1:110:8–, 1:120:7–, 1:132:4–, 1:143:1

problematic [2]– - 1:144:10–, 1:159:6

problems [3]– - 1:133:22–, 1:133:23–, 1:134:1

procedural [4]– - 1:29:12–, 1:75:3–, 1:75:4–, 1:144:13

procedure [1]– - 1:122:16

Procedure [1]– - 1:11:14

procedures [4]– - 1:17:20–, 1:144:15–, 1:144:17–, 1:145:24

proceed [2]– - 1:4:17–, 1:55:25

proceeding [3]– - 1:7:15–, 1:35:3–, 1:150:5

proceedings [6]– - 1:4:9–, 1:8:11–, 1:18:13–, 1:23:20–, 1:33:13–, 1:161:10

process [3]– - 1:99:7–, 1:130:4–, 1:135:3

product [2]– - 1:44:5–, 1:59:2

Professor [3]– - 1:5:9–, 1:42:1–, 1:90:21

professor [1]– - 1:110:20

Professors [2]– - 1:7:10–, 1:113:6

professors [1]– - 1:5:6

profile [1]– - 1:86:15

prominence [1]– - 1:60:3

promise [1]– - 1:82:11

promulgated [3]– - 1:38:1–, 1:66:19–, 1:67:17

promulgating [1]– - 1:75:5

promulgation [1]– - 1:48:5

pronounced [1]– - 1:44:15

proof [1]– - 1:145:8

proper [1]– - 1:125:13

properly [5]– - 1:15:1–, 1:21:9–, 1:23:25–, 1:125:20–, 1:127:9

proposition [2]– - 1:34:20–, 1:71:20

propositions [1]– - 1:44:18

prosecute [13]– - 1:11:5–, 1:11:6–, 1:11:10–, 1:11:15–, 1:11:19–, 1:55:11–, 1:55:17–, 1:60:19–, 1:61:19–, 1:81:6–, 1:87:24–, 1:97:15–, 1:110:8

prosecuted [1]– - 1:97:17

prosecutes [1]– - 1:105:12

prosecuting [3]– - 1:105:23–, 1:106:1–, 1:106:4

prosecution [18]– - 1:11:11–, 1:23:10–, 1:26:11–, 1:35:5–, 1:60:9–, 1:105:15–, 1:106:7–, 1:106:14–, 1:106:16–, 1:106:17–, 1:106:18–, 1:106:22–, 1:107:12–, 1:107:14–, 1:107:16–, 1:127:3–, 1:138:23

prosecutions [5]– - 1:11:21–, 1:24:24–, 1:60:18–, 1:130:9–, 1:134:4

prosecutor [30]– - 1:21:20–, 1:23:11–, 1:34:6–, 1:35:11–, 1:42:11–, 1:42:15–, 1:42:16–, 1:42:24–, 1:43:5–, 1:52:16–, 1:60:17–, 1:60:19–, 1:62:1–, 1:67:19–, 1:85:21–, 1:92:18–, 1:92:23–, 1:94:11–, 1:95:20–, 1:110:13–, 1:111:14–, 1:115:17–, 1:115:21–, 1:116:4–, 1:116:12–, 1:116:14–, 1:137:23–, 1:138:6–, 1:145:20–, 1:156:23

prosecutor's [2]– - 1:86:12–, 1:93:2

prosecutorial [6]– - 1:26:12–, 1:48:14–, 1:78:24–, 1:111:25–, 1:114:4–, 1:120:22

prosecutors [15]– - 1:21:18–, 1:22:10–, 1:24:16–, 1:26:19–, 1:33:6–, 1:60:22–, 1:61:3–, 1:61:11–, 1:61:23–, 1:65:8–, 1:110:16–, 1:111:9–, 1:126:7–, 1:138:14–, 1:138:16

proves [1]– - 1:157:2
provide [7]– - 1:9:9–,
1:48:4–, 1:48:13–, 1:53:24–,
1:80:21–, 1:82:22–, 1:98:10
provided [4]– - 1:64:2–,
1:69:22–, 1:129:13–, 1:144:9
provides [4]– - 1:19:15–,
1:19:17–, 1:47:6–, 1:104:2
providing [3]– - 1:21:11–,
1:125:1–, 1:157:19
provision [45]– - 1:7:23–,
1:8:15–, 1:8:18–, 1:8:21–,
1:8:22–, 1:9:7–, 1:9:19–,
1:10:7–, 1:13:7–, 1:13:9–,
1:14:3–, 1:15:23–, 1:21:6–,
1:28:23–, 1:28:25–, 1:46:17
–, 1:47:24–, 1:54:5–, 1:56:3–,
1:56:22–, 1:57:14–, 1:57:16
–, 1:62:16–, 1:76:7–,
1:114:21–, 1:118:5–, 1:122:7
–, 1:127:12–, 1:128:11–,
1:128:20–, 1:129:13–,
1:133:8–, 1:141:4–, 1:142:14
–, 1:143:7–, 1:143:8–,
1:144:16–, 1:144:25–,
1:145:15–, 1:145:18–,
1:154:1–, 1:154:3–, 1:154:6
–, 1:154:7
provisions [34]– - 1:7:25–,
1:10:24–, 1:13:5–, 1:13:21–,
1:16:2–, 1:20:1–, 1:20:2–,
1:30:21–, 1:31:9–, 1:46:18–,
1:48:3–, 1:80:1–, 1:82:20–,
1:89:3–, 1:99:4–, 1:99:5–,
1:114:3–, 1:114:9–, 1:114:16
–, 1:115:8–, 1:117:1–,
1:117:4–, 1:117:8–, 1:117:12
–, 1:118:21–, 1:120:3–,
1:122:1–, 1:129:6–, 1:133:15
–, 1:142:2–, 1:143:5–,
1:145:13–, 1:145:14
proximity [1]– - 1:16:3
Pryor [2]– - 1:118:11–,
1:160:2
public [9]– - 1:35:6–,
1:53:25–, 1:58:17–, 1:138:5
–, 1:140:21–, 1:140:23–,
1:141:2–, 1:141:3–, 1:144:3
publicly [1]– - 1:148:8
pulls [1]– - 1:126:6
purport [1]– - 1:73:1
purported [1]– - 1:133:17
purportedly [1]– - 1:73:10
purporting [2]– - 1:91:4–,
1:91:18
purports [2]– - 1:114:5–,

1:137:14
purpose [5]– - 1:56:9–,
1:65:7–, 1:70:1–, 1:72:18–,
1:108:23
purposes [13]– - 1:20:4–,
1:22:12–, 1:22:13–, 1:54:22
–, 1:56:17–, 1:70:11–,
1:71:10–, 1:80:5–, 1:90:8–,
1:116:22–, 1:122:5–,
1:146:25–, 1:159:1
pursuant [10]– - 1:12:13–,
1:15:4–, 1:29:15–, 1:31:22–,
1:78:22–, 1:92:15–, 1:100:20
–, 1:117:1–, 1:117:3–,
1:117:8
pushing [1]– - 1:11:12
put [14]– - 1:7:24–, 1:12:15
–, 1:33:7–, 1:37:12–, 1:91:24
–, 1:104:1–, 1:111:24–,
1:113:14–, 1:124:14–,
1:138:7–, 1:141:2–, 1:145:7
–, 1:147:20–, 1:158:6
putative [2]– - 1:134:2–,
1:138:11
puts [2]– - 1:47:23–,
1:118:14

Q

qualifies [1]– - 1:7:15
qualify [3]– - 1:7:23–,
1:31:16–, 1:100:9
questioning [1]– - 1:43:1
questions [16]– - 1:44:20
–, 1:55:23–, 1:63:1–, 1:70:14
–, 1:71:12–, 1:81:3–, 1:87:3–,
1:91:7–, 1:107:18–, 1:118:24
–, 1:133:1–, 1:137:16–,
1:147:12–, 1:152:18–,
1:155:17–, 1:160:21
quite [13]– - 1:15:19–,
1:43:19–, 1:75:21–, 1:91:6–,
1:92:8–, 1:92:21–, 1:95:19–,
1:104:13–, 1:109:15–,
1:111:2–, 1:111:3–, 1:129:15
–, 1:150:13
quorum [1]– - 1:72:19
quote [12]– - 1:25:15–,
1:33:22–, 1:34:25–, 1:44:16
–, 1:46:15–, 1:96:2–,
1:116:25–, 1:133:21–,
1:135:1–, 1:145:15–,
1:145:18–, 1:145:19
quoted [1]– - 1:118:12
quoting [3]– - 1:26:12–,
1:40:5–, 1:120:3

R

raise [3]– - 1:44:20–,
1:114:11–, 1:133:22
raised [5]– - 1:36:8–,
1:39:2–, 1:39:3–, 1:131:24–,
1:145:11
raises [3]– - 1:7:11–,
1:52:17–, 1:133:25
raising [1]– - 1:38:19
ranging [1]– - 1:155:6
ranking [13]– - 1:105:13–,
1:105:17–, 1:105:20–,
1:105:23–, 1:106:2–,
1:106:15–, 1:106:18–,
1:106:20–, 1:107:2–, 1:107:4
–, 1:107:8–, 1:135:9
rather [13]– - 1:51:5–,
1:60:9–, 1:61:16–, 1:89:21–,
1:100:3–, 1:113:20–,
1:122:19–, 1:122:20–,
1:123:20–, 1:134:7–,
1:134:18–, 1:146:13
ratified [1]– - 1:61:9
ratifying [4]– - 1:61:14–,
1:61:15–, 1:61:25
rationale [1]– - 1:35:22
re [2]– - 1:46:12–, 1:48:25
Re [5]– - 1:14:12–, 1:14:15
–, 1:14:18–, 1:43:17–, 1:84:5
reach [5]– - 1:17:4–,
1:34:14–, 1:101:25–,
1:111:24–, 1:137:1
reached [2]– - 1:31:19–,
1:41:20
reaching [2]– - 1:95:6–,
1:137:5
read [20]– - 1:9:22–, 1:10:9
–, 1:10:19–, 1:13:19–,
1:17:17–, 1:19:25–, 1:46:21
–, 1:64:6–, 1:81:11–, 1:97:15
–, 1:99:24–, 1:101:9–,
1:109:7–, 1:118:3–, 1:120:2
–, 1:122:7–, 1:126:9–,
1:141:9–, 1:149:14–,
1:159:13
reading [9]– - 1:51:8–,
1:54:2–, 1:64:20–, 1:65:2–,
1:97:20–, 1:118:2–, 1:119:20
–, 1:133:18–, 1:160:15
readings [3]– - 1:26:3–,
1:114:8–, 1:114:10
real [4]– - 1:24:20–,
1:121:14–, 1:140:13–,
1:140:15

realistic [2]– - 1:18:5–,
1:18:9
realities [1]– - 1:24:20
reality [4]– - 1:28:9–,
1:31:14–, 1:101:17–,
1:136:20
realize [2]– - 1:86:20–,
1:103:16
realizes [1]– - 1:97:7
really [42]– - 1:7:24–,
1:10:7–, 1:12:8–, 1:15:18–,
1:17:23–, 1:18:5–, 1:19:13–,
1:22:24–, 1:25:17–, 1:25:24
–, 1:26:19–, 1:29:3–, 1:34:23
–, 1:35:16–, 1:35:17–, 1:40:1
–, 1:49:5–, 1:49:10–, 1:52:20
–, 1:62:4–, 1:63:11–, 1:72:19
–, 1:80:23–, 1:99:16–,
1:103:23–, 1:109:16–,
1:112:1–, 1:116:18–,
1:116:19–, 1:117:13–,
1:126:13–, 1:127:6–, 1:132:3
–, 1:134:17–, 1:136:6–,
1:139:9–, 1:139:14–,
1:140:14–, 1:152:15–,
1:158:14
reason [26]– - 1:8:19–,
1:8:20–, 1:22:1–, 1:38:17–,
1:42:9–, 1:53:6–, 1:72:5–,
1:76:6–, 1:76:21–, 1:77:5–,
1:77:17–, 1:83:14–, 1:84:10
–, 1:85:1–, 1:86:6–, 1:89:23–,
1:95:14–, 1:103:14–, 1:110:6
–, 1:114:8–, 1:129:15–,
1:133:18–, 1:154:18–,
1:154:21–, 1:154:25
reasonable [2]– - 1:74:3–,
1:78:10
reasoning [2]– - 1:34:14–,
1:139:9
reasons [10]– - 1:11:22–,
1:38:22–, 1:45:17–, 1:53:14
–, 1:64:3–, 1:81:2–, 1:114:15
–, 1:152:7–, 1:154:15–,
1:160:17
Rebellion [1]– - 1:110:12
rebuttal [2]– - 1:6:10–,
1:139:1
receive [1]– - 1:17:25
received [2]– - 1:5:16–,
1:33:18
receiving [1]– - 1:4:16
recent [2]– - 1:52:20–,
1:86:11
recently [5]– - 1:73:7–,
1:118:12–, 1:125:21–,

1:126:12.., 1:133:20

recess [5].. - 1:4:8.., 1:4:12 .., 1:4:13.., 1:70:23.., 1:161:9

recognition [1].. - 1:12:11

recognize [3].. - 1:91:14.., 1:103:20.., 1:156:5

recognized [6].. - 1:34:21 .., 1:67:22.., 1:67:24.., 1:99:9 .., 1:101:23.., 1:112:8

recommendations [2].. - 1:138:6.., 1:138:8

reconcile [2].. - 1:90:25.., 1:143:4

record [8].. - 1:6:3.., 1:8:8 .., 1:32:8.., 1:33:12.., 1:41:17 .., 1:91:11.., 1:144:10.., 1:151:19

refer [6].. - 1:10:24.., 1:20:8 .., 1:54:4.., 1:105:8.., 1:106:24.., 1:131:6

reference [16].. - 1:9:4.., 1:9:5.., 1:11:4.., 1:15:25.., 1:22:9.., 1:36:11.., 1:43:24.., 1:46:5.., 1:46:13.., 1:57:25.., 1:58:2.., 1:60:6.., 1:69:20.., 1:109:25.., 1:127:21.., 1:150:3

referenced [8].. - 1:15:9.., 1:16:14.., 1:22:22.., 1:30:24 .., 1:36:11.., 1:39:20.., 1:146:10.., 1:161:2

references [3].. - 1:11:5.., 1:12:12.., 1:16:10

referencing [2].. - 1:24:8 .., 1:46:23

referred [4].. - 1:33:1.., 1:46:18.., 1:85:16.., 1:92:20

referring [3].. - 1:46:25.., 1:82:15.., 1:131:8

refers [11].. - 1:8:21.., 1:11:15.., 1:19:19.., 1:23:10 .., 1:52:12.., 1:62:21.., 1:77:23.., 1:100:5.., 1:104:23 .., 1:105:12.., 1:105:16

reflections [1].. - 1:66:23

reflects [1].. - 1:24:19

reg [1].. - 1:119:14

regard [2].. - 1:91:25.., 1:95:5

regardless [2].. - 1:115:20 .., 1:117:23

regs [5].. - 1:79:10.., 1:93:3 .., 1:94:5.., 1:94:7.., 1:129:19

regular [3].. - 1:27:24.., 1:30:1

regularity [1].. - 1:140:11

regulates [4].. - 1:120:10 .., 1:120:17.., 1:120:19.., 1:120:20

regulation [38].. - 1:25:2.., 1:25:8.., 1:34:5.., 1:36:23.., 1:37:25.., 1:38:3.., 1:38:6.., 1:42:15.., 1:42:21.., 1:43:2.., 1:43:6.., 1:47:22.., 1:48:1.., 1:48:6.., 1:48:23.., 1:49:2.., 1:49:7.., 1:52:14.., 1:52:15.., 1:66:19.., 1:67:2.., 1:67:3.., 1:67:4.., 1:67:17.., 1:74:5.., 1:74:13.., 1:75:18.., 1:78:15 .., 1:79:20.., 1:135:23.., 1:148:7.., 1:151:8.., 1:151:12 .., 1:151:23.., 1:152:5.., 1:152:14.., 1:153:2.., 1:153:4

Regulation [1].. - 1:147:15

regulations [72].. - 1:7:22 .., 1:18:6.., 1:25:1.., 1:25:11.., 1:27:11.., 1:27:16.., 1:28:7.., 1:36:23.., 1:42:25.., 1:47:6.., 1:47:14.., 1:47:15.., 1:48:3.., 1:48:20.., 1:49:11.., 1:50:13 .., 1:50:20.., 1:51:8.., 1:52:25 .., 1:66:8.., 1:66:16.., 1:67:11 .., 1:70:8.., 1:74:15.., 1:74:23 .., 1:75:3.., 1:75:16.., 1:75:22 .., 1:75:23.., 1:76:17.., 1:77:1 .., 1:77:9.., 1:77:20.., 1:78:22 .., 1:79:6.., 1:79:23.., 1:79:25 .., 1:80:8.., 1:92:2.., 1:92:3.., 1:92:5.., 1:92:21.., 1:92:22.., 1:93:4.., 1:93:20.., 1:94:4.., 1:94:22.., 1:95:1.., 1:99:5.., 1:102:20.., 1:102:21.., 1:105:12.., 1:112:5.., 1:115:23.., 1:116:6.., 1:119:11.., 1:133:10.., 1:134:14.., 1:135:5.., 1:136:8 .., 1:148:9.., 1:148:14.., 1:148:17.., 1:149:4.., 1:149:12.., 1:150:16.., 1:152:3.., 1:152:16.., 1:152:22

Regulations [6].. - 1:7:23 .., 1:24:23.., 1:129:12.., 1:134:21.., 1:146:12

regulatory [6].. - 1:40:21.., 1:66:2.., 1:66:7.., 1:76:7.., 1:150:2.., 1:158:1

Rehnquist [6].. - 1:96:19.., 1:97:4.., 1:97:13.., 1:98:21.., 1:101:22.., 1:112:8

reiterate [1].. - 1:39:15

reiterating [1].. - 1:137:18

reject [2].. - 1:114:8.., 1:133:18

rejected [2].. - 1:64:3.., 1:115:5

rejection [1].. - 1:115:9

relate [1].. - 1:29:19

related [1].. - 1:30:17

relatedly [1].. - 1:73:10

relates [6].. - 1:5:18.., 1:30:22.., 1:30:23.., 1:39:13 .., 1:104:22.., 1:105:3

relating [10].. - 1:8:9.., 1:9:19.., 1:13:7.., 1:13:9.., 1:14:2.., 1:14:15.., 1:33:23.., 1:144:16.., 1:145:16.., 1:146:2

relationship [4].. - 1:17:2 .., 1:28:15.., 1:42:23.., 1:152:21

relative [1].. - 1:39:19

relevance [2].. - 1:23:16.., 1:104:20

relevant [13].. - 1:25:8.., 1:45:4.., 1:46:9.., 1:49:5.., 1:50:2.., 1:56:14.., 1:60:13.., 1:63:6.., 1:69:13.., 1:96:18.., 1:111:7.., 1:152:9.., 1:152:20

reliance [1].. - 1:53:2

relied [9].. - 1:9:7.., 1:12:8 .., 1:20:9.., 1:22:3.., 1:35:17.., 1:52:5.., 1:64:2.., 1:111:18.., 1:111:21

relies [5].. - 1:114:3.., 1:114:9.., 1:114:17.., 1:116:23.., 1:133:15

rely [11].. - 1:19:8.., 1:34:9 .., 1:43:18.., 1:51:20.., 1:52:1 .., 1:52:3.., 1:57:13.., 1:65:21 .., 1:93:20.., 1:98:6.., 1:117:4

relying [10].. - 1:7:4.., 1:18:12.., 1:19:13.., 1:22:20 .., 1:32:23.., 1:51:13.., 1:56:3 .., 1:57:19.., 1:57:24.., 1:62:16

remember [3].. - 1:108:7 .., 1:130:2.., 1:158:6

remembers [1].. - 1:120:24

reminders [1].. - 1:4:1

removability [2].. - 1:72:11.., 1:76:3

removable [1].. - 1:121:10

removal [5].. - 1:93:8.., 1:93:15.., 1:93:18.., 1:98:17 .., 1:135:23

remove [4].. - 1:78:12.., 1:93:11.., 1:109:8.., 1:151:8

removed [2].. - 1:75:19.., 1:93:16

render [1].. - 1:135:1

Reno [9].. - 1:7:22.., 1:24:22.., 1:67:24.., 1:129:12 .., 1:129:13.., 1:133:9.., 1:134:20.., 1:134:21.., 1:146:12

repeat [4].. - 1:64:25.., 1:65:19.., 1:153:4.., 1:157:18

repeated [1].. - 1:49:22

repeatedly [1].. - 1:32:12

reply [1].. - 1:5:2

report [3].. - 1:110:24.., 1:111:1.., 1:135:8

reporter [1].. - 1:91:10

reporting [2].. - 1:17:2.., 1:17:6

represent [4].. - 1:76:24.., 1:92:16.., 1:113:4.., 1:157:21

representation [6].. - 1:30:6.., 1:30:7.., 1:67:14.., 1:150:4.., 1:150:6.., 1:150:9

representations [5].. - 1:27:19.., 1:28:13.., 1:28:15 .., 1:28:21.., 1:149:20

represented [1].. - 1:27:24

representing [1].. - 1:140:1

reputation [1].. - 1:137:23

requests [1].. - 1:149:22

require [15].. - 1:27:12.., 1:50:20.., 1:50:24.., 1:51:1.., 1:51:4.., 1:51:5.., 1:54:9.., 1:59:19.., 1:77:10.., 1:101:16 .., 1:117:18.., 1:123:15.., 1:123:18.., 1:143:24.., 1:149:4

required [9].. - 1:8:23.., 1:13:16.., 1:19:3.., 1:20:23.., 1:31:6.., 1:99:10.., 1:122:15 .., 1:148:2

requirement [5].. - 1:30:18.., 1:31:6.., 1:79:10.., 1:88:5.., 1:88:10

requirements [7].. - 1:29:12.., 1:75:3.., 1:75:5.., 1:124:24.., 1:144:14.., 1:149:2.., 1:151:1

requires [12].. - 1:6:25.., 1:9:9.., 1:51:2.., 1:96:11.., 1:117:20.., 1:136:8.., 1:136:9

_, 1:144:14_, 1:145:1_, 1:145:7_, 1:145:18_, 1:152:21

rescind [5]_ - 1:75:7_, 1:135:22_, 1:146:11_, 1:146:14_, 1:151:8

rescinded [1]_ - 1:151:24

rescinding [1]_ - 1:75:2

rescission [5]_ - 1:49:7_, 1:75:18_, 1:75:21_, 1:152:8 _, 1:153:2

Research [2]_ - 1:110:23 _, 1:110:24

research [1]_ - 1:111:17

reserves [1]_ - 1:60:24

resign [1]_ - 1:98:23

resigned [1]_ - 1:33:9

resigns [1]_ - 1:99:7

resolution [1]_ - 1:42:6

resolve [6]_ - 1:13:2_, 1:28:17_, 1:30:9_, 1:41:9_, 1:72:23_, 1:114:7

resolved [3]_ - 1:28:13_, 1:44:8_, 1:67:6

respect [23]_ - 1:7:2_, 1:7:20_, 1:22:14_, 1:25:4_, 1:34:12_, 1:37:11_, 1:38:1_, 1:55:25_, 1:66:24_, 1:83:19 _, 1:83:20_, 1:89:8_, 1:131:16_, 1:131:19_, 1:132:21_, 1:137:4_, 1:140:15_, 1:140:17_, 1:141:11_, 1:157:23_, 1:160:12_, 1:160:23

respond [1]_ - 1:147:11

response [4]_ - 1:27:2_, 1:28:10_, 1:49:14_, 1:60:11

responsibilities [4]_ - 1:15:3_, 1:55:20_, 1:97:2_, 1:102:9

responsibility [5]_ - 1:49:5_, 1:68:18_, 1:150:17 _, 1:152:11_, 1:154:9

rest [2]_ - 1:11:2_, 1:13:20

rested [1]_ - 1:43:6

restricting [1]_ - 1:14:25

restrictions [1]_ - 1:85:8

rests [1]_ - 1:146:13

result [1]_ - 1:90:11

resume [2]_ - 1:70:18_, 1:70:22

retain [2]_ - 1:14:12_, 1:56:18

retained [12]_ - 1:19:23_,

1:20:20_, 1:20:25_, 1:59:2_, 1:59:11_, 1:62:21_, 1:62:25 _, 1:64:19_, 1:65:4_, 1:108:1 _, 1:108:4_, 1:159:15

retains [2]_ - 1:49:4_, 1:152:24

retention [2]_ - 1:108:4_, 1:153:1

reverse [2]_ - 1:78:14_, 1:78:16

review [16]_ - 1:24:15_, 1:25:14_, 1:39:8_, 1:50:3_, 1:50:8_, 1:73:18_, 1:73:19_, 1:73:22_, 1:73:23_, 1:73:25 _, 1:74:7_, 1:74:11_, 1:75:17 _, 1:78:6_, 1:79:1

reviewed [3]_ - 1:5:1_, 1:49:20_, 1:50:1

reviews [1]_ - 1:51:9

revisit [1]_ - 1:103:25

revoke [1]_ - 1:49:2

rewind [1]_ - 1:70:19

rid [2]_ - 1:146:11_, 1:147:3

ride [3]_ - 1:62:11_, 1:94:14

rights [2]_ - 1:30:22

Ring [1]_ - 1:60:17

risk [3]_ - 1:18:5_, 1:18:10 _, 1:95:18

risks [2]_ - 1:18:4_, 1:19:1

road [1]_ - 1:96:1

roadblock [1]_ - 1:103:17

Robert [4]_ - 1:12:21_, 1:14:2_, 1:66:1_, 1:137:19

Roberts [1]_ - 1:111:11

Roger [1]_ - 1:105:9

role [9]_ - 1:22:10_, 1:24:3 _, 1:24:21_, 1:115:7_, 1:122:1_, 1:132:1_, 1:132:16 _, 1:149:8_, 1:149:12

roles [3]_ - 1:21:22_, 1:132:11_, 1:137:22

room [5]_ - 1:4:3_, 1:4:15_, 1:127:25_, 1:128:2_, 1:140:4

Roosevelt [2]_ - 1:60:21_, 1:110:3

Rosenthal [3]_ - 1:23:11_, 1:23:15_, 1:59:7

route [1]_ - 1:60:19

rule [2]_ - 1:104:3_, 1:157:3

Rule [4]_ - 1:11:14_, 1:87:18_, 1:87:22_, 1:88:5

rules [1]_ - 1:147:16

rulings [1]_ - 1:44:22

run [8]_ - 1:19:1_, 1:104:1_, 1:104:2_, 1:124:11_, 1:124:14_, 1:124:16_, 1:124:17_, 1:129:5

running [2]_ - 1:18:4_, 1:31:11

runs [1]_ - 1:40:20

S

safe [1]_ - 1:161:7

salary [1]_ - 1:85:9

sale [1]_ - 1:60:24

Sasha [1]_ - 1:3:18

satisfied [3]_ - 1:13:12_, 1:55:24_, 1:87:22

satisfy [1]_ - 1:102:10

SAUSA [1]_ - 1:57:15

save [1]_ - 1:111:17

Savings [2]_ - 1:66:17_, 1:128:22

scale [1]_ - 1:100:17

Scalia [4]_ - 1:72:3_, 1:72:13_, 1:74:5_, 1:95:19

Scalia's [1]_ - 1:134:11

scandal [3]_ - 1:60:23_, 1:111:8_, 1:156:25

scenario [1]_ - 1:29:15

SCHAERR [4]_ - 1:112:22_, 1:113:2_, 1:113:4 _, 1:115:13_, 1:116:2_, 1:116:8_, 1:116:11_, 1:117:19_, 1:118:2_, 1:119:1 _, 1:119:3_, 1:119:13_, 1:119:15_, 1:119:19_, 1:120:14_, 1:121:19_, 1:122:13_, 1:122:17_, 1:123:9_, 1:123:17_, 1:124:20_, 1:125:18_, 1:125:24_, 1:126:11_, 1:127:24_, 1:128:4_, 1:128:11_, 1:128:19_, 1:128:24_, 1:129:10_, 1:129:24_, 1:130:18_, 1:130:25_, 1:131:4_, 1:131:10_, 1:132:3_, 1:132:19_, 1:133:5_, 1:133:14_, 1:136:2_, 1:137:18

Schaerr [9]_ - 1:5:22_, 1:24:18_, 1:70:21_, 1:109:19 _, 1:112:21_, 1:151:10_, 1:156:4_, 1:157:21_, 1:160:7

Schaerr's [1]_ - 1:160:16

scheme [4]_ - 1:79:16_, 1:120:4_, 1:124:12_, 1:124:14

scoffed [2]_ - 1:26:19_, 1:32:12

scope [12]_ - 1:14:25_, 1:15:1_, 1:23:24_, 1:38:13_, 1:42:21_, 1:42:25_, 1:115:23 _, 1:116:6_, 1:142:15_, 1:151:25_, 1:152:2_, 1:152:14

scour [1]_ - 1:82:8

scratch [1]_ - 1:99:8

scrutiny [1]_ - 1:23:6

sealed [3]_ - 1:46:12_, 1:112:16_, 1:130:22

Sealed [6]_ - 1:14:12_, 1:14:15_, 1:14:18_, 1:34:3_, 1:43:24_, 1:44:2

search [1]_ - 1:29:17

searching [1]_ - 1:129:25

seated [3]_ - 1:3:2_, 1:4:15_, 1:70:25

second [18]_ - 1:4:7_, 1:5:8_, 1:6:5_, 1:11:9_, 1:40:19_, 1:46:10_, 1:80:20 _, 1:91:1_, 1:91:17_, 1:94:16 _, 1:97:19_, 1:98:20_, 1:100:23_, 1:101:2_, 1:108:7 _, 1:114:1_, 1:116:22_, 1:145:11

second-to-the-last [1]_ - 1:94:16

secondary [2]_ - 1:30:13 _, 1:125:2

secret [1]_ - 1:138:1

secretaries [2]_ - 1:131:14_, 1:131:21

Secretary [1]_ - 1:61:2

secretary [2]_ - 1:110:13 _, 1:154:7

section [5]_ - 1:13:9_, 1:55:19_, 1:58:21_, 1:81:1_, 1:81:11

Section [40]_ - 1:8:1_, 1:8:14_, 1:9:3_, 1:16:9_, 1:48:2_, 1:50:15_, 1:54:4_, 1:55:22_, 1:56:5_, 1:56:10_, 1:57:20_, 1:58:21_, 1:80:20 _, 1:80:21_, 1:81:10_, 1:81:14_, 1:82:15_, 1:87:23 _, 1:91:5_, 1:104:11_, 1:104:15_, 1:104:20_, 1:107:15_, 1:107:25_,

1:108:11_, 1:114:25_, 1:120:16_, 1:120:18_, 1:121:7_, 1:121:21_, 1:122:8 _, 1:124:13_, 1:126:17_, 1:126:18_, 1:127:10_, 1:128:13_, 1:130:6_, 1:130:11_, 1:156:9

Section's [1]_ - 1:104:21

Sections [1]_ - 1:43:15

sections [2]_ - 1:10:12_, 1:16:5

SECURITY [1]_ - 1:6:6

security [2]_ - 1:29:4_, 1:145:16

Security [5]_ - 1:29:16_, 1:30:23_, 1:89:16_, 1:89:22 _, 1:147:19

see [25]_ - 1:4:4_, 1:24:13 _, 1:31:13_, 1:37:17_, 1:39:4 _, 1:39:5_, 1:40:2_, 1:50:21_, 1:55:4_, 1:58:22_, 1:62:24_, 1:65:6_, 1:72:3_, 1:72:15_, 1:72:18_, 1:72:19_, 1:72:21 _, 1:79:16_, 1:92:13_, 1:118:19_, 1:121:2_, 1:131:12_, 1:132:3_, 1:144:23_, 1:145:15

seeing [1]_ - 1:155:19

seek [6]_ - 1:29:16_, 1:134:4_, 1:136:8_, 1:136:10 _, 1:137:7

seeking [5]_ - 1:27:12_, 1:36:18_, 1:135:16_, 1:149:6 _, 1:149:8

seeks [1]_ - 1:51:2

seemingly [1]_ - 1:63:11

sees [2]_ - 1:11:2_, 1:11:25

segment [1]_ - 1:65:17

self [1]_ - 1:35:14

self-evident [1]_ - 1:35:14

SELIGMAN [38]_ - 1:71:2 _, 1:74:10_, 1:74:24_, 1:75:10_, 1:75:21_, 1:76:5_, 1:76:18_, 1:76:20_, 1:77:5_, 1:77:13_, 1:78:3_, 1:79:7_, 1:79:18_, 1:79:22_, 1:80:1_, 1:80:7_, 1:80:10_, 1:80:12_, 1:80:16_, 1:80:19_, 1:80:25 _, 1:81:19_, 1:81:22_, 1:82:11_, 1:83:7_, 1:83:9_, 1:83:14_, 1:84:22_, 1:85:1_, 1:86:3_, 1:87:6_, 1:87:11_, 1:87:15_, 1:87:21_, 1:88:4_, 1:89:5_, 1:90:14_, 1:90:17

Seligman [6]_ - 1:5:22_,

1:70:20_, 1:71:1_, 1:71:3_, 1:150:24_, 1:154:19

Seligman's [1]_ - 1:141:18

Senate [16]_ - 1:17:25_, 1:49:17_, 1:111:10_, 1:111:14_, 1:121:10_, 1:122:4_, 1:124:6_, 1:129:5 _, 1:132:7_, 1:134:10_, 1:135:9_, 1:137:13_, 1:156:25_, 1:157:1_, 1:157:5

Senate-confirmed [1]_ - 1:124:6

send [1]_ - 1:145:21

senior [1]_ - 1:154:8

sense [7]_ - 1:10:20_, 1:11:3_, 1:20:25_, 1:70:4_, 1:100:18_, 1:123:24_, 1:141:14

sentence [5]_ - 1:92:14_, 1:92:25_, 1:93:6_, 1:100:6_, 1:138:7

separate [11]_ - 1:4:24_, 1:19:19_, 1:20:3_, 1:21:7_, 1:23:25_, 1:58:10_, 1:64:1_, 1:101:5_, 1:128:17_, 1:154:22_, 1:158:6

separately [1]_ - 1:29:10

separates [1]_ - 1:100:6

series [6]_ - 1:13:4_, 1:53:22_, 1:65:21_, 1:66:8_, 1:68:11_, 1:74:18

serious [1]_ - 1:114:11

seriously [2]_ - 1:81:13_, 1:113:12

serve [6]_ - 1:17:7_, 1:17:25_, 1:20:7_, 1:21:1_, 1:123:25_, 1:132:13

serves [1]_ - 1:95:23

Service [1]_ - 1:110:24

session [3]_ - 1:70:25_, 1:81:4_, 1:138:1

set [17]_ - 1:4:2_, 1:4:11_, 1:4:16_, 1:4:18_, 1:11:2_, 1:17:18_, 1:31:8_, 1:60:24_, 1:61:4_, 1:85:8_, 1:92:5_, 1:97:25_, 1:98:22_, 1:102:5 _, 1:128:5_, 1:131:9_, 1:157:4

set-up [1]_ - 1:11:2

Seth [2]_ - 1:5:9_, 1:90:21

sets [2]_ - 1:76:3_, 1:120:21

setting [8]_ - 1:11:8_, 1:15:2_, 1:94:18_, 1:116:20

_, 1:117:22_, 1:139:14_, 1:141:13_, 1:142:18

settings [6]_ - 1:139:5_, 1:139:6_, 1:139:7_, 1:141:21 _, 1:143:2_, 1:146:2

seven [1]_ - 1:102:1

seven-year [1]_ - 1:102:1

several [5]_ - 1:7:2_, 1:16:5_, 1:102:1_, 1:110:1_, 1:118:11

SG's [1]_ - 1:132:2

shadow [4]_ - 1:17:8_, 1:17:19_, 1:17:22_, 1:18:21

shaky [1]_ - 1:112:17

shall [5]_ - 1:79:12_, 1:108:2_, 1:108:11_, 1:108:12_, 1:154:7

sharp [1]_ - 1:70:9

shed [1]_ - 1:12:1

shifted [4]_ - 1:21:25_, 1:22:1_, 1:23:2_, 1:23:3

shore [1]_ - 1:20:12

short [2]_ - 1:65:23_, 1:114:21

show [1]_ - 1:145:8

sic [1]_ - 1:156:24

side [13]_ - 1:6:13_, 1:41:25_, 1:43:18_, 1:52:13 _, 1:53:11_, 1:54:15_, 1:60:14_, 1:62:10_, 1:67:1_, 1:68:24_, 1:147:14_, 1:147:25_, 1:158:16

side's [1]_ - 1:69:16

sided [1]_ - 1:138:1

sidestep [1]_ - 1:146:8

sidestepping [1]_ - 1:147:1

sideways [1]_ - 1:47:10

sign [1]_ - 1:27:12

significance [8]_ - 1:51:9 _, 1:109:8_, 1:116:21_, 1:117:10_, 1:117:22_, 1:140:23_, 1:141:25_, 1:142:18

significant [20]_ - 1:35:16 _, 1:50:16_, 1:50:17_, 1:52:5 _, 1:62:8_, 1:62:24_, 1:69:3_, 1:69:15_, 1:78:24_, 1:93:12 _, 1:101:3_, 1:102:15_, 1:102:16_, 1:102:18_, 1:102:19_, 1:104:16_, 1:145:25_, 1:146:5_, 1:155:11_, 1:155:14

signing [1]_ - 1:50:11

signoff [1]_ - 1:149:16

similar [6]_ - 1:36:7_, 1:40:2_, 1:47:24_, 1:51:4_, 1:108:15_, 1:139:7

simple [1]_ - 1:114:16

simply [6]_ - 1:116:25_, 1:118:20_, 1:133:20_, 1:151:8_, 1:153:10

single [9]_ - 1:36:1_, 1:88:19_, 1:96:23_, 1:97:15 _, 1:97:18_, 1:97:24_, 1:102:4_, 1:144:7

sit [1]_ - 1:112:12

sits [1]_ - 1:38:22

sitting [6]_ - 1:35:12_, 1:125:12_, 1:125:16_, 1:125:19_, 1:126:25

situation [5]_ - 1:13:11_, 1:31:20_, 1:73:16_, 1:73:20 _, 1:139:20

situations [2]_ - 1:19:1_, 1:124:21

skims [1]_ - 1:33:15

sky [1]_ - 1:103:23

sliding [1]_ - 1:100:17

slow [1]_ - 1:75:9

slowly [1]_ - 1:91:10

small [1]_ - 1:66:15

Smith [57]_ - 1:4:22_, 1:12:9_, 1:20:6_, 1:20:12_, 1:26:10_, 1:26:15_, 1:26:25 _, 1:32:11_, 1:32:16_, 1:36:19_, 1:38:16_, 1:74:17 _, 1:75:12_, 1:76:7_, 1:91:4_, 1:91:17_, 1:94:1_, 1:97:14_, 1:98:2_, 1:98:4_, 1:98:23_, 1:99:6_, 1:102:11_, 1:102:21 _, 1:103:1_, 1:103:8_, 1:103:11_, 1:103:13_, 1:106:15_, 1:107:1_, 1:109:14_, 1:113:17_, 1:113:19_, 1:114:3_, 1:114:5 _, 1:114:17_, 1:116:23_, 1:119:23_, 1:120:8_, 1:120:23_, 1:123:1_, 1:123:2 _, 1:127:7_, 1:133:15_, 1:133:17_, 1:134:17_, 1:134:22_, 1:135:4_, 1:135:12_, 1:135:13_, 1:136:6_, 1:136:24_, 1:137:4 _, 1:138:10_, 1:138:22

Smith's [8]_ - 1:75:15_, 1:105:15_, 1:113:12_, 1:114:8_, 1:121:2_, 1:130:1 _, 1:133:18_, 1:133:25

so.. [1]_ - 1:159:6

solely [1]- - 1:99:1

solicit [1]- - 1:61:3

Solicitor [3]- - 1:82:25-, 1:83:6-, 1:143:6

solicitor [8]- - 1:84:4-, 1:84:7-, 1:84:11-, 1:84:12-, 1:84:20-, 1:132:12-, 1:132:13-, 1:132:18

solicitors [1]- - 1:84:13

solicitude [1]- - 1:88:8

someone [18]- - 1:24:11-, 1:24:12-, 1:32:15-, 1:36:19 -, 1:49:17-, 1:60:16-, 1:61:18-, 1:63:6-, 1:63:7-, 1:67:18-, 1:77:23-, 1:77:24 -, 1:83:17-, 1:96:1-, 1:97:17 -, 1:110:8-, 1:110:11-, 1:118:8

somewhat [2]- - 1:87:18 -, 1:98:9

soon [1]- - 1:159:21

sorry [10]- - 1:71:23-, 1:75:10-, 1:75:13-, 1:79:7-, 1:82:21-, 1:102:25-, 1:109:1 -, 1:111:23-, 1:121:20-, 1:148:7

sort [81]- - 1:17:2-, 1:19:22 -, 1:20:2-, 1:23:24-, 1:25:6-, 1:25:13-, 1:25:17-, 1:30:13 -, 1:30:17-, 1:31:4-, 1:31:8-, 1:31:25-, 1:32:14-, 1:32:22 -, 1:33:18-, 1:34:22-, 1:36:21-, 1:37:14-, 1:39:5-, 1:39:13-, 1:40:3-, 1:40:25-, 1:42:3-, 1:42:7-, 1:44:22-, 1:45:11-, 1:46:8-, 1:46:11-, 1:50:24-, 1:52:20-, 1:55:16 -, 1:55:17-, 1:55:19-, 1:56:6 -, 1:57:14-, 1:60:11-, 1:60:20-, 1:60:24-, 1:60:25 -, 1:61:1-, 1:62:4-, 1:63:4-, 1:63:7-, 1:63:14-, 1:64:20-, 1:66:13-, 1:66:25-, 1:67:15 -, 1:68:5-, 1:68:6-, 1:68:15-, 1:69:2-, 1:79:4-, 1:89:9-, 1:90:10-, 1:93:8-, 1:97:11-, 1:97:12-, 1:98:7-, 1:108:22 -, 1:109:18-, 1:110:1-, 1:112:7-, 1:114:5-, 1:124:24 -, 1:127:15-, 1:128:17-, 1:130:12-, 1:130:16-, 1:134:15-, 1:140:25-, 1:142:24-, 1:143:4-, 1:145:2 -, 1:146:7-, 1:148:23-, 1:149:7-, 1:151:2-, 1:151:19 -, 1:154:10-, 1:155:18

sorts [1]- - 1:79:1

Sotomayor [1]- - 1:101:10

sounds [1]- - 1:17:22

source [16]- - 1:19:19-, 1:21:7-, 1:23:25-, 1:24:15-, 1:38:11-, 1:80:24-, 1:81:1-, 1:83:23-, 1:106:13-, 1:106:17-, 1:110:15-, 1:116:9-, 1:116:10-, 1:127:20-, 1:152:7

sources [3]- - 1:20:8-, 1:22:2-, 1:22:9

Southern [2]- - 1:29:14-, 1:59:6

sovereign [2]- - 1:88:7-, 1:100:19

speaks [3]- - 1:25:2-, 1:76:3-, 1:143:8

Special [154]- - 1:3:8-, 1:4:21-, 1:5:1-, 1:5:24-, 1:6:25-, 1:7:3-, 1:7:8-, 1:7:22-, 1:7:25-, 1:8:5-, 1:8:10-, 1:9:23-, 1:10:18-, 1:12:3-, 1:13:25-, 1:17:4-, 1:17:13-, 1:18:11-, 1:19:1-, 1:19:12-, 1:21:16-, 1:21:21 -, 1:23:10-, 1:24:5-, 1:24:13 -, 1:24:23-, 1:25:3-, 1:25:10 -, 1:25:15-, 1:25:16-, 1:26:18-, 1:27:1-, 1:27:6-, 1:27:8-, 1:27:23-, 1:28:16-, 1:29:8-, 1:30:5-, 1:30:15-, 1:30:20-, 1:31:12-, 1:32:9-, 1:32:24-, 1:33:9-, 1:33:11-, 1:33:13-, 1:34:11-, 1:38:1-, 1:40:8-, 1:40:16-, 1:40:20-, 1:40:22-, 1:41:16-, 1:46:9-, 1:47:6-, 1:47:16-, 1:48:12-, 1:48:21-, 1:49:3-, 1:49:12-, 1:49:24-, 1:49:25-, 1:51:5-, 1:51:22-, 1:51:24-, 1:51:25 -, 1:53:7-, 1:55:14-, 1:57:12 -, 1:57:23-, 1:59:12-, 1:60:3 -, 1:60:7-, 1:62:5-, 1:66:3-, 1:66:17-, 1:66:18-, 1:67:3-, 1:67:19-, 1:70:4-, 1:71:9-, 1:71:11-, 1:71:20-, 1:71:25 -, 1:72:1-, 1:72:21-, 1:73:4-, 1:73:5-, 1:74:10-, 1:74:14-, 1:74:17-, 1:76:7-, 1:76:11-, 1:76:22-, 1:76:24-, 1:77:10 -, 1:77:15-, 1:77:18-, 1:79:2 -, 1:79:11-, 1:79:12-, 1:79:20-, 1:80:8-, 1:83:25-, 1:86:6-, 1:93:11-, 1:101:19 -, 1:103:13-, 1:104:4-, 1:105:11-, 1:105:25-, 1:109:6-, 1:110:2-, 1:115:10 -, 1:115:17-, 1:118:22-,

1:123:16-, 1:125:8-, 1:125:11-, 1:128:9-, 1:128:18-, 1:129:1-, 1:129:14-, 1:129:18-, 1:129:19-, 1:131:24-, 1:133:11-, 1:141:6-, 1:143:17-, 1:144:5-, 1:144:18-, 1:144:22-, 1:145:7-, 1:145:22-, 1:148:6 -, 1:149:24-, 1:149:25-, 1:150:7-, 1:150:18-, 1:151:3 -, 1:152:12-, 1:152:19-, 1:152:25-, 1:155:13-, 1:155:23-, 1:156:23-, 1:157:12-, 1:157:15-, 1:157:17-, 1:158:13-, 1:158:18-, 1:160:24

special [116]- - 1:10:10-, 1:15:2-, 1:15:7-, 1:15:8-, 1:15:20-, 1:15:23-, 1:16:5-, 1:16:11-, 1:16:15-, 1:16:18 -, 1:16:20-, 1:16:21-, 1:16:23-, 1:17:1-, 1:17:11-, 1:18:2-, 1:21:18-, 1:21:20-, 1:22:10-, 1:23:19-, 1:24:8-, 1:24:16-, 1:33:6-, 1:34:6-, 1:35:11-, 1:37:18-, 1:39:19 -, 1:42:15-, 1:42:16-, 1:42:24-, 1:43:5-, 1:52:16-, 1:56:12-, 1:56:13-, 1:56:20 -, 1:57:2-, 1:57:6-, 1:57:7-, 1:57:9-, 1:57:12-, 1:57:16-, 1:58:1-, 1:58:5-, 1:58:9-, 1:58:11-, 1:58:24-, 1:58:25 -, 1:59:23-, 1:59:24-, 1:60:6 -, 1:60:12-, 1:60:17-, 1:60:18-, 1:60:22-, 1:61:3-, 1:61:6-, 1:61:7-, 1:61:8-, 1:61:10-, 1:61:23-, 1:62:1-, 1:65:8-, 1:67:19-, 1:70:6-, 1:70:7-, 1:70:8-, 1:70:10-, 1:85:21-, 1:86:12-, 1:92:17 -, 1:92:23-, 1:93:1-, 1:94:11 -, 1:95:20-, 1:104:12-, 1:105:2-, 1:105:3-, 1:105:22 -, 1:108:2-, 1:108:22-, 1:109:20-, 1:110:12-, 1:110:16-, 1:111:9-, 1:111:13-, 1:111:18-, 1:121:22-, 1:126:7-, 1:126:9 -, 1:127:9-, 1:127:10-, 1:127:13-, 1:127:21-, 1:127:22-, 1:128:2-, 1:128:3 -, 1:128:4-, 1:128:6-, 1:128:7-, 1:128:10-, 1:128:12-, 1:128:17-, 1:140:17-, 1:141:4-, 1:155:20-, 1:155:21-, 1:156:23

specially [10]- - 1:20:20-,

1:56:18-, 1:59:2-, 1:59:11-, 1:62:20-, 1:62:24-, 1:65:4-, 1:65:5-, 1:108:1-, 1:159:15

specific [25]- - 1:9:4-, 1:9:15-, 1:9:18-, 1:13:5-, 1:31:9-, 1:39:12-, 1:42:16-, 1:45:4-, 1:50:12-, 1:52:2-, 1:64:7-, 1:66:16-, 1:67:8-, 1:69:22-, 1:77:7-, 1:82:21-, 1:92:5-, 1:95:17-, 1:98:22-, 1:108:23-, 1:109:21-, 1:114:2-, 1:120:3-, 1:144:13 -, 1:147:22

specifically [5]- - 1:10:24 -, 1:15:14-, 1:37:25-, 1:48:1 -, 1:149:12

specifics [1]- - 1:17:20

specifies [1]- - 1:121:8

speed [1]- - 1:75:13

spend [3]- - 1:14:6-, 1:35:10-, 1:155:3

Spiderman [1]- - 1:96:3

sprawling [1]- - 1:24:23

square [1]- - 1:99:20

squarely [2]- - 1:94:22-, 1:115:14

Srinivasan [1]- - 1:84:5

staffed [1]- - 1:27:9

staffing [1]- - 1:101:18

stage [3]- - 1:36:22-, 1:116:20-, 1:117:22

stand [4]- - 1:136:12-, 1:149:20, 1:153:21-, 1:158:25

stand-alone [1] - 1:153:21

standard [5]- - 1:48:18-, 1:69:11-, 1:74:4-, 1:79:1-, 1:148:25

standby [1]- - 1:63:7

standing [1]- - 1:36:17

stands [1]- - 1:112:17

Stanley [1]- - 1:3:18

star [1]- - 1:60:19

start [15]- - 1:6:20-, 1:8:14 -, 1:14:8-, 1:14:24-, 1:17:3-, 1:22:4-, 1:22:6-, 1:40:24-, 1:41:5-, 1:51:16-, 1:51:17-, 1:71:6-, 1:121:15-, 1:139:12 -, 1:147:13

started [3]- - 1:36:15-, 1:59:8-, 1:147:14

starting [4]- - 1:3:7-, 1:22:7-, 1:35:3-, 1:70:18

starts [1]₋ - 1:38:12

state [1]₋ - 1:86:3

State [2]₋ - 1:5:14₋, 1:71:4

statement [6]₋ - 1:34:14₋, 1:78:19₋, 1:118:17₋, 1:137:19₋, 1:137:21₋, 1:143:24

Statement [3]₋ - 1:87:18₋, 1:87:21₋, 1:88:4

statements [5]₋ - 1:143:17₋, 1:143:19₋, 1:144:3₋, 1:144:21₋, 1:144:24

States [42]₋ - 1:3:4₋, 1:3:10₋, 1:11:6₋, 1:17:12₋, 1:17:14₋, 1:40:12₋, 1:41:9₋, 1:43:13₋, 1:47:21₋, 1:47:24 ₋, 1:55:20₋, 1:56:21₋, 1:57:10₋, 1:57:15₋, 1:57:17 ₋, 1:57:24₋, 1:58:5₋, 1:71:22 ₋, 1:81:6₋, 1:84:16₋, 1:84:17 ₋, 1:87:25₋, 1:91:2₋, 1:91:25 ₋, 1:92:17₋, 1:95:12₋, 1:102:17₋, 1:102:19₋, 1:102:20₋, 1:103:2₋, 1:103:6 ₋, 1:108:12₋, 1:109:3₋, 1:134:6₋, 1:135:2₋, 1:135:16 ₋, 1:137:9₋, 1:153:22₋, 1:154:2₋, 1:154:5₋, 1:154:23

status [3]₋ - 1:63:8₋, 1:114:14₋, 1:122:12

statute [73]₋ - 1:9:15₋, 1:10:2₋, 1:10:21₋, 1:12:12₋, 1:12:23₋, 1:13:13₋, 1:14:5₋, 1:15:5₋, 1:16:5₋, 1:20:15₋, 1:23:23₋, 1:24:10₋, 1:37:22 ₋, 1:37:25₋, 1:39:16₋, 1:50:25₋, 1:51:1₋, 1:51:4₋, 1:53:25₋, 1:55:3₋, 1:64:1₋, 1:64:14₋, 1:65:25₋, 1:67:17 ₋, 1:68:3₋, 1:71:12₋, 1:72:7₋, 1:72:9₋, 1:72:10₋, 1:73:25₋, 1:74:2₋, 1:74:5₋, 1:74:12₋, 1:74:13₋, 1:78:15₋, 1:82:9₋, 1:82:19₋, 1:83:1₋, 1:85:3₋, 1:85:11₋, 1:85:18₋, 1:85:22 ₋, 1:89:7₋, 1:89:25₋, 1:92:1₋, 1:99:3₋, 1:99:4₋, 1:104:7₋, 1:104:14₋, 1:104:16₋, 1:104:25₋, 1:105:7₋, 1:106:6 ₋, 1:107:7₋, 1:109:21₋, 1:109:22₋, 1:111:8₋, 1:114:10₋, 1:114:13₋, 1:121:18₋, 1:123:10₋, 1:124:7₋, 1:127:9₋, 1:131:5 ₋, 1:133:2₋, 1:138:19₋, 1:154:21₋, 1:154:23₋, 1:156:8₋, 1:157:15₋,

1:157:16₋, 1:157:17₋, 1:158:9

Statute [1]₋ - 1:65:25

statutes [65]₋ - 1:7:2₋, 1:8:3₋, 1:8:12₋, 1:9:12₋, 1:10:7₋, 1:10:21₋, 1:13:23₋, 1:15:22₋, 1:17:17₋, 1:18:7₋, 1:18:25₋, 1:19:6₋, 1:22:19₋, 1:23:7₋, 1:32:22₋, 1:34:1₋, 1:36:12₋, 1:36:16₋, 1:43:14 ₋, 1:45:4₋, 1:45:23₋, 1:51:12 ₋, 1:52:2₋, 1:53:22₋, 1:54:12 ₋, 1:54:18₋, 1:55:1₋, 1:55:6₋, 1:58:15₋, 1:62:20₋, 1:74:18 ₋, 1:80:14₋, 1:80:16₋, 1:81:17₋, 1:81:24₋, 1:87:9₋, 1:87:10₋, 1:88:7₋, 1:88:8₋, 1:88:16₋, 1:88:22₋, 1:89:9₋, 1:89:16₋, 1:90:9₋, 1:92:15₋, 1:95:1₋, 1:109:19₋, 1:116:19 ₋, 1:118:20₋, 1:119:18₋, 1:119:21₋, 1:119:23₋, 1:122:14₋, 1:131:11₋, 1:133:14₋, 1:133:18₋, 1:139:10₋, 1:139:19₋, 1:140:15₋, 1:140:21₋, 1:141:2₋, 1:141:8₋, 1:153:14 ₋, 1:156:12₋, 1:158:7

statutorily [3]₋ - 1:57:17₋, 1:68:25₋, 1:138:17

statutory [44]₋ - 1:8:4₋, 1:31:4₋, 1:33:21₋, 1:37:3₋, 1:40:15₋, 1:40:21₋, 1:40:24 ₋, 1:41:16₋, 1:42:14₋, 1:42:20₋, 1:45:25₋, 1:47:11 ₋, 1:50:23₋, 1:52:20₋, 1:53:6 ₋, 1:64:22₋, 1:65:20₋, 1:68:13₋, 1:68:20₋, 1:80:17 ₋, 1:80:19₋, 1:83:23₋, 1:84:20₋, 1:88:18₋, 1:89:18 ₋, 1:90:2₋, 1:114:1₋, 1:114:9 ₋, 1:115:7₋, 1:118:21₋, 1:119:25₋, 1:120:2₋, 1:120:4 ₋, 1:120:9₋, 1:124:12₋, 1:124:23₋, 1:126:14₋, 1:126:16₋, 1:133:22₋, 1:149:24₋, 1:154:23₋, 1:157:13₋, 1:159:8₋, 1:161:1

steer [1]₋ - 1:47:15

step [16]₋ - 1:4:10₋, 1:48:14₋, 1:50:14₋, 1:51:8₋, 1:51:10₋, 1:91:16₋, 1:91:17 ₋, 1:91:19₋, 1:91:21₋, 1:93:23₋, 1:101:6₋, 1:136:3 ₋, 1:136:12₋, 1:152:9

steps [5]₋ - 1:29:4₋, 1:29:17₋, 1:78:24₋, 1:91:16 ₋, 1:145:17

Steven [1]₋ - 1:5:6

still [20]₋ - 1:48:9₋, 1:58:13 ₋, 1:59:15₋, 1:75:23₋, 1:76:10₋, 1:85:17₋, 1:97:24 ₋, 1:102:3₋, 1:104:1₋, 1:104:20₋, 1:105:18₋, 1:107:6₋, 1:117:10₋, 1:119:7 ₋, 1:119:8₋, 1:128:25₋, 1:129:2₋, 1:129:20₋, 1:129:22₋, 1:159:7

stipulate [2]₋ - 1:94:1₋, 1:94:24

Stone [1]₋ - 1:105:9

stop [3]₋ - 1:73:15₋, 1:73:19₋, 1:152:10

stopped [1]₋ - 1:41:3

stops [1]₋ - 1:99:7

strategy [1]₋ - 1:79:17

stream [1]₋ - 1:4:4

streaming [1]₋ - 1:6:5

stressing [1]₋ - 1:100:6

stretch [5]₋ - 1:17:4₋, 1:33:24₋, 1:34:19₋, 1:55:16

stretching [2]₋ - 1:123:15 ₋, 1:123:18

strike [1]₋ - 1:48:6

strikes [1]₋ - 1:133:7

striking [2]₋ - 1:14:19₋, 1:93:9

strong [5]₋ - 1:8:17₋, 1:8:20₋, 1:13:10₋, 1:80:25₋, 1:85:16

stronger [2]₋ - 1:80:24₋, 1:85:17

strongly [1]₋ - 1:33:8

structure [11]₋ - 1:11:2₋, 1:72:8₋, 1:72:19₋, 1:74:16₋, 1:82:18₋, 1:113:14₋, 1:114:10₋, 1:120:9₋, 1:120:15₋, 1:121:12₋, 1:130:5

struggling [1]₋ - 1:39:5

studied [1]₋ - 1:23:13

subcategories [1]₋ - 1:88:19

subject [7]₋ - 1:25:11₋, 1:25:18₋, 1:29:9₋, 1:74:11₋, 1:74:23₋, 1:136:15₋, 1:138:8

submission [2]₋ - 1:7:10 ₋, 1:69:25

submissions [1]₋ - 1:107:22

submit [4]₋ - 1:34:23₋, 1:97:13₋, 1:153:19₋, 1:160:25

submitting [1]₋ - 1:70:3

subordinate [1]₋ - 1:25:25

subparagraph [1]₋ - 1:25:9

subpoena [4]₋ - 1:41:13₋, 1:86:9₋, 1:86:11₋, 1:139:22

subpoenas [1]₋ - 1:134:3

subsection [1]₋ - 1:55:11

subsections [1]₋ - 1:127:17

subsequent [1]₋ - 1:23:12

subset [1]₋ - 1:128:6

substantial [1]₋ - 1:100:20

substantive [2]₋ - 1:127:18₋, 1:128:15

subvert [1]₋ - 1:120:8

succession [1]₋ - 1:32:1

sudden [2]₋ - 1:65:3₋, 1:90:10

sufficient [11]₋ - 1:32:17₋, 1:49:21₋, 1:67:25₋, 1:74:6₋, 1:78:2₋, 1:78:3₋, 1:78:21₋, 1:80:4₋, 1:80:21₋, 1:144:10 ₋, 1:156:21

sufficiently [2]₋ - 1:64:14 ₋, 1:96:15

suggest [4]₋ - 1:32:12₋, 1:97:23₋, 1:103:8₋, 1:105:23

suggested [4]₋ - 1:18:22 ₋, 1:40:25₋, 1:64:2₋, 1:144:3

suggesting [3]₋ - 1:100:19₋, 1:145:22₋, 1:158:16

suggestion [1]₋ - 1:114:15

sunset [1]₋ - 1:120:25

superior [29]₋ - 1:7:17₋, 1:26:5₋, 1:26:25₋, 1:32:6₋, 1:32:10₋, 1:32:15₋, 1:32:16 ₋, 1:73:9₋, 1:73:12₋, 1:74:7₋, 1:122:5₋, 1:122:19₋, 1:123:2 ₋, 1:123:7₋, 1:123:10₋, 1:123:14₋, 1:123:16₋, 1:123:21₋, 1:124:9₋, 1:132:5 ₋, 1:134:9₋, 1:134:18₋, 1:134:23₋, 1:135:14₋, 1:137:11₋, 1:138:17₋, 1:138:21

supervised [4]₋ - 1:49:16 ₋, 1:77:24₋, 1:135:19

supervision [16]₋ -

1:25:11_, 1:46:21_, 1:46:24
_, 1:47:7_, 1:48:4_, 1:58:3_,
1:58:13_, 1:61:21_, 1:79:22
_, 1:134:13_, 1:135:11_,
1:135:12_, 1:135:22_,
1:148:18_, 1:152:11

supervisory [3]_ - 1:58:7
_, 1:68:18_, 1:132:11

supplant [1]_ - 1:130:11

supplemental [2]_ -
1:5:16_, 1:160:23

support [8]_ - 1:5:2_, 1:5:9
_, 1:40:16_, 1:74:3_, 1:78:9_,
1:144:10_, 1:147:4_,
1:160:15

supporting [2]_ - 1:71:5_,
1:113:11

supportive [1]_ - 1:141:23

supports [5]_ - 1:19:15_,
1:19:17_, 1:36:19_, 1:86:25
_, 1:103:18

suppose [2]_ - 1:59:22_,
1:63:4

Supreme [45]_ - 1:12:6_,
1:13:14_, 1:23:2_, 1:33:10_,
1:34:13_, 1:36:11_, 1:42:12
_, 1:42:19_, 1:43:8_, 1:44:3_,
1:45:11_, 1:45:13_, 1:47:22
_, 1:52:11_, 1:58:13_,
1:63:10_, 1:65:19_, 1:71:22
_, 1:74:6_, 1:84:16_, 1:88:5_,
1:93:17_, 1:94:13_, 1:98:6_,
1:98:9_, 1:101:25_, 1:103:25
_, 1:111:12_, 1:114:15_,
1:117:19_, 1:118:6_, 1:120:1
_, 1:120:6_, 1:124:22_,
1:126:12_, 1:134:5_,
1:136:16_, 1:136:17_,
1:136:21_, 1:136:25_,
1:137:3_, 1:137:20_, 1:140:3
_, 1:152:4_, 1:160:5

surgeons [1]_ - 1:100:2

surprise [1]_ - 1:89:18

Synar [2]_ - 1:93:13_,
1:112:2

synonymous [1]_ -
1:154:10

—————

T

table [1]_ - 1:35:12

tad [1]_ - 1:75:9

talks [3]_ - 1:48:2_, 1:49:14
_, 1:154:3

tap [2]_ - 1:106:15_,
1:106:16

tapes [1]_ - 1:115:2

target [1]_ - 1:95:17

targeted [1]_ - 1:97:23

task [10]_ - 1:96:23_,
1:96:24_, 1:97:15_, 1:97:18
_, 1:97:24_, 1:99:1_, 1:102:4
_, 1:102:6_, 1:102:9

tasks [2]_ - 1:98:22_,
1:102:5

tax [1]_ - 1:155:20

team [1]_ - 1:5:25

Teapot [3]_ - 1:60:23_,
1:111:7_, 1:156:25

technical [1]_ - 1:44:23

techniques [1]_ - 1:89:18

Ted [1]_ - 1:101:24

temporary [10]_ - 1:96:9_,
1:96:20_, 1:100:3_, 1:102:3
_, 1:103:15_, 1:103:18_,
1:112:8_, 1:123:23_, 1:124:4
_, 1:132:15

Tennessee [1]_ - 1:154:1

tense [4]_ - 1:19:18_,
1:19:23_, 1:21:6_, 1:69:21

tension [3]_ - 1:7:12_,
1:90:25_, 1:97:7

tensions [1]_ - 1:91:15

tenure [8]_ - 1:92:19_,
1:94:3_, 1:98:14_, 1:98:17_,
1:98:18_, 1:99:22_, 1:100:6

term [39]_ - 1:9:22_, 1:11:7
_, 1:12:16_, 1:13:19_,
1:15:20_, 1:15:22_, 1:16:8_,
1:17:4_, 1:53:12_, 1:54:15_,
1:54:20_, 1:55:10_, 1:55:18
_, 1:58:24_, 1:59:23_,
1:59:24_, 1:61:6_, 1:64:6_,
1:81:13_, 1:82:9_, 1:88:2_,
1:88:13_, 1:88:19_, 1:89:1_,
1:89:2_, 1:89:6_, 1:90:3_,
1:90:6_, 1:109:8_, 1:126:9_,
1:126:11_, 1:130:2_, 1:141:4
_, 1:141:11_, 1:141:19_,
1:141:20_, 1:141:22_,
1:153:15

terminate [2]_ - 1:33:9_,
1:49:2

terminated [2]_ - 1:96:25
_, 1:102:7

terminates [1]_ - 1:75:15

terminology [8]_ -
1:20:19_, 1:20:22_, 1:21:19
_, 1:21:25_, 1:23:1_, 1:43:22
_, 1:59:2_, 1:61:13

terms [21]_ - 1:6:12_,

1:16:24_, 1:19:18_, 1:25:24
_, 1:26:21_, 1:29:2_, 1:32:9_,
1:35:7_, 1:39:18_, 1:47:5_,
1:47:19_, 1:52:24_, 1:54:16
_, 1:64:22_, 1:64:25_, 1:79:9
_, 1:98:5_, 1:142:16_,
1:144:10_, 1:151:25_,
1:154:14

test [4]_ - 1:32:7_, 1:40:21
_, 1:97:8_, 1:155:10

testimony [2]_ - 1:26:13_,
1:28:12

tests [1]_ - 1:73:2

text [35]_ - 1:8:3_, 1:8:4_,
1:8:12_, 1:10:6_, 1:14:21_,
1:15:21_, 1:18:19_, 1:18:24
_, 1:22:18_, 1:23:17_, 1:24:4
_, 1:27:15_, 1:28:6_, 1:28:7_,
1:28:25_, 1:34:1_, 1:36:15_,
1:39:16_, 1:40:17_, 1:45:22
_, 1:51:12_, 1:53:8_, 1:62:10
_, 1:62:12_, 1:62:14_,
1:63:11_, 1:64:17_, 1:89:25
_, 1:119:14_, 1:119:18_,
1:124:23_, 1:133:14_,
1:139:10_, 1:139:19_,
1:144:24

text/history [1]_ - 1:41:1

textual [17]_ - 1:13:15_,
1:15:12_, 1:19:5_, 1:20:13_,
1:23:6_, 1:31:5_, 1:33:16_,
1:37:12_, 1:39:2_, 1:39:25_,
1:44:5_, 1:53:17_, 1:59:20_,
1:60:4_, 1:62:9_, 1:66:13_,
1:81:14

textually [2]_ - 1:12:25_,
1:81:1

thanking [1]_ - 1:71:6

THE [255]_ - 1:3:2_, 1:3:11
_, 1:3:15_, 1:3:19_, 1:3:24_,
1:4:8_, 1:4:14_, 1:6:4_, 1:6:8
_, 1:6:15_, 1:6:18_, 1:6:20_,
1:7:7_, 1:7:15_, 1:7:19_,
1:9:25_, 1:10:4_, 1:10:11_,
1:11:4_, 1:12:1_, 1:12:18_,
1:12:22_, 1:13:22_, 1:15:7_,
1:15:24_, 1:16:15_, 1:16:18
_, 1:16:20_, 1:17:22_, 1:18:5
_, 1:18:17_, 1:19:11_,
1:20:19_, 1:21:3_, 1:21:11_,
1:21:15_, 1:22:5_, 1:22:21_,
1:23:9_, 1:24:2_, 1:24:14_,
1:25:1_, 1:25:22_, 1:27:10_,
1:27:15_, 1:28:4_, 1:29:5_,
1:30:11_, 1:31:3_, 1:31:14_,
1:32:5_, 1:32:19_, 1:34:11_,
1:35:20_, 1:36:4_, 1:36:21_,
1:37:2_, 1:37:21_, 1:39:7_,

1:40:6_, 1:40:13_, 1:41:14_,
1:41:17_, 1:42:19_, 1:43:22
_, 1:44:14_, 1:45:22_,
1:46:12_, 1:46:16_, 1:47:5_,
1:47:13_, 1:48:17_, 1:49:7_,
1:50:10_, 1:50:18_, 1:50:23
_, 1:51:6_, 1:51:11_, 1:52:7_,
1:52:19_, 1:52:24_, 1:53:8_,
1:54:12_, 1:54:19_, 1:54:25
_, 1:55:24_, 1:56:25_,
1:57:19_, 1:57:25_, 1:58:8_,
1:58:15_, 1:58:22_, 1:59:15
_, 1:59:20_, 1:60:5_, 1:61:12
_, 1:62:3_, 1:62:14_, 1:63:9_,
1:64:16_, 1:65:12_, 1:65:14
_, 1:65:16_, 1:66:15_,
1:67:11_, 1:68:4_, 1:68:8_,
1:69:8_, 1:69:19_, 1:70:3_,
1:70:13_, 1:70:16_, 1:70:24
_, 1:74:9_, 1:74:22_, 1:75:9_,
1:75:18_, 1:76:2_, 1:76:15_,
1:76:19_, 1:77:3_, 1:77:9_,
1:77:21_, 1:79:3_, 1:79:9_,
1:79:21_, 1:79:24_, 1:80:6_,
1:80:9_, 1:80:11_, 1:80:13_,
1:80:18_, 1:80:23_, 1:81:17
_, 1:81:20_, 1:82:4_, 1:83:5_,
1:83:8_, 1:83:12_, 1:84:19_,
1:84:25_, 1:85:25_, 1:87:2_,
1:87:8_, 1:87:14_, 1:87:17_,
1:88:1_, 1:88:21_, 1:90:5_,
1:90:15_, 1:90:18_, 1:91:9_,
1:92:13_, 1:95:7_, 1:96:4_,
1:96:10_, 1:97:20_, 1:98:5_,
1:99:18_, 1:100:17_,
1:101:15_, 1:102:12_,
1:102:24_, 1:104:6_, 1:104:9
_, 1:105:5_, 1:106:6_,
1:106:12_, 1:106:23_,
1:107:17_, 1:107:19_,
1:107:22_, 1:109:4_, 1:109:6
_, 1:110:15_, 1:110:19_,
1:111:4_, 1:112:18_,
1:112:21_, 1:112:25_,
1:113:3_, 1:115:12_,
1:115:22_, 1:116:5_, 1:116:9
_, 1:117:17_, 1:117:25_,
1:118:25_, 1:119:2_, 1:119:9
_, 1:119:14_, 1:119:18_,
1:120:12_, 1:121:18_,
1:122:10_, 1:122:14_,
1:123:6_, 1:123:12_,
1:124:16_, 1:125:15_,
1:125:22_, 1:126:4_,
1:127:21_, 1:127:25_,
1:128:9_, 1:128:16_,
1:128:21_, 1:129:9_,
1:129:18_, 1:130:14_,
1:130:23_, 1:131:3_, 1:131:8
_, 1:131:23_, 1:132:16_,
1:133:3_, 1:133:12_,

1:135:18_, 1:137:17_,
1:138:24_, 1:141:15_,
1:142:5_, 1:142:22_,
1:143:10_, 1:145:1_, 1:147:6
_, 1:147:8_, 1:147:18_,
1:148:3_, 1:148:10_,
1:148:20_, 1:149:3_,
1:149:15_, 1:150:3_,
1:150:10_, 1:150:19_,
1:151:10_, 1:151:22_,
1:152:13_, 1:153:1_,
1:153:6, 1:153:20_, 1:153:24
_, 1:155:24_, 1:157:7_,
1:157:13_, 1:157:15_,
1:157:25_, 1:158:4_,
1:158:11_, 1:158:22_,
1:159:7_, 1:159:21_,
1:159:24_, 1:160:23

Theodore [2]_ - 1:60:21_,
1:110:3

theoretically [1]_ -
1:136:2

therefore [3]_ - 1:115:25_,
1:116:15_, 1:152:6

thinking [1]_ - 1:38:23

thinks [1]_ - 1:151:15

third [3]_ - 1:91:2_, 1:97:8
_, 1:114:6

Thomas [1]_ - 1:110:25

thorough [1]_ - 1:111:2

thoughtful [1]_ - 1:7:10

thoughts [3]_ - 1:49:13_,
1:87:17_, 1:89:11

three [18]_ - 1:5:3_, 1:5:20
_, 1:58:6_, 1:61:3_, 1:66:6_,
1:66:16_, 1:96:21_, 1:97:8_,
1:97:13_, 1:97:14_, 1:101:22
_, 1:102:8_, 1:102:9_,
1:113:22_, 1:114:14_,
1:157:24_, 1:158:1_, 1:158:8

three-factor [1]_ - 1:97:8

throughout [4]_ - 1:10:12
_, 1:10:15_, 1:51:20_,
1:144:3

thrown [1]_ - 1:99:18

thrust [2]_ - 1:139:3_,
1:155:5

ticket [1]_ - 1:94:14

Tillman [4]_ - 1:5:9_,
1:7:10_, 1:90:22_, 1:155:5

tilting [1]_ - 1:63:4

title [3]_ - 1:15:23_, 1:38:14
_, 1:154:6

Title [14]_ - 1:7:2_, 1:8:1_,
1:9:19_, 1:13:7_, 1:13:18_,

1:13:19_, 1:16:3_, 1:18:20_,
1:30:21_, 1:120:10_,
1:127:12_, 1:127:20_,
1:128:8_, 1:130:6

today [32]_ - 1:3:14_,
1:4:19_, 1:5:23_, 1:6:13_,
1:6:16_, 1:6:23_, 1:20:4_,
1:23:22_, 1:27:21_, 1:28:17
_, 1:29:22_, 1:36:20_,
1:39:16_, 1:40:19_, 1:61:14
_, 1:61:22_, 1:62:2_, 1:71:7_,
1:71:8_, 1:90:24_, 1:91:6_,
1:92:15_, 1:93:24_, 1:95:25
_, 1:104:23_, 1:107:14_,
1:113:8_, 1:118:8_, 1:130:1
_, 1:133:24_, 1:134:15_,
1:161:2

Todd [1]_ - 1:3:13

together [3]_ - 1:20:1_,
1:141:9_, 1:147:4

tolerated [2]_ - 1:124:18_,
1:124:20

tomorrow [1]_ - 1:98:1

took [3]_ - 1:51:11_,
1:146:7_, 1:158:16

tool [1]_ - 1:126:13

top [1]_ - 1:68:6

topic [2]_ - 1:145:12_,
1:155:25

touch [2]_ - 1:147:11_,
1:156:2

touched [4]_ - 1:77:21_,
1:140:20_, 1:146:6_,
1:154:19

toward [1]_ - 1:35:25

towards [3]_ - 1:25:7_,
1:35:25_, 1:88:12

track [1]_ - 1:51:12

tracking [1]_ - 1:49:8

tracks [1]_ - 1:91:22

Trademark [1]_ - 1:50:7

traditional [1]_ - 1:79:17

transcript [1]_ - 1:144:23

transform [3]_ - 1:151:20
_, 1:153:11_, 1:157:10

transition [1]_ - 1:153:13

Transportation [1]_ -
1:9:17

traveling [1]_ - 1:113:9

travels [1]_ - 1:161:8

treasury [1]_ - 1:89:21

treat [8]_ - 1:45:16_,
1:83:12_, 1:118:4_, 1:140:5
_, 1:140:6_, 1:150:21_,

1:155:1

treated [9]_ - 1:21:16_,
1:81:21_, 1:82:10_, 1:113:23
_, 1:119:7_, 1:138:17_,
1:138:20_, 1:158:23_,
1:160:3

treating [2]_ - 1:38:18_,
1:140:7

treatise [9]_ - 1:42:2_,
1:118:8_, 1:118:10_,
1:118:12_, 1:118:14_,
1:118:17_, 1:119:6_, 1:160:7
_, 1:160:15

treats [1]_ - 1:40:2

tremendous [1]_ -
1:137:25

trends [1]_ - 1:25:7

trial [4]_ - 1:41:13_, 1:138:3
_, 1:138:4_, 1:138:5

tried [2]_ - 1:122:25_,
1:123:1

trio [1]_ - 1:131:8

trouble [1]_ - 1:34:15

true [24]_ - 1:20:16_, 1:44:2
_, 1:46:3_, 1:48:3_, 1:48:23_,
1:51:21_, 1:54:5_, 1:75:11_,
1:82:19_, 1:83:21_, 1:85:20
_, 1:88:1_, 1:98:8_, 1:130:18
_, 1:135:4_, 1:137:4_,
1:146:20_, 1:153:10_,
1:157:14_, 1:157:22_,
1:157:23_, 1:158:20

Trump [15]_ - 1:3:5_,
1:3:13_, 1:6:14_, 1:91:1_,
1:91:19_, 1:97:15_, 1:97:17
_, 1:101:3_, 1:103:11_,
1:105:18_, 1:105:19_,
1:106:19_, 1:107:13_,
1:107:14_, 1:110:8

Trump's [3]_ - 1:4:20_,
1:22:13_, 1:91:14

try [6]_ - 1:17:4_, 1:20:13_,
1:34:17_, 1:107:5_, 1:139:12
_, 1:147:10

trying [4]_ - 1:16:7_, 1:43:5
_, 1:104:4_, 1:149:10

turn [12]_ - 1:5:24_, 1:13:22
_, 1:45:22_, 1:46:12_,
1:49:21_, 1:80:14_, 1:87:2_,
1:91:5_, 1:100:25_, 1:103:12
_, 1:109:16_, 1:119:18

turned [2]_ - 1:115:10_,
1:134:25

turning [2]_ - 1:48:1_,
1:77:21

turns [2]_ - 1:37:18_,

1:150:1

twice [1]_ - 1:94:20

two [49]_ - 1:6:23_, 1:7:25_,
1:11:3_, 1:15:15_, 1:16:14_,
1:20:1_, 1:24:24_, 1:38:17_,
1:38:19_, 1:39:10_, 1:39:11
_, 1:39:13_, 1:39:17_, 1:41:7
_, 1:41:8_, 1:49:13_, 1:53:11
_, 1:55:5_, 1:57:6_, 1:60:4_,
1:61:3_, 1:64:3_, 1:71:8_,
1:71:21_, 1:75:1_, 1:80:19_,
1:84:23_, 1:91:16_, 1:100:1
_, 1:100:7_, 1:100:22_,
1:102:6_, 1:108:3_, 1:111:1
_, 1:111:9_, 1:113:17_,
1:114:2_, 1:114:8_, 1:114:16
_, 1:117:4_, 1:121:25_,
1:126:11_, 1:130:21_,
1:133:14_, 1:133:15_,
1:147:4

type [23]_ - 1:10:17_,
1:11:1_, 1:11:20_, 1:11:24_,
1:13:14_, 1:13:15_, 1:17:4_,
1:19:2_, 1:19:3_, 1:28:12_,
1:29:11_, 1:29:21_, 1:35:18
_, 1:38:9_, 1:39:21_, 1:58:9_,
1:60:7_, 1:63:3_, 1:72:18_,
1:79:4_, 1:118:14_, 1:139:24
_, 1:141:24

types [9]_ - 1:15:15_,
1:16:14_, 1:28:15_, 1:29:12
_, 1:29:13_, 1:32:21_,
1:45:12_, 1:145:23_,
1:152:23

U

U.S [63]_ - 1:10:12_,
1:10:16_, 1:18:3_, 1:21:2_,
1:24:11_, 1:29:2_, 1:29:13_,
1:29:15_, 1:31:15_, 1:31:20
_, 1:31:22_, 1:32:1_, 1:38:16
_, 1:51:1_, 1:51:2_, 1:66:10_,
1:66:11_, 1:77:16_, 1:82:8_,
1:83:8_, 1:83:20_, 1:87:4_,
1:103:4_, 1:103:5_, 1:110:7
_, 1:113:15_, 1:113:23_,
1:114:14_, 1:115:18_,
1:117:7_, 1:120:10_,
1:120:20_, 1:121:5_, 1:121:8
_, 1:121:15_, 1:121:17_,
1:121:23_, 1:122:2_, 1:122:9
_, 1:123:3_, 1:123:5_,
1:123:7_, 1:123:13_,
1:123:19_, 1:123:23_,
1:124:8_, 1:124:12_,
1:125:12_, 1:125:16_,
1:125:19_, 1:126:25_,
1:128:25_, 1:129:3_, 1:129:6

_, 1:130:9_, 1:130:12_, 1:132:15_, 1:134:5_, 1:136:14_, 1:137:21_, 1:138:10_, 1:157:22

U.S.C [6]_ - 1:10:3_, 1:31:23_, 1:43:13_, 1:47:22 _, 1:104:15_, 1:114:3

ultimate [3]_ - 1:49:4_, 1:150:16_, 1:152:11

ultimately [5]_ - 1:22:19_, 1:24:3_, 1:25:19_, 1:33:10_, 1:49:15

Ulysses [3]_ - 1:60:16_, 1:106:1_, 1:156:6

umbrella [5]_ - 1:88:13_, 1:89:6_, 1:89:9_, 1:89:19_, 1:99:4

unanimous [1]_ - 1:72:19

unchallengeable [1]_ - 1:146:15

unchallenged [1]_ - 1:139:6

unclear [1]_ - 1:126:7

unconstitutional [2]_ - 1:93:19_, 1:146:23

unconstitutionally [2]_ - 1:68:14_, 1:156:13

uncontested [1]_ - 1:43:1

under [37]_ - 1:19:20_, 1:19:24_, 1:25:22_, 1:26:24 _, 1:29:23_, 1:38:9_, 1:42:15 _, 1:43:14_, 1:46:6_, 1:48:15 _, 1:58:13_, 1:59:9_, 1:66:8_, 1:91:3_, 1:101:4_, 1:108:1_, 1:113:24_, 1:114:12_, 1:119:5_, 1:123:14_, 1:134:1 _, 1:135:5_, 1:136:5_, 1:136:19_, 1:137:10_, 1:138:9_, 1:138:15_, 1:139:5 _, 1:140:23_, 1:143:6_, 1:146:16_, 1:151:6_, 1:152:22_, 1:156:24_, 1:159:15

undermine [1]_ - 1:69:24

undermines [1]_ - 1:113:13

understood [7]_ - 1:28:11 _, 1:28:12_, 1:63:3_, 1:85:14 _, 1:105:11_, 1:149:21_, 1:155:5

undisputed [2]_ - 1:34:20 _, 1:140:12

unfair [1]_ - 1:26:4

uniformly [2]_ - 1:41:9_, 1:125:15

unique [8]_ - 1:92:3_, 1:92:18_, 1:92:19_, 1:94:3_, 1:94:13_, 1:94:20_, 1:106:3 _, 1:110:5

Unique [1]_ - 1:94:8

uniqueness [3]_ - 1:94:17 _, 1:112:4

United [45]_ - 1:3:4_, 1:3:10_, 1:5:7_, 1:11:6_, 1:17:12_, 1:17:14_, 1:40:12 _, 1:41:9_, 1:43:13_, 1:47:21 _, 1:47:24_, 1:55:20_, 1:56:21_, 1:57:10_, 1:57:15 _, 1:57:17_, 1:57:24_, 1:58:5 _, 1:71:22_, 1:81:6_, 1:84:16 _, 1:84:17_, 1:87:25_, 1:91:25_, 1:92:17_, 1:95:12 _, 1:102:17_, 1:102:19_, 1:102:20_, 1:103:2_, 1:103:6 _, 1:108:12_, 1:109:3_, 1:113:7_, 1:134:6_, 1:135:2 _, 1:135:16_, 1:137:9_, 1:153:22_, 1:154:2_, 1:154:5 _, 1:154:23

united [1]_ - 1:91:2

universe [1]_ - 1:151:24

University [1]_ - 1:110:21

unlawful [1]_ - 1:4:21

unlawfully [1]_ - 1:84:17

unless [6]_ - 1:44:7_, 1:93:8_, 1:136:11_, 1:137:15 _, 1:156:12_, 1:160:21

unwarranted [2]_ - 1:48:15_, 1:151:6

up [38]_ - 1:4:2_, 1:4:11_, 1:6:10_, 1:11:2_, 1:17:18_, 1:20:12_, 1:36:17_, 1:49:24 _, 1:51:13_, 1:53:1_, 1:55:15 _, 1:58:25_, 1:60:24_, 1:61:4 _, 1:66:13_, 1:76:16_, 1:84:6 _, 1:85:23_, 1:86:11_, 1:92:11_, 1:94:9_, 1:97:8_, 1:99:20_, 1:104:13_, 1:104:22_, 1:107:20_, 1:111:4_, 1:111:14_, 1:112:7 _, 1:126:9_, 1:133:13_, 1:140:2_, 1:143:10_, 1:145:13_, 1:147:12_, 1:149:11_, 1:157:4_, 1:159:21

update [1]_ - 1:151:3

updated [1]_ - 1:100:13

upheld [1]_ - 1:148:4

uphold [1]_ - 1:74:2

upshot [1]_ - 1:76:11

urge [1]_ - 1:138:22

urging [1]_ - 1:36:14

Urquidez [1]_ - 1:44:14

useful [3]_ - 1:66:23_, 1:110:15_, 1:111:3

uses [7]_ - 1:13:8_, 1:54:15_, 1:81:4_, 1:82:9_, 1:89:25_, 1:109:23_, 1:154:13

usual [1]_ - 1:4:1

## V

Valeo [1]_ - 1:102:16

valid [5]_ - 1:53:5_, 1:106:21_, 1:107:12_, 1:117:4_, 1:140:7

validity [4]_ - 1:33:17_, 1:34:5_, 1:44:17_, 1:67:5

validly [8]_ - 1:43:2_, 1:113:19_, 1:115:11_, 1:115:15_, 1:117:4_, 1:118:23_, 1:134:7_, 1:134:8

Valley [1]_ - 1:154:1

value [2]_ - 1:26:7_, 1:118:15

varied [1]_ - 1:22:14

variety [1]_ - 1:124:3

various [9]_ - 1:10:12_, 1:18:6_, 1:18:7_, 1:58:3_, 1:66:18_, 1:87:9_, 1:105:12 _, 1:122:14_, 1:122:15

venued [1]_ - 1:18:14

verb [1]_ - 1:21:6

Verdugo [1]_ - 1:44:14

Verdugo-Urquidez [1]_ - 1:44:14

versus [9]_ - 1:9:1_, 1:16:21_, 1:35:21_, 1:46:10 _, 1:47:10_, 1:49:6_, 1:50:14 _, 1:109:12_, 1:143:15

vest [3]_ - 1:83:16_, 1:112:2_, 1:136:17

vested [5]_ - 1:63:19_, 1:64:9_, 1:71:11_, 1:93:15_, 1:156:19

vesting [22]_ - 1:9:25_, 1:12:23_, 1:12:24_, 1:54:12 _, 1:54:19_, 1:54:21_, 1:54:22_, 1:55:2_, 1:81:17_, 1:81:21_, 1:82:1_, 1:82:8_, 1:82:16_, 1:87:10_, 1:88:22 _, 1:89:7_, 1:89:9_, 1:89:20_, 1:90:10_, 1:141:14_, 1:153:15

video [1]_ - 1:4:16

view [32]_ - 1:4:9_, 1:7:17_, 1:19:11_, 1:24:2_, 1:24:14_, 1:25:15_, 1:30:14_, 1:37:2_, 1:53:5_, 1:55:12_, 1:87:4_, 1:96:13_, 1:109:6_, 1:109:13 _, 1:109:15_, 1:109:16_, 1:118:1_, 1:120:4_, 1:122:8 _, 1:122:9_, 1:126:4_, 1:127:22_, 1:128:16_, 1:130:15_, 1:132:16_, 1:137:11_, 1:141:15_, 1:152:22_, 1:157:18_, 1:158:12_, 1:159:16_, 1:160:16

viewed [5]_ - 1:61:7_, 1:63:6_, 1:122:1_, 1:124:4_, 1:124:8

viewing [1]_ - 1:128:2

views [1]_ - 1:25:15

violations [1]_ - 1:75:19

virtually [2]_ - 1:46:20_, 1:46:24

void [1]_ - 1:86:11

## W

wait [2]_ - 1:56:25_, 1:104:18

walk [1]_ - 1:111:2

wall [1]_ - 1:108:9

Walsh [1]_ - 1:125:2

Waltine [1]_ - 1:3:5

wants [7]_ - 1:41:2_, 1:54:7_, 1:54:8_, 1:79:11_, 1:94:13_, 1:126:21_, 1:131:14

warrant [1]_ - 1:29:17

warranted [1]_ - 1:67:20

Watergate [6]_ - 1:52:15 _, 1:65:13_, 1:65:14_, 1:111:22_, 1:112:1_, 1:115:2

ways [5]_ - 1:18:10_, 1:28:22_, 1:75:1_, 1:77:8_, 1:89:14

weekend [1]_ - 1:161:7

weeks [1]_ - 1:124:1

weight [2]_ - 1:25:15_, 1:93:22

weird [1]_ - 1:52:11

Weiss [5]_ - 1:51:24_, 1:63:10_, 1:77:15_, 1:125:21 _, 1:126:23

well-defined [1]_ - 1:18:6

whatsoever [2]_ - 1:33:2 _, 1:118:21

whereas [3]– - 1:57:8.., 1:107:13.., 1:139:24

whichever [1]– - 1:71:17

whiskey [1]– - 1:60:17

Whiskey [2]– - 1:60:17.., 1:110:12

White [1]– - 1:139:17

white [1]– - 1:100:21

whoa [2]– - 1:102:23.., 1:112:7

whole [6]– - 1:34:8.., 1:42:6.., 1:113:14.., 1:120:8.., 1:120:19.., 1:149:19

wholly [2]– - 1:27:3.., 1:72:12

wide [2]– - 1:124:3.., 1:155:6

wide-ranging [1]– - 1:155:6

wield [1]– - 1:138:16

wielded [1]– - 1:31:13

wielding [1]– - 1:100:19

wields [1]– - 1:79:5

William [2]– - 1:97:13.., 1:120:5

Williamson [1]– - 1:120:5

winding [1]– - 1:6:10

wins [1]– - 1:19:6

wish [4]– - 1:13:23.., 1:52:10.., 1:133:3.., 1:161:7

wishing [1]– - 1:4:9

wit [1]– - 1:154:20

wondering [2]– - 1:19:13.., 1:30:14

WOODWARD [2]– - 1:3:17.., 1:6:17

Woodward [2]– - 1:3:18.., 1:6:15

word [40]– - 1:10:1.., 1:10:11.., 1:11:10.., 1:12:23.., 1:13:6.., 1:13:8.., 1:21:3.., 1:34:16.., 1:37:6.., 1:55:2.., 1:56:13.., 1:57:6.., 1:62:16.., 1:62:20.., 1:63:2.., 1:63:17.., 1:63:23.., 1:64:4.., 1:64:13.., 1:68:5.., 1:81:4.., 1:81:8.., 1:81:13.., 1:81:23.., 1:82:5.., 1:88:10.., 1:88:12.., 1:88:15.., 1:88:22.., 1:89:25.., 1:90:9.., 1:90:12.., 1:94:20.., 1:100:4.., 1:101:9.., 1:108:6.., 1:109:23.., 1:131:2.., 1:135:19

words [11]– - 1:13:3..,

1:63:12.., 1:88:5.., 1:88:10.., 1:90:10.., 1:99:23.., 1:100:21.., 1:106:17.., 1:108:3.., 1:142:19.., 1:156:9

works [1]– - 1:74:16

world [1]– - 1:125:24

worried [1]– - 1:126:15

wrangling [1]– - 1:33:19

wrap [4]– - 1:107:20.., 1:133:13.., 1:143:10.., 1:159:21

wrote [4]– - 1:93:24.., 1:101:9.., 1:110:21.., 1:133:10

Y

year [8]– - 1:26:18.., 1:102:1.., 1:106:8.., 1:106:10.., 1:106:20.., 1:107:15.., 1:132:14

yearly [1]– - 1:85:9

years [10]– - 1:56:6.., 1:68:14.., 1:72:3.., 1:72:15.., 1:85:15.., 1:86:11.., 1:86:20.., 1:99:14.., 1:101:24.., 1:124:22

York [2]– - 1:23:10.., 1:59:6

Z

zero [2]– - 1:150:4.., 1:150:7

zooming [1]– - 1:27:10