UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON

**UNITED STATES OF AMERICA**,

 Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA,** and
**CARLOS DE OLIVEIRA,**

 Defendants.
_____/

**ORDER DENYING MOTION FOR *FRANKS* HEARING AND RESERVING RULING
ON BALANCE OF MOTION PENDING NECESSARY FACTUAL DEVELOPMENT**

 **THIS CAUSE** comes before the Court upon Defendant Trump's "Motion for Relief Relating to the Mar-A-Lago Raid and Unlawful Piercing of Attorney-Client Privilege" (the "Motion") [ECF No. 566]. The Court has reviewed the Motion, the Special Counsel's Opposition [ECF No. 567], Defendant Trump's Reply [ECF No. 568], and all associated exhibits.[1] The Court also heard legal argument on the Motion on June 25, 2024—starting first in sealed session to discuss presumptively privileged information with respect to Defendant Trump's challenge to application of the crime-fraud exception in a grand jury proceeding in the United States District Court for the District of Columbia, and then later in public session to hear legal argument on the balance of the Motion and the need for further factual development [ECF No. 605 p. 2; ECF No. 650; ECF No. 653 (Sealed)].

 Upon full review, and for the reasons stated below, the Motion is **DENIED** as to the request for a *Franks* hearing because Defendant Trump has not made the requisite "substantial preliminary

---

[1] Sealed, unredacted versions of the Motion and Opposition are located at ECF Nos. 571 and 559.

showing" that the affidavit in support of the Mar-a-Lago search warrant contains any material false statements or omissions. The balance of the Motion cannot be resolved on the current record, however, because of pertinent factual disputes, and thus the Court **RESERVES RULING** on those issues as stated below, pending an evidentiary suppression hearing to be scheduled by separate order.

## DISCUSSION

### A. LEGAL PRINCIPLES GOVERNING A *FRANKS* HEARING

The Supreme Court has expressed "a strong preference" for searches conducted pursuant to a warrant and has directed courts to accord "great deference" to a magistrate's determination of probable cause. *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal quotation marks omitted); *id.* at 922 ("[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.") (internal quotation marks omitted). To this end, affidavits supporting warrants are presumptively valid, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and courts should not invalidate warrants by interpreting affidavits in a "hypertechnical, rather than . . . commonsense, manner," *Illinois v. Gates*, 462 U.S. 213, 236, (1983) (internal quotation marks omitted).

As enunciated in *Franks*, however, deference to a magistrate's determination of probable cause "does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *Leon*, 468 U.S. at 914. This derives from the root assumption that, when the Fourth Amendment requires probable cause for the issuance of a warrant, the showing of probable cause will be "truthful." *Franks*, 438 U.S. at 164–65. "Truthful" in this context does not mean, however, "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered

hastily." *Id.* at 165. "But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id*.

Accordingly, a defendant may challenge the veracity of an affidavit under *Franks* if he makes a "substantial preliminary showing" that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause. *Id.* at 155–56. If the defendant makes such a substantial showing, he is entitled to an evidentiary hearing on the issue. *Id*. at 155. The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking. *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001).

B. **REQUEST FOR *FRANKS* HEARING**

Defendant Trump has not made the requisite "substantial preliminary showing" to warrant a *Franks* hearing. He identifies four omissions in the warrant, but none of the omitted information—even if added to the affidavit in support of the warrant—would have defeated a finding of probable cause.[2]

The first cited omission derives from the June 2023 testimony given by a high-level FBI supervisor previously involved in the classified-documents investigation—specifically, an Assistant Director-in-Charge of the FBI's Washington Field Office at the time of the Mar-a-Lago search. Prior to execution of the search warrant, this official voiced his belief to the FBI Deputy Director that it would have been "the best thing for all parties" first to seek consent for the search from former President Trump's attorney rather than proceed at that time with execution of the warrant [ECF No. 566 pp. 2, 6; Transcript pp. 23–24 (https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2023-06-07-ti-of-steven-

---

[2] The Motion does not meaningfully challenge the presence of probable cause in the affidavit.

dantuono-redacted.pdf)]. The official acknowledged in his testimony, however, that the ultimate decision to proceed with the search was not "against the law" or "against Bureau policy"—simply that he "just didn't think it was the right direction" [Transcript pp. 23, 29–30, 92]. There is no dispute that the FBI official supervised the affiant who swore out the affidavit in support of the Mar-a-Lago search.

Even accepting those statements by the high-level FBI official, the Motion offers an insufficient basis to believe that inclusion in the affidavit of that official's perspective (or of the dissenting views of other FBI agents as referenced generally in his testimony) would have altered the evidentiary calculus in support of probable cause for the alleged offenses. Nor did Defendant Trump meaningfully argue otherwise at the hearing. Further, insofar as the Motion characterizes the omitted information as a material misrepresentation in the "request for sealing" section of the affidavit (rather than as an omission) [ECF No. 566 p. 6 (referencing ECF No. 566-2 ¶ 80)], the Court agrees with the Special Counsel that the sealing section does not undermine the probable cause set forth in the affidavit.

The second omission concerns a failure to disclose that "presidents are not required to obtain clearances and that sensitive briefings including classified information had been provided to President Trump at Mar-a-Lago and other residences during his presidency" [ECF No. 566 pp. 8–9]. Even accepting that information as helpful context, the Motion does not explain how inclusion of that information would have made a material difference to the magistrate's legal determination of probable cause based on the factual content in the affidavit.

The third omission, described also as a misrepresentation in the Motion, concerns the defense contention that "the FBI was working with DOJ before NARA-OIG sent the referral email" [ECF No. 566 p. 9]. The argument here, raised previously in Defendant Trump's pending Motions to Compel, is that NARA had coordinated with law enforcement and certain components

within the White House prior to NARA-OIG's formal referral of the matter to DOJ on February 9, 2022 [ECF No. 469 pp. 8–13].  Whatever significance that suggestion may or may not carry for purposes of discovery requests in this case, the Court sees no basis to believe that it undermines or defeats the probable cause in the affidavit or the veracity of the affiant's submission.

The final cited omission concerns the absence of a definition of "personal records" under the Presidential Records Act (PRA) and related caselaw on a former President's authority to designate records as "personal" under that Act [ECF No. 566 p. 9 (citing *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 845 F. Supp. 2d 288, 300–304 (D.D.C. 2012))].  According to Defendant Trump, the affidavit offered the reviewing magistrate some guidance on the relevant legal statutes and definitions, including the definition of "Presidential records" under the PRA, but it did not include a definition for "personal records" under the Act, which is "significant" in light of the affiant's decision "to include caselaw regarding the NDI [national defense information] element [in 18 U.S.C. § 793(e)]" [ECF No. 566 p. 9 (referencing ECF No. 566-2 p. 27 ¶ 60 & n.2)].  As with the earlier items in the *Franks* request, the Motion fails to explain how inclusion of more legal provisions or supporting caselaw on a contested legal question such as the applicability of the Presidential Records Act would have defeated probable cause given the content of the affidavit.  Nor does the Motion offer legal authority to suggest that inclusion of further discussion in the affidavit of a potential affirmative defense was legally required to be included as a matter of the Fourth Amendment.

For these reasons, Defendant Trump has failed to make the "substantial preliminary showing" required to warrant a *Franks* hearing.  That aspect of the Motion is denied.

C.  **AN EVIDENTIARY HEARING ON THE BALANCE OF DEFENDANT TRUMP'S MOTION TO SUPPRESS IS WARRANTED**

The Special Counsel vigorously opposes any further factual development on Defendant Trump's Motion to Suppress—both in the context of his challenge to the crime-fraud exception to

presumptively privileged attorney-client communications, and also with respect to Defendant Trump's particularity challenge to Attachment B to the search warrant. The Court cannot agree.

1. **Crime-Fraud Exception**

On the "crime-fraud issue," both sides concur, consistent with Eleventh Circuit law, that "once the grand jury has received evidence that the putative defendant contends was illegally obtained, or has heard testimony that the putative defendant contends was protected by privilege"—as Defendant Trump argues happened in the District of Columbia grand jury proceeding—"the appropriate remedy is a post-indictment motion in limine to suppress the use of the evidence or testimony at trial." *In re Grand Jury Proc.*, 142 F.3d 1416, 1428 (11th Cir. 1998). Defendant Trump has filed such a Motion here, in this Court [ECF No. 566], and he has requested an evidentiary hearing at which the Special Counsel—the party seeking to pierce the privilege— would have to show "that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987).[3]

There is nothing unduly prejudicial or legally erroneous about Defendant Trump's fact-development request as brought in the Motion to Suppress.

First, although Defendant Trump acknowledges that the grand jury's return of the Superseding Indictment qualifies as "prima facie" evidence for purposes of the first prong of the crime-fraud test, he makes clear that he disputes important factual findings reached by the United States District Court for the District of Columbia in the grand jury proceeding as relates to the

---

[3] The Eleventh Circuit does not appear to have elaborated specifically upon the burden of proof for the second prong in that crime-fraud analysis or upon the specific "degree of relatedness necessary to meet that standard." *Id.* at 1227. The Special Counsel agrees that he bears what is described as a low burden to prove the applicability of the crime-fraud exception.

6

second prong of that inquiry (whether the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it).

Second, it is the obligation of this Court to make factual findings afresh on the crime-fraud issue [*see* ECF No. 653 p. 34]. And a standard means by which to make such findings—as is customary in criminal suppression litigation—is following an evidentiary hearing at which both sides can present evidence (documentary and testimonial, as applicable).

Third, no party has offered any authority that would preclude a district court from exercising its discretion to permit a charged defendant from factually testing a government's proffer on the applicability of the crime-fraud exception, much less any authority impinging on a district court's reasonable discretion to permit development of a record on contested questions of fact (as is the case here on the second prong of the crime-fraud inquiry).

Fourth, although the Special Counsel may wish to avoid any cross-examination of any of its witnesses in a pre-trial evidentiary hearing—and although the Court acknowledges that prosecutorial interest—that position cannot overcome a defendant's right to make a proper, even if tailored, factual record on an important claim of privilege with constitutional dimensions.[4]

And fifth, no party has presented the Court with any authority resembling the current posture, where a defendant's presumptively privileged communications were "pierced" in a grand jury proceeding in one court—yet a different court, in the post-indictment context, refused a defendant's request simply to develop a factual record on essential questions underlying the privilege assertion.

---

[4] When asked what demonstrable prejudice would devolve to the Special Counsel from conducting an evidentiary hearing on Defendant Trump's Motion to Suppress (as distinct from the *Franks* request), the Special Counsel expressed a general disfavor with subjecting any of his witnesses to cross-examination and possible inconsistent statements.

This is not to say that the necessary evidentiary suppression hearing will devolve into a "mini trial," as the Special Counsel suggests. The concern about crime-fraud "mini-trials" has been expressed by courts in the grand jury context, *e.g.*, *In re Grand Jury Investigation*, 842 F.2d at 1226, and it makes sense that such a concern reasonably would apply in the post-indictment context, too, at least in a general way. But there is a difference between a resource-wasting and delay-producing "mini-trial," on the one hand, and an evidentiary hearing geared to adjudicating the contested factual and legal issues on a given pre-trial motion to suppress, on the other. More practically, the parties can meaningfully confer beforehand on the scope and timing of the hearing, raising appropriate objections with the Court as necessary; the parties can (and will) file exhibit and witness lists as is customary in federal criminal suppression litigation; and the Special Counsel can request the Court to impose reasonable limitations on the evidence produced to ensure efficiency and control. So too, for example, would it be appropriate to submit as an exhibit to the hearing the transcript of the District of Columbia grand jury proceeding (not yet received by this Court); any attachments already filed in connection with the Motion in this Court or in the grand jury proceeding; and any evidence submitted for review by the court that oversaw the grand jury proceeding (it appears no such exhibits were presented, although the matter is unclear).[5] *But it is an evidentiary hearing nonetheless, and it is before this Court—in this post-indictment context—to make factual findings on contested questions pertinent to the second prong of the crime-fraud exception.*

---

[5] The docket in the out-of-circuit grand jury proceeding remains in the District of Columbia. Defendant Nauta filed a motion to disclose and transfer that proceeding (and others) to this Court, which the Special Counsel opposed [ECF No. 499]. The district court for the District of Columbia denied the motion [ECF No. 551].

## 2. Particularity of Attachment B to Search Warrant

The Court now turns to Defendant Trump's Motion to Suppress the fruits of the warrant on the grounds of insufficient particularity under the Fourth Amendment as to Attachments A and B. On this issue, the Court has carefully reviewed the authorities provided, including the principal authority of *United States v. Wuagneux*, 683 F.2d 1343, 1351 & n.6 (11th Cir. 1982), and agrees with Defendant Trump that ambiguities persist in certain categories of terms in Attachment B (namely, "government and/or Presidential records" and "[i]information . . . regarding national defense information")—ambiguity that cannot be resolved on the current record alone. *See id.* (affirming denial of motion to suppress for lack of particularity despite ambiguous term in warrant, where warrant did not expressly reference or attach the clarifying affidavit *but where the factual record developed in the district court permitted an appellate conclusion that searching agents had sufficient guidance on items to be searched and seized*).

To be sure, the Special Counsel raises compelling arguments that Attachment B satisfies the Fourth Amendment's particularity requirement given its reference to "classification markings" and "classified material" in certain subparagraphs of that document [*see* ECF No. 567]. But the Court determines that some of the terms in that document (e.g., "national defense information" and "Presidential Records"), do not carry "generally understood meaning[s]" such that a law enforcement agent, without further clarification, would have known to identify such material as "seizable" property pursuant to Attachment B. *Wuagneux*, 683 F.2d at 1350; [*see* ECF Nos. 325, 377, 398, 402, 444 (briefing and argument on the term "national defense information")].[6] This argument also relates to Defendant Trump's claim that searching agents had impermissible

---

[6] It is no answer to say that three months prior to the Mar-a-Lago search, Defendant Trump's former attorney submitted a letter with "bedrock principles" to provide to a grand jury considering the investigation [ECF No. 566-2 p. 41]. That letter does not cure the ambiguities noted in this Order.

discretion in executing the search because of the ambiguity of "certain terms on the illustrative list in the warrant's subparagraphs" [ECF No. 566 p. 13]. Under these circumstances, even accepting the need for practical flexibility in weighing particularity challenges, the Court is satisfied that further factual development is warranted related to Defendant Trump's particularity challenge as to Attachment B.[7]

Finally, the Special Counsel argues, in the alternative, that any defect in the warrant's particularity can be salvaged by the objective good-faith exception under *United States v. Leon*, 468 U.S. at 923 [ECF No. 567 p. 13; *see* ECF No. 568]. That may be so, but the Special Counsel still bears the burden of establishing that exception, *see United States v. Travers*, 233 F.3d 1327, 1331 n.2 (11th Cir. 2000), and the Court is not required to rely solely on the affidavit or on arguments from counsel to reach that conclusion. This is especially so where the present record does not indicate, for example, whether the clarifying information in the affidavit was attached to the warrant or expressly incorporated into it [*See* ECF No. 567 p. 13]; *United States v. Blake*, 868 F.3d 960, 974–75 (11th Cir. 2017) (holding evidentiary hearing on motion to suppress and ultimately applying good-faith exception to deny suppression request).[8]

---

[7] Though quite broad in its search authority across virtually the entirety of the Mar-a-Lago estate, the Court does not find Attachment A to have the same ambiguities as Attachment B. The Court reserves ruling on the merits of the Motion.

[8] Although the search warrant itself indicates that all personnel were to review Attachments A and B, that directive does not extend to the affidavit, at least not as reflected in the current record [ECF No. 566-2 p. 44; ECF No. 566-3 p. 10 (law enforcement operations order requiring "[a]ll personnel participating in the search [to] review the Search Warrant Attachment A and Attachment B prior to the commencement of the search")].

CASE NO. 23-80101-CR-CANNON

## CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. The Request for a *Franks* Hearing is **DENIED** [ECF No. 566 pp. 8–14; ECF No. 568 pp. 9–10].

2. The Court **RESERVES RULING** on Defendant Trump's Motion to Suppress for Insufficient Particularity and Unlawful Piercing of Attorney-Client Privilege.

3. Evidentiary hearing to be set by separate notice, consistent with this Order.

4. In light of this Order, the Court's instruction during the hearing on June 25, 2024, requiring the pre-hearing sealed submission of the transcript from the District of Columbia grand jury proceeding no longer applies. To the extent the parties intend to introduce that transcript or any other grand jury materials as exhibits at the forthcoming evidentiary hearing, they shall promptly make all efforts to obtain those materials from the District Court for the District of Columbia, or otherwise submit a joint proposed motion to this Court (with an accompanying proposed order) facilitating the transfer to this Court of all remaining materials in the crime-fraud proceeding.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 27th day of June 2024.

AILEEN M. CANNON
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record