**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 23-80101-CR
CANNON/REINHART

**PRESIDENT DONALD J. TRUMP'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS BASED ON SPOLIATION OF EVIDENCE**

President Donald J. Trump respectfully submits this reply in further support of his motion to dismiss based on spoliation of evidence, ECF No. 612 ("Def. Mem."), and in response to the opposition filing by the Special Counsel's Office, ECF No. 644 (the "Opp'n").

In a blatant attempt to further Jack Smith's election-interference mission by rushing to trial without necessary discovery and fact-finding, the Special Counsel's Office claims that this motion can be summarily denied without a hearing. The failed effort to justify that disposition includes mischaracterizing the requirements of *Trombetta* and *Youngblood*, and falsely claiming that there are no indicia of bad faith. The reason that so few cases address analogous fact patterns is that law enforcement rarely diverges so markedly from the fundamental obligation to preserve the integrity of details from a search scene that are central to the investigation and favorable to the defense. When that has happened, such as in *United States v. Soriano*, 401 F. Supp. 3d 396 (E.D.N.Y. 2019), courts appropriately find that type of behavior to be extremely disturbing and worthy of harsh sanctions. So too here. For the reasons set forth below, an evidentiary hearing is required, followed by dismissal of the Superseding Indictment, because President Trump has made adequate *prima facie* showings under *Trombetta* and *Youngblood*. Prior to that hearing, and any other evidentiary hearing, the Court should require the Office to make further disclosures regarding the handling of the 15 Boxes and the Office's ongoing discovery non-compliance so that the defense is not forced to litigate these issues based on an incomplete and constitutionally deficient record.

### I. An Evidentiary Hearing Is Required

There are no stipulated or undisputed facts regarding the government's unprecedented and unconstitutional raid at Mar-a-Lago. Nevertheless, similar to positions the Court rejected following recent hearings, *see, e.g.*, ECF No. 655, the Special Counsel's Office demands that the Court accept their self-serving description of the raid and its aftermath and deny the motion "without a hearing," Opp'n at 30. The Court has already found with respect to two other suppression motions that the strategic prosecution benefits and purported efficiencies that the Office prioritizes over the Defendants' constitutional rights cannot carry the day where pertinent factual disputes exist. *See* ECF No. 655 at 7 n.4, 10. The same sound logic applies to this motion.

In addition, the Special Counsel's Office lacks the credibility that would be necessary to resolve defense motions based on unsworn and disputed representations from the government. This motion was precipitated by untimely disclosures of exculpatory information that the Office only released after defense inspection of the boxes. *See* ECF No. 522. Dating back to October 2023, the Office stonewalled—and continues to resist—valid defense demands for information and evidence relating to the raid and the resulting spoliation. *See* Def. Mem. Ex. 8; ECF No. 529-1. The Office's current *Brady* disclosures on these issues, which are incomplete, were initiated through vague and flippant language in a brief opposing an adjournment request that was entirely warranted in light of their non-compliance. *E.g.*, ECF No. 522 at 6-8. More generally, the Office has made misrepresentations to the Court, including regarding the pertinent facts, *see* Def. Mem. at 7-8; abused applicable procedures and Local Rules, *see, e.g.*, ECF Nos. 206, 228, 584; and exhibited a generally disrespectful tone that has led to at least three admonishments from the Court to date, 5/22/24 Tr. 55; ECF No. 584; 6/24/24 Tr. 18 (afternoon session). Notwithstanding all of this, the Office apparently believes that they are in a position to demand that the Court resolve factual disputes by taking their word for it. Not so.

The opposition brief of the Special Counsel's Office improperly treats the allegations in the Superseding Indictment, which are very much contested, as established facts. *See* Opp'n at 3-5 (citing ECF No. 85). They seek to excuse their failure to preserve exculpatory evidence by claiming without any support that items in the boxes "necessarily shifted around anytime they were moved." Opp'n at 3. They rely on over 100 pages of exhibits, including private testimonial interviews of Person 81 (Opp'n Ex. 2), Person 34 (*id.* Ex. 5), Person 29 (*id.* Ex. 7), and FBI 13 (*id.* Ex. 11). Some of these witnesses were part of the Filter Team and participated in a July 2023

meeting regarding these issues that was not disclosed to the defense until May 2024. *See* Def. Mem. Ex. 6. Although the Special Counsel's Office seeks to portray these issues as straightforward and easily understood, they reinterviewed some of these witnesses a second time in May 2024 to try and figure out just how problematic the search execution was. *See* Def. Mem. Ex. 10. That is information that the Office should have fully understood and disclosed in the first production of discovery. The Office's Exhibit 11 is a *third* interview of FBI 13, conducted *after* President Trump filed the spoliation motion, as part of a further attempt to get his/her story straight regarding details from the raid that should have been documented in August 2022.

The exhibits attached to the opposition brief help to illustrate that disputed witness accounts are central to this motion. The Defendants are entitled to vigorous cross-examination of those witnesses based on complete *Brady* and *Giglio* disclosures that have not yet been made. Under these circumstances, it is nothing short of irresponsible for the Office to urge that no hearing is required based in part on new facts that they manufactured and attached to their opposition brief. This is not the first time they have taken that frivolous tack.[1]

In addition to ignoring disputes over witness accounts, the briefing by the Special Counsel's Office is full of incoherently vague hedging that suggests they still do not know—or are not being forthcoming about—what happened with evidence that is central to this case. According to the Office, the FBI "generally" replaced "handwritten sheets" with "classified cover sheets," but they offer no explanation as to why that "generally" caveat was necessary. ECF No. 522 at 7. In "many but not all instances," the Office claims the FBI could determine "which document with classification markings corresponded to a particular placeholder sheet," but they have not specifically identified the "instances" in which they were not able to do so. *Id.* The Office claims that the Filter Team "typically" alerted the Case Team if they identified a classified document, but it is not clear what happened in atypical situations. Opp'n at 8. For boxes in the Storage Room, the Office claims that "item order within a box was preserved as well as the contents of the box and circumstances would permit." *Id.* at 9. We do not know for which boxes and what

---

[1] In opposition to President Trump's pending motion to dismiss the Superseding Indictment based on prosecutorial misconduct and (additional) due process violations, *see* ECF No. 561, the Special Counsel's Office tried to explain away a September 2021 email by NARA's general counsel indicating that he had "informally reached out to DOJ counsel" by attaching an FBI report of an interview of that general counsel conducted after the motion was filed, *see* ECF No. 562 at 1-2 & Ex. 1. As here, such tactics further illustrate the necessity of fact finding to resolve that motion.

"circumstances" that is true. The Office argues that it is "not relevant" that the FBI was unable to match placeholder sheets to classified documents for Box A-15, and they suggest that this problem did not arise for "most"—but not all—of the boxes. *Id.* at 12 & n.11. The basic argument seems to be that the Court should not worry about that particular box (A-15) because no charged documents came out of it, but the evidence of mishandling is relevant to the agents' bad faith and the scope of the problem remains unclear even by the terms of the Office's 10-line footnote.

Finally, some of the factual assertions by the Special Counsel's Office are so facially ridiculous and unsupported that the Office could only have included them in the brief as part of the prosecution team's ongoing public relations campaign—including unconstitutional efforts to censor political speech about the raid, *see* ECF Nos. 581, 592—seeking to mitigate mounting evidence of the FBI's misconduct. If it was "nigh impossible" to keep the boxes intact during the search, then the experienced prosecutors representing the Office in proceedings before Your Honor would never have suggested otherwise. Opp'n at 7. That claim is obviously false. Anyone with the patience and inclination to keep an accurate record of the search scene as they found it could have done so by, for example, carefully handling the documents, taking notes regarding the location of the documents, or relying on the FBI photographer who took other staged photos that were leaked shortly after the raid to prejudice the public.[2] The decision to take a contrary course, and subsequently rely on false claims of impossibility, is itself evidence of bad faith.

## II. The Special Counsel's Office Mischaracterized The Legal Bases For The Motion

Seeking desperately to avoid a necessary hearing, the Special Counsel's Office mischaracterizes President Trump's arguments regarding the prosecution team's spoliation and bad faith. Contrary to those assertions, President Trump is not required to establish bad faith in order to prevail and, in any event, there is sufficient evidence to warrant an inquiry into bad faith and the other aspects of the motion.

---

[2] Because each of these options was plainly available to the raiding agents, the Special Counsel's Office is wrong to suggest that "there could well be no evidence . . . of whether a particular document or personal effect was one inch or two inches away from a classified document." Opp'n at 18. Notes or pictures memorializing these important and exculpatory details could have sufficed. To be clear, President Trump's position is that (1) the portion of Attachment B that authorized the agents to seize entire boxes violated the Fourth Amendment's particularity requirement, ECF No. 566 at 4; and (2) irrespective of whether the agents seized individual allegedly classified documents or entire boxes *Trombetta*, *Youngblood*, and *Brady* obligated them to document the location of the documents.

4

To be clear, President Trump's motion is based on two separate arguments. First, under *Trombetta*, any reasonably objective member of the investigative team would have understood prior to the raid that it would be favorable to the defense if allegedly classified documents were buried in the boxes rather than sitting at the top. *See* Def. Mem. at 16-19 (Discussion § I). Evidence relating to that general location, *i.e.*, allegedly classified documents stored beneath other materials, would have supported defense challenges to the "unauthorized possession" and willfulness elements of the § 793(e) charges. *See id.* at 18. Second, under *Youngblood*, the proximity between charged documents and materials bearing dates from years before the raid was "potentially useful" to the defense because it would further support the argument that President Trump and others had not seen these materials, if at all, for years. *See id.* at 19-20 (Discussion § II). As to the *Youngblood* argument, it is unclear how much the materials immediately proximate to those documents would have helped the defense because the government failed to preserve that evidence.

The Special Counsel's Office misapprehends the relevance of *Brady/Agurs* "materiality" to the *Trombetta* argument. Opp'n at 14. The *Trombetta* violation requires proof that the government "might be expected to play a significant role in the suspect's defense," which is a "constitutional materiality" standard. *California v. Trombetta*, 467 U.S. 479, 488-89 (1984) (citing *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)). The breath samples in *Trombetta* did not meet that standard, but the luggage in *Soriano* did. *See* Def. Mem. at 18-19. Contrary to the Office's suggestion, the *Trombetta* requirement that unpreserved evidence "might" have been material to the defense, *id.* at 488, does not depend on whether the evidence, "if preserved," would have "exonerated" the defendant, Opp'n at 16. What is required is that the unpreserved evidence "could alter the outcome of the proceedings" from the perspective of a "neutral and objective observer." *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003). Here, unpreserved evidence that would have undermined the Office's proof on two elements for 32 of the charges—possession and willfulness—unquestionably meets that standard.

It is disturbing and contrary to the record for the Special Counsel's Office to claim that the prosecution team was not aware of the exculpatory nature of the fact that allegedly classified documents were buried within the boxes. *See* Opp'n at 19-20. Although the Office has refused to disclose all communications with and regarding the Filter Team, it is clear that the Filter Team's instructions contemplated documenting the "location" of allegedly classified documents,

5

"including with the comingled documents and container." Def. Mem. Ex. 1 at USA-01291483. The Office did not address the related instruction to the Filter Team that the FBI's Evidence Response Team would be documenting "the location where the materials were found and any other comingled materials . . . ." *Id.* These statements were included in the Filter Team's instructions *because* DOJ fully understood prior to the raid that the location of the documents mattered and could be exculpatory.

Against that record, the Special Counsel's Office resorts to the claim that it was "highly questionable" that President Trump would challenge the government's proof on key elements of the charges. Opp'n at 20. To state that argument is to refute it. Materiality analysis under *Trombetta* and *Brady* does not permit the government to avoid discovery obligations by selectively crediting some defense arguments but not others, or deciding what they think a defendant's trial strategy will be during the pre-charge phase of an investigation (or at any other point). *See United States v. Edwards*, 887 F. Supp. 2d 63, 68 (D.D.C. 2012) ("It is not for the prosecutor to decide not to disclose information that is on its face exculpatory based on an assessment of how that evidence might be explained away or discredited at trial, or ultimately rejected by the fact finder." (cleaned up)); Justice Manual 9-5.001 ¶ D(1) (exculpatory information "must" be disclosed "regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime").

The "other reasonably available means" requirement of *Trombetta* cannot be addressed prior to necessary fact finding. *See* 467 U.S. at 489 (reasoning that unpreserved evidence must have been "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"). Much of the authority applying this alternative-means standard is from appellate courts examining trial records. Because it is still unclear just how much evidence the FBI failed to preserve, it is infeasible to assess "reasonably available" alternatives. However, a few things are clear at this stage. Photographs of the documents' locations within the boxes could have served as alternative means, but it does not appear that the FBI took pictures of the intact contents of the boxes. Nor does it appear that cross-examination of search participants will be a constitutionally adequate alternative, as it is far from clear that the FBI agents responsible for the spoliation will testify accurately regarding the appearance of even the top-level contents of the boxes they rummaged through. Furthermore, *Trombetta* does not require that President Trump or the other Defendants waive the Fifth Amendment to testify at trial about information relating to

6

the composition of the boxes the FBI should have preserved in the first place. For all of these reasons, the alternative means requirement under *Trombetta* cannot be resolved on the papers.

Lastly, as to the *Youngblood* argument, President Trump has made a *prima facie* showing that the spoliation at issue was committed in bad faith. Prior to the search, a senior DOJ official declared that he did not "give a damn about the optics" of the raid, and Jay Bratt developed an "antagonistic" relationship with Person 18, *i.e.*, Trump Attorney 1. *See* ECF No. 469 at 23 & Ex. 35. The defense does not concede that the government's request to turn off CCTV at Mar-a-Lago prior to the raid was motivated by "safety" considerations. Opp'n at 6 & n.5. Although the Attorney General "personally approved" the raid, ECF No. 469 at 23, the failure to document or preserve the order of the documents within each box was not consistent with the portions of the Filter Team instructions that have been disclosed to date. The Office also made misrepresentations to the Court on this issue, failed to timely produce relevant notes from a July 2023 meeting, disclosed the issue using vague and misleading language in a May 2024 filing, and proceeded to reinterview some of the relevant witnesses following defense discovery demands because they still did not understand the extent of the spoliation that occurred almost a year after the charges were filed. Collectively, these circumstances are more than sufficient to require fact-finding on the search participants' bad faith.

### III. The Special Counsel's Office Must Make Corresponding Disclosures Regarding The 15 Boxes

The Court should not tolerate the stubborn refusal of the Special Counsel's Office to disclose whether the order of the documents within the 15 Boxes that President Trump disclosed to NARA in January 2022 is still intact. *See* Opp'n at 17 n.13.

The Special Counsel's Office takes an all-too-familiar approach to this issue by crediting untested claims from a March 2023 witness interview that "some" of the 15 Boxes were "consolidated" before they were turned over. Opp'n at 4 (citing Ex. 5); *see also id.* 17 n.13. Once again, we are required to call attention to mounting proof that the Office thinks they can restrict their *Brady* obligations where they believe exculpatory information is in tension with versions of the evidence that they prefer. Fundamental fairness requires that the Court ensure that the Office abandons that dangerous and unconstitutional mindset.

Moreover, information regarding the government's handling of the 15 Boxes is most certainly not "equally available" to both sides. Opp'n at 17 n.13. The prosecution team, alone,

7

knows what if any steps the FBI took to maintain the integrity of the 15 Boxes during their review of the materials. President Trump's motion regarding NARA's role as part of the prosecution team is pending. *See* ECF No. 469 at 17-19. However, at minimum, the Office has asymmetric access to NARA witnesses. *See* note 1, *supra.* Thus, the Office's approach is in blatant violation of the basic principle that "the government may not leave evidence in the hands of a third party to avoid disclosure." *United States v. McGowan*, 552 F. App'x 950, 953 (11th Cir. 2014).

### IV.    The Court Should Demand Clarity Regarding The Status Of Discovery And Require Complete *Brady* and *Giglio* Disclosures Prior To Any Evidentiary Hearing

Despite multiple misrepresentations regarding the status of the boxes, the Special Counsel's Office assures the Court that they take their discovery obligations "very seriously" and have "more than satisfied them." Opp'n at 28. Those are empty words at this point, and judicial intervention is necessary to ensure that the Defendants' constitutional rights are vindicated.

Last summer, the Special Counsel's Office told the Court that "all the discovery" was ready for production on "day one" of this case. 7/18/23 Tr. 62. However, in May 2024, the Office produced notes from a July 2023 meeting that contain exculpatory information from FBI agents who participated in the Mar-a-Lago raid. *See* Def. Mem. at 23; *see also id.* Exs. 6, 7. The untimely production was responsive to an October 9, 2023 discovery demand by President Trump. *See id.* Ex. 8 (Request 2). The Office rejected that request at the time. Less than a month later, they "attest[ed]" to the Court—falsely—that they were in compliance with Rule 16 and *Brady*. 11/1/23 Tr. 51. In response to a question from the Court about the Jencks Act and *Giglio*, the Office also suggested—falsely—that the only outstanding materials were "agent Jencks" consisting of "substantive agent communications on text messages or emails." *Id.* at 52. Just as the Office cannot avoid *Brady* disclosures based on confidence that they can overcome defense arguments, they cannot suppress *Giglio* material on the theory that they have not yet decided to call a particular witness. *See United States v. Smith*, 2023 WL 8470610, at *2 (S.D. Fla. 2023) ("Evidence 'is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993))).

The Special Counsel's Office claims that the July 2023 notes were "supposed to be on a disc" produced in February 2024. Opp'n at 28. The Office makes passing reference to a "technical problem" that they do not explain. *Id.* This "dog ate our homework" assertion is dubious, at best,

8

in light of the fact that the notes were only produced after President Trump requested those types of materials for a second time on May 4, 2024. *See* ECF No. 529-1. The Office also told the Court on May 23—falsely—that the entire May 4 production, including the notes, "exceed[ed] its current discovery obligations." ECF No. 575 at 2. Most importantly, even a February 2024 production of the July 2023 notes would have been untimely. *See, e.g.*, ECF No. 16 ("It shall be the continuing duty of counsel for both sides to immediately reveal to opposing counsel all newly discovered information or other material within the scope of Local Rule 88.10."); *see also* ECF No. 28 ("Noncompliance with the Standing Discovery Order, the Local Rules, or the Federal Rules of Criminal Procedure may result in sanctions.").

Just last week, the Special Counsel's Office suggested that they "don't know the answer" to a critical question regarding dissent among FBI leadership, including ADIC Steven D'Antuono, regarding the approach to the Mar-a-Lago raid. 6/25/24 at 37. D'Antuono has confirmed to Congress that part of this dissent was raised via emails that the Office has not yet produced. *See* ECF No. 566 at 1-2. The Office's answer at the hearing suggested that they have not even reviewed all relevant electronic communications by the FBI, which the Office concedes is part of the prosecution team. Consistent with that indefensible claim of ignorance, the Office suggested in its opposition brief that, "[w]ith respect to timing" of productions," they have "continued to review and produce additional materials as required . . . ." Opp'n at 28. It is pure hubris for the Office to blithely inform the Court of their view that they can roll out productions of preexisting *Brady* and *Giglio* material in violation of discovery deadlines set by the Local Rules and the Court. Opp'n at 28; *see also* Local Rule 88.10(o); ECF No. 16 (citing Local Rule 88.10); 6/13/23 Tr. at 9-10 (Rule 5(f) order). Because it does not appear that the Office has actually completed their case-file reviews for even the undisputed parts of the prosecution team—including emails, text messages, messaging apps, and other electronic communications—they can only speculate at this point about whether they are in compliance with *Brady* and *Giglio*. That is unacceptable.

The "continuing" nature of discovery obligations does not excuse the untimely production of exculpatory information or ongoing non-compliance with *Brady* and *Giglio*. As the Special Counsel's Office has recognized previously, a prosecutor's discovery obligations are only "continuing" in the sense that they must promptly produce materials that were created or obtained *after* existing deadlines. *See, e.g.*, ECF No. 122 at 2. That is the proposition that is "clear" from "the Justice Manual, the case law, and Rule 16(c)." Opp'n at 28. The Office's new claim is very

9

different. The suggestion that they can comply with constitutionally required discovery obligations whenever they get around to it has no basis in law or the Justice Manual. *See* Justice Manual § 9-5.002, Step 3, ¶ B ("Exculpatory information . . . must be disclosed to the defendant reasonably promptly after discovery."). For the Office to make that assertion in a case where they have repeatedly urged the Court to set extraordinarily accelerated schedules for pretrial motions and trial borders on unconscionable, and lays bare the fact that the Office's primary objective is to advance this politically motivated prosecution as fast as possible without regard to the Constitution.

For example, the Office has steadfastly and wrongly refused to acknowledge that President Trump is entitled to evidence of political or other animus in order to, among other things, permit fair cross-examination at upcoming evidentiary hearings. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 442 n.13, 446 (1995); *United States v. Abel*, 469 U.S. 45, 52 (1984) (reasoning that "[p]roof of bias is almost always relevant"); *see also* ECF No. 469 at 55-56 (motion to compel production of such evidence). The Office's current representations cannot prove to anyone that they have conducted the reviews necessary to identify such information, much less disclosed it. In addition to the professed unawareness of discoverable emails that ADIC D'Antuono discussed during congressional testimony, the Office only recently produced a handful of August 2022 FBI emails that do not appear to have been included in the FBI's case files. Evidence that agents sent substantive messages about the investigation that they failed to upload to the case file necessitates custodian-level reviews of all of their electronic communications (including on personal devices).

Because of the Office's failures to date, the Court should no longer accept blanket representations that all of this is under control. At this point, there is too much evidence that just the opposite is true. Based on the ongoing discovery deficiencies and repeated assertions by the Special Counsel's Office that are contrary to settled law and the Justice Manual, we respectfully urge the Court to require the Office to make a detailed submission pursuant to 28 U.S.C. § 1746 regarding (1) the steps that have been taken to collect and produce classified and unclassified discovery, (2) the steps that are ongoing or have not been completed, and (3) when the Office will be able to credibly claim compliance with *Brady* and *Giglio* with respect to the undisputed portions of the prosecution team. No evidentiary hearings should take place before these issues are resolved, and the representations will need to be revisited after the scope of the prosecution team is resolved.

Dated: July 1, 2024                               Respectfully submitted,

*/s/ Todd Blanche / Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
Kendra L. Wharton (Fla. Bar No. 1048540)
k.wharton@whartonlawpllc.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I, Kendra L. Wharton, certify that on July 1, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Kendra L. Wharton*
Kendra L. Wharton
