UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | Case No. 23-80101-CR<br>CANNON/REINHART |
| WALTINE NAUTA, *et ano.*, | |
| Defendants. | |

**PRESIDENT DONALD J. TRUMP'S MOTION FOR LEAVE TO INTERVENE OR, IN THE ALTERNATIVE, PARTICIPATE AS AMICUS CURIAE**

President Donald J. Trump respectfully submits this motion for leave to intervene or, in the alternative, participate as *amicus curiae*, with respect to the January 6, 2025 Emergency Motion filed by Waltine Nauta and Carlos De Oliveira for injunctive relief with respect to the "Final Report" proposed by private citizen, and so-called Special Counsel, Jack Smith. ECF No. 679. For the reasons set forth below, President Trump joins the Emergency Motion and respectfully requests that the Court consider the arguments in President Trump's January 6, 2025 letter to Attorney General Merrick Garland, which is attached as Exhibit A to the Emergency Motion, and which President Trump incorporates by reference.

In the Emergency Motion, Nauta and De Oliveira seek two forms of injunctive relief: (1) prohibiting Smith from *transmitting* the Report to Attorney General Garland, ECF No. 679 at 15-19; and (2) prohibiting Attorney General Garland from *releasing* any report by Smith to the public, *id.* at 8-15. President Trump's letter establishes the unlawfulness of Smith's planned course of action as to both transmission and release, that Smith's plan would result in irreparable harm, and that injunctive relief is in the public's interest. The letter also explains why the Attorney General should countermand and remove Smith for proposing a course of action that is illegal and

1

unethical in several respects. *See* 28 C.F.R. § 600.7(b). As of this filing, the Attorney General has not addressed that necessity.

In a "Notice" document filed early in the morning on January 7, 2025, however, Smith brazenly declared that—notwithstanding the pending Emergency Motion—he planned to transmit one Volume of the Report to Attorney General Garland before even responding to the pending filing. *See* ECF No. 680 at 1-2. Although the Emergency Motion seeks to enjoin transmission and release of the *entire* Report, in a document signed by the same Assistant Special Counsel who "refused" to provide the Court with details regarding the Attorney General's purported oversight of these prosecutors,[1] Smith's "Notice" makes no commitments at all with respect to the other Volume. *See* ECF No. 680 at 1. Accordingly, to preserve the status quo, the Court should immediately enter an interim order forbidding both *transmission* and *release* of the Report until the Court has addressed the Emergency Motion and this Motion. After the full adversarial litigation and careful attention that these issues require, the Court should grant the Emergency Motion.

### I.  President Trump Is Entitled To Participate In These Proceedings

As a former and soon-to-be President, uniquely familiar with the pernicious consequences of lawfare perpetrated by Smith, his Office, and others at DOJ, President Trump should be permitted to participate in these proceedings.

Intervention is appropriate where, as here, "a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala.

---

[1] *See United States v. Trump*, 2024 WL 3404555, at *36 n.57 (S.D. Fla. 2024) ("[C]ounsel for the Special Counsel refused to answer the Court's questions regarding whether the Attorney General had played any actual role in seeking or approving the indictment in this case").

2004); *Gravel v. United States*, 408 U.S. 606, 608-09 & n.1 (1972). President Trump's interest in ensuring a smooth Presidential transition—including as promised under the Presidential Transition Act—and the effective vesting of executive power are interests that are "direct, substantial, and legally protectable." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002). Thus, as the President-elect, President Trump has "a legitimate interest in the outcome and cannot protect that interest without becoming a party." *United States v. Blagojevich*, 612 F.3d 558, 559 (7th Cir. 2010). In the alternative, the Court has repeatedly and properly exercised its "inherent authority to appoint *amici curiae*, or 'friends of the court' to assist it in a proceeding." *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500 (S.D. Fla. 1991). Therefore, whether as an intervener, *amicus curiae*, or both, President Trump's views are entitled to consideration and great weight in connection with the Emergency Motion.

## II. Emergency Injunctive Relief Is Necessary And Appropriate

Immediate injunctive relief is necessary to preserve the status quo and prevent Smith from flouting this Court's authority to consider the Emergency Motion. *See United States v. Flint*, 178 F. App'x 964, 969 (11th Cir. 2006) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." (cleaned up)); *see also SEC v. MCC Int'l Corp.*, 2022 WL 22258596, at *1 (S.D. Fla. 2022) (reasoning that *ex parte* TROs can be used for the "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing" (cleaned up)). Specifically, the Court should immediately order Smith and his Office not to transmit any aspect of the Report to the Attorney General before the Emergency Motion is resolved. Following the adversarial litigation that these issues most certainly require,

more robust injunctive relief will be appropriate to prohibit both the transmission and public issuance of any report relating to Smith's failed lawfare.

There is no basis for Smith to be spending taxpayer dollars to interfere with the Presidential transition process by making false and prejudicial claims about President Trump, Nauta, De Oliveira, and other uncharged parties. In the most thorough judicial treatment of the issues that exists, this Court explained the myriad reasons that Smith's operations violate the Appointments and Appropriations Clauses. "The consequences of relaxing either of those critical provisions are serious, both in this case and beyond." *Trump*, 2024 WL 3404555, at *46. The Court quoted Justice Frankfurter's warning that "'[t]he accretion of dangerous power does not come in a day. It does come, however slowly, from the generative force of unchecked disregard of the restrictions that fence in even the most disinterested assertion of authority.'" *Id.* (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 594 (1952) (Frankfurter, J., concurring)). Smith and his Office did not heed the Court's admonitions. They have displayed exactly the unchecked disregard that the Court noted previously, ignored the practical effect of the ruling, and continued to unlawfully draw on DOJ's permanent indefinite appropriation for politically-motivated and improper activities, even after dismissing the improper prosecutions of President Trump in this District and the District of Columbia.

President Trump joins in full the arguments presented by Nauta and Oliveira in the Emergency Motion. President Trump's January 6, 2025 letter further establishes the merits showing necessary to justify injunctive relief, and demonstrates that the public interest strongly favors the Defendants here. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024) (explaining that the "purpose [of injunctive relief] is merely to preserve the relative positions of the parties until a trial on the merits can be held" and requires consideration of whether the movant

4

"is likely to succeed on the merits," "is likely to suffer irreparable harm in the absence of preliminary relief," "that the balance of equities tips in his favor, and that an injunction is in the public interest"); *see also United States v. Etienne*, 102 F.4th 1139, 1151 (11th Cir. 2024) (Pryor, J., concurring in part and dissenting in part) (noting that the *Flint* injunction was issued in "a criminal case"). Smith's proposal to issue a report violates the Constitution, the Transition Act, the Justice Manual, the Special Counsel Regulations, applicable ethical rules, and Local Rule 77.2. For example, the very same prosecutors who sought an unconstitutional gag order of President Trump with no basis in law or fact, *see, e.g.*, ECF No. 592, now seek to run roughshod over applicable ethical rules and DOJ policies prohibiting extrajudicial statements regarding ongoing proceedings. *See* Ex. A at 6-7. Unlike prior Special Counsels who treated the presumption of innocence with tremendous care in their reports, Smith has acted as if the presumption can be removed pursuant to a private citizen's fiat and drafted hundreds of pages seeking to justify his failed crusade. Ex. A at 6. Leaving no doubt that Smith's actions are motivated by an intention to interfere with the transition and unfairly attack President Trump, his Office abused the applicable protective orders by requiring counsel to destroy discovery prior to providing access to the Draft Report—in effect, preventing defense counsel from accessing critical evidence necessary to fully respond to the meritless, inaccurate, and bad-faith assertions in the Draft Report. *See* Ex. A at 1.

Issuance and public release of the Report would cause manifest irreparable harm by disrupting and interfering with President Trump's transition efforts and harming the institution of the Presidency, all to the detriment of the American people. Smith's activities are yet another transparent effort to target President Trump and his associates. Smith aims to transmit the Report to the Attorney General, and to cause DOJ to release the Report to the public, outside of judicial proceedings in which the Defendants can respond and vindicate themselves. Smith has

commenced that plan knowing full well that the Defendants cannot publicly address the purported evidence he wrongly claims to have summarized. In the normal course, a properly appointed prosecutor would never be permitted to pursue such a course of action. Among other requirements, a prosecutor facing a dismissal order such as the one in this case would be required to first establish in the pending appeal that there was a valid appointment and appropriation, which Smith has not done and cannot do for the reasons the Court already set forth at great length. Smith's attempt to skip that step and release false and unproven claims to the public is entirely consistent with other evidence that he is little more than a biased private citizen and partisan tool for the Biden-Harris Administration, and not the type of prosecutor described by former Attorney General Robert Jackson in his famous 1940 speech. Thus, Smith should not be permitted to work with outgoing DOJ personnel to release untested, prejudicial claims regarding the Defendants and uncharged parties. And there is absolutely no valid basis for Smith's efforts to rush to do so ahead of President Trump's inauguration.

This morning's Notice is the most recent example of Smith's glaring lack of respect for this Court and fundamental norms of the criminal justice system. *See, e.g.*, ECF No. 428 at 2, 22 (threatening frivolous interlocutory appeal in response to straightforward inquiry from the Court); ECF No. 580 at 55 (admonishing prosecutor). The Notice essentially declared, without explanation, that Smith believes that the Volumes of his Report are severable. ECF No. 680. With respect to the Volume that Smith says "pertains to this case," he informed Your Honor and the parties that he plans to ignore the pending Emergency Motion, as well as the arguments in the January 6, 2025 letter, by transmitting that Volume to the Attorney General early this afternoon— and then, only after the transmission, filing a "response" to the Emergency Motion. *Id.* at 2.

It also appears to be implied in the Notice that Smith plans to transmit the other Volume of the Report to the Attorney General imminently. While the other Volume addresses the dismissed charges against President Trump in the District of Columbia, the Volumes cross-reference each other and cannot be considered in isolation as Smith suggests. Moreover, the D.C. case pertained to a time period when Nauta and De Oliveira were employees of President Trump, and false extrajudicial claims about those events are also prejudicial and improper in the ongoing case against Nauta and De Oliveira. The D.C. case and this case also involve an overlapping group of third parties and potential witnesses, and the entire Report—both Volumes—is replete with improper claims about those parties that are inconsistent with the presumption of innocence. Finally, and perhaps most importantly, the Defendants' arguments regarding Smith's lack of authority to transmit the Report to the Attorney General based on this Court's dismissal ruling apply with equal force to both Volumes.

In short, the Notice is more of the same from a private citizen masquerading as a prosecutor, too deranged by the outcome of his failed multi-year election-interference war to notice that he is causing his Office and DOJ to act in a manner that is completely detached from the Rule of Law and deeply disrespectful of Article III courts.

### III. Conclusion

The All Writs Act, as well as the Court's ancillary jurisdiction and supervisory power, all provide ample authority for Your Honor to prevent these injustices. *See, e.g.*, *United States v. DiBernardo*, 775 F.2d 1470, 1475-76 (11th Cir. 1985) ("Federal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials."). Accordingly, the Court should (1) permit President Trump to intervene, or join as an *amicus curiae*, in order to present the

arguments set forth in the January 6, 2025 letter as a former President and the President-elect responsible for managing the transition and the vesting of Article II power; (2) immediately order Smith not to transmit any part of the Report to the Attorney General while the Emergency Motion is pending; and (3) following full briefing, order Smith not to transmit the Report to the Attorney General, and order the Attorney General not to issue any aspect of Smith's missive to the public.

Dated: January 7, 2025

Respectfully submitted,

*/s/ Todd Blanche / Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
Kendra L. Wharton (Fla. Bar No. 1048540)
k.wharton@whartonlawpllc.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*Counsel for President Donald J. Trump*

**CERTIFICATE OF CONFERENCE**

Defendants Nauta and De Oliveira consent to this motion. Counsel for President Trump hereby certify that on January 7, 2025, counsel for President Trump and the Special Counsel's Office conferred in a good faith effort to resolve the issues herein, but were unable to do so with respect to President Trump's motion.

Specifically, following the filing of the Notice by the Special Counsel's Office at approximately 1:46 a.m. this morning, undersigned counsel asked the Office regarding their position on this motion at approximately 7:36 a.m. and indicated that we planned to file the motion at 10:00 a.m. At approximately 9:51 a.m., the Special Counsel's Office sent an email with the following position statement:

> The Government opposes your motion for intervention. You have not meaningfully conferred with us and this is not an emergency. You have known since December 11 that the Special Counsel was drafting a confidential report, and at no point during our discussions to accommodate your request to review it have you ever communicated to us an objection to the Special Counsel transmitting the report to the Attorney General, as required by regulation. The first time you did so was in your letter to the Attorney General of January 6, which counsel for Waltine Nauta publicly filed last night in violation of our agreement to keep the contents of the draft report confidential. And, once receiving your letter, the Department apprised you that it would provide you notice of any decision to publish a report from the Special Counsel, affording you the opportunity to take appropriate legal action. We apprised counsel for Mr. Nauta and Carlos De Oliveira of the same well before they filed their motion last night.

The assertion that "this is not an emergency" is patently false for the reasons explained in the foregoing submission. The fact that the Office had time to compose the position statement regarding their opposition belies the claim that there has been a lack of meaningful conferral, as does the fact that the email did not ask any questions or seek further discussion of our request. Like the Notice from earlier this morning, the Office's position statement ignores the pending request that Smith not transmit the Report to the Attorney General, and the Office's discussion of events from last December ignores the fact that we could only raise these objections upon seeing

1

the Draft Report, reviewing its unlawful contents, and learning of the threat of irreparable harm presented by Smith's planned course of action. All of that happened starting on January 3, 2025.

**CERTIFICATE OF SERVICE**

I, Kendra L. Wharton, certify that on January 7, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Kendra L. Wharton*
Kendra L. Wharton