# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

THE UNITED STATES OF AMERICA,

     *Plaintiff,*

v.

WALTINE NAUTA AND CARLOS DE OLIVEIRA,

     *Defendants,*

Case No. 23-cr-80101-
CANNON/REINHART

## BRIEF OF AMICUS CURIAE JEFFREY B. CLARK

/s/ **Ibrahim Reyes**
Florida Bar No. 581798
**REYES LAWYERS, P.A.**
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Mobile. 305-218-0982
ireyes@reyeslawyers.com

**CALDWELL, CARLSON, ELLIOTT &
DELOACH, LLP**

Harry W. MacDougald*
Georgia Bar No. 463076
6 Concourse Parkway
Suite 2400
Atlanta, Georgia 30328
404-843-1956
hmacdougald@ccedlaw.com

*Pro Hac Vice Application forthcoming*

*Counsel for Amicus Curiae Jeffrey B. Clark*

# TABLE OF AUTHORITIES

**Cases**

*Loper Bright Enters. v. Raimondo,*
　603 U.S. 369 (2024) ............................................................... 9, 14, 16

*Trump v. United States,*
　603 U.S. 593 (2024) ..........................................................passim

*United States v. Derr,*
　726 F.2d 617 (10th Cir. 1984)........................................... 14

*United States v. Strayer,*
　846 F.2d 1262 (10th Cir. 1988).......................................... 13

*United States v. Vavlitis,*
　9 F.3d 206 (1st Cir. 1993) ................................................. 13

*United States v. Welborn,*
　849 F.2d 980 (5th Cir. 1988)............................................. 13

*Wendt v. Fischer,*
　243 N.Y. 439 (1926)............................................................ 6

**Rules**

D.C. Bar Rule of Professional Conduct 3.8(f) ........................ 17

D.C. Bar Rule of Professional Conduct 5.1 ....................... 17, 18

Federal Rule of Criminal Procedure 6(e) ............................... 8

New York Rule of Professional Conduct 3.6 ......................... 18

**Regulations**

28 C.F.R. § 600.8........................................................... 15, 16

28 C.F.R. § 600.9....................................................... 14, 15, 16

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... ii

Table of Contents ...................................................................................................... iii

Interest of *Amicus Curiae* ....................................................................................... 1

Argument ................................................................................................................... 5

    I.    Publication of the Report would Be Unlawful and Would Cause Undue
        Prejudice to Mr. Clark and Others. ........................................................... 5

        **A.**   The *Per Se* Evidence Bar Prohibits Any Reporting on Conduct Within
            the Exclusive and Preclusive Zone of Presidential Authority ...................... 5

        **B.**   Publication Would Cause Undue Prejudice to Mr. Clark and Others in
            Related Proceedings. ........................................................................... 7

    II.   Publication of the Report Would Violate the Special Counsel Regulations. ...... 12

    III.  Publication of the Report Would Violate the Rules of Professional
         Responsibility. ..................................................................................... 17

    IV.  The Court Has Authority to Extend the Injunction. ............................................ 19

Conclusion ................................................................................................................. 20

Certificate of Service ............................................................................................... 22

## INTEREST OF *AMICUS CURIAE*

Jeffrey B. Clark has a compelling interest in whether the report of former Special Counsel Jack Smith's investigation is publicly released. This interest arises because of the distinct possibility, if not likelihood that the first volume of former Special Counsel's report of the investigation for the criminal case filed against the forty-fifth President in the District of Columbia, *United States v. Trump*, No. 1:23-cr-00257-TSC (the "Election Case"), will include discussions of Mr. Clark, who was alleged unindicted co-conspirator no. 4 in the original indictment in that case (until he was removed by Jack Smith in the wake of the Supreme Court's immunity decision *Trump v. United States*, 603 U.S. 593 (2024)). *See* Election Case Indictment, ECF Doc. #1 at ¶8(d).[1]

---

[1] To be clear, we do not know for a fact whether Mr. Clark is mentioned in this report. Neither the former Special Counsel nor the Department of Justice have notified us that Mr. Clark is mentioned, nor have they provided us with a copy of the report for review. All efforts by us to contact lawyers at the Justice Department either reporting directly to Jack Smith or who are not affiliated with the Special Counsel's Office have not proven successful in determining whether Mr. Clark will be mentioned in the report or not. It was only upon inquiring if the Government would consent to our filing a similar brief in the Eleventh Circuit appeal that any one at the Justice Department responded to our calls, letter, or emails. We have is an email from J.P. Cooney at the Office of Justice Programs indicating that a letter we sent on December 13, 2024 making points similar to those of this brief is "being given due consideration," whatever that means, and referral to and response from the head of the Civil Division, Brian Boynton, that DOJ takes no position on the filing of the Eleventh Circuit brief. *See* Exhibit 1 (email chain). There is no change on this point from January 9, 2025 up to the filing of this brief.

Publication of a report of that investigation, if it mentions Mr. Clark, would *severely prejudice* Mr. Clark's due process rights in two separate pending and directly related proceedings: *first*, the pending criminal prosecution against him in Fulton County, Georgia Superior Court, Case No. 23SC188947, *State v. Jeffrey B. Clark, et al.*, in which President Trump is a co-defendant; and *second*, pending bar disciplinary proceedings before the D.C. Bar's Board of Professional Responsibility, *see In re Jeffrey B. Clark*, Disciplinary Docket No. 2021-D193.

Both of these related proceedings arise—improperly and unconstitutionally—from precisely the same conduct falsely described in the original federal indictment in the Election Case and falsely described in both the Fulton County state court indictment and the D.C. Bar disciplinary proceedings as well. Even granting the credulous and unfounded assumption that the former Special Counsel and the Attorney General are not improperly waging politically motivated lawfare and are instead acting with motives as pure as the driven snow, it is undeniable that a public report of an improperly appointed federal special counsel's grand jury investigation, bearing a prosecutor's advocacy-driven characterization of Mr. Clark's conduct, which under *Trump v. United States* falls

---

All of this gives us very little confidence that Mr. Clark is not mentioned in the report, given the appalling record of prosecutorial abuse racked up by the former Special Counsel and his office. After all, if Mr. Clark were not mentioned, the Government could moot this brief by simply saying so, but instead we are first cryptically told that our letter is being given "due consideration," while Mr. Boynton for DOJ adopted a pose of ostensible Olympian detachment on the filing of this brief.

within the "exclusive and preclusive" zone of absolute presidential immunity, would poison jury pools and other adjudicators against Mr. Clark (the D.C. Bar's Board of Professional Responsibility includes two layperson members who are *not* cordoned off from media access). This is especially true because Mr. Clark will not have any right of reply to Jack Smith's report or recourse to an impartial judge or jury, all while he is the subject of simultaneous related criminal and bar disciplinary proceedings arising from the same transactions and occurrences. There is no basis for distinguishing harm in ongoing state and federal matters against Mr. Clark as it relates to volume 1 of Jack Smith's report from volume 2 of that report concerning the "Mar-a-Lago documents case." The D.C. Bar proceedings against Mr. Clark are federal in nature because they are occurring under the auspices of a federal government Article I Court—the D.C. Court of Appeals. And the Fulton County proceedings are occurring in state court. The fact that a bar proceeding is involved, on the one hand, and a state proceeding is involved, on the other, is immaterial to the prejudice in question; they are simply the procedural vessels in which the prejudice from publication would be suffered.

Accordingly, one cannot credit the Justice Department's ploy to obviate this Court's order by voluntarily holding back on publication of volume 2 (while sharing it with Congress, from whence it will certainly leak), while pressing ahead with general public disclosure of volume 1. The Government has fatally contradicted itself: it has committed in filings in this Court and the Eleventh Circuit that the Attorney General has

decided that volume 2 of the report cannot be published due to the prejudice it would cause to the defendants in this case in light of the fact that their criminal cases are still pending. An exactly analogous prejudice, but compounded because Mr. Clark faces jeopardy in two cases and not just one, should therefore preclude publication of volume 1 under the logic of the Government's position. Consistency here is not the hobgoblin of small minds, but the essence of due process and equal justice. The Government's hell-bent focus on publishing volume 1 and inflicting what it admits would be unlawful prejudice upon Mr. Clark and others similarly situated should be rejected. To try to obfuscate these matters, the Government has resorted to a flurry disingenuous and procedurally irregular stratagems in post-midnight filings and emergency motions in the Eleventh Circuit that have been described in detail in filings by Mr. Nauta and Mr. De Oliveira.

Mr. Clark possesses due process rights not just against federal prosecution but equally against federal disciplinary actions and against state prosecution. Release of volume 1 of the report, if it mentions Mr. Clark, would disregard Mr. Clark's constitutional rights as well as violate the Special Counsel regulations and the D.C. Rules of Professional Responsibility (or their analogues in the States as applied to members of Jack Smith's or other Department of Justice lawyers working on this matter).

But Mr. Clark is not the only one who might suffer this concatenation of prejudices. Multiple individuals described in either the original or superseding indictments in the

Election case are also facing related criminal prosecution in one or more States, and/or related bar disciplinary proceedings, to include attorneys John Eastman, Rudy Giuliani, Ken Chesebro, and Sidney Powell, but also non-attorneys former White House Chief of Staff Mark Meadows, Michael Roman, and possibly others. Their rights to due process would also be violated by the publication of any report describing their conduct, and this violation would be accompanied by the same panoply of violations of the Special Counsel regulations and rules of professional responsibility.

To our admittedly imperfect knowledge, no other party has alerted the Court to the extreme and unlawful prejudice to Mr. Clark or these other individuals that would ensue from publication of the former Special Counsel's report.[2] Therefore, we trust that this brief will be helpful to the Court's resolution of this case.

**ARGUMENT**

## I. PUBLICATION OF THE REPORT WOULD BE UNLAWFUL AND WOULD CAUSE UNDUE PREJUDICE TO MR. CLARK AND OTHERS.

### A. The *Per Se* Evidence Bar Prohibits Any Reporting on Conduct Within the Exclusive and Preclusive Zone of Presidential Authority.

In *Trump v. United States*, 603 U.S. 593, the Supreme Court held the entirety of the allegations relating to Mr. Clark fell squarely within the zone of the President's "exclusive and preclusive" authority for which the President enjoyed absolute immunity. The Court

---

[2] On January 9, 2025, we also filed a motion for leave to file an amicus brief and proposed brief in the Eleventh Circuit making substantially similar arguments.

further imposed an absolute *per se* bar on the use of any evidence from the "exclusive and preclusive" zone to prove any charges against the President for conduct in the presumptively immune or non-immune zones delineated in the opinion. Thereafter, the former Special Counsel filed a superseding indictment from which he removed any reference to any conduct or evidence falling into this "exclusive and preclusive" zone. This necessarily entailed stripping out any direct or indirect reference to Mr. Clark or any of his conduct (there is no other explanation for why references to Mr. Clark were stripped out of the superseding indictment).

The *per se* bar on any evidence from the zone of absolute immunity was to protect the immunity from "disintegrating erosion" by an accretion of exceptions. *Cf. Wendt v. Fischer*, 243 N.Y. 439, 443-44 (1926) (Cardozo, J.) ("Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion.")

The Supreme Court was explicit that, on vital separation of powers grounds, the President's conduct within the exclusive and preclusive zone is unreviewable in Congress or any court.

If the former Special Counsel and the Attorney General were to heed the emphatic and pellucid rebuke administered by the Supreme Court in *Trump v. United States*, they would make no mention whatsoever of any evidence or conduct occurring within the absolutely immune exclusive and preclusive zone. That is their obligation under the Constitution as applied by the Supreme Court. We wrote to the former Special Counsel

and the Attorney General demanding that they comply in this fashion with the Supreme Court's decision, but by email on January 9, 2025 and sent at 1:34 pm, we are told only that our letter is "being given due consideration," a content-free brush-off that gives us no assurances the Constitution's limits will be obeyed. Exhibit 1 in fact portends the exact opposite, especially in light of the Government's frantic all-hands-on-deck emergency midnight filings to escape from this Court's previously ordered temporary injunction.

It is clear, therefore, that publication of the report on the Election Case investigation that described any evidence from within the exclusive and preclusive zone would be a clear-cut and unconstitutional violation of *Trump v. United States* and should therefore be permanently enjoined.

### B. Publication Would Cause Undue Prejudice to Mr. Clark and Others in Related Proceedings.

As noted above, Mr. Clark is a criminal defendant in a Fulton County, Georgia indictment arising from the same transactions and occurrences at issue in the original indictment in the Election Case in which he was initially named as an unindicted co-conspirator (but later removed in the superseding indictment in the Election Case). The Fulton County indictment criminally charges both President Trump and five lawyers who were named as unindicted co-conspirators in the former Special Counsel's original indictment in the Election Case: Rudy Giuliani, John Eastman, Sidney Powell, Jeffrey Clark, and Kenneth Chesebro. Ms. Powell and Mr. Chesebro entered misdemeanor guilty pleas in the Georgia prosecution, but both face pending bar disciplinary proceedings

arising from the same conduct, and Mr. Chesebro faces further criminal prosecution in Wisconsin. Mr. Eastman, for his part, faces further criminal prosecution in Arizona, while his bar disciplinary proceedings in California are ongoing. Others mentioned in volume 1 are also under criminal indictment in one or more jurisdictions, such as attorney former White House Chief of Staff Mark Meadows, attorney Ray S. Smith in Georgia and non-attorney Michael Roman in Georgia and Arizona.

The former Special Counsel's original indictment in the Election Case contained an extensive set of allegations regarding President Trump's interactions with Mr. Clark and these other co-defendants in the Georgia criminal case.

The D.C. Bar case against Mr. Clark overlaps entirely with the original allegations regarding Mr. Clark in the original indictment in the Election Case and substantially with the allegations against Mr. Clark in the Fulton County prosecution.

The former Special Counsel's report of his investigation of the Elections Case will necessarily draw on grand jury material, normally kept secret under Federal Rule of Criminal Procedure 6(e) for unassailable constitutional and policy reasons. No one mentioned in a Special Counsel report has any recourse to a neutral jury or judge to adjudicate the truth or falsity of whatever prosecutorial and rhetorical excesses might be splayed across the pages of such a report. The former Special Counsel and his staff have not established a good record of probity in the conduct of their investigations and prosecutions.

But in this case, publication of a report that tries to cast aspersions on Mr. Clark's conduct, or that of others within its compass who are currently facing criminal prosecution and/or bar disciplinary cases elsewhere, would result in a firestorm of intensely pejorative publicity that would prejudicially influence jury pools and decisionmakers in both environments, and thus violate the due process rights of any one so mentioned.

Prosecutors are obliged to refrain from such conduct. They do not get a free pass because of a regulation adopted by the Department of Justice, especially after the repeal of *Chevron* deference by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). There is no clear statement of statutory authority for the publication of such a report. The statutory authority claimed for the Special Counsel regulations is 5 U.S.C. § 301; 28 U.S.C. §§ 509, 510, 515-519. *See* 28 C.F.R. § 600. **None** of these statutes authorize a Special Counsel or any other prosecutor for the United States to publish a report of their investigations. With *Chevron* deference abolished, the Special Counsel regulations providing for publication of reports of investigation, §§ 600.8 and 600.9, are clearly unconstitutional under the separation of powers doctrine, and publication under such invalid authority must be enjoined.

The reason the Special Counsel regulations provide for publication is that when the Clinton Administration issued those regulations they were trying to improperly and unlawfully replicate the Independent Counsel Statute that was sunsetting. *See* 28 U.S.C.

§ 594(h). That provision, however, provided for court-ordered release of an Independent Counsel report, not unilateral release by the Executive Branch. Moreover, targets were given procedural protections to rebut facts they wished to challenge. But the Clinton-era Special Counsel Regulations (under which Jack Smith proceeded here) stripped a host of procedural protections away from target of Special Counsel investigations. The entirety of the relevant provision of the statute is as follows:

**(h) Reports by Independent Counsel.—**

**(1) Required reports.—**An independent counsel shall—

\*\*\*

>  (B) before the termination of the independent counsel's office under section 596(b), file a final report with the division of the court, setting forth fully and completely a description of the work of the independent counsel, including the disposition of all cases brought.

**(2) Disclosure of information in reports.—**

***The division of the court*** may release to the Congress, the public, or any appropriate person, such portions of a report made under this subsection as the division of the court considers appropriate. ***The division of the court shall make such orders as are appropriate to protect the rights of any individual named in such report and to prevent undue interference with any pending prosecution.*** The division of the court may make any portion of a final report filed under paragraph (1)(B) available to any individual named in such report for the purposes of receiving within a time limit set by the division of the court any comments or factual information that such individual may submit. Such comments and factual information, in whole or in part, may, in the discretion of the division of the court, be included as an appendix to such final report.

(Emphasis added). Unless this Court provides it, the Special Counsel Regulations are being applied to Mr. Clark without providing him (1) advance notice of the report, (2) an opportunity to review a draft report and object to its contents and see those published at the discretion of a court; and (3) the Justice Department, despite its vague "due consideration" protestation in a late-hit email are not taking into account Mr. Clark's due process rights and his rights not to see "any pending prosecution" prejudiced. The verbiage of "any pending prosecution" is critical. There was no myopia in the prior Independent Counsel Statute allowing a federal independent counsel to act with impunity to prejudice a state prosecution.

Prosecutors are bound by grand jury secrecy and do not release reports of grand jury investigations of one who is not indicted, and especially not after the prosecutors file a superseding indictment that deletes any reference to such a person under the direct constitutional compulsion of a Supreme Court decision. Nor can publication be justified by a gussied-up version of anti-Trump political bias. The Court should accordingly protect the due process rights of those still facing criminal prosecution or bar discipline, including Mr. Clark. And all of this is especially true as to Mr. Clark, since the entirety of the cases against him emanates from the exclusive and preclusive zone of presidential authority as well as from intrusions into executive privilege, law enforcement privilege, attorney-client privilege (for Mr. Clark represented President Trump in his official capacity as head of the Executive Branch), and deliberative process privilege.

Note as well that a search warrant of all of Mr. Clark's electronically stored information was executed in June 2022.  We strongly suspect the warrant included knowingly false information., *see Franks v. Delaware*, 438 U.S. 154 (1978). However, special counsel has refused to produce the affidavit to us. Thus, Jack Smith has placed Mr. Clark in a Catch-22 as he appears poised to make use of information in his report(s) that he obtained pursuant to warrants we have argued to DOJ are unlawful violations of the Fourth Amendment without first having to run the gauntlet of such constitutional challenges. Jack Smith and the Biden Administration are completely trampling Mr. Clark's Fourth Amendment rights and Fifth Amendment due process rights.

## II.   PUBLICATION OF THE REPORT WOULD VIOLATE THE SPECIAL COUNSEL REGULATIONS.

Assuming for the sake of argument that the Special Counsel regulations are valid, the Government claims that it is allowed to publish volume 1 of the former Special Counsel' report on the grounds that the investigation is "concluded. However, the Government took the opposite position when it dismissed the case against President Trump in the District of Columbia "without prejudice" to a future prosecution of President Trump and his alleged co-conspirators. *Id., United States v. Trump*, ECF Doc. # 281 (Government's Motion to Dismiss Superseding Indictment); Doc. ## 282 & 283 (Opinion and Order dismissing superseding indictment without prejudice); Doc. # 284 (Government's Motion to Dismiss the Original Indictment); Doc # 285 (Order dismissing the original indictment without prejudice). Once again, the Government is taking

12

diametrically inconsistent positions in its quest to tar President Trump and others named in the volume 1 report.

The reason given for the dismissal was that Donald J. Trump is the President-elect and the Office of Legal Counsel's "prior opinions concerning the Constitution's prohibition on federal indictment and prosecution of a sitting President apply to this situation and that as a result this prosecution must be dismissed before the defendant is inaugurated." Doc. # 281 at 1; Doc. # 284 (noting that "certain out-of-Circuit caselaw indicates that a superseding indictment does not void the original indictment, *see, e.g.,* *United States v. Vavlitis*, 9 F.3d 206, 209 (1st Cir. 1993)."

The Department took the position in the D.C. case that D.C. Circuit precedent required that President Trump's motion to dismiss on structural constitutional grounds be rejected. *See United States v. Trump*, No. 1:23-cr-00257-TSC, ECF Doc. #277 (Opposition to Defendant's Proposed Motion to Dismiss and for Injunctive Relief Based on the Appointment and Appropriations Clauses).

Because the Government takes the position that it can, in the future, re-indict for the same alleged crimes, President Trump, and ***all*** individuals alleged to have been part of the purported "conspiracy to overturn the 2020 election" remain under "investigation" either on an *ultra vires* basis by the former Special Counsel or ***by line Justice Department attorneys*** unless and until the cases are dropped ***with prejudice***. *See United States v. Welborn*, 849 F.2d 980 (5th Cir. 1988); *United States v. Strayer*, 846 F.2d 1262 (10th Cir. 1988);

*United States v. Derr*, 726 F.2d 617 (10th Cir. 1984). Note as well that, while Mr. Clark was dropped from the superseding indictment, this gives Mr. Clark no protections of double jeopardy or preclusion doctrines. If the case against Trump is reactivated in 2029 or beyond, Mr. Clark remains at risk of a future Department of Justice or Special Counsel changing their minds and issuing a further superseding indictment unlawfully and unfairly (but still at great expense and reputational damage) putting Mr. Clark back under jeopardy of federal prosecution.

Even if the appointment of the former Special Counsel were constitutional (and we submit that it was not for the reasons given by this Court in this case and by Justice Thomas in his *Trump v. United States* concurrence), and even if the Special Counsel regulations hastily adopted to replace the expired and unlamented Independent Counsel Statute[3] can be given any deference or validity after *Loper Bright* (and we submit such deference is impossible and thus the regulations cannot be interpreted to have the force of law), the release is not authorized even under the terms of those regulations because the "investigation" conducted by the former Special Counsel and the Department of Justice is not "concluded," as that term is used in 28 C.F.R. § 600.9(a)(3), until the cases filed by the former Special Counsel are resolved by final judgment of conviction,

---

[3] The regulations cannot be justified as an expression of Congressional intent because Congress intentionally let the Independent Counsel Statute expire. The purported emergency cited in the rulemaking was no emergency at all.

acquittal, or dismissal with prejudice. Former Special Counsel Smith or his successors cannot have their cake and eat it too: They may not try to issue a report premised on the notion that the investigation and litigation against President Trump and his allies is over while simultaneously purporting to and successfully securing a dismissal *without prejudice* that would let them (or other federal prosecutors) pick up their cudgels on the other side of President Trump's second term.

In sum, neither the former Special Counsel nor any lawyer in the Department of Justice has authority to prepare such a report under 28 C.F.R. § 600.8 because the Department's own filings in the Election Case concede that the putative Special Counsel investigation is *not complete*. 28 C.F.R. § 600.9(a)(3) authorizes only the release of a report "[u]pon the *conclusion* of the Special Counsels [*sic*] investigation" if, and only if, "that public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions." 28 C.F.R. § 600.9(c) (emphasis added).

Here, the only conceivable intended purpose of such a report would be to make an "*extrajudicial statement*" concerning the work done by the former Special Counsel, which a significant percentage of the American people perceive to just be in service of the Democratic Party's and liberal media's narratives and political strategies — a perception the Department of Justice is confirming with its litigation blitz to clear all obstacles to publication of the report.

Moreover, the Attorney General's decision on whether to release a report under 28 C.F.R. § 600.9 is permitted only "to the extent that release would comply with *applicable legal restrictions*." Any such report "shall be governed by the generally applicable Departmental guidelines concerning public comment with respect to any criminal investigation, *and relevant law*." *Id.* (emphasis added).

The "applicable legal restrictions" and "relevant law," as noted above, are set forth in the Constitution's Due Process Clause in the Fifth Amendment, the Fourth Amendment, the Constitution's separation of powers as explicated in *Trump v. United States*, 28 C.F.R. §§ 600.8 & 600.9, and the post-*Loper Bright* legal landscape bereft of any *Chevron* deference to the Special Counsel regulations under which the Government is proceeding in the first place. "Relevant law" does not permit any reporting on topics within the President's exclusive and preclusive authority or regarding investigations that the Government has represented to the courts are not yet complete. As a result, the former Special Counsel and the current Attorney General are not permitted to report on any of the President's dealings with Mr. Clark, any of Mr. Clark's dealings and communications with the other participants in the Oval Office meeting of January 3, 2021, or any of Mr. Clark's dealings and communications with other Department of Justice or White House Counsel officials regarding his legal advice that evidence in Georgia warranted further investigation by the Georgia Legislature of the 2020 presidential election under the

authority of the Constitution's Electors Clause or in the lead up to the January 3, 2021 Oval Office meeting.

### III.   PUBLICATION OF THE REPORT WOULD VIOLATE THE RULES OF PROFESSIONAL RESPONSIBILITY.

Rules 3.8(f) and 5.1 of the District of Columbia Rules of Professional Conduct also forbid the former Special Counsel — or any other member of the D.C. Bar on his team participating in the prosecutorial function — to make any "extrajudicial statements" "in a criminal case" that serve no "legitimate law enforcement purpose."[4] Any effort by the

---

[4] If the former Special Counsel or the Department of Justice contend that the D.C. Rules of Professional Conduct (or other state ethics rules) do not generally apply to General Garland's, the former Special Counsel, or other Special Counsel Office lawyers' conduct or cannot constitutionally apply to such conduct given constitutional Supremacy Clause or separation of powers issues, then, they should say so.

As to Mr. Clark, the D.C. Office of Disciplinary Counsel ("DC ODC") has taken the position that the D.C. Rules **do apply** to Mr. Clark's investigative, prosecutorial, and advice-giving conduct within the Department in 2020-2021 related to the 2020 election (even though no such advice was publicly disseminated), despite *Trump v. United States* and Mr. Clark's direct interchanges with President Trump.

To our knowledge, General Garland and the former Special Counsel could not advance Mr. Clark's constitutional defenses to the attempted application of the D.C. Rules by DC ODC, however, since all statements we have seen in the media attempt to maintain that General Garland and Mr. Smith acted wholly independently of President Biden or his subordinates, including but not limited to lawyers at the White House Counsel's Office. If President Biden did communicate instructions or pose questions to General Garland or Mr. Smith, etc., the former Special Counsel and the Department of Justice should say so now.

17

former Special Counsel or the Attorney General to justify the prosecutions or plead the case in the media would only "serve to heighten condemnation of the accused" and anyone else named in the report who were, or were rumored to be, alleged co-conspirators (either in the original indictment or the superseding indictment). Hence, that course of conduct does not serve any legitimate law enforcement purpose and it should not be tolerated.

It is equally unethical under Rule 3.6 of the New York Rules of Professional Conduct for Mr. Smith to write a report on his work as putative Special Counsel. The only conceivable purpose for such a report is to make "an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." As night follows day, either the report itself or a draft will "leak" from the Department of Justice or from Congress, and both the Special Counsel and General Garland will be responsible for failing to ensure "that all lawyers in the firm or agency conform to the Rules of Professional Conduct." D.C. Rules of Professional Conduct Rules 5.1(a) & (c); N.Y. Rules of Professional Conduct 5.1(a) & (c). Analogous restrictions exist in many state ethics rules, but we cannot comprehensively detail all applicable provisions because we do not know the identity and bar membership States of all of the lawyers who have worked for the former Special Counsel in his *ultra vires* persecution of President Trump.

Finally, we note that there are significant questions of the degree to which Fulton County District Attorney Fani Willis coordinated with the January 6 Select Committee, the Justice Department, and the Biden White House Counsel's Office. Judicial Watch has been having a devil of a time trying to get documents out of Fani Willis' office that would expose one or more of those linkages. *See Judicial Watch v. Fani Willis*, Civ. A. 24-CV-002805 (Ga. Fulton Cty. Super. Ct. Jan. 3, 2025), in which the court awarded Judicial Watch $21,578 in attorney's fees for improperly resisting a Georgia Open Records Act request concerning interactions between the District Attorney's Office and federal actors based in part on the District Attorney's Office falsely denying that responsive records existed on three different occasions. Disgraceful prosecutorial misconduct afflicts every facet of these matters.

The fact that such linkages appear to exist but have just not yet been exposed to the light of public review provides a further reason to bar release of the former report's since such linkages will preclude the Justice Department from claiming that it conducted its prosecutorial war on President Trump and his allies in a pristine and hermetically sealed vacuum with no cooperation with lawfare efforts against the same defendants in state court and bar forums around the country.

## IV.   THE COURT HAS AUTHORITY TO EXTEND THE INJUNCTION.

This Court plainly has authority under Federal Rule of Appellate Procedure 8(a) to issue an injunction pending appeal (which DOJ recently took in Eleventh Circuit Case

Number 25-10076) because such relief must be sought first at this level of the Court pursuant to the plain text of Federal Rule of Appellate Procedure 8(a)(1)(C).

In the alternative, we suggest the Court order the same relief pursuant to the All Writs Act, 28 U.S.C. § 1651. *See, e.g., United States v. Lynd*, 301 F.2d 818, 819 (5th Cir. 1962) (binding authority on the Eleventh Circuit and its District Courts), *cited in* FRAP 8, Advisory Committee Notes.

## CONCLUSION

For the foregoing reasons, the Court should grant—permanently—the injunctive relief sought by Mr. Nauta and Mr. De Oliveira and ensure that the relief extends to bar release of the entire Jack Smith report—both volumes.

Relatedly, we would request that this Court enter an administrative stay to do three things: (1) as the Court sees fit, direct *amici*/putative intervenors to file a collateral civil action seeking injunctive relief against release of the report **on or before January 16, 2025 at 5 pm** (*see* Motion for Leave to File this brief); (2) allow the parties, any defendant-side *amici*, and any other parties, pursuant to a protective order, to review both volumes of the report to be able to pinpoint the prejudice to them and provide sufficient time (we suggest two weeks) to make follow-on filings to this Court before it decides this important matter, since once the report is released in whole or in part that bell cannot be unrung; and (3) allow this Court to review the report *in camera* to assess for itself the

prejudice that defendants and *amici* like Mr. Clark or other potential *amici* might experience in violation of constitutional, statutory, or regulatory law.

Respectfully submitted, this 11th day of January, 20252025.

/s/ *Ibrahim Reyes*
Florida Bar No. 581798
**REYES LAWYERS, P.A.**
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Mobile. 305-218-0982
ireyes@reyeslawyers.com

**CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP**

Harry W. MacDougald*
Georgia Bar No. 463076
6 Concourse Parkway
Suite 2400
Atlanta, Georgia 30328
404-843-1956
hmacdougald@ccedlaw.com

*Pro Hac Vice Application forthcoming*

*Counsel for Amicus Curiae Jeffrey B. Clark*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was filed on this 11th day of January 2025 with the Court's electronic filing system, which causes service to be made upon all counsel of record.

This 11th day of January 2025.

/s/ *Ibrahim Reyes*
Florida Bar No. 581798
**REYES LAWYERS, P.A.**
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Mobile. 305-218-0982
ireyes@reyeslawyers.com