UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| WALTINE NAUTA, and | ) |
| CARLOS DE OLIVEIRA, | ) |
| | ) |
| Defendants. | ) |

**THE UNITED STATES' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO PRECLUDE THE GOVERNMENT FROM ISSUING VOLUME TWO OF THE SPECIAL COUNSEL'S REPORT**

Pursuant to this Court's January 13, 2025 Order ("January 13 Order"), ECF No. 697, the United States submits this opposition to Defendants Nauta and De Oliveira's "Emergency Motion to Preclude the Government from Issuing a Purported Special Counsel Report" ("Mot." or "Motion"), ECF No. 679, as to Volume Two of Special Counsel Jack Smith's Final Report.[1]  As explained further below, Defendants' motion should be denied for two reasons.  *First*, Defendants Nauta and De Oliveira cannot establish that the Department of Justice's intention to make Volume Two of the Final Report available for *in camera* review by the Chairmen and Ranking Members of the House and Senate Judiciary Committees will cause Defendants any harm, much less irreparable harm as

---

[1] Volume Two, which is the subject of this opposition, concerns the Special Counsel's investigation and prosecution of defendants Nauta and De Oliveira, as well as President-elect Trump, relating to the mishandling of classified documents (Classified Documents Case).

1

required to obtain emergency relief. *Second*, Defendants cannot establish that injunctive relief is appropriate on the merits because this Court lacks the authority to intrude on the Attorney General's prerogative to manage the Justice Department's interactions with Congress, and there exists no other basis to enjoin the Department.

For these reasons, the United States respectfully submits that Defendants' Motion should be denied.

### I.  Defendants Have Not Established That Limited *In Camera* Review By Four Members Of Congress Will Cause Defendants Any Harm.

A party must establish irreparable harm to obtain injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005) ("[T]to obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right . . . ; (2) there is no adequate remedy at law . . . ; and (3) irreparable harm will result if the court does not order injunctive relief."). Defendants fail to make that showing here.

a. Defendants' primary contention in seeking injunctive relief has been that an injunction is necessary to prevent prejudice in the still-ongoing criminal case against them. Of course, that prosecution has been dismissed by this Court, and whether it will ever proceed is uncertain. In any event, the Department of Justice is committed to ensuring the integrity of the Department's pending criminal prosecutions. To prevent the risk of prejudice to defendants Nauta and De Oliveira's criminal case, the Attorney General has agreed with the Special Counsel's recommendation that Volume Two of the Final Report

not be publicly released while the case against the defendants remains pending. *See* 28 C.F.R. § 600.9(c). If permitted, however, the Attorney General does intend to make Volume Two of the Final Report available for *in camera* review to a limited number of members of Congress. Providing such information to Congress facilitates its ability to "legislate 'wisely and effectively,'" while exercising oversight of Executive Branch agencies, *see Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020), and permits the Executive Branch to carry out its independent constitutional duty to recommend measures for congressional consideration, *see* U.S. Const. art. II, § 3.

The Department has historically made materials available for *in camera* review by members of Congress as part of the process to accommodate the Executive Branch's interests in protecting the confidentiality of sensitive information while ensuring that Congress can fulfil its own constitutional oversight functions.[2] For example, when a congressional committee sought FBI Form 302 interview reports referenced in the Final Report of Special Counsel Robert Mueller, the Department reached an agreement with the Committee to make those reports available *in camera*, at the Department, pursuant to specified terms, with redactions to protect privileged and grand jury information. *See*

---

[2] Congress has recently, on multiple occasions, taken the position that it has a particularized legislative interest in information about Special Counsel investigations, in order to consider possible legislative reforms regarding the use of special counsels. *See., e.g.,* Plaintiffs' Motion for Preliminary Injunction or, in the Alternative, for Expedited Summary Judgment at 43, *Committee on the Judiciary, U.S. House of Representatives v. Garland*, No. 1:24-cv-01911, ECF No. 11 (D.D.C. Aug. 16, 2024); Plaintiffs' Motion for Preliminary Injunction or, in the Alternative, for Expedited Summary Judgment at 4, *Committee on the Judiciary, U.S. House of Representatives v. Garland*, No. 1:24-cv-01911, ECF No. 11 (D.D.C. Aug. 16, 2024); Plaintiffs' Motion for Preliminary Injunction or, in the Alternative, for Expedited Summary Judgment at 10, *Committee on the Judiciary, U.S. House of Representatives v. Garland*, No. 1:24-cv-01911, ECF No. 11 (D.D.C. Aug. 16, 2024).
.

Supplemental Submission Regarding Accommodation Process ¶¶ 1-2, *In re: Application of the Committee on the Judiciary, U.S. House of Representatives*, No. 1:19-gj-00048-BAH, ECF No. 37 (D.D.C. October 8, 2019).

Here, the Department intends to make Volume Two available for *in camera* review only by the Chairmen and Ranking Members of the House and Senate Judiciary Committees. The Chair and Ranking members of the Judiciary Committees would be required to agree to specified conditions of confidentiality. For example, they would not be permitted to retain a copy of Volume Two, to take notes, or to bring in any devices that could be used to photograph or communicate about the Volume. The review would also occur under the supervision of a Department of Justice official to ensure compliance with these restrictions. As a condition of viewing the report, they also would have to agree not to share information in Volume Two publicly. These precautions significantly reduce, if not eliminate, the chances of a prejudicial leak of information.[3]

For this reason, Defendants' reliance (Mot. 8-10) on S.D. Fla. L.R. 77.2(a) is misplaced. That rule provides that attorneys may not "release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer or the firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Here, no reasonable person would expect that a limited and

---

[3] Consistent with legal requirements, the version of the report prepared by the Special Counsel that the Department will make available *in camera* for congressional review (if permitted) redacts grand jury information protected by Rule 6(e) as well as information sealed by court order.

4

highly regulated *in camera* review by four members of Congress, contingent on their good faith commitment to confidentiality, would result in the dissemination of information contained in Volume Two by public communication or that a reasonable likelihood exists that such dissemination would interfere with a fair trial or otherwise prejudice the due administration of justice.

Defendants speculate that despite the precautions the Department intends to take with respect to the *in camera* viewing of Volume Two by four members of Congress, prejudicial information might nonetheless be disclosed. They contend that if their currently dismissed prosecutions ever go forward, potentially disclosed information could be prejudicial. But this argument rests entirely on conjecture and disregards the options available to the Court to protect the Defendants from prejudice were this speculative chain of events to come to pass. Defendants cite no case in which a Court has issued an order comparable to the one they seek here—an order that forbids the Executive Branch from reaching an accommodation with Congress, a co-equal branch of government. There is thus no basis to judicially enjoin the proposed *in camera* congressional review of Volume Two.

b.  Independently, Defendants cannot establish irreparable harm because Defendants could obtain relief—in the form of curative instructions or even dismissal or reversal of a conviction following any future prosecution—for any violation of their rights as criminal defendants caused by release of information from Volume Two. *Cf. Deaver v. Seymour*, 822 F.2d 66, 69-71 (D.C. Cir. 1987) (explaining that, "[b]ecause" federal criminal "defendants are already guaranteed access to a federal court," they possess "a federal forum in which to assert their defenses—including those based on the

Constitution"). Thus, even "[a]ssuming *arguendo* that" Defendants' "contention is correct," their "rights can be vindicated by a reversal of any conviction." *Id.* at 71 (collecting authorities); *see also Deaver v. United States*, 483 U.S. 1301, 1303 (1987) (Rehnquist, C.J., in chambers) ("There will be time enough for applicant to present his constitutional claim to the appellate courts if and when he is convicted of the charges against him."). Because any harm to these criminal defendants caused by *in camera* congressional review of Volume Two can be cured by this Court when presiding over any future reinstated prosecution, that harm is not irreparable.

**II.     The Relief Defendants Seek Is Unnecessary And Contrary To Law.**

Defendants are also unable to show, as they must to obtain the injunctive relief they seek, a likelihood of success on the merits. An extended injunction intrudes on the Attorney General's prerogative to manage the affairs of the Justice Department, including to determine whether to share with Congress in a limited respect a report prepared by subordinate officials within the Department, *cf.* 28 U.S.C. § 509. Justice Department regulations expressly authorize the Attorney General to "determine that public release" of a Special Counsel report "would be in the public interest," 28 C.F.R. § 600.9(c), and to make a report to Congress upon the conclusion of a Special Counsel's investigation, *id.* § 600.9(a). As explained in greater length in the United States' opposition to defendants' motion in Case No. 24-12311 in the Eleventh Circuit, defendants offer no cognizable basis for restricting the Attorney Generals' discretion in this regard. Indeed, the Eleventh Circuit already denied Defendants' motion seeking this relief. *See* Order at 2, *United States v. Nauta*, No. 24-12311 (11th Cir. Jan. 9, 2025).

Beyond the now-allayed concerns about prejudice to the Defendants from *public* disclosure of Volume Two in the Classified Documents Case, there is no plausible basis

6

for injunctive relief as to Volume Two. Defendants have argued at length that the Special Counsel was not, in fact, a valid Special Counsel, and therefore cannot prepare or transmit a valid Special Counsel report to the Attorney General. The United States has explained in its briefs before the Eleventh Circuit in Case No. 24-12311 the errors in these arguments. But, in any event, those arguments are irrelevant at this stage in light of the Special Counsel's transmission of the Final Report to the Attorney General. All that is left is for the Attorney General to determine how to handle that report, and his authority in this respect is clear.

Accordingly, even if the Special Counsel were invalidly appointed, it still would not follow that the Final Report was somehow improper. There can be no serious question that the Attorney General had, at a minimum, the statutory authority to hire Jack Smith and his staff as employees of the Department of Justice. *See* 5 U.S.C. § 3101. The Supreme Court has recognized that investigative reports can be prepared by individuals who have not been appointed as officers of the United States. *See Buckley v. Valeo*, 424 U.S. 1, 137 (1976) (per curiam) (holding that non-officers can perform tasks of "an investigative and informative nature"). There is, therefore, no appointments-based reason to doubt Special Counsel Smith's authority to draft a report summarizing the activities of his office—much less to prevent the Attorney General from receiving or disposing of that report under Department regulations.

The Attorney General is the Senate-confirmed head of the Department of Justice and is vested with the authority to supervise all officers and employees of the Department. The Attorney General thus has authority to decide whether to release an investigative report prepared by his subordinates. That authority is inherent in the office of Attorney General,

7

*cf.* 28 U.S.C. § 509; it does not depend on the lawfulness of the Special Counsel's appointment to take actions as an inferior officer of the United States or on the Department's specific regulations authorizing the Attorney General to approve the public release of Special Counsel reports, *see* 28 C.F.R. § 600.9(c). Indeed, the Attorney General would have the authority to decide whether to publicly release a report prepared and provided to the Department by wholly private citizens. Defendants' objections to the Special Counsel's appointment thus simply have no bearing on the Attorney General's authority here.

Defendants' invocation of the Presidential Transition Act is also misplaced. First, it is doubtful that Defendants have standing to raise any such claim. They are not personally affected by the Presidential Transition Act, and President-elect Trump is not a party to this case. The Act, moreover, contains no private right of action. Indeed, the portion Defendants invoke does not even impose binding restrictions. Section 2 provides merely that "it is the intent of the Congress that" federal officers "promote orderly transitions in the office of President." 3 U.S.C. § 102 note (emphasis added) (Section 2 of the Presidential Transition Act). In any event, limited *in camera* review of Volume Two is in no way inconsistent with an "orderly transition[]." *Id.* The Attorney General has made clear that he will not *publicly* release Volume Two of the Final Report while Defendants' case remains pending. To the extent Defendants have standing and a merits theory under the Presidential Transition Act to object to the release of the only portion of the Final Report that affects their interests, the Attorney General's determination not to release Volume Two fully addresses any injury

As the government explained in opposing injunctive relief in Case No. 24-12311, Defendants' other legal theories are equally baseless. *See* Plaintiff-Appellant's Opposition to Motion for Injunction, *United States v. Nauta*, No. 24-12311, ECF No. 90 (11th Cir. Jan 8, 2025).

## CONCLUSION

For these reasons, this Court should deny Defendants' "Emergency Motion to Preclude the Government from Issuing a Purported Special Counsel Report" (ECF No. 679), and lift the Court's January 13, 2025 temporary injunction (ECF No. 697), as to Volume Two of Special Counsel Jack Smith's Final Report.

Dated:  January 14, 2025

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARKENZY LAPOINTE
United States Attorney

 *s/ Elizabeth J. Shapiro*
ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
Special Bar ID #A5502352
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-5302 / Fax: (202) 616-8460
E-mail: elizabeth.shapiro@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which sends notice to all counsel of record.

*/s/ Elizabeth J. Shapiro*
Elizabeth J. Shapiro