IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 23-cr-80101-CANNON |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| WALTINE NAUTA, and | ) | |
| CARLOS DE OLIVEIRA, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PRECLUDE RELEASE OF VOLUME TWO

Stanley E. Woodward, Jr.  
BRAND WOODWARD LAW, LP

John S. Irving, IV  
E&W LAW, LLC

Richard C. Klugh  
KLUGH WILSON, LLC

Larry Donald Murrell, Jr.  
L.D. MURRELL, P.A.

*Counsel for Defendant*  
*Waltine Nauta*

*Counsel for Defendant*  
*Carlos De Oliveira*

The release of Volume Two of the Final Report will create irreparable harm to the defendants in this pending criminal matter—a matter the government is welcome to dismiss if its priorities are to provide the public information about its effort to prosecute President Trump and these defendants. The unenforceable disclosure conditions proposed by the government fail to alleviate the direct, pervasive threat of prejudice and more significantly will leave this Court without recourse should confidential information, or the reactions to or depictions of that information by the would-be designated recipients (including partisan figures who have supported the prosecutive endeavor) enter the public domain. The harm will be of an irreparable, ongoing nature, and tempering the prejudice will be functionally impossible, due to both separation of powers principles and the uniquely high-profile nature of the case.

This Court has the authority to control the flow of information relating to its own criminal trials. The government cites no urgency for why the Report must be released now, while the case is still pending. And worse yet, the government declares for the first time that this Court does not have authority to bind the Justice Department in relation to a pending criminal matter initiated in the Department's name, by an unauthorized Special Counsel. The government's claim is a remarkable assertion that calls into question the validity of the previously entered protective orders, to which the government had no prior objection throughout the case. The government cannot in good faith suggest that this Court may only bind defense speech and disclosure related to the trial, but may not bind the Justice Department. The government used its investigative and law enforcement power to obtain confidential information for use in a federal criminal proceeding, including federal grand jury authority to bring the indictment in this Court. The government cannot now turn around and say that it is wholly insulated from court intervention when it attempts to use that information for political immediacy rather than prosecutorial purposes. As with so many aspects of this case, the government complains of problems of its own making.

1

The government concedes that the public release of Volume II would be unfairly prejudicial to the two pending codefendants and instead attempts to create a work-around—by referring the pending matter to the U.S. Attorney's Office to claim that the Special Counsel's investigation has "concluded"; and by arguing to this Court that its proposed conditions adequately insulate against leaks. But the government's proposals are insufficient: Where partisan political advantage is at stake, leaking—even subject to whatever congressional oversight that may occur—still results.

I. **Even limited *in camera* review of Volume Two is highly inappropriate here.**

The government relies on civil case law to suggest that defendants are not entitled to an injunction (or, effectively, a protective order precluding disclosure beyond that provided for in this Court's protective orders). In so doing, the government misses the mark: "To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979). "And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." *Id*. The Supreme Court in *Gannett* also noted the specific concerns about release of prejudicial information *at the pretrial stage*, where publicity can "pose[ ] special risks of unfairness," because it can "influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial." *Id*.

The dangers associated with pretrial publicity are "particularly acute" because it is "difficult to measure with any degree of certainty the effects of such publicity on the fairness of the trial." *Id*. "After the commencement of the trial itself, inadmissible prejudicial information can be kept from a jury by a variety of means," but when "such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors." *Id*. at 378-79. This Court acts well within its authority to limit the flow of information to "insure that the

fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun." *Id*. at 379.

Release of a report will obviously compromise the defendants' fundamental and constitutionally-protected rights to a fair trial. The government argues that because this Court dismissed the prosecution, "whether it will ever proceed is uncertain." DE:703 at 2. The government cannot speak out of both sides of its mouth in this fashion. On the one hand, it has devoted substantial time and energy to arguing that this Court's dismissal order was wrong, and still to this day actively pursues that argument in the Eleventh Circuit. It has not withdrawn its appeal of the dismissal order. Indeed, the government's every action—including, notably, Jack Smith's preparing the Final Report and continuing to work on the case after he was disqualified—has indicated that it does not take this Court's dismissal order seriously. Only now for the first time does the government reverse course and suggest that it views the dismissal order as a correct statement of the law that will be upheld by the Eleventh Circuit. The government switches course here only for the purposes of evading the restrictions it knows this Court must impose in a pending criminal prosecution, especially one as highly publicized as this one.

The government cites to *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020), for the proposition that providing such information to Congress facilitates that branch's ability to "legislate wisely [or] effectively." DE:703 at 3. The *Mazars* case does not mandate release of the Report here for several reasons. First, the Supreme Court made that comment in the *civil subpoena* context, not in the criminal law context, and even there noted that congressional power was limited. Civil subpoenas must "serve a 'valid legislative purpose'" and "concern a subject on which legislation could be had." 591 U.S. at 863. The government oddly asserts that Congress has a "particularized legislative interest in information about Special Counsel investigations, in order to consider possible legislative reforms regarding the use of special counsels." DE:703 at 3n.2. It is

3

absurd to suggest that release of Volume Two of the Report—bearing on a still-pending criminal matter—is necessary to allow Congress to "consider possible legislative reforms regarding the use of special counsels." Congress can of course examine ways to lawfully appoint special counsels, as it has since the 1978 Ethics in Government [Independent Counsel] Act. and it does not need Volume Two to do that. In suggesting that release of Volume Two is necessary to allow Congress to reform the use of special counsels, the government acknowledges what the defense has asserted all along: that information in the Report and reactions to the Report, if shared with the four members of Congress proposed by the government, will inevitably be disclosed to other members of Congress and to the public more broadly.

Second, and more importantly, the Supreme Court in *Mazars* explicitly stated that congressional powers in this regard are limited; significantly, "Congress may not issue a subpoena for the purpose of 'law enforcement,' because 'those powers are assigned under our Constitution to the Executive and the Judiciary.'" 591 U.S. at 863. "Congress may not use subpoenas to 'try' someone 'before [a] committee for any crime or wrongdoing.'" *Id*. "Congress has no 'general' power to inquire into private affairs and compel disclosures,'" and it certainly has no power to demand access to confidential and grand jury information in a pending criminal case. "[T]here is no congressional power to expose for the sake of exposure," and "[in]vestigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Id*. (citing *Watkins v. United States*, 354 U.S. 178, 200, 187 (1957)). These principles apply with full force to this dispute.

The government fundamentally misunderstands separation-of-powers principles. It cites to Article II, Section 3 of the Constitution for the principle that the Court has no authority to bind the Executive Branch's disclosure of confidential pretrial information but notably does not cite a constitutional provision that permits the Executive Branch to override the Court in this way—

4

because no such clause exists in our Constitution.  The government can easily separate itself from the powers of this Court—powers that it does not want to acknowledge exist—by dismissing its appeal of this Court's order.  What the government cannot do, however, is invoke the jurisdiction of this Court by filing an indictment and then complain about the Court's exercise of its own jurisdiction.

In proposing certain conditions under which it plans to share Volume II of the Report with Congress, the government misses several areas and does not quell the risks of prejudicial pretrial publicity.  The government says that "as a condition of viewing the report, [members of Congress] would also have to agree not to share information in Volume Two publicly."  But it does not prohibit them from sharing their reactions to, or characterizations of, Volume Two, which risks being even more prejudicial than disclosure of Volume Two.[1]  And it proposes no conditions whatsoever regarding sharing of the information in Volume Two with congressional staffers; or with other members of Congress, who would not be bound by the Department of Justice's proposed and unenforceable measures to protect confidentiality.  That is the biggest problem with the conditions proposed by the DOJ: There is absolutely no enforcement mechanism as to what Congress does with the information once it is in its possession.  Notably, members of Congress have immunity for assertions made on the floor in session.  The likelihood of a substantial leak increases where

---

[1] *See, e.g.* Mary Clare Jalonick, *In rowdy scene, House censures Rep. Adam Schiff over Trump-Russia investigations*, AP News (June 21, 2023), available at https://apnews.com/article/schiff-censure-house-republicans-russia-trump-318300df0f7b4f51c5b0ba5dd91edd23 (last accessed January 16, 2025).  *See also* H. Res. 521, Congressional Record Vol. 169, No. 108 (June 21, 2023), available at https://www.congress.gov/congressional-record/volume-169/issue-108/house-section/article/H3013-1 (noting that Representative Adam Schiff was "afford[ed] access to sensitive intelligence unavailable to most members of Congress"; "abused this trust"; "perpetuated false allegations from the Steele Dossier"; "abus[ed] his privileged access to classified information" by "release[ing] a memo justifying the accuracy of the Foreign Intelligence Surveillance Act (FISA) warrant application on Trump associate Carter Page . . . provoking FISA Court presiding Judge Rosemary Collyer to state unequivocally that the Federal Bureau of Investigation 'misled the FISC'"; "publicly, falsely den[ied] that his staff communicated with a whistleblower"; and "misled the public by reading a false retelling of a phone call between President Trump and Ukranian President Volodymyr Zelensky."

partisan political advantage can best be achieved. Once the information is leaked, there will be nothing that can be done to cure the prejudice.

The government's citation to the Mueller Report is also telling. In the Mueller case—which again involved a civil subpoena, not a pending criminal case—the government agreed to redact from the Report "sensitive information related to ongoing cases and investigations." *In re Application of the Committee on the Judiciary*, U.S. House of Representatives, No. 1:19-gj-00048-BAH, DE:37 at 3 (D.D.C. Oct. 8, 2019). Here, Volume Two is comprised *entirely* of "sensitive information relating to ongoing cases and investigations." That distinguishes it from FBI 302 forms from the *closed* Mueller investigation after the Department of Justice publicly released that Report. If the Mueller case is instructive, as the government argues, then it counsels in favor of enjoinment, not of release.

Here, the government takes a much narrower view of confidentiality than that which it advanced in the Mueller matter. The government suggests that it need only redact grand jury information from this Report, but the government's argument in this respect is a illusory: As defendants have previously noted, the government's proposed redactions with respect to grand jury information are insufficient, and the Report contains far more confidential and privileged information, including argument and information that would have been the subject of motions in limine and pursuant to Fed. R. Crim. P. 404(b), that is inappropriate for disclosure at this juncture of the case. *See United States v. Herring*, 568 F.2d 1099, 1103 (11th Cir. 1978) (some cases involve "publicity so pervasive and expressly prejudicial that it occasions a violation of the fifth (or fourteenth) amendment's due process clause" and "[i]n such cases, the record of the trial proceedings, and the publicity attendant thereto, will lead an appellate court to the presumption that the question of a defendant's guilt was prejudiced by the publicity preceding or contemporaneous with that defendant's trial").

6

In *Herring*, the Eleventh Circuit reversed and remanded a defendant's conviction due to the effect of prejudicial publicity and noted that it "would have to speculate to conclude that undue prejudice did not exist." *Id*. at 1106. The government asks this Court to engage in the same rampant speculation here. Binding Circuit precedent makes clear, however, that "[i]n the interests of justice, we must give the defendant the benefit of the doubt." *Id*. The government's assertion—that "no reasonable person would expect that a limited and highly regulated *in camera* review by four members of Congress, contingent on their good faith commitment to confidentiality, would result in the dissemination of information contained in Volume Two by public communication or that a reasonable likelihood exists that such dissemination would interfere with a fair trial or otherwise prejudice the due administration of justice"—is at variance with this binding Circuit case law.

And, yet again, the government takes care in stating its positions to promise only that *information* in the Report will not be shared publicly, while remaining notably silent on the question whether impactful characterizations of the Report can be shared freely. Given the high-profile nature of the case, and the lack of any enforcement mechanism to ensure confidentiality, the benefit of the doubt must be given to the defendants. The government's arguments about "the options available to the Court to protect the Defendants from prejudice" when the inevitable leaks occur is another red herring, especially in light of its simultaneous position that the Court cannot bind it. The government cites "dismissal or reversal" as a possible remedy, but that argument simply highlights the stakes of disclosure and concedes that such disclosure is improper in the first instance. It suggests that the Department of Justice is focused more on politics than on just prosecution. If the Executive Branch's aims are political, and unrelated to enforcement of the law, it can dismiss the case on its own volition. The government's suggestion—that the Report should be released and then the case dismissed when inevitable prejudice occurs—makes a mockery of

7

this Court's proceedings and reflects an irresponsible approach to the expenditure of taxpayer dollars.

The government's separation of powers argument ignores established rules and procedures, required by the Constitution and as recognized by the Supreme Court, to prevent prejudice. The government does not cite a single case where it has been permitted to disclose to Congress confidential material in a *pending* criminal prosecution.

## II. The relief requested by defendants is wholly consistent with the law.

The government again tries to cabin the question of release into civil injunction case law, but the reality is that this is a criminal prosecution and the only relief requested is enforcement of this Court's previously entered protective orders and other well-established rules governing criminal trial confidentiality. Such orders do not, as the government contends, "intrude[ ] on the Attorney General's prerogative to manage the affairs of the Justice Department." DE:703 at 6. And to the extent that they do, criminal due process rights trump administrative affairs management. Rules regarding confidentiality make clear that information such as grand jury material can *only* be shared, even within the government, to further a law enforcement function. The government's own brief asserts that it wants to share the material with Congress for a political policy purpose—and the government's actions demonstrate that the true purpose is neither legislative nor law enforcement, but rather political.

The government again contradicts itself, in one breath portraying the Report as "prepared by subordinate officials within the Department," and in the next arguing that regulations allow the Attorney General to "make a report to Congress upon the conclusion of a Special Counsel's investigation." *Id*. The government's blatant attempt to exploit these loopholes should be swiftly rejected. Though Jack Smith has resigned, the investigation he initiated continues. It cannot be deemed complete for purposes of the federal regulation. And, in any event, the Final Report is a

8

legal nullity as it was prepared pursuant to a misuse of appropriated funds by a disqualified government actor.  It is not subject to the regulation.

The government incorrectly suggests that the Eleventh Circuit answered a merits question in this matter, even though it has not spoken as to any merits or other ruling by this Court in this matter.  The Eleventh Circuit's Jan. 9, 2025, order denying emergency relief in that court is best understood on jurisdictional grounds, and the government should be well aware of that reality; the Court of Appeals made clear that if the government had a problem with this Court's jurisdiction, it has the same appellate rights as any other party.  No clear manifestation could be made that the Eleventh Circuit entertained, much less resolved, the merits issue.  Instead, the court of appeals left to the government the opportunity to either appeal or to litigate the matter in this Court, the government having failed at that point even to file a response to the emergency motion for protective order.  If the government sincerely believed that the Eleventh Circuit had ruled on the merits question, it would also have deemed itself free to release the Report at that time.  The government knows full well that the Eleventh Circuit's order is not properly read as allowing release, and its efforts to portray it as otherwise reveal the weakness of its merits arguments.  The concerns about prejudicial publicity are far from "now-allayed," *cf. id.*, and there is ample basis— indeed, constitutional requirement—to enjoin release of Volume Two while this matter is ongoing.

The disqualification of the Special Counsel is eminently relevant to the question whether release is appropriate, and even more relevant to the question—raised by the government's own arguments—of whether the regulations should override the defendants' constitutional rights.  The government's brief either wholly ignores or fundamentally misunderstands the concept of fruit-of-the-poisonous-tree.  The DOJ cannot cite regulations that are necessarily predicated on constitutional authority to prepare a report and to argue for its release, while also claiming that the lawfulness of preparation is of no import because the Report was already transmitted to the

Attorney General. The government spends several pages expounding the general authority of the Attorney General but it never explains why in its view that authority divests this Court of jurisdiction. And that is because there is no defensible explanation to support the government's position. The interests of the Fifth and Sixth Amendment in a criminal prosecution cannot be superseded by the very government seeking both to prosecute the defendants to prejudice them in derogation of the protections of fair trial rights.

## CONCLUSION

Defendants respectfully request that this Court enjoin release of Volume II of the Final Report pending resolution of this case.

Dated: January 16, 2025            Respectfully submitted:

/s/ Stanley E. Woodward, Jr.
Stanley E. Woodward, Jr. (pro hac vice)
BRAND WOODWARD LAW, LP
400 Fifth Street NW, Ste 350
Washington, DC 20001
(202) 996-7447 (telephone)
stanley@brandwoodwardlaw.com

/s/ John S. Irving, IV
John S. Irving, IV (pro hac vice)
E&W LAW, LLC
1455 Pennsylvania Ave NW, Ste 400
Washington, DC 20004
(301) 807-5670 (telephone)
john.irving@earthandwatergroup.com

/s/ Richard C. Klugh
Richard C. Klugh
Fla. Bar No. 305294
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191 (telephone)
klughlaw@gmail.com

/s/ Larry Donald Murrell, Jr.
Larry Donald Murrell, Jr.
Fla. Bar No. 326641
L.D. MURRELL, P.A.
400 Executive Center Drive, Ste 201
West Palm Beach, FL 33401
(561) 686-2700 (telephone)
ldmpa@bellsouth.net

*Counsel for Defendant Waltine Nauta*

*Counsel for Defendant Carlos De Oliveira*