**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,

            Plaintiff,

vs.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

            Defendants.

**Case No. 23-80101-CR**
**CANNON/REINHART**

**EXPEDITED MOTION**

**WALTINE NAUTA'S AND CARLOS DE OLIVEIRA'S EXPEDITED MOTION FOR,
AND RESPONSE IN SUPPORT OF, AN ORDER PERMANENTLY PROHIBITING
RELEASE OF VOLUME II OF THE FINAL REPORT UNLAWFULLY
<u>PREPARED BY JACK SMITH</u>**

      Waltine Nauta and Carlos De Oliveira, through undersigned counsel, respectfully move

for an order permanently prohibiting the release of Volume II of the Final Report ("Report")

prepared by Jack Smith, who this Court previously determined was unconstitutionally appointed

as "Special Counsel," and unconstitutionally funded through a permanent indefinite

appropriation for independent counsels. *See* DE 672. Mr. Nauta and Mr. De Oliveira seek this relief

in the form of an order requiring the destruction of all copies of Volume II and/or permanently enjoining

their release. "[W]here motions for expungement challenge an unconstitutional conviction or an illegal

arrest or are otherwise based upon a constitutional claim, federal courts may have jurisdiction to consider

the motion." *United States v. Field*, 756 F.3d 911, 915 (6th Cir. 2014) (collecting cases); *see also United

States v. Batmasian*, 66 F.4th 1278, 1282 (11th Cir. 2023) (agreeing with *Field* that ancillary jurisdiction

might exist for a constitutional expungement).

      This expedited motion is made in light of the Court's December 22, 2025, Order, which

permitted current and former parties to this action to seek appropriate relief before the February

24, 2026, expiration of this Court's current injunction barring release of Smith's Report.[1] *See* DE 761. Former defendants Nauta and De Oliveira hereby adopt the arguments and request for relief presented by President Donald J. Trump on January 20, 2026, *see* DE 772, and offer the following additional reasons why the Court should continue to enjoin the Report's release.

## I.  The Unconstitutionality of Jack Smith's Appointment and Funding is Already Decided and is the Law of the Case

It has already been established in this case that Jack Smith's appointment was unconstitutional, and there is no reason for this Court or the Court of Appeals to revisit that determination. The doctrine of the law of the case "preclude[s] courts from revisiting issues that were [already] decided." *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018); *see also Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000) (The doctrine bars consideration of "those legal issues that were actually, or by necessary implication, decided in the former proceeding."). In particular, "a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation . . . ." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997); *see also Alphamed, Inc. v. B. Braun Medical, Inc.*, 367 F.3d 1280, 1285-86 (11th Cir. 2004) ("[B]oth district and appellate courts are generally bound by a prior appellate decision in the same case.").

In dismissing the underlying criminal case brought by Smith, this Court expressly decided the unconstitutionality of Smith's appointment and funding. *See* DE 672. Given the Government's appeal and subsequent dismissal of that appeal *with prejudice*, the Eleventh Circuit's dismissal order constituting its mandate establishes the law of the case, making this

---

[1] Pursuant to Local Rule 7.1(d), Mr. Nauta and Mr. De Oliveira respectfully request that the Court rule on this expedited motion in advance of the February 24, 2026, expiration of the Court's current order enjoining release.

Court's order the final word on the matter. *Wylie v. Island Hotel Co.*, 774 Fed. Appx. 574, 577 (11th Cir. 2019); *see also Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) ("The doctrine's central purposes include bringing an end to litigation, protecting against the agitation of settled issues, and assuring that lower courts obey appellate orders."); *Escobar-Urrego*, 110 F.3d at 1560 ("Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.").

Smith's Report, which he improperly composed and wrongly sought to disseminate as a "Special Counsel" report, is undoubtedly the fruit of his unauthorized actions as an unlawfully appointed and funded official. Thus, the law of the case doctrine requires that the treatment and effect of that document must be considered in light of this Cout's ruling concerning Smith's unconstitutional appointment and associated misappropriation of tens of millions of taxpayer dollars.

## II.     The Primary Legal Basis for the Court's January 21, 2025, Order Remains Valid

In addition to the unconstitutional nature of Smith's investigation and Report, the primary basis for the Court's January 21, 2025, Order barring release of the Report—*i.e.*, the "substantial and unacceptable risk of prejudice to Defendants"—remains valid. DE 714 at 13. Mr. Nauta and Mr. De Oliveria still face legal jeopardy. This Court dismissed the Superseding Indictment without prejudice on January 21, 2025. DE 761. The Government subsequently dismissed its appeal with respect to Mr. Nauta and Mr. De Oliveira on January 29, 2025. While the dismissal of the appeal was *with prejudice*, its apparent result was to leave this Court's dismissal *without prejudice* in place. The offenses charged in the Superseding Indictment are subject to a five-year statute of limitations, with the latest alleged conduct occurring on January 12, 2023, meaning the

Government arguably has until January 12, 2028, to recharge that count.

While the Justice Department apparently has no current interest in to reinitiating charges, *see* DE 773 ("The illicit product of an unlawful investigation and prosecution belongs in the dustbin of history."), the fact remains that jeopardy persists for Mr. Nauta and Mr. De Oliveira unless and until this case is dismissed with prejudice. Therefore, the release of Smith's Report carries the same threat of substantial and unacceptable risk of prejudice as it did in January 2025. Even Special Counsel Smith agreed in January 2025 that the Report should not be released to the public given the Government's then-pending appeal of this Court's dismissal order as to defendants Nauta and De Oliveira. The same logic continues to apply while Mr. Nauta and Mr. De Oliveira remain in legal jeopardy.

### III.     Release of the Report Would be Unduly Burdensome and Prejudicial to Mr. Nauta and Mr. De Oliveira

Mr. Nauta and Mr. De Oliveira have been through enough. This unconstitutional process has now subjected them to three years of investigation, litigation, and character assassination. Over the course of those three years, they have endured repeated Government interviews and testimony, undue media scrutiny and reputational damage, and threats to their freedom.  Indeed, just as President Trump was, Mr. De Oliveira was even "debanked" during the pendency of this case, further compounding the personal and financial toll of Smith's unconstitutional investigation and prosecution of the former defendants.

Allowing the release of the Report, which is essentially Smith's closing argument and final salvo, would be fundamentally unfair and prejudicial. The Report was created to justify Smith's unconstitutional investigation and contains information and references to documents that are subject to this Court's Rule 16 protective order. DE 27. That order explicitly requires the destruction or return of all discovery materials "[w]ithin 90 days of the conclusion of all stages

4

of this case, including all related appeals . . . unless otherwise ordered by the Court." *Id*. at ¶ 8. Without access to these materials or the ability to use them, Mr. Nauta and Mr. De Oliveira would be unable to effectively respond to the Report's allegations.

The procedural posture of this case has also placed the former defendants at a significant disadvantage in addressing the contents of the Report. Defense counsel had only limited opportunities to review portions of the Report without access to the underlying discovery materials, making it impossible to fully rebut its claims. Additionally, the Report apparently contains extensive confidential grand jury information, as well as attorney-client privileged material and attorney work product that were the subject of a pending defense motion at the time the Superseding Indictment was dismissed.

It would be severely prejudicial at this late stage to require the former defendants to obtain renewed access to the extensive discovery in this case, likely including the classified portion of that discovery,[2] and undergo the necessary line-by-line analysis—and shoulder the associated financial burden—required to make their arguments to this Court. It would be even more prejudicial to allow Smith or others to use information subject to this Court's protective order to make a public closing argument, while prohibiting the defendants from using that same information to defend themselves.

## IV.    There is No Public Right of Access to the Report

Mr. Nauta and Mr. De Oliveira are private figures who were the target of an unconstitutional prosecution. Illegally collected and highly prejudicial investigative material and

---

[2] The Government has indicated that the Report itself does not contain classified information. Even assuming that is correct, which would also require access to the materials referenced in the Report, the classified nature of the information at issue remained an open question and the Government's burden to prove at the time the Court dismissed the Superseding Indictment. For former defendants to properly respond to Smith's one-sided report, they might well require new access to the classified materials in order to make their argument.

opinions—that is, a closing-argument-style summary of Jack Smith's view of selected facts—are not information to which the public's First Amendment or common law right of access attaches. This is particularly the case where the protected material referenced in the narrative was gathered only via an unconstitutional process due to which the charges against both Mr. Nauta and Mr. De Oliveira were ultimately dismissed.

To the extent anyone may seek access to the Report on the theory that it is a "judicial record," that supposition is not true. The Report was never docketed as part of the court record, and it was never put before the Court or any judicial factfinder for a decision on the merits or on a dispositive question. Rather, the Report "contains extensive, non-public discovery materials governed by Rule 16, including large quantities of '[s]tatements concerning anticipated evidence or argument in the case.'" DE 714 at 9 (quoting Justice Manual § 1-7.610(E)).

Further, it has been clearly established in this Circuit that the public's "right of access is not absolute." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007). "The right of access does not apply to discovery and, where it does apply, may be overcome by a showing of good cause." *Id*. "[T]he prospect of all discovery material being presumptively subject to the right of access would likely lead to an increased resistance to discovery requests," *id*. at 1245 (citation omitted), which in turn would hamper defendants' constitutional trial rights. Even documents *filed* in court in connection with discovery motions "are not subject to the common-law right of access," *id*. Indeed, "the need for public access to discovery is low because discovery is 'essentially a private process . . . the sole purpose [of which] is to assist trial preparation." *Id*. (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 2007)).

The Report here reflects a one-sided and cherry-picked summary of improperly and unconstitutionally conducted grand jury investigative actions. Discovery in this matter was even

6

more of a "private process," *Romero*, 480 F.3d at 1245, than it is in the ordinary case, due to the unconstitutionality of the appointment and the highly sensitive nature of discovery materials to which even the defendants no longer have the requisite access to defend themselves from the continued excesses by Smith. The Report should never be released.

## V.  Release of the Report Would Also Inappropriately Risk Violating Grand Jury Secrecy Rules

Grand jury materials are, of course, shielded from the public's right of access. "The long-established policy of upholding the secrecy of the grand jury helps to protect the innocent accused from facing unfounded charges, encourages full and frank testimony on the part of the witnesses, and prevents interference with the grand jury's deliberations." *Pitch v. United States*, 953 F.3d 1226, 1229 (11th Cir. 2020). "Rule 6 of the Federal Rules of Criminal Procedure, which governs matters related to the grand jury, continues this traditional practice of secrecy." *Id*. The Report cannot be unmoored from the grand jury; the unconstitutional federal investigation ran parallel to the grand jury and witnesses interviewed by the FBI were brought before the grand jury. Grand jury secrecy does not vanish simply because a witness before the grand jury previously was interviewed by the FBI. The public airing of such confidential discovery materials would improperly further a lopsided narrative to which the former defendants cannot adequately respond because they no longer have full access to the claimed discovery on which the Report relies and which is premised on Smith's improper access to, and use of, the grand jury process.

In *Pitch*, the Eleventh Circuit reversed a district court's decision to release grand jury materials relating to a historical event that occurred in 1946. It thus limited district courts' ability to provide access to such materials, finding that the statutory command of Rule 6(e) governed. But it did not in any way restrict district courts' authority to *protect* such confidential materials,

and such plenary authority is properly exercised here where the report itself was not created by the grand jury but is fundamentally intertwined with the investigative grand jury process. Indeed, the *Pitch* decision emphasized the extent to which Rule 6(e) shrouds the workings of the grand jury in secrecy—as there, *even nearly a century after the fact*. *See id.* at 1232 ("The questions before us implicate the long-established policy that grand jury proceedings in federal court should be kept secret.").

Even where other Circuits have reached a contrary conclusion as to the scope of Rule 6(e) and have allowed for release of confidential grand jury materials, they have only done so decades after the events—not where, as here, the case could still be prosecuted. The Seventh Circuit, for example, in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016) allowed access *70 years after the fact* to grand jury transcripts *that were actual judicial documents, sealed at the time. See id*. at 755 ("During World War II, the U.S. Office of War Information warned the populace that 'loose lips sink ships.'  But what if the ships sailed some 70 years before the tongues wag?'"); *id*. at 760 (emphasizing the "sharp line" between pre-trial discovery documents that were never filed with the court and documents that were filed with the court). Contemporaneous access to non-judicial records, particularly those that relate to matters before the grand jury, is inappropriate here and does not warrant an exception to Rule 6—particularly where the record at issue is a lopsided investigative narrative that amounts to a draft of a closing argument, written by a private actor using unconstitutionally appropriated government funds.

## VI.   Further Disclosure of Smith's Opinions and Sensitive Investigatory Materials Is Both Unnecessary and Unwarranted

Smith has had ample, undeserved, opportunity to explain his unconstitutional investigation and false allegations in this case. The case involves nearly 800 docket entries, including a 53-page Superseding Indictment and countless other filings detailing Smith's

allegations, theories of his case, and evidence that he anticipated introducing at trial. Smith has also defended his prosecutions in a deposition and a public hearing held by the U.S. House Judiciary Committee on December 17, 2025, and January 22, 2026, respectively. Indeed, in his December 17, 2025, deposition, which resulted in a 255-page transcript,[3] Smith repeatedly answered questions about this case, relying on the documents in the record, while claiming not to be discussing the contents of the Report because of this Court's January 21, 2025, Order. The Superseding Indictment was entered into the Committee record (Ex. 13), and Smith testified extensively about its contents (Tr. at 197-218). Smith discussed his office's responses filed in this case concerning the unlawful collection and use of evidence (Ex. 17) (Tr. 219-22, 232-34). Committee staff even used a book written by *Washington Post* reporters to ask Smith questions about this case (Tr. 31-32, 48, 223-24, 229-30).

As further explained below, Democrats on the House Judiciary Committee have indicated that they will "bring[] Special Counsel Smith back" as soon as this Court's January 21, 2025, Order expires, if that were to occur.[4] This Court should not afford Smith yet another opportunity to present his unlawful theories and opinions to the continued detriment of Mr. Nauta and Mr. De Oliveira, individuals whose lives and reputations have already been irreparably harmed by this unconstitutional prosecution. To enable the unlawfully appointed prosecutor to describe in detail his view of the evidence at a Congressional hearing—while the former defendants' own defense

---

[3] Transcript, Deposition of Jack Smith, Committee on the Judiciary, U.S. House of Representatives (Dec. 17, 2025), *available at* https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/2025-12/Smith-Depo-Transcript_Redacted-w-Errata.pdf.

[4] Press Release, House Committee on the Judiciary Ranking Member Jamie Raskin, At Hearing with Special Counsel Jack Smith, Republicans Peddle Lies as Smith Forcefully Defends Investigations Exposing Trump's Rampant Criminality and Condemns Trump's Retaliation Against Career Staff (Jan. 23, 2026), https://democrats-judiciary.house.gov/media-center/press-releases/at-hearing-with-special-counsel-jack-smith-republicans-peddle-lies-as-smith-forcefully-defends-investigations-exposing-trump-s-rampant-criminality-and-condemns-trump-s-retaliation-against-career-staff.

attorneys lack complete access to discovery materials to rebut his allegations—would be the epitome of unfair prejudice.

## VII.    This Court Retains the Plenary Authority to Block the Release of the Report

Courts possess inherent supervisory power "to impose secrecy orders incident to matters occurring before them." *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005). *See also Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598 (1978) (courts have supervisory power over their own records and files). The Report, though never docketed with this court (and thus not a judicial document to which the public right of access attaches), heavily implicates the discovery and other materials protected from disclosure by orders entered in this case, including at the express demand of the government. The dismissal as to these defendants may be deemed to be without prejudice and thus they remain subject to re-prosecution within any applicable statute of limitations. Courts of course have the right to preclude attorneys from making extrajudicial and inflammatory statements, designed to poison the jury pool. More broadly, district courts have plenary authority to ensure that no unfair prejudice results to former defendants—particularly those who could be future defendants.

## VIII.    Absent a Court Order Barring Release, Third Parties Are Likely to Seek the Report's Release in Other Forums

If the Court's January 21, 2025, Order expires, there is a substantial risk that the Report will be disclosed publicly, causing substantial and irreparable harm to former defendants Nauta and De Oliveira.[5] There are parties in at least two other districts seeking to force release of the Report after the Justice Department declined to produce it in response to their Freedom of Information Act requests due to this Court's Order. *See The New York Times v. U.S. Dep't of*

---

[5] Although the Department of Justice has not indicated that it allowed Smith to maintain prior drafts, it is unclear the extent to which portions of the Report are in the possession of anyone outside of the Justice Department.

*Justice*, No. 25-cv-562 (S.D.N.Y. 2025); *American Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. 2025). House Judiciary Committee Ranking Member Jamie Raskin (D-MD), who has resorted to calling this Court offensive names, has also "backed" these efforts, has renewed his own demands that the Department of Justice release the Report, and has indicated that he will "bring[] Special Counsel Smith back" to publicly speak at a hearing about his unlawful investigation and prosecution of this case as soon as the Court's January 21, 2025, Order expires, if it is allowed to do so.[6]

Outside parties who seek the Report to engender political and personal scandal should not be permitted to forum-shop to seek its release, thereby interfering with this Court's handling of matters properly before it. This Court is the proper venue in which to determine the question of release. Without a continued injunction, there is a substantial risk that a flurry of forum-shopping will occur—resulting in decision by an outside court that lacks familiarity with the underlying matter and is not properly tasked with determining the propriety of public release of confidential and protected discovery materials, including those related to the grand jury.

\*       \*       \*

Whether via Rule 6(e) or via its own plenary authority, this Court should permanently prohibit the release of Smith's Report. Release of the Report would improperly give effect to Smith's unconstitutional investigation and prosecution in this District. It would also prejudice

---

[6] *See* Press Release, House Committee on the Judiciary Ranking Member Jamie Raskin, Ahead of Jack Smith Deposition, Judiciary Democrats Back Legal Challenge to Trump DOJ's Unjustified Withholding of Full Special Counsel Report (Dec. 12, 2025), https://democrats-judiciary.house.gov/media-center/press-releases/ahead-of-jack-smith-deposition-judiciary-democrats-back-legal-challenge-to-trump-doj-s-unjustified-withholding-of-full-special-counsel-report; Press Release, House Committee on the Judiciary Ranking Member Jamie Raskin, At Hearing with Special Counsel Jack Smith, Republicans Peddle Lies as Smith Forcefully Defends Investigations Exposing Trump's Rampant Criminality and Condemns Trump's Retaliation Against Career Staff (Jan. 23, 2026), https://democrats-judiciary.house.gov/media-center/press-releases/at-hearing-with-special-counsel-jack-smith-republicans-peddle-lies-as-smith-forcefully-defends-investigations-exposing-trump-s-rampant-criminality-and-condemns-trump-s-retaliation-against-career-staff.

and defame the former defendants, who cannot correct the factual record as they no longer have access to the full spectrum of discovery materials. For these reasons, and those outlined by President Trump in his January 20, 2026 motion, Mr. Nauta and Mr. De Oliveira respectfully request that the Court enter an order directing the Report's destruction and/or permanently enjoining its release.[7]

Respectfully submitted,

By:      **/s/ Richard C. Klugh**
          Richard C. Klugh
          Jenny Wilson
          Klugh Wilson LLC
          40 NW 3rd Street, PH1
          Miami, Florida 33128
          Telephone: (305) 536-1191
          Email: rickklu@aol.com
          Counsel for Waltine Nauta

By:      **/s/ Larry Donald Murrell, Jr.**
          Larry Donald Murrell, Jr.
          Florida Bar No: 326641
          400 Executive Center Drive
          Suite 201—Executive Center Plaza
          West Palm Beach, FL 33401
          Telephone: (561) 686-2700
          Facsimile: (561) 686-4567
          Email: ldmpa@bellsouth.net
          Counsel for Carlos De Oliveira

By:      **/s/ John S. Irving**
          John S. Irving
          SECIL Law PLLC
          1701 Pennsylvania Avenue, N.W.
          Suite 200
          Washington, D.C. 20006
          Telephone: (301) 807-5670
          Email: John.Irving@SECILLaw.com
          Counsel for Carlos De Oliveira

---

[7] Mr. Nauta and Mr. De Oliveira further request that this Court extend its order barring release of the Report pending resolution of the former defendants' motions on the matter. Additionally, in the event that the Court orders a hearing on the motions, former defendants respectfully request that the Court only requires attendance by counsel.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

I hereby certify that on January 30, 2026, counsel for Waltine Nauta and Carlos De Oliveira conferred with counsel for President Donald J. Trump and counsel for the United States. Counsel for President Trump advised that President Trump consents to the relief sought in this motion and joins in and adopts the arguments set forth herein. Counsel for the United States also indicated that they consent to the filing of this motion and do not oppose the requested relief.

/s/ Richard C. Klugh