NSDC
#13527506
2190 E. MESQUITE AVE.
PAHRUMP, NEVADA 89060



FILED BY ____ D.C.

JUN 26 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

(Plaintiff),

v.

DONALD J. TRUMP,

ANTON A. IAGOUNOV,

(Defendant).

Case No. 9:23-CR-80101

**MOTION TO RETURN PROPERTY**

[Emergency Filing]

## Rule 41/Return Property

Defendant, proceeding *'pro se,'* pursuant to **Fed. R. Crim. P. Rule 41 (g) Motion to Return Property**;

> *"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return..."*

Hereby declares he has been deprived of his personal property (see **Exhibits A-B, pg. 3 & 4**) resulting from an unlawful "search & seizure" by FBI Las Vegas which occurred on **October 27th, 2022**, (S. Lake Tahoe, California, Case No. **2:22-SW-0769-EFB**) and again on **April 18th, 2024** (Tijuana, Mexico), which was subsequent to previously conducted searches of Defendant's property

1 Of 20

without warrant, then used to obtain an "overly broad" Search Warrant on a false pretense and without "probable cause" to do so.

## I. UNLAWFUL SEARCH & SEIZURE

### 1. FBI Search Warrant was "overly broad" and without "probable cause"

Search Warrant was:

1) "overly broad" ("blanket warrant"), thus, was illegal as it sought "any" items, and those which were unrelated to the crimes with which Defendant was criminally charged, and in a general location accessible to persons other than Defendant

2) sought items which were "general," lacked specificity, were not unlawful to possess, and in no way were related to the "probable cause" set forth in the affidavit, and

3) resulted in the seizure of many items which were "out of scope" and completely legal to possess (ex. *Cybersecurity training materials, NSA medallion, expired Russian and American passports, etc.*).

"Overly broad" search warrants which encourage "a general exploratory rummaging" are illegal as ruled in United States v. Bridges, 344 F.3d 1010 (9th Cir. 2003), which states:

*"This particularity requirement makes 'general searches under a warrant impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'"* United States v. Cardwell, 680 F.2d 75, 77 (9th Cir. 1982) quoting Marron v. United States, 275 U.S. 192, 196, 72 L. Ed. 2331, 48 S. Ct. 74. Treas. Dec. 42528 (1927).

Records show the Search Warrant sought items described as "any," and without "probable cause" being the supporting information set forth in the Search Warrant was mere suspicion and had no credibility which would otherwise suggest the persons to be searched had committed any crimes.

**Exhibit A:** Property receipt shows FBI seized items unrelated to that which was being sought.

FD-597 (Rev. 4-13-2015)                                                          Page 1 of 3

## UNITED STATE DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION

# RECEIPT FOR PROPERTY

Case ID:    288A-LV-3594166

On (date)   10/27/2022                    item(s) listed below were:
⊠ Collected/Seized
☐ Received From
☐ Returned To
☐ Released To

(Name)

(Street Address)   1432 MELBA DR UNIT 202

(City)   SOUTH LAKE TAHOE, CA

**Description of Item(s):**

Parrot Drone with storage. S/N PS728120AC0H006416. And Case

Pelican case full of electronics

Multiple IDs

Documents

Documents

Keep key tags and keep key device

Notebook with passwords

Vuzit blade smart glasses model 494

TSA badge with ID

Harddrive S/N: 120110E38345236

Fake FBI badge

Washington DC motorcycle plate

Superbook Laptop. S/Ns removed

PC Arrest course certificate and two note books

Go Pro

Homeland Security Manual

T-Mobile Device

Sonim Cellphone

Paperwork RE: Law Enforcement

3 Of 20

**Exhibit B:** FBI seized miscellaneous items irrelevant to the alleged crimes.

FD-597 (Rev. 4-13-2015)                                                           Page 3 of 3

## UNITED STATE DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION

# RECEIPT FOR PROPERTY

Cards for IDs

T-Mobile Device

Homeland Security ID holder

Samsung Boost Mobile Phone

Cards for IDs

Passwords, Contacts, and PINs

Notebooks

Criminal Investigation 10th Edition textbook

Two 40mm $CO_2$ casings, one empty 40mm casing, two $CO_2$ cartridges, and FIST2

License plates and plate cover

Paperwork

Lenova Laptop S/N: MP18EAS7 with cord

CrowPi2 laptop

Law enforcement documents

████ gun

tactical gear

five toy flash bangs and 1 toy grenade in green ammo can

tactical vest

black bag full of law enforcement materials

GL-06 40mm gun

Corrections Uniforms

Hewlett- Packard envy computer tower S/N: 2MD442204F

Received By: _(signature)_

Printed Name/Title: ████

Received From: _(signature)_

Printed Name/Title: Anton Lagounov

Exhibit C: Warrant (2:22-SW-0769) was "overly broad," sought "any" items, thus, lacked specificity.

## ATTACHMENT B

### Items to be Seized

1.     All records relating to those violations of 18 U.S.C. § 912 – False Personation of an Officer or Employee of the United States and 18 U.S.C. § 875(c) – Extortion and Threats in Interstate Communications, involving **Anton Iagounov**, occurring after December 29, 2021, including:

   a.  Records, information, and items relating to the occupancy or ownership of the **Target Locations**;

   b.  Records, information, and items relating to the ownership or use of computer equipment found in the **Target Locations**, including sales receipts, bills for Internet access, and handwritten notes;

   a.  Any clothing, credential, badge, or form of identification that may be used to impersonate a federal officer or employee, or other state or local government officer or employee;

   b.  Equipment for manufacturing false identifications, credentials, or badges such as cameras, identification card printers, and laminating machines;

   c.  Records and information regarding processes, procedures, policies, logos, seals or identifying marks of any federal, state, or local government agency or department, including federal, state, or local courts.

   d.  Records and information relating to specific federal agents, or any other specific government officer or employee, including, but not limited to ATF Special Agent Kit Radosevich, SSRA ▇▇▇ Hart, and NASA OIG Special Agents.

   e.  Records and information relating to the email accounts identified by the following addresses:

Attachment Page 5

<u>**Exhibit D:**</u> "Search Warrant" sought general information which was not material to alleged crimes.

  f.  Records and information relating to communications with Internet Protocol address 77.111.246.40;

  g.  Records and information that indicate impersonation of any federal, state, or local official, by any means, telephonic, written, or in-person;

  h.  Any communication, telephonic, written, or in-person that is a threat or an attempt to extort the recipient in any way;

  i.  Any communication, telephonic, written, or in-person, that is an attempt—successful or unsuccessful—to acquire documents, items, or information, which the asking party did not have authority to access, view, read, or know.

  j.  Records and documents related to **Iagounov's** travel, to include all passports, airline tickets, train tickets, bus tickets, or reservation records, hotel receipts or reservation records, receipts reflecting either interstate or international travel, from December 29, 2021 to the present.

  2.  For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or

41.  Because several people share the **Target Locations** as a residence, it is possible that the **Target Locations** will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

Records show the Search Warrant was post-dated as having been issued and executed on 10/25/2022, however, no items were seized until 10/27/2022, after special agents David Hume (**FBI-Las Vegas**), Kelly Hall (**NASA-Office of the Inspector General**), and Daniel Watanabe (**CIA-Office of the Inspector General**) conducted a "custodial interview interrogation" (see **Exhibit Q, pg. 19**), and then used information voluntarily divulged by Defendant to establish "probable cause" for a Search Warrant obtained in the Eastern District of California by "telephonic attestation," and outside of FBI-Las Vegas' venue (District of Nevada), thus, making the warrant invalid as it was:

1) overly broad ("blanket warrant") in the items being sought

2) void of "probable cause," using irrelevant information in support thereof

3) already executed on **10/19/2022** (see **FBI form FD-302** included below).

4) was pre-textual and obtained under a false pretense

5) submitted in the wrong venue, and

6) inconsistent to crimes with which Defendant was later charged

Furthermore, police bodycamera footage confirms FBI-Las Vegas (Nevada) used SLTPD to initiate several warrantless searches which were pre-textual to the Search Warrant issued on 10/25/2022.

**Exhibit E:** Record that items seized on 10/27/2022 were after the search of 10/25/2022.

## 266Z-LV-3594166 Serial 98

- 1 of 1 -

FD-302 (Rev. 5-8-10)

**UNCLASSIFIED//FOUO**

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry ____12/20/2022____

Included in the digital 1A portion of this documents are digital scans of evidence taken from the search of Anton Iagounov's residence executed on October 25, 2022. The scans were not exhaustive and more evidence was found than is included in this document.

### No Probable Cause

Information set forth in the Search Warrant did not directly support the narrative of the affidavit to establish "probable cause," and outlined incidents unrelated to the suspected crimes (ex. prior local arrest without conviction for an unrelated matter (see **Exhibit J, pg. 11**).

### 2. FBI's "plain view search" without warrant (AXON BODY CAM 3 #X6030132X)

FBI and SLTPD performed an illegal "plain view" search on "target location 1" without a Search Warrant on **10/19/2022**, using an investigative technique known as *"parallel construction,"* and then used information obtained from the warrantless search to establish "probable cause" for a subsequent follow up search on **10/25/2022** and **10/27/2022** (see **Exhibit K**).

**Exhibit F:** SLTPD and FBI conduct warrantless search of "target location 1" on **October 19ᵗʰ, 2022**.



**Exhibit G:** SLTPD and FBI enter "target location 1" without a valid warrant after initiating contact with residents outside of the compound on the basis of a FBI generated "police response" which was falsified by FBI.



**Exhibit H:** SLTPD and FBI conduct a "plain view" search using "parallel construction" to steal

Defendant's license plates as a pretext to initiate a police response.



Government withheld the illegal searches which were without warrant and performed under

coercion and threat of arrest as a pre-text to obtain a Search Warrant after the fact.

### 3. "Search Warrant" signatures are inconsistent (Case No. 2:22-SW-0769)

The "Criminal Complaint," upon which the Grand Jury indictment was based, lacked the

Affiant's signature in support of an "Oath and Affirmation." In accordance with **Rule 4.1 (a) (A)**

**"Complaint by Telephone or Other Reliable Electronic Means"** of the **Federal Rules of Criminal**

**Procedure,** "electronic means" used to submit a complaint or warrant must be "reliable," which the Complainant herein attests were compromised by a "third-party" (contractor) at the time "Criminal Complaint" was submitted.

Onward, the "Criminal Complaint" was unsigned at the time of judicial approval, to which the signatures of the Affiant were later added, and upon further examination by Complainant who is also an expert on financial statement analysis as a fraud examiner, show an inconsistency which raises the likelihood signatures did not originate with the Affiant, suggesting the affidavits were falsified, especially since the Affiant was not called to testify in court by the U.S. Attorney's Office.

**Exhibit I:** FBI Special Agent "David D. Hume" signatures submitted to Grand Jury.





**Image #1:** Signature from **Arrest Warrant** shows discrepancies with **Search Warrant**

**Image #2:** Signature on **Search Warrant** inconsistent with **Arrest Warrant**





**Image #4:** "H" letter top left stroke shows slight curvature and no "hook," and the name is complete on **Arrest Warrant**

**Image #3:** "H" letter top left stroke is "hooked," and the rest of the signature is incomplete on **Search Warrant**

Additionally, spacing between the "loops" comprising the "H" are further apart than on the **Search Warrant**  (see **Image #3**)

Exhibit J: "Search Warrant" was partially based on a pre-textual traffic stop by Sheriff's Dept.

# Incident Report
# CARSON CITY SHERIFF'S OFFICE

22-2438

Supplement No
0001



Address
**911 EAST MUSSER STREET**
City, State, Zip Code
**CARSON CITY, NV 89701**

Reported Date
**04/22/2022**
Rpt/Incident Typ
**IMPERS**
Member#
**BOGGAN**

Phone Number
████ **2500**
Fax Number
████ **2016**

## Administrative Information

| Agency | | Case No | Supplement No | Reported Date | | Reported Time |
|---|---|---|---|---|---|---|
| CARSON CITY SHERIFF'S OFFICE | | 22-2438 | 0001 | 04/22/2022 | | 23:30 |

| CAD Call No | Status | Rpt/Incident Typ | | | | | |
|---|---|---|---|---|---|---|---|
| 221120233 | Report | Impersonating Another | | | | | |

| Location | | | | | | | | | City |
|---|---|---|---|---|---|---|---|---|---|
| N ROOP ST/E WINNIE LN | | | | | | | | | Carson City |

| ZIP Code | Rep Dist | Area | Beat | From Date | From Time | To Date | To Time | Primary Unit |
|---|---|---|---|---|---|---|---|---|
| 89706 | 100112 | 1 | 01 | 04/22/2022 | 18:49 | 04/22/2022 | 20:29 | X1 |

| Member# | | Assignment | Entered By | Assignment |
|---|---|---|---|---|
| JB7528/BOGGAN,████ | | SET Sergeant | JB7528 | SET Sergeant |

| RMS Transfer | Prop Trans Stat | Property? | Approving Officer | Approval Date |
|---|---|---|---|---|
| Successful | Successful | None | JB7528 | 04/23/2022 |

Approval Time
**01:11:12**

Body Worn Camera Footage
**Yes**

I began walking toward the driver's left at the driver's side window; I saw the vehicle Detective Torres stopped was a Ford Taurus Police Interceptor and wondered whether the driver was related to law enforcement. The Police Interceptor model was a variant of the Taurus and was specifically designed for on-duty police use. Standing at the driver's window, I overheard Detective Torres and the driver conversing about emergency lights the driver appeared to have installed in the vehicle.



OSI-IG/U.S. Air Force Special Agent Arrested for FBI Credentials-Carson City Sheriffs. NV pt. 1

### 4. FBI used "parallel construction" to establish pre-text for illegal search

Defendant attests that the FBI has committed violations of federal law in the furtherance of unlawful "search and seizure" activity, and has done so under the guise of a federal law enforcement investigative technique referred to as *"parallel construction,"* or the *"reconstructing of the evidentiary chain,"* further concealing such illegal activity by creating a *"firebreak"* in the evidence gathering process, violating Defendant's civil rights by continued stalking, harassment, illegal surveillance, and searches without warrant.

### FBI-Las Vegas used Nevada Sheriffs in California to conduct surveillance as pre-text to search

**September 9th, 2022,** Carson City Sheriff's Office' (CCSO) Training Field Officers "Rand Hutson" and "Taylor Mieras" acted outside of their jurisdiction in Nevada to conduct law enforcement activities in California (South Lake Tahoe) at the instruction of FBI Las Vegas. It should be noted that Defendant had no outstanding warrants at the time, and had a pending criminal case in the municipality of Carson City, Nevada. Nevada "peace officers" are not sworn as "peace officers" in California, nor are certified as such by the California's "Commission on Peace Officer Standards and Training" (POST), thus, are not authorized to conduct "law enforcement" activities as "peace officers" in California (see **Exhibit E, pg. 14**).

FBI used CCSO to conduct surveillance on Defendant outside of their assigned jurisdiction, and did so under the guise of "parallel construction" to shield the FBI from accountability in their violation of federal and state laws, and by doing so further concealed the FBI's illegal investigation which was lacking "probable cause," using CCSO, and other local police agencies as a cover.

### FBI used CCSO to steal Defendant's license plates

FBI reports confirm Defendant's license plates were stolen as a means of sabotage, and in retaliation for his work as a Private Investigator, particularly whereby Defendant investigated Nevada public corruption, and the Dept. of Defense' involvement with the trafficking of drugs and persons.

**Exhibit K:** FBI stole Defendant's license plates to initiate a police response for a pretextual search.

## 266Z-LV-3594166 Serial 84

FD-302 (Rev. 5-8-10)

-1 of 2-

UNCLASSIFIED//FOUO

FEDERAL BUREAU OF INVESTIGATION

Date of entry     11/01/2022

The incident involving a stolen vehicle with Iagounov's plates on the vehicles was the result of sabotage targeting Iagounov. Because Iagounov has gone public with what he knows about international drug trafficking and corruption in the government he has become a target of sabotage.

| SOUTH LAKE TAHOE POLICE DEPARTMENT | | Page 1 |
|---|---|---|
| 1352 JOHNSON BLVD    SOUTH LAKE TAHOE, CA 96150    530-542-6100 X CONVERTED REPORT | | Case 2210-1468 |

| | F/M A/C | Offenses | | (A/C - Attempt/Completed) | Date Occurred 10/19/22-10/19/22 | Time Occurred 0824 - 0824 | Incident # |
|---|---|---|---|---|---|---|---|
| **OFFENSES** | 484 PC | Petty Theft - Misd; Misdemeanor | | | Date Reported 10/19/2022 | Time Reported 0824 | |
| | | | | | Related Cases | | |
| | | | | | Date Printed 09/22/2025 | Time Printed 14:51:56 | Printed By 0846 |
| | | | | | Latitude 38.910130 | Longitude -120.005940 | |
| | Location     ▇▇▇▇▇ . South Lake Tahoe, CA 96150 | | Beat 6 | Area W | Disposition | | Dispo Date |

## CLASSIFIED//FOUO

Moreover, there is compelling evidence (see **Exhibit A-R, pg. 3 to 23**) which suggests that on 10/15/2022, and again on 10/19/2022, FBI Las Vegas and USAO colluded with the Grand Jury and U.S. District Court Judge "Howard D. McKibben" (Washoe County Sherriff's Office/report #23-**50925**) by applying an investigative technique known as *"parallel construction,"* and in doing so committed theft, stealing the license plates from author's vehicle in the furtherance to an illegal search without a valid warrant, and then used such for the filing of a frivolous search warrant without "probable cause."

**Exhibit L:** Shows FBI used Nevada Sheriff's in California for surveillance of Defendant.

FD-302 (Rev. 5-8-10)

- 1 of 2 -

**UNCLASSIFIED//FOUO**

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry _____ 09/19/2022 _____

On September 9, 2022, a physical surveillance was conducted at 1432 Melba Drive South Lake Tahoe, California. The surveillance was conducted by TFO Rand Hutson and TFO Taylor Mieras. The following observations were made during the surveillance:

At approximately 1218 hours a drive by of 1432 Melba Drive was conducted. A vehicle previously identified as Anton Iagounov's was parked to the east of the apartment building. The vehicle was a silver 4 door sedan bearing California license plate 8VUT670.

Photograph of the vehicle is below.




Deputies ████ Jerauld (left) and ████ Mieras (right)

"Mieras" was previously featured in a document recovered from Defendant's computer and

known to the USAO, titled "Persisting Insider Threat from within Law Enforcement and Intelligence

Community" (Bureau of Alcohol, Tobacco, Firearms and Explosives), an intelligence report implicating CCSO in public corruption.

## 5. FBI seized additional personal items from Defendant in Mexico w/out "extradition warrant"

FBI Las Vegas illegally seized Defendant' T-Mobile phone in Mexico and did so without first obtaining an "extradition warrant."

**April 18th, 2024,** FBI Las Vegas brought Defendant into U.S. Customs and Border Patrol custody after arresting Defendant in Rosarito, Mexico, without an extradition warrant, incidental to which FBI deprived Defendant of his personal belongings without warrant and during a prolonged detention. Defendant was never "Mirandized" and at no point in prolonged detention advised of his "Miranda" rights to "due process," and during which Defendant's T-Mobile phone and wallet containing passport card and security credentials was taken without a valid warrant, nor was Defendant ever provided with a "property receipt" of the seized items.

Defendant's family believed he was "kidnapped" and later filed a missing persons report with the Mexican police, Policia Municipal report #'s **0205-2024-00764/RAC** and **0205-2024-01765** (Rosarito, Mexico).

The FBI and USAO later stated falsities that Defendant was deported from Mexico, knowing such to be untrue as Defendant was legally in Mexico, and the FBI acknowledged contacting their liaison in Mexico for the apprehension of Defendant, knowing there was no "probable cause" to support an "extradition warrant," thus, no "extradition warrant" was issued.

Furthermore, **18 U.S.C. Sec. 3186 "Secretary of State to surrender fugitive."** establishes the Secretary of State as having exclusive authority and final say on the matter of "fugitives" outside of the United States of America. Without a valid "extradition warrant" and hearing on extradition, seizure of Defendant's property in Mexico is illegal, as Defendant was illegally abducted in Mexico by U.S. Officials.

**Exhibit M:** FBI report (form FD-1057) affirms arrest of Defendant in Mexico w/out "extradition."

**Case ID #:** 266Z-LV-3594166      (U//FOUO) IAGOUNOV, ANTON ANDREYEVICH

**Synopsis:**  (U//LES) In April 2022, the Carson City Sheriffs Office (CCSO) arrested FBI main subject Anton Iagounov for impersonating a FBI Special Agent during a traffic stop. After a search warrant was served at Iagounov's house in October 2022, he drove to Mexico. Iagounov continued to conduct impersonations via fax, emails, and other communication methods. In April 2024, the FBI arrested Iagounov in Mexico and he was sent to San Diego for processing. This report provided a summary of baseline checks and databases, and information that was not searched as of 25 April 2024.

**Exhibit N:** Defendant's call transcripts from Sacramento County jail describe items seized in Mexico.

UNCLASSIFIED//FOUO

File Number:           LV-3591466
Task ID:               1842888
Name of Audio File:    Iagounov jail calls, 2nd round

Call 2 of 13 to ████████0364
10:37 AM; Call length 15:33

Anton says he sent Natalia the email for her to urgently send to the attorney. He instructs her how to search for Reno Elko TSA's phone number by inputting the (775) area code. Anton says that since there was no search warrant, the FBI cannot have possession of Natalia's keys or Anton's Security Officer badge. That badge is not impersonation – it didn't have anything such as CIA or FBI on it. They also should not have possession of Anton's wallet, PI license, FCC contractor card, or the T-Mobile (562) area code phone – that is the property of the US Secret Service, not Anton. Anton wants the AUSA to know that he cannot win against Anton; he'd be better off recognizing Anton as an ally or friend because Anton is doing better at the AUSA's job than the AUSA is.
Natalia still can't find a phone number for Reno Elko TSA. Anton mentions that they called him; he didn't call them. He already had a better paying job with the State of Nevada when they called to ask if he'd be interested in working for the DHS. Natalia finds a (775) number for the TSA at the airport; Anton tells her to call that number and request the number to the office on Booth Street in order to get Anton's prior employment records.

Defendant was brought without an "extradition warrant" from Mexico to the United States by FBI Las Vegas-Nevada, going against **18 U.S.C. Sec. 3184 "Fugitives from foreign country to United States,"** and in violation of the **U.S.-Mexico Extradition Treaty of 1984.**

Most circuit courts agree;

> *"If the judge determines that the individual is extraditable, then they must send a certification of extraditability to the Secretary of State, who has the final executive authority to determine whether to extradite the fugitive."* Zhenli Ye Gon v. Holt, 774 F.3d 207, 210 (4th Cir. 2014)

**Exhibit O:** Further confirms FBI and Carson City Sheriff's Office had no "extradition warrant."

Begin Forwarded Message:
**From:** " ▆▆▆▆ Torres" < ▆▆▆▆ @carson.org>
**Subject:** anton text 3-13-24
**Date:** 14 March 2024 11:21
**To:** " ▆▆▆▆ @fbi.gov" < ▆▆▆▆ @fbi.gov>
**Cc:** " ▆▆▆▆ Torres" < ▆▆▆▆ @carson.org>

On March 13, 2024 at approximately 1150 hours, Carson City Task Force Officer (TFO) ▆▆▆▆ Torres notified, via text message, Carson City Sheriff's Office (CCSO) Detective Sergeant Brett Bindley, Patrol Sergeant TJ Boggan and Carson City District Attorney (CCDA) ▆▆▆▆ Brantingham that Anton Iagounov's federal arrest warrant was signed and Mexican authorities would be contacted to get him into custody. TFO ▆▆▆▆ Torres received a message back from CCSO Detective Sergeant Brett Bindley and Patrol Sergeant TJ Boggan expressing a positive response to the information.

## 6. FBI use of "hearsay" obtained from unreliable Confidential Informant (CI)

FBI based their "overly broad" search affidavit on "hearsay" obtained from an unreliable CI.

**Exhibit P:** DOJ profile of Confidential Informant "Mark William Hill."

 **Bureau of Alcohol, Tobacco, Firearms, and Explosives**

### Investigative Workup

#### SUBJECT INFORMATION



**NAME**
W/M Hgt: 507 & Wgt 170
DOB/█████1984
WA DL█████843B
SSN/█████4424

LKA: 6290 Terrace View Ln #A104, Auburn, WA 98092

Associated vehicle(s): WA Plate# C62073T, 2016 Blue Ram Pick Up

Associated phone(s): 206-666-9991 (Verizon Wireless)

#### SUMMARY

ATF Wichita Field Office received the following VM on August 15th, 2021 @ 8:14pm from # █████9991

*"Hey um, I've been trying to call y'all and um y'all don't seem to be answering your phone maybe means you're not a good gov to the people uh y'all got problems y'all I see post blast perimeters in y'all future*

#### INVESTIGATIVE ACTIVITES

- IRS Estep queried the phone # █████9991 through Neustar, TLO, Accurint, CLEAR and LINX. The only subscriber linked to the phone number was a M██ H██, DOB: ███/84 from Auburn WA.
- There is a strong possibility the phone number was spoofed. H██ does not appear to have any links to Kansas.
- H██ was negative in N-Force.
- H██ has two convictions for a 2006 Hit and Run and a 2008 Marijuana Poss (both out of Oregon).
- Not too many significant reports in LINX. Last report was 2/2021 in which he had a vehicle broken into.

#### SOCIAL MEDIA

Possible Email Address:

████████████████

IRS Estep is still searching for a Facebook, Instagram, Twitter, etc. that is lnked to M██ H██. IRS Estep will forward information as additional intel is located.

## Summary:

"Mark William Hill" (U.S. Armed Forces), a CHS ("Confidential Human Source") for the U.S. Drug Enforcement Administration ("DEA") and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), was under investigation by author for involvement with DTOs ("Drug Trafficking Organizations") in California and Nevada since 2014 (Yuba City, California).

April of 2015, "Hill" was investigated by ATF and DEA Reno-Nevada on suspicion of supplying arms and suppressors to Nevada public officials implicit to the use of real estate in the money laundering of illegal gambling proceeds. Approx. October 28th, 2022, "Hill" was arrested, and later convicted, for the "strangulation" of his girlfriend.

CLASSIFIED//FOUO

### 7. Interview of Defendant was a "custodial interrogation"

FBI performed "custodial interrogation" of Defendant by calling in a heavy local police presence and, at gunpoint, coerced Defendant into a voluntary interview used to obtain Search Warrant.

**Exhibit Q:** Documents FBI's custodial interrogation of Defendant.

## 266Z-LV-3594166 Serial 84

-1 of 2 -

FD-302 (Rev. 5-8-10)

**UNCLASSIFIED//FOUO**

**FEDERAL BUREAU OF INVESTIGATION**

Iagounov reached out to NASA because he knew a NASA employee in order to tell them about about drug trafficking within the government that was tied to the murder of Tupac Shakur murder. Employees of the government have been involved in corruption and drug trafficking since the Reagan era. They sold · drugs and laundered money through record companies and hid the criminal activity behind Top Secret/SCI classifications. Iagounov is conducting an investigation to bring these actions to light and raise awareness of societal problems.

Iagounov claims that someone was attempting to gain access to DOD facilities using false Common Access Cards and a fake search warrant. Iagounov claims that he found a copy of the search warrant off of the "dark web." He sent a copy of the warrant to Ryan Pittman via HelloFax, a fax service. He found Ryan Pittman's name from the NASA directory on the NASA website. Alexander Vasilevich Mileant, a former Russian Orthodox priest of a church Iagounov used to attend, worked for NASA.

Iagounov described himself as an ethical hacker and says that he has the ability to hack into phones. He outlines various methods to hack into a phone remotely and access contents within the phone through "phishing links." He also describes some methods that can be used to "spoof" phone numbers through "SIP trunking." Iagounov used SIP trunking to record a call between the Central Intelligence Agency (CIA) and the White House Situation Room. He used a service that made it appear in the White House Situation Room as if the CIA was calling and in the CIA as if the White House Situation Room was calling. Iagounov recorded the call and submitted it as a vulnerability to the DHS.

## II. CLOSING

With the aforementioned, it is hereby asked the court order that all items seized and currently in the possession of the FBI and USAO be returned to Defendant.

Defendant prays this motion be "*liberally construed*" in light of <u>Erickson v. Pardus,</u> 551 U.S. 89, 94, 127 S. Ct. 2197 (2007), whereby "a *document filed Pro Se is to be liberally construed*" and "*must be held to less stringent standards than formal pleadings drafted by lawyers.*"

All items should be returned to Defendant at the following address:

Anton A. Iagounov
PMB 354
P.O. Box 439060
San Diego, CA 92143-9060

Dated: June 11th, 2026

/s/
Donald J. Trump ex rel.
Anton Andreyevich Iagounov
(Defendant)

NSDC
#13527506
Anton Iagounov
2190 E. Mesquite Ave.
Pahrump NV 89060

LEGAL MAIL
CONFIDENTIAL

This correspondence originated
from a detention facility.
The facility is not responsible
for the contents herein.

REC'D BY _____ D.C.
JUN 25 2026
ANGELA E. NOBLE
CLERK U.S. DIST CT.
S. D. OF FLA. - MIAMI

U.S. District Court (SDFL)
Attn Clerk of the Court
400 N. Miami Ave., 8ᵗʰ Floor (#8N0
Miami, FL  33128