**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA,<br><br>Defendants. | **Case No. 23-80101-CR**<br>**CANNON/REINHART** |

**FORMER DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO NON-PARTIES' SECOND MOTION TO INTERVENE**

President Donald J. Trump, Waltine Nauta, and Carlos De Oliveira (together, "Former Defendants") respectfully submit this response in opposition to the Second Motion to Intervene and Seek Clarification of Court's Order at Docket Entry 779 ("Motion to Intervene") filed on October 7, 2026, by counsel for multiple current and former Federal Bureau of Investigation ("FBI") agents and analysts who participated in the underlying investigation and prosecution in this since-dismissed criminal case (collectively, "Prospective Intervenors"). Prospective Intervenors are said to include those who "participated in the search warrant drafting, planning, and execution at Mar-a-Lago on August 8, 2022." ECF No. 809 at 1.[1]

## INTRODUCTION

On July 15, 2024, this Court dismissed Jack Smith's Superseding Indictment against Former Defendants President Trump, Mr. Nauta, and Mr. De Oliveira based on the extraordinary constitutional violations arising from Smith's unlawful appointment as "Special Counsel."

[1] *See* Josh Christenson, *FBI Did Not Believe It Had Probable Cause to Raid Mar-a-Lago for Classified Documents, Bombshell Files Show*, N.Y. Post (Dec. 16, 2025), https://nypost.com/2025/12/16/us-news/fbi-did-not-believe-it-had-probable-cause-to-raid-mar-a-lago-for-classified-documents-bombshell-files-show/.

Undeterred by the Court's Dismissal Order, Smith thereafter improperly proceeded to prepare and submit to Attorney General Merrick Garland an unauthorized two-volume "Final Report of the Special Counsel." This Court subsequently ordered that the unlawfully prepared second volume of Smith's report ("Volume II"), which pertains to his investigation and prosecution of this case, must not be released.

Prospective Intervenors—current and former FBI agents and analysts who participated in the underlying, wrongful investigation and prosecution—now seek to improperly insert themselves into the criminal case. They do so under the guise of requesting "clarification" of this Court's February 23, 2026, Order (the "February 23 Order"). But the Court's February 23 Order is not unclear, and they seek no clarification at all. Rather, Prospective Intervenors seek substantive modifications to the Court's February 23 Order that would circumvent its protections against disclosure, and expressly permit them and others, including Smith, to discuss nonpublic information and conclusions contained in Volume II. The Court's February 23 Order unequivocably prohibits any such disclosure: it enjoins the Attorney General, the DOJ, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, from not only releasing Volume II, but also from otherwise releasing, distributing, conveying, or sharing outside of the DOJ any nonpublic information or conclusions that it contains.

In sum, what Prospective Intervenors characterize as a request for "clarification" is an effort to wrongly carve out exceptions to the Court's unambiguous February 23 Order, and to obtain express permission to engage in conduct that the Order clearly prohibits. The reasons against any such modification to the Court's February 23 Order are several and compelling.

First, the release or sharing of nonpublic information and conclusions in Volume II outside of the DOJ would directly contravene this Court's Dismissal Order. Because Smith lacked

constitutional authority to act as Special Counsel, *all actions* he undertook in that capacity were invalid, and the fruits of those actions *must be set aside*. Smith nonetheless sought to circumvent the Court's ruling by preparing a report for transmittal and subsequent release. This Court's subsequent prohibitions on release are not merely an exercise of its continuing jurisdiction over the case; the prohibitions are a necessary measure to safeguard the integrity of the criminal proceedings and ensure compliance with the Court's Dismissal Order.

The February 23 Order also appropriately reflects this Court's proper jurisdiction and supervision over nonpublic discovery materials generated and produced in connection with these proceedings. Throughout the litigation, Smith and his team repeatedly insisted that nonpublic discovery information should remain shielded from disclosure under the Court's Rule 16 Protective Order, which remains in effect today. Indeed, they went so far as to demand that defense counsel delete all discovery materials upon the conclusion of the case. Having insisted on Former Defendants' strict adherence to the Court's protections, Smith and others acting in concert with him should not be permitted to disregard those same protections when doing so serves their own purposes.

Moreover, the disclosure of nonpublic information and materials gathered during the underlying investigation would threaten the confidentiality of grand jury matters that remain protected by Federal Rule of Criminal Procedure 6(e). It would further risk exposing materials subject to President Trump's unresolved claims of attorney-client privilege and would undermine the fundamental principles of due process governing the adjudication of innocence or criminal guilt. These substantial concerns weigh heavily against disclosure.

Prospective Intervenors nevertheless seek to evade these compelling interests through criminal intervention, a narrowly circumscribed procedural mechanism that this Court and others

have repeatedly cautioned against. Their request rests on a speculative, self-serving account of a purportedly "likely" chain of events and is so sweeping that it would permit others—including Smith himself—to speak freely about Volume II and its contents. Their conjecture provides no basis for intervention, much less the sweeping modifications they request to the Court's Order. For these reasons, Former Defendants President Trump, Mr. Nauta, and Mr. De Oliveira respectfully request that the Court deny the Motion to Intervene.

## FACTUAL BACKGROUND

### I. The Court's Dismissal Order and Smith's Continued Actions as Special Counsel

On July 15, 2024, this Court dismissed Jack Smith's Superseding Indictment against President Trump, Mr. Nauta, and Mr. De Oliveira, concluding that Smith's appointment as Special Counsel violated the Appointments Clause of the United States Constitution, U.S. Const., Art. II, § 2, cl. 2, and that the funding of his Special Counsel's Office violated the Appropriations Clause, U.S. Const., Art. I, § 9, cl. 7. *See United States v. Trump*, 740 F. Supp. 3d 1245, 1252 (S.D. Fla. 2024) (ECF No. 672 at 1). Smith subsequently appealed. *See* ECF No. 673 (notice of appeal). However, following the Court's Dismissal Order—and without seeking a stay pending appeal—Smith continued to purport to exercise the powers of Special Counsel. *See, e.g.*, Brief for the United States, *United States v. Trump*, No. 24-12311 (11th Cir. Aug. 26, 2024) (filed by Smith as Special Counsel); ECF Nos. 686, 687 & 688 (also filed by Smith as Special Counsel).

It was only after evaluating the effect of President Trump's victory in the 2024 Presidential Election that Smith moved to dismiss his Eleventh Circuit appeal as to then President-elect Trump. *See* Motion to Dismiss Appeal at 13, *United States v. Trump*, No. 24-12311 (11th Cir. Nov. 25,

2024) (citing a sitting President's "temporary immunity").[2] Smith nonetheless remained set on attempting to vindicate his unlawful appointment as Special Counsel. By mid-November of 2024, it was already clear that Smith would eventually "wind down" his operations, but he would do so only after preparing and submitting to the Attorney General a "Final Report of the Special Counsel."[3] Smith completed and submitted his two-part report to Attorney General Merrick Garland on January 7, 2025. *See* ECF No. 685.

## II. The Court's Order Prohibiting the DOJ's Release or Transmittal of Volume II

On January 21, 2025, this Court entered an order temporarily enjoining the Attorney General from releasing or transmitting Volume II, the second volume of Smith's report. ECF No. 714. The Order directed that the Attorney General or his successor(s), the DOJ, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, were enjoined from (a) "releasing, sharing, or transmitting Volume II . . . or any drafts of Volume II outside the [DOJ]," or (b) "otherwise releasing, distributing, conveying, or sharing with anyone outside the [DOJ] any information or conclusions in Volume II or in drafts thereof." *Id*. at 13.

Non-parties American Oversight and Knight First Amendment Institute at Columbia University ("Knight Institute") subsequently sought to intervene in this case in hopes of forcing the report's disclosure. *See* ECF Nos. 717, 721 & 775 (motions to intervene). Those inappropriate

[2] Smith declined to dismiss the appeal as to Mr. Nauta and Mr. De Oliveira. *See* Motion to Dismiss Appeal at 13, *United States v. Trump*, No. 24-12311 (11th Cir. Nov. 25, 2024) ("The appeal concerning the other two defendants will continue . . . ."). It was only after Smith's resignation that the DOJ moved to dismiss the remaining appeal with prejudice. *See* Order Granting Unopposed Motion to Dismiss Appeal, *United States v. Trump*, No. 24-12311 (11th Cir. Feb. 11, 2025).

[3] Andres Triay and Melissa Quinn, *Special Counsel Jack Smith Plans to Leave Justice Department by the Time Trump Takes Office*, CBS NEWS (Nov. 13, 2024), https://www.cbsnews.com/news/trump-special-counsel-jack-smith-plans-to-leave-justice-department.

and unsuccessful attempts at intervention remain the subject of pending appeals in the Eleventh Circuit. *See* ECF No. 760 & 780 (Court's orders denying intervention); *United States v. Knight First Amendment Inst. at Columbia Univ.*, Nos. 25-14507 & 26-10674 (11th Cir.) (consolidated appeals for briefing and disposition on the merits).

Separately, upon notice that the Court's January 21, 2025, Order would soon expire, President Trump—joined by Mr. Nauta and Mr. De Oliveira—moved for permanent relief. ECF Nos. 772 & 774 (motions for an order permanently prohibiting the release of Volume II). The DOJ did not oppose, agreeing that Volume II was unauthorized and should not be released. ECF No. 773.

On February 23, 2026, this Court granted President Trump's unopposed motion, supplanting the expiring order. *See* ECF No. 779. The same restrictions that previously existed applied: the Attorney General and her successor(s), the DOJ, its officer, agents, officials and employees, and all persons acting in active concert or participation with such individuals, are enjoined from (a) "releasing, sharing, or transmitting Volume II . . . or any drafts of Volume II outside the [DOJ]," or (b) "otherwise releasing, distributing, conveying, or sharing with anyone outside the [DOJ] any information or conclusions in Volume II or in drafts thereof." *Id*. at 14-15.

## III. The Pending Motion to Intervene and Seek Clarification of the Court's Order

On September 24, 2026, Prospective Intervenors filed a Motion to Intervene and Seek Clarification of the Court's February 23 Order. ECF No. 806. That motion was stricken for lack of conferral, and Prospective Intervenors refiled on October 7, 2026. ECF No. 809; *see also* ECF No. 808 (paperless order striking motion).

In their Motion to Intervene, Prospective Intervenors ask this Court to "clarify or modify the terms of the Order so that it is clear" that they—current and former FBI agents and analysts

involved in the underlying criminal investigation and prosecution of Former Defendants—and other "similarly situated" persons may: (a) testify to the grand jury about non-public information covered by the Court's Order; (b) provide voluntary interviews to "the government," with counsel present, about the same; (c) speak publicly about what they discussed with "the government" or testified about before the grand jury; and (d) separately consult with counsel about non-public information covered by the Court's Order. *Id*. at 2 n.1, 16-17.

Both the United States and Former Defendants have stated that they oppose Prospective Intervenors' motion. *See id*. at 18-19 (certificate of conference). On October 16, 2026, the United States moved for dismissal of the Motion to Intervene. ECF No. 810. Former Defendants hereby present their own positions.

## ARGUMENT

### I. The Court's February 23 Order Is Clear and Properly Restricts Disclosure of Nonpublic Information and Conclusions Contained in Volume II

The Court's February 23 Order is clear in both its terms and its reach: it prohibits not only the release of Volume II itself, but also disclosure outside of the DOJ of the nonpublic information and conclusions it contains. That prohibition is neither ambiguous nor overbroad, and it is completely justified by the compelling considerations underlying the Court's Order. Those considerations remain fully applicable, and no modification or clarification to the Order's express prohibitions is warranted.

#### *A. The Court Appropriately Exercised its Inherent Authority to Protect the Integrity of Its Proceedings and Judgment*

The federal judiciary possesses inherent authority to "protect the integrity" of its proceedings and judgments. *United States v. Trump*, 821 F. Supp. 3d 1355, 1360 (S.D. Fla. 2026) (quoting *United States v. DiBernardo*, 775 F.2d 1470, 1475-76 (11th Cir. 1985)) (ECF No. 779 at

8). That authority is "at its core, a creature of necessity"—without it, the power of the federal judiciary would be incomplete and inadequate to serve its constitutional role. *Peacock v. Thomas*, 516 U.S. 349, 359 (1996).

The Court's inherent authority applies here with particular force. The Court's Dismissal Order held that Jack Smith's appointment was unconstitutional and that the unlawful actions flowing from his defective appointment "must be set aside." *United States v. Trump*, 740 F. Supp. 3d 1245, 1303 (S.D. Fla. 2024) (ECF No. 672 at 83). Smith sought no stay of that ruling, and the DOJ ultimately dismissed his appeal with prejudice. The Dismissal Order therefore remains final, enforceable, and "the law of this case." *United States v. Bickers*, 2026 U.S. App. LEXIS 11826, at *5 (11th Cir. Apr. 24, 2026); *see also Morro v. City of Birmingham*, 926 F. Supp. 1033, 1036 (N.D. Ala. 1996) ("There is no escaping the conclusion that the [ruling] became the law of the case at the moment [the] permitted appeal was dismissed.").

Despite this, Smith wrongly proceeded with the preparation of Volume II. Using improperly obtained discovery materials generated in this case, Smith prepared his report—effectively, an unvetted government-sponsored dossier—concerning the very investigation and prosecution that this Court held to be unlawful. *See Trump*, 821 F. Supp. 3d at 1362 ("Smith and his team went ahead for months, undeterred, preparing Volume II using discovery collected in connection with this proceeding and expending government funds in the process.") (ECF No. 779 at 10). The Court therefore concluded that its February 23 Order was an appropriate measure to ensure that the consequences of its final judgment would not be defeated by Smith's continued, unsanctioned, unlawful work. *See id.* ("The Court need not countenance this brazen stratagem or effectively perpetuate the Special Counsel's breach of this Court's own order.") (ECF No. 779 at 11).

### *B. The Court Appropriately Exercised Supervisory Authority Over Discovery and Other Protected Materials Generated in Connection with the Proceedings*

The Court's February 23 Order also safeguards discovery materials and other protected information subject to its ongoing supervision. This Court *previously* determined that Volume II contains substantial discovery information covered by its Rule 16 Protective Order. The report contains "myriad references to bates-stamped information," not least of all "interview transcripts, search warrant materials, business records, toll records, video footage, [and] various other records obtained pursuant to grand jury subpoena . . . in this proceeding." *See Trump*, 821 F. Supp. 3d at 1358 (ECF No. 779 at 4) (quoting ECF No. 714 at 5-6). The Court also determined that Volume II contains various other disputed material implicating Rule 6(e), President Trump's unresolved assertions of attorney-client privilege, potential Rule 404(b) evidence, and other non-public information. *Id*.

The dismissal of Smith's underlying prosecution did not extinguish the protections applicable to those materials or the Court's continuing authority to enforce them. Indeed, Rule 16(d)(1) expressly provides that "[a]t *any time* the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *United States v. Nickens*, 809 F. App'x 584, 591 (11th Cir. 2020) (quoting Fed. R. Crim. P. 16(d)(1) (emphasis added)); *see also United States v. Carriles*, 654 F. Supp. 2d 557, 566 (2009) ("[T]he entry of a protective order under Rule 16(d)(1) is within the trial court's discretion."). Nor did dismissal dissolve Rule 6(e)'s independent grand jury secrecy protections, or resolve President Trump's outstanding attorney-client privilege claims. *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979) (holding that grand jury secrecy protections continue after the underlying criminal prosecution has concluded); *United States v. Stein*, 2021 U.S. Dist. LEXIS 163178, at *9-10 (S.D. Fla. Aug. 25,

2021) (requiring destruction if a claim of attorney-client privilege is not challenged or is later upheld).

### *C. The Scope of the Court's February 23 Order is Clear and is Necessary to Prevent Evasion*

The Court has clearly and appropriately enjoined the Attorney General and his successors, the DOJ, its officers, agents, officials, and employees, and "all persons acting in active concert or participation with such individuals." *Trump*, 821 F. Supp. 3d at 1364 (ECF No. 779 at 14); *see also* ECF No. 714 at 13. The Court's "active concert" language reflects the settled principle that an injunction binds not only the parties, but also those "aiders and abettors" who could otherwise nullify the Court's decree. *United States v. Robinson*, 83 F.4th 868, 882 (11th Cir. 2023) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). Anything less could have left an obvious means of evasion.

The reasons for the Court's restrictions on "releasing, distributing, conveying, or sharing with anyone outside the [DOJ] any information or conclusions in Volume II" are also clear. *Trump*, 821 F. Supp. 3d at 1364 (ECF No. 779 at 14-15); *see also* ECF No. 714 at 13. An order barring only the physical release or electronic transmission of Volume II would not prevent Smith, the DOJ, or other persons acting in concert with them, from disclosing the report's substance. Although an enforceable order need not enumerate *every* conceivable means of violation, it must take some care to identify and prohibit alternative means of disclosure. *See Abbott Labs. v. Unlimited Bevs., Inc.*, 218 F.3d 1238, 1241 (11th Cir. 2000) (courts need not recite "every possible way in which a violation might occur" so long long as the "proscribed conduct is readily ascertainable").

The need for the Court's great care and specificity has been demonstrated by Smith's repeated invocation of the Order and its language. *See, e.g.*, Prepared Statement of Jack Smith

Before the H. Comm. on the Judiciary, 119th Cong. 2 (Jan. 22, 2026) ("[A]s a result of Judge Cannon's order and the Justice Department's interpretation of that order, I will not be able to discuss the contents of Volume II of my report, and can only discuss matters with respect to that case that are set forth in the indictment or other public filings."); Deposition of Jack Smith Before the H. Comm. on the Judiciary, 119th Cong. 13 (Dec. 17, 2025) ("[T]he Department of Justice sent us an email affirming its view that Judge Cannon's order applies to Mr. Smith and that it precludes him from disclosing any nonpublic information that may be contained in Volume Two, including but not limited to interview transcripts, search warrant materials, business records, toll records, video footage, records obtained by grand jury subpoenas, attorney-client communications, and potential for 404(b) evidence.") (remarks of counsel for Jack Smith).

Absent the breadth of this Court's February 23 Order, nearly anyone involved in the underlying criminal investigation and prosecution or otherwise having knowledge of Volume II could feign a right to speak freely. They could also paraphrase and selectively convey the unproven conclusions and illegally obtained information on which Volume II rests. In effect, Smith's improper conclusions and unlawfully obtained source material could be shared outside DOJ, while the document itself remained nominally undisclosed. Any such result is functionally identical to releasing Volume II and would be untenable, as it would effectively nullify the Court's February 23 Order. For these reasons, the Court should reject *any* effort by Prospective Intervenors to erode the protections afforded by the plain language of its February 23 Order.

## II. The Court Need Not Reach the Request for Clarification Because Prospective Intervenors Present No Concrete and Imminent Injury

Former Defendants also agree with the United States that Prospective Intervenors lack any cognizable injury for the purposes of Article III standing. *See* ECF No. 810 at 9-16. It is fundamental that "[e]very litigant must possess standing. . . ." *United States v. Cone*, 627 F.3d

1356, 1359 (11th Cir. 2010) (quoting *United States v. Johnson*, 983 F.2d 216, 218 (11th Cir. 1993)).

To establish Article III standing, Prospective Intervenors must establish an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Gardner v. Mutz*, 857 F. App'x 633, 635 (11th Cir. 2021) (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he alleged injury cannot be 'too speculative,' rather, it must be '*certainly* impending.'" *Fund v. Clerk of the Cir. Ct.*, 2026 U.S. App. LEXIS 15632, at *10 (11th Cir. June 1, 2026) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original)). Mere "[a]llegations of possible future injury" do not suffice. *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 381 (2024) (there must be a "sufficient likelihood of future injury").

Prospective Intervenors cannot satisfy that standard. They can identify no question that is actually posed that implicates the Court's February 23 Order. The reason for that is simple: their anticipated grand jury testimony has not yet occurred, and neither the questions they may be asked nor the answers they may give are known. *See* ECF No. 810 at 9. Indeed, the motion rests on the mere *possibility* that the grand jury will ask questions concerning nonpublic information that falls within the Order's scope. ECF No. 809 at 3 (asserting that Prospective Intervenors are "*likely* to be asked questions pertaining to information in Volume II" (emphasis added)). That possibility does not establish a concrete and imminent injury. It is speculation about an event that may never arise.

Prospective Intervenors' asserted dilemma therefore depends on a series of speculative contingencies. They must first be asked questions pertaining to nonpublic information or

conclusions in Volume II; answering those questions must implicate violating the Court's Order; and only then must they grapple with an actual conflict between their obligation to testify and their obligation to comply with this Court's Order. *See* ECF No. 809 at 3. None of those contingencies have materialized, and Article III standing cannot rest on such a speculative chain of possibilities. *See Clapper*, 568 U.S. at 410-14 (rejecting injury based on a "highly attenuated chain of possibilities"); *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1238 (11th Cir. 2019) (injury was not imminent from screening protocols where frequent flyer could only speculate that he would be subjected to the randomized screening). *Cf. Fund*, 2026 U.S. App. LEXIS 15632, at *11-12 (injury was not conjectural or speculative where "this same sequence of events happens over and over again").

Nor can Prospective Intervenors transform their speculative risk into an actual injury by asserting how that uncertainty may affect their consultations with counsel. *See* ECF No. 809 at 11 (asserting that "[w]ithout clarification, Clients will be unable to sufficiently consult their counsel on the complex issues posed by [their] testimony without fear of violating the Order"). "[I]f the hypothetical harm alleged is not 'certainly impending,' or if there is not a substantial risk of the harm, a [litigant] cannot conjure standing by inflicting some direct harm on itself to mitigate a perceived risk." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1339 (11th Cir. 2021) (citing *Clapper*, 568 U.S. at 416); *see also Corbett*, 930 F.3d at 1239 ("[P]arties 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" (quoting *Clapper*, 568 U.S. at 416)). Thus, any precautionary measures undertaken by Prospective Intervenors in anticipation of questions that they may or may not be asked do not independently establish the required injury. The Motion to Intervene should be denied.

### III. Prospective Intervenors Identify No Cognizable Basis for Non-Party Intervention in this Criminal Proceeding

Even if Prospective Intervenors could establish Article III standing—which they cannot—that would establish only the existence of a justiciable injury, which does not exist, not an entitlement to intervene in this criminal proceeding.

"The Federal Rules of Criminal Procedure do not provide for a non-party to intervene in a criminal proceeding." *United States v. Ruan*, 814 F. App'x 439, 442 (11th Cir. 2020). Accordingly, a nonparty seeking to participate in a criminal proceeding must identify an independently recognized legal basis to intervene. *See id*. (citing *United States v. Couch*, 906 F.3d 1223, 1228 (11th Cir. 2018)). The Court previously explained as much in denying the earlier intervention requests of American Oversight and Knight Institute. *See* ECF No. 760 at 7-8 ("Absent a procedural mechanism for intervention, we analyze the participatory rights of non-parties to criminal proceedings in light of the statutes governing those proceedings." (quoting *Ruan*, 814 F. App'x at 442)). This limited approach to criminal intervention reflects the overarching need for "judicial caution." *Id*. (citing *Couch*, 906 F.3d at 1227). And where no independent right to intervene exists, the decision to permit intervention rests with the Court's discretion. *See Davis v. Butts*, 290 F.3d 1297, 1299 (11th Cir. 2002) ("If there is no right to intervene . . . , it is wholly discretionary . . . .").

Prospective Intervenors identify no cognizable legal interest warranting intervention here. They do not assert a legally protected confidentiality or privilege interest in the information and materials addressed in Volume II. *See, e.g., In re Sealed Search Warrant & Application for a Warrant*, 2020 U.S. Dist. LEXIS 198004, at *15 (S.D. Fl. Oct. 26, 2020) ("[T]hird parties are occasionally allowed to intervene in a criminal trial to challenge a request for the production of documents on the ground of privilege . . . or to protect other rights implicated by a particular

proceeding." (quoting *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (11th Cir. 2004)); *see also id.* ("[I]t is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders . . . ." (quoting *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979)).

Instead, Prospective Intervenors seek to enter this criminal proceeding to obtain an anticipatory interpretation of the Court's February 23 Order as it *might* apply to questions they may or may not be asked, information they may or may not be called upon to disclose, and the decisions they may or may not confront in future grand jury or other settings. *See* ECF No. 809 at 3. Their requested relief is not even confined to their own circumstances. Rather, they seek an interpretation extending broadly to "other person[s]" who might arguably be similarly situated. *Id*. at 2 n.1 ("Undersigned counsel . . . intend for any relief granted here to be broadly applicable to any other person to whom the Order applies."). Their desire for prospective guidance does not supply an independently recognized legal basis for intervention in this criminal case.

In short, Prospective Intervenors identify neither a procedural right to intervene nor a cognizable legal interest of the kind that would justify their intervention. Because the Federal Rules of Criminal Procedure provide no such general right of intervention, and because Prospective Intervenors identify no other independent authority entitling them to intervene, the request to intervene should be denied.

## CONCLUSION

For these reasons, President Trump, Mr. Nauta, and Mr. De Oliveira respectfully request that the Court deny the Motion to Intervene.

Dated: October 21, 2026

Respectfully submitted,

/s/ Kendra L. Wharton
Kendra L. Wharton
Fla. Bar No. 1048540
WHARTON LAW PLLC
k.wharton@whartonlawpllc.com
500 S Australian Ave, Ste 600-1139
West Palm Beach, FL 33401
(561) 247-5279
*Counsel for President Donald J. Trump*

/s/ Richard C. Klugh
Richard C. Klugh
Fla. Bar No. 305294
KLUGH WILSON LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191
rklugh@klughwilson.com
*Counsel for Waltine Nauta*

/s/ Larry Donald Murrell, Jr.
Larry Donald Murrell, Jr.
Fla. Bar No. 326641
400 Executive Center Drive
Suite 201—Executive Center Plaza
West Palm Beach, FL 33401
(561) 686-2700
ldmpa@bellsouth.net
*Counsel for Carlos De Oliveira*

/s/ John S. Irving, IV
John S. Irving, IV
SECIL LAW PLLC
1701 Pennsylvania Ave. NW, Ste. 200
Washington, DC 20006
(301) 807-5670
jirving@secillaw.com
*Counsel for Carlos De Oliveira*

## CERTIFICATE OF SERVICE

I, Kendra L. Wharton, certify that on October 21, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Kendra L. Wharton*
Kendra L. Wharton