FILED BY MP D.C.
OCT 28 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON

UNITED STATES OF AMERICA,

Plaintiff,

vs.

WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

Defendants.

______________________________/

**REPLY IN SUPPORT OF SECOND MOTION TO INTERVENE AND SEEK CLARIFICATION OF COURT'S ORDER AT DOCKET ENTRY 779**

Undersigned counsel respectfully submit this Reply brief to President Trump, Waltine Nauta, and Carlos De Oliveira's response in opposition (Docket Entry ("DE") 811, "Trump, et al. Opp.") and in support of Clients' Second Motion to Intervene and Seek Clarification of Court's Order at Docket Entry 779 ("Motion").

Far from undercutting Clients' motion for clarification, President Trump, Nauta, and De Oliveira (collectively "Trump, et al.") demonstrate definitively why it is imperative that the motion be granted. In their own pleading, they concede that this Court's order at DE 779 ("Order") restricts Clients' subpoenaed grand jury testimony. That concession should end the matter. Given that it is undisputed that the Government has chosen to subpoena Clients to testify before the grand jury, and given that their required testimony necessarily will include questions and answers that refer to information in Volume II, it is spurious for Trump, et al. to claim that Clients lack standing or a basis for this intervention. There could be no more concrete injury in a legal context, and no

more compelling basis for intervention, than being forced by the Government to testify about a matter that would directly risk contempt of a Court order that the Government itself has supported.

Clients' motion rests on the same "basic notions of fairness and justice" that this Court cited in granting Trump, et al.'s motion to seal Volume II in the first place. 9:23-cr-80101-AMC, Document 779, at 10 (SDFL Feb. 23, 2026). Trump, et al. cannot have it both ways. On one hand, they argue that the Order restricts any disclosure of Volume II or the nonpublic information or conclusions it contains, no matter how trivial. Trump, et al. Opp. at 7-11. At the same time, they argue that Clients—under subpoena to testify as witnesses in an investigation that by its very nature necessitates specific discussion of the contents of Volume II —face no imminent injury. *Id.* at 11-12. That this subpoenaed testimony has not yet been provided obviously does not alleviate Clients' harm, since even now they are unable to consult fully with counsel regarding that testimony. Clients are caught — at present — between a proverbial rock and hard place of either providing testimony that risks violating this very Court's Order or facing contempt proceedings initiated by the Department of Justice ("DOJ") for not answering grand jury questions that they actually wish to answer. Motion at 11. That they would be forced to navigate this difficulty without the complete advice of counsel only deepens the harm here. *Id.* at 10-11.

It is particularly unfair and unjust for President Trump, who appears to be acting in both his personal and official capacities, to oppose this motion for clarification. In his official capacity, President Trump has "conclusive and preclusive" power "to decide which crimes to investigate and prosecute," and has "exclusive authority over the investigative and prosecutorial functions of the Justice Department and its officials. *Trump v. U.S.*, 603 U.S. 593, 609, 620-21 (2024). Thus, at the same time that the President and his DOJ are directing the grand jury investigation at issue

here — and requiring the testimony of Clients — they are opposing any clarification of that Order that would allow those Clients to testify fully and without fear of incurring the Court's discipline.

Thus, it is not Clients, but the DOJ by issuing grand jury subpoenas, that have thrust the contents of Volume II outside the confines of the DOJ. Indeed, as detailed further below, it appears that both the President and the Department have made selective public disclosures of the contents of Volume II, in violation of the Order. If the President and the DOJ now wish to bring this matter before a grand jury — and to bring possible criminal charges, which by necessity must be made public — they cannot at the same time continue to try to constrain the testimony of the Clients they have subpoenaed.

The Clients, therefore, naturally turn to this Court. The simplest solution would be for the Court to clarify and reaffirm what the Order itself suggests: that the Order applies only to current members of DOJ. This would require no modification of the Order and would comport with a plain reading of its language. As it stands, the prohibition of sharing information or conclusions of Volume II applies to "Attorney General Bondi or her successor(s), the DOJ, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals." Order at 14-15. A plain reading that Clients are no longer members of any of the categories of personnel covered is as simple as it is obvious. It would also untangle DOJ's own tortured interpretation that the Order broadly prohibits disclosure by individuals who are no longer in any category of personnel addressed by the Order.

## I. It is Undisputed that Clients Subpoenaed to Testify Are Bound by the Order.

### A. The Order Unequivocally Prohibits Disclosure.

All parties agree that, as currently interpreted, Clients' disclosures to a grand jury and even to their own counsel about any of their non-public work on the classified documents case that is

contained within Volume II would violate the Order. *See* Motion at 7-13; Trump, et al. Opp. at 7-11; DOJ Opp. at 19, n.1 *and* DE 802, p. 2, ¶ 3; Order at 14-15. Given this concession, it necessarily follows not only that Clients have standing and a right to intervene, but also that the relief they seek must be granted.[1]

Trump, et al. do not contest that Clients are under subpoena to testify before a grand jury empaneled in this district. Nor do they contest that Clients will be asked about "their work on the classified documents investigation beginning from the date the matter was referred to the FBI, up through and including the execution of the search warrant." Motion at 5. Volume II covers the investigative record Clients built: "interview transcripts, search warrant materials, business records, toll records, video footage" and "other non-public information." Order at ¶ 5; (quoting DE 714, pp. 506). Trump, et al. assert, and Clients agree, that the Order, as currently interpreted, "unequivocally prohibits any such disclosure." Trump, et al. Opp. at 2. Yet that is precisely what DOJ seeks to compel Clients to do before the grand jury.

### B. It is the Government's Actions, Not Those of Clients, That Have Necessitated Clarification of the Order.

Thus, at its heart, Trump, et al.'s opposition is not to the Court's clarification of its Order, but to Clients testifying about Volume II at all.[2] But it is precisely the current administration's investigation that is obligating such testimony and will necessarily result in public disclosures involving Volume II if charges are brought. The irony should not be lost upon President Trump complaining of the impact of the investigation while at the same time he is in exclusive control of

---

[1] The Department could also withdraw its subpoenas and moot this entire exercise but the Clients have not sought – and will not seek – that relief because they are more than ready and willing to testify unfettered by the constraints that the Government has manufactured by opposing the requested clarification.

[2] Although Trump, et al. oddly choose to emphasize this Court's finding that the preparation of Volume II was improper, they largely ignore that the Order prohibits disclosure of not only the physical copy of Volume II, but also the non-public contents and conclusions of Volume II.

the DOJ pursuing it. Further, if Nauta and De Oliveira believe that this investigation should not proceed because it will be injurious to their interests, they are free to make that argument to the President and the DOJ. But as long as President Trump and DOJ order the investigation to continue, they cannot be permitted to proceed in a manner that jeopardizes the rights of Clients.

DOJ's investigation by its very nature necessitates the release of information in Volume II. *See Brady v. Maryland*, 373 U.S. 83(1963).[3] Far from trying to "insert themselves" into the proceedings here, Trump, et al. Opp. at 2, Clients' efforts now are entirely at the Government's direction. A letter dated September 14, 2026, which was recently released through congressional hearings, from DOJ's Office of Legislative Affairs to the attorneys of former Special Counsel Jack Smith on the occasion of Mr. Smith's intended congressional testimony make that perfectly clear:

> Consistent with the Department's email of December 17, 2025, and our letter of January 20, 2026, the Department interprets Judge Cannon's January 21, 2025, order in *United States v. Nauta and De Oliveira* to broadly prohibit disclosure of all non-public information contained in Volume II of the Special Counsel's report. However, we do not understand the order to prohibit discussion of information that the Department has made publicly available through authorized means, such as information contained in public filings in the case. To be clear, this view represents the Department's own understanding of Judge Cannon's order. *To the extent Mr. Smith wishes for an authoritative interpretation of the order or its application to specific information, we again recommend he seek clarification with the district court itself.*

Exhibit 1 (emphasis added). While Clients stand ready and willing to testify to the scope of their work, it is the Government's investigation that now compels a modification of the scope of the Order. Motion at 6. Clients cannot be made to bear the burden of the harms here for complying with obligations imposed upon them by the Government's subpoena.

[3] It should be noted, as demonstrated below, that Trump, et al. have not pursued relief before this Court against the government for releasing materials arguably in contravention of the Order. *See* IV *infra*. It cannot be that the Order preserves the integrity of this Court's authority only when it meets personal interests of Trump, et al.

## II. Clients Have Standing to Request Clarification of the Order.

Having taken the position that Clients cannot testify about their work on the classified documents case based on the Order, and having acknowledged that Clients are under subpoena to provide such testimony, Trump, et al. have necessarily conceded that Clients have standing to seek clarification of the Order.

First, as a matter of agreed-upon facts, Trump, et al. do not dispute, and indeed affirmatively argue, that disclosure of information or conclusions contained in Volume II to the grand jury would violate the Order. They do not dispute that Clients' ability to consult with their own lawyers could be constrained by the Order. Trump, et al. Opp. at 13. And they do not dispute that Clients are under subpoena to testify about a matter that necessarily implicates non-public information or conclusions contained in Volume II. *Id.* at 12-13.

Instead, Trump, et al. argue only that no one has been injured *yet*. That is wrong. Clients are injured now, including by their inability to fully consult with counsel, and further harm is certainly impending if they go before the grand jury. Standing was created the moment that Clients were subpoenaed. There is far more than a "mere possibility" that a grand jury investigation into the classified documents case will require Clients to address their work on the classified documents case. Trump. et al. Opp. at 12. Indeed, it stretches credulity to suggest the Government would subpoena Clients to testify only on materials already in the public record. Motion at 7-8. The Government has conspicuously not averred that it would refrain from such questioning. Given Trump, et al. and Clients agree that any non-public discussion of their work on the classified documents case that is covered by Volume II violates the Order, Trump, et al. cannot be heard to argue that Clients' harm is mere "speculation." *Id.*

In short, Clients satisfy each element of Article III standing. They face an "injury in fact that is concrete, particularized, and **actual or imminent**," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)) (emphasis added). A threatened injury is imminent when it "is certainly impending[] or has substantial risk of occurring," *Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Clients' injury meets both the "actual" and "imminent" test. A subpoena leaves no doubt as to certainty: Clients are actually being lawfully compelled to testify, and they cannot do so fully or with advice of counsel while restricted by Trump, et al. and DOJ's interpretation of the Order. Thus, any testimony that discloses non-public information in Volume II, and any preparation with Clients' counsel regarding that testimony, implicates the Clients' interest in avoiding sanctions for violating the Order. Accordingly, clarification from this Court is immediately necessary to redress that continuing injury.

## III. Clients Have a Basis to Intervene Where Their Rights Are at Risk.

The same considerations that provide a basis for standing also establish the right of Clients to intervene. Because the Order binds Clients and governs their subpoenaed testimony, Clients can intervene to protect their rights, as courts in this Circuit have long permitted.

The Eleventh Circuit allows intervention where a non-party asserts a legal interest of its own. *See, e.g.*, *United States v. Couch*, 906 F.3d 1223, 1226-27 (11th Cir. 2018) (holding that where qui tam relator's had statutory property interest, "the general principle that private parties lack standing to intervene in criminal proceedings ha[d] no application"); *In re Freeman*, 708 F.2d 1571, 1574-75 (11th Cir. 1983) (holding that where an attorney faced contempt proceeding for refusing to answer grand jury questions, clients could intervene in criminal contempt proceeding to assert their attorney-client privilege interest); *see also United States v. Carmichael*, 342

F.Supp.2d 1070 (M.D. Ala. 2004) (citing *Gravel v. United States*, 408 U.S. 606, 608-09 (1972), where district court granted Senator's motion to intervene to quash grand jury subpoenas of witnesses whose testimony implicated his Speech and Debate Clause privilege).

There can be no doubt that Clients have asserted an independent legal interest of their own. Clients have an immediate interest in consulting with counsel in relation to their subpoenaed testimony. Motion at 10-11. Thus, the Order *already* burdens Clients' right to consult and prepare in advance of their grand jury testimony. Especially given that the Government has publicly called the prior prosecution "unlawful," the conclusions in Volume II "improper," and the entire investigation at the Mar-a-Lago residence "illegal," DOJ Opp. at 1, 9, 12, Clients must be able to consult with counsel now, prior to appearing before the grand jury.

Nor is Clients' Motion an attempt to frustrate the grand jury by previewing or vetoing its questions. As part of their testimony, Clients *want* to provide all the information they know but only within the legal parameters established by this Court. Motion at 13. Thus, they seek only a clarification of the Order to better understand their legal obligations, allow them to confer fully with counsel in preparation for their testimony, and give them the chance to address public allegations the Government may make if it does not like the testimony they give. Clients' goal is not to expose the grand jury proceedings to the public eye. Indeed, they indicated in their opening motion that they would not object to a closed hearing on this matter under Fed. R. Crim. P. 6(e)(5). Motion at 5, n.3. The Government has not requested one.

## IV. The President and DOJ Should Not Be Permitted to Both Subpoena and Muzzle Clients.

One final point merits discussion. Trump, et al. and DOJ's objection to any clarification of the Court's Order is highly troubling. Clients have asserted that they want to testify, and that they wish to do so without constraint. Motion at 13. But by objecting, Trump, et al. and DOJ are

intentionally muddying the waters even while the Government itself has cited the Order as reason to not comply with legal obligations. *Id.* at 10.

Trump, et al.'s position is particularly concerning when the Government, under President Trump's direction and while obstructing Client's efforts to clarify the scope of the Order, continues to selectively release materials presumably contained or addressed by Volume II.[4] Virtually since the day the Order was entered, the Government has disclosed non-public information related to the classified documents case. *See, e.g.,* Jana Winter, *FBI obtained Kash Patel and Susie Wiles phone records during Biden administration*, Reuters (Feb. 25, 2026), available at https://www.reuters.com/world/us/fbi-obtained-kash-patel-susie-wiles-phone-records-during-biden-administration-2026-02-25/. Those efforts have accelerated in recent weeks as the Government has publicly shared and provided press briefings on investigatory files,[5] including internal FBI communications on warrant and search timing,[6] investigatory call logs and PR/TT information,[7] and internal investigatory approvals, all of which implicate the non-public contents of Volume II.[8] In fact, President Trump himself has publicly spoken in favor of these disclosures, and deliberately colored their release in his favor.[9] Had Clients shared any of that information

---

[4] White House, Government Transparency & Election Integrity (accessed Oct. 22, 2026), https://www.whitehouse.gov/transparency/.

[5] John Solomon (@jsolomonReports), X (Oct. 5, 2026, at 7:41 ET), https://x.com/jsolomonReports/status/2107073789078974851?s=20; Charlie Savage, *How the White House Manufactured a Narrative About a Trump Aide's Call Logs*, N.Y. Times (Oct. 11, 2026), https://www.nytimes.com/2026/10/11/us/politics/white-house-manufactured-narrative-solomon.html.

[6] White House, Government Transparency & Election Integrity, *Subject- FW- Plasmic Echo - Summary - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip.

[7] White House, Government Transparency & Election Integrity, *PR.TT Live Monitoring 6 to 8 April 2023 – FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip; White House, Government Transparency & Election Integrity, *PR.TT Live Monitoring 19 to 22 May 2023 - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip; White House, Government Transparency & Election Integrity, *Subect- Wiles Contacts 3.7 - 3.10 - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip.

[8] White House, Government Transparency & Election Integrity, *Memorandum for the AG - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip.

[9] Savage, *Manufactured a Narrative* ("'They did things to people that were associated with us that nobody should have been able to do, and it all came out just recently in the files,' Mr. Trump said.").

with the public, or provided the context that properly framed that information, there is little doubt Trump, et al. and DOJ would have considered it as a violation of this Court's Order.

The Government has been inappropriately using the Order as both a sword and a shield, while slandering Clients' work at the same time it seeks to prevent them from ever defending it. Again, the Government wants one rule for itself, and another for Clients. But federal criminal prosecutions in this country are not star-chamber proceedings that rely on secret evidence that the Government can selectively publicize for its own self-interests.

Moreover, there clearly no longer exists any adversity in this case as between DOJ and the original defendants. As noted above, DOJ is part of the Executive Branch, led by now-former defendant President Trump. DOJ is controlled by President Trump's former criminal defense attorney for the classified documents case. He now supervises all of the Government's federal litigation. 28 U.S.C. § 519. As Attorney General Blanche explained recently on Fox News: there is a "misperception that there's this separation and independence between the Department of Justice and the White House"; to the contrary, he explained, "I work for President Trump."[10]

## CONCLUSION

The relief sought by Clients' Motion would allow them to testify fully, truthfully, and accurately, without fear of being in violation of the Court's Order, and without the need for question-by-question review by this Court. Motion at 16-17. It is entirely unclear why such a Motion would be opposed. But whatever the motives of those in opposition, basic notions of justice and fairness require that the Motion be granted.

[10] Ken Klippenstein @kenklippenstein.bsky.social (quoting from "Pod Force One").

Dated: October 28, 2026

Respectfully,

*/s/ Margaret M. Donovan*
Margaret M. Donovan (*pro hac vice* forthcoming)
Christopher M. Mattei (*pro hac vice* forthcoming)
Koskoff Koskoff & Bieder, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com
cmattei@koskoff.com

*/s/ Abbe David Lowell*
Abbe David Lowell (*pro hac vice* forthcoming)
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Tel: (202) 964-6110
Fax: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com

*/s/ Mark S. Zaid*
Mark S. Zaid (*pro hac vice* forthcoming)
Law Offices of Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, DC 20036
Tel: (202) 498-0011
Mark@MarkZaid.com

*/s/ Steve Bunnell*
Steve Bunnell (*pro hac vice* forthcoming)
Raj Ferber PLLC
1629 K Street NW
Washington, D.C. 20006
Tel: (202) 351-9698
steve@rajferber.com

*/s/ Allison Duffie*
Allison Duffie, Esq.
Fla. Bar Number: 649902
DUFFIE LAW, PLLC
2234 N. Federal Highway, #1196
Boca Raton, FL 33431
Tel: (561) 440-8150
Allison@duffie.law; legalassistant@duffie.law

# EXHIBIT 1

**U.S. Department of Justice**

**Office of Legislative Affairs**

*Office of the Assistant Attorney General* *Washington, DC 20530*

Lanny A. Breuer, Esq.
Peter Koski, Esq.
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001-4956

Dear Messrs. Breuer and Koski:

I write on behalf of the Department of Justice (Department) in response to your letter dated August 31, 2026. Consistent with the parameters of our prior authorizations regarding Mr. Smith's testimony before Congress, to the greatest extent allowable by law, the Department authorizes Mr. Smith to provide unrestricted testimony during his hearing before the Senate Judiciary Committee on September 29, 2026, regarding the topics listed in our letter of November 12, 2025.

The Department again reiterates the analyses included in our letters of November 12, 2025, December 11, 2025, and January 20, 2026, as well as in our email of December 17, 2025, emphasizing that the caveat "to the greatest extent allowable by law" means that Mr. Smith is not authorized to divulge information that is prohibited by law or court, including information subject to Federal Rule of Criminal Procedure 6(e). The Department also reaffirms the analysis of the scope of Rule 6(e) included in our letter dated December 11, 2015.

Consistent with the Department's email of December 17, 2025, and our letter of January 20, 2026, the Department interprets Judge Cannon's January 21, 2025, order in *United States v. Nauta and De Oliveira* to broadly prohibit disclosure of all non-public information contained in Volume II of the Special Counsel's report. However, we do not understand the order to prohibit discussion of information that the Department has made publicly available through authorized means, such as information contained in public filings in the case. To be clear, this view represents the Department's own understanding of Judge Cannon's order. To the extent Mr. Smith wishes for an authoritative interpretation of the order or its application to specific information, we again recommend he seek clarification with the district court itself.

Lastly, regarding your request concerning the presence of Department counsel, the Department respectfully declines to have counsel present during Mr. Smith's appearance before the Committee. In light of the scope of the authorization in this letter, the Department has determined that the presence of agency counsel at the hearing is not required.

We hope this analysis will help facilitate Mr. Smith's cooperation during the Senate Judiciary Committee's hearing.

Sincerely,

PATRICK DAVIS

Digitally signed by PATRICK DAVIS
Date: 2026.09.14 14:02:42 -04'00'

Patrick D. Davis
Assistant Attorney General
Office of Legislative Affairs

cc: The Honorable Charles E. Grassley
Chairman
Committee on the Judiciary
U.S. Senate

The Honorable Richard Durbin
Ranking Member
Committee on the Judiciary
U.S. Senate